IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ETHAN LEVI,                           )
                                      )
                    Plaintiff,        )   No. 6:22-cv-01813-MK
                                      )
               vs.                    )   May 9, 2023
                                      )
KIM CHAPMAN, et al; THE OREGON        )   Eugene, Oregon
DEPARTMENT OF HUMAN SERVICES,         )
a government agency; and JANE         )
and JOHN DOE,                         )
                                      )
                    Defendants.       )
_____)


TRANSCRIPT OF PROCEEDINGS FROM ELECTRONIC RECORDING

(Rule 16 Conference by Phone)


BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


Court Reporter:        Ryan White, RMR, CRR, CSR/CCR
                       United States District Courthouse
                       1000 SW 3rd Avenue, Room 301
                       Portland, Oregon 97204
                       (503) 326-8184

APPEARANCES


For the Plaintiff:          RIZZO BOSWORTH ERAUT
                            By:  STEVEN V. RIZZO
                            srizzo@rizzopc.com
                            By:  MARY SKJELSET
                            mskjelset@rizzopc.com
                            1300 SW 6th Avenue, Suite 330
                            Portland, Oregon 97201
                            (503) 229-1819


For the Defendants:         OREGON DEPARTMENT OF JUSTICE
                            By:  JILL SCHNEIDER
                            jill.schneider@doj.state.or.us
                            100 SW Market Street
                            Portland, Oregon 97201
                            (971) 673-1880

(May 9, 2023; 9:29 a.m.)


P R O C E E D I N G S


THE CLERK:  Okay.  Good morning.

MR. RIZZO:  Good morning.

THE CLERK:  Now is the time set for civil case number 22-1813, Levi versus Chapman, et al, for a Rule 16 conference.

THE COURT:  Good morning, Counsel.  Thank you for making yourselves available today.

I'd like everyone to introduce themselves.  We'll start with plaintiff's counsel first.  If you would be kind enough to give me your full name and your honorifics, such as Mr., Ms., or Mx., so I can address you respectfully throughout the course of our time together, I'd very much appreciate it.

So who's here on behalf of the plaintiff?

MR. RIZZO:  Good morning, Your Honor.  This is Mr. Steven Rizzo for the plaintiff.

THE COURT:  Thank you, Mr. Rizzo.  Good morning to you.

And is anyone else here for the plaintiff?

MS. SKJELSET:  Yes, Your Honor.  Ms. Mary Skjelset is here as well.

THE COURT:  And can you tell me how to pronounce your name, your last name one more time?

MS. SKJELSET:  Absolutely, Your Honor.  It is "Skjelset."

THE COURT:  Skjelset?

MS. SKJELSET:  Yeah.

THE COURT:  Okay.

MS. SKJELSET:  Like, I collect shells, therefore, I have a shell set.

THE COURT:  And you have a set of shells.  Got it.

And please correct me in the future if I ever mispronounce it.  Okay?

MS. SKJELSET:  Your Honor, I'm so accustomed to it, I likely won't, but I will do my best.

THE COURT:  Well, I know, but with my last name, it's important for all of us with unique last names to stand together and make sure everyone else pronounces them correctly.

MS. SKJELSET:  Will do, Your Honor.

THE COURT:  All right.  And for the defendant?

MS. SCHENIDER:  Good morning, Your Honor.  This is Ms. Jill Schneider.  And I do not have a unique last name.  You just slur it the way it's spelled.

THE COURT:  All right.  Thank you, Ms. Schneider.  I appreciate that.

Anyone else here for the defendant?

MS. SCHENIDER:  No.

THE COURT:  All right.  Very good.

So today we're going to spend some time making sure we have what we need lined up. I know there are a couple of pending matters before me; one is a motion to strike the third-party complaint and then there's the protective order matter. We'll talk about the protective order issue in just a moment.

But I do want to make sure that we have all of our discovery deadlines, dispositive motion deadlines figured out.

Have the parties conferred and come up with dates yourselves?

MR. RIZZO: This is Mr. Rizzo, Your Honor.

We have not, I believe, on the dates.

THE COURT: Okay. Then with respect to the dates, let's get those figured out first.

Normally I would set these out about four months for the discovery deadlines. It seems to me that there will be some discovery that perhaps will be more detailed and involved. How much time do you think would be necessary and for which you would not need to ask me for an extension in order to complete your -- the lay discovery -- depositions, document discovery, et cetera -- not including any expert disclosures and discovery? Six months?

Mr. Rizzo, what are your thoughts?

MR. RIZZO: My -- my initial thought, Your Honor, is that the key issue is getting the protective order entered. So

if I were to say, for example, six months, which I think is reasonable, if it's going to take us roughly 60 days, if you will, to have a final protective order, that could eat into that six-month time, and so that's -- that's why I'm a bit hesitant.

But I think once we get that order in place -- Ms. Schneider and I have been through these types of cases before -- I think we could move through it at a relatively reasonable rate.

THE COURT:  All right.  I like how you ever so deftly put the ball back in my court.

MR. RIZZO:  And I didn't mean to not answer your question, Judge.

THE COURT:  No, no, no, no.

(Indistinguishable crosstalk.)

THE COURT:  I think it's perfectly reasonable that if I took six months to figure out whether to grant the protective order in one form or another, perhaps it would be unfair to try to finish discovery in one day.  So let's -- let's take a look here, and we'll talk about the protective order in just a moment.  But I do not believe it's going to take me more than a day or two to get you a final decision on what I'm going to be doing there.

MR. RIZZO:  Okay.

THE COURT:  So we are in May.  Let's go ahead and set it out -- how about November 15th?

MR. RIZZO:  That's fine for the plaintiff, Your Honor.

THE COURT:  Ms. Schneider?

MS. SCHENIDER:  Yeah.  I am in agreement that the timing of the protective order is vital.

And so November 15th is certainly good on my calendar. We would --

THE COURT:  Okay.

MS. SCHENIDER:  -- do everything we can to comply with discovery.

THE COURT:  Perfect.  And again, I will -- I will make the commitment too to get that issue resolved so you can both get going on discovery.

With respect to the dispositive motions -- and we're pushing it into the holiday season -- would December 15th work for filing dispositive motions?  And if there's dispositive motions -- and then with respect to the ADR report and pretrial order, I would set it out 30 days from the date dispositive motions are ruled on, or by January 15th if no dispositive motions are filed.

So I think the question would be is December 15th adequate for -- adequate time for filing dispositive motions?

MS. SCHENIDER:  That works for the defendants.

THE COURT:  Okay.  Then December 15th it will be.

MR. RIZZO:  Judge?

THE COURT:  Oh, yes.

MR. RIZZO:  If I may.  For the plaintiff, this is Mr. Rizzo.

My concern with that date is where would the expert discovery fall in was the -- if the Court was --

THE COURT:  Yeah.  Thanks for asking for that, question.

You know, I'm going to rely on how the both of you, the three of you are wanting to try the case.

So there are times in which parties would like to get dispositive motions resolved before they do discovery -- expert discovery and disclosures and reports and then depositions if necessary.  Depending on when your experts are going to be needed, then maybe we need to incorporate expert disclosures prior to dispositive motions.

So what -- what are your thoughts about when expert disclosures would be necessary -- needed?  And I think that turns on dispositive -- on what the point or the focus of the dispositive motions would be.

