IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ETHAN LEVI,                              )
                                         )
                    Plaintiff,    )  No. 6:22-cv-01813-MK
                                         )
              v.                         )  August 3, 2023
                                         )
KIM CHAPMAN, et al.,               )  Eugene, Oregon
                                         )
                    Defendants.    )


**DIGITALLY-RECORDED TRANSCRIPT OF PROCEEDINGS**

(Scheduling Conference by teleconference)


BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


**COURT REPORTER:**
Kellie M. Humiston, RMR, CRR
(503) 326-8186
Kellie_Humiston@ord.uscourts.gov

**A P P E A R A N C E S**

FOR THE PLAINTIFF:

RIZZO MATTINGLY BOSWORTH
By:  Steven V. Rizzo
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201

FOR THE PLAINTIFF:

RIZZO MATTINGLY BOSWORTH
By:  Mary Skjelset
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201

FOR THE DEFENDANTS:

MARKOWITZ HERBOLD
By:  Lauren F. Blaesing
1455 SW Broadway
Suite 1900
Portland, OR 97201

FOR THE DEFENDANTS:

MARKOWITZ HERBOLD
By:  Alexandra Rhee
1455 SW Broadway
Suite 1900
Portland, OR 97201

(August 3, 2023, 9:04 a.m.)

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  Levi vs. Chapman, et al., scheduling conference.

THE COURT:  Good morning.  This is Judge Kasubhai. Thank you for making yourselves available.  I'd like to know who is present.  We'll start with plaintiff's counsel first, please. Give me your full name and honorific, such as Mr., Ms., or Mx.

So who's here for plaintiff?

MR. RIZZO:  Good morning.  This is Mr. Steven Rizzo for plaintiffs, Your Honor.

THE COURT:  Thank you, Mr. Rizzo.  And for -- is anyone else for -- for the plaintiff?

MS. SKJELSET:  Yes, Your Honor.  Ms. Mary Skjelset is also here for plaintiff.

THE COURT:  Thank you.  Good morning.

And for the defendant?

MS. BLAESING:  Good morning, Your Honor.  This is Lauren Blaesing from the Markowitz Herbold firm appointed as a special assistant attorney general for the defendants, Oregon Department of Human Services and the named employees.

I also am joined on the phone this morning with Alexandra Rhee, who's also appointed as a special assistant attorney general; our parallel, Heather Laskey (phonetic); and

then two of our summer clerks who are current law students, Anna Hong (phonetic) and Ally Sandahey (phonetic) are on the line, too.  They're not working on this case, but are listening in as part of their summer opportunity.

THE COURT:  All right.

MS. BLAESING:  And my pronouns are -- my pronouns are she/her.  And I think we have an all -- we have an all-female team from defendants today.

THE COURT:  All right.  And will you be leading the charge in responding and working through the details, Ms. Blaesing?

MS. BLAESING:  I will.

THE COURT:  All right.  And anyone from the Department of Justice directly?  I think there was a DOJ attorney the last time we were all together.

MS. BLAESING:  Yeah.  That was Jill Schneider.  She won't be joining us today, so I will be -- I will be representing on behalf of all defendants and defendants' counsel.

THE COURT:  All right.  So all the heat will be directed towards you, Ms. Blaesing.

MS. BLAESING:  Yep.  I brought my sunscreen.

THE COURT:  All right.  Very good.

All right.  So I -- so first things first, and perhaps the easiest to resolve for the purposes of scheduling matters, is the motion for reconsideration of the -- of my order requiring

the -- the presentation or viewing of the -- the database, I think it's called the OR -- OR -- maybe somebody might remember the name more directly, but --

MR. RIZZO:  It's OR-Kids, Your Honor.

MS. BLAESING:  OR-Kids.

THE COURT:  Okay.  Good.  And Mr. -- Mr. Rizzo, I think the letter is from Ms. Skjelset indicating that -- that you wanted to brief -- provide a written response to the motion for reconsideration.  Is that right?

MR. RIZZO:  Yes, Your Honor.

THE COURT:  Okay.  Let's talk about a schedule for that.  When would you like to submit that, and then maybe we'll -- and then we'll have to schedule some more argument over the matter?

MR. RIZZO:  I'd like to have that to the Court by the end of next week.

THE COURT:  Okay.  I'll see if we can find a day for argument.  I'm just pulling my calendar up now.

MS. BLAESING:  And, Your Honor, defendants would need an opportunity to file a reply brief submission.

THE COURT:  You didn't say everything you wanted to say in the -- in your motion?

MS. BLAESING:  In case there's anything new raised in plaintiff's opposition.

THE COURT:  I thought you would have anticipated

everything that they would have had.

MS. BLAESING:  We certainly tried to.

THE COURT:  All right.  I told you you're going to be the one taking all the heat, Ms. Blaesing, so be ready.

MS. BLAESING:  Okay.

THE COURT:  All right.

MS. BLAESING:  Thank you.

THE COURT:  All right.  So -- all right.  So by the end of next week, August 11th, Mr. Rizzo?

MR. RIZZO:  I think that's fine, Your Honor.

THE COURT:  All right.  18th, Ms. Blaesing, for reply?

MS. BLAESING:  Yes, Your Honor.  We'd appreciate that. Thank you.

THE COURT:  Okay.  And then argument September 8th. Does that work for both of your schedules?  Mr. Rizzo?

MR. RIZZO:  Yes, Your Honor.

THE COURTROOM DEPUTY:  Judge, what time would that be?

THE COURT:  It would be 9:00 in the morning.

Ms. Blaesing, does that work for you?

MS. BLAESING:  Yes.  I can do 9:00 in the morning.

THE COURT:  All right.  9:00 a.m. September 8th.  And I'll have -- I'm sure I'll have questions for both of you with respect to the motion for reconsideration and the -- and the issues regarding, you know, the confidentiality requirements set out by federal regulation that I think, Ms. Blaesing, you

discussed in your motion for reconsideration, but we'll follow that up at oral argument.

Was there anything else -- and I'm not taking argument on this particular issue right now, but on this issue, is there anything else that we need to do from a housekeeping perspective?

MR. RIZZO:  Not from my standpoint, Your Honor.  This is Mr. Rizzo.

THE COURT:  All right.  Ms. Blaesing?

MS. BLAESING:  Not from my perspective, either.  We can address it at that hearing, so thank you for scheduling that.

THE COURT:  Perfect.  Then let's turn to plaintiff's letter of August 2nd.  And this was the time set to discuss substantial compliance -- or progress in providing the requested documents.  One of the primary issues is making sure that a privilege log is submitted as well.  Was that -- was that (indiscernible), Ms. Blaesing?

MS. BLAESING:  Yes, Your Honor.  I can address a number of updates now, or when you want me to, about what document production we've done to date, what we have in progress, and the projected deadlines we -- we've given to plaintiff, but for the privilege log, what we have committed to do is a two-stage privilege log.  So we would produce one for the non-email documents by September 15th and for all of the e-mail documents by October 15th.

THE COURT:  Okay.  And -- and maybe I would -- I'm

looking to maybe shortcut my involvement.  I wonder if you need me to make some decisions today.  Have the parties now conferred either since the letter from the plaintiffs or can you identify the areas in which you might need my assistance with scheduling matters?  Otherwise, I'll leave it to you to both summarize what the dates need to be or that you've agreed it to be.  That way, I can include that in my minute order.

Who would like to first of all summarize the areas of agreement with respect to dates first?

MS. SKJELSET:  Your Honor, I can --

MS. BLAESING:  I'd be happy to --

THE COURT:  All right.  I probably should have just asked somebody to chime in, rather than all three of you.  I think I heard Ms. Skjelset.  Were you going to say something?

MS. SKJELSET:  Yes, Your Honor.  My -- I have a question of the Court, a clarification regarding that.  My curiosity is whether you're asking for dates for the scheduling order or whether we're in agreement on dates for production of documents.

THE COURT:  I'm looking for areas of agreement first, so I'm whittling away at what I'll ultimately have to make decisions on.  So are there any areas of agreement with respect to both content that needs to be produced and by which dates they need to be produced?

MS. SKJELSET:  I believe there are some areas of

agreement as long as the defendants live up to their promise of producing certain documents this week or within the time frame that they've agreed.

THE COURT:  Okay.

MS. SKJELSET:  So (pause) --

THE COURT:  Do we need to clarify those on this record right now?  I know your letter summarizes what you understand to be some of the dates based on -- on conferrals with defense counsel.

MS. SKJELSET:  We can -- we can confirm those on this record.  I think that might make sense.

THE COURT:  Let's do that.  Tell me what it is that you understand from conferral the parties have agreed what will be produced on what dates -- by what dates.

MS. SKJELSET:  Yes, Your Honor.  Going through the IMs that were ordered, which is how I tried to structure the letter -- and we will bypass ESI for the moment, because there are some areas of contention there.  And, again, we should probably bypass cellular phone information, with the exception of the phone lists.  I understand that those will be produced this week, so we will have the information regarding what the cellular phone device numbers were for each named plaintiff this week.

THE COURT:  And will that --

MS. SKJELSET:  And that list --

THE COURT:  Is that by August 4th?  That would be

tomorrow.  Is that your understanding, Ms. Skjelset?

MS. SKJELSET:  Well, my understanding was yesterday or today, Your Honor.  We haven't seen them thus far, so I was giving them a little latitude by saying "this week."

THE COURT:  Okay.  Ms. Blaesing.

MS. BLAESING:  May I respond to that, Your Honor?

THE COURT:  Say again?

MS. BLAESING:  Oh.  May I respond?

THE COURT:  Yes.

MS. BLAESING:  Yes.  So there's -- and this is probably where Ms. Skjelset's going next, that there's a category of a handful of things that you ordered to be produced and -- at the last hearing, and a number of those we have already produced last week or we committed to produce this week.  And as I told plaintiff at our conferral Tuesday, we have things to the vendor. We're waiting on our document vendor to get them produced.  We thought they were produced last night.

Paralegals on both sides have been working through some e-mails this morning trying to figure out some issues.  I think if they haven't -- if they weren't already produced last night, they are going to be produced today.

THE COURT:  All right.

MS. BLAESING:  So this is in that category of things, the cell phone records -- the cell phone numbers.

THE COURT:  And when you say "cell phone records," are

you talking about just the phone numbers or will there be --

MS. BLAESING:  Yes.

THE COURT:  -- some content?

MS. BLAESING:  The phone numbers.

THE COURT:  Okay.  So by the end of today, cell phone numbers.

MS. BLAESING:  Yes.

THE COURT:  All right.

MS. BLAESING:  And I think what we're producing by the end of today is a phone list.  We've already produced to them the personnel files, which we believe also contain these -- these phone numbers.

THE COURT:  Okay.  I might be jumping off the normal order that we would have addressed these, but there was some discussion in Ms. Skjelset's letter about confirming whether the personnel files were, in fact, complete personnel files produced or partials?  Can you --

MS. BLAESING:  We have produced everything from the personnel files that was collected from the -- from the agencies, with the exception of things withheld for privilege, and those will be logged on our privilege log.

THE COURT:  All right.  Ms. Skjelset, any clarification with respect to the personnel files?

