Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>      Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>      Defendants. | CASE NO. 6:22-cv-01813-MK<br><br>**PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION**<br><br>*Oral argument set for September 8, 2023* |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>      Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>      Third Party Defendant. | |

1   PLAINTIFF'S  RESPONSE  TO  MOTION  FOR RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

## INTRODUCTION

The Court should deny defendants' Motion for Reconsideration. The Declarations of Steven Rizzo ("Decl.") and Mary Skjelset ("Skjelset Decl.") and attached exhibits, together with the papers and pleadings on file support this Response.

## STANDARDS

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised in earlier litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *see also Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) (finding that the district court did not abuse its discretion by upon denying a motion for reconsideration where the movant offered no reason for failing to provide the evidence when litigating the underlying motion).[1]

---

[1] To defendants, *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) stands for the proposition that "a motion for reconsideration *should be granted* when doing so is *necessary* to 'correct a clear error or prevent manifest injustice.'" (ECF 60 at 3) (emphasis added). But defendants misconstrue *Hodel*. As the Ninth Circuit observed, a district court's revision of a non-final order under Rule 54(b) follows the "doctrine of law of the case which counsels *against* reopening questions once resolved in ongoing litigation," and emphasized that "the *major grounds* that justify reconsideration" are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (emphasis added). No such grounds appear in defendants' Motion.



## RELEVANT PROCEDURAL BACKGROUND

Plaintiff served the First Request for Production ("RFP") on March 3, 2023. (Decl., Ex. 1 at 6, 7, 9). RFP 56 contained a Request for Inspection:

> RFP No. 56: Plaintiff seeks a mutually convenient time/date to inspect the following documents referenced above: (i) the original certification file; (ii) the pre-adoption file and/or adoption file; and (iii) the OR-Kids electronic file.

(*Id*. at 9).[2] At the time, defendants were represented by DOJ AAG Jill Schneider and DOJ AAG Nicholas Mancuso. In their April 11, 2023 Response, defendants objected to No. 56 on the following grounds:

> RESPONSE: State Defendants object to this Request in its entirety as *unduly burdensome*, *duplicative* of the response to written requests, and *unlikely to lead to the discovery of relevant evidence* other than that which will be provided through written discovery.

(Decl., Ex. 2 at 5) (emphasis added). Defendants made no objection on grounds of privilege. They did not object on grounds of confidentiality; nor did they seek a protective order under Rule 26(c) in relation to the request for inspection.[3]

The Court entered the Protective Order on May 30, 2023, which protects confidential documents and information from public disclosure or dissemination. (ECF 44).

On June 9, 2023, Plaintiff wrote to the Court, seeking an order compelling the inspection of J.C.'s file in OR-Kids; the Duncan/Raygosa Provider File in OR-Kids; and the Duncan/Raygosa hardcopy certification file. (Decl., Ex. 3).[4] In their June 21, 2023 response, defendants announced

---

[2] Fed. R. Civ. P. 26 provides that a party is entitled to discover any non-privileged matter that is relevant to any party's claim or defense. *Id.*

[3] Defendants' bid to use their General Objections as a vehicle to belatedly assert privilege was found lacking in merit. (7/11/2023 Order, ECF 56).

[4] Fed. R. Civ. P. 34 provides in pertinent part for the production of documents and things, and to permit inspection of responsive documents when such documents are in the party's possession, custody or control. *Id.*

3  PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

that Lauren Blaesing "is joining [DOJ] as co-counsel," and would "ultimately assume the role as lead counsel." (Decl., Ex. 4 at 2).[5] Defendants opposed Plaintiffs' request for the inspection, arguing as follows:

> Inspection of documents – ODHS is producing copies of the entire ODHS record, in electronic and physical files for the plaintiff's family and the provider certification of the Duncan/Raygosa home. Plaintiff has not demonstrated that the production of copies is inadequate or deficient. To avoid dispute, state defendants will provide hard copies for physical inspection at a location determined by defendants' lead counsel. Plaintiff is not entitled to direct access to the State's secure information systems. State defendants object to plaintiff's request to directly access the State's confidential business systems, specifically . . . ORKIDS application database, as irrelevant, unduly burdensome, and on the basis of risk of exposure of confidential information of non-parties.

(*Id.* at 3). Consistent with their RFP Response, defendants declined to assert privilege. While newly invoking confidentiality, they made no mention of the protections afforded confidential materials by the extant Protective Order. (ECF 44). Instead, they dilated the limited nature of Plaintiff's request for the inspection and construed it broadly so as to encompass "direct access" to "secure information systems" and "confidential business systems." Defendants claimed that their anticipated production of "copies of the entire ODHS record in electronic files" required Plaintiff to first "demonstrate" that the copies were "inadequate or deficient." They offered no supporting authority for the apparent burden-shifting.

Ms. Blaesing first wrote to Plaintiff on June 26, 2023, to describe her anticipated role and express her intent to "participate" in the July 5, 2023 discovery hearing. She requested a reset of

---

[5] Ms. Blaesing and Mr. Harry Wilson are employed by Markowitz Herbold PC. Both attorneys represent DHS in *Wyatt B. v. Brown,* Civ. No. 6:19-cv-00556-AA, which is pending in the Eugene division of the District of Oregon. The plaintiff class in *Wyatt B.* alleges civil rights claims against DHS and other defendants arising out of their provision of foster care services. (*See e.g.*, *Wyatt B.*, ECF 1).

4   PLAINTIFF'S   RESPONSE   TO   MOTION   FOR
RECONSIDERATION


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

the hearing, but parried Plaintiff's outreach to confer by phone regarding the issue(s) she planned to argue along with Ms. Schneider. (Decl., Ex. 5).

Ms. Blaesing, appeared at the July 5 discovery hearing, along with Mr. Wilson, and Ms. Schneider. (Decl., Ex. 6). Having had ample time to prepare defendants' position regarding the file inspection issue, Ms. Schneider argued on behalf of all defendants – yet again without asserting privilege:

> MS. SCHNEIDER: Yes. It is not my understanding that the provider notes can be provided with that drop-down file prepared. In order to get the metadata that they want, they want to show the date that the notes have been entered, and that information is -- does not come to us. The provider notes are produced in their entirety. The way to get to that information is *only by allowing the plaintiffs to go in and look at OR-Kids' entire database*, which is -- *it's full of confidential material*. Now, if the request is any information regarding what dates these notes were entered, we can go back and ask if that information can be produced. What we don't want is for plaintiff to have *the key, the code to the database file for OR-Kids* for the State of Oregon.

(*Id*. at 35) (emphasis added).[6]

After written and oral argument from the parties, the Court allowed Plaintiff's inspection on specified terms. To assuage Ms. Schneider's "entire database" contention, the Court ordered that defendants "may supervise and manage the way in which the information is accessed so no [] other file is reviewed onsite other than" the two relevant files at issue: J.C.'s case file and the Duncan/Raygosa provider file. (*Id.* at 35). The Court further expected defendants to "work very quickly to coordinate a time in which [the inspection] can be completed." (*Id*. at 36). The Court asked all counsel "[i]s there anything else that I need to specify to make sure we don't come back on this issue," and defense counsel said nothing in response. (*Id*. at_ 36). The Court's ensuing July 11, 2023 Order required defendants "to comply with Plaintiff's request to inspect the OR-Kids

---

[6] Ms. Schneider did not explain how Plaintiff's inspection of the two OR-Kids files at issue would unlock the apparent "key" or "code."

5  PLAINTIFF'S   RESPONSE   TO   MOTION   FOR
RECONSIDERATION


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

metadata pertaining to the 'provider file' from Duncan-Raygosa and the 'case file' for J.C. at the DHS office." (ECF 56).

Plaintiff sought immediate conferral to arrange the inspection; yet heard nothing from defendants. On July 18, 2023, Plaintiff again encouraged defense counsel to confer by phone to arrange for the inspection and discuss defendants' anticipated document production. (Decl., Ex. 7). The next day, July 19, Mr. Wilson responded via email, announcing that defendants intended to seek reconsideration of what he recast as "the Court's order regarding the inspection of OR-Kids." Defendants offered no explanation for their delay. (*Id.* at 4). A week later, defendants filed the Motion for Reconsideration – the antithesis of the "substantial progress" directed by the Court.

ARGUMENT

### A.    *Defendants fail to meet the requirements of Rule 60(b)(1).*

Fed. R. Civ. P. 60(b)(1) provides in pertinent part that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: mistake, inadvertence, surprise, or excusable neglect." *Id*. There is no supporting Declaration from Ms. Blaesing, Mr. Wilson, Ms. Rhee, Ms. Schneider, or Mr. Mancuso that addresses any one or more of the requirements. No evidence, meanwhile, shows that defendants made any mistake, acted inadvertently or neglectfully, or that they were "surprised." Rather, as shown above, defendants' objections to Plaintiffs' request for the inspection were planful, fully briefed, and argued on July 5. Despite their purported reliance on Rule 60(b)(1), defendants have made no reasonable effort to meet its requirements. Defendants simply ignore the requirements, and they otherwise fail to establish an intervening change of controlling law, the availability of new evidence, or (as discussed below) the need to correct a clear error or prevent manifest injustice. *Shalit, Sch. Dist. No. 1J, Marlyn Nutraceuticals, Inc..*



RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

**B.**    *Defendants fail to establish a basis for revision under Rule 54(b).*

Fed. R. Civ. P. 54(b) provides in pertinent part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment. . . ." *Id.* However, defendants must show a "clear error" and/or establish "manifest injustice." *Sch. Dist. No. 1J, Pyramid Lake.*

In the context of the law of the case doctrine, "clearly erroneous is a very exacting standard . . . [t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *See Hopwood v. Texas*, 236 F3d 256, 273 (5th Cir. 2000) (internal use of quotations and citation omitted); *Smith v. Clark County, Sch. Dist.,* 727 F.3d 950, 955 (9th Cir. 2013) ("Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed'") (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). Here, the defendants have failed to show that the Court made any error in ordering Plaintiff's file inspection.

The same analysis applies to assertions of "manifest injustice": "[T]he courts of the Ninth Circuit generally treat manifest injustice as very nearly synonymous with clear error, defining manifest injustice as any 'error in the trial court that is direct, obvious and observable." *See Greenspan v. Fieldstone Fin. Mgmt. Grp, LLC*. 2018 U.S. Dist. LEXIS 214308 * 20 (D. Or. 2018) (internal use of quotations and citations omitted); *see also  Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent.") (internal use of quotations omitted). Defendants have not answered the call.



RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330  |  Portland, OR 97201
rizzopc.com

In sum, "[w]hether through mistake, ignorance, or tactical maneuvering," defendants have "plac[ed] themselves in the position of being required to meet the stringent standards" for revision under Rule 54(b). *See In re Dreyfus Mut. Funds*, 2006 U.S. Dist. LEXIS 41359 *5 | 2006 WL 1699443 (W.D. Pa. 2006). Defendants have failed to establish the "manifest injustice" that Plaintiff's escorted inspection of the two files at issue causes them to suffer. Defendants' provide no justification for revision of the Court's order under Rule 54(b).[7]

Defendants' Motion is needlessly made and lacks merit. The Court should deny it. If the Court does not deny it based on defendants' failure to offer any evidence consistent with Rules 60(b)(1) and 54(b), then the Court may consider the following substantive arguments.

### C.    *Defendants fail to establish grounds for reconsideration.*

In their quest for a second chance, defendants fail to evoke "manifest injustice" by claiming *post hoc* that obeying the Court's order "would cause" DHS "to violate state and federal regulations" and "could endanger []DHS's access to the FBI CJIS information" (ECF 60 at 7). Defendants prepared for their contingencies by (i) continuing to inflate the scope of an apparent inspection of the entire OR-Kids database system while simultaneously minimizing the basis for Plaintiff's escorted inspection of the two OR-Kids files at issue; (ii) failing to cite relevant state and federal regulations and taking liberties with select regulations; and (iii) proffering artfully nuanced Declarations of DHS employee fact witnesses – all of whom were available on and prior to the July 5 hearing. Plaintiff begins by addressing the Declarations that underpin defendants "would cause-violation," "could endanger-access" contingencies.

### 1.  Frank Miles

---

[7] Defendants referenced Rule 54(b) until after the parties conferred on the Motion, presumably as a backstop.



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Miles was the "Unit Manager" of the "shared" DHS/OHA Background Check Unit ("BCU") from 2013 to 2019, a period that aligns with Plaintiff's placement in the Duncan/Raygosa foster home. (ECF 62 at 2).[8] Miles asserts that "OR-Kids provides access to CJI from the FBI's CJIS and OSP's Law Enforcement Data System ('LEDS')." Miles does not define *CJI* or explain what he means by *access*. Miles states – with further vagary – that OR-Kids has indirect access to CJI," and lacks "the ability to query or update state and national systems." (ECF 62 at 3) (emphasis added). Miles does not state what *indirect access* means, but "nonetheless" states that OR-Kids "contains legacy CJI from LEDS or FBI systems." What *legacy CJI* means is also unspoken. Leveraging the hints and ambiguity, Miles opines that "OR-Kids must comply with all CJIS and LEDS physical, data, and personnel requirements," none of which is identified. (ECF 62 at 3).

Miles holds back important information from the Court. For example, DHS is not defined as a "[c]riminal justice agency." *See* ORS 181A.010. Rather, DHS is an "authorized agency," designated to "report, receive or disseminate criminal record information." *See* ORS 181A.190(1)(a). Accordingly, DHS does not conduct criminal records checks. Rather, DHS "may request" that Oregon State Police ("OSP") "conduct a criminal records check on a Subject Individual ["SI"] for noncriminal purposes." *See* ORS 181A.195(2)(a).[9]

OSP conducts SI criminal records checks "as requested" by DHS through OSP's Law Enforcement Data System ("LEDS"), which OSP maintains in accordance with OSP rules and procedures. *See* ORS 181A.195(7). The functional contours of LEDS reveal the operation of "a

---

[8] BCU is a Shared Services unit with DHS/OHA. *See* OAR 407-007-0010(11).

[9] A "Subject Individual" ("SI") like Raygosa, is a person from whom DHS "may require fingerprints . . . for the purpose of enabling [DHS] to request a state or nationwide criminal records check." *See* ORS 181A.195(1)(b); *see also* ORS 181A.195(2)(c) (If DHS decides that a nationwide criminal records check "is necessary," it "may request that [OSP] conduct the check" through the FBI).

9  PLAINTIFF'S  RESPONSE  TO  MOTION  FOR
RECONSIDERATION


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

computerized criminal justice telecommunications and information system providing message switching and record storage and retrieval capabilities." *See* OAR 257-015-0040(1).[10] LEDS functions as Oregon's National Crime Information Center Control Terminal Agency ("NCIC") and as National Law Enforcement Telecommunications System Control Terminal Agency ("NLETS"). *See* OAR 257 015 0040(3).[11] LEDS criminal records checks are conducted "if deemed necessary by [DHS] *to protect children*, elderly persons, persons with disabilities or other vulnerable persons." *See* ORS 181A.200(3) (emphasis added). OSP provides the results of a criminal records check – which is executes – to DHS, the party "requesting the check." *See* ORS 181A.195(3).

Thus, in an attempt to decipher Miles's ambiguous testimony, Plaintiff believes that DHS cannot access CJI (directly or indirectly) and does not have a computer terminal link with LEDS or FBI CJIS. And that it is likely that *legacy CJI* likely consists merely of the results of LEDS criminal records checks on Duncan/Raygosa (and perhaps their adult son as well), which DHS requested, received, and uploaded in the Duncan/Raygosa provider file. Defendants' "could-endanger access" contingency is therefore remote, at best.

Likewise, Miles's vague testimony diminishes defendants' "would-cause-violation" contingency as well. For example, Miles is the Criminal Justice Information Services ("CJIS")

---

[10] LEDS is a program organized within the Intergovernmental Services Bureau of OSP, which provides "a criminal justice telecommunications and information system for [] Oregon, and is the control point for access to similar programs operated by other states and the Federal Government." *See* OAR 257-015-0010(2). There is no evidence that the OR-Kids database system has terminal access to LEDS or FBI CJIS.

[11] NCIC "is responsible for *the state's computer link* with [the NCIC] and for ensuring that NCIC system security and operational policies and procedures are carried out" in Oregon. *See* OAR 257-015-0030(9) (emphasis added). The same is true with NLETS. *See* OAR 257-015-0030(10). There is no evidence that the OR-Kids database system has a computer link with NCIC or NLETS.


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Administrator and Local Agency Security Officer ("LASO") for DHS/OHA. He provides "guidance and oversight" regarding, e.g., "the creation, maintenances, use, [and] transmission" of CJI. (*Id.* at 3). In his auxiliary capacity as "the primary information security contact" between a "unit or program" using CJI and OSP, Miles is "familiar with policies and regulations" DHS's "use and access of CJI." (ECF 62 at 3).

Despite his knowledge base, there is no evidence that Miles sought guidance from DHS officers, OSP, or DOJ to confirm whether Plaintiff's escorted inspection, in fact, risks defendants' "violation" of state law.[12] Likewise, there is no evidence that Miles consulted with his FBI peer group or sought guidance from the United States Office of General Counsel on whether obeying the Court's order, in fact, "endangers" what amounts to DHS's ability to receive *legacy CJI* via LEDS.[13] Given his claimed "familiarity" with the regulations, it is odd that Miles appears to have overlooked ORS 181A.220(1)(a), which provides in pertinent part that . . . the fingerprints, photographs, records and reports complied under . . . ORS 181A.010 [definitions], 181A.160 [fingerprint data], 181A.175 [disposition report], 181A.230 [procedures for access to criminal records] . . . and this section are confidential and exempt from public inspection *except . . . [a]s*

---

[12] The May 2023 DHS/OHA Information Technology Asset Management Policy ("the ITAMP") lends no support for Miles's suggestion that Plaintiff's counsel must enter into an "OSP approved" form of "outsourcing" agreement with DHS prior to the file inspection. (ECF 62-3). The ITAMP pertains to things such as the acquisition, management, and installation of "Information Technology (IT) assets," which applies to "all [DHS/OHA] staff including employees and others, such as partners and contractors." But Plaintiff's counsel is not a DHS's "contractor" or "partner." And the ITAMP makes no reference to OSP, nor does it state that a court ordered file inspection inspection constitutes a "noncriminal justice administrative function" activity. (*Id*. at 1).

[13] Miles cites no provision in the 357 page FBI CJIS Security Policy appended to his Declaration that prohibits DHS from obeying the Court's order authorizing Plaintiff's inspection. (ECF 62-1). It is unclear whether Miles was even apprised of the order.

11  PLAINTIFF'S   RESPONSE   TO   MOTION   FOR
RECONSIDERATION


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

*ordered by a court*." *Id.* (emphasis added).[14] *See also,. infra,* 28 CFR § 20.21(b)(2), 28 CFR § 20.21(c)(3) (providing for dissemination as authorized by court order). The Court should strike Miles's Declaration because it is misleading, and lacking foundation.

### 2. Michael Payne

Payne's Declaration is a reengineered version of his March 16, 2021 Declaration, which DOJ proffered under seal (due to confidential information regarding the plaintiff foster care abuse victims) in *J.M. et al v. Karla Major et al,* Case No. 6:18-cv-0079-[now MO]. DOJ used Payne's testimony in an attempt to bar the plaintiffs from taking a 30(b)(6) deposition. The *J.M.* court ordered Payne to testify as DHS's 30(b)(6) designee in part because he provided discrepant testimony in his Declaration regarding OR-Kids terminology (e.g., what "edit," "update" and "view" mean) and systems functions. Plaintiff therefore regards Payne as a biased witness. (Decl. Ex. 8).

Payne's assertion that "OR-Kids is a 'Level 4 – Critical' information asset" apparently relates to the January 31, 2008 DAS Information Asset Classification Policy ("the IACP") appended to his Declaration. (ECF 63 at 3; ECF 63-11). But Payne is not a DAS officer, managing agent, or designee, and the ICAP makes no reference to OR-Kids in 2008. Payne's belief that "[p]ublic disclosure" of any Level 4 – Critical information in the two OR-Kids files at issue "could potentially cause major damage . . . including death to named individual(s) . . . or cause major harm" to DHS is overblown. (*Id.*). For example, Ms. Schneider has promised for months that "ODHS is producing copies of *the entire ODHS record*," regarding Duncan/Raygosa and J.C.

---

[14] *Cf.,* ORS 181A.220(2) ("The records of [OSP] of crime reports to [OSP] and of arrests made by [OSP], however, *shall not be confidential* and shall be available in the same manner as the records of arrest and reports of crimes of other law enforcement agencies under ORS 192.345(3).") (emphasis added).

12 PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

(Decl., Ex. 4). So far as Plaintiff is aware, the documents produced thus far have not resulted in anyone's injury or death, nor has the production caused "major harm" to DHS. Further, absent the Court's express permission, the Protective Order prohibits "public disclosure" of the documents produced in this civil rights action.

Following inspection of the two OR-Kids files at issue, Plaintiff may well need to additional requests for information in the form of so-called "customized reports." However, as discussed below, Payne's ability to generate such reports by using an SQL replication method of his choice does not supplant Plaintiff's file inspection. On the contrary, Plaintiffs' inspection will inform the specific types of requests necessary and determine whether defendants are willing to provide them in the form requested. As discussed below, Payne's use of SQL confirmation of case note deletions, if any, is not the primary purpose of Plaintiff's file inspection.

### 3. Caroline Burnell

Burnell's averments regarding the DHS "Legal Unit" activities will be addressed in connection with briefing and argument on defendants' anticipated privilege log.[15] Otherwise, Bunnell's testimony is largely immaterial because the Court did not order an "inspection of OR-Kids." (ECF 64 at 2). Burnell's testimony that DHS will never "voluntarily" provide "access to OR-Kids database system as a response to a civil discovery request" is unsurprising in light of the Oregon Secretary of State 2018 Audit, which was highly critical of OR-Kids. (*See e.g.,* Decl., Ex. 9) ("In all but very few instances, the data was unreliable for our audit purposes. This was due to many factors, such as uncertain and untested data integrity and accuracy, incompleteness, data entry errors and poor quality data conversion.").

---

[15] The briefing will also address defendants' attempt to foster the impression that "parts of the database may reflect activities of the DHS Legal Unit," which defendants and Burnell seem to have already self-adjudicated as "work product." (ECF 7 n.8).

13  PLAINTIFF'S  RESPONSE  TO  MOTION  FOR
RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

4.  **The *post hoc* Declarations fail to support defendants' legal argument.**

*First,* defendants' argument that allowing Plaintiff "direct access to OR-Kids *would cause* []DHS to violate" various "federal and state rules and policies" is an exaggeration. (ECF 60 at 7).

As referenced above, ORS 181A.220(1)(a) provides for confidentiality – not privilege – and contemplates the court's ability to order disclosure. Similarly, 28 CFR § 20.21(b)(2) provides in pertinent part that "dissemination of nonconviction data has been limited, whether directly or through any intermediary only to . . . Individuals and agencies for any purpose *authorized by . . . court rule, decision, or order*, as construed by appropriate State or local officials or agencies." *Id.* (emphasis added). 28 CFR § 20.21(c)(3) provides in pertinent part that subsection (b) "does not mandate dissemination of criminal history record information to any agency or individual" and that "States . . . will determine the purposes for which dissemination of criminal history record information is *authorized by . . . court rule, decision or order*."[16] *Id.* (emphasis added). The Court's order squares with these federal regulations.

Plaintiff alleges that Ducan/Raygosa relocated in 2015 under suspicious circumstances from California to Oregon, where they had no family connections or support network. (ECF 1 at 6). Plaintiff further alleges that Duncan/Raygosa "were involved in and/or questioned in connection with the death of a three-year-old female child in or around Fresno, California," and that "Raygosa was later ordered by California Court to have no contact with the child's older

---

[16] *See also* 28 CFR Appendix to Part 20 - Appendix to Part 20—Commentary on Selected Sections of the Regulations on Criminal History Record Information Systems ("The regulations distinguish between conviction and nonconviction information insofar as dissemination is concerned. Conviction information is currently made available without limitation in many jurisdictions. Under these regulations, conviction data and pending charges could continue to be disseminated routinely. No . . . court rule is necessary in order to authorize dissemination of conviction data . . . After December 31, 1977, dissemination of nonconviction data would be allowed, if authorized by . . . a court rule, decision, or order.").

14  PLAINTIFF'S  RESPONSE  TO  MOTION  FOR RECONSIDERATION

RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

brother." (*Id.* at 5-6). As BCU Manager at times material, Miles is a fact witness regarding the steps that defendants and BCU took (or failed to take) to request and transmit criminal records and child abuse background checks of Duncan/Raygosa through LEDS and evaluate the results received from OSP. Also, DHS is suing Raygosa – claiming that he is the "sole cause" of J.C.'s sexual abuse. So, in effect, defendants are using the Motion to protect and defend their unfettered "access" to everything in the two files at issue, including criminal and child abuse history pertinent to Duncan/Raygosa, while challenging Plaintiff's ability to inspect those files, which remain in defendants' exclusive possession, custody and control.

The Court should reject defendants' weaponization of confidentiality provisions designed to protect children (not DHS) as a way to further solidify their decisive litigation advantage over J.C. – a child abuse victim.[17] *See American Civil Liberties Union, Inc. v. Finch,* 638 F.2d 1336, 1333-34 (5th Cir. 1981) ("The purpose of enacting § 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials . . . there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.") (internal use of quotations and citation omitted); *Farley v. Farley*, 952 F. Supp 1232 | 1997 U.S. Dist. LEXIS 1691 (M. D. Tenn. 1997) ("As has been noted by other federal courts, the confidentiality of official records is generally guaranteed by statute to protect those who are regulated by a state agency rather than the agency itself. Accordingly, the agency should not be permitted to use a privilege designed to ensure the welfare of those it governs

---

[17] Defendants' contention that, as an apparent SI, Plaintiff's counsel and expert must subject themselves to the LEDS criminal background check process is fiction, driven by defendants' avoidance of 28 CFR § 20.21(b)(2) and 28 CFR § 20.21(c)(3). (ECF 60 at 5-6). DHS's own policies – on which Miles is a "Contact" – only require such a process for DHS employees who may have "unescorted access" to CJI. (Decl., Ex. 10). Here, the Court ordered that "somebody from either the [DOJ] . . . and somebody from [DHS] may supervise and manage the way in which the information is accessed." (Decl., Ex. 6 at 35-36).

15 PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

when it is in possession of relevant evidence and is itself the target of a lawsuit.") (internal citation omitted).

**Second,** defendants' attempt to narrow the purpose of Plaintiff's inspection by conveniently replacing it with Payne's "customized reports" is unavailing. (ECF 60 at 7). The referenced reports, in the manner provided, demonstrated evidentiary limitations and other issues. (Skjelset Decl.). Of course, defendants prefer that Plaintiff forego inspection and expend additional time and resources to formulate requests for "customized reports" in a vacuum, i.e., without first inspecting the two OR-Kids files at issue. Cherry picking one portion of the July 5 transcript, defendants proclaim that "[t]he sole basis" for Plaintiff's request for the inspection was "to determine if any notes have been changed, updated, revised after the fact." (ECF 60 at 8). Defendants are wrong. That was the only issue that the parties discussed on the record prior to the Court's ruling allowing the file inspection.

As set forth in Plaintiff's RFP ## 28, 45 and 56, Plaintiff requested to inspect the two files at issue. Plaintiffs did not request an SQL replicated case note deletion reporting. On inspection, Plaintiff may observe the user interface in real time, e.g., the icons, drop-downs, tabs and other features employed by workers and others. Print-formatted OR-Kids screenshots produced in past discovery have not matched what a worker sees in the interface, creating a disconnect between counsel and deponent that leads to imprecise testimony. (Skjelset Decl., Ex. 2). Inspection would allow Plaintiff to view all of the information stored in (or excluded from) the two files at issue as it was viewed by the workers and supervisors. Plaintiff can inspect how information in the pertinent files is or can be accessed, expanded, input, populated and stored, etc. (Id. ¶10). Once informed by the inspection, Plaintiff anticipates the possibility of requesting "customized reports" to obtain additional information, e.g., an audit trail.

16  PLAINTIFF'S  RESPONSE  TO  MOTION  FOR
RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

The Court should therefore reject defendants' belated attempt to supplant Plaintiff's inspection with "customized reports."

***Third,*** contrary to defendants' claim, Plaintiff did not request to conduct a forensic inspection of the OR-Kids database system (similar, for example, to the Oregon Secretary of State's 2018 audit). Nor has Plaintiff alleged that defendants intentionally destroyed relevant electronic discovery. Therefore, defendants' recitation of cases dealing with forensic examinations of electronic devices is misplaced. (ECF 60 at 9-10). *Cf., Juul Labs, Inc. v. Chou,* 2022 U.S. Dist. LEXIS 100833 ** 3-4 | 2018 WL 6735710 (S.D. Calif. 2018) (The party requesting a forensic examination must show that the responding party intentionally destroyed relevant electronic discovery or committed other improper discovery conduct); *Moser v. Health Ins. Innovations, Inc.,* 2018 U.S. Dist. LEXIS 215901 ** 16-17 | 2018 WL 6735710 (C.D. Calif. 2018) (same); *Lincoln Ben. Life. V. Fundament,* 2018 U.S. Dist. LEXIS 224363 * 9 | 2018 WL 6133672 (C.D. Calif. 2018) (same); *California Expanded Metal Prod. Co. v. Klein,* 2021 U.S. Dist. LEXIS 73475 * 9 | 2021 WL 1390356 (W.D. Wash. 2021) (same).

Plaintiff's inspection is appropriately limited to the two files at issue, and the Court's discovery ruling was appropriately tailored to the underlying request. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (District courts have broad discretion in controlling discovery).

***Finally,*** defendants' footnote #8 – that they are now "reviewing the case notes files in this case to determine if they contain attorney-client information" – raises additional issues: In their June 21 letter to the Court, defendants confirmed that they were "producing copies of the *entire* ODHS record, in electronic and physical files for the plaintiff's family and the provider certification of the Duncan/Raygosa home." (Decl., Ex. 4). Now, they are apparently walking back that promise, suggesting that the files *may* contain privileged information and/or protected work

17   PLAINTIFF'S   RESPONSE   TO   MOTION   FOR
RECONSIDERATION



product. But defendants failed to assert privilege or seek a protective order. It's one thing to witness defendant' use of the Motion to buy additional time; it is another to use it to resurrect an unpreserved privilege objection and create yet another pretext to excise "Legal Unit" materials from the files. (ECF 7 at n.8). *See Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

## CONCLUSION

The Court should strike the Miles Declaration and deny the Motion. The Court should award Plaintiff reasonable fees and costs associated with the preparation of the Response.

Dated: August 11, 2023.

RIZZO BOSWORTH ERAUT PC

By: s/ *Steven Rizzo*
Steven Rizzo OSB No. 840853 (he/him/his)
Mary D. Skjelset OSB No. 075840 (she/her/hers)
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

ATTORNEYS FOR PLAINTIFF

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>     Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>     Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>     Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>     Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Plaintiff's Response to Defendants' Motion for Reconsideration**

<u>**VIA ECF**</u>

| | |
|---|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: <u>jill.schneider@doj.state.or.us</u>**<br>**Email: <u>nicholas.mancuso@doj.state.or.us</u>**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* | Lauren Blaesing<br>Harry B. Wilson<br>Alexandra Rhee<br>Markowitz Herbold PC<br>1455 SW Broadway<br>Ste. 1990<br>Portland, OR. 97201<br>Ph: 503-295-3085<br>Email: <u>laurenblaesing@markowitzherbold.com</u><br>Email: <u>harrywilson@markowitzherbold.com</u><br>Email: <u>alexrhee@markowitzherbold.com</u><br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

Dated this 11th day of August, 2023.

     *s/ Cheridan Carr*
     Cheridan Carr
     Paralegal

1- Certificate of Service