Mr. Steven Rizzo, OSB # 840853
Ms. Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>       Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>       Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>       Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>       Third Party Defendant. | |

1 - DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION



I, Mr. Steven Rizzo, declare as follows:

1.   On behalf of Plaintiff in the above-captioned matter, I make this Declaration in support of Plaintiff's Response to Motion for Reconsideration.

2.   Attached as Exhibit 1 is a true and accurate copy of pertinent excerpts of Plaintiff's First Request for Production, dated March 3, 2023.

3.   Attached as Exhibit 2 is a true and accurate copy of Defendants' Response to Plaintiff's First Request for Production, dated April 11, 2023.

4.   Attached as Exhibit 3 is a true and accurate copy of correspondence from Plaintiff to the Honorable Judge Kasubhai, dated June 9, 2023.

5.   Attached as Exhibit 4 is a true and accurate copy of correspondence from Defendants to the Honorable Judge Kasubhai, dated June 21, 2023.

6.   Attached as Exhibit 5 is a true and accurate copy of correspondence between counsel, dated June 26-28, 2023.

7.   Attached as Exhibit 6 is a true and accurate copy of relevant excerpts from the transcript of the July 5, 2023 discovery hearing before the Honorable Judge Kasubhai.

8.   Attached as Exhibit 7 is a true and accurate copy of correspondence between parties dated July 18 and July 19, 2023.

9.   Attached as Exhibit 8 is a true and accurate copy of relevant excerpts from the March 16, 2021 Order of Honorable Magistrate Judge Youlee You's Order, ECF 213, in the matter of *J.M. et al v. Karla Major, et al.,* Case No. 6:18-cv-0739, identifying inconsistencies in the Declaration of Michael Payne.

10. Attached as Exhibit 9 are true and accurate copies of relevant extracts from the 2018 Oregon Department of Human Services Child Welfare System Audit, "Foster Care in Oregon: Chronic management failures and high caseloads jeopardize the safety of the some of the state's

2 - DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

most vulnerable children."

11. Attached as Exhibit 10 is a true and accurate copy of ODHS|OHA-060-010: Background Checks on Non-Institution ODHS|OHA Employees.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 11, 2023.

By: */s/ Steven Rizzo*
    Mr. Steven Rizzo

3 - DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION FOR RECONSIDERATION

RIZZO | BOSWORTH | ERAUTₚc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com


ATTORNEYS FOR PLAINTIFF


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| Ethan Levi,<br><br>            Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>            Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION** |


Plaintiff's First Request for Production is directed to defendants, Kim Chapman, Anastasia Tibbetts, Kassidy O'Brien, Erin Lane and the Oregon Department of Human Services ("DHS") and DOJ AAGs, Jill Schneider and Nicholas Mancuso, under Fed. R. Civ. P 26 and 34. Plaintiff requests that defendants produce the following documents and electronically-stored information ("ESI") within thirty (30) days of the service of this request, separately in response to each numbered request to Rizzo Bosworth Eraut PC, 1300 SW Sixth Avenue, Portland, Oregon 97201,

1 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 1 of 10
Decl. of Steven Rizzo

or at such other time and place, or in such other manner, as may be mutually agreed upon by the parties. The documents and ESI shall be grouped and labeled with a designation of the request to which they are responsive. The Defendants' production of documents shall be in accordance with the Definitions and Instructions set forth below and FRCP 34.

## DEFINITIONS AND INSTRUCTIONS

a)    Whenever reference is made to a person, it includes any and all of such person's agents, attorneys, authorized designees, consultants, employees, officers, managers, principals and representatives, and/or supervisors.

b)    When production of any document is requested, such request includes documents within and/or subject to Defendants' possession, custody or control. In the event that defendants are able to provide only part of the document(s) called for in any particular Request for Production, then provide all document(s) that defendants are able to provide and state the reason, if any, for the inability to provide the remainder.

c)    "Document(s)" means all materials within Rule 26 and 34, including but not limited to all abstracts, applications, books, brochures, calendars, charts, checks, contracts, , correspondence, diagrams, diaries, drawings, files, interoffice and intraoffice communications, e-mail and attachments, indices, invoices, labels, letters, mail, memoranda, notations and records regarding any calls, chats, communications, conferences, contacts, conversations, discussions and/or meetings, microfiche, microfilm, minutes, motion pictures, notes, notebooks, offers, pamphlets, periodicals, permits, photographs, photographic evidence, plans, printouts, receipts, records, recordings, reports, returns, statements, statistics, studies, summaries, surveys, tables, tags, telegrams, treatises, teletypes,  worksheets,  writings and/or videotape.

2 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 2 of 10
Decl. of Steven Rizzo

d)     "Document(s)" also means all electronically stored information in digital form, including electronic, magnetic and optical records or representations of any kind, such as cassettes, CDs, computer databases, drives, e-mail, files, messages, programs, recordings, software, systems, tapes and text messages, and also the metadata showing *inter alia* any changes, chats, comments, dates, deletions, discussions, drafts, draftees, edits, originator, origination, participants, recipients, readers, reviewers, revisions, updates, strikethroughs, supplements, times, etc., associated with and/or in relation to electronically stored information.

e)     As to non-identical copies of "document(s)," whether by reason of any notation made in, in connection with, on, or upon, such copies or otherwise (including but without limitation to, the term "document(s)" also includes all alterations, amendments, changes, comments, drafts and modifications made by any person.

f)     If any document, whether original, copy, non-identical copy and/or electronically stored information, is withheld from production under a claim of inaccessibility, privilege, work product, or other exemption from discovery, state the title and nature of the document, and furnish a log signed by the attorney(s) of record giving the following information with respect to each document withheld:

i.   The name and title of the author and/or sender and the name and title of the recipient;

ii.  The date of the document's origination;

iii. The name of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;

iv.  The name and position, if any, of each person to whom the contents of the documents have been communicated by copy, exhibition, reading, or substantial summarization;

v.   A statement of the specific basis on which privilege or protection is claimed and whether

**3 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION**

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 3 of 10
Decl. of Steven Rizzo

or not the subject matter or the contents of the document is limited to legal advice or information provided for the purpose of securing legal advice.

g)    "Identify" means to describe with particularity. When referring to a person, "identify" means to state the person's full name and complete contact information, and when referring to documents, it means to describe the documents by author, date, content, and by other identifying marks such as bates number.

h)    "Relate(s) to," "related to" or "relating to" means to refer to, reflect, concern, pertain to, or to be in any manner connected with the subject matter of the individual request.

i)    This Request for Production herein shall be deemed continuing, and defendants are to supplement their responses promptly if and whenever they discover or obtain responsive documents which add to or are in any way inconsistent with a prior production.

j)    The individual discovery requests are not intended to be duplicative. All requests should be responded to fully and to the extent not covered by other requests. If documents are responsive to more than one request, please note and produce each such document first in response to the request that is more specifically directed to the subject matter of the particular document.

k)    Any word written in the singular shall be constructed as plural or vice versa when necessary to facilitate the response to any request.

l)    "And" as well as "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

m)    "Duncan/Raygosa" means Nicole Duncan and/or Joseph Raygosa.

n)    "Parties" means any party to the below-referenced juvenile court proceedings, including any attorney(s) for the parents, attorney(s) for the children and/or CASA.

4 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
  AND INSPECTION



RIZZO | BOSWORTH | ERAUT pc

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 4 of 10
Decl. of Steven Rizzo

**REQUESTS FOR PRODUCTION**

1. The documents (or official diagram) that identify the DHS Lane County Child Welfare (hereafter "DHS-LCCW") management structure and lines of reporting of from 2015 through 2018.

2. The employee lists for DHS-LCCW from 2015 through 2018 that identify the name and title of each employee, the individual's support and supervisory staff, and their respective contact information.

3. All Tort Claim Notices pertaining to alleged injuries to foster children in the care and custody of DHS-LCCW from 2010 through 2018.

4. The documents containing indicia of civil lawsuits against DHS-LCCW, which allege child abuse, neglect and/or personal injury foster children from 2015 to the present, i.e., the Complaints or a listing that contains the full court case caption.

5. The litigation hold notice and/or notification initiated and/or placed (or to be placed) by DHS as set forth in J.C.'s February 4, 2020 Tort Claim Notice, which is attached as Exhibit 1, including related communications involving preservation efforts.

6. The litigation hold notice and/or notification initiated and/or placed by Department of Administrative Services ("DAS") as set forth in J.C.'s February 4, 2020 Tort Claim Notice, which is attached as Exhibit 1, including related communications involving preservation efforts.

7. The documents containing indicia of civil lawsuits against DHS-LCCW, which allege child abuse, neglect and/or personal injury foster children from 2015 to the present, i.e., the Complaints or a listing that contains the full court case caption and the forum.

8. The Structured Analysis Family Evaluation (hereafter "S.A.F.E.") Home Study Training certificates of completion for Chapman and Tibbets.

9. The S.A.F.E. Home Study training materials, guides and handbooks utilized by DHS-LCCW, i.e. S.A.F.E. Desk Guide, and the S.A.F.E. Handbook and/or Supervisor Handbook,  from 2014 through 2018.

10. The complete DHS employment files and personnel records of the following defendants: Kim

5 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 5 of 10
Decl. of Steven Rizzo

26. All Certificates of Approval to operate a foster home issued to Duncan/Raygosa.

27. The complete and unredacted hardcopy certification and re-certification files relating to Duncan/Raygosa.

28. The complete and unredacted OR-Kids provider file of Duncan/Raygosa, including all electronically stored information in drop-downs, screens and tables, and all provider notes with indicia of the time/date of creation.

29. All documents, communications, files and reports relating to complaints, notifications and reports of suspected child abuse and/or neglect occurring in the Duncan/Raygosa foster home.

30. All documents, communications and notations relating to the care and condition of any child placed in the Duncan/Raygosa foster home, including J.C. and Z.C.

31. All documents and communications relating to inactive referral status, revocation, suspension and/or termination of any Certificate of Approval issued to Duncan/Raygosa, including all filings and records in any related administrative law proceeding.

32. All documents, communications and notations evincing reasonable cause to believe that any child was abused or neglected while placed in the Duncan/Raygosa foster home.

33. All documents, communications and notations evincing any DHS worker's belief, knowledge or suspicion that Duncan/Raygosa (i) failed to maintain appropriate boundaries with any children placed in their home; (ii) failed to adhere to or comply with foster care rules and requirements regarding children placed in the home; (iii) manipulated or otherwise emotionally abused children placed in the home; and (iv) were otherwise abusive and/or neglectful toward any children, including foster children, placed in the home.

34. All documents relating to any CPS screening report, assessment, investigation and/or founding of medical neglect, threat of harm or other abuse allegation regarding the Haury children.

35. All documents, communications and information requests or exchanges with any physician, psychologist, counselor, nurse and/or other medical or mental health provider regarding any foster child placed in the Duncan/Raygosa foster home.

8 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 6 of 10
Decl. of Steven Rizzo

36. All police, sheriff or other law enforcement agency reports relating to Duncan/Raygosa or the Duncan/Raygosa foster home.

37. All reports relating to sensitive issue(s) or report(s) prepared by or on behalf of DHS-LCCW and sent to DHS Central Office relating to the Duncan/Raygosa foster home.

38. Any DHS Central Office certification file review(s) of the Duncan/Raygosa certification file and re-certification file, including all drafts and related communications.

39. Any DHS Central Office file review of all CPS assessments or investigations relating to the Duncan/Raygosa foster home, including all drafts and related communications.

40. All DHS Central Office documents, communications and notations relating to its review of any sensitive issue(s) or report(s), certification file(s) and/or CPS assessments or investigation of the Duncan/Raygosa foster home.

41. All documents, communications, notations and information exchanges between DHS-LCCW and the Lane County Multidisciplinary Team ("MDT") and any member(s) thereof relating to the care and condition of any child in the Duncan/Raygosa foster home, including J.C. and Z.C.

42. All documents, communications and notations provided or "discovered" to the parties in the J.C. and Z.C. juvenile dependency proceedings, including indicia of the time and date of such discovery.

43. All documents, communications and information requests relating to any Relative Search performed regarding J.C. and Z.C.

44. The complete and unredacted child welfare history and files relating to J.C. and Z.C.

45. The complete and unredacted OR-Kids files relating to J.C. and Z.C., including all electronically stored information in drop-downs, screens and tables, and all case notes with indicia of the time/date of creation.

46. All documents, communications and information requests between DHS-LCCW and any physician, psychologist, counselor, nurse and/or other medical or mental health provider regarding J.C. and/or any member of her biological family.

9 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 7 of 10
Decl. of Steven Rizzo

47. All Child and Adolescent Needs and Strengths (CANS) assessments for J.C. and Z.C.

48. Complete and unredacted files and records relating to any CPS investigation or assessment of any concern, allegation or report of abuse or neglect relating to J.C. and Z.C.

49. All adoption or pre-adoption files and records relating to J.C. and Z.C.

50. All documents, communications and notations created or prepared by DHS-LCCW relating to the arrest and prosecution of Raygosa.

51. All documents, communications, notations and information exchanges between and among DHS/DHS-LCCW and the Lane County Multidisciplinary Team ("MDT"), including any member thereof, relating to the arrest and prosecution of Raygosa.

52. All documents, communications, notations and information exchanges between DHS-LCCW, the police and Lane County District Attorney's Office relating to any interviews and/or testimony provided by DHS workers relating to the arrest and prosecution of Raygosa.

53. All Victim's Assistance information, materials and/or notices received by DHS-LCCW relating to J.C. and Z.C. and to the arrest and prosecution of Raygosa.

54. All Victim's Assistance information, materials, notices that DHS-LCCW provided to J.C. and Z.C., and/or their parent(s), and any services offered or provided in consequence of the arrest and prosecution of Raygosa.

55. All Victim's Assistance monies sought and/or received by DHS-LCCW relating to the arrest and prosecution of Raygosa.

//

//

//

//

//

//

//

10 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 8 of 10
Decl. of Steven Rizzo

**REQUEST FOR INSPECTION**

56.  Plaintiff seeks a mutually convenient time/date to inspect the following documents referenced above: (i) the original certification file; (ii) the pre-adoption file and/or adoption file; and (iii) the OR-Kids electronic file.

Dated: March 3rd, 2023.

RIZZO BOSWORTH ERAUT PC

By: s/*Steven Rizzo*
Steven Rizzo OSB No. 840853
Mary D. Skjelset OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

ATTORNEYS FOR PLAINTIFF

11 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

Exhibit 1
Page 9 of 10
Decl. of Steven Rizzo

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al.,<br><br>　　　　　Defendants. | CASE NO. 6:22-cv-01813-MK<br><br>**CERTIFICATE OF SERVICE** |

  I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon.  I am over the age of eighteen years and not a party to the subject cause.  My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

  On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Plaintiffs' First Request for Production and Inspection**

  <u>**VIA EMAIL**</u>

> **Jill Schneider**
> **Nicholas S. Mancuso**
> **Oregon Department of Justice**
> **100 SW Market Street**
> **Portland, OR 97201**
> **Ph. 971-673-1880**
> **Fax: 971-673-5000**
> **Email: jill.schneider@doj.state.or.us**
> **Email: nicholas.mancuso@doj.state.or.us**
> *Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

  Dated this 3rd day of March, 2023.

               *s/ Cheridan Carr*
               Cheridan Carr
               Paralegal

1- Certificate of Service

Exhibit 1
Page 10 of 10
Decl. of Steven Rizzo

ELLEN F. ROSENBLUM
Attorney General
JILL SCHNEIDER #001619
Senior Assistant Attorney General
NICHOLAS MANCUSO #151262
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Jill.Schneider@doj.state.or.us
          Nicholas.Mancuso@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>   Plaintiff,<br><br>  v.<br><br>KIM CHAPMAN, et al; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOE,<br><br>   Defendants.<br><br>OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>   Third-Party Plaintiff,<br><br>  v.<br><br>JOE ALBERT RAYGOSA,<br><br>   Third-Party Defendant. | Case No.  6:22-CV-1813-MK<br><br>**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION** |

Page 1 -  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Exhibit 2
Page 1 of 5
Decl. of Steven Rizzo

## GENERAL OBJECTIONS

1.      Defendants State of Oregon, Kim Chapman, Anastasia Tibbetts, Erin Lane, and Kassidy O'Brien (hereafter "State" or "State Defendants") object to Plaintiffs' requests for production of documents ("Requests") which encroach on the attorney-client privilege, work product of defendants' attorneys or other representatives, requests for production of materials prepared in anticipation of litigation.

2.      Defendants object to Requests that seek records or information protected from disclosure by state or federal statute including but limited to ORS 192.345, ORS 192.355, ORS Chapter 419B, ORS Chapter 419A, ORS Chapter 418, and Chapter ORS 409, absent the entry of a suitable protective order governing the use and limiting the disclosure of the records.

3.      State Defendants further object to Plaintiff's Requests to the extent they exceed the scope of discovery allowed by the Federal Rules of Civil Procedure (FRCP).  The State will only produce documents in its possession, custody, or control.

4.      State Defendants object to any time frame specified for production of documents that calls for production of policies or procedures not presently in effect, drafts of documents, and/or past correspondence or communications to the extent identifying, locating, retrieving, and/or collecting such information or documents is unduly burdensome, time consuming, or expensive.

5.      State defendants make any and all production of documents subject to and without in any way waiving or intending to waive the above objections and (1) the right to object on the grounds of competency, privilege, relevancy, or materiality, or on any other ground, to the use of such information, for any purpose in whole or in part, in any subsequent step or proceeding in this action or in any other action; and (2) the right to object on any and all grounds, at any time, to any other discovery procedure involving or relating to the subject matter of this request, and securing an appropriate protective order when necessary to protect confidential and/or employment information of State employees.

Page 2 -   **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Exhibit 2
Page 2 of 5
Decl. of Steven Rizzo

6.      State Defendants object to the extent the Plaintiff's Requests seek voluminous, duplicative and marginally relevant information that would be unduly burdensome and costly to collect, process, review and produce. The State also objects to the extent the request seeks electronically stored information that is not reasonably accessible.

7.      State Defendants will produce responsive information that can be identified using reasonable means of search and State Defendants' counsel is prepared to confer regarding search terms and the scope and form of production.

8.      State Defendants object to Plaintiff's definitions and instructions to the extent they are not authorized by the FRCP and/or exceed the scope of discovery allowed by the FRCP, and to the extent they impose obligations on the State beyond those permitted by the FRCP. The below Response to Plaintiff's request for production are subject to the above general objections.

9.      State Defendants object to any Request using the word "identify" to the extent it requires or presumes State Defendants understand or agree with Plaintiff's legal or factual theories, including but not limited to the organizational structure of the Oregon Department of Human Services ("ODHS") or any other agency of the State of Oregon.

10.      State Defendants object to Plaintiff's definition of "DHS Lane County Child Welfare" to the extent it assumes administrative, managerial, geographic, or legal organization or relationships within ODHS.

11.      State Defendants object to any Request to the extent Plaintiffs can obtain the information from publicly available sources including but not limited to the following

http://www.dhs.state.or.us/training-dhsoha/

https://www.oregon.gov/dhs/POLICIES/Pages/index.aspx

https://www.oregon.gov/dhs/POLICIES/Pages/dhs-oha-policies-guidelines.aspx

https://www.oregon.gov/dhs/Pages/Sitemap.aspx

https://www.dhs.state.or.us/caf/cw_stafftools.htm

12.      State Defendants object

Page 3 -   **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 3 of 5
Decl. of Steven Rizzo

## RESPONSES

**REQUEST FOR PRODUCTION NO. 1:**  The documents (or official diagram) that identify the DHS Lane County Child Welfare (hereafter "DHS-LCCW") management structure and lines of reporting of from 2015 through 2018.

**RESPONSE:**  State Defendants object to "official diagram" as vague, and object to the extent "identify" is vague and/or purports to require the creation of documents not already created or maintained in the course of DHS ordinary operations. State Defendants incorporate general objections 4, 9, and 10.

Subject to the foregoing, State Defendants will produce responsive documents they can be located using reasonable means of search.

**REQUEST FOR PRODUCTION NO. 2:**  The employee lists for DHS-LCCW from 2015 through 2018 that identify the name and title of each employee, the individual's support and supervisory staff, and their respective contact information.

**RESPONSE:**  State Defendants object to "employee lists" as vague, and object to the extent "identify" is vague and/or purports to require the creation of documents not already created or maintained in the course of ODHS ordinary operations. State Defendants incorporate general objections 4, 9, and 10.

Subject to the foregoing, State Defendants will produce responsive documents they can be located using reasonable means of search.

**REQUEST FOR PRODUCTION NO. 3:**  All Tort Claim Notices pertaining to alleged injuries to foster children in the care and custody of DHS-LCCW from 2010 through 2018.

Page 4 -    **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 4 of 5
Decl. of Steven Rizzo

## REQUEST FOR INSPECTION

**REQUEST FOR PRODUCTION NO. 56:**  Plaintiff seeks a mutually convenient time/date to inspect the following documents referenced above: (i) the original certification file; (ii) the pre-adoption file and/or adoption file; and (iii) the OR-Kids electronic file.

**RESPONSE:**  State Defendants object to this Request in its entirety as unduly burdensome, duplicative of the response to written requests, and unlikely to lead to the discovery of relevant evidence other than that which will be provided through written discovery.

DATED April <u>11</u>, 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____*s/ Jill Schneider*_____
JILL SCHNEIDER #001619
Senior Assistant Attorney General
NICHOLAS MANCUSO #151262
Assistant Attorney General
Tel (503) 947-4700
Fax (503) 947-4791
Jill.Schneider@doj.state.or.us
Nicholas.Mancuso@doj.state.or.us
Of Attorneys for State Defendants

Page 25 -  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF
DOCUMENTS AND REQUEST FOR INSPECTION**

Exhibit 2
Page 5 of 5
Decl. of Steven Rizzo



# RIZZO | BOSWORTH | ERAUT PC

Mary Skjelset
mskjelset@rizzopc.com

Admitted in Oregon

June 9, 2023

**VIA E-MAIL**

Hon. Mustafa T. Kasubhai
Wayne L. Morse United States Courthouse
Room 5400
405 East Eighth Avenue
Eugene, OR 97401
kasubhai_crd@ord.uscourts.gov

Re:    ***Ethan Levi v. Kim Chapman, et al. Case No: 6:22-cv-01813-MK***

Dear Judge Kasubhai:

On behalf of Plaintiff, I write to address a discovery dispute in accord with the terms of the Court's initial Case Management Order ("CMO"). (ECF 2) (the Court "expects to handle discovery disputes informally").

**Protective Order.** The defendants made clear that they would produce no documents absent a protective order. Following the parties' conferral, Plaintiff moved on April 11, 2023 for entry of a protective order. (ECF 32). The defendants' April 25, 2023 response attached a proposed form of order. (ECF 34, 35). A moving force behind the defendants' proposed order dealt with protecting sensitive information of non-parties. The Court issued rulings regarding the form of order shortly following the May 10, 2023 Rule 16 conference. (ECF 41).

In pertinent part, the Court ruled that Plaintiff would be permitted to disclose confidential materials to non-parties, i.e., "persons who otherwise possessed or knew of the information, and persons referenced in the documents." The parties subsequently conferred and the Court entered the Protective Order on May 30, 2023. (ECF 43, 44).

**Minute Order.** The accompanying May 30, 2023 Minute Order sets a discovery deadline (fact and expert) of November 15, 2023. No party at the Rule 16 conference objected to this date. The Minute Order also requires that parties "file a joint proposed schedule for expert disclosures." (ECF 38). The current discovery dispute, which arose shortly after the Rule 16 conference, impedes Plaintiff's ability to develop its expert disclosure schedule – and to meet the discovery deadlines.

**Discovery Dispute.** Absent the Court's intervention on the issues outlined below, it is unlikely that the parties will complete fact discovery by November 15.

Exhibit 3
Page 1 of 5
Decl. of Steven Rizzo

Hon. Mustafa T. Kasubhai
June 9, 2023
Page 2

**A.      *Delay in producing responsive documents.*** The defendants recently informed Plaintiff that they need at least 60 more days to produce the requested ESI, and that a privilege log would follow sometime thereafter.

As background, Plaintiff's search for documents began with an April 16, 2020 request for records to the Oregon Department of Human Services ("DHS"). DHS responded that Plaintiff – a former foster child – would need to pay $5000 to receive information material to her claims. As this was unreasonable, Plaintiff sought DHS documents through the conservatorship by issuing subpoenas on May 24, 2021 and November 16, 2022.

Plaintiff's November 2022 SDT explicitly requested ESI, including communications relating to reports of concern in the Raygosa home, communications with the Tribe (that allegedly declined to certify the Duncan/Raygosa home) and communications regarding Duncan/Raygosa's apparent involvement in the December 2012 death of a foster child in California. Ms. Schneider appeared and moved to quash the subpoena, arguing that it would be duplicative of discovery in *this* action. The probate court denied DHS's motion to quash, yet DHS produced *none* of the requested ESI—until today, nearly six months after the initial subpoena, and only following a correspondence indicating an intent to send this letter today.

Plaintiff sent a draft First Request for Production ("dRFP") to the defendants on February 7, 2023, and followed up two days later with a list of select custodians, proposed search terms and search parameters. The parties conferred on March 3, 2023. The defendants requested a Word version of the search parameters and an explanation of the significance of numerical terms, both of which Plaintiff provided. Plaintiff further understood that ESI would be produced upon entry of a protective order and that the defendants did not take significant issue with the dRFP. At the defendants' request, Plaintiff served the First Request for Production ("RFP") the same day. (Ex. 1).

The defendants' April 11, 2023 Response to the RFP arrived laden with general objections and multiple specific objections; although, they declined to furnish a privilege log. (Ex. 2). Plaintiff wrote to confer with the defendants on May 1, 2023. (Ex. 3). The parties conferred on May 17, 2023, at which point defendants informed Plaintiff of the expected delay in production of ESI.

The delay would leave Plaintiff with four months to analyze the production, identify and interview witnesses, prepare for and take depositions, prepare expert witnesses, etc., which assumes that the impending production will be complete. Based on the below objections, it is certain that critical documents will be withheld.

**B.      *General objections.*** The May 17 conferral did not resolve the defendants' objections to the RFP. The defendants' use of general objections is excessive: they generally object to requests that *encroach* on privilege, albeit without providing a privilege log; they generally object to producing documents *protected from disclosure* absent a protective order – yet they still have not produced ESI (and refuse to produce information relating to non-parties); and they generally object *to any time frame specified* in the RFP that, for example, calls for draft documents and communications *to the extent* that

Exhibit 3
Page 2 of 5
Decl. of Steven Rizzo

Hon. Mustafa T. Kasubhai
June 9, 2023
Page 3

locating them *would be* unduly burdensome. *See e.g.*, Ex. 3 at 2. The defendants' use of these qualifiers self-limits and otherwise obscures the extent of the defendants' search efforts. Further, the defendants repeated use of *vagueness* objections is fraught, particularly where Plaintiff shows that the defendants should know exactly what the request calls for, e.g., Foundations Training materials. (*Id*. at 7).

    **C.    *Specific objections*.** The defendants make multiple specific objections to discovery requests, as well, which Plaintiffs do not believe are supported by the federal law or prior rulings of this court, including the Protective Order's provision permitting disclosure to "non-parties." These objections, if permitted, would eliminate the discovery of critical evidence, such as notice of abuse to other children in the Duncan-Raygosa home, and, if left unaddressed, they will stymie discovery and delay resolution of the case.

    *Workers' cell phone numbers.* In response to RFP ## 1 – 2, the defendants apparently withdrew their objection to producing an employee list and an organizational chart of Lane County DHS. Instead, the defendants created an Excel spreadsheet (apparently drawn from responsive documents), which fails to contain the employees' contact information. The defendants' withholding of the workers' DHS-issued cell phone and/or personal cell phone numbers precludes Plaintiff from seeking and/or subpoenaing phone records to discover the workers' communications with Duncan/Raygosa as well as with other workers and supervisors, and other witnesses.

    *Information relating to "non-parties."* The defendants refuse to acknowledge that the experiences of non-parties are relevant in this civil rights action. However, the defendants admit that, as alleged, other children in the Duncan/Raygosa home were abused and/or neglected, (Compl. at ¶¶ 40, 53-55; Answer ¶ 21) and that DHS "investigated all reports called into the hotline regarding children in the Duncan/Raygosa home." (Compl. at ¶ 46; Answer at ¶ 19). Moreover, the court has already ruled that Plaintiff may use non-party information and communicate with non-parties. (PO, ECF 44 at ¶ 7f). Examples of objections as to "non-parties" follow:

-   *Tort claim notices.* In response to RFP # 3, the defendants object to producing the requested tort claim notices *to the extent* the notices *seek information for any individual other than Plaintiff,* i.e., non-parties. But prior notices regarding abuse and neglect by foster providers certified by the same unit in the same branch reveal practical and procedural certification deficiencies, i.e. a "pattern of errors," and foreseeability of risk. (Ex. 3 at 4).
-   *Foster care abuse complaints.* In response to RFP # 4, the defendants object to producing copies of prior foster care abuse complaints *in its entirety* and *additionally object to producing any information of non-parties to this litigation*. (*Id*.).
-   *Litigation hold and preservation efforts.* In response to RFP ## 5 – 6, the defendants refuse to produce documents pertaining to their placement of the litigation hold and efforts made to preserve ESI following issuance of Plaintiff's tort claim notice – notwithstanding that Plaintiff is a party. (*Id*. at 5).
-   *Personnel Files of named DHS Employees.* RFP # 10 seeks the personnel files of the named defendants, yet the defendants object to producing "personal information of *non-parties*" within

Exhibit 3
Page 3 of 5
Decl. of Steven Rizzo

Hon. Mustafa T. Kasubhai
June 9, 2023
Page 4

these files. It is unclear whether this includes complaints or discipline relating to other employees or other children in care. Regardless, given the protective order, Plaintiff objects to any "removal or displacement of any such information." The personnel files should be produced in their entirety. (*Id*. at 6).

- *Other children in the home.* RFPs # 30, 34, 35 seek documents relating to the care and condition of other children in the Duncan/Raygosa foster home, including child abuse reports, and communications from medical providers and law enforcement. The defendants simply refuse to produce *any information or records pertaining to these "non-parties,"* even where it is extremely likely that Plaintiff - one of the first foster children in the Duncan/Raygosa home and the last to leave - was placed in the Duncan/Raygosa home at the *same time* as these "non-party" children. How their condition and care could be "irrelevant" to the defendants' notice and knowledge of concerns in the home eludes Plaintiff. (*Id*. at 9-11).

*DOJ 'defense' contracts.* In response to RFP # 13, the defendants refuse to produce the Request for Defense ("RFD") contacts between the workers and DOJ. (*Id*. at 6). RFDs have been produced in prior DHS foster care abuse cases.[1] The RFD demonstrates that there is no attorney-client relationship between the workers and DOJ trial counsel, who represents DHS. That is, while DOJ "represents" DHS's interests, it merely "defends" the workers under the terms of the contract. The worker is instructed, for example, that any admissions of policy violations in the course of litigation could result in "adverse employment action," and admissions of criminal conduct would be referred to law enforcement for "potential criminal charges." The worker is not a client of DOJ – no Oregon lawyer is ethically permitted to threaten her/his client with adverse employment consequences or criminal action for disclosing violations of policy.[2] At a minimum, the RFD creates a chilling effect, restricting truthful testimony about DHS. It explains why (in many instances) workers seem unable to recall basic case facts, which bears on their credibility.

*OR-Kids Metadata.* RFP ## 28 and 45 request the OR-Kids records pertaining to the "provider file" for Duncan/Raygosa and the "case file" of Plaintiff. As background, OR-Kids is the DHS child welfare information system where much of the information relating to child welfare activities is created, uploaded and/or stored.[3] The "notes" created by caseworkers in relation to certification (provider file) and child welfare (case file) activities typically show the date on which the activity was supposed to have occurred. When printed for discovery, however, these "notes" give no indication of their creation date, much less any revisions or corrections. While a simple drop-down menu of these notes indicates the

---

[1] RFDs were produced by DOJ/DHS in *A.G. et al*., *c. Burroughs,* 3:13-cv-01051-AC; and *J.M. et al, v. Major* 6:18-cv-00739-MO (*See e.g*., ECF 344 at 11).

[2] Further, whereas a client maintains control of the representation, the RFD requires instead that the worker to cede control and "allow the State to make all final decisions on legal strategy," which "includes any final decision on settlement or taking the case to trial."

[3] See, e.g., https://ktvz.com/news/2020/02/05/audit-finds-usability-issues-with-dhs-child-welfare-info-system/

Exhibit 3
Page 4 of 5
Decl. of Steven Rizzo

Hon. Mustafa T. Kasubhai
June 9, 2023
Page 5

relevant creation date DHS has refused to produce this menu, claiming it is "different from how the information is ordinarily maintained in the course of ODHS ordinary business operations." Plaintiff believes that when a case worker, or other DHS employee, creates or changes evidence of their activities bears on credibility and motive.

*OR-Kids and Provider File Inspection*. To ensure the opportunity to observe how these records were "ordinarily maintained in the course of ODHS ordinary business operations," Plaintiff sought in Request # 56 a mutually convenient date and time to inspect the hardcopy certification file, any pre-adoptive files relating to Plaintiff, and the OR-Kids database regarding Plaintiff, ZC and Duncan Raygosa. The defendants refuse.

**D.    ESI.** The defendants have indicated an intent to produce ESI no sooner than mid-July, despite having had the search terms and parameters since early February. Plaintiff cannot direct the timing of defendants' discovery efforts; however, where the defendants claim that they need multiple months to identify and produce responsive documents, the production must be complete and comprehensive for parties to have any chance of meeting the scheduling order deadlines.

The defendants would prefer that Plaintiff wait until the July receipt of ESI production to determine whether the production satisfies her requests. But this delay is untenable given the defendants' stated intention to withhold (and presumably not search in the first place) documents relating the care and condition of "non-parties," i.e., other children in the Duncan/Raygosa home, including both ESI and contemporaneous case notes. However, these documents are critical evidence.

Similarly critical are the text messages between and among the defendants and key witnesses, including Duncan/Raygosa, relating to events in the home. Yet the defendants intend to limit the search for cellular phone ESI only *to the extent* that – citing the possibility of erasure – such a search *would not be* unduly burdensome. Meanwhile, the defendants refuse to produce a litigation hold, notwithstanding LR-26-1(2)(C)'s requirement that parties confer on "the steps to ensure that discoverable ESI is not deleted, altered, or otherwise made inaccessible."

Delay in addressing these issues will prejudice Plaintiff, invite further briefing and render the November 15 discovery deadline untenable. In accord with the CMO, Plaintiff therefore seeks the court's intervention to rule on the issues and guide the discovery process going forward.

Sincerely,

/s/ *Mary Skjelset*

Cc:    All Counsel

Exhibit 3
Page 5 of 5
Decl. of Steven Rizzo



ELLEN F. ROSENBLUM
Attorney General

LISA M. UDLAND
Deputy Attorney General

**DEPARTMENT OF JUSTICE**
` DIVISION

June 21, 2023

VIA E-MAIL - kasubhai_crd@ord.uscourts.gov

Hon. Mustafa T. Kasubhai
Wayne L. Morse United States Courthouse
Room 5400
405 East Eighth Avenue
Eugene, OR 97401

Re: *Ethan Levi v. Kim Chapman, et al.* Case No: 6:22-cv-01813-MK

Dear Judge Kasubhai:

I write to provide a response to plaintiff's concerns regarding discovery. The number of issues the plaintiff raises, including both procedural issues and substantive disputes regarding the scope of the discovery, may be difficult to resolve without additional briefing, but state defendants wish to address all of the issues at least preliminarily here.

The state defendants recognize plaintiff desires to receive all responsive documents as soon as possible. We share the goal to effectively advance the discovery phase of this action. Plaintiff has requested extremely voluminous discovery, and some of it is complex to collect, review, and produce. The Oregon Department of Human Services has provided extensive documents in prior actions in probate court, but in order to reconcile the duplicative discovery, identify overlapping areas of inquiry, and collect and review new information, the state defendants and their counsel must expend extensive effort.

1.      **Case Context**

Plaintiff is the conservator for minor J.C., who along with a sibling, was formerly in the custody of ODHS after being adjudicated dependent due to conditions in their home of origin. Plaintiff filed the suit in November 2022 against ODHS, several named individual ODHS employees, and two of the former resource parents with whom J.C. and her sibling resided while in DHS custody. Plaintiff initiated the suit after undertaking an extensive investigation, including but not limited to subpoenas issued through the Lane County Probate Court. Plaintiff continued to pursue discovery in probate court after initiating this action, necessitating diversion of ODHS efforts to discovery in a different forum that does not have jurisdiction over the federal claims before this Court.

It is important to note that plaintiff has already received the bulk of the core documents in this case. ODHS produced case files before litigation began. Plaintiff has the entire juvenile record, including the confidential supplemental file, as well as the certification materials relating to the Duncan/Raygosa resource home placement. Plaintiff's discovery requests in this federal action include these materials, as well as many more.

Exhibit 4
Page 1 of 4
Decl. of Steven Rizzo

`

June 21, 2023
Page 2

Due to the amount of legal resources needed to respond to discovery, a Special Assistant Attorney General is joining the Department of Justice as co-counsel for the state defendants. The Markowitz Herbold firm and attorney Lauren Blaesing will be entering an appearance very shortly and Ms. Blaesing will ultimately assume the role as lead counsel.

## 2.    Discovery Efforts to Date

ODHS has been collecting documents and providing documents to ODOJ to respond to discovery since the before plaintiff served discovery. The parties have conferred on proposed custodians and search terms for identifying potentially responsive information. The state defendants have agreed to all of plaintiff's proposed custodians and are testing all of plaintiff's proposed search terms. Potential collection and search efforts have yielded more than a million documents necessitating further processing before review can begin.

ODHS's counsel will use appropriate, industry standard techniques and technology to manage the discovery burden. But the universe of electronically stored information remains large, and will necessitate prolonged preproduction review and processing. We have tried to provide reasonable estimates of the time needed to conduct all of the necessary steps, including preparation of a privilege log, but until the transition to the co-counsel is complete, the estimates are very preliminary. State defendants are committed to producing the responsive documents as soon as possible and believe the additional staffing will aid in that effort.

## 3.    Procedural issues

The plaintiff declined to agree to the entry of the Oregon Department of Justice's ordinary protective order, incorporating the District of Oregon language for the most part, resulting in briefing and entry of an order on May 30, 2023. Plaintiff's counsel has since contacted state defendant's counsel with additional concerns about the order. The state defendants have begun production pursuant to the entered protective order.

The Court has entered the initial scheduling order on May 30, 2023, but the scope and complexity of plaintiff's discovery demands may require additional time. Plaintiffs have served First and Second written requests for discovery and interrogatories. State Defendants have responded and asserted written objections as appropriate.

## 4.    Substantive areas of dispute.

•    Workers' cell phone numbers -  Plaintiff requested and ODHS produced organizational charts and phone lists. Plaintiff's counsel incorrectly asserts state defendants created a document and accuses state defendants of "withholding" cell phone numbers. ODHS produced the organizational charts the agency had for Lane County. ODHS does not object to providing relevant information about state employees, including mobile device information if requested, but has no obligation to create new records.

•    Tort claim notices, foster care abuse complaints – Defendants will produce all tort claim notices provided by the minor, J.C. and for her sibling, although these would be duplicates of what plaintiff already has. Plaintiff, however, wants the universe of all civil complaints, including captions, made against ODHS alleging child and foster care abuse since 2015. That information is not relevant to the claims and defenses made in this case, and implicates statutorily protected and privileged information. Additionally, all complaints filed against ODHS are a matter of public record.

Exhibit 4
Page 2 of 4
Decl. of Steven Rizzo

`

June 21, 2023
Page 3

• Litigation hold notices– Litigation hold are not relevant to the plaintiff's claims. In particular, litigation hold materials are work product and privileged.  A document is privileged as attorney work-product when it was prepared (1) "in anticipation of litigation or for trial," and (2) "by or for another party or by or for that other party's representative." *Rojas v. Fed. Aviation Admin.,* 989 F.3d 666, 676 (9th Cir. 2021), cert. denied, 142 S. Ct. 753 (2022).

• Request for Defense forms: the State provides a defense to State employees where such employees are sued in the course and scope of their duties. The plaintiff makes a number of legally and factually inaccurate characterizations of this defense coverage practice but ultimately, the fact of the individual named defendants receiving a defense is neither remarkable nor relevant to the plaintiff's claims.

• Personnel files – Defendants will produce the personnel files of the named defendants and have not objected to doing so.

• Other children in home:  The records of non-party children and families are highly confidential and protected by numerous laws. including but not limited to, ORS 419B. 035. These families are not before the court, nor represented by counsel and DHS objects to producing their information on the basis of relevance and confidentiality. Defendants will produce the Child Protective Services records for minor J.C. and for her sibling. Defendants will also produce any reports or complaints of abuse or injury to any child while in the Duncan/Raygosa home.

• Inspection of documents – ODHS is producing copies of the entire ODHS record, in electronic and physical files for the plaintiff's family and the provider certification of the Duncan/Raygosa home. Plaintiff has not demonstrated that the production of copies is inadequate or deficient. To avoid dispute, state defendants will provide hard copies for physical inspection at a location determined by defendants' lead counsel. Plaintiff is not entitled to direct access to the State's secure information systems. State defendants object to plaintiff's request to directly access the  State's confidential business systems, specifically ODHS ORKIDS application database, as irrelevant, unduly burdensome, and on the basis of risk of exposure of confidential information of non-parties.

• Interrogatories – Defendants have served written, signed responses to the Interrogatories.

• Amended answer – Defendants have filed for leave to file an amended answer to correct some scrivener's errors. The specific changes were provided to plaintiff before filing. If those changes did not come through on the form filed with the court, defendants will be happy to re-file a red-lined copy of the proposed amended answer.

We understand that plaintiff does not wish to begin depositions until the responsive documents have been received. If that scheduling requires a postponement in the discovery schedule, we will work with plaintiff to determine when depositions may be reasonably concluded, and inform the court accordingly.

Exhibit 4
Page 3 of 4
Decl. of Steven Rizzo

`

June 21, 2023
Page 4

In sum, we ask the court to 1) grant defendants leave to amend the answer; (2) decline to order expedited discovery because defendants are working in good faith to produce a large volume of material to plaintiff; and (3) order that plaintiff should confer with defendants further as to what additional discovery she believes she needs after defendants produce the bulk of the documents.

Sincerely,

*s/ Jill Schneider*

Jill Schneider
Senior Assistant Attorney General

cc:    Nick Mancuso
       Lauren Blaesing

Exhibit 4
Page 4 of 4
Decl. of Steven Rizzo

| | |
|---|---|
| **From:** | Steven Rizzo |
| **To:** | Lauren Blaesing |
| **Cc:** | Mancuso Nicholas; Schneider Jill; Harry Wilson; Alex Rhee; Mary Skjelset; Cheridan Carr |
| **Subject:** | RE: Levi v. Chapman et al. |
| **Date:** | Wednesday, June 28, 2023 11:19:51 AM |
| **Attachments:** | image001.png |

Lauren,

Your position has changed again.

As stated below, you wanted to postpone the hearing to describe your clients' future and current discovery efforts. Now, you are saying that you intend to argue the discovery issues that the parties have briefed, without reference to Jill's ability to do so, or the efforts, and without conferring with us in advance.

Regarding your question about conferral topics, I referenced LR 26-. That rule lists the topics, which pertain directly to the discovery efforts (about which we are still in the dark).

In your request to the Court seeking a postponement, you should also note that we could not convince you to confer with us by phone in advance to discuss the need / reason to postpone, the discovery issues that you intend to argue along with Jill, the above discovery efforts and the topics listed in LR 26-1.

All of which is unfortunate.

Steve

**Steven Rizzo (he/him/his)**

**srizzo@rizzopc.com**



1300 SW Sixth Avenue | Suite 330 | Portland, Oregon 97201

☎: 503.229.1819 | 🖨: 503.229.0630 | 🌐: www.rizzopc.com

Offices in Oregon and Washington

\*\*\*\*\*\*\*\*\*NOTICE OF CONFIDENTIAL AND PRIVILEGED INFORMATION\*\*\*\*\*\*\*\*\*\*

This e-mail and attachment, if any, is confidential and may contain attorney-client privileged information or attorney work-product. If you are not the intended recipient, you may not disclose, use, disseminate, distribute, copy or rely upon this message or attachment in any way. If you received this e-mail message in error, please return by forwarding the message and attachment to the sender and destroy the original.

**From:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>

**Sent:** Wednesday, June 28, 2023 9:05 AM

**To:** Steven Rizzo <SRizzo@rizzopc.com>

**Cc:** Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Schneider Jill <Jill.Schneider@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>; Mary Skjelset <mskjelset@rizzopc.com>; Cheridan Carr <ccarr@rizzopc.com>

**Subject:** RE: Levi v. Chapman et al.

Steve,

I will not be addressing any new issues at the hearing, only the existing disputes submitted in the letters to the Court. Please let me know by 1:30 p.m. whether plaintiff consents to defendants' request to move the court conference to the week of July 10 so that I can send my request to the Court. If plaintiff does not consent, I'll note that in my request to the Court. I am happy to separately confer about discovery – please let us know what you want to confer about.

Lauren

**Lauren F. Blaesing** | Lawyer

**Markowitz Herbold PC**

1455 SW Broadway, Suite 1900 | Portland, OR 97201

Exhibit 5
Page 1 of 4
Decl. of Steven Rizzo

**T** (503) 295-3085 | Bio | Web
Pronouns: she/her/hers

**From:** Steven Rizzo <SRizzo@rizzopc.com>

**Sent:** Tuesday, June 27, 2023 5:06 PM

**To:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>

**Cc:** Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Schneider Jill <Jill.Schneider@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>; Mary Skjelset <mskjelset@rizzopc.com>; Cheridan Carr <ccarr@rizzopc.com>

**Subject:** RE: Levi v. Chapman et al.

Lauren,

The discovery issues have been briefed by letter, per the Court's case management order. The Court scheduled the hearing on 7/6 to address those issues (which have been pending for several months), and it is not allowing supplemental briefing. I understand your email to mean that you will not argue these issues at the hearing, but wish to engage in a "split" presentation focused on your clients' future and current discovery efforts, without mention of the past. If that is not correct, let me know. Consistent with LR 7 and LR 26-1, we would like to confer with you by phone, acting as lead counsel, regarding all of the discovery efforts rather than hearing about some of them for the first time during the hearing. We can be available on Thursday or Friday to confer. Or at a later date, if need be. We are hopeful that the conferral will build toward a mutual understanding and an agreed-upon timeline for production.

If you insist on the need to relate information at the hearing without conferring with us in advance, let me know that as well.

We will work with you on a joint submission seeking the Court's guidance.

Steve

**Steven Rizzo (he/him/his)**

**srizzo@rizzopc.com**



1300 SW Sixth Avenue | Suite 330 | Portland, Oregon 97201
☎: 503.229.1819 | 🖷: 503.229.0630 | 🌐: www.rizzopc.com
Offices in Oregon and Washington
*********NOTICE OF CONFIDENTIAL AND PRIVILEGED INFORMATION*********
This e-mail and attachment, if any, is confidential and may contain attorney-client privileged information or attorney work-product. If you are not the intended recipient, you may not disclose, use, disseminate, distribute, copy or rely upon this message or attachment in any way. If you received this e-mail message in error, please return by forwarding the message and attachment to the sender and destroy the original.

**From:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>

**Sent:** Tuesday, June 27, 2023 2:07 PM

**To:** Steven Rizzo <SRizzo@rizzopc.com>

**Cc:** Mary Skjelset <mskjelset@rizzopc.com>; Cheridan Carr <ccarr@rizzopc.com>; Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Schneider Jill <Jill.Schneider@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>

**Subject:** RE: Levi v. Chapman et al.

Steve,

My intention is to split the issues to be addressed with DOJ counsel. My participation will be primarily focused on defendants' current and future discovery efforts. Please let me know by end of today your position on my scheduling request to the Court.

Lauren

**Lauren F. Blaesing** | Lawyer

Exhibit 5
Page 2 of 4
Decl. of Steven Rizzo

**Markowitz Herbold PC**

1455 SW Broadway, Suite 1900 | Portland, OR 97201

**T** (503) 295-3085 | Bio | Web

Pronouns: she/her/hers

**From:** Steven Rizzo <SRizzo@rizzopc.com>

**Sent:** Monday, June 26, 2023 6:57 PM

**To:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>; Schneider Jill <Jill.Schneider@doj.state.or.us>; Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>

**Cc:** Mary Skjelset <mskjelset@rizzopc.com>; Cheridan Carr <ccarr@rizzopc.com>

**Subject:** RE: Levi v. Chapman et al.

Good evening Lauren,

Thank you for the introduction.

I see that there are three attorneys coming on board for the defendants.

When you say that you would "like to participate" in the 7/6 conference call, will you be arguing on behalf of the defendants?

Steve

**Steven Rizzo (he/him/his)**

**srizzo@rizzopc.com**



1300 SW Sixth Avenue | Suite 330 | Portland, Oregon 97201

☎: 503.229.1819 | 🖷: 503.229.0630 | 🌐: www.rizzopc.com

Offices in Oregon and Washington

*********NOTICE OF CONFIDENTIAL AND PRIVILEGED INFORMATION**********

This e-mail and attachment, if any, is confidential and may contain attorney-client privileged information or attorney work-product. If you are not the intended recipient, you may not disclose, use, disseminate, distribute, copy or rely upon this message or attachment in any way. If you received this e-mail message in error, please return by forwarding the message and attachment to the sender and destroy the original.

**From:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>

**Sent:** Monday, June 26, 2023 5:34 PM

**To:** Steven Rizzo <SRizzo@rizzopc.com>; Mary Skjelset <mskjelset@rizzopc.com>

**Cc:** Schneider Jill <Jill.Schneider@doj.state.or.us>; Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>

**Subject:** Levi v. Chapman et al.

Steve and Mary,

I don't believe we've met before and I want to introduce myself. I'm an attorney at the Markowitz Herbold P.C. firm in Portland, and I've been engaged by the Oregon Department of Justice as a Special Assistant Attorney General to represent defendants/third party plaintiff in this matter. I filed a notice of appearance today and am working with the DOJ to get to up to speed on this case. DOJ will continue as counsel on this case, but I will be lead counsel and point of contact for defendants/third party plaintiff.

I understand that the Court has scheduled a telephone conference on July 6 to address discovery issues raised by plaintiff's June 14 letter. I have a scheduling conflict on July 6, so I intend to ask the Court to postpone the conference to the following week (week of July 10) so that I can attend. I will be coordinating defendants' discovery and document production so would like to participate in the Court's discussion of those issues. Will you agree to rescheduling the conference for the week of July 10? Are there any times that week you are not available so I can advise the Court of our mutual

Exhibit 5
Page 3 of 4
Decl. of Steven Rizzo

availability? Please let me know by end of day Tuesday.

Thank you, and I look forward to meeting you,

Lauren

**Lauren F. Blaesing** | Lawyer

**Markowitz Herbold PC**

1455 SW Broadway, Suite 1900 | Portland, OR 97201

**T** (503) 295-3085 | Bio | Web

Pronouns: she/her/hers

Exhibit 5
Page 4 of 4
Decl. of Steven Rizzo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ETHAN LEVI,                              )
                                         )
            Plaintiff,                   )   No. 6:22-cv-01813-MK
                                         )
            v.                           )   July 5, 2023
                                         )
KIM CHAPMAN, et al.,                     )   Eugene, Oregon
                                         )
            Defendants.                  )
_____          )
                                         )
OREGON DEPARTMENT OF HUMAN               )
SERVICES,                                )
                                         )
            Third-Party Plaintiff,       )
                                         )
            v.                           )
                                         )
JOE ALBERT RAYGOSA,                      )
                                         )
            Third-Party Defendant.       )


**DIGITALLY-RECORDED TRANSCRIPT OF PROCEEDINGS**
(Discovery Hearing by teleconference)



BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE



**COURT REPORTER:**
Kellie M. Humiston, RMR, CRR
(503) 326-8186
Kellie_Humiston@ord.uscourts.gov

Exhibit 6
Page 1 of 4
Decl. of Steven Rizzo

MS. SCHNEIDER:  Yes.  It is not my understanding that the provider notes can be provided with that drop-down file prepared.

In order to get the metadata that they want, they want to show the date that the notes have been entered, and that information is -- does not come to us.  The provider notes are produced in their entirety.

The way to get to that information is only by allowing the plaintiffs to go in and look at OR-Kids' entire database, which is -- it's full of confidential material.  Now, if the request is any information regarding what dates these notes were entered, we can go back and ask if that information can be produced.

What we don't want is for plaintiff to have the key, the code to the database file for OR-Kids for the State of Oregon.

THE COURT:  So the material that is being sought is ordered to be produced.  And it would appear to me that an inspection, or even if it were to be an onsite inspection of the database with somebody from either the Department of Justice -- well, maybe not "either" -- the Department of Justice and somebody from the agency may supervise and manage the way in which the information is accessed so no other -- no other file is reviewed onsite other than those relating to the provider file or the Duncan-Raygosa home and the case file for the plaintiff.

Exhibit 6
Page 2 of 4
Decl. of Steven Rizzo

So I'll leave it to both -- both counsel to coordinate a way to do -- to take the necessary inspection of that -- that active database, again, only as it relates to those two limiting factors, the Duncan-Raygosa file and the case file for the plaintiff.

I should also mention that we haven't talked about deadlines yet, but I expect that -- that the defendants work very quickly to coordinate a time in which that can be -- that can be completed.  The plaintiffs will have a right to bring an expert to observe and take notes or do whatever else in the course of reporting that information that they are able to observe as necessary.

Is there anything else that I need to specify to make sure that we don't come back on this issue?  Ms. Skjelset?

MS. SKJELSET:  No, Your Honor.  I believe you discussed the time frame being relatively quick.  There can be somebody to shepherd, it can happen at the DHS office, and -- and we will confer on how that best should occur.

THE COURT:  Okay.  Producing ESI generally, do you want to summarize what it is you're asking me to do, Ms. Skjelset?

MS. SKJELSET:  Well, Your Honor, ESI we touched on a little bit earlier, so I think that had to do partly with regard to producing documents relating to the other children in the home, which -- which I think that the Court has already addressed.

Exhibit 6
Page 3 of 4
Decl. of Steven Rizzo

# C E R T I F I C A T E

I certify, by signing below, that the foregoing is a true and correct transcript of the record, taken by stenographic means, of the FTR-recorded proceedings in the above-entitled cause.

Where (indiscernible) has been indicated, the audio file was unable to be heard due to simultaneous cross-talk, fast speaking, mumbling, or other room noises overriding what was being said.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

DATED this 15th day of July 2023.

/s/ Kellie M. Humiston

Kellie M. Humiston, RMR, CRR
Transcriber
Official Court Reporter
Certificates Expire:  9/2024

Exhibit 6
Page 4 of 4
Decl. of Steven Rizzo

**From:**      Mary Skjelset
**To:**        Harry Wilson
**Cc:**        Lauren Blaesing; Schneider Jill; Mancuso Nicholas; Alex Rhee; Steven Rizzo; Cheridan Carr
**Subject:**   Re: Activity in Case 6:22-cv-01813-MK Levi v. Chapman et al Discovery Hearing
**Date:**      Wednesday, July 19, 2023 7:28:44 AM

Hi Harry,

This is the first time we've heard of a motion for reconsideration. Such a motion is the opposite of "substantial progress" toward resolving the issues, which was the direction of Judge Kasubhai. What are the bases for your motion? Please provide us with a draft in advance of the conferral. We reserve all rights regarding your delay and resistance in discovery, including a motion for sanctions.

In reviewing the correspondence, I did notice that Steve had inadvertently left Ms. Blaesing off the last of many emails requesting conferral. Thank you for bringing that to our attention. I had trusted that one of the four other counsel assigned to defend this case - who did receive the email - had forwarded it to her. Was I wrong?

Thank you for finally agreeing to talk to us and for circulating the call-in number. I hope we have a productive conversation.

Mary


Sent from my iPhone


> On Jul 19, 2023, at 7:06 AM, Harry Wilson <harrywilson@markowitzherbold.com> wrote:
>
>
>
> Mary,
>
> We are available to confer at 10:30 a.m. on Friday. During this conferral, we would also like to address our motion for reconsideration of the Court's order regarding OR-Kids inspection ("Defendant is ordered to comply with Plaintiff's request to inspect the OR-Kids metadata pertaining to the "provider file" for Duncan-Raygosa and the "case file" for J.C. at the DHS offices. The parties are to confer on scheduling the inspection, where an expert of Plaintiff's choosing will accompany Plaintiff." (ECF 56)).
>
> Lauren Blaesing is the lead Markowitz Herbold attorney on this matter. Steve's July 6 email was not sent to Lauren. Lauren should be included on all future correspondence, especially to ensure timely response.
>
> Conference line is (510) 335-7608 (no passcode).

Exhibit 7
Page 1 of 5
Decl. of Steven Rizzo

Harry

---

**From:** Mary Skjelset <mskjelset@rizzopc.com>
**Sent:** Tuesday, July 18, 2023 1:59 PM
**To:** Lauren Blaesing <laurenblaesing@markowitzherbold.com>; Schneider Jill <Jill.Schneider@doj.state.or.us>; Mancuso Nicholas <nicholas.mancuso@doj.state.or.us>; Harry Wilson <harrywilson@markowitzherbold.com>; Alex Rhee <alexrhee@markowitzherbold.com>
**Cc:** Steven Rizzo <SRizzo@rizzopc.com>; Cheridan Carr <ccarr@rizzopc.com>
**Subject:** FW: Activity in Case 6:22-cv-01813-MK Levi v. Chapman et al Discovery Hearing

Lauren, Jill, Nick and Harry,

Nearly two weeks have passed since our July 5 discovery hearing with Judge Kasubhai. I have forwarded (below) the related Minute Order (ECF 56) directing parties to make "substantial progress" toward resolving the outlined issues prior to our August 3 hearing.

To recap, we have been asking new counsel (i.e. the newly appearing Markowitz DOJ attorneys) to confer on the defendants' "discovery efforts" since you appeared in this case:

- 6/26/2023 – Ms. Blaesing introduced herself via email as new lead counsel, and asked for a postponement of the discovery hearing (then set for July 6)
- 6/27/2023 – Steve responded to this email requesting telephonic conferral "[c]onsistent with LR 7 and LR 26-1…regarding all discovery efforts," offered dates for the conferral and suggested a joint motion after conferring on the issues
- 6/28/2023 – Ms. Blaesing did not agree to confer as requested prior to the hearing, but said she was "happy to separately confer about discovery" as long as we let her know "what [we] want to confer about."
- 6/28/2023 – Steve referenced LR 26 for the conferral topics and mentioned "discovery efforts (about which we [were] still in the dark)"; he asked that, in the event you requested the postponement, you inform the court about your refusal to confer in advance of the request.
- 6/28/2023 – Judge Kasubhai *sua sponte* reset the hearing to July 5, which apparently resolved Ms. Blaesing's conflict
- 7/5/2023 – the hearing was held, and the below rulings were issued
- 7/6/2023 – Steve wrote to counsel asking that you provide "available dates – reasonably prior to 8/2 – on which we may inspect the Duncan-Raygosa provider file and JC/ZC casefile in the OR-Kids database"

More than three weeks have elapsed since our initial request to confer with Ms.

Exhibit 7
Page 2 of 5
Decl. of Steven Rizzo

Blaesing and the other new counsel. We remain in the dark regarding the defendants' discovery efforts, a timeframe for inspection and anticipated compliance with the July 5 Orders. My hope is that you have spent this time coming up to speed on the case and making diligent efforts toward meeting the court's directives, so that when we do confer we can make the "substantial progress" requested by the Court.

Steve and I are available to confer on Thursday (July 20) in the afternoon, or Friday (July 21) all day. Please confirm a time and circulate a call-in number. If you can provide dates for the requested inspections in advance of the conferral, that would be helpful, as portions of the inspection will require the scheduling of our expert.

We look forward to a productive conversation.

Thank you,

Mary

---

**From:** info@ord.uscourts.gov <info@ord.uscourts.gov>
**Sent:** Tuesday, July 11, 2023 12:21 PM
**To:** nobody@ord.uscourts.gov
**Subject:** Activity in Case 6:22-cv-01813-MK Levi v. Chapman et al Discovery Hearing

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Oregon

## Notice of Electronic Filing

The following transaction was entered on 7/11/2023 at 12:20 PM PDT and filed on 7/5/2023
**Case Name:**    Levi v. Chapman et al
**Case Number:**    6:22-cv-01813-MK

Exhibit 7
Page 3 of 5
Decl. of Steven Rizzo

**Filer:**

**Document Number:** 56(No document attached)

**Docket Text:**

**MINUTES of Proceedings:** Discovery Hearing held. Defendant's specific and general objections to production of electronically stored information are not well-taken. Defendant is ordered to produce the ESI requested by Plaintiff and to otherwise comply with Plaintiff's Requests for Production of ESI as clarified in Plaintiff's letter of 6/14/23 after conferring with Plaintiff regarding ESI search terms. Defendant is ordered to produce the state-issued cellular phone information for the named defendants in accordance with RFP 2 and 3, and, if it exists, to provide the organizational chart as described in these RFPs. Defendant is ordered to produce all Tort Claim Notices and complaints of foster care abuse or neglect issued to the Lane County Department of Health and Human Services. Defendant is ordered to comply with Plaintiff's request for litigation hold notices and preservations efforts or to produce a privilege log identifying any privileged material within the scope of this request. Defendant is ordered to comply with Plaintiff's RFP 10 to produce the complete personnel files of named defendants. Defendants are ordered to produce the Request for Defense contracts in response to RFP 13 and as clarified in Plaintiff's letter of 6/14/23. Defendant is ordered to comply with Plaintiff's request to inspect the OR-Kids metadata pertaining to the "provider file" for Duncan-Raygosa and the "case file" for J.C. at the DHS offices. The parties are to confer on scheduling the inspection, where an expert of Plaintiff's choosing will accompany Plaintiff. The Court will grant Defendant's Motion for Leave to File an Amended Answer (ECF [45]) after Defendant has satisfied the following conditions: (1) identify to Plaintiff the concerns, including but not limited to concerns about abuse, in the Duncan-Raygosa home; and (2) identify to Plaintiff all DHS workers and supervisors who knew of any such concerns. A scheduling conference is set for 8/3/2023 at 9:00am to set new deadlines. The parties are ordered to make substantial progress on resolving these issues by conferring prior to the 8/3/2023 conference. The Court will rule on the disputed language in the Protective Order at that time. Mary Skjelset and Steven Rizzo present as counsel for plaintiff. Jill Schneider, Harry Wilson & Lauren Blaesing present as counsel for defendants. Court Reporter: FTR Courtroom 3. Magistrate Judge Mustafa T. Kasubhai presiding. (cp)

**6:22-cv-01813-MK Notice has been electronically mailed to:**

Steven V. Rizzo    srizzo@rizzopc.com, recordsmanagement@rizzopc.com

Jill Schneider    Jill.Schneider@doj.state.or.us, Jackie.ballard@doj.state.or.us, aislinn.price@doj.state.or.us

Exhibit 7
Page 4 of 5
Decl. of Steven Rizzo

Harry B. Wilson     harrywilson@markowitzherbold.com,
2591600420@filings.docketbird.com, SarahDubrule@MarkowitzHerbold.com,
docket@markowitzherbold.com, joannastalheim@markowitzherbold.com,
sarapomerening@markowitzherbold.com

Lauren F. Blaesing     LaurenBlaesing@MarkowitzHerbold.com,
7397379420@filings.docketbird.com, AbigailAdams@MarkowitzHerbold.com,
docket@MarkowitzHerbold.com, sarahdubrule@markowitzherbold.com,
sarapomerening@markowitzherbold.com

Mary Skjelset     mskjelset@rizzopc.com

Nicholas S. Mancuso     nicholas.mancuso@doj.state.or.us,
Savanna.Valenzuela@doj.state.or.us, jennifer.pelletier@doj.state.or.us

**6:22-cv-01813-MK Notice will <u>not</u> be electronically mailed to:**

Exhibit 7
Page 5 of 5
Decl. of Steven Rizzo

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


J.M., et al.,

               Plaintiffs,

      v.

KARLA MAJOR, et. al.,

               Defendants.

Case No. 6:18-cv-00739-YY

ORDER

YOU, Magistrate Judge.

Plaintiffs are four minor children who have brought suit against defendants Oregon Department of Human Services ("DHS"), individual DHS employees, and former DHS-certified foster parents Casey and Melissa Miller ("the Millers"), alleging claims of civil rights violations pursuant to 42 U.S.C. § 1983, abuse of vulnerable persons in violation of O.R.S. 124.100, as well as claims of common law negligence and sexual battery. The parties have filed three discovery motions.

First, DHS and the individual DHS employees ("state defendants") have filed a motion for protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) quashing plaintiffs' amended Rule 30(b)(6) notice of deposition to DHS. Mot. Protective Order, ECF 186. This motion is granted in part, in that topic 6 is disallowed, and denied in part, in that plaintiffs may

1 – ORDER

Exhibit 8
Page 1 of 2
Decl. of Steven Rizzo

### c.    Cumulative and Duplicative

Topics 1 and 2 are not unduly cumulative or duplicative.  True, state defendants have produced the entire Miller certification file in multiple formats, including the underlying data from the OR-Kids database in a format that DHS does not employ for its operational needs. Chin Decl. ¶¶4-8, ECF 187.  State defendants also produced an extensive report from a DHS operations and policy analyst explaining technical details of the OR-Kids application and database.  *See* Decl. Michael Payne, ECF 174 ("OR-Kids report").  However, plaintiffs assert there are inconsistencies between some averments in the report and OR-Kids data, and that a Rule 30(b)(6) deposition is the most efficient method of probing those inconsistencies.  *See* Pls. Resp. Mot. Protective Order 10, ECF 193.

In support, plaintiffs offer the declaration of Tim Lawson, a software engineer and consultant with 20 years of experience.  Decl. Tim Lawson ¶¶ 2-3, ECF 189.  Lawson declares that the OR-Kids report contains inconsistencies and that some entries lack enough detail to assess them from a technical standpoint.  *See id.* ¶¶ 4-12.  Lawson provides a handful of examples, but the following example is representative.  The OR-Kids report provides that when a user with "Edit" permissions accesses a record, the access history shows "Edit" as the system event "regardless of whether the user actually modified the record," (as opposed to "View"), and "Update" when such a user "actually modified a record."  *See* Payne Decl. ¶ 11.a–11.c, ECF 174. However, access audit data for a particular case note shows "Edit," "Update," and "View" system events for a user with "Edit" permissions.  *See* Lawson Decl. ¶¶ 5-7, ECF 189.  Topics 1 and 2 are therefore not cumulative or duplicative.

8 – ORDER

Exhibit 8
Page 2 of 2
Decl. of Steven Rizzo

State of Oregon

# *Department of Human Services*

## *Child Welfare System*

# Foster Care in Oregon: Chronic management failures and high caseloads jeopardize the safety of some of the state's most vulnerable children

Secretary of State
**Dennis Richardson**

Audits Division, Director
**Kip Memmott**

Report 2018 – 05

Exhibit 9
Page 1 of 6
Decl. of Steven Rizzo

## Foster Care in Oregon: Chronic management failures and high caseloads jeopardize the safety of some of the state's most vulnerable children

### Report Highlights

Oregon's most vulnerable children are being placed into a foster care system that has serious problems. Child welfare workers are burning out and consistently leaving the system in high numbers. The supply of suitable foster homes and residential facilities is dwindling, resulting in some children spending days and weeks in hotels. Foster parents are struggling with limited training, support and resources. Agency management's response to these problems has been slow, indecisive and inadequate. DHS and child welfare managers have not strategically addressed caseworker understaffing, recruitment and retention of foster homes, and a poorly implemented computer system that leaves caseworkers with inadequate information.

### Background

Since 2011, there have been over 11,000 children in the Oregon foster care system each year. These children are vulnerable and are often the victims of child abuse and neglect.

### Purpose

The purpose of the audit was to determine what changes and improvements DHS can make to better promote the wellbeing of children in foster care and ensure they are better protected and cared for.

### Key Findings

1. DHS and Child Welfare struggle with chronic and systemic management shortcomings that have a detrimental effect on the agency's ability to protect child safety. Management has failed to address a work culture of blame and distrust, plan adequately for costly initiatives, address the root causes of systemic issues, use data to inform key decisions, and promote lasting program improvements. As a result, the child welfare system, which includes the foster care program, is disorganized, inconsistent, and high risk for the children it serves.

2. DHS does not have enough foster placements to meet the needs of at-risk children, due in part to a lack of a robust foster parent recruitment program. The agency struggles to retain and support the foster homes it does have within its network. The agency also lacks crucial data regarding how many foster placements are needed and the capacity of current foster homes, inhibiting the agency's ability to fully understand the scope of the problem.

3. A number of staffing challenges compromise the division's ability to perform essential child welfare functions. These challenges include chronic understaffing, overwhelming workloads, high turnover, and a large proportion of inexperienced staff in need of better training, supervision, and guidance.

### Recommendations

We make 24 recommendations that address the agency's management challenges, foster parent recruitment and retention, and child welfare staffing. Our recommendations also affirm the foundational recommendations Public Knowledge LLC made in September 2016.

The Department generally agrees with our recommendations. The Department's response can be found at the end of the report.



Secretary of State, Dennis Richardson
Oregon Audits Division, Kip Memmott, Director

Exhibit 9
Page 2 of 6
Decl. of Steven Rizzo

# About the Secretary of State Audits Division

The Oregon Constitution provides that the Secretary of State shall be, by virtue of his office, Auditor of Public Accounts. The Audits Division performs this duty. The division reports to the elected Secretary of State and is independent of other agencies within the Executive, Legislative, and Judicial branches of Oregon government. The division has constitutional authority to audit all state officers, agencies, boards, and commissions and oversees audits and financial reporting for local governments.

**Audit Team**

Will Garber, CGFM, MPA, Deputy Director

Sheronne Blasi, MPA, Audit Manager

Jamie Ralls, CFE, ACDA, Principal Auditor

Scott Learn, CIA, Senior Auditor

Bonnie Crawford, MPA, Staff Auditor

Lisa Durden, MPA, Staff Auditor

Laura Fosmire, MS, Communications Specialist

This report is intended to promote the best possible management of public resources. Copies may be obtained from:

website:      sos.oregon.gov/audits

phone:        503-986-2255

mail:         Oregon Audits Division
              255 Capitol Street NE, Suite 500
              Salem, Oregon 97310

We sincerely appreciate the courtesies and cooperation extended by officials and employees of the Department of Human Services during the course of this audit.

Exhibit 9
Page 3 of 6
Decl. of Steven Rizzo

children safe. This approach was a major change, affecting decision making in many child welfare cases.

Initial program design began in 2009, but stalled in part to due to management turnover and an extended design phase that included 13 different committees, all working in isolation.

DHS began a phased rollout of the new approach in 2012 and by 2014, the agency focus shifted from the OSM re-training to a statewide rollout of DR. However, DR sputtered in its development, was suspended once in 2016, and in 2017 key pieces of the program were canceled and the DR administrative rules were suspended indefinitely.[16] These actions effectively ended the Differential Response program.

DHS did not explain the program well to legislators, some of whom said they found the program highly confusing. Internal communication was also poor with staff, who were notified via email the program was suspended. Central office staff who were directing and supporting the DR work were not notified prior, leaving many caught by surprise.

**OR-KIDS**: Development of the current child welfare information system of record — known as OR-Kids — began in 2006. DHS began using the system in 2011. After more than a year of working with the vendor to complete the system while it was in operation, DHS executives and the vendor entered into a mutual termination agreement,[17] effectively ending the contract and transferring the system to DHS even though known system flaws existed.

For many reasons, the system was problematic from the beginning. DHS took over maintenance of a system with incomplete documentation, unprepared technical staff, and hundreds of fixes needed to ensure the system was functional. This left DHS with a system that was difficult to manage and inefficient from day one. Currently, there are still more than 1,000 outstanding change requests, fixes and defects waiting to be addressed, even though the system has been in operation for nearly seven years. For example, one outstanding request submitted in 2012 states that a manager can make changes to a payment and then issue final approval. Another one from 2012 states that displayed contract balances are incorrect based on payments and adjustments.

Today, workers regularly report the system takes more time than the prior system to do the same work. They report lost data, inconsistent and inaccurate search results, and inaccurate information displayed. In dozens of interviews with caseworkers in nine field offices, the most common frustration we heard was the inadequacy of the data system.

---

[16] While all investigations must now end in a disposition, it is not clear how Differential Response will be used (if at all) in the future.

[17] In March 2008, DHS and CGI Technologies and Solutions Inc. entered into a Design, Development and Implementation contract for a Statewide Automated Child Welfare Information System (SACWIS).

Exhibit 9
Page 4 of 6
Decl. of Steven Rizzo

During our audit, it became clear that management is not confident in the accuracy or completeness of the data coming from the OR-KIDS system. After reviewing caseworker attempts to work with the system and our own data pulls, we also concluded this system does not provide adequate oversight of the division's activities, including tracking trends and outcomes.

Information system projects routinely run long and over budget. For example, Oregon's previous child welfare system (FACIS) was twice as long as the average delay compared to other states. OR-Kids, which replaced FACIS, cost over $74 million dollars, exceeding the original budget by almost 100%. The project lasted 70 months, twice as long as originally projected to complete. It did not work correctly when launched, and is difficult to maintain and modify to meet changing business needs.

Problems with the system's billing, invoice, and payment functions also forced DHS to pay for a separate case management system in the Portland area. Development of a new system was added to an existing contract with the Multnomah Education Service District (MESD), which was also tasked with working with community providers to reduce the number of children in foster care. DHS paid MESD an additional $1 million to develop and administer the system on behalf of DHS. The system was separate from OR-Kids and required caseworkers to perform dual entry into both systems. DHS's contract with the service district ended in 2017, and now the system is not being used. DHS is also not sure if the goal of reducing children in foster care was met, as the agency did not include goals or performance outcomes in its agreement with the district. The total amount paid to MESD over the life of the contract was approximately $20 million.

DHS' decision not to publicly disclose the mutual termination agreement and the related system imperfections did not allow stakeholders, policy makers and DHS leadership to learn from the mistakes that occurred. Many of the staff and contractors who worked on OR-Kids went on to other projects, including Cover Oregon. Publicly disclosing the mutual termination agreement — or the possible need for such an agreement — would have informed policy makers and citizens about conditions potentially affecting multiple projects.

Washington used the same contractor to set up their child welfare case management system a few years before Oregon. According to their Program and Policy Division Director, Washington's system has numerous issues and they are considering a full replacement.

In 2012, MAXIMUS (contracted by DHS to perform quality assurance services) and the Human Services Consulting Division reviewed the OR-Kids project and prepared a report on the issues that negatively impacted

**5 Key Lessons from the OR-Kids case management database development and implementation:**

1. Establish and maintain strong, consistent, ongoing contract management
2. Effective project management is essential to project success
3. Prepare a detailed staffing plan for the length of the project
4. Adhere to project criteria before moving between project phases
5. Apply a consistent and clearly defined methodology to all major project deliverables

*-Lessons Learned: Project Execution Phase (prepared by MAXIMUS and the Human Services Consulting Division), April 2012*

Exhibit 9
Page 5 of 6
Decl. of Steven Rizzo

OR-Kids execution.[18] [19] The report also provided recommendations on how to replicate successful strategies and activities in future projects.

In addition to these reviews, the Secretary of State Audits Division plans to conduct an IT audit of the OR-Kids system in 2018.

In response to problematic IT projects, the state is currently taking steps to improve processes for implementing new computer systems. However, much work remains to ensure investments in computer systems are not wasted and state agencies are able to obtain computer systems to better meet their business needs.

**Completion of Child Abuse and Neglect Investigations:** Though it was not a formal initiative, DHS and Child Welfare pushed a mandate in 2016 to complete more child abuse and neglect investigations (known as comprehensive assessments) in a timely manner. It was reported to the legislature that the agency had made big improvements on completing these investigations. However, the push to complete investigations lasted about 3 months, after which the agency's completion rate returned to previous levels. Field staff reported the use of questionable management tactics to push staff to complete more investigations, including threatening to take away scheduled leave time or put staff on administrative leave. Caseworkers in other units reported being moved temporarily into CPS to perform investigations, despite already having full caseloads. No additional resources were provided to the field.

These examples individually and collectively illustrate DHS' struggles with addressing root causes of problems and challenges, along with strategic planning, communication, training, and follow-through.

### Reorganization, personnel changes, and a lack of accountability and transparency contribute to management dysfunction

Twelve years ago, the division of Children, Adults and Families was established to include Child Welfare. Since then, DHS has reorganized and renamed Child Welfare or its major functions and divisions at least six times. Almost 10 years ago, DHS reportedly paid consulting firm McKinsey & Company more than $3 million to prepare a plan aimed at making DHS a world class organization.[20] In 2008, McKinsey released its first public

---

[18] Walter R McDonald and Associates (WRMA) was the Quality Control Vendor for the OR-Kids Project. Like Maximus, WRMA prepared a lessons learned report. The document details are "WRMA Lessons Learned- Project Evaluation" WRMA Deliverable 4.4.1; 11/13/11, Version 1.0 . In addition, the DHS Office of Information Services produced a lessons learned report for the OR-Kids project. Our team requested that report from DHS, but they were unable to locate it.

[19] Maximus reports that it identified appropriate staff together with project management. We note here that this method excludes a random or other control procedure and therefore could have the effect, intentionally or unintentionally, of excluding certain perspectives. As the selectors of all respondents Maximus and Project management assumed the risk, intentionally or unintentionally, of biasing the responses set through selection bias.

[20] In 2007 DHS contracted with McKinsey and Company to diagnose performance problems, identify opportunities for improvement, and design a set of actions to help the agency make the needed

Exhibit 9
Page 6 of 6
Decl. of Steven Rizzo



**BACKGROUND CHECK UNIT**
**ODHS|OHA Shared Services**



## Process

| Title: | Background Checks on Non-Institution ODHS|OHA Employees |
|---|---|
| Related to: | ODHS|OHA-060-010 |
| Effective date: | 03/07/2022 |

## Purpose

This document provides a step-by-step explanation for the process of conducting background checks by the Background Check Unit (BCU) for ODHS and OHA employees who are not working in or applying for position in ODHS|OHA institutions (see Definitions) and acting on the results of the final outcome. This procedure is used in conjunction with ODHS|OHA-060-010-02, Weigh Tests and Final Fitness Determinations on Non-Institution ODHS|OHA Employees.

This process applies to new hire, promotion, demotion, direct appointment, re-employment, job rotation, work out of class, developmental assignment, transfer, temporary hire, agency temporary hire, temporary to permanent, rotation to permanent, work out of class to permanent, and job duty changes. This process also applies to new criminal or abuse history disclosure, when BCU or the Office of Human Resources (HR) has reason to believe an individual has new or undisclosed criminal or abuse history, or the subject has had a break in service.

It does not apply to redeployment in an emergency situation as defined by the Director of HR, or lateral transfers within the same position title and classification with no job duty changes.

## Definitions

The following terms are used in this document:

    a. "BCU HR Team" means a member of the BCU tasked with evaluating a criminal records check and abuse check when either or both are considered, and other criteria as may be required to provide a fitness determination.

    b. "Fitness determination" means the evaluation of a criminal records check and abuse check when either or both are considered, and decision whether a subject individual (SI) is fit to hold a position. Fitness determination includes:

        A. The decision regarding SI disclosures, an Oregon criminal records check, and preliminary review (a preliminary fitness determination); or,

        B. The decision regarding SI disclosures, completed criminal and abuse records check when either or both are considered including the gathering of other information as necessary, and a final fitness determination by the BCU HR Team.

    c. "Institution" means a state-operated or OHA-contracted secure residential treatment facility, a residential training home within the Stabilization and Crisis Unit (SACU), or the Oregon State Hospital (OSH).

MSC 7465 (12/14)

Exhibit 10
Page 1 of 6
Decl. of Steven Rizzo

d. "Interview Coordinator" means the point of contact for employment candidates during the interview process.  The interview coordinator does not need to be in management service. This person cannot be the hiring manager or a participant on the interview panel.

e. "Qualified Entity Designee (QED)" means a person trained and certified to submit the selected candidate's background check to the Background Check Unit through its online background check portal, the Oregon Criminal History & Abuse Records Database System (ORCHARDS). The individual must be a QED for background check purposes. The individual shall not be the hiring manager or a participant on the interview panel.

f. "Subject Individual (SI)" means an individual regarding whom the authorized agency, districts and qualified entities may conduct a background check and from whom ODHS|OHA may require fingerprints for the purpose of conducting a national criminal records check pursuant to ORS 181A.190, 181A.195, 181A.200, 181A.215, 267.237, 409.027, 413.036 and any required enabling legislation or executive order. Any individual going through a background check is considered an SI.

g. "Weighing test" means a process carried out by the Background Check Unit in which available information is considered to make a fitness determination.


**Process steps**

1. Background checks begin during the hiring process or due to new criminal or abuse history disclosure, when BCU or HR has a reason to believe an individual has new or undisclosed criminal or abuse history, or the subject has a break in service.

   a. For background checks during the hiring process continue to step 2.

   b. For other background checks, HR notifies the subject's manager or the QED of the need for a new background check. The process begins at step 5.

2. On or around the time of the final interview of a candidate for employment:

   a. The interview coordinator:

      A. Verifies the government-issued photo identification of each candidate.

      B. Completes the *Applicant: Verify Identity* section of the BCU Background Check Checklist.

      C. Instructs the candidate to complete the SI Information section of the checklist.

   b. The QED:

      A. Completes the *Pre-Employment Information* section of the BCU Background Check Checklist.

      B. Acquires and secures information from the candidate until the hiring process has been completed.

3. The hiring manager makes an offer of employment to the selected candidate contingent upon the outcome of a completed BCU background check without setting a start date.

4. If the candidate accepts the offer of employment, the QED accesses the BCU Background Check Checklist for the candidate.

   a. If the selected candidate's background check is not approved or the candidate does not accept the position, the position is then offered to the next candidate.

   b. Step 5 and following steps will continue for subsequent candidates as needed.

5. The QED initiates and monitors the progress of the background check in ORCHARDS.

6. ORCHARDS automatically sends an email to the SI with instructions for authorization and disclosure related to the background check.

MSC 7465 (12/14)

Exhibit 10
Page 2 of 6
Decl. of Steven Rizzo

a. The SI provides authorization and disclosure within 21 days of initiation for the background check submission to be complete.

b. The QED monitors the submission of the background check and communicates with the SI regarding the deadline for the authorization and disclosure as needed.

c. If an SI fails to complete the authorization and disclosure within 21 days, the application is closed, and the SI is no longer eligible for the position.

7. The BCU HR Team requests additional information from the SI during the background check process, as necessary.

a. The SI is solely responsible for completing any information requests from BCU.

b. The QED monitors the background check process and reminds the SI of any deadlines for additional information.

8. BCU determines if fingerprints and a national background check are required based on access, use, and control.

a. If the SI would have access to or use federal tax information (FTI), a fingerprint-based criminal records check in addition to the Oregon criminal history check and abuse check are required.

A. BCU notifies the QED through ORCHARDS of the need for fingerprint capture and instructions for the SI.

B. The QED notifies the SI with written fingerprint capture information and instructions.

C. The SI completes the fingerprint capture within 21 days from the date listed on the notification to the SI.

D. If the SI does not submit the fingerprint capture within 21 days, BCU closes the background check and the SI is no longer eligible for the position. The QED ensures removal of the candidate from the position.

E. When BCU receives the results of the fingerprint-based criminal records check, BCU checks local law enforcement agencies where the SI has lived, worked, or attended school within the past 5 years, and if applicable, checks appropriate local law enforcement agencies for any identified arrests.

b. If the position is under federal mandate of the Social Security Administration, fingerprints and a national background check are required.

A. BCU notifies the QED through ORCHARDS of the need for fingerprint capture and instructions for the SI.

B. The QED notifies the SI with written fingerprint capture information and instructions.

C. The SI completes the fingerprint capture within 21 days from the date listed on the notification to the SI.

D. If the SI does not submit the fingerprint capture within 21 days, BCU closes the background check and the SI is no longer eligible for the position. The QED ensures removal of the candidate from the position.

c. If the SI would have unescorted access to or use of criminal justice information (CJI), a fingerprint-based Criminal Justice Information Services (CJIS) clearance check is required in addition to an employment background check, and the hiring manager completes the *BCU CJIS Clearance Request Process*.

d. If any of the criteria in Oregon Administrative Rules (OAR) are met (see OAR 407-007-0030(8)(a)), fingerprints and a national background check are required.

A. BCU notifies the QED through ORCHARDS of the need for fingerprint capture and instructions for the SI.

B. The QED notifies the SI with written fingerprint capture information and instructions.

Exhibit 10
Page 3 of 6
Decl. of Steven Rizzo

    C. The SI completes the fingerprint capture within 21 days from the date listed on the notification to the SI.

    D. If the SI does not submit the fingerprint capture within 21 days, BCU closes the background check and the SI is no longer eligible for the position. The QED ensures removal of the candidate from the position.

9. The hiring manager may request preliminary hire at any time between the submission of the background check into ORCHARDS (by the QED and SI) and the final fitness determination.

    a. The QED submits an email to BCU.HRBackgroundChecks@dhsoha.state.or.us requesting preliminary hire and including the SI's full name, DOB, and application number.

    b. The BCU HR Team performs a preliminary fitness determination in accordance with OAR 407-007-0065. BCU shall not grant preliminary hire for the following:

        A. An SI who would have access to CJI before the completion of the final fitness determination; or

        B. An SI who would have access to FTI before the completion of the final fitness determination.

    c. Once the BCU HR Team makes its determination on preliminary hire, BCU notifies the QED via e-mail that preliminary hire has been reviewed and the determination can be found under the documents tab of the SI's profile in ORCHARDS.

    d. A start date may be set contingent upon the outcome of the final fitness determination.

    e. While working on a preliminary basis, the QED and hiring manager ensures the SI must be actively supervised per OAR 407-007-0065(3). Driving on state business is not allowed at this time.

10. If there is an urgent need to hire the SI, the hiring manager may request an expedited fitness determination at any time between the full submission of the background check and the final fitness determination.

    a. The QED submits an email to the BCU HR Team requesting expedited fitness determination and including the SI's full name, DOB, and application number.

    b. The BCU HR Team determines if an expedited fitness determination is possible. BCU shall not complete an expedited fitness determination for positions requiring:

        A. Criminal Justice Information Services (CJIS) security clearance if CJIS clearance has not yet been received; or

        B. Fingerprints and a national background check if fingerprints results have not yet been received from the Oregon State Police and FBI.

    c. If BCU determines that an expedited fitness determination is possible, BCU proceeds to step 11 if the position requires driving. If the position does not require driving, BCU proceeds to step 12.

11. If driving on state business is a requirement for the position, the BCU HR Team completes a Motor Vehicle Risk Assessment.

    a. If the outcome of the Motor Vehicle Risk Assessment is adverse, the SI is not eligible for the position. The QED ensures removal of the candidate from the position.

    b. If the outcome of the Motor Vehicle Risk Assessment is positive, the SI is eligible for the position.

12. The BCU HR Team performs a background check including criminal history and other factors per OAR and policy:

    a. If no potentially disqualifying convictions or conditions are found, no weighing test is required, including for an SI who would have access to or use of FTI or who would be working under the

                MSC 7465 (12/14)

Exhibit 10
Page 4 of 6
Decl. of Steven Rizzo

federal mandate of the Social Security Administration. The final fitness determination proceeds as follows:

    A. The BCU HR Team approves the SI in ORCHARDS. This creates a clearance letter in ORCHARDS and an email notification is automatically sent to the QED.

    B. The QED forwards a copy of the clearance letter to the Hiring Manager and the SI.

    C. If the SI would have access to or use federal tax information (FTI), prior to granting access or use, the I-9 and E-Verify shall be completed and the E-Verify result authorizes employment.

    D. HR works with the hiring manager if E-Verify discrepancies are found.

    E. An SI who would have access to or use of FTI shall have a new background check completed every 5 years.

  b. If potentially disqualifying convictions or conditions are found, the BCU HR Team follows instructions for completing a weigh test and final fitness determination as provided in ODHS|OHA-060-010-02, Weigh Tests and Final Fitness Determinations on Non-Institution ODHS|OHA Employees.

**References**
ORS 181A.190
ORS 181A.195
ORS 181A.200
ORS 181A.215
ORS 267.237
ORS 409.027
ORS 413.036
OAR 407-007-0000 to 407-007-0100
OAR 407-007-0400 to 407-007-0460
OAR 943-007-0001 to 943-007-0501

**Forms referenced**

BCU Background Check Checklist (available in ORCHARDS, Help Section)

**Related policies**
ODHS|OHS-060-010 Background checks
ODHS|OHA-060-010-02, Weigh Tests and Final Fitness Determinations on Non-Institution ODHS|OHA Employees

**Contact**
Jeffrey Akin
BCU Administrator
503-569-3191

MSC 7465 (12/14)

Exhibit 10
Page 5 of 6
Decl. of Steven Rizzo

Frank Miles
Security and Privacy Services Office
FRANK.T.MILES@dhsoha.state.or.us
503-507-7851

**Keywords**

background check, subject individual, Background Check Unit, fingerprints, criminal records, criminal records check, abuse check, qualified entity designee, ORCHARDS, expedite, preliminary hire

---

This document can be provided upon request in an alternate format for individuals with disabilities or in a language other than English for people with limited English skills. To request this document in another format or language, contact the Publications and Design Section at 503-378-3486, 7-1-1 for TTY, or email dhs-oha.publicationrequest@state.or.us.

Exhibit 10
Page 6 of 6
Decl. of Steven Rizzo

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>      Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>      Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>      Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>      Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof: **Declaration of Steven Rizzo in Support of Plaintiff's Response to Defendants' Motion for Reconsideration**

<u>**VIA ECF**</u>

| | |
|---|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: jill.schneider@doj.state.or.us**<br>**Email: nicholas.mancuso@doj.state.or.us**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* | Lauren Blaesing<br>Harry B. Wilson<br>Alexandra Rhee<br>Markowitz Herbold PC<br>1455 SW Broadway<br>Ste. 1990<br>Portland, OR. 97201<br>Ph: 503-295-3085<br>Email: laurenblaesing@markowitzherbold.com<br>Email: harrywilson@markowitzherbold.com<br>Email: alexrhee@markowitzherbold.com<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

Dated this 11th day of August, 2023.

                 *s/ Cheridan Carr*
               Cheridan Carr
               Paralegal

1- Certificate of Service