MR. RIZZO:  Right.  Again, for the plaintiff, it's Mr. Rizzo.

Judge, in the past, at least with my cases, we've had -- we finished fact discovery and then we have picked up with liability experts and then damages experts.  And then again -- and I'm not beholden to this, but then typically the dispositive motions deadline follows.

So I like what the Court is suggesting, that the parties here could complete all discovery, if that's what the Court was contemplating, by the November 15 deadline, and then 30 or 45 days.  To be honest, Judge, because of the holidays, I would say, at least from our standpoint, 45 days.  I'd have the summary judgment motion in early or mid January, would be preferable.  But I could -- I could foresee that we could complete fact and expert discovery by that November date.

THE COURT:  Ms. Schneider, fact and expert discovery by November 15th?

MS. SCHENIDER:  I think that's doable.  I don't have any objection to extending dispositive motions to comply with the fact that we would have expert discovery finished by the 15th of November.

THE COURT:  All right.  And when we say "expert discovery," is there a time that you -- a date by which you want to set disclosures and then reports?  Or that the parties are -- you're going to resolve all that in advance and internally, so that way, you know, it's all going to be done, no questions asked, by November 15th?  I'm happy to set dates prior for disclosures of experts, if that helps.

Mr. Rizzo, what are your thoughts?

MR. RIZZO:  I'm -- I'm wondering whether it might make sense for Ms. Schneider and I to get together on that, Judge, and then come back to the Court with a proposal.

THE COURT:  Why don't we do this?  Okay.  It seems to be that everybody is onboard with the idea that all discovery under the sun will be completed by November 15th, and then I'll let the two of you confer to identify dates in -- within that time frame for specific disclosures or discovery to be had, expert or otherwise.  I'd like you to just go ahead and submit a proposed joint discovery schedule with the November 15th deadline as your stop point, and then we'll go ahead and enter an order consistent with whatever it is the both of you tell me.

MS. SCHENIDER:  Okay.

THE COURT:  And then --

MR. RIZZO:  That sounds good, Your Honor.

THE COURT:  Perfect.

How about we set dispositive motions to January 19th, due?

MS. SCHENIDER:  Okay.

MR. RIZZO:  Okay.

THE COURT:  And that gives a little bit more than a month beyond and -- to get those filed.

And then the ADR report and pretrial order is due 30 days after dispositive motions are ruled on, or by February 20th if no dispositive motions are filed and --

MR. RIZZO:  -- for the plaintiffs --

THE COURT:  Go ahead.

MR. RIZZO:  Sorry.  I didn't mean to interrupt --

THE COURT: No, no, no. Sorry. Go ahead.

MR. RIZZO: I was thinking when I heard that, that the 30 days after the dispositive motions would probably be best, from the plaintiff's standpoint.

THE COURT: Yeah, and that's fine. Usually I put it in the alternative. You know, I suspect in a case like this dispositive motions are going to be filed, and so it's going to be 30 days after they're ruled on. But just in case somebody decides not to file dispositive motions, then we'll have a definite stop date.

MR. RIZZO: Okay.

THE COURT: The other thing I want to encourage the parties to think about is to consent to a magistrate judge. If you do, I will remain your presiding judge all the way through trial.

There are some advantages to consenting to a magistrate judge. One is, is that you'll be able to then rely on my decisions, whether -- particularly in the dispositive motions arena, to be able to move forward. Otherwise, it adds certainly more time to have a district judge review any objections.

And then I think the most important consideration is that if the parties consent, then we will be able to identify dates for trial on my calendar far sooner than you will be able to do with a district judge. You both know you won't be able to

get a trial date with a district judge until after dispositive motions have been resolved, which puts the determination of a trial date out even further, which means that the calendars get full for trial.

So you don't have to tell me what you were planning on doing, if anything at all.  But if you are considering and are deciding to go ahead and consent, which I encourage you to do, please do so as soon as you can so that way we can also try to identify some trial dates for this case going forward.

There are a couple other things before we get to the protective order question.

If there are any questions about discovery going forward, any disputes about how to resolve them, I prefer to resolve those questions informally.  First, by an email to Ms. Klein, the parties can submit a joint statement summarizing what the disputes are so I can try to resolve it by email correspondence.

Usually what happens is that I ask for a quick-set telephone conference so I can ask more questions, make sure I understand what the parties are concerned about, and then I'll rule from the telephone.  So that way, we can keep everything going.

If we end up in a motion to compel briefing schedule, it will undoubtedly end up forcing us to extend deadlines across the table.  I like to avoid that if we can.

And then if there's any -- any questions about chambers practices or my courtroom practices that aren't answered on the website, always free to call my office and talk to Ms. Klein and she'd be happy to help you navigate through anything.

Any questions about any processes that you have in mind right now that we should talk -- take-up?  Mr. Rizzo or Ms. Schneider?

MR. RIZZO:  Your Honor --

(Indistinguishable crosstalk.)

THE COURT:  How about Mr. Rizzo first.

MR. RIZZO:  And maybe we were going to say the same thing.  I don't know.

But I think it would be helpful, given the context of this case, if we could spend a little bit of time with the Court on the phone and just walk through the protective order issues. I think that would be helpful.  I'd like to hear from -- a little bit more from Ms. Schneider, because she and I did confer, I think we reached agreement on some provisions, but there's some obviously we're going to need Your Honor to decide.

But in any event, I feel that it would be helpful to give the Court some background and context for a protective order in this type of litigation.

THE COURT:  All right.  And I -- and you had mentioned, Mr. Rizzo, that you and Ms. Schneider have worked on

similar cases in the past; correct?

MR. RIZZO:  Yes.

THE COURT:  All right.  And have you both addressed similar protective orders in the past?

MR. RIZZO:  Well, not necessarily --

MS. SCHENIDER:  We certainly have.

(Indistinguishable crosstalk.)

MR. RIZZO:  Sorry.

THE COURT:  How about, Ms. Schneider, what has been your experience of dealing with similar protective orders?  Or how similar have they been in the past?

MS. SCHENIDER:  Very similar.  As noted in our briefing, Your Honor, what we want is the protective order that has been approved by the federal court.

And that's what we're striving to do in all cases, is to have a standard, and this is what we are doing, is submitting a standard protective order.  Ms. Rizzo has his belief about what should be in the memo.  And we have conferred.  We agree on some things, but not on others.

THE COURT:  Okay.  And the primary points on which you disagree are what?

MS. SCHENIDER:  Well, the primary one is the right to have the documents returned at the end of litigation.  These are highly confidential documents and we believe they should be returned when litigation is finished.

THE COURT:  And have there been past protective orders approved by the district court requiring that return?

MS. SCHENIDER:  Yes.

MR. RIZZO:  No.  No, Your Honor.

MS. SCHENIDER:  Well --

MR. RIZZO:  Not in our experience.

THE COURT:  Okay.

MS. SCHENIDER:  Well, in our experience, we have.

THE COURT:  Okay.  So there are two different experiences.

Again, first with Ms. Schneider, what was similar and then what was different about the cases in which the judges ordered return of the documents compared to the case that we have here?

MS. SCHENIDER:  I think there is nothing that is dissimilar.  What the issue becomes is whether or not the Court believes that a party is entitled to retain the records for their own needs.  Some courts in state but -- and maybe a few district court judges have said to us that opposing counsel may keep an archival copy, but we also have had decisions where they said, no, all documents must be returned.

THE COURT:  Okay.  Mr. Rizzo, what would be the value to your office of retaining an archive copy of some of these protected documents?

MR. RIZZO:  Okay, Your Honor.  I'm going to answer

that question.  I think there are more issues in front of the parties.  So if I could just list those out and then walk my way up to the final disposition issue.

I think -- and I'm trying to answer the Court's initial question, but the difference is in these two orders -- and I boiled them down to -- number one is who has the burden of proof regarding establishing both confidentiality as well as claims of privilege and work product.  That's issue one.

Issue two is our ability to meet with witnesses who I've identified as persons in our form of order who are mentioned and referenced in the child welfare documents that we anticipate receiving.

The other issue is we've tried to insert a provision for collateral litigation involving, for example, being able to utilize the safe home study, right, in connection with other persons who were in that home who experienced or may have experienced abuse and neglect.

And then the final issue, the one that Ms. Schneider is mainly focused on, is the final disposition, and that's about our ability to keep a complete client file, because we're representing children, and when they turn 18, they have the ability to consider a professional malpractice claim.

And -- and if I may, Judge, the one concern -- this is why I wanted to talk with the Court a bit -- is that I think the tier 1 order that's on the court's website -- and I don't have

any proof for this, Your Honor, because I can't trace the history -- but I do believe that that order really is pertaining to or arose from intellectual property and trade secret type cases.  And that's why, for example, the tier 1 order distinguishes between in-house counsel and outside counsel, i.e., the law does not want -- the law wants to limit the review of sensitive trade secrets to a company's in-house counsel so that the in-house counsel cannot share those with the corporation's design team or manufacturing team, and none of that applies here.

And I've cited law in my motion that these records can be released to children and their families -- and I cited the Court, it's 409 -- ORS 409.225, and these records are not trade secrets or intellectual property of the State of Oregon.

So with that background, and coming full circle, we feel like as lawyers for children, we need to keep a file copy at the close of the case subject to a protective order, and to force us to disgorge our file on the premise that these are sensitive records and what have you exposes us to malpractice.

THE COURT:  Ms. Schneider?

MS. SCHENIDER:  We disagree.  We do not believe that there is any issue of malpractice in this matter at all.  What we're talking about are, again, highly confidential documents.  These are not just documents that pertain to the children that are the subject of litigation, but they also pertain to family

members, et cetera, non-parties to the litigation.

And to have those kinds of documents -- we're not talking about attorneys' notes, conversations, any kind of those things.  What we're talking about are Oregon Department of Human Services records which apply and are extremely confidential, protected by law, and we have a duty to everybody mentioned in those records to keep those documents confidential, and if they remain in somebody's file without being destroyed, that diminishes the ability to protect those documents.

I don't see that additional protection is required for intellectual property than would be needed for somebody -- a nonparty who is mentioned in highly confidential documents that was adopted by the state.

THE COURT:  If I were to -- and I haven't made a decision, so I want to make sure it's clear to both parties when I ask you these questions I'm not hinting at any outcome.  I'm trying to explore some solutions.

If I were to order that those documents are to be returned at the close of all litigation, is the State, DHS, prepared to retain those records in their entirety without purging them for the time period in which minor parties would have been able to bring a claim against the plaintiff for malpractice?

MS. SCHENIDER:  Yes, Your Honor.  We have already represented that many times.  We do this as a matter of course.

The litigation would be archived and sealed and would be retained for 20 years.

THE COURT:  And --

MR. RIZZO:  Judge, may I respond to that?

THE COURT:  Yeah.  Go ahead, Mr. Rizzo.

MR. RIZZO:  We have experienced, in front of Judge Acosta, for example, where he had entered a protective order in a particular case, the *Mooney* case, very, very similar to what's happened here, and the State opposed our request to ask Judge Acosta for relief under the order under the *Foltz* case to allow us to access protected information in that case and use it in a pending case.  And in the course of that, the DOJ said that they had lost the records because they changed one or more of their file management systems, and the judge asked whether we would be willing to identify the PDFs that we had retained in our file, list them out, and then give copies to the State's lawyer.

So my point is, I appreciate Ms. Snyder's statements about her client's intentions, but I really am reluctant, hesitant, and afraid to rely on that, and I've had a very important experience where, again, they lost the documents or misplaced them or could no longer retrieve them from any of their backup systems.

THE COURT:  And as I understand it, the concern you have is that you want to be able to protect -- should there be a claim of malpractice, that you want to be able to have the

records available to you for a defense, and there really isn't any other reason for having those documents in the file; correct?

MR. RIZZO:  Exactly, Your Honor.  And subject to -- always subject to the protective order.

THE COURT:  Sure.

Any reason why the protective order can't incorporate an indemnification clause or -- if, in fact, the DHS -- DHS does lose these records if I were to order them and to have them retained in their possession for the next 20 years, they lose them, it's going to cost them.  But then you have recourse and you have somebody else at the table who's going to be responsible for covering the loss associated with having -- any potential cost or loss to you in terms of liability for malpractice if they aren't able to produce those documents.

MR. RIZZO:  Well, that could -- the Court could order that, Your Honor.  The only problem I would have there is that that would raise an indemnification suit with the DHS and there are potential tort claim notice issues.

In other words, I could see a host of other issues arising from having an indemnity provision in the event we can't produce our complete file for a former client and say to the former client, well, we acted pursuant to an order and so therefore, what, we now have to go to DHS 20 years or whatever or ten years, whatever, later.  So I just see that as being far

more complex than following the PLF guidelines and allowing counsel for a party to retain a complete copy of records which again, Judge, under the provisions I cited, do not belong to the State of Oregon and that they can be released.  In particular, with this case here, where you have the foster parent convicted of a crime, statute allows those documents to be released.

So I don't see -- I don't believe there's any legitimate basis other than generalized concerns of confidentiality and privacy that we hear repeatedly.  Beyond that, I don't think there's any legitimate concern to prevent me from keeping a complete copy of my file subject to a protective order.

THE COURT:  All right.

MS. SCHENIDER:  Your Honor, may I be heard on that?

THE COURT:  Yeah.  Last word, and then I'll need to move on.  I apologize.  I have some other scheduling conferences --

MS. SCHENIDER:  Yes.

THE COURT:  -- to take up.

Ms. Schneider?

MS. SCHENIDER:  Very briefly.

The records that we're talking about are not just the children's files.  The records that we're talking about, not only are they highly confidential, they are -- they pertain to people that are not parties to the litigation.  They pertain to

employees.  All of that kind of thing comes into play into this discussion as well.

THE COURT:  And is DHS willing to bear all costs associated with indemnification should you lose the documents if I ordered you to retain them?

MS. SCHENIDER:  Yes.

THE COURT:  And waive any statutes of limitation or tort claim notice issues or any other procedural issues associated with the extended time frame that we're dealing with?

If you want to keep those documents, then I think you get to bear the responsibility and liability for losing them in their entirety -- the liability in its entirety if you were to lose them.

MS. SCHENIDER:  I think that's true.

THE COURT:  Okay.  All right.  Well, then, let me think on it.  I appreciate everyone's arguments on this, and I will -- I will send a brief written description of what it is that I've decided.  And then I may ask the parties to confer, at least one of the parties to draft language consistent with what it is that I've ordered so that we can revisit that issue, the language, and getting that incorporated into the protective order, and I'll try to do that this week so we can keep this thing moving along.

Okay.  Anything else on the protective order, Mr. Rizzo?  No additional argument.  But any other issues that

need to be brought up?

I understand you do have the issue about burden of proof and the collateral litigation. Frankly, I'm inclined to favor incorporating the language that you've proposed, so I don't know if it's much of an issue for you to take up. I think, for me, the biggest issue is -- and really the only issue for me to have to resolve is the -- what to do with the return of documents.

MR. RIZZO: All right. I have no other -- other issues under that order, Your Honor.

Thank you.

THE COURT: And then, Ms. Schneider, anything else?

MS. SCHENIDER: No.

THE COURT: All right. I'll get to work after my conferences are concluded today and try to get you some language and my decision about what to do with the return of documents before the end of the week.

Thank you both very much.

MS. SCHENIDER: Thank you. Bye.

MR. RIZZO: Thank you, Your Honor.

(The proceedings concluded at 9:57 a.m.)

CERTIFICATE

STATE OF OREGON       )
                      ) ss.
COUNTY OF MULTNOMAH  )


        I, RYAN A. WHITE, a Registered Merit Reporter, Certified Realtime Reporter, and Certified Shorthand Reporter for Oregon and Washington, do hereby certify:

        That the foregoing transcript of an audio recording was prepared under my direction and that it is a complete and accurate transcript of the audio recording to the best of my ability;

        That I am not a relative, employee, attorney, or counsel to this action, or of any such attorney or party or financially interested in said action or outcome thereof;


        DATED this 12th day of May, 2023.




                              // Ryan White
                              RYAN WHITE
                              Registered Merit Reporter
                              Certified Realtime Reporter
                              Expires 9/30/2025
                              Oregon CSR No. 10-0419
                              Expires 12/31/2023

1

**1**

**1** [2] - 16:25, 17:4
**15** [1] - 9:3
**15th** [11] - 6:25, 7:5, 7:14, 7:18, 7:20, 7:23, 9:10, 9:14, 9:20, 10:3, 10:7
**18** [1] - 16:21
**19th** [1] - 10:14

**2**

**20** [3] - 19:2, 20:10, 20:24
**20th** [1] - 10:22

**3**

**30** [5] - 7:17, 9:4, 10:21, 11:3, 11:8

**4**

**409** [1] - 17:13
**409.225** [1] - 17:13
**45** [2] - 9:4, 9:5

**6**

**60** [1] - 6:2

**9**

**9:57** [1] - 23:22

**A**

**a.m** [1] - 23:22
**ability** [4] - 16:9, 16:20, 16:22, 18:9
**able** [10] - 11:17, 11:19, 11:23, 11:24, 11:25, 16:14, 18:22, 19:24, 19:25, 20:15
**absolutely** [1] - 4:1
**abuse** [1] - 16:17
**access** [1] - 19:11
**accustomed** [1] - 4:11
**Acosta** [2] - 19:7, 19:10
**acted** [1] - 20:23
**additional** [2] - 18:10, 22:25
**addressed** [1] - 14:3
**adds** [1] - 11:19
**adequate** [2] - 7:21
**adopted** [1] - 18:13
**ADR** [2] - 7:16, 10:20
**advance** [1] - 9:18
**advantages** [1] - 11:16
**afraid** [1] - 19:19
**agree** [1] - 14:18
**agreement** [2] - 7:3, 13:19
**ahead** [7] - 6:24, 10:6, 10:8, 10:24, 11:1, 12:7, 19:5
**allow** [1] - 19:10
**allowing** [1] - 21:1
**allows** [1] - 21:6
**alternative** [1] - 11:6
**answer** [3] - 6:11, 15:25, 16:4
**answered** [1] - 13:3
**anticipate** [1] - 16:12
**apologize** [1] - 21:16

**applies** [1] - 17:10
**apply** [1] - 18:5
**appreciate** [3] - 4:22, 19:17, 22:16
**approved** [2] - 14:14, 15:2
**archival** [1] - 15:20
**archive** [1] - 15:23
**archived** [1] - 19:1
**arena** [1] - 11:19
**argument** [1] - 22:25
**arguments** [1] - 22:16
**arising** [1] - 20:21
**arose** [1] - 17:3
**associated** [3] - 20:13, 22:4, 22:9
**attorneys'** [1] - 18:3
**available** [1] - 20:1
**avoid** [1] - 12:25

**B**

**background** [2] - 13:22, 17:15
**backup** [1] - 19:22
**ball** [1] - 6:10
**basis** [1] - 21:8
**bear** [2] - 22:3, 22:11
**becomes** [1] - 15:16
**beholden** [1] - 8:24
**belief** [1] - 14:17
**believes** [1] - 15:17
**belong** [1] - 21:3
**best** [2] - 4:12, 11:3
**between** [1] - 17:5
**beyond** [2] - 10:19, 21:9
**biggest** [1] - 23:6
**bit** [5] - 6:4, 10:18, 13:15, 13:18, 16:24
**boiled** [1] - 16:6
**brief** [1] - 22:17
**briefing** [2] - 12:23, 14:13
**briefly** [1] - 21:21
**bring** [1] - 18:22
**brought** [1] - 23:1
**burden** [2] - 16:7, 23:2
**bye** [1] - 23:19

**C**

**calendar** [2] - 7:5, 11:24
**calendars** [1] - 12:3
**cannot** [1] - 17:8
**case** [13] - 8:8, 11:6, 11:8, 12:9, 13:15, 15:13, 17:17, 19:8, 19:10, 19:11, 19:12, 21:5
**cases** [6] - 6:7, 8:21, 14:1, 14:15, 15:12, 17:4
**certainly** [3] - 7:5, 11:20, 14:6
**cetera** [2] - 5:21, 18:1
**chambers** [1] - 13:2
**changed** [1] - 19:13
**child** [1] - 16:11
**children** [4] - 16:21, 17:12, 17:16, 17:24
**children's** [1] - 21:23
**circle** [1] - 17:15
**cited** [3] - 17:11, 17:12, 21:3
**claim** [5] - 16:22, 18:22, 19:25, 20:19, 22:8

**claims** [1] - 16:8
**clause** [1] - 20:8
**clear** [1] - 18:15
**client** [3] - 16:20, 20:22, 20:23
**client's** [1] - 19:18
**close** [2] - 17:17, 18:19
**collateral** [2] - 16:14, 23:3
**collect** [1] - 4:6
**coming** [1] - 17:15
**commitment** [1] - 7:11
**company's** [1] - 17:7
**compared** [1] - 15:13
**compel** [1] - 12:23
**complaint** [1] - 5:4
**complete** [7] - 5:19, 9:2, 9:8, 16:20, 20:22, 21:2, 21:11
**completed** [1] - 10:3
**complex** [1] - 21:1
**comply** [2] - 7:8, 9:12
**concern** [4] - 8:3, 16:23, 19:23, 21:10
**concerned** [1] - 12:20
**concerns** [1] - 21:8
**concluded** [2] - 23:15, 23:22
**confer** [3] - 10:4, 13:19, 22:18
**conference** [1] - 12:19
**conferences** [2] - 21:17, 23:15
**conferred** [2] - 5:9, 14:18
**confidential** [6] - 14:24, 17:23, 18:5, 18:7, 18:12, 21:24
**confidentiality** [2] - 16:7, 21:9
**connection** [1] - 16:15
**consent** [3] - 11:13, 11:23, 12:7
**consenting** [1] - 11:16
**consider** [1] - 16:22
**consideration** [1] - 11:22
**considering** [1] - 12:6
**consistent** [2] - 10:9, 22:19
**contemplating** [1] - 9:3
**context** [2] - 13:14, 13:22
**conversations** [1] - 18:3
**convicted** [1] - 21:5
**copies** [1] - 19:16
**copy** [5] - 15:20, 15:23, 17:16, 21:2, 21:11
**corporation's** [1] - 17:9
**correct** [3] - 4:9, 14:1, 20:3
**correctly** [1] - 4:15
**correspondence** [1] - 12:17
**cost** [2] - 20:11, 20:14
**costs** [1] - 22:3
**counsel** [6] - 15:19, 17:5, 17:7, 17:8, 21:2
**couple** [2] - 5:2, 12:10
**course** [2] - 18:25, 19:12
**COURT** [51] - 4:3, 4:5, 4:8, 4:13, 4:17, 4:21, 4:25, 5:13, 6:9, 6:13, 6:15, 6:24, 7:2, 7:7, 7:10, 7:23, 7:25, 8:5, 9:9, 9:15, 10:1, 10:11, 10:13, 10:18, 10:24, 11:1, 11:5, 11:12, 13:11, 13:24, 14:3, 14:9, 14:20, 15:1, 15:7, 15:9, 15:22, 17:20, 18:14, 19:3, 19:5, 19:23, 20:6, 21:13, 21:15, 21:19, 22:3, 22:7, 22:15, 23:12, 23:14

**Court** [10] - 8:4, 9:1, 9:3, 9:25, 13:15, 13:22, 15:16, 16:24, 17:13, 20:16
**court** [4] - 6:10, 14:14, 15:2, 15:19
**Court's** [1] - 16:4
**court's** [1] - 16:25
**courtroom** [1] - 13:2
**courts** [1] - 15:18
**covering** [1] - 20:13
**crime** [1] - 21:6
**crosstalk** [3] - 6:14, 13:10, 14:7

### D

**damages** [1] - 8:23
**date** [7] - 7:17, 8:3, 9:8, 9:16, 11:10, 12:1, 12:3
**dates** [7] - 5:9, 5:12, 5:13, 9:20, 10:4, 11:24, 12:9
**days** [7] - 6:2, 7:17, 9:4, 9:5, 10:21, 11:3, 11:8
**deadline** [3] - 8:25, 9:3, 10:8
**deadlines** [4] - 5:8, 5:16, 12:24
**dealing** [2] - 14:10, 22:9
**December** [3] - 7:14, 7:20, 7:23
**decide** [1] - 13:20
**decided** [1] - 22:18
**decides** [1] - 11:9
**deciding** [1] - 12:7
**decision** [3] - 6:21, 18:15, 23:16
**decisions** [2] - 11:18, 15:20
**defendant** [2] - 4:17, 4:23
**defendants** [1] - 7:22
**defense** [1] - 20:1
**definite** [1] - 11:10
**deftly** [1] - 6:9
**Department** [1] - 18:4
**depositions** [2] - 5:20, 8:11
**description** [1] - 22:17
**design** [1] - 17:9
**destroyed** [1] - 18:8
**detailed** [1] - 5:17
**determination** [1] - 12:2
**DHS** [6] - 18:19, 20:8, 20:18, 20:24, 22:3
**difference** [1] - 16:5
**different** [2] - 15:9, 15:12
**diminishes** [1] - 18:9
**disagree** [2] - 14:21, 17:21
**disclosures** [7] - 5:21, 8:11, 8:13, 8:16, 9:17, 9:21, 10:5
**discovery** [22] - 5:8, 5:16, 5:17, 5:20, 5:21, 6:18, 7:9, 7:12, 8:4, 8:10, 8:11, 8:22, 9:2, 9:8, 9:9, 9:13, 9:16, 10:2, 10:5, 10:7, 12:12
**discussion** [1] - 22:2
**disgorge** [1] - 17:18
**disposition** [2] - 16:3, 16:19
**dispositive** [21] - 5:8, 7:13, 7:15, 7:17, 7:18, 7:21, 8:10, 8:14, 8:17, 8:18, 8:25, 9:12, 10:14, 10:21, 10:22, 11:3, 11:7, 11:9, 11:18, 12:1
**disputes** [2] - 12:13, 12:16
**dissimilar** [1] - 15:16
**distinguishes** [1] - 17:5

**district** [5] - 11:20, 11:25, 12:1, 15:2, 15:19
**doable** [1] - 9:11
**document** [1] - 5:20
**documents** [21] - 14:23, 14:24, 15:13, 15:21, 15:24, 16:11, 17:23, 17:24, 18:2, 18:7, 18:9, 18:12, 18:18, 19:20, 20:2, 20:15, 21:6, 22:4, 22:10, 23:8, 23:16
**DOJ** [1] - 19:12
**done** [1] - 9:19
**down** [1] - 16:6
**draft** [1] - 22:19
**due** [2] - 10:15, 10:20
**duty** [1] - 18:6

### E

**early** [1] - 9:6
**eat** [1] - 6:3
**email** [2] - 12:14, 12:16
**employees** [1] - 22:1
**encourage** [2] - 11:12, 12:7
**end** [4] - 12:23, 12:24, 14:23, 23:17
**enter** [1] - 10:8
**entered** [2] - 5:25, 19:7
**entirety** [3] - 18:20, 22:12
**entitled** [1] - 15:17
**establishing** [1] - 16:7
**et** [2] - 5:20, 18:1
**event** [2] - 13:21, 20:21
**exactly** [1] - 20:4
**example** [4] - 6:1, 16:14, 17:4, 19:7
**experience** [4] - 14:10, 15:6, 15:8, 19:20
**experienced** [3] - 16:16, 16:17, 19:6
**experiences** [1] - 15:10
**expert** [10] - 5:21, 8:3, 8:10, 8:13, 8:15, 9:8, 9:9, 9:13, 9:15, 10:6
**experts** [4] - 8:12, 8:23, 9:21
**explore** [1] - 18:17
**exposes** [1] - 17:19
**extend** [1] - 12:24
**extended** [1] - 22:9
**extending** [1] - 9:12
**extension** [1] - 5:19
**extremely** [1] - 18:5

### F

**fact** [5] - 8:22, 9:8, 9:9, 9:13, 20:8
**fall** [1] - 8:4
**families** [1] - 17:12
**family** [1] - 17:25
**far** [2] - 11:24, 20:25
**favor** [1] - 23:4
**February** [1] - 10:22
**federal** [1] - 14:14
**few** [1] - 15:18
**figure** [1] - 6:16
**figured** [2] - 5:8, 5:14
**file** [10] - 11:9, 16:20, 17:16, 17:18, 18:8, 19:14, 19:15, 20:2, 20:22, 21:11
**filed** [4] - 7:19, 10:19, 10:22, 11:7
**files** [1] - 21:23

**filing** [2] - 7:15, 7:21
**final** [5] - 6:3, 6:21, 16:3, 16:18, 16:19
**fine** [2] - 7:1, 11:5
**finish** [1] - 6:18
**finished** [3] - 8:22, 9:13, 14:25
**first** [4] - 5:14, 12:14, 13:11, 15:11
**focus** [1] - 8:17
**focused** [1] - 16:19
**following** [1] - 21:1
**follows** [1] - 8:25
**Foltz** [1] - 19:10
**force** [1] - 17:18
**forcing** [1] - 12:24
**foresee** [1] - 9:7
**form** [2] - 6:17, 16:10
**former** [2] - 20:22, 20:23
**forward** [3] - 11:19, 12:9, 12:13
**foster** [1] - 21:5
**four** [1] - 5:15
**frame** [2] - 10:5, 22:9
**frankly** [1] - 23:3
**free** [1] - 13:3
**front** [2] - 16:1, 19:6
**full** [2] - 12:4, 17:15
**future** [1] - 4:9

### G

**generalized** [1] - 21:8
**given** [1] - 13:14
**grant** [1] - 6:16
**guidelines** [1] - 21:1

### H

**happy** [2] - 9:20, 13:4
**hear** [2] - 13:17, 21:9
**heard** [2] - 11:2, 21:14
**help** [1] - 13:4
**helpful** [3] - 13:14, 13:17, 13:21
**helps** [1] - 9:21
**hesitant** [2] - 6:4, 19:19
**highly** [4] - 14:24, 17:23, 18:12, 21:24
**hinting** [1] - 18:16
**history** [1] - 17:2
**holiday** [1] - 7:14
**holidays** [1] - 9:4
**home** [2] - 16:15, 16:16
**honest** [1] - 9:4
**Honor** [20] - 4:1, 4:11, 4:16, 4:18, 5:11, 5:24, 7:1, 10:12, 13:9, 13:20, 14:13, 15:4, 15:25, 17:1, 18:24, 20:4, 20:17, 21:14, 23:10, 23:20
**host** [1] - 20:20
**house** [3] - 17:5, 17:7, 17:8
**Human** [1] - 18:4

### I

**i.e** [1] - 17:6
**idea** [1] - 10:2
**identified** [1] - 16:10
**identify** [4] - 10:4, 11:23, 12:9, 19:15
**important** [3] - 4:14, 11:22, 19:20

3

**in-house** [3] - 17:5, 17:7, 17:8
**inclined** [1] - 23:3
**including** [1] - 5:21
**incorporate** [2] - 8:13, 20:7
**incorporated** [1] - 22:21
**incorporating** [1] - 23:4
**indemnification** [3] - 20:8, 20:18, 22:4
**indemnity** [1] - 20:21
**Indistinguishable** [3] - 6:14, 13:10, 14:7
**informally** [1] - 12:14
**information** [1] - 19:11
**initial** [2] - 5:24, 16:5
**insert** [1] - 16:13
**intellectual** [3] - 17:3, 17:14, 18:11
**intentions** [1] - 19:18
**internally** [1] - 9:19
**interrupt** [1] - 10:25
**involved** [1] - 5:17
**involving** [1] - 16:14
**issue** [15] - 5:5, 5:25, 7:11, 15:16, 16:3, 16:8, 16:9, 16:13, 16:18, 17:22, 22:20, 23:2, 23:5, 23:6
**issues** [8] - 13:16, 16:1, 20:19, 20:20, 22:8, 22:25, 23:10

**J**

**January** [3] - 7:18, 9:6, 10:14
**Jill** [1] - 4:19
**joint** [2] - 10:7, 12:15
**Judge** [7] - 6:12, 9:4, 9:24, 16:23, 19:6, 19:9, 21:3
**judge** [10] - 7:24, 8:21, 11:13, 11:14, 11:17, 11:20, 11:25, 12:1, 19:4, 19:14
**judges** [2] - 15:12, 15:19
**judgment** [1] - 9:6

**K**

**keep** [7] - 12:21, 15:20, 16:20, 17:16, 18:7, 22:10, 22:22
**keeping** [1] - 21:11
**key** [1] - 5:25
**kind** [2] - 18:3, 22:1
**kinds** [1] - 18:2
**Klein** [2] - 12:15, 13:4

**L**

**language** [4] - 22:19, 22:21, 23:4, 23:15
**last** [4] - 4:13, 4:14, 4:19, 21:15
**law** [4] - 17:6, 17:11, 18:6
**lawyer** [1] - 19:16
**lawyers** [1] - 17:16
**lay** [1] - 5:20
**least** [3] - 8:21, 9:5, 22:19
**legitimate** [2] - 21:8, 21:10
**liability** [4] - 8:23, 20:14, 22:11, 22:12
**likely** [1] - 4:12
**limit** [1] - 17:6
**limitation** [1] - 22:7
**lined** [1] - 5:2
**list** [2] - 16:2, 19:16
**litigation** [10] - 13:23, 14:23, 14:25,

16:14, 17:25, 18:1, 18:19, 19:1, 21:25, 23:3
**look** [1] - 6:18
**lose** [4] - 20:9, 20:10, 22:4, 22:13
**losing** [1] - 22:11
**loss** [2] - 20:13, 20:14
**lost** [2] - 19:13, 19:20

**M**

**magistrate** [2] - 11:13, 11:17
**malpractice** [6] - 16:22, 17:19, 17:22, 18:23, 19:25, 20:15
**management** [1] - 19:14
**manufacturing** [1] - 17:9
**matter** [3] - 5:5, 17:22, 18:25
**matters** [1] - 5:3
**mean** [2] - 6:11, 10:25
**means** [1] - 12:3
**meet** [1] - 16:9
**members** [1] - 18:1
**memo** [1] - 14:18
**mentioned** [4] - 13:25, 16:11, 18:6, 18:12
**mid** [1] - 9:6
**might** [1] - 9:23
**mind** [1] - 13:7
**minor** [1] - 18:21
**misplaced** [1] - 19:21
**mispronounce** [1] - 4:10
**moment** [2] - 5:6, 6:20
**month** [2] - 6:4, 10:19
**months** [4] - 5:15, 5:22, 6:1, 6:16
**Mooney** [1] - 19:8
**morning** [1] - 4:18
**most** [1] - 11:22
**motion** [5] - 5:3, 5:8, 9:6, 12:23, 17:11
**motions** [19] - 7:13, 7:15, 7:16, 7:18, 7:19, 7:21, 8:10, 8:14, 8:18, 8:25, 9:12, 10:14, 10:21, 10:22, 11:3, 11:7, 11:9, 11:19, 12:2
**move** [3] - 6:7, 11:19, 21:16
**moving** [1] - 22:23
**MR** [29] - 5:11, 5:24, 6:11, 6:23, 7:1, 7:24, 8:1, 8:19, 9:23, 10:12, 10:17, 10:23, 10:25, 11:2, 11:11, 13:9, 13:12, 14:2, 14:5, 14:8, 15:4, 15:6, 15:25, 19:4, 19:6, 20:4, 20:16, 23:9, 23:20
**MS** [29] - 4:1, 4:4, 4:6, 4:11, 4:16, 4:18, 4:24, 7:3, 7:8, 7:22, 9:11, 10:10, 10:16, 14:6, 14:12, 14:22, 15:3, 15:5, 15:8, 15:15, 17:21, 18:24, 21:14, 21:18, 21:21, 22:6, 22:14, 23:13, 23:19
**must** [1] - 15:21

**N**

**name** [2] - 4:13, 4:19
**names** [1] - 4:14
**navigate** [1] - 13:4
**necessarily** [1] - 14:5
**necessary** [3] - 5:18, 8:12, 8:16
**need** [7] - 5:2, 5:19, 8:13, 13:20, 17:16,

21:15, 23:1
**needed** [3] - 8:13, 8:16, 18:11
**needs** [1] - 15:18
**neglect** [1] - 16:17
**next** [1] - 20:10
**non** [1] - 18:1
**non-parties** [1] - 18:1
**none** [1] - 17:9
**nonparty** [1] - 18:12
**normally** [1] - 5:15
**noted** [1] - 14:12
**notes** [1] - 18:3
**nothing** [1] - 15:15
**notice** [2] - 20:19, 22:8
**November** [9] - 6:25, 7:5, 9:3, 9:8, 9:10, 9:14, 9:20, 10:3, 10:7
**number** [1] - 16:6

**O**

**objection** [1] - 9:12
**objections** [1] - 11:21
**obviously** [1] - 13:20
**office** [2] - 13:3, 15:23
**onboard** [1] - 10:2
**once** [1] - 6:5
**one** [11] - 5:3, 6:17, 6:18, 11:17, 14:22, 16:6, 16:8, 16:18, 16:23, 19:13, 22:19
**opposed** [1] - 19:9
**opposing** [1] - 15:19
**order** [34] - 5:4, 5:5, 5:19, 5:25, 6:3, 6:5, 6:17, 6:19, 7:4, 7:17, 10:9, 10:20, 12:11, 13:16, 13:23, 14:13, 14:17, 16:10, 16:25, 17:2, 17:4, 17:17, 18:18, 19:7, 19:10, 20:5, 20:7, 20:9, 20:16, 20:23, 21:12, 22:22, 22:24, 23:10
**ordered** [3] - 15:13, 22:5, 22:20
**orders** [4] - 14:4, 14:10, 15:1, 16:6
**Oregon** [3] - 17:14, 18:4, 21:4
**ORS** [1] - 17:13
**otherwise** [2] - 10:6, 11:19
**outcome** [1] - 18:16
**outside** [1] - 17:5
**own** [1] - 15:18

**P**

**parent** [1] - 21:5
**particular** [2] - 19:8, 21:4
**particularly** [1] - 11:18
**parties** [15] - 5:9, 8:9, 9:2, 9:17, 11:13, 11:23, 12:15, 12:20, 16:2, 18:1, 18:15, 18:21, 21:25, 22:18, 22:19
**party** [3] - 5:4, 15:17, 21:2
**past** [5] - 8:21, 14:1, 14:4, 14:11, 15:1
**PDFs** [1] - 19:15
**pending** [2] - 5:3, 19:12
**people** [1] - 21:25
**perfect** [2] - 7:10, 10:13
**perfectly** [1] - 6:15
**perhaps** [2] - 5:17, 6:17
**period** [1] - 18:21
**persons** [2] - 16:10, 16:16
**pertain** [4] - 17:24, 17:25, 21:24, 21:25

**pertaining** [1] - 17:2
**phone** [1] - 13:16
**picked** [1] - 8:22
**place** [1] - 6:6
**plaintiff** [4] - 7:1, 8:1, 8:19, 18:22
**plaintiff's** [1] - 11:4
**plaintiffs** [1] - 10:23
**planning** [1] - 12:5
**play** [1] - 22:1
**PLF** [1] - 21:1
**point** [3] - 8:17, 10:8, 19:17
**points** [1] - 14:20
**possession** [1] - 20:10
**potential** [2] - 20:14, 20:19
**practices** [2] - 13:2
**prefer** [1] - 12:13
**preferable** [1] - 9:7
**premise** [1] - 17:18
**prepared** [1] - 18:20
**presiding** [1] - 11:14
**pretrial** [2] - 7:16, 10:20
**prevent** [1] - 21:10
**primary** [2] - 14:20, 14:22
**privacy** [1] - 21:9
**privilege** [1] - 16:8
**problem** [1] - 20:17
**procedural** [1] - 22:8
**proceedings** [1] - 23:22
**processes** [1] - 13:6
**produce** [2] - 20:15, 20:22
**product** [1] - 16:8
**professional** [1] - 16:22
**pronounces** [1] - 4:15
**proof** [3] - 16:7, 17:1, 23:3
**property** [3] - 17:3, 17:14, 18:11
**proposal** [1] - 9:25
**proposed** [2] - 10:7, 23:4
**protect** [2] - 18:9, 19:24
**protected** [3] - 15:24, 18:6, 19:11
**protection** [1] - 18:10
**protective** [22] - 5:4, 5:5, 5:25, 6:3, 6:16, 6:19, 7:4, 12:11, 13:16, 13:22, 14:4, 14:10, 14:13, 14:17, 15:1, 17:17, 19:7, 20:5, 20:7, 21:11, 22:21, 22:24
**provision** [2] - 16:13, 20:21
**provisions** [2] - 13:19, 21:3
**purging** [1] - 18:21
**pursuant** [1] - 20:23
**pushing** [1] - 7:14
**put** [2] - 6:10, 11:5
**puts** [1] - 12:2

## Q

**questions** [7] - 9:20, 12:12, 12:14, 12:19, 13:1, 13:6, 18:16
**quick** [1] - 12:18
**quick-set** [1] - 12:18

## R

**raise** [1] - 20:18
**rate** [1] - 6:8
**reached** [1] - 13:19

**really** [4] - 17:2, 19:18, 20:1, 23:6
**reason** [2] - 20:2, 20:7
**reasonable** [3] - 6:2, 6:8, 6:15
**receiving** [1] - 16:12
**records** [13] - 15:17, 17:11, 17:13, 17:19, 18:5, 18:7, 18:20, 19:13, 20:1, 20:9, 21:2, 21:22, 21:23
**recourse** [1] - 20:11
**referenced** [1] - 16:11
**regarding** [1] - 16:7
**relatively** [1] - 6:7
**released** [3] - 17:12, 21:4, 21:6
**relief** [1] - 19:10
**reluctant** [1] - 19:18
**rely** [3] - 8:7, 11:17, 19:19
**remain** [2] - 11:14, 18:8
**repeatedly** [1] - 21:9
**report** [2] - 7:16, 10:20
**reports** [2] - 8:11, 9:17
**represented** [1] - 18:25
**representing** [1] - 16:21
**request** [1] - 19:9
**required** [1] - 18:10
**requiring** [1] - 15:2
**resolve** [5] - 9:18, 12:13, 12:14, 12:16, 23:7
**resolved** [3] - 7:11, 8:10, 12:2
**respect** [3] - 5:13, 7:13, 7:16
**respond** [1] - 19:4
**responsibility** [1] - 22:11
**responsible** [1] - 20:13
**retain** [4] - 15:17, 18:20, 21:2, 22:5
**retained** [3] - 19:2, 19:15, 20:10
**retaining** [1] - 15:23
**retrieve** [1] - 19:21
**return** [4] - 15:2, 15:13, 23:7, 23:16
**returned** [4] - 14:23, 14:25, 15:21, 18:19
**review** [2] - 11:20, 17:6
**revisit** [1] - 22:20
**RIZZO** [29] - 5:11, 5:24, 6:11, 6:23, 7:1, 7:24, 8:1, 8:19, 9:23, 10:12, 10:17, 10:23, 10:25, 11:2, 11:11, 13:9, 13:12, 14:2, 14:5, 14:8, 15:4, 15:6, 15:25, 19:4, 19:6, 20:4, 20:16, 23:9, 23:20
**Rizzo** [12] - 5:11, 5:23, 8:2, 8:20, 9:22, 13:7, 13:11, 13:25, 14:17, 15:22, 19:5, 22:25
**roughly** [1] - 6:2
**rule** [1] - 12:21
**ruled** [3] - 7:18, 10:21, 11:8

## S

**safe** [1] - 16:15
**schedule** [2] - 10:7, 12:23
**scheduling** [1] - 21:16
**SCHENIDER** [24] - 4:18, 4:24, 7:3, 7:8, 7:22, 9:11, 10:10, 10:16, 14:6, 14:12, 14:22, 15:3, 15:5, 15:8, 15:15, 17:21, 18:24, 21:14, 21:18, 21:21, 22:6, 22:14, 23:13, 23:19
**Schneider** [15] - 4:19, 4:21, 6:6, 7:2, 9:9, 9:24, 13:8, 13:18, 13:25, 14:9, 15:11,

16:18, 17:20, 21:20, 23:12
**sealed** [1] - 19:1
**season** [1] - 7:14
**secret** [1] - 17:3
**secrets** [2] - 17:7, 17:14
**see** [4] - 18:10, 20:20, 20:25, 21:7
**send** [1] - 22:17
**sense** [1] - 9:24
**sensitive** [2] - 17:7, 17:19
**Services** [1] - 18:5
**set** [9] - 4:7, 4:8, 5:15, 6:24, 7:17, 9:17, 9:20, 10:14, 12:18
**share** [1] - 17:8
**shell** [1] - 4:7
**shells** [2] - 4:6, 4:8
**similar** [7] - 14:1, 14:4, 14:10, 14:11, 14:12, 15:11, 19:8
**six** [4] - 5:22, 6:1, 6:4, 6:16
**six-month** [1] - 6:4
**SKJELSET** [5] - 4:1, 4:4, 4:6, 4:11, 4:16
**Skjelset** [2] - 4:2, 4:3
**slur** [1] - 4:20
**Snyder's** [1] - 19:17
**solutions** [1] - 18:17
**soon** [1] - 12:8
**sooner** [1] - 11:24
**sorry** [3] - 10:25, 11:1, 14:8
**sounds** [1] - 10:12
**specific** [1] - 10:5
**spelled** [1] - 4:20
**spend** [2] - 5:1, 13:15
**stand** [1] - 4:14
**standard** [2] - 14:16, 14:17
**standpoint** [2] - 9:5, 11:4
**State** [4] - 17:14, 18:19, 19:9, 21:4
**state** [2] - 15:18, 18:13
**State's** [1] - 19:16
**statement** [1] - 12:15
**statements** [1] - 19:17
**statute** [1] - 21:6
**statutes** [1] - 22:7
**stop** [2] - 10:8, 11:10
**strike** [1] - 5:3
**striving** [1] - 14:15
**study** [1] - 16:15
**subject** [5] - 17:17, 17:25, 20:4, 20:5, 21:11
**submit** [2] - 10:6, 12:15
**submitting** [1] - 14:16
**suggesting** [1] - 9:1
**suit** [1] - 20:18
**summarizing** [1] - 12:15
**summary** [1] - 9:6
**sun** [1] - 10:3
**suspect** [1] - 11:6
**systems** [2] - 19:14, 19:22

## T

**table** [2] - 12:25, 20:12
**take-up** [1] - 13:7
**team** [2] - 17:9
**telephone** [2] - 12:19, 12:21

**ten** [1] - 20:25
**terms** [1] - 20:14
**THE** [51] - 4:3, 4:5, 4:8, 4:13, 4:17, 4:21, 4:25, 5:13, 6:9, 6:13, 6:15, 6:24, 7:2, 7:7, 7:10, 7:23, 7:25, 8:5, 9:9, 9:15, 10:1, 10:11, 10:13, 10:18, 10:24, 11:1, 11:5, 11:12, 13:11, 13:24, 14:3, 14:9, 14:20, 15:1, 15:7, 15:9, 15:22, 17:20, 18:14, 19:3, 19:5, 19:23, 20:6, 21:13, 21:15, 21:19, 22:3, 22:7, 22:15, 23:12, 23:14
**therefore** [2] - 4:6, 20:24
**thinking** [1] - 11:2
**third** [1] - 5:4
**third-party** [1] - 5:4
**thoughts** [3] - 5:23, 8:15, 9:22
**three** [1] - 8:8
**tier** [2] - 16:25, 17:4
**timing** [1] - 7:4
**today** [2] - 5:1, 23:15
**together** [2] - 4:14, 9:24
**took** [1] - 6:16
**tort** [2] - 20:19, 22:8
**trace** [1] - 17:1
**trade** [3] - 17:3, 17:7, 17:13
**trial** [6] - 11:15, 11:24, 12:1, 12:3, 12:4, 12:9
**tried** [1] - 16:13
**true** [1] - 22:14
**try** [6] - 6:17, 8:8, 12:8, 12:16, 22:22, 23:15
**trying** [2] - 16:4, 18:17
**turn** [1] - 16:21
**turns** [1] - 8:17
**two** [5] - 6:21, 10:4, 15:9, 16:5, 16:9
**type** [2] - 13:23, 17:3
**types** [1] - 6:6
**typically** [1] - 8:24

## U

**under** [5] - 10:3, 19:10, 21:3, 23:10
**undoubtedly** [1] - 12:24
**unfair** [1] - 6:17
**unique** [2] - 4:14, 4:19
**up** [10] - 5:2, 5:9, 8:22, 12:23, 12:24, 13:7, 16:3, 21:19, 23:1, 23:5
**utilize** [1] - 16:15

## V

**value** [1] - 15:22
**vital** [1] - 7:4

## W

**waive** [1] - 22:7
**walk** [2] - 13:16, 16:2
**wants** [1] - 17:6
**website** [2] - 13:3, 16:25
**week** [2] - 22:22, 23:17
**welfare** [1] - 16:11
**willing** [2] - 19:15, 22:3
**witnesses** [1] - 16:9

**wondering** [1] - 9:23
**word** [1] - 21:15
**words** [1] - 20:20
**works** [1] - 7:22
**written** [1] - 22:17

## Y

**years** [4] - 19:2, 20:10, 20:24, 20:25
**yourselves** [1] - 5:10