MS. SKJELSET:  No, Your Honor.  I don't see any -- so thus far, I have not seen any portions of the personnel files

where there are documents that they withheld.  If you (indiscernible) to indicate that the documents were somewhere in the personnel file, so in previous conferrals, we understood that -- that we were receiving portions of the personnel file, then that -- the -- that Ms. Blaesing in terms of her associated counsel were going to be confirming that there were -- that the -- it was complete.

And now we understand that there were documents withheld, and the assumption is that the -- these documents will be logged on the September -- in the September privilege log.

THE COURT:  All right.  It sounds like we're on the same page with respect to the personnel files.

All right.  Well, what else, Ms. Skjelset?  What other items would you like to clarify that have been produced or the parties have agreed will be produced by some certain date?

MS. SKJELSET:  Yes, Your Honor.  Marching down the letter, the tort claim notices and complaints regarding abuse and neglect in the County, we believe that the majority of them should also be produced this week; however, we also understand that there would be a subsequent search and that the remainder would be produced by September 1st.

THE COURT:  Okay.  Ms. Blaesing?  Do you agree?

MS. BLAESING:  Yes.

THE COURT:  All right.

MS. BLAESING:  That's correct.

THE COURT: All right. Do you want to keep moving down the list, Ms. Skjelset?

MS. SKJELSET: Oh, yes, Your Honor. I didn't know it was my turn. Not having -- not being able to see you, it's difficult to know whether there's a nod.

THE COURT: Okay.

MS. SKJELSET: So the next -- next item, Your Honor, is the litigation hold notices and preservation efforts. And we understand that they are withholding that as -- under claims of either work product, privilege. It's unclear. We will receive that log -- the information in that log on September 15th.

THE COURT: All right. And then you can take that matter up as you see fit by filing a motion to compel. If I want briefing on that matter or we'll schedule a telephone conference in which we discuss in some detail what, if any, of that may be required to be produced.

MS. SKJELSET: Thank you, Your Honor. Number -- I don't know if we want to go into the preservation efforts or the cellular phone data, or you would want to save that for the issues that we are not in agreement on or don't have a concrete --

THE COURT: You know, I'm actually now interested in shifting my -- about how to approach, maybe on the fly. Using -- using your letter as a checklist, it seems to be entirely appropriate. So we'll take up that which you've both agreed to

and that which you disagree on and address it in the order in which you raise them in your letter.  So would you like -- so let's go ahead and do that, take up the preservation efforts and (pause) --

MS. SKJELSET:  Yes, Your Honor.  We will return to ESI, which was the first issue -- or the first item in my letter perhaps at the end?

THE COURT:  Yes.  We'll do that at the end, but let's run through the list first.

MS. SKJELSET:  Okay.  So returning to the request for litigation hold notices and the preservation efforts, it's -- we do not know when the litigation hold was in place, because we obviously don't have the litigation hold notices, and we also are unclear as to the preservation notices for text messages.  We have received none in discovery thus far either in the probate matter or in this case, and we are not receiving (indiscernible) as to whether or not the data on the phones was preserved.

THE COURT:  Ms. Blaesing, with respect to litigation hold notices, what's the issue?

MS. BLAESING:  Your Honor, yeah, and that issue I believe was addressed at our last status conference, and Ms. Schneider spoke to that and addressed that we are claiming work product for those things.  So those will -- that will be logged on our non-email privilege log that we have committed to produce by September 15th.

THE COURT:  And what -- what -- what you're claiming to be work product is the actual letters or notices --

MS. BLAESING:  Yes.

THE COURT:  -- that were sent out to -- to involved personnel for a litigation hold?

MS. BLAESING:  Yes, and/or related communications about those things that may be protected by both privilege and work product, depending on who's on the communications.

THE COURT:  Okay.  And then the preservation of text messages?

MS. BLAESING:  So what I have updated plaintiff's counsel when we conferred this week is we have been making diligent efforts to -- to understand who the relevant potential custodians are for text messages.  We -- that work is underway. We have been interviewing folks, getting our arms around what exists and what's been preserved, and it's not yet complete.  So I've, you know, updated them.

I don't have a firm production deadline, but I've offered to confer again in two weeks.  It's -- you know, it's not a simple like, yes, no, are there text messages.  There's a number of potential custodians.  And it's a little different for each person, you know, did they use text messages, did they save them to the OR-Kids file, do they still have that phone, did they change phones.  And the dates for that also relate to when the litigation hold notices were put in place.

So we are working diligently to sort that out and will provide updates.  We will produce whatever text messages that are relevant that we do collect, but I think I'm conferring with them again in a couple of weeks.  We'll then be able to move this forward to a point that we can tee it up if we need the Court to step in.

THE COURT:  Can you say when the litigation hold notices went out, the dates?

MS. BLAESING:  I don't know that right now.

THE COURT:  Okay.  And --

MS. BLAESING:  I don't have it at my fingertips.

THE COURT:  And --

MS. BLAESING:  My understanding is that probably around the same time that the tort claim notice was sent to (indiscernible) --

THE COURT:  Okay.

MS. BLAESING:  -- in this matter.

THE COURT:  All right.  And --

MS. BLAESING:  (Indiscernible).

THE COURT:  All right.  And the --

MS. BLAESING:  A couple years ago.

THE COURT:  All right.  Do -- understanding that the substance of the letters are going to be claimed as work product and we'll work through those matters in due course, is there any value to knowing what the dates those notices were sent out on?

MS. SKJELSET:  If that question is --

MS. BLAESING:  Yes.

MS. SKJELSET:  -- for me, Your Honor --

THE COURT:  Ms. Skjelset.

MS. SKJELSET:  This is Mary Skjelset.

THE COURT:  Yes.

MS. SKJELSET:  Yes.  At this juncture, we have not received any text messages.  And there's a concern that there has been a -- there's been a change in the phone that the individual is using.  We don't have -- we haven't received the -- the phone numbers that they were using at the time, we haven't been able to subpoena any carriers who would have had that information.

At this juncture, knowing when a hold was in place would, I think, be pretty important.

THE COURT:  And did the plaintiffs send preservation notices as well?

MS. SKJELSET:  Yes, Your Honor.  That was part of our tort claim notice.

THE COURT:  Okay.  And what date was that?  Do you recall?

MS. SKJELSET:  I believe it was in 20 -- early 2020.

THE COURT:  All right.  So, Ms. Blaesing, I'd like you to confirm the date that -- that the litigation hold notices were -- were submitted.  I'm not asking you to -- you know, to provide the contents of those letters, but at least provide the

dates so there's at least something from which the plaintiff can understand when -- when information was supposed to be preserved -- or when it was noted that information was supposed to be preserved.

I've had a little bit of litigation in the last -- probably the last six months to a year around the loss of text messages because of trading out or upgrading phones, so I am concerned about the loss of that information.  And -- and there is at least one instance in which I found that sanctions were appropriate against a party who would have and should have known that those -- those messages should have been preserved.

So I just want to make sure that the parties understand it's a matter that I -- I will look at very closely.

MS. BLAESING:  Yes, Your Honor.  We --

THE COURT:  Oh, go ahead.

MS. BLAESING:  Yeah.  And so I just want to say, you know, I bring up the example of people changing phones to illustrate why, you know, it's just not a simple yes-no and it does depend on custodians, and I -- I think we'll have to look by custodian.  For some of these folks, they may have changed phones before there was a litigation hold notice or a tort claim notice in this case, but, you know, that's just one of the challenges of what we're trying to sort out here.

So I'm not implying that anyone destroyed, you know, text messages after they got a litigation hold notice, so

they're -- they may have changed a phone before they got one.

THE COURT:  Understood.  I can appreciate that with many people involved, there are quite a few moving parts and sometimes what might appear complicated from one perspective might still very well be complicated from another perspective, but the consequences might still be clear depending on how it all plays out.  So I appreciate that there's going to be a lot that will have to be fleshed out, but I'm just letting the parties know it is a concern to me and I'll be mindful of -- of the issues of preserving electronic communications.

MR. RIZZO:  Your Honor, this is Mr. Rizzo.  If I can just interject.  And I didn't hear Ms. Blaesing indicate this, but, of course, plaintiffs have assumed that there are cell phone policies in place that speak to these types of issues.  I don't believe we have seen that yet, but was wondering if Ms. Blaesing is aware of those policies in connection with, for example, whether someone changed this or that phone on or prior to a tort claim notice.

THE COURT:  And has that been a request in -- within the scope of any of your RFPs?

MR. RIZZO:  I confess, I'd have to look back, Your Honor, at the -- at the first RFP, but I just wanted to raise that point in connection with the search.  You know, this has been months long -- a months long search for texts.  I would assume it's in accord with a policy, but I will go back.  And if

I didn't address that, we will address that with opposing counsel, Your Honor.

THE COURT:  Yes.  Please do that.  If -- if an existing RFP might not trigger a production of any such policy, please also submit a request, so that way we can make sure it goes through the proper channels.

MR. RIZZO:  Yes, Judge.

THE COURT:  All right.  Anything else on litigation hold notices, Ms. Skjelset?

MS. SKJELSET:  No, Your Honor.  I think we've covered it.  We have put Ms. Blaesing and the defendants on notice that this issue with regard -- particularly with regard to the cellular phones may require a records custodian deposition to resolve the issue or at least get some answers.  So we will further confer on that, but that may be a path that needs to be taken.  And we can do a duces tecum subpoena with (indiscernible) policies as well.

THE COURT:  All right.  I'll leave it to the parties to confer, and then let me know if I -- if you need my assistance to help resolve something that might remain in dispute there.

Our next item is defendant is ordered to comply with plaintiff's RFP 10 to produce the complete personnel files of named defendants.  I believe that's been resolved or at least answered, Ms. Skjelset?  Ms. Blaesing indicated that they provided all the material in the files that are -- that is not

otherwise privileged and that -- and that material will be indexed on the privilege log.  Is that your understanding, Ms. Skjelset, of what I heard?

MS. SKJELSET:  That's my understanding of the defendants' assurances, yes.

THE COURT:  And, Ms. Blaesing, any other clarification on that point?

MS. BLAESING:  No, Your Honor.  I think you captured it.

THE COURT:  All right.  Good.  Then defendants -- next one, defendants are ordered to produce the request for defense contract in response to RFP 13.  And are we on track to producing them this week, Ms. Blaesing?

MS. BLAESING:  Yes, Your Honor.  We -- those were produced last night.  So if they weren't, they're going to be produced today.

THE COURT:  Okay.  Anything else on that, Ms. Skjelset?

MS. SKJELSET:  No, Your Honor.

THE COURT:  And the last issue we've already addressed, which was the briefing schedule for the Oregon Kids database.

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  All right.  So let's return, then, to the first item.  Defendant is ordered to produce ESI requested by plaintiff and to otherwise comply with plaintiff's requests for production of ESI as clarified in plaintiff's letter of June 14th

after conferring with plaintiff regarding ESI search terms.

Ms. Skjelset, tell me what the remaining issues are that you need my help with resolving.

MS. SKJELSET:  Your Honor, it's my understanding that the defendants are using our requested custodians and applying our search terms.  They've provided us with a hit report and an estimated date of production of documents.  They have added re- -- they have re-added search terms that were previously omitted.  There will be a subsequent production on August 11th and then there's a subsequent custodian who will be produced. Those are to be produced on August 18th.

The issues that are raised in the ESI are the application of "Attorneys Eyes Only" to the vast majority of documents produced in discovery thus far.  It seems as though almost every relevant document is marked "Attorneys Eyes Only".

We understood from previous conversations with Ms. Schneider that the intention of including "Attorneys Eyes Only" in this protective order was simply for potentially protected persons and sensitive personnel file materials.  So we are concerned about the overuse of that.

I believe that Ms. Blaesing has agreed to remark some of the documents, particularly those that regard J.C., our client, and her brother, Z.C., but my understanding is that they intend to use "Attorneys Eyes Only" for any other documents regarding non-party children.

THE COURT: Okay. So with Ms. Blaesing's representation that there'll -- there'll be a remarking, relabeling of what's "Attorneys Eyes Only", is that something that we should take up after -- after they've been remarked or is there some additional guidance that you would like from me to help with identifying what should and shouldn't be marked AEO?

MS. SKJELSET: Well, Your Honor -- Your Honor, knowing that you have a hearing in one minute, I think that it's something that Ms. Blaesing and I can confer on. I'm looking at the protective order and the language, and I want to discuss with her how she intend -- whether she intends to reject my use of these documents in certain depositions. My concern is that there could be a prejudice to plaintiffs in litigation if I'm unable to use certain documents with certain witnesses.

THE COURT: Okay. Ms. Blaesing.

MS. SKJELSET: So we can discuss that and return to the Court, in my opinion.

THE COURT: All right. So it sounds like counsel can confer, and once they've been remarked, relabeled, then if there's any remaining issues, we can take it up. And --

MS. BLAESING: Your Honor, may I respond?

THE COURT: Go ahead, Ms. Blaesing.

MS. BLAESING: Your Honor, I think -- I think we do have a dispute with plaintiffs about this. And I -- I agree in part with what Ms. Skjelset said. I think there is a process

under the protective order, one of the paragraphs, for us to confer on this and -- and then come to the Court if we have further dispute.

I don't think I have represented that we are going to redesignate things, but I think we can certainly confer more with plaintiff's counsel about why things were designated a certain way and see if we can address their concerns about how documents can be used in depositions, but I don't think it's ready for the Court today.

THE COURT:  All right.  Well, we have a hearing scheduled for September 8th.  Let's put this item on the agenda to address as well either informally or with whatever briefing that you might want to provide.  I'd rather have you work -- both of you work hard through conferral to resolve it with as much clarity as possible, so that way when we discuss it on the 8th, you know, I probably will be able to hone in on what kind of guidance I can provide to the parties about what to do with the AEO designation and then how it might be used for further litigation, including depositions.

I take it that depositions are not going to be scheduled or haven't been scheduled for that date, September 8th, Ms. Skjelset?

MS. SKJELSET:  No, Your Honor.  In fact, until we have the inspection issue resolved, the remaining ESI, the text message issue resolved, I -- I don't -- I feel like depositions

would be premature or would likely be taken again --

THE COURT:  Right.

MS. SKJELSET:  -- in the event that new discovery is produced subsequent to deposition, so (pause) --

THE COURT:  All right.  So I think that September 8th may assist in moving this -- moving the discovery forward in the right direction.  Until then, I think there's still much to be produced.  Is there anything else that -- I think we're going to need to reset some of our discovery deadlines, if I'm not mistaken.  If we haven't already -- if we haven't already set them, we can do that now.

I think in your letter, Ms. Skjelset, you indicated that it's not -- it's not going to be likely that -- that the original timelines will be met.  Correct?

MS. SKJELSET:  Your Honor, I believe I said that in a prior letter.  Our goal was to get through these discovery issues, get the documents, and then determine collectively when a new -- a proper new discovery deadline should be set, but because there are these issues up in the air, I don't feel confident with what that deadline should be at this moment in time. Ms. Blaesing and I started to discuss it, but until we resolve some of these issues, I can't set a firm deadline, if that makes sense, Your Honor.

THE COURT:  Well, then it might appear that September 8th will be both argument and a scheduling -- a

scheduling conference.

MS. SKJELSET:  I think that would be appropriate, Your Honor.

THE COURT:  Ms. Blaesing, agree or offer any other ideas for resolving some of these issues, times for deadlines, that is?

MS. BLAESING:  Yes, Your Honor.  We did start to confer with plaintiffs about this this week.  I think I proposed the deadlines should be extended at least a couple months so there would be time for depositions, but I think taking it up at the September 8th conference makes sense.

I think it would perhaps also be efficient if the parties, if we submitted, like, a joint letter to you a few days in advance of that conference outlining some of the issues that we think are in dispute so we can use our time as efficiently as possible on the 8th.

THE COURT:  Yes.  Can you submit that to me by September 5th, a joint letter --

MS. BLAESING:  Yes, Your Honor.

THE COURT:  -- summarizing what -- you know, one, proposed ideas for deadlines, and then any other outstanding matters associated with the production of discovery not otherwise argued on the Oregon Kids database, and that way, I'll -- that way I'll have another checklist that we can work through when discussing deadlines.

I'd like to get those deadlines set at that time -- at that time on September 8th, so that way the parties -- both parties will know how to proceed going forward.

Is there anything else that we should take up now, any other questions that you need answered?

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  Yes.  Go ahead.

MS. SKJELSET:  Well, the -- and this is number 3 in my issues raised under the ESI.  It is the position of the defendants that case file materials regarding non-party children who were placed in -- or living in the Duncan-Raygosa home are not subject to the Court's order requiring production, and they are continuing to withhold those documents on claims that they are sensitive and confidential.

THE COURT:  Ms. Blaesing, would you like to respond?

MS. BLAESING:  Sure, Your Honor.  So I can clarify what we're withholding and what we're not.  So based on the Court's ruling at the last status conference that we understood to say that we could not withhold materials related to non-plaintiff children who were in this home, we -- we are not doing so from all the e-mails that we are collecting and producing.

And, you know, we currently -- to give you an idea, we have -- we're reviewing 58,000 e-mails already in this case and have produced 11,000 in the last -- since the last conference, we're going to be producing more over the coming weeks, and so we

are not redacting anything about other children who were in the home.

Similarly from the child welfare files related to the two named plaintiffs, J.C. and -- excuse me, the plaintiff, J.C., and her sibling, Z.C., there's files pertaining to the Duncan-Raygosa home.  From those provider files, the Child Protective Services files, we're not redacting anything about the other children.  That's how we understood the Court's order.

We are objecting to and have -- our client has very serious confidentiality and privacy concerns about the permanency case files for the other children that were in the Duncan-Raygosa home, because they are not parties to the lawsuit and their files contain a lot of irrelevant, highly sensitive, confidential information that DHS is prohibited by state law from disclosing.

And it -- the other challenge, Your Honor, is that these permanency files, sometimes we call them the family files, contain more than just that one child's information.  It's organized by biological parent.  So if they had siblings, half-siblings, step-siblings, there's information about them, about their biological parents, parents' current and former partners, third parties, foster parents, et cetera.  And the breadth of that sensitive and confidential information is captured in a whole constellation of state statutes and administrative rules.

And here, our client's concern is that the plaintiff

represents one child, J.C.; and these other children who were in DHS custody, you know, this is not a class action, they're not represented here, they haven't consented to having their permanency file disclosed, which they're -- and I can cite all these in a letter to the Court if you'd like, but there's quite a few statutes that protect this information.  So I -- I think that this is an issue where we do have continued disagreement with -- with plaintiff.

THE COURT:  All right.  And --

MS. BLAESING:  Would you like me to say more?

THE COURT:  Well, my question for Ms. Blaesing is that, are there any of those state statutes that absolutely prohibit the disclosure or is it that DHS is not able to disclose it absent court order?

My general understanding is that, and I appreciate that DHS isn't able to do so on its own accord, but very frequently when ordered by the court, they do so.  Is that the circumstance in which we find ourselves or is there a more explicit prohibition from -- from disclosure even if the Court were to consider ordering (indiscernible)?

MS. BLAESING:  I -- I think you are probably correct that the statutes do allow it subject to court order.  Again, I think my client just had a lot of concerns that these individuals and the other people referenced in the files are not parties to this case.

THE COURT:  Okay.

MS. BLAESING:  And, you know, we don't have a class action here.  You know, they have not been notified or consented to their file being --

THE COURT:  Well, and I don't want this to turn into another nuanced request for reconsideration of my prior order.

My order did require that materials relating to care and condition be produced.  So I also appreciate that information relating to all these other people that are -- that are -- that may be related to, in some way connected to these other children in the home may be appropriately redacted, and we can talk about what that might be and what the scope of that would look like, but I would expect that the defendants comply with my order with respect to producing that which relate to care and condition.

So is there something that the defendants would need to receive in some greater clarity from me about what that means to comply with my order?

MS. BLAESING:  I -- I think I would like to consult with my client, but I think a potential path forward here is that I've heard plaintiffs say that they're particularly interested in the case notes, and I think they're talking about a universe of five children, but that's something I can confirm with plaintiff's counsel.

THE COURT:  And --

MS. BLAESING:  Perhaps there's a path forward here

where we would produce just the case notes portion of the permanency files and redact things that relate from time periods when they were not in -- in the home.

THE COURT:  I will let you and plaintiff's counsel confer, narrow it down if possible given what I've already -- I think I've explained, which is I expect that defendants comply with my order as it relates to care and condition.

This is -- I'm willing to be flexible on reconsidering certain points, but please make sure that your client understands that reconsideration should not be the normal course when litigating in front of me.

And -- and so with that in mind, confer with Ms. Skjelset and Mr. Rizzo and figure out if there is a way forward, provide what you've come to terms on in this joint letter summarizing what the parties have been able to resolve to date, and submit that by September 5th.  And I will take that up as our checklist of things to resolve after argument on the Oregon Kids database matter.

Anything else that we need to clarify?  Ms. Skjelset?

MS. SKJELSET:  No, Your Honor.  I think that you can move on to your next hearing.  I appreciate it.

THE COURT:  Are you trying to get me off the phone, Ms. -- Ms. Skjelset?

MS. SKJELSET:  Not at all, Your Honor.  And I -- I would be happy to discuss the last argument.  And I did try to

make allowances to the defendants on selected materials from the case files, but --

THE COURT:  And I -- I wasn't inviting -- I wasn't inviting you to respond.  I do need to move on, so -- and thank you for paying attention to the -- to the time.

So I'll leave it to both -- both you and Ms. Blaesing to work through the details, and I look forward to receiving the joint letter -- joint status report of these outstanding matters, and then I will, I imagine, receive argument remotely.  Is that what the parties are intending?  Ms. Skjelset?

MS. SKJELSET:  We would be more than willing to travel down there for argument if the Court prefers.

THE COURT:  You know, I would prefer in person, but I also recognize that people will be traveling from different parts of the state, so -- or I think -- I think you're all from Portland, right?  Yes.  You're all from Portland.

MR. RIZZO:  Yes, Your Honor.

MS. BLAESING:  Yes, Your Honor.

THE COURT:  I would prefer to do it in person, because I anticipate that we'll be working with each other for quite some time on this case, and, one, getting a chance to meet would be helpful and, two, getting a chance to see each other in person may also avoid some of the difficulties in being able to read body language when someone might be saying something through a raised eyebrow.

So unless someone feels strongly about wanting to appear remotely, which, again, is fine, we would do it by videoconference as well, so that way we'll all be able to at least see each other.  If we can do it in person, I'd welcome that.

MS. BLAESING:  Your Honor, if we hold it in person, I -- I should be able to attend in person.  Would there also be an opportunity, if another lawyer from our team is going to address an issue, for them to attend remotely?  I think my partner, Harry Wilson, may -- likely cannot attend in person.

THE COURT:  Certainly.

MS. BLAESING:  Like a hybrid.

THE COURT:  Oh, of course.  I'm happy to -- happy to accommodate people's availability that way.

MR. RIZZO:  And, Judge, if I may, this is --

MS. BLAESING:  Thank you, Your Honor.

MR. RIZZO:  -- this is Mr. Rizzo.  I just want to put one more issue on -- on everyone's radar, and that's the Court's prior order about the motion to amend and the response to the interrogatory, and that still needs to be addressed, and perhaps we can add an update for the Court to address any issues if need be at the September 8th hearing.

THE COURT:  Yes.  And if you would also kindly include that in the joint status report that will be due on September 5th.  So if there's some resolution, wonderful, or at

least identify what the dispute might still be, that way I can take it up with everything else that needs -- needs some attention.

MR. RIZZO:  Of course.

THE COURT:  I would anticipate at least a three-hour meeting from 9:00 to 12:00, so -- so schedule accordingly.  And this is on September 8th.  All right.

MR. RIZZO:  Thank you, Your Honor.

THE COURT:  Thank you all very much.  Have a good day.

MS. SKJELSET:  Thank you.

MS. BLAESING:  Thank you, Your Honor.

MS. RHEE:  Thank you.

(Proceedings adjourned at 9:44 a.m.)

**C E R T I F I C A T E**

I certify, by signing below, that the foregoing is a true and correct transcript of the record, taken by stenographic means, of the FTR-recorded proceedings in the above-entitled cause.

Where (indiscernible) has been indicated, the audio file was unable to be heard due to simultaneous cross-talk, fast speaking, mumbling, or other room noises overriding what was being said.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

DATED this 8th day of August 2023.

/s/ Kellie M. Humiston

Kellie M. Humiston, RMR, CRR
Transcriber
Official Court Reporter
Certificates Expire:  9/2024

1

**/**

**/s** [1] - 35:17

**1**

**10** [1] - 20:22
**11,000** [1] - 27:24
**11th** [2] - 6:9, 22:9
**12:00** [1] - 34:6
**13** [1] - 21:12
**1300** [2] - 2:4, 2:8
**1455** [2] - 2:12, 2:16
**14th** [1] - 21:25
**15th** [4] - 7:23, 7:24, 13:11, 14:25
**18th** [2] - 6:11, 22:11
**1900** [2] - 2:13, 2:17
**1st** [1] - 12:21

**2**

**20** [1] - 17:21
**2020** [1] - 17:21
**2023** [3] - 1:7, 3:1, 35:14
**2nd** [1] - 7:12

**3**

**3** [3] - 1:7, 3:1, 27:8
**326-8186** [1] - 1:24
**330** [2] - 2:5, 2:9

**4**

**4th** [1] - 9:25

**5**

**503** [1] - 1:24
**58,000** [1] - 27:23
**5th** [3] - 26:18, 31:16, 33:25

**6**

**6:22-cv-01813-MK** [1] - 1:6

**8**

**8th** [13] - 6:14, 6:21, 24:11, 24:15, 24:21, 25:5, 25:25, 26:11, 26:16, 27:2, 33:22, 34:7, 35:14

**9**

**9/2024** [1] - 35:19

**97201** [4] - 2:5, 2:9, 2:13, 2:17
**9:00** [4] - 6:18, 6:20, 6:21, 34:6
**9:04** [1] - 3:1
**9:44** [1] - 34:13

**A**

**a.m** [3] - 3:1, 6:21, 34:13
**able** [10] - 13:4, 16:4, 17:11, 24:16, 29:13, 29:16, 31:15, 32:23, 33:3, 33:7
**above-entitled** [1] - 35:5
**absent** [1] - 29:14
**absolutely** [1] - 29:12
**abuse** [1] - 12:17
**accommodate** [1] - 33:14
**accord** [2] - 19:25, 29:16
**accordingly** [1] - 34:6
**action** [2] - 29:2, 30:3
**actual** [1] - 15:2
**add** [1] - 33:21
**added** [2] - 22:7, 22:8
**additional** [1] - 23:5
**address** [9] - 7:10, 7:17, 14:1, 20:1, 24:7, 24:12, 33:9, 33:21
**addressed** [5] - 11:14, 14:21, 14:22, 21:19, 33:20
**adjourned** [1] - 34:13
**administrative** [1] - 28:24
**advance** [1] - 26:14
**AEO** [2] - 23:6, 24:18
**agencies** [1] - 11:19
**agenda** [1] - 24:11
**ago** [1] - 16:21
**agree** [3] - 12:22, 23:24, 26:4
**agreed** [6] - 8:6, 9:3, 9:13, 12:15, 13:25, 22:21
**agreement** [6] - 8:9, 8:18, 8:20, 8:22, 9:1, 13:20
**ahead** [4] - 14:3, 18:15, 23:22, 27:7
**air** [1] - 25:19
**al** [2] - 1:8, 3:4
**Alexandra** [2] - 2:16, 3:24
**all-female** [1] - 4:7

**allow** [1] - 29:22
**allowances** [1] - 32:1
**Ally** [1] - 4:2
**almost** [1] - 22:15
**amend** [1] - 33:19
**Anna** [1] - 4:1
**answered** [2] - 20:24, 27:5
**answers** [1] - 20:14
**anticipate** [2] - 32:20, 34:5
**anticipated** [1] - 5:25
**appear** [3] - 19:4, 25:24, 33:2
**application** [1] - 22:13
**applying** [1] - 22:5
**appointed** [2] - 3:20, 3:24
**appreciate** [6] - 6:12, 19:2, 19:7, 29:15, 30:8, 31:21
**approach** [1] - 13:23
**appropriate** [3] - 13:25, 18:10, 26:2
**appropriately** [1] - 30:11
**areas** [6] - 8:4, 8:8, 8:20, 8:22, 8:25, 9:18
**argued** [1] - 26:23
**argument** [10] - 5:13, 5:18, 6:14, 7:2, 7:3, 25:25, 31:17, 31:25, 32:9, 32:12
**arms** [1] - 15:15
**assist** [1] - 25:6
**assistance** [2] - 8:4, 20:19
**assistant** [2] - 3:21, 3:24
**associated** [2] - 12:5, 26:22
**assume** [1] - 19:25
**assumed** [1] - 19:13
**assumption** [1] - 12:9
**assurances** [1] - 21:5
**attend** [3] - 33:7, 33:9, 33:10
**attention** [2] - 32:5, 34:3
**attorney** [3] - 3:21, 3:25, 4:14
**Attorneys** [5] - 22:13, 22:15, 22:17, 22:24, 23:3
**audio** [1] - 35:7
**August** [8] - 1:7, 3:1, 6:9, 7:12, 9:25, 22:9, 22:11, 35:14
**availability** [1] - 33:14

**available** [1] - 3:7
**Avenue** [2] - 2:4, 2:8
**avoid** [1] - 32:23
**aware** [1] - 19:16

**B**

**based** [2] - 9:8, 27:17
**BEFORE** [1] - 1:17
**behalf** [1] - 4:18
**below** [1] - 35:3
**biological** [2] - 28:18, 28:20
**bit** [1] - 18:5
**Blaesing** [30] - 2:12, 3:20, 4:11, 4:20, 6:4, 6:11, 6:19, 6:25, 7:8, 7:16, 10:5, 12:5, 12:22, 14:18, 17:22, 19:12, 19:15, 20:11, 20:24, 21:6, 21:13, 22:21, 23:9, 23:15, 23:22, 25:21, 26:4, 27:15, 29:11, 32:6
**BLAESING** [57] - 3:19, 4:6, 4:12, 4:16, 4:21, 5:5, 5:19, 5:23, 6:2, 6:5, 6:7, 6:12, 6:20, 7:9, 7:17, 8:11, 10:6, 10:8, 10:10, 10:23, 11:2, 11:4, 11:7, 11:9, 11:18, 12:23, 12:25, 14:20, 15:3, 15:6, 15:11, 16:9, 16:11, 16:13, 16:17, 16:19, 16:21, 17:2, 18:14, 18:16, 21:8, 21:14, 23:21, 23:23, 26:7, 26:19, 27:16, 29:10, 29:21, 30:2, 30:18, 30:25, 32:18, 33:6, 33:12, 33:16, 34:11
**Blaesing's** [1] - 23:1
**body** [1] - 32:24
**BOSWORTH** [2] - 2:3, 2:7
**breadth** [1] - 28:22
**brief** [2] - 5:8, 5:20
**briefing** [3] - 13:14, 21:20, 24:12
**bring** [1] - 18:17
**Broadway** [2] - 2:12, 2:16
**brother** [1] - 22:23
**brought** [1] - 4:21
**bypass** [2] - 9:17, 9:19

**C**

**calendar** [1] - 5:18
**cannot** [1] - 33:10
**captured** [2] - 21:8, 28:23
**care** [3] - 30:7, 30:14, 31:7
**carriers** [1] - 17:12
**case** [12] - 4:3, 5:23, 14:16, 18:22, 27:10, 27:23, 28:11, 29:25, 30:21, 31:1, 32:2, 32:21
**category** [2] - 10:11, 10:23
**cell** [5] - 10:24, 10:25, 11:5, 19:13
**cellular** [4] - 9:19, 9:21, 13:19, 20:13
**certain** [7] - 9:2, 12:15, 23:12, 23:14, 24:6, 31:9
**certainly** [3] - 6:2, 24:5, 33:11
**Certificates** [1] - 35:19
**certified** [1] - 35:12
**certify** [1] - 35:3
**cetera** [1] - 28:21
**challenge** [1] - 28:15
**challenges** [1] - 18:22
**chance** [2] - 32:21, 32:22
**change** [2] - 15:24, 17:9
**changed** [3] - 18:20, 19:1, 19:17
**changing** [1] - 18:17
**channels** [1] - 20:6
**Chapman** [1] - 3:4
**CHAPMAN** [1] - 1:8
**charge** [1] - 4:10
**checklist** [3] - 13:24, 26:24, 31:17
**child** [2] - 28:3, 29:1
**Child** [1] - 28:6
**child's** [1] - 28:17
**children** [9] - 22:25, 27:10, 27:20, 28:1, 28:8, 28:11, 29:1, 30:10, 30:22
**chime** [1] - 8:13
**circumstance** [1] - 29:17
**cite** [1] - 29:4
**claim** [5] - 12:17, 16:14, 17:18, 18:21, 19:18
**claimed** [1] - 16:23
**claiming** [2] - 14:22,

15:1

**claims** [2] - 13:9, 27:13
**clarification** [3] - 8:16, 11:22, 21:6
**clarified** [1] - 21:25
**clarify** [4] - 9:6, 12:14, 27:16, 31:19
**clarity** [2] - 24:15, 30:16
**class** [2] - 29:2, 30:2
**clear** [1] - 19:6
**clerks** [1] - 4:1
**client** [5] - 22:23, 28:9, 29:23, 30:19, 31:9
**client's** [1] - 28:25
**closely** [1] - 18:13
**collect** [1] - 16:3
**collected** [1] - 11:19
**collecting** [1] - 27:21
**collectively** [1] - 25:17
**coming** [1] - 27:25
**committed** [3] - 7:21, 10:14, 14:24
**communications** [3] - 15:6, 15:8, 19:10
**compel** [1] - 13:13
**complaints** [1] - 12:17
**complete** [4] - 11:16, 12:7, 15:16, 20:22
**compliance** [1] - 7:13
**complicated** [2] - 19:4, 19:5
**comply** [5] - 20:21, 21:24, 30:13, 30:17, 31:6
**concern** [4] - 17:8, 19:9, 23:12, 28:25
**concerned** [2] - 18:8, 22:20
**concerns** [3] - 24:7, 28:10, 29:23
**concrete** [1] - 13:21
**condition** [3] - 30:8, 30:14, 31:7
**confer** [10] - 15:19, 20:15, 20:19, 23:9, 23:19, 24:2, 24:5, 26:7, 31:5, 31:12
**conference** [8] - 3:5, 13:14, 14:21, 26:1, 26:11, 26:14, 27:18, 27:24
**Conference** [1] - 1:15
**conferral** [3] - 9:13, 10:15, 24:14
**conferrals** [2] - 9:8, 12:3
**conferred** [2] - 8:2, 15:12

**conferring** [2] - 16:3, 22:1
**confess** [1] - 19:21
**confident** [1] - 25:19
**confidential** [3] - 27:14, 28:13, 28:22
**confidentiality** [2] - 6:24, 28:10
**confirm** [3] - 9:10, 17:23, 30:22
**confirming** [2] - 11:15, 12:6
**conformed** [1] - 35:11
**connected** [1] - 30:10
**connection** [2] - 19:16, 19:23
**consented** [2] - 29:3, 30:3
**consequences** [1] - 19:6
**consider** [1] - 29:20
**constellation** [1] - 28:23
**consult** [1] - 30:18
**contain** [3] - 11:11, 28:13, 28:17
**content** [2] - 8:23, 11:3
**contention** [1] - 9:18
**contents** [1] - 17:25
**continued** [1] - 29:7
**continuing** [1] - 27:13
**contract** [1] - 21:12
**conversations** [1] - 22:16
**correct** [4] - 12:25, 25:14, 29:21, 35:4
**counsel** [10] - 3:8, 4:18, 9:9, 12:6, 15:12, 20:2, 23:18, 24:6, 30:23, 31:4
**County** [1] - 12:18
**couple** [3] - 16:4, 16:21, 26:9
**course** [5] - 16:24, 19:13, 31:10, 33:13, 34:4
**court** [3] - 29:14, 29:17, 29:22
**Court** [11] - 5:15, 8:16, 16:5, 23:17, 24:2, 24:9, 29:5, 29:19, 32:12, 33:21, 35:19
**COURT** [106] - 1:1, 1:18, 1:23, 3:6, 3:13, 3:17, 4:5, 4:9, 4:13, 4:19, 4:22, 5:6, 5:11, 5:17, 5:21, 5:25, 6:3, 6:6, 6:8, 6:11, 6:14, 6:18, 6:21, 7:8, 7:11,

7:25, 8:12, 8:20, 9:4, 9:6, 9:12, 9:23, 9:25, 10:5, 10:7, 10:9, 10:22, 10:25, 11:3, 11:5, 11:8, 11:13, 11:22, 12:11, 12:22, 12:24, 13:1, 13:6, 13:12, 13:22, 14:8, 14:18, 15:1, 15:4, 15:9, 16:7, 16:10, 16:12, 16:16, 16:18, 16:20, 16:22, 17:4, 17:6, 17:15, 17:19, 17:22, 18:15, 19:2, 19:19, 20:3, 20:8, 20:18, 21:6, 21:10, 21:17, 21:19, 21:22, 23:1, 23:15, 23:18, 23:22, 24:10, 25:2, 25:5, 25:24, 26:4, 26:17, 26:20, 27:7, 27:15, 29:9, 29:11, 30:1, 30:5, 30:24, 31:4, 31:22, 32:3, 32:13, 32:19, 33:11, 33:13, 33:23, 34:5, 34:9
**Court's** [4] - 27:12, 27:17, 28:8, 33:18
**COURTROOM** [2] - 3:4, 6:17
**covered** [1] - 20:10
**cross** [1] - 35:8
**cross-talk** [1] - 35:8
**CRR** [2] - 1:24, 35:18
**curiosity** [1] - 8:17
**current** [2] - 4:1, 28:20
**custodian** [3] - 18:20, 20:13, 22:10
**custodians** [4] - 15:14, 15:21, 18:19, 22:5
**custody** [1] - 29:2

### D

**data** [2] - 13:19, 14:17
**database** [4] - 5:1, 21:20, 26:23, 31:18
**date** [7] - 7:19, 12:15, 17:19, 17:23, 22:7, 24:21, 31:16
**DATED** [1] - 35:14
**dates** [12] - 8:6, 8:9, 8:17, 8:18, 8:23, 9:8, 9:14, 15:24, 16:8, 16:25, 18:1
**days** [1] - 26:13
**deadline** [4] - 15:18, 25:18, 25:20, 25:22

**deadlines** [7] - 7:20, 25:9, 26:5, 26:9, 26:21, 26:25, 27:1
**decisions** [2] - 8:2, 8:22
**defendant** [3] - 3:18, 20:21, 21:23
**Defendants** [1] - 1:9
**DEFENDANTS** [2] - 2:11, 2:15
**defendants** [15] - 3:21, 4:8, 4:18, 5:19, 9:1, 20:11, 20:23, 21:10, 21:11, 22:5, 27:10, 30:13, 30:15, 31:6, 32:1
**defendants'** [2] - 4:18, 21:5
**defense** [2] - 9:8, 21:11
**Department** [2] - 3:22, 4:13
**deposition** [2] - 20:13, 25:4
**depositions** [6] - 23:12, 24:8, 24:19, 24:20, 24:25, 26:10
**DEPUTY** [2] - 3:4, 6:17
**designated** [1] - 24:6
**designation** [1] - 24:18
**destroyed** [1] - 18:24
**detail** [1] - 13:15
**details** [2] - 4:10, 32:7
**determine** [1] - 25:17
**device** [1] - 9:22
**DHS** [4] - 28:14, 29:2, 29:13, 29:16
**different** [2] - 15:21, 32:14
**difficult** [1] - 13:5
**difficulties** [1] - 32:23
**digitally** [1] - 35:11
**DIGITALLY** [1] - 1:14
**DIGITALLY-RECORDED** [1] - 1:14
**diligent** [1] - 15:13
**diligently** [1] - 16:1
**directed** [1] - 4:20
**direction** [1] - 25:7
**directly** [2] - 4:14, 5:3
**disagree** [1] - 14:1
**disagreement** [1] - 29:7
**disclose** [1] - 29:13
**disclosed** [1] - 29:4
**disclosing** [1] - 28:14
**disclosure** [2] - 29:13, 29:19

**discovery** [8] - 14:15, 22:14, 25:3, 25:6, 25:9, 25:16, 25:18, 26:22
**discuss** [7] - 7:12, 13:15, 23:10, 23:16, 24:15, 25:21, 31:25
**discussed** [1] - 7:1
**discussing** [1] - 26:25
**discussion** [1] - 11:15
**dispute** [5] - 20:20, 23:24, 24:3, 26:15, 34:1
**DISTRICT** [3] - 1:1, 1:2, 1:18
**DIVISION** [1] - 1:3
**document** [3] - 7:18, 10:16, 22:15
**documents** [18] - 7:14, 7:23, 8:19, 9:2, 12:1, 12:2, 12:8, 12:9, 22:7, 22:14, 22:22, 22:24, 23:12, 23:14, 24:7, 25:17, 27:13
**DOJ** [1] - 4:14
**done** [1] - 7:19
**down** [4] - 12:16, 13:1, 31:5, 32:12
**duces** [1] - 20:16
**due** [3] - 16:24, 33:24, 35:8
**Duncan** [3] - 27:11, 28:6, 28:11
**Duncan-Raygosa** [3] - 27:11, 28:6, 28:11

### E

**e-mail** [1] - 7:23
**e-mails** [3] - 10:19, 27:21, 27:23
**early** [1] - 17:21
**easiest** [1] - 4:24
**efficient** [1] - 26:12
**efficiently** [1] - 26:15
**efforts** [5] - 13:8, 13:18, 14:3, 14:11, 15:13
**either** [5] - 7:9, 8:3, 13:10, 14:15, 24:12
**electronic** [1] - 19:10
**email** [2] - 7:22, 14:24
**employees** [1] - 3:22
**end** [6] - 5:16, 6:8, 11:5, 11:10, 14:7, 14:8
**entirely** [1] - 13:24
**entitled** [1] - 35:5
**ESI** [8] - 9:17, 14:5,

3

21:23, 21:25, 22:1,
22:12, 24:24, 27:9
**estimated** [1] - 22:7
**et** [3] - 1:8, 3:4, 28:21
**ETHAN** [1] - 1:5
**EUGENE** [1] - 1:3
**Eugene** [1] - 1:8
**event** [1] - 25:3
**example** [2] - 18:17,
19:16
**exception** [2] - 9:19,
11:20
**excuse** [1] - 28:4
**existing** [1] - 20:3
**exists** [1] - 15:16
**expect** [2] - 30:13,
31:6
**Expire** [1] - 35:19
**explained** [1] - 31:6
**explicit** [1] - 29:18
**extended** [1] - 26:9
**eyebrow** [1] - 32:25
**Eyes** [5] - 22:13,
22:15, 22:17, 22:24,
23:3

### F

**fact** [2] - 11:16, 24:23
**family** [1] - 28:16
**far** [4] - 10:3, 11:25,
14:15, 22:14
**fast** [1] - 35:8
**federal** [1] - 6:25
**female** [1] - 4:7
**few** [3] - 19:3, 26:13,
29:6
**figure** [2] - 10:19,
31:13
**file** [9] - 5:20, 12:3,
12:4, 15:23, 22:19,
27:10, 29:4, 30:4,
35:7
**files** [20] - 11:11,
11:16, 11:19, 11:23,
11:25, 12:12, 20:22,
20:25, 28:3, 28:5,
28:6, 28:7, 28:11,
28:12, 28:16, 29:24,
31:2, 32:2
**filing** [1] - 13:13
**fine** [2] - 6:10, 33:2
**fingertips** [1] - 16:11
**firm** [3] - 3:20, 15:18,
25:22
**first** [11] - 3:8, 4:23,
8:8, 8:9, 8:20, 14:6,
14:9, 19:22, 21:23
**fit** [1] - 13:13
**five** [1] - 30:22

**fleshed** [1] - 19:8
**flexible** [1] - 31:8
**fly** [1] - 13:23
**folks** [2] - 15:15, 18:20
**follow** [1] - 7:1
**FOR** [5] - 1:2, 2:3, 2:7,
2:11, 2:15
**foregoing** [1] - 35:3
**former** [1] - 28:20
**forward** [7] - 16:5,
25:6, 27:3, 30:19,
30:25, 31:14, 32:7
**foster** [1] - 28:21
**frame** [1] - 9:2
**frequently** [1] - 29:16
**front** [1] - 31:11
**FTR** [1] - 35:5
**FTR-recorded** [1] -
35:5
**full** [1] - 3:9

### G

**general** [3] - 3:21,
3:25, 29:15
**given** [2] - 7:20, 31:5
**goal** [1] - 25:16
**greater** [1] - 30:16
**guidance** [2] - 23:5,
24:17

### H

**half** [1] - 28:19
**half-siblings** [1] -
28:19
**handful** [1] - 10:12
**happy** [4] - 8:11,
31:25, 33:13
**hard** [1] - 24:14
**Harry** [1] - 33:10
**hear** [1] - 19:12
**heard** [4] - 8:14, 21:3,
30:20, 35:8
**hearing** [6] - 7:10,
10:13, 23:8, 24:10,
31:21, 33:22
**heat** [2] - 4:19, 6:4
**Heather** [1] - 3:25
**help** [3] - 20:20, 22:3,
23:6
**helpful** [1] - 32:22
**HERBOLD** [2] - 2:11,
2:15
**Herbold** [1] - 3:20
**highly** [1] - 28:13
**hit** [1] - 22:6
**hold** [14] - 13:8, 14:11,
14:12, 14:13, 14:19,
15:5, 15:25, 16:7,

17:13, 17:23, 18:21,
18:25, 20:9, 33:6
**home** [7] - 27:11,
27:20, 28:2, 28:6,
28:12, 30:11, 31:3
**hone** [1] - 24:16
**Hong** [1] - 4:2
**Honor** [56] - 3:12,
3:15, 3:19, 5:4, 5:10,
5:19, 6:10, 6:12,
6:16, 7:6, 7:17, 8:10,
8:15, 9:15, 10:3,
10:6, 11:24, 12:16,
13:3, 13:7, 13:17,
14:5, 14:20, 17:3,
17:17, 18:14, 19:11,
19:22, 20:2, 20:10,
21:8, 21:14, 21:18,
21:21, 22:4, 23:7,
23:21, 23:23, 24:23,
25:15, 25:23, 26:3,
26:7, 26:19, 27:6,
27:16, 28:15, 31:20,
31:24, 32:17, 32:18,
33:6, 33:16, 34:8,
34:11
**HONORABLE** [1] -
1:17
**honorific** [1] - 3:9
**hour** [1] - 34:5
**housekeeping** [1] -
7:5
**Human** [1] - 3:22
**Humiston** [3] - 1:24,
35:17, 35:18
**hybrid** [1] - 33:12

### I

**idea** [1] - 27:22
**ideas** [2] - 26:5, 26:21
**identify** [2] - 8:3, 34:1
**identifying** [1] - 23:6
**illustrate** [1] - 18:18
**imagine** [1] - 32:9
**implying** [1] - 18:24
**important** [1] - 17:14
**IMs** [1] - 9:15
**IN** [1] - 1:1
**include** [2] - 8:7,
33:23
**including** [2] - 22:17,
24:19
**indexed** [1] - 21:2
**indicate** [2] - 12:2,
19:12
**indicated** [3] - 20:24,
25:12, 35:7
**indicating** [1] - 5:7
**indiscernible** [7] -

7:16, 12:2, 14:16,
16:15, 20:16, 29:20,
35:7
**indiscernible)** [1] -
16:19
**individual** [1] - 17:9
**individuals** [1] - 29:23
**informally** [1] - 24:12
**information** [13] -
9:19, 9:21, 13:11,
17:12, 18:2, 18:3,
18:8, 28:14, 28:17,
28:19, 28:22, 29:6,
30:8
**inspection** [1] - 24:24
**instance** [1] - 18:9
**intend** [2] - 22:24,
23:11
**intending** [1] - 32:10
**intends** [1] - 23:11
**intention** [1] - 22:17
**interested** [2] - 13:22,
30:20
**interject** [1] - 19:12
**interrogatory** [1] -
33:20
**interviewing** [1] -
15:15
**inviting** [2] - 32:3,
32:4
**involved** [2] - 15:4,
19:3
**involvement** [1] - 8:1
**irrelevant** [1] - 28:13
**issue** [13] - 7:4, 14:6,
14:19, 14:20, 20:12,
20:14, 21:19, 24:24,
24:25, 29:7, 33:9,
33:18
**issues** [16] - 6:24,
7:14, 10:19, 13:20,
19:10, 19:14, 22:2,
22:12, 23:20, 25:17,
25:19, 25:22, 26:5,
26:14, 27:9, 33:21
**item** [5] - 13:7, 14:6,
20:21, 21:23, 24:11
**items** [1] - 12:14

### J

**J.C** [4] - 22:22, 28:4,
29:1
**Jill** [1] - 4:16
**joined** [1] - 3:23
**joining** [1] - 4:17
**joint** [6] - 26:13,
26:18, 31:14, 32:8,
33:24
**JUDGE** [1] - 1:18

**judge** [1] - 6:17
**Judge** [3] - 3:6, 20:7,
33:15
**jumping** [1] - 11:13
**juncture** [2] - 17:7,
17:13
**June** [1] - 21:25
**Justice** [1] - 4:14

### K

**KASUBHAI** [1] - 1:17
**Kasubhai** [1] - 3:6
**keep** [1] - 13:1
**Kellie** [3] - 1:24,
35:17, 35:18
**Kellie_Humiston@
ord.uscourts.gov** [1]
- 1:25
**Kids** [6] - 5:4, 5:5,
15:23, 21:20, 26:23,
31:18
**KIM** [1] - 1:8
**kind** [1] - 24:16
**kindly** [1] - 33:23
**knowing** [3] - 16:25,
17:13, 23:7
**known** [1] - 18:10

### L

**language** [2] - 23:10,
32:24
**Laskey** [1] - 3:25
**last** [14] - 4:14, 10:13,
10:17, 10:20, 14:21,
18:5, 18:6, 21:15,
21:19, 27:18, 27:24,
31:25
**latitude** [1] - 10:4
**Lauren** [2] - 2:12, 3:20
**law** [2] - 4:1, 28:14
**lawsuit** [1] - 28:12
**lawyer** [1] - 33:8
**leading** [1] - 4:9
**least** [9] - 17:25, 18:1,
18:9, 20:14, 20:23,
26:9, 33:4, 34:1,
34:5
**leave** [3] - 8:5, 20:18,
32:6
**letter** [18] - 5:7, 7:12,
8:3, 9:7, 9:17, 11:15,
12:17, 13:24, 14:2,
14:6, 21:25, 25:12,
25:16, 26:13, 26:18,
29:5, 31:15, 32:8
**letters** [3] - 15:2,
16:23, 17:25
**letting** [1] - 19:8

**LEVI** [1] - 1:5
**Levi** [1] - 3:4
**likely** [3] - 25:1, 25:13, 33:10
**line** [1] - 4:2
**list** [4] - 9:24, 11:10, 13:2, 14:9
**listening** [1] - 4:3
**lists** [1] - 9:20
**litigating** [1] - 31:11
**litigation** [15] - 13:8, 14:11, 14:12, 14:13, 14:18, 15:5, 15:25, 16:7, 17:23, 18:5, 18:21, 18:25, 20:8, 23:13, 24:19
**live** [1] - 9:1
**living** [1] - 27:11
**log** [9] - 7:15, 7:21, 7:22, 11:21, 12:10, 13:11, 14:24, 21:2
**logged** [3] - 11:21, 12:10, 14:24
**look** [5] - 18:13, 18:19, 19:21, 30:12, 32:7
**looking** [3] - 8:1, 8:20, 23:9
**loss** [2] - 18:6, 18:8

**M**

**MAGISTRATE** [1] - 1:18
**mail** [1] - 7:23
**mails** [3] - 10:19, 27:21, 27:23
**majority** [2] - 12:18, 22:13
**marching** [1] - 12:16
**marked** [2] - 22:15, 23:6
**MARKOWITZ** [2] - 2:11, 2:15
**Markowitz** [1] - 3:20
**Mary** [1] - 17:5
**mary** [2] - 2:8, 3:15
**material** [2] - 20:25, 21:1
**materials** [5] - 22:19, 27:10, 27:19, 30:7, 32:1
**matter** [7] - 5:14, 13:13, 13:14, 14:16, 16:17, 18:13, 31:18
**matters** [5] - 4:24, 8:5, 16:24, 26:22, 32:8
**MATTINGLY** [2] - 2:3, 2:7
**means** [2] - 30:16, 35:5

**meet** [1] - 32:21
**meeting** [1] - 34:6
**message** [1] - 24:25
**messages** [10] - 14:14, 15:10, 15:14, 15:20, 15:22, 16:2, 17:8, 18:7, 18:11, 18:25
**met** [1] - 25:14
**might** [15] - 5:2, 8:4, 9:11, 11:13, 19:4, 19:5, 19:6, 20:4, 20:20, 24:13, 24:18, 25:24, 30:12, 32:24, 34:1
**mind** [1] - 31:12
**mindful** [1] - 19:9
**minute** [2] - 8:7, 23:8
**mistaken** [1] - 25:10
**moment** [2] - 9:17, 25:20
**months** [4] - 18:6, 19:24, 26:9
**morning** [8] - 3:6, 3:11, 3:17, 3:19, 3:23, 6:18, 6:20, 10:19
**motion** [7] - 4:25, 5:8, 5:22, 6:23, 7:1, 13:13, 33:19
**move** [3] - 16:4, 31:21, 32:4
**moving** [4] - 13:1, 19:3, 25:6
**MR** [15] - 3:11, 5:4, 5:10, 5:15, 6:10, 6:16, 7:6, 19:11, 19:21, 20:7, 32:17, 33:15, 33:17, 34:4, 34:8
**MS** [97] - 3:15, 3:19, 4:6, 4:12, 4:16, 4:21, 5:5, 5:19, 5:23, 6:2, 6:5, 6:7, 6:12, 6:20, 7:9, 7:17, 8:10, 8:11, 8:15, 8:25, 9:5, 9:10, 9:15, 9:24, 10:2, 10:6, 10:8, 10:10, 10:23, 11:2, 11:4, 11:7, 11:9, 11:18, 11:24, 12:16, 12:23, 12:25, 13:3, 13:7, 13:17, 14:5, 14:10, 14:20, 15:3, 15:6, 15:11, 16:9, 16:11, 16:13, 16:17, 16:19, 16:21, 17:1, 17:2, 17:3, 17:5, 17:7, 17:17, 17:21, 18:14, 18:16, 20:10, 21:4,

21:8, 21:14, 21:18, 21:21, 22:4, 23:7, 23:16, 23:21, 23:23, 24:23, 25:3, 25:15, 26:2, 26:7, 26:19, 27:6, 27:8, 27:16, 29:10, 29:21, 30:2, 30:18, 30:25, 31:20, 31:24, 32:11, 32:18, 33:6, 33:12, 33:16, 34:10, 34:11, 34:12
**mumbling** [1] - 35:9
**MUSTAFA** [1] - 1:17
**Mx** [1] - 3:9

**N**

**name** [2] - 3:9, 5:3
**named** [4] - 3:22, 9:22, 20:23, 28:4
**narrow** [1] - 31:5
**need** [16] - 5:19, 7:5, 8:1, 8:4, 8:6, 8:24, 9:6, 16:5, 20:19, 22:3, 25:9, 27:5, 30:15, 31:19, 32:4, 33:21
**needs** [5] - 8:23, 20:15, 33:20, 34:2
**neglect** [1] - 12:18
**new** [4] - 5:23, 25:3, 25:18
**next** [8] - 5:16, 6:9, 10:11, 13:7, 20:21, 21:10, 31:21
**night** [3] - 10:17, 10:20, 21:15
**noises** [1] - 35:9
**non** [5] - 7:22, 14:24, 22:25, 27:10, 27:19
**non-email** [2] - 7:22, 14:24
**non-party** [2] - 22:25, 27:10
**non-plaintiff** [1] - 27:19
**none** [1] - 14:15
**normal** [2] - 11:13, 31:10
**noted** [1] - 18:3
**notes** [2] - 30:21, 31:1
**notice** [7] - 16:14, 17:18, 18:21, 18:25, 19:18, 20:11
**notices** [13] - 12:17, 13:8, 14:11, 14:13, 14:14, 14:19, 15:2, 15:25, 16:8, 16:25, 17:16, 17:23, 20:9
**notified** [1] - 30:3

**nuanced** [1] - 30:6
**number** [5] - 7:17, 10:13, 13:17, 15:21, 27:8
**numbers** [7] - 9:22, 10:24, 11:1, 11:4, 11:6, 11:12, 17:11

**O**

**objecting** [1] - 28:9
**obviously** [1] - 14:13
**October** [1] - 7:24
**OF** [2] - 1:2, 1:14
**offer** [1] - 26:4
**offered** [1] - 15:19
**Official** [1] - 35:19
**omitted** [1] - 22:9
**once** [1] - 23:19
**one** [15] - 6:4, 7:14, 7:22, 18:9, 18:22, 19:1, 19:4, 21:11, 23:8, 24:1, 26:20, 28:17, 29:1, 32:21, 33:18
**Only"** [1] - 22:15
**opinion** [1] - 23:17
**opportunity** [3] - 4:4, 5:20, 33:8
**opposing** [1] - 20:1
**opposition** [1] - 5:24
**OR** [9] - 2:5, 2:9, 2:13, 2:17, 5:2, 5:4, 5:5, 15:23
**OR-Kids** [3] - 5:4, 5:5, 15:23
**oral** [1] - 7:2
**order** [18] - 4:25, 8:7, 8:18, 11:14, 14:1, 22:18, 23:10, 24:1, 27:12, 28:8, 29:14, 29:22, 30:6, 30:7, 30:13, 30:17, 31:7, 33:19
**ordered** [6] - 9:16, 10:12, 20:21, 21:11, 21:23, 29:17
**ordering** [1] - 29:20
**OREGON** [1] - 1:2
**Oregon** [5] - 1:8, 3:21, 21:20, 26:23, 31:18
**organized** [1] - 28:18
**original** [2] - 25:14, 35:10
**otherwise** [4] - 8:5, 21:1, 21:24, 26:22
**ourselves** [1] - 29:18
**outlining** [1] - 26:14
**outstanding** [2] - 26:21, 32:8

**overriding** [1] - 35:9
**overuse** [1] - 22:20
**own** [1] - 29:16

**P**

**page** [1] - 12:12
**paragraphs** [1] - 24:1
**paralegals** [1] - 10:18
**parallel** [1] - 3:25
**parent** [1] - 28:18
**parents** [2] - 28:20, 28:21
**parents'** [1] - 28:20
**part** [3] - 4:4, 17:17, 23:25
**partials** [1] - 11:17
**particular** [1] - 7:4
**particularly** [3] - 20:12, 22:22, 30:20
**parties** [15] - 8:2, 9:13, 12:15, 18:12, 19:8, 20:18, 24:17, 26:13, 27:2, 27:3, 28:12, 28:21, 29:24, 31:15, 32:10
**partner** [1] - 33:10
**partners** [1] - 28:21
**parts** [2] - 19:3, 32:14
**party** [3] - 18:10, 22:25, 27:10
**path** [3] - 20:15, 30:19, 30:25
**pause** [3] - 9:5, 14:4, 25:4
**paying** [1] - 32:5
**people** [5] - 18:17, 19:3, 29:24, 30:9, 32:14
**people's** [1] - 33:14
**perfect** [1] - 7:11
**perhaps** [5] - 4:23, 14:7, 26:12, 30:25, 33:20
**periods** [1] - 31:2
**permanency** [4] - 28:10, 28:16, 29:4, 31:2
**person** [8] - 15:22, 32:13, 32:19, 32:22, 33:4, 33:6, 33:7, 33:10
**personnel** [12] - 11:11, 11:16, 11:19, 11:23, 11:25, 12:3, 12:4, 12:12, 15:5, 20:22, 22:19
**persons** [1] - 22:19
**perspective** [4] - 7:5, 7:9, 19:4, 19:5

**pertaining** [1] - 28:5
**phone** [20] - 3:23, 9:19, 9:20, 9:22, 10:24, 10:25, 11:1, 11:4, 11:5, 11:10, 11:12, 13:19, 15:23, 17:9, 17:10, 19:1, 19:13, 19:17, 31:22
**phones** [6] - 14:17, 15:24, 18:7, 18:17, 18:20, 20:13
**phonetic** [3] - 3:25, 4:2
**place** [4] - 14:12, 15:25, 17:13, 19:14
**placed** [1] - 27:11
**Plaintiff** [1] - 1:6
**plaintiff** [13] - 3:10, 3:14, 3:16, 7:20, 9:22, 10:15, 18:1, 21:24, 22:1, 27:19, 28:4, 28:25, 29:8
**PLAINTIFF** [2] - 2:3, 2:7
**plaintiff's** [10] - 3:8, 5:24, 7:11, 15:11, 20:22, 21:24, 21:25, 24:6, 30:23, 31:4
**plaintiffs** [9] - 3:12, 8:3, 17:15, 19:13, 23:13, 23:24, 26:8, 28:4, 30:20
**plays** [1] - 19:7
**point** [3] - 16:5, 19:23, 21:7
**points** [1] - 31:9
**policies** [3] - 19:14, 19:16, 20:17
**policy** [2] - 19:25, 20:4
**portion** [1] - 31:1
**portions** [2] - 11:25, 12:4
**Portland** [6] - 2:5, 2:9, 2:13, 2:17, 32:16
**position** [1] - 27:9
**possible** [3] - 24:15, 26:16, 31:5
**potential** [3] - 15:13, 15:21, 30:19
**potentially** [1] - 22:18
**prefer** [2] - 32:13, 32:19
**prefers** [1] - 32:12
**prejudice** [1] - 23:13
**premature** [1] - 25:1
**present** [1] - 3:8
**presentation** [1] - 5:1
**preservation** [7] - 13:8, 13:18, 14:3, 14:11, 14:14, 15:9,

17:15
**preserved** [5] - 14:17, 15:16, 18:3, 18:4, 18:11
**preserving** [1] - 19:10
**pretty** [1] - 17:14
**previous** [2] - 12:3, 22:16
**previously** [1] - 22:8
**primary** [1] - 7:14
**privacy** [1] - 28:10
**privilege** [10] - 7:15, 7:21, 7:22, 11:20, 11:21, 12:10, 13:10, 14:24, 15:7, 21:2
**privileged** [1] - 21:1
**probate** [1] - 14:15
**proceed** [1] - 27:3
**PROCEEDINGS** [1] - 1:14
**proceedings** [2] - 34:13, 35:5
**process** [1] - 23:25
**produce** [8] - 7:22, 10:14, 14:25, 16:2, 20:22, 21:11, 21:23, 31:1
**produced** [27] - 8:23, 8:24, 9:14, 9:20, 10:12, 10:13, 10:16, 10:17, 10:20, 10:21, 11:10, 11:16, 11:18, 12:14, 12:15, 12:19, 12:21, 13:16, 21:15, 21:16, 22:10, 22:11, 22:14, 25:4, 25:8, 27:24, 30:8
**producing** [6] - 9:2, 11:9, 21:12, 27:21, 27:25, 30:14
**product** [5] - 13:10, 14:23, 15:2, 15:8, 16:23
**production** [9] - 7:19, 8:18, 15:18, 20:4, 21:25, 22:7, 22:9, 26:22, 27:12
**progress** [2] - 7:13, 7:19
**prohibit** [1] - 29:12
**prohibited** [1] - 28:14
**prohibition** [1] - 29:19
**projected** [1] - 7:20
**promise** [1] - 9:1
**pronouns** [2] - 4:6
**proper** [2] - 20:6, 25:18
**proposed** [2] - 26:8, 26:21
**protect** [1] - 29:6

**protected** [2] - 15:7, 22:19
**Protective** [1] - 28:7
**protective** [3] - 22:18, 23:10, 24:1
**provide** [7] - 5:8, 16:2, 17:25, 24:13, 24:17, 31:14
**provided** [2] - 20:25, 22:6
**provider** [1] - 28:6
**providing** [1] - 7:13
**pulling** [1] - 5:18
**purposes** [1] - 4:24
**put** [4] - 15:25, 20:11, 24:11, 33:17

## Q

**questions** [2] - 6:22, 27:5
**quite** [3] - 19:3, 29:5, 32:20

## R

**radar** [1] - 33:18
**raise** [2] - 14:2, 19:22
**raised** [4] - 5:23, 22:12, 27:9, 32:25
**rather** [2] - 8:13, 24:13
**Raygosa** [3] - 27:11, 28:6, 28:11
**re** [2] - 22:8
**re-added** [1] - 22:8
**read** [1] - 32:23
**ready** [2] - 6:4, 24:8
**receive** [3] - 13:10, 30:16, 32:9
**received** [3] - 14:15, 17:8, 17:10
**receiving** [3] - 12:4, 14:16, 32:7
**recognize** [1] - 32:14
**reconsideration** [6] - 4:25, 5:9, 6:23, 7:1, 30:6, 31:10
**reconsidering** [1] - 31:8
**record** [3] - 9:6, 9:11, 35:4
**recorded** [1] - 35:5
**RECORDED** [1] - 1:14
**records** [3] - 10:24, 10:25, 20:13
**redact** [1] - 31:2
**redacted** [1] - 30:11
**redacting** [2] - 28:1, 28:7
**redesignate** [1] - 24:5

**referenced** [1] - 29:24
**regard** [3] - 20:12, 22:22
**regarding** [7] - 6:24, 8:16, 9:21, 12:17, 22:1, 22:25, 27:10
**regulation** [1] - 6:25
**reject** [1] - 23:11
**relabeled** [1] - 23:19
**relabeling** [1] - 23:3
**relate** [3] - 15:24, 30:14, 31:2
**related** [4] - 15:6, 27:19, 28:3, 30:10
**relates** [1] - 31:7
**relating** [2] - 30:7, 30:9
**relevant** [3] - 15:13, 16:3, 22:15
**remain** [1] - 20:20
**remainder** [1] - 12:20
**remaining** [3] - 22:2, 23:20, 24:24
**remark** [1] - 22:21
**remarked** [2] - 23:4, 23:19
**remarking** [1] - 23:2
**remember** [1] - 5:2
**remotely** [3] - 32:9, 33:2, 33:9
**reply** [2] - 5:20, 6:11
**report** [3] - 22:6, 32:8, 33:24
**Reporter** [1] - 35:19
**REPORTER** [1] - 1:23
**representation** [1] - 23:2
**represented** [2] - 24:4, 29:3
**representing** [1] - 4:17
**represents** [1] - 29:1
**request** [5] - 14:10, 19:19, 20:5, 21:11, 30:6
**requested** [3] - 7:13, 21:23, 22:5
**requests** [1] - 21:24
**require** [2] - 20:13, 30:7
**required** [1] - 13:16
**requirements** [1] - 6:24
**requiring** [2] - 4:25, 27:12
**reset** [1] - 25:9
**resolution** [1] - 33:25
**resolve** [7] - 4:24, 20:14, 20:20, 24:14, 25:21, 31:15, 31:17

**resolved** [3] - 20:23, 24:24, 24:25
**resolving** [2] - 22:3, 26:5
**respect** [7] - 6:23, 8:9, 8:22, 11:23, 12:12, 14:18, 30:14
**respond** [5] - 10:6, 10:8, 23:21, 27:15, 32:4
**responding** [1] - 4:10
**response** [3] - 5:8, 21:12, 33:19
**return** [3] - 14:5, 21:22, 23:16
**returning** [1] - 14:10
**reviewing** [1] - 27:23
**RFP** [4] - 19:22, 20:4, 20:22, 21:12
**RFPs** [1] - 19:20
**Rhee** [2] - 2:16, 3:24
**rHEE** [1] - 34:12
**RIZZO** [17] - 2:3, 2:7, 3:11, 5:4, 5:10, 5:15, 6:10, 6:16, 7:6, 19:11, 19:21, 20:7, 32:17, 33:15, 33:17, 34:4, 34:8
**Rizzo** [10] - 2:4, 3:11, 3:13, 5:6, 6:9, 6:15, 7:7, 19:11, 31:13, 33:17
**RMR** [2] - 1:24, 35:18
**room** [1] - 35:9
**rules** [1] - 28:24
**ruling** [1] - 27:18
**run** [1] - 14:9

## S

**sanctions** [1] - 18:9
**Sandahey** [1] - 4:2
**save** [2] - 13:19, 15:22
**schedule** [5] - 5:11, 5:13, 13:14, 21:20, 34:6
**scheduled** [3] - 24:11, 24:21
**schedules** [1] - 6:15
**scheduling** [8] - 1:15, 3:5, 4:24, 7:10, 8:4, 8:17, 25:25, 26:1
**Schneider** [3] - 4:16, 14:22, 22:17
**scope** [2] - 19:20, 30:12
**search** [6] - 12:20, 19:23, 19:24, 22:1, 22:6, 22:8
**see** [7] - 5:17, 11:24,

13:4, 13:13, 24:7, 32:22, 33:4
**selected** [1] - 32:1
**send** [1] - 17:15
**sense** [3] - 9:11, 25:23, 26:11
**sensitive** [4] - 22:19, 27:14, 28:13, 28:22
**sent** [3] - 15:4, 16:14, 16:25
**September** [19] - 6:14, 6:21, 7:23, 12:10, 12:21, 13:11, 14:25, 24:11, 24:21, 25:5, 25:25, 26:11, 26:18, 27:2, 31:16, 33:22, 33:25, 34:7
**serious** [1] - 28:10
**Services** [2] - 3:22, 28:7
**set** [6] - 6:24, 7:12, 25:10, 25:18, 25:22, 27:1
**she/her** [1] - 4:7
**shifting** [1] - 13:23
**shortcut** [1] - 8:1
**sibling** [1] - 28:5
**siblings** [3] - 28:18, 28:19
**sides** [1] - 10:18
**signature** [3] - 35:10, 35:11
**signed** [1] - 35:11
**signing** [1] - 35:3
**similarly** [1] - 28:3
**simple** [2] - 15:20, 18:18
**simply** [1] - 22:18
**simultaneous** [1] - 35:8
**six** [1] - 18:6
**Sixth** [2] - 2:4, 2:8
**SKJELSET** [39] - 3:15, 8:10, 8:15, 8:25, 9:5, 9:10, 9:15, 9:24, 10:2, 11:24, 12:16, 13:3, 13:7, 13:17, 14:5, 14:10, 17:1, 17:3, 17:5, 17:7, 17:17, 17:21, 20:10, 21:4, 21:18, 21:21, 22:4, 23:7, 23:16, 24:23, 25:3, 25:15, 26:2, 27:6, 27:8, 31:20, 31:24, 32:11, 34:10
**Skjelset** [22] - 2:8, 3:15, 5:7, 8:14, 10:1, 11:22, 12:13, 13:2, 17:4, 17:5, 20:9,

20:24, 21:3, 21:17, 22:2, 23:25, 24:22, 25:12, 31:13, 31:19, 31:23, 32:10
**Skjelset's** [2] - 10:11, 11:15
**someone** [3] - 19:17, 32:24, 33:1
**sometimes** [2] - 19:4, 28:16
**somewhere** [1] - 12:2
**sort** [2] - 16:1, 18:23
**sounds** [2] - 12:11, 23:18
**speaking** [1] - 35:8
**special** [2] - 3:21, 3:24
**stage** [1] - 7:21
**standpoint** [1] - 7:6
**start** [2] - 3:8, 26:7
**started** [1] - 25:21
**state** [4] - 28:14, 28:23, 29:12, 32:15
**STATES** [2] - 1:1, 1:18
**status** [4] - 14:21, 27:18, 32:8, 33:24
**statutes** [4] - 28:23, 29:6, 29:12, 29:22
**stenographic** [1] - 35:4
**step** [2] - 16:6, 28:19
**step-siblings** [1] - 28:19
**Steven** [2] - 2:4, 3:11
**still** [6] - 15:23, 19:5, 19:6, 25:7, 33:20, 34:1
**strongly** [1] - 33:1
**structure** [1] - 9:16
**students** [1] - 4:1
**subject** [2] - 27:12, 29:22
**submission** [1] - 5:20
**submit** [4] - 5:12, 20:5, 26:17, 31:16
**submitted** [3] - 7:15, 17:24, 26:13
**subpoena** [2] - 17:12, 20:16
**subsequent** [4] - 12:20, 22:9, 22:10, 25:4
**substance** [1] - 16:23
**substantial** [1] - 7:13
**Suite** [4] - 2:5, 2:9, 2:13, 2:17
**summarize** [2] - 8:5, 8:8
**summarizes** [1] - 9:7
**summarizing** [2] - 26:20, 31:15

**summer** [2] - 4:1, 4:4
**sunscreen** [1] - 4:21
**supposed** [2] - 18:2, 18:3
**SW** [4] - 2:4, 2:8, 2:12, 2:16

## T

**team** [2] - 4:8, 33:8
**tecum** [1] - 20:16
**tee** [1] - 16:5
**teleconference** [1] - 1:15
**telephone** [1] - 13:14
**terms** [5] - 12:5, 22:1, 22:6, 22:8, 31:14
**text** [10] - 14:14, 15:9, 15:14, 15:20, 15:22, 16:2, 17:8, 18:6, 18:25, 24:24
**texts** [1] - 19:24
**THE** [112] - 1:1, 1:2, 1:17, 2:3, 2:7, 2:11, 2:15, 3:4, 3:6, 3:13, 3:17, 4:5, 4:9, 4:13, 4:19, 4:22, 5:6, 5:11, 5:17, 5:21, 5:25, 6:3, 6:6, 6:8, 6:11, 6:14, 6:17, 6:18, 6:21, 7:8, 7:11, 7:25, 8:12, 8:20, 9:4, 9:6, 9:12, 9:23, 9:25, 10:5, 10:7, 10:9, 10:22, 10:25, 11:3, 11:5, 11:8, 11:13, 11:22, 12:11, 12:22, 12:24, 13:1, 13:6, 13:12, 13:22, 14:8, 14:18, 15:1, 15:4, 15:9, 16:7, 16:10, 16:12, 16:16, 16:18, 16:20, 16:22, 17:4, 17:6, 17:15, 17:19, 17:22, 18:15, 19:2, 19:19, 20:3, 20:8, 20:18, 21:6, 21:10, 21:17, 21:19, 21:22, 23:1, 23:15, 23:18, 23:22, 24:10, 25:2, 25:5, 25:24, 26:4, 26:17, 26:20, 27:7, 27:15, 29:9, 29:11, 30:1, 30:5, 30:24, 31:4, 31:22, 32:3, 32:13, 32:19, 33:11, 33:13, 33:23, 34:5, 34:9
**there'll** [2] - 23:2
**they've** [4] - 9:3, 22:6, 23:4, 23:19

**third** [1] - 28:21
**three** [2] - 8:13, 34:5
**three-hour** [1] - 34:5
**timelines** [1] - 25:14
**today** [9] - 4:8, 4:17, 8:2, 10:3, 10:21, 11:5, 11:10, 21:16, 24:9
**together** [1] - 4:15
**tomorrow** [1] - 10:1
**tort** [5] - 12:17, 16:14, 17:18, 18:21, 19:17
**towards** [1] - 4:20
**track** [1] - 21:12
**trading** [1] - 18:7
**Transcriber** [1] - 35:18
**TRANSCRIPT** [1] - 1:14
**transcript** [2] - 35:4, 35:10
**travel** [1] - 32:11
**traveling** [1] - 32:14
**tried** [2] - 6:2, 9:16
**trigger** [1] - 20:4
**true** [1] - 35:4
**try** [1] - 31:25
**trying** [3] - 10:19, 18:23, 31:22
**Tuesday** [1] - 10:15
**turn** [3] - 7:11, 13:4, 30:5
**two** [5] - 4:1, 7:21, 15:19, 28:4, 32:22
**two-stage** [1] - 7:21
**types** [1] - 19:14

## U

**ultimately** [1] - 8:21
**unable** [2] - 23:13, 35:8
**unclear** [2] - 13:10, 14:14
**under** [3] - 13:9, 24:1, 27:9
**understood** [5] - 12:3, 19:2, 22:16, 27:18, 28:8
**underway** [1] - 15:14
**UNITED** [2] - 1:1, 1:18
**universe** [1] - 30:21
**unless** [1] - 33:1
**up** [15] - 5:18, 7:2, 9:1, 13:13, 13:25, 14:3, 16:5, 18:17, 23:4, 23:20, 25:19, 26:10, 27:4, 31:16, 34:2
**update** [1] - 33:21
**updated** [2] - 15:11,

15:17
**updates** [2] - 7:18, 16:2
**upgrading** [1] - 18:7

## V

**value** [1] - 16:25
**vast** [1] - 22:13
**vendor** [2] - 10:15, 10:16
**videoconference** [1] - 33:3
**viewing** [1] - 5:1
**vs** [1] - 3:4

## W

**waiting** [1] - 10:16
**week** [12] - 5:16, 6:9, 9:2, 9:21, 9:22, 10:4, 10:14, 12:19, 15:12, 21:13, 26:8
**weeks** [3] - 15:19, 16:4, 27:25
**welcome** [1] - 33:4
**welfare** [1] - 28:3
**whittling** [1] - 8:21
**whole** [1] - 28:23
**willing** [2] - 31:8, 32:11
**Wilson** [1] - 33:10
**withheld** [3] - 11:20, 12:1, 12:9
**withhold** [2] - 27:13, 27:19
**withholding** [2] - 13:9, 27:17
**witnesses** [1] - 23:14
**wonder** [1] - 8:1
**wonderful** [1] - 33:25
**wondering** [1] - 19:15
**written** [1] - 5:8

## Y

**year** [1] - 18:6
**years** [1] - 16:21
**yes-no** [1] - 18:18
**yesterday** [1] - 10:2
**yourselves** [1] - 3:7

## Z

**Z.C** [2] - 22:23, 28:5