IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ETHAN LEVI,                          )
                                     )
                    Plaintiff,       )   Case No. 6:22-cv-01813-MK
                                     )
          v.                         )
                                     )   September 8, 2023, 9:06 AM
KIM CHAPMAN, in her                  )
individual capacity; ANASTASIA )
TIBBETTS, in her individual          )
capacity; KASSIDY O'BRIEN, in  )
her individual capacity; ERIN  )
LANE, in her individual              )
capacity; OREGON DEPARTMENT OF )
HUMAN SERVICES, a government    )
agency; JANE AND JOHN DOES 1-5,)
in their individual and/or     )
official capacities,                 )
                                     )
          State Defendants.    )
_____)
                                     )
OREGON DEPARTMENT OF HUMAN           )
SERVICES,                            )
                                     )
      Third-Party Plaintiff,   )
                                     )
               v.                    )
                                     )
JOE ALBERT RAYGOSA,                  )
                                     )
      Third-Party Defendant.   )
_____)

ORAL ARGUMENT

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES MAGISTRATE JUDGE

APPEARANCES


FOR THE PLAINTIFF:

                    MARY SKJELSET
                    Rizzo Bosworth Eraut PC
                    1300 SW 6th Avenue
                    Suite 330
                    Portland, OR 97201


FOR THE PLAINTIFF:

                    STEVEN V. RIZZO
                    Rizzo Bosworth Eraut PC
                    1300 SW 6th Avenue
                    Suite 330
                    Portland, OR 97201


FOR THE STATE DEFENDANTS:

                    HANNAH HOFFMAN
                    Markowitz Herbold PC
                    1455 SW Broadway
                    Suite 1900
                    Portland, OR 97201


FOR THE STATE DEFENDANTS:

                    LAUREN F. BLAESING
                    Markowitz Herbold PC
                    1455 SW Broadway
                    Suite 1900
                    Portland, OR 97201



COURT REPORTER:     Kendra A. Steppler, RPR, CRR
                    United States District Courthouse
                    District of Oregon
                    405 E. 8th Avenue, Room 2100
                    Eugene, OR 97401


                         *   *   *

THE COURTROOM DEPUTY:  Now's the time set for Civil Case No. 22-1813, Levi v. Chapman, et al., for oral argument.

THE COURT:  All right.  Good morning, Counsel.  Thank you for making your way down to Eugene.  I'd like everyone to please introduce themselves.  We'll start with Plaintiff's counsel first.  If you would be kind enough to give me your full name and your honorific, such as Mr., Ms., or Mx., I would appreciate it.

Who's here for the Plaintiff?

MS. SKJELSET:  We are, Your Honor.  My name is Mary Skjelset.  "Ms." is how I prefer to be called.  Thank you.

THE COURT:  Thank you, Ms. Skjelset.

MR. RIZZO:  Good morning, Judge.  Mr. Steven Rizzo.

THE COURT:  Thank you, Mr. Rizzo.

And for the Defendants?

MS. BLAESING:  Yeah, good morning.  Ms. Lauren Blaesing -- my pronouns are she/her -- from Markowitz Herbold for State Defendants.

THE COURT:  Thank you, Ms. Blaesing.

MS. HOFFMAN:  Ms. Hannah Hoffman, also she/her, for Defendants.

THE COURT:  Thank you, Ms. Hoffman.

All right.  We have a lot of work today.  Are you ready for a working session?

All right.

MS. BLAESING:  Yes, Your Honor.

THE COURT:  All right.  Well, roll up your sleeves.

So first issue is the reconsideration motion that Defendants have filed with respect to I think primarily, perhaps solely, the order requiring visual inspection -- excuse me -- visual inspection of the OR-Kids access or interface.

Excuse me.

MR. RIZZO:  Bless you.

THE COURT:  Thank you.

And then I have, I guess, a consolidated status report, as opposed to a joint status report, that outlines quite a few subject headings that need to be addressed with respect to discovery and then the discovery deadlines that I understand and agree will need to be moved out some to accommodate that.

I would like to -- although, I will defer to all of you who have more intimate experience with what's going on with this case -- to take up the reconsideration motion first.  And then I'm going to use your joint status report as a checklist.  And we're going to go heading by heading taking it up.  I'll hear argument from both parties to figure out what we're going to do about each one of them and then maybe go home this weekend.

That was kind of a -- kind of -- a joke.  How soon we get out of here will be up to how much you argue or how many questions I ask.  Tell me what your thoughts are about

approaching it that way.  If there's a preferred different approach, I don't really have that much of a dog in the fight if you want to take it up in a different order.

MR. RIZZO:  That's fine, Your Honor.

THE COURT:  Okay.

MS. BLAESING:  Yes, that makes sense.

THE COURT:  So will there be a -- sort of a tag team approach, or will there be lead -- or will there be somebody who's going to be leading on argument for both parties -- for either party?

MS. SKJELSET:  Well, Your Honor, I believe that we have generally divided our argument in two between the attorneys.  Mr. Rizzo will be arguing the motion for reconsideration, although I might have --

THE COURT:  Okay.

MS. SKJELSET:  -- some additional thoughts on that.

THE COURT:  All right.

MS. SKJELSET:  And then we can talk about the other items later.

THE COURT:  All right.  And so I take it, it will be a tag team, so -- which is fine.  I just wanted to be ready for who I'm supposed to be looking at.  All right.

Ms. Blaesing, the arguments on the motion for reconsideration.

MS. BLAESING:  Yes.  I'll be handling that piece.

And then Ms. Hoffman and I will share the issues in the joint status report. So I can kick us off with talking about the motion for reconsideration --

THE COURT: Yes.

MS. BLAESING: -- because that's State Defendants' motion.

THE COURT: Wonderful.

MS. BLAESING: Great.

Your Honor, thanks for hearing our argument on this issue today. And I know we've already submitted extensive briefing to you, so I really, in my remarks, want to just focus on what I think are the three independent reasons that the Court could and should grant the motion for reconsideration here.

THE COURT: And one item before we get underway, because I know we're going to have a relatively long morning, you're welcome to sit; however, if it's more comfortable for you to stand, that's your choice. But, really, you are welcome to sit.

MS. BLAESING: Okay. Thank you, Your Honor. I'll take you up on the offer to sit now. And if the sitting gets to be too long --

THE COURT: Right. In fact, yes, you're not confined to just one of the positions. You may get up and sit as you wish.

MS. BLAESING: Thank you.

THE COURT:  Go ahead.

MS. BLAESING:  So, Your Honor, I recognize that a motion for reconsideration is a very unusual and rare thing to ask for.  And we are because this is an issue of such importance to our client, to the Oregon Department of Human Services.

And three reasons that -- independent reasons -- that you have the basis to grant this here -- the first is the inspection is not the route to the information that the Plaintiffs are seeking.  The information that they are seeking about modifications, edits, dates of creation of case notes are things that will not be visible from an inspection of OR-Kids.  Those are things that have to be extracted from an -- in an audit report.

THE COURT:  Would that audit report be extracted from the database from which OR-Kids brings information -- or presents information -- or let me make sure I also understand what OR-Kids is.  Is it just a user interface that accesses several different databases or -- and also is an input vehicle to add data?

MR. RIZZO:  That's our understanding.

THE COURT:  Okay.

MS. BLAESING:  That's my understanding too, though I do not have the technical expertise of the folks that work full time on that database.  But what Mr. Payne has explained --

THE COURT: And I'm sorry for interrupting. Because I am trying to make sure I have my head wrapped around how -- what the architecture of OR-Kids is. Are there other ways to access those databases that OR-Kids relies on to present information? I'm assuming so -- that -- because if you're going to -- if you're able to produce audit reports, are you doing it through OR-Kids or through some other interface?

MS. BLAESING: It's a separate SQL database. So it's a parallel database that is much more restricted. So the typical end user -- the caseworker -- does not have access to it. It's a backend that Mr. Payne can access, and he can generate audit reports from that. But a typical end user would not be able to do that.

So Mr. Payne can extract these audit reports that show the metadata, which is what -- when this issue was in front of Your Honor earlier in the July status conference -- is what we understood Plaintiffs were seeking -- that metadata and access history. And that's something that we can produce. We will produce it. We have it ready to produce in the next week, where it shows, for each case note, the history of changes made to it.

THE COURT: And any reason why it hasn't been produced if it's already available to produce?

MS. BLAESING: It takes quite some time to generate. So Mr. Payne has been working on it for the last couple weeks.

He was out on vacation for a period of time.

There is some work product information to be redacted in those access history audit reports, because it does include if managers from the DHS legal unit access things on a particular date for defense of this case or in response to the tort claim notice.  And those were produced in another case involving Plaintiff's counsel and ODHS, the J.M. case.  And DHS similarly redacted those things before producing them on the basis of work product.  And Judge You found that that was appropriate.

So we received the access report just in the last couple of days.  We're making -- applying -- those redactions.  And then we'll be able to produce it.  We just couldn't produce it instantaneously --

THE COURT:  And in that other case in the Portland Division, was there a similar request to access the OR-Kids database?  Or is that --

MS. BLAESING:  Plaintiff's counsel would have better recollection of that than I do.  My understanding is that there was a request for a deposition -- a 30(b)(6) deposition of someone at OR-Kids -- and before that was permitted, DHS had the opportunity to produce all of these access reports, which they did.  They produced several hundred of them in the J.M. case.

THE COURT:  Mr. Rizzo, in that other case, was there a request to visually inspect, access OR-Kids?

Case 6:22-cv-01813-MTK    Document 78    Filed 09/15/23    Page 10 of 188

MR. RIZZO:  I feel like there was, Your Honor, but it was within a mix of case note deletion and activity reports, which is different than what we're seeking here.  But my memory is we did discuss that.  And then, ultimately, there were objections that we worked through.  Then we tried to take -- or we requested to take a 30(b)(6) deposition.  That was sort of the same argument about, "You don't need that."  And then, ultimately, as I pointed out in our status report, there was some inconsistency in Mr. Payne's declaration and in these various reports.  And we were allowed to depose him on certain topics.  And that was from --

THE COURT:  And my question, you know, is more unsophisticated than perhaps either of your responses.  As I understand it, in this case, you're asking to be able to go to the offices, wherever you can access OR-Kids, and be able to look at the case files relevant to this particular case as it would appear as a caseworker or somebody who has access to OR-Kids would be able to see entries and data coming in and out of user interface of OR-Kids.

MR. RIZZO:  That's correct, Your Honor.

THE COURT:  Was that request, to be able to engage with the interface with OR-Kids, made in this other case in Portland?

MR. RIZZO:  I think that was discussed.  We could have requested that, Judge.  It's just --

THE COURT:  And that's okay.  I just need to know whether it had been.

MR. RIZZO:  Right.

THE COURT:  And then, if it had been, what that result was.

MR. RIZZO:  The result was what -- we got the reports and we got the 30(b)(6) deposition.

THE COURT:  And that satisfied the concerns -- or the -- or answered -- provided the information you needed for the purposes of continuing --

MR. RIZZO:  Of that case.

THE COURT:  Of that case and continuing litigation.

MR. RIZZO:  Correct.

THE COURT:  Okay.  And so what would be different between that case and this case that viewing the OR-Kids interface would be relevant and important here?

And also I know I may be going outside of the boundaries of what a normal motion for reconsideration would otherwise require me to consider.  But I'm interested in understanding more, because I think we're going to be stuck with each other for quite a long time.  And so it's important for me to get up to speed on some of these nuances.

MR. RIZZO:  Well, here's my understanding.  And the first thing I have going against me today, Your Honor, is I forgot my tie.  So...

THE COURT:  You know, had you not actually told me, I wouldn't have --

MR. RIZZO:  Yeah.

THE COURT:  You know, here's the interesting thing, is that I imagined you with a tie on until you actually told me that you didn't have one.

MR. RIZZO:  I needed to say that.

THE COURT:  You can get away with a lot without --

MR. RIZZO:  Yeah.

THE COURT:  -- without pointing it out.

MR. RIZZO:  No.  It's -- so -- so this is where I understand, is we -- you know, we came into the court.  We had exchanges with Ms. Schneider.  And they rejected our request on a number of grounds, both for inspection of the electronic material as well as the hard copy.  There was no privilege objection.  The Court heard argument on those objections made.  The Court ruled.  And then we were presented with this motion.

And if I understand the motion, it's kind of intertwined. I'm getting to your question, Judge, but they're talking about the provider file, and they use a variety of FBI access controlled-type policies to talk about that.  And then there's the case file that we were -- are -- interested in currently.

So within the case file, the reason we want to see what the workers see is because, in past cases, for example, we've gotten different answers from individuals who access OR-Kids

that either don't remember seeing a screenshot --

THE COURT:  So -- and I can appreciate the need to understand what percipient witnesses are observing in order to be able to ask the appropriate questions in a deposition.

MR. RIZZO:  Right.

THE COURT:  I --

MR. RIZZO:  Okay.

THE COURT:  That's a valid explanation.  But I'm wondering is there -- but my question was more specific to was there something about -- whether it be allegations in the complaint or something else as it's developing -- that, in needing to have that understanding of how OR-Kids presents information and how information is input into OR-Kids --

MR. RIZZO:  Exactly.

THE COURT:  -- is unique to this case that was not present -- that those circumstances were not present in the case in Portland.

MR. RIZZO:  So, for example, if -- and we don't have OR-Kids in front of us.  But, for example, if we're reading left to right -- and I'll let Ms. Skjelset speak to the metadata issue, in particular.  But if we're reading left to right on the -- and I'm recalling from various screens that I can't show the Court, because they've been under other protective orders.  But I can at least explain to Your Honor what I understand about this.

So -- so where I was going originally is that when we've had these various screenshots, and we try to depose people on them, they don't recognize whatever -- Mr. Payne, however he used his SQL replication, to present.  So then we are stuck at the deposition with testimony about, "I don't remember," or, "This is not familiar to me."

So left to right, for example, we want to see -- in one instance, we called it "metadata."  We call it a "drop-down."  Be it a tab, be it a fixture, be it a drop-down, we -- we have received previously -- we understand this to be the case -- that you can click on that, and you can see a drop-down as to when a note was created as opposed to when a note was entered.

And so what DHS does is -- for example, in the juvenile courts -- is they present hard copies with a date.  But that's not always the correct date when the note was entered and/or created.  And you can -- it's not something that you need a customized report to see.  You can go left to right and drop down these various -- I call them "menus."

And this is important to us, because then we see how the caseworker -- what choices the caseworker had to select how to, for example, entitle an encounter.  Was it a visit, was it face-to-face, et cetera -- things like that.

So if we can just go, as the caseworkers do, left to right, top to bottom, in our clients' files -- in the case files and in the provider file -- that's what we're trying to

find out, so that we can understand how they input data and what choices and selections they have along the way.

So that's primarily why we're trying to get the inspection to develop that information.  And then when we have that --

THE COURT:  So accessing or being able to visualize OR-Kids with respect to your client files is not so much about getting the raw data, because you can get that from the audit reports.  But it's being able to transform that data from the audit reports into the format in which the caseworker is reviewing the data in real time so you can also ask questions of these witnesses that are probably more informed, and you can form questions that make sense to the witnesses on depositions.

MR. RIZZO:  Exactly.  That's really our --

THE COURT:  All right.  So, as I understand, you're not seeking -- are you going to be taking, like, screenshots of the OR-Kids -- if I were to allow you to go ahead and observe OR-Kids, what are you going to do?  Just simply use it to educate yourself about what the format looks like, or is there some data that you are hoping to derive from that viewing that you -- you know, physical -- whether it be a digital -- I guess that's not physical -- digital data or physical copies of things or photographs of that experience?

MR. RIZZO:  It would be the latter.  My plan was -- we didn't get to really confer.  We never got that far.  But my plan would be either to sit with an escort -- because the Court

ordered that it's escorted -- sit with that person and either take still shots or take a video of how we move and how the screens change left to right. And then we can see, as well, what's actually in there, and when it got there, and how it got there, and who may have accessed it if there's a record of that.

So those are the things that an inspection would provide for us. But to come back to the circle, yes, it was -- my idea was we would either have a video with that person, or we would take select shots.

THE COURT: Okay.

MS. BLAESING: May I respond, Your Honor?

THE COURT: Yes.

You'll get a chance to discuss more, Mr. Rizzo, in a bit.

Please go ahead.

MS. BLAESING: So I want to clarify a few things about what OR-Kids can and cannot do that's my understanding. Because I think what I'm hearing from the agency is a little different than what Plaintiff's counsel was describing.

THE COURT: Have you had a chance to navigate OR-Kids yet?

MS. BLAESING: No. I do not -- I've worked with DHS over four and a half years on this and other cases. I've never had access to OR-Kids, because it's been their position that you have to have an FBI background check. I mean, they keep it

under very secure confidentiality and security protocols.

I see printouts of things the same way that they're produced in litigation.  And the substance of everything in the file has been produced to Plaintiffs.  We're going to produce the metadata reports.  And there -- my understanding from DHS is there's not a drop-down menu that exists in the way that Counsel's describing it.

THE COURT:  But without you having also been able to visualize it -- observe it --

MS. BLAESING:  Yeah.

THE COURT:  -- you know, we're all working off of secondary or tertiary representations.

MS. BLAESING:  And what Mr. Payne, who's the subject matter expert who works in this database every day, has said is -- and put in this declaration -- there's a separate SQL database that he has access to where he can go in and pull this audit trail.

So a caseworker, or if Counsel was given access, wouldn't be able to just go in and see that.  I imagine perhaps there would even have to be a second computer terminal set up where Mr. Payne, or someone else with his qualifications, could then look up that access history.

The -- if it's screenshots that Plaintiffs want, that's something that can be produced.  They're not going to be able to see the database in the same way a caseworker did four years

ago, because the case notes can't be altered at this point. They're locked after a certain point in time.  So essentially --

THE COURT:  Can we back that up a bit?  I'm not sure I understood that last statement.  They can't see what the caseworkers saw back then because the case is locked?

MS. BLAESING:  Well, what I was understanding Counsel to describe -- that they would be able to go in and look at what all the different drop-down menus were for a case note when it was created.  But there's a period of time -- I believe it's 30 or 60 days -- where a caseworker can go in and make edits.  But then, after that point, the case note is locked.

THE COURT:  But it's still there?

MS. BLAESING:  Yes.  Yes.

THE COURT:  It can't be changed.

MS. BLAESING:  Right.  So you wouldn't be able to go in and make modifications to it.

THE COURT:  Okay.  But -- well, I mean -- but, at this point, I don't know -- I mean, I'm not sure what the relevance would be of trying to determine whether modifications are made, and, as of today, it's about really what -- what information --

MS. BLAESING:  Past.

THE COURT:  -- existed prior to the case -- prior to the -- I guess OR-Kids being locked for those case files;

right?

MS. BLAESING:  Yes.  And --

THE COURT:  Okay.

MS. BLAESING:  And if, in this inspection, the Plaintiffs then want to see, okay, for this case note, we want to see what the access history was, somewhat that would have to be separately pulled up.  And then parts of it would have to be redacted in real time, because there is information in there that's work product about when the DHS legal unit staff, or potentially attorneys if attorneys were authorized to look at it as part of litigation, looked at it.

And so what I'm --

THE COURT:  So I want to make sure I'm understanding.  So there's -- what is it about attorneys looking at this that creates work product, or are there entries that attorneys are making that are causing some items to become work product?

MS. BLAESING:  There are certainly entries from staff from the DHS legal unit that works as -- in conjunction with Department of Justice --

THE COURT:  Okay.

MS. BLAESING:  -- and DAS -- Department of Administrative Services -- when there's tort claims notices, when there's litigation filed.  And they go in and access files and look at them as part of the litigation defense.  And that was something in the J.M. case that DHS redacted and that Judge

You upheld as work product.

THE COURT:  Okay.

MS. BLAESING:  And what I hear, Counsel is, you know, wanting to take a look at the database for educational reasons so they can ask, you know, questions of deponents.  But that -- that is something they can do in discovery.  Or we can produce screenshots of particular screens that they want to see.  I don't think the curiosity of seeing the database in real time is sufficient to give them this extraordinary remedy, which has never been granted before in any litigation that DHS has had.  And Caroline Burnell's declaration spoke to that.  She's worked in the DHS legal unit for 25 years.

THE COURT:  How many times has it been asked?

MS. BLAESING:  I -- I believe it has been asked.  It has been asked before.

THE COURT:  All right.  How many times?

MS. BLAESING:  That I don't know here.

THE COURT:  I mean, that -- so the last statement about it never being allowed might be significant -- or there's a difference in the significance if it were, you know, asked 100 times and denied 100 times versus maybe asked once or twice before and denied.

MS. BLAESING:  Yeah.  I'm representing DHS in another case right now that's a large class action, and all case files are produced in the same format they've been produced to

Counsel here.

THE COURT:  Sure.  But did somebody ask in that case to have a visual inspection of how OR-Kids operated?

MS. BLAESING:  There was discussion of it and objections to it.

THE COURT:  And did a judge resolve it?

MS. BLAESING:  I don't think that issue ever went to the judge.

THE COURT:  Okay.

MS. BLAESING:  But the agency made the same objections they're making here.

THE COURT:  Okay.

MS. BLAESING:  And I just want to speak more to the -- to the third point.  So I spoke about why I think this inspection is not the route to get them the information they want.  And --

THE COURT:  But -- so let's make sure we're all on the same page about what it is that they're wanting.

MS. BLAESING:  If it's metadata they want.  If they want to know the access history, that can be done in the audit reports.

THE COURT:  And it sounds to me like the audit reports are going to provide metadata and any other raw data associated with the file.  So I don't think anybody's questioning whether that's -- that's -- that can be

accomplished, and that's what the Plaintiffs at least partly want. But I'm understanding that there is an educational piece so that they understand -- I mean, it's one thing to be handed a vial of DNA and another thing to be able to see what that DNA actually produces.

I'm -- it was an unplanned metaphor, but -- or the analogy. I mean, the idea is that, you know, you can give somebody the raw data, and that can be helpful, but sometimes understanding and being able to visualize the organism that it actually becomes after it's formed into something is actually incredibly important.

And if there's an issue with respect to being able to ask questions -- form accurate questions -- that would be intelligent and helpful in light of the context of -- in which the percipient witnesses of the deponents would understand what it is they're talking about, there's -- there's something there to being able to understand how OR-Kids navigates -- how you navigate through OR-Kids.

MS. BLAESING: And, Your Honor, I think that's a new basis for why Plaintiffs are asking for this. I mean, that was not --

THE COURT: If it's a new basis, it's also coming on as a -- on the heels of your request for reconsideration. So open the door, everything gets to walk right on in. And I'm open to trying to figure out how people can appropriately

restrict the, you know, sensitive information but allow the necessary discovery for litigation to be able to proceed intelligently.

MS. BLAESING:  Well --

THE COURT:  So, yeah, finish what else you wanted to say.  And, at the same time, let me just show both of you, you know, my working hypothesis, which is I'm not sure this is necessarily a straight denial of a motion of reconsideration or a willingness to consider some additional boundaries.  But I'm inclined to allow some visual observation of OR-Kids so they can understand how this system works so they can inform -- be more informed about the way in which they're going to ask questions of witnesses.

Now, how we can accomplish that will be up to having a constructive conversation among the two parties and me about affecting both parties' interests.  So, with that in mind -- I'm showing my working hypothesis -- so tell me more of anything else that you'd like me to consider before we proceed.

MS. BLAESING:  Yes, Your Honor.  So taking that in mind, I think what I would ask you to consider is just how intrusive this is as a method to gain this information.  That it could be accomplished through less intrusive means, like the audit reports, deposition questions, screenshots.  And providing this kind of direct access is really an undue intrusiveness that I don't think Federal Rule 34 anticipated.

And that they haven't -- that Plaintiff hasn't shown that it's necessary here to -- for them to be actually taking the wheel, driving, doing the actual searching in the database.

THE COURT:  All right.  Thank you.

Mr. Rizzo?

MR. RIZZO:  I was thinking about the Court's hypo -- how did the DNA get in the bottle -- right -- within the laboratory and within the mechanisms that provided for it, and that's what we're trying to understand.

And in terms of working with the Defendants, of course they've shut the door, as Your Honor knows.  And all of this -- right -- all of this discussion and these points -- it was available to confer, but they shut the door on that.  We were trying to work with them on any number of ways to complete our discovery of this OR-Kids.  And maybe this is a semantic, but we are interested in the client files, not the database in which the files are situated.  Okay?

And in terms of --

THE COURT:  Well, I mean, the client files are part of the database; right?

MR. RIZZO:  Right.  Right.

THE COURT:  But you're not asking to view the entire database.  I think we're clear on that.

MR. RIZZO:  Exactly.

THE COURT:  You want to be able to look at the client

files through the -- through the vehicle of OR-Kids.

MR. RIZZO:  Right.  Through that -- whatever that interface is.  Just as the caseworkers operated that piece of equipment or that software, that's what we're trying to --

THE COURT:  So --

MR. RIZZO:  So --

THE COURT:  All right.  So there were issues raised about federal regulations and law enforcement restrictions about access to OR-Kids.  It appears to me, from what you're telling me, Mr. Rizzo, that you only want to see how the same information that would be provided through these audit reports are visually represented when looking at OR-Kids.

MR. RIZZO:  I can't say that entirely, because I don't know how Mr. Payne can use filters in his SQL replication to create --

THE COURT:  So what's "SQL" again?

MR. RIZZO:  It's the software that -- I dropped a footnote about it.  Because I went on the Internet.  I don't exactly know what it is.  But it's a way of -- for example, you have a database -- the way I understand it conceptually -- and I'm no computer person -- but you have a database.  And then he can operate in a replication format, and he can access through his -- they call it "SQL" -- to generate a report based on what his defense counsel tells him.

And exactly how he does that, or what filters he applies

to extract information, and in what form the information is ultimately presented, we have no idea.  We're not there yet with the so-called customized reports that they want to volunteer now in place of allowing our inspection.

THE COURT:  And how much time do you think reviewing your client's case files on OR-Kids would take?

MR. RIZZO:  I'm hoping in a matter of hours.  I mean, I --

THE COURT:  Well, "a matter of hours" can mean a lot of different things.  Are we talking two?  Three?

MR. RIZZO:  I would be guessing, Judge.  I'd hope we can get it done in half a day.  I mean --

THE COURT:  Well, what's "half a day" to you?

MR. RIZZO:  Four hours.

THE COURT:  All right.

MR. RIZZO:  Sorry.  Yeah.  No, I --

THE COURT:  Well, then you apparently keep banker's hours, Mr. Rizzo.  I don't understand how anyone can do that --

MR. RIZZO:  I wish that were true.  But I --

THE COURT:  But, suffice it to say, no more than four hours.  So I can put a time restriction on it, as well.

MR. RIZZO:  I think that's fair, Judge.

THE COURT:  Which would also help cap what costs are involved in being able to -- because, frankly, the litigation over this is costing more than probably the time it would take

for -- if it's in fact no more than four hours -- to be able to visualize it.

Now, cost alone is not the only issue. Intrusiveness is another consideration that is separate from cost. I wanted to acknowledge that. But just in terms of being able to figure out how to resolve this -- and if all you're looking to do is understand how the same -- how the data that will be provided in audit report form is visually represented. And I get there may be some other pieces to this that you don't know about yet. But that's primarily what it is you're looking for, is how this -- how -- how the music sounds when played rather than just on the sheet. All right.

MR. RIZZO: I like that, Judge. I mean, that's a good analogy. I mean -- and I think we could -- we should -- again, barring the unforeseen -- we should be able and should have been able to do this in a matter of hours with an escort sitting next to us.

THE COURT: Okay.

MR. RIZZO: So...

THE COURT: All right. I want to move towards -- I want to move to talking about how this looks -- the nuts and bolts of it all, Ms. Blaesing. I want to make sure -- I want to respect your clients' need for ensuring security around access to the database OR-Kids. And it's clear that the Plaintiffs are not asking for a review of anything in the

database.  But it's limited to -- and perhaps we need to just clarify.  I think everyone here -- the two parties know what client file you're talking about if I'm using that term correctly, but there should be no dispute.  But perhaps we should clarify what files it is that we're talking about.

MS. BLAESING:  Yes, Your Honor.  I think this conversation just now brings to mind a couple logistical probably hurdles or things we should discuss.  Because one of the -- one of the practical considerations would be the process for Plaintiff's counsel to get access, which would, in Defendants' perspective, require an FBI background check, like all users undergo in creating an account.  And then the question would be whether --

THE COURT:  But they're not creating an account.

MS. BLAESING:  So that will lead to my other question, which is, is a DHS employee, who's authorized to use the database, the person doing all the driving of the mouse -- clicking -- and Plaintiff's counsel is observing versus Plaintiff's counsel being able to click and drive, you know, where they want to go in the database?

THE COURT:  So -- so based on my court order, your recommendation is that there be an operator from DHS that does the mouse clicking and the opening of tabs at Plaintiff's request and direction?

MS. BLAESING:  Yes.

THE COURT: Okay. So --

MS. BLAESING: And --

THE COURT: -- you get to be the backseat driver and somebody is at the wheel. And then that makes you the side-seat driver.

MS. BLAESING: Sidecar maybe.

THE COURT: Probably the side-seat driver, because then you can say, "No, no, no, no. Do what I'm telling you to do and not what the backseat driver is doing." So you're going to probably -- someone from -- you and someone else will be present too.

MS. BLAESING: And would the file inspection be of here, the child's file, or are we talking about a dummy file that's just looking at what functionality the database has and what menus are there?

THE COURT: Well, I'm --

MS. BLAESING: It would be helpful to clarify.

THE COURT: I'm understanding it to be the children -- or child -- is it child or children that we're talking about?

MR. RIZZO: It was J.C. and Z.C., so it would be children.

THE COURT: Two. All right. All right.

MR. RIZZO: So we have --

THE COURT: And it's a sibling?

MR. RIZZO: Right. We have that case file and then we have the Duncan/Raygosa provider file. Those are the two.

THE COURT: So is that essentially four different sets of documents?

MR. RIZZO: I think it's just two -- two files.

THE COURT: J.C. and Z.C.

MR. RIZZO: J.C. -- right -- slash, Z.C. and then Duncan, slash, Raygosa.

THE COURT: Okay. So is J.C. -- J.C. and Z.C. one file?

MS. SKJELSET: Yes, Your Honor. That's my understanding.

THE COURT: And then --

MS. SKJELSET: It's filed under the biological parent's name.

THE COURT: Got it.

MS. BLAESING: Yes. One file for the whole -- biological parent.

THE COURT: Okay. And then the Duncan/Raygosa is one file?

MR. RIZZO: Right.

THE COURT: And everyone here understand that's what we're talking about? Is there something different that you want to describe?

I'm hearing no --

MS. BLAESING:  If --

THE COURT:  -- no clarification.

Oh, go ahead, Ms. Blaesing.

MS. BLAESING:  The question I was raising, Your Honor, was if the purpose is purely educational to see how the --

THE COURT:  Yeah.  We'll get to the whole dummy thing in a moment.  I just want to make sure I understand that there isn't going to be a dispute later about, well, you thought it was one thing, and then somebody else thought it was a different file.

MS. SKJELSET:  I only have one concern, Your Honor, that I've sort of discovered more recently, is that I suspect that there may be a separate provider file that was reopened after the Duncan/Raygosa home was closed and they were reissued a certificate of approval on fugitive status.  But I'm not certain whether that's the case, and I'm not sure that we've received that file.

THE COURT:  Okay.  And have you made the request for producing it?

MS. SKJELSET:  Well, we've -- I don't -- I believe that when we requested the provider file for Duncan/Raygosa, that meant whatever provider files existed, whether or not one --

THE COURT:  And has that --

MS. SKJELSET:  -- was opened subsequently.

THE COURT:  -- information responsive to that request been produced?

MS. SKJELSET:  I'm unsure, Your Honor.  This is -- this is just something new that's brewing.  And because you invited --

THE COURT:  Yeah.  I think it's --

MS. SKJELSET:  -- a question about it, I'm saying it now.

THE COURT:  -- important.  So unless you know the answer now, I'm not going to press you on it.  I think there needs to be some conferral about understanding what that -- what that issue might look like.  And then if we need to take it up with me, we can.  I'm hoping that everyone is going to understand sort of the themes that will direct my rulings in the future if they're -- if they're going to run along similar lines.

So back to the question of dummy file versus sort of live, locked file.  So what would the -- what would the dummy file -- how would the dummy file be different than the live, locked file?

MS. BLAESING:  My understanding is that DHS may have or had, recently, a file that's not an actual child in DHS custody, but a file for training purposes, where potentially someone who's learning how to use the database or wants to see

how it works can go in and look at information.

THE COURT:  Got it.

MS. BLAESING:  But it's not -- it's not a child in DHS case care.

THE COURT:  Okay.  And that doesn't address your needs as relevant to the case?

MR. RIZZO:  It does not.  And I think that's -- now that I -- now that I understand that, that's the genesis of why we get different screenshots that workers don't recognize. Because they weren't trained, evidently, given the time periods involved, on whatever this dummy training vehicle provides for today.  So that's why we need to see our client's files as they exist.

THE COURT:  Okay.  So my order includes the presentation of OR-Kids with the two files that have been described here:  The Duncan/Raygosa and then the J.C. and Z.C. files, not a dummy file with hypothetical data in it.  And there will be somebody from DHS driving the mouse.  And there will be Plaintiff's and Defense counsel present in the room. It will be a cap of four hours.

What else, Ms. Blaesing?  What other measures can be put into place to provide a modicum of security to address DHS's concerns?

MS. BLAESING:  I think it would be helpful to know what Plaintiff's counsel is intending in terms of taking photos

or recordings so we can have mutual agreement on that in advance.

MR. RIZZO:  I think it will be one or both.

THE COURT:  What does that mean?  "One or both" what?

MR. RIZZO:  Well, I might -- my preference would be to have a video so we can see it in real time as opposed to taking individual photographs.  But every once in a while, I could see -- for example, if I see something that's of interest -- take a photograph of it.

THE COURT:  I mean, wouldn't you be able to do that by taking a -- by pulling a frame out of the video?

MR. RIZZO:  We could.  I think we could.

THE COURT:  Just make sure it's, like, some kind of high -- high -- what is it -- HD -- what is HD -- 8000 pixel -- or something -- something really high quality so that way your stillshots are going to look like they aren't blurry.

MR. RIZZO:  Okay.  We can do that.

THE COURT:  Actually, don't follow my recommendations about technology.  Do what you need to do.  But I want to limit the amount of technology and recording so there's one device that handles it so there won't be any complications or questions about taking some other pictures elsewhere within that room or other screens that might be present.  That there's one that's trained on the screen and that's it.

Ms. Blaesing?

MS. BLAESING:  My concern, Your Honor, is that if it's videotaped, and then there's questions being asked of the DHS employee, if we then are opening up that there's going to be a transcript, and then this is going to be treated as testimony.  So I'm curious what Plaintiff's position on that is.

That, I think, tends to favor that this just be video -- I'm sorry, not -- instead of video, photographs or screenshots so that we aren't in a dispute later about this turning into testimony.

THE COURT:  Or we can just simply agree that nothing that is volunteered can be considered as testimony or deposition evidence unless derived through a more formal deposition means.  I mean --

MR. RIZZO:  I was thinking of that -- I was thinking about it slightly differently.  I think -- I thought Ms. Blaesing was trying to talk about logistic.  Because testimony, if any, that's taken is subject to the protective order.  So we can show a video -- for example, a clip of a video -- to the supervisor regarding one particular aspect.  I don't think there should be a problem with doing that, because it's -- in terms of how to use the footage -- right -- that would be covered under a protective order anyway.

THE COURT:  I understood you to be talking about something slightly different, Ms. Blaesing, but...

MS. BLAESING:  Yes.  My concern is that if there's a video, this then turns into a deposition where questions are being asked of the DHS employee who's driving the mouse.  And then it then becomes an issue in a deposition where Plaintiff's counsel may say to a witness later, "But, you know, Mr. X said this about what functionality OR-Kids has.  You know, why are you saying something different now?"  And I -- I think this becomes a much bigger, more logistically challenging inspection if it's also a deposition-type --

THE COURT:  So I'd like to make it a smaller logistically -- logistical -- challenge by instructing Plaintiff's and Defense counsel not to ask substantive questions of the DHS driver of the mouse about how the system works, except and only to the extent of trying to understand -- well, I mean, let me back up.  You might need to wordsmith this a little bit.  But there should be no questions about the substance of the file put to the DHS driver.  But I think there might be some need to understand where you want to go next in the database -- excuse me -- in OR-Kids.  You might want to ask a question of the person who's operating the mouse.  So like, "What comes next?  Is there another drop-down menu?"

MR. RIZZO:  Exactly.

THE COURT:  I think those questions might be appropriate so you can navigate through and complete the review.  But asking something more than right and -- you

know -- left turns, right turns, ups, and downs is something that I'd want you to not do.  But I also -- I think my foresight here is a little blurry.  So, you know, I'm open to suggestions from both of you about how we can minimize any -- minimize the questions.

I recognize there are going to be some questions that might need to be asked just so that way you can navigate, and make this complete, and not have to come back to me for more time, and then ensure that this doesn't become a source of information for future depositions.  But I think the questions -- or the answers -- posed --

MR. RIZZO:  Right.

THE COURT:  Excuse me -- the answers provided by the driver is not going to become some -- some independent basis for pursuing deposition testimony --

MR. RIZZO:  I understand --

THE COURT:  -- somewhere else.

MR. RIZZO:  -- that, Judge.  And I think we can accomplish that.  I mean, if I have a question about, you know, for example -- not having seen it -- but, "Why does it go from here to here," that's a potential question.  But I wouldn't say, for example -- just in the mind's eye -- say, "Well, when did that feature become available?"  Right?  And that's why it's so important to see the files as they are as opposed to what features were changed, modified, tweaked, added.

So I could see questions about if I -- if I analogize to I'm going to a warehouse to investigate a piece of equipment -- right -- there are some foundational questions that you -- when you're shown the machine. Right? There are some foundational questions to set up the inspection. But I think what the Court is saying is you can't ask about substantive issues or question the witness. And that wouldn't be my intention.

THE COURT: Correct.

MR. RIZZO: My intention is to get in there, do the job, and leave, and have a record of what I saw.

THE COURT: Ms. Blaesing?

MS. BLAESING: Your Honor, I -- my concern lies in the fact that Plaintiff's counsel has previously deposed Mr. Payne in a 30(b)(6) deposition about OR-Kids. They've also challenged the credibility of his declaration he submitted here. I don't know if he'll be the person driving the mouse. But, hypothetically, if he is, that this then becomes fodder for, you know, future -- future challenges to his credibility and arguing inconsistent statements when this isn't -- you know -- this isn't going to be sworn testimony under oath.

THE COURT: And because it won't be sworn testimony under oath, I'm not interested in hearing anything coming out of this site viewing to challenge any witness. If you want to draft up an understanding and an agreement that reflects that circumstance, please do so.

I'm interested in providing the Plaintiff an opportunity to learn how the system navigates, not to continue to work on other witness testimony development.

MS. BLAESING:  Okay.  Thank you, Your Honor.  That addresses my concern.

THE COURT:  Okay.  Was there anything else about the OR-Kids motion for reconsideration -- that general subject -- that we need clarification on before we go to the joint status report?

MR. RIZZO:  I don't believe so from the Plaintiff's perspective, Judge.

THE COURT:  Ms. Blaesing?

THE COURT REPORTER:  Can I ask how to spell OR-Kids?  Is it an acronym?

MS. BLAESING:  Yes.  It's OR-Kids.

THE COURT:  All right.

MS. BLAESING:  Your Honor, I just want to note, I appreciate the effort the Court's made to help us work through some of these logistical issues.  I think there may be a few others that will come up as our client figures out how to provide this access and security issues around that.  So it may not be a quick process to get it -- to get this all scheduled.

THE COURT:  Okay.  Well, let's talk about what "quick" means and doesn't mean.  Tell me more.

MS. BLAESING:  I think it could take a couple of

months to get this scheduled and in place.

THE COURT:  And why do you think that might be?

MS. BLAESING:  I think we'll have to determine who the DHS employee is going to be -- able to do this -- when they're available, and if they have the right authorizations and permitted access to do this kind of --

THE COURT:  Well, and by ordering Mr. Payne responsible to be the one responsible for driving the mouse, what complications arise from such an order?

MS. BLAESING:  May I -- may my cocounsel speak to this?

MS. HOFFMAN:  Yes.

THE COURT:  Hi.

MS. HOFFMAN:  So, Your Honor, the complication is that the FBI places restrictions not only on who can access the database, but on what they can do with their access.  So the issue is that if Mr. Payne has access to OR-Kids, there are restrictions from the FBI on his access.  He is not allowed to show his account or what he sees when he logs in.  He's not allowed to share that with anybody.

THE COURT:  A question that's been on the back of my mind that I've been meaning to ask:  If the data is going to be produced in hard copy form or through these audit reports, where is the insult to the FBI regulations that the same data is going to be viewed on OR-Kids?

MS. BLAESING:  I think it's the access is the distinction.  So the underlying data can be produced pursuant to the protective order here.

THE COURT:  But the access to OR-Kids is limited. And is it your understanding the FBI is taking a position that looking -- looking at the screen itself without -- without FBI clearance is somehow a violation of its regulations?

MS. BLAESING:  I think we cannot definitively say how they will view it.  Our client's position is that there's a risk and concern because this is uncharted territory for them. That this issue has not come up before.  And if there is routine access granted to litigants in discovery to then go in and look at the database, they have concerns about that.  That risks their access granted by law enforcement.

THE COURT:  And that may be a legitimate concern for DHS in the future, but not my concern for the purposes of making sure this litigation goes forward.  So two months is too long.  I can't -- I can't -- you know, if somebody wants to -- if DHS is going to decline to comply with my order, then we'll have other issues to take up.  And I want to make sure it's very clear to them that I have narrowly construed my order to allow very limited review for legitimate and relevant purposes in this litigation.

And if DHS refuses to comply in a timely way, it will -- whether it be by motion of Plaintiff or on this Court's motion

for its declination to comply, sanctions.  So they need to understand that.

MS. BLAESING:  Yes, Your Honor.  And they're taking this very seriously.

THE COURT:  Yes, and I appreciate that.  But I also want to make it -- I just want to simply lay down expectations -- expectations and consequences.  And if choices are going to be made, I want to make sure that they understand what those choices -- what will come about as a result of the choices that they make.

You know, I get that they might have to be concerned about future litigation.  DHS has been -- historically, needed to defend against claims.  But that's not an issue that I would be taking into account at this point, given the nature of this litigation in front of me.  It's a policy issue that DHS needs to take up with itself down the road.

MS. HOFFMAN:  Your Honor, if I may just clarify something?

THE COURT:  Yeah.

MS. HOFFMAN:  So part of the logistical issue here is that the DHS employees are -- they have credentials to access the database.  Those credentials are issued through the FBI and OSP.  DHS needs to coordinate with OSP and the FBI to confirm that Mr. Payne -- or whoever it is that's driving the mouse -- that that is compatible with his credentials or that there's

some modification to his credentials that can be given.

DHS can't represent how long it will take to coordinate with those other agencies, because that will take some amount of time. It isn't just a policy position of DHS. It requires a certain amount of interagency communication and coordination here.

So I think -- I think it would be helpful to the State if Your Honor could give us a sense of what timeline you do feel like would be appropriate. Because we do have to do a fair amount of coordination here.

THE COURT: Well, I think you said "several months." Right, Ms. Blaesing? Or was it a couple of months? It might have been several months.

MS. HOFFMAN: She said "two months."

THE COURT: Okay. All right. Well, I believe in the rule of halves. Any time somebody negotiates something, they usually double what it is they want to settle for. So next time say "four months."

MS. BLAESING: This is also how my five-year-old negotiates.

THE COURT: All right. So I'm not -- well, given that we're going to need to move discovery out for quite a few other reasons, I -- you know -- I'm mindful that sometimes trying to move too quick will cause us to trip. I want us to get to where we need to be with finality and without any more

problems or for you having to come back and deal with me.

I mean, tell me what problems you have with two months, Mr. Rizzo, if any?

MR. RIZZO:  I don't necessarily have a problem with two months.  What I have a problem with is, as I pointed out, in their response, the way those declarations were crafted, it's unclear whether either of those witnesses ever saw Your Honor's protective order.  And there's no evidence, whatsoever, that Mr. Miles, for example, who was the background check unit manager -- who is a legitimate witness for us in light of the background work that was done on Duncan/Raygosa and the elder son -- there's no evidence he conferred or communicated with the FBI, if he ever needed to, about whether the FBI would have any problem with a social service agency following a United States District Court order to allow a limited inspection that was escorted.

So if they're taking two months to do it now, there's nothing I can do about that if they need that time.  But they're representing to Your Honor that they need that time to contact two law enforcement associations, one national, one state, and I pointed out -- and it took a long time to do it -- that this system -- the only CJIS it has in it at issue is for Duncan/Raygosa, and they're suing Duncan/Raygosa.  They have a third-party complaint.  And he's been convicted.

So, yes, they have a concern, as they're saying today, for

access, but it just strikes me as very remote.  But if they're telling Your Honor they need two months, then they need two months.  But I just thought I needed to make that point. Because that could have been handled a long time ago.

THE COURT:  All right.  Two months, but no more.  So that means that if they come back with, "We can't get it done in two months," then I'll have problems with DHS's compliance with my order.

MR. RIZZO:  Maybe we can see the documentation, Judge, to make sure that there is no problem and OSP and the FBI signs off.

THE COURT:  I mean, any issue with respect to sharing that sign-off by the FBI and OSP?

MS. BLAESING:  I -- I don't see how that's relevant that we need to produce in discovery.  But we will -- we'll work through what channels we need to do, and we understand the expediency here.

THE COURT:  I'll leave it with my order.

MR. RIZZO:  Thank you, Judge.

THE COURT:  And then we'll -- no other documentation needs to be provided.

MR. RIZZO:  Okay, Your Honor.

THE COURT:  All right.

What else, Ms. Blaesing?  I think you're coming up with some important considerations for us to resolve now.  So...

MS. BLAESING:  Those are the only ones I've thought of so far.  Thank you, Your Honor.

THE COURT:  Okay.  We're locking it, though, now.  So anything else you come up with after today, it would have to be a pretty good, big one to deal with.

All right.  Let's take a brief recess, come back in ten minutes.  Then we'll take up the joint status report and discovery.  Thank you.

MR. RIZZO:  Thank you, Judge.

THE COURTROOM DEPUTY:  Court is in recess.

(A break was taken from 10:04 AM to 10:23 AM.)

THE COURT:  Turning to our joint status report, I'm just going to go page by page.  I suspect -- but I don't know for sure -- perhaps this is more hopeful -- that after we go through a few, it might set some themes for other decisions that might otherwise be required of me that perhaps the parties can confer and resolve without going through every single item.  Maybe.

And also there may be some items that have higher priority that you might want to bring to my attention that could help sort of set a theme for resolving other issues.  Maybe -- actually, why don't we do that.  Is there -- are there some big issues that would govern multiple headings that if we were to

resolve first, would make perhaps more obvious a resolution from which both parties can confer without my involvement? And, if not, that's fine.  We can just start with page 1 and go from there.

What are your thoughts?

MS. SKJELSET:  Your Honor, I think it might make most sense to go line by line.  There are some issues that are more salient than others, but there's overlapping issues within the decisions that I think will inform the other topics.  Does that make sense?

THE COURT:  Sure.  I think it might make sense, without knowing exactly where we're heading.  But, yes, I'm willing to go line by line.  And I'm willing to also ship on the fly if it becomes more evident, if we're jumping in the middle of it, that it makes even more sense to do it in a different way.  I'm open to suggestions, too.

Ms. Blaesing, any thoughts about how you think we ought to jump into this?

MS. BLAESING:  Going through the minute order is fine.  I think an issue that might be easiest and quickest to resolve is the issue about redactions of confidential reporters.  But that's a pretty short one.  So we can just get to it when we get to it --

THE COURT:  Okay.

MS. BLAESING:  -- if that's easier.

THE COURT:  Well, every once in a while it might be nice to have an easy one.

MS. BLAESING:  Okay.

THE COURT:  So how about we keep that one --

MS. BLAESING:  Yeah.  Good for the flow.

THE COURT:  All right.  Although, now that you've said it was easy, you've just jinxed it too.  But let's see where we go from there.  I thought the easiest one might be the resetting of the deadline.

You proposed a date in March.  Is that correct, Mr. Rizzo?

You proposed a date in March?

MS. BLAESING:  Defendants did, yes.

THE COURT:  Okay.

MR. RIZZO:  We thought, for all the reasons I mentioned, it needs to be closer to July.

THE COURT:  Okay.

MR. RIZZO:  Especially now where we're another two months --

THE COURT:  Yeah.

MR. RIZZO:  -- with the OR-Kids.

THE COURT:  Right.  So in light of what needs to happen with the OR-Kids clearance issues, you say March -- Defendants say March -- Plaintiffs say July.  I mean, is there any reason that July would be too far out, Ms. Blaesing, for your clients?

MS. BLAESING:  Your Honor, that's pushing things out almost a year from where we are now.

THE COURT:  Hm.

MS. BLAESING:  And Defendants have been moving very swiftly to produce a lot of discovery in different channels, which we'll continue to do.  And if we can schedule the OR-Kids inspection earlier than two months, we will try to.  But other discovery can continue to happen in parallel.

THE COURT:  Okay.

MS. BLAESING:  And if we get to February, and Plaintiffs need more time, then we will confer on it and consider it.  July just seems very far out from where we are right now.

THE COURT:  Let's settle for an April -- let me get our calendar out.

MR. RIZZO:  Judge, if I may, we have a three-week trial.

THE COURT:  Right.  There was that.  You did point that out.  That's right.

MR. RIZZO:  That's why we were concerned that this delay was being used to force us into depositions in early winter and March, which is going to conflict with our --

THE COURT:  And the other case is the case that we've been talking about?

MR. RIZZO:  J.M. -- yeah.

THE COURT:  And that's in front of Judge Nelson; is that right?

MR. RIZZO:  Yes.

THE COURT:  Okay.

MR. RIZZO:  It's moved -- it's moved around.  But, most recently, it went to Judge Nelson.

THE COURT:  Okay.

MR. RIZZO:  So --

THE COURT:  And is that case -- the trial dates are set?

MR. RIZZO:  It's set.

THE COURT:  And is it going?

MR. RIZZO:  It's going.

THE COURT:  And are you defense counsel, Ms. Blaesing?

MS. BLAESING:  I'm not, Your Honor.

THE COURT:  Okay.

MS. BLAESING:  DOJ is.

THE COURT:  Okay.

MR. RIZZO:  It's a three-week case.  So, anyway, I just felt like -- and I had offered the June/July.  I didn't hear a response.  But I think it makes sense to move it there versus forcing all of this discovery.

THE COURT:  And what were the dates for that trial?

MR. RIZZO:  It's April 1.  And it's a three-week

trial.

THE COURT:  Got it.

MR. RIZZO:  And then we have -- you know -- backing up from that, we have pretty serious trial management calendaring issues and motions leading up -- hearings and what have you.  So -- and I just had a thought.  Hopefully it comes back to me.  We have thousands of documents that they're marking for privilege.  We won't even see their log until October.  And even if it ends up -- I think it's over 3,000 at this point.  They're using a third-party lawyer to review this material.  Presumably, they'll get a log.  We'll share it.

The way this has gone, I'm not -- I won't be surprised if we're back here on a motion regarding the privilege log.  And that's going to push us -- you know -- really, we won't be able to start depositions in the case probably until January or February as it stands right now.  So I think it makes sense to bump the case forward for really -- for all of those reasons.

THE COURT:  All right.  The deadline is set for July 12th, with the understanding that I'm going to be very reluctant to move that date out again.  So do everything you can to coordinate and organize schedules to complete all discovery by then.

Which then we should address and identify the other dates.  So we have discovery due July 12th.  Were experts going to be -- need to be disclosed for the purposes of summary judgment

motions -- dispositive motions?  And, if so, do you want to take care of discovery disclosures prior to -- prior to dispositive motions?

MR. RIZZO:  I'm trying to think back to the original order.  I think the way we set it up originally was we would close fact discovery and then do expert discovery and then we would do the dispositive things.

THE COURT:  Yeah.  Yeah.

MR. RIZZO:  So...

THE COURT:  So do you want to do expert disclosures by that same date and then have rebuttals and completing expert discovery by a date following, or do you want to have expert disclosures sometime after fact discovery closes?  Ms. Skjelset I think wants to do it that way.

MS. SKJELSET:  I have a preference to have a little bit of additional time to --

THE COURT:  How much additional time?

MS. SKJELSET:  Just 30 days.

THE COURT:  Okay.  30 days for expert disclosures. Then reports -- rebuttal reports -- due -- what -- two weeks? 30 days?  What are your thoughts?

MS. SKJELSET:  Two weeks is fine for me, Your Honor.

MS. BLAESING:  Your Honor, I think we would need at least 30 days for rebuttal reports.  In the event there's expert discovery that needs to be exchanged or depositions --

time for that to take place.

THE COURT:  All right.  Well, I'll -- all right.  And then all expert disclosures -- all expert discovery completed could we say two weeks after rebuttal reports, or will we need more time to finish up whatever you need to do with experts?

MS. BLAESING:  Close of discovery following the rebuttal deadline.  Yes, that makes sense, Your Honor.

THE COURT:  So July 12th -- so it will be August 9th, expert disclosures.  September -- September 6th will be rebuttal reports.  October 4th, all expert discovery will be completed and closed out.  November 8th, dispositive motions due.

Will that timeline work?

MR. RIZZO:  Yes.

THE COURT:  Okay.

And, Ms. Blaesing?

MS. BLAESING:  Yes.  Thank you, Your Honor.

THE COURT:  Okay.  See, I knew we were going to be working together for a while.

Okay.  All right.  And then after dispositive motions are resolved -- depending on how this case is postured and to whom it is assigned -- either the case may be set for trial before me or before a district judge once it's reassigned to a district judge after dispositive motions are --

MR. RIZZO:  I think you have full consent.

THE COURT:  Do I have full consent in this case?

MR. RIZZO:  I thought you did.

MS. BLAESING:  I think there's no consent that's been filed by the third-party defendant.

THE COURT:  So --

MS. BLAESING:  Mr. Raygosa.

THE COURT:  Mr. Raygosa.

MS. BLAESING:  So that's probably why it doesn't show as full consent.

THE COURT:  Okay.  So I'll have to look into -- I don't think I can exercise magistrate judge jurisdiction with full consent in the absence of the third -- of Mr. Raygosa's consent.  So...

MR. RIZZO:  Okay.  That's fair.  And then they just need to default who they sued, and then that would probably take care of that issue.

THE COURT:  Do you know if a default is pending on Mr. Raygosa?

MS. BLAESING:  I don't believe so, but I'm not sure.

THE COURT:  Okay.  Okay.  All right.  Well, we'll -- we have some time to work through those details.

MR. RIZZO:  Yeah.

THE COURT:  And then we'll set a trial date.  If, in the event, that the case does stay with me for trial, we're probably looking at next January.  Are you thinking this would

take about the same amount of time as the one up in Portland?

MR. RIZZO:  I would hope we could do it in less time, because we have multiple -- we have four children in that case.

THE COURT:  Okay.

MR. RIZZO:  So...

THE COURT:  So two weeks versus three?

MR. RIZZO:  I think so.

THE COURT:  Ms. Blaesing?

MS. BLAESING:  I think two weeks would be appropriate.

THE COURT:  Okay.  And then we'd need a pretrial conference.  So I'm not -- I'm not -- I'm just -- I'm making mental notes.  Because what's going to happen is that I'm just going to try to make sure that I keep my January somewhat clear.  And let's aim for the last two weeks in January, just -- I'm going to -- I'm going to just block it but not schedule it.  So if you can try to keep your end of January clear for this trial.  Once we have a little bit more information about when this case will be assigned, then we can move forward with setting trial dates.

MR. RIZZO:  Thank you, Judge.

THE COURT:  And that means pretrial will probably be -- I imagine there will be quite a bit of pretrial.  I take it, it would be similar to that which is happening up in the other case?

MR. RIZZO:  Similar -- there are some similar issues, definitely.

THE COURT:  All right.  All right.

MR. RIZZO:  And maybe that case will inform -- or help to inform where this one goes.

THE COURT:  Well, maybe we should assign -- maybe I can trade some favors with Judge Nelson.  And then you won't have to travel to Eugene.

All right.  So we'll figure out pretrial -- well, we'll figure out pretrial conference.  I really don't want to have to schedule it before the end of the year, since most everybody is going to probably be blocking out time for some time off.

So it could very well be that we maybe move the trial to the first -- the last week in January, the first week in February so we can accommodate pretrial conference early enough in January, but not too early, so we can -- but early enough so I can rule and so you know what you need to do for trial.

MR. RIZZO:  Okay.

THE COURT:  Okay.  All right.  Let's go back to the joint status report.

All right.  So the Duncan/Raygosa -- I'm looking on page 1 of Plaintiff's portion of the joint status report -- the Duncan/Raygosa Certification File Inspection.

MS. SKJELSET:  Yes, Your Honor.  That was just some additional information that we thought you might want to take

into account when ruling on the OR-Kids inspection, although you've already ruled, so maybe that's less important.

THE COURT:  All right.  So we can --

MS. SKJELSET:  What that is informing of is the care and condition of other children in the home.  We believe that there is now, as of I think August 29th, an agreement to produce files pertaining to other children who were in the Duncan/Raygosa home.  I believe that that was stated in the Defendants' portion of the joint consolidated status report.

THE COURT:  Very good.  So that moves us up to page 5, I think, but let's just confirm, then, there are no issues outstanding that you need my instruction or assistance on with respect to the production of other care and condition evidence associated with other children in the home?

MS. SKJELSET:  So, Your Honor, I just want -- the Defendants have offered to produce CPS files relating to J.H. and R.H., who were the purported niece and nephew of Duncan/Raygosa, who were there at the time of certification, and then, later on, they were subjects of the CPS report that we only found at inspection of the certification file, because it was not produced to us in connection with the certification file.

So now the Defendants are offering to produce CPS files relating to those children.  Our hesitancy in accepting that is that if there are other files relating to those children,

because those children were only introduced to this state and to DHS through Duncan/Raygosa, all of the files, whether it's voluntary service agreements, whether it's some informal processing that the agency has done that's not necessarily a formal CPS investigation, should be produced.

THE COURT:  And is there -- do you know if there's a dispute about that?

MS. SKJELSET:  All I know is that I asked for the entirety of their files, and I have heard that I will receive the CPS files.  That's all I know.

THE COURT:  Okay.

MS. SKJELSET:  I don't know how everything -- how everything is filed or categorized, if that makes sense.

THE COURT:  Okay.

Ms. Blaesing?  Or Ms. --

MS. BLAESING:  Yes.

THE COURT:  Will it be --

MS. BLAESING:  I'll respond to this, Your Honor.

Yes, Your Honor.  Our interpretation of what Plaintiffs have asked for in the request for production in your prior ruling -- my understanding from the agency is that's what exists is a CPS file.  Because these children were never in custody of DHS.  So there's not a biological parent file permanency file for them.  What exists is the CPS file.  So that's what we're collecting.

I believe their names were already ran as search terms, if I'm not mistaken, for the email collection.  So there's not some other file that I know of sitting here right now that we're withholding.  You've just described what it is that we're collecting and we're going to produce to them.

THE COURT:  Okay.

MS. BLAESING:  And if I may just speak to the point about -- I think Ms. Skjelset mentioned that the -- when they did the hard copy inspection of the certification file, it was the first time they had seen this CPS report related to the child.  And that has now been produced to them in our production last week.  The reference in the report to where it was omitted was in the probate case.  That was the separate state court case that was subject to a different protective order and different objections made there.  So it has been produced in full in this case.

THE COURT:  Okay.

MS. SKJELSET:  I don't necessarily want to ask questions of the Defendants in this posture, but I am not certain that it's been produced in connection with the production of the certification file.  The production -- the certification file -- the hard copy certification file -- which we asked be produced to us in its entirety, and unredacted in our RFP, was reproduced in this case on August 10th, absent that screening report.  And it was only at inspection that we

found that.

I haven't had a chance to look at the August 31 production in its entirety, because it just occurred, and it was thousands of pages. But the only -- the only time I could see that screening report was in connection with the assignment of Ms. Williams, who was the CPS investigator assigned to investigate that case. So it may be true that they have now produced the entirety of the certification hard copy file. But it wasn't produced on August 10th.

MS. BLAESING: It was produced on August 31st. We had committed to substantially complete all production by September 1st. And so it was in a very large production that we -- that we made on the 31st. So --

THE COURT: Okay.

MS. BLAESING: -- understandable that not all of that's been reviewed yet. It was pretty voluminous.

THE COURT: So perhaps after your review of this latest submission, if there's an issue, then confer and bring it back to my attention. But it sounds to me that -- that the Defendants have complied by providing that which they have in their possession or that which exists, which is the CPS files and nothing else, I guess associated with those -- with those other two children.

MS. SKJELSET: I believe that they have not produced the CPS files regarding those other children, and they have not

produced case files regarding other children in the home.  They have committed to doing so now as of August 29th.

THE COURT:  Okay.

MS. SKJELSET:  But there is no expected date of receipt of those documents.

THE COURT:  All right.  All right.  All right.  So thanks for sort of narrowing down and clarifying what we're talking about.  All right.  So the CPS files and other files of other children in the home.

And tell me again, Ms. Blaesing, where the Defendant is with respect to those documents.

MS. BLAESING:  So for those files for the two other children with the last initial "H," and then the seven other children who were, for some brief period of time, in the home, we did reach agreement --

THE COURT:  Okay.

MS. BLAESING:  -- in conferrals, since the last status conference, on producing those.  So we're in the process of collecting them, reviewing them, and we will produce them.

I don't have a date certain for production yet.  I think we can get it all produced by the 1st of November -- probably sooner -- and we'll do it on a rolling basis.  Some of the files are just pretty voluminous and are hard copies, so they have to be scanned, and then we'll produce the relevant portions.

And I think we've reached an agreement on pretty much everything, though maybe in our two sections of the report there was some slight nuance in what we were proposing for time frame of what we were going to produce.

THE COURT:  And you're proposing November 1st?

MS. BLAESING:  Yes.  And I think we -- and when I say the dispute about time frame, what I'm referring to is we -- based on your order -- we're going to produce case notes from the time the kids were in the Duncan/Raygosa home and then look at subsequent case notes.  And if there's any reference to the time period when they were in the Duncan/Raygosa home, we'll produce those.  And I think what Plaintiff proposed was we just produce six months of case notes.  And we're proposing doing a more targeted review and search.

THE COURT:  Okay.  So six months versus something more targeted, but what does that "more targeted" mean and look like?

MS. BLAESING:  Well, for some of these children, I think they were maybe only in the home a few days or even less than a week.  So six months is a pretty arbitrary period to then produce all the case notes for that period when they were in a different home.  But we will go through and review it.  And if there's any relevant reference to the time when they were in the Duncan/Raygosa home, we will produce it.

THE COURT:  And I do recall a similar discussion the

last time about what was relevant was that which was occurring -- or the case with respect to the children's staying -- their stay at that home, not other cases -- not cases that preceded their arrival at that home.

Is that right, Ms. Skjelset?

MS. SKJELSET:  Oh, yes, Your Honor.  This is regarding what happened afterwards.  So I suggested that we receive the case notes for the children who were in the home during their period of confinement in the home and then for a six-month period afterward.

THE COURT:  All right.  So it's not the preceding six months.  It's the time from -- the time -- the time starting from when they arrived at the home and then six months following that date?

MS. SKJELSET:  Six months following the date that they leave the home.

THE COURT:  Okay.

MS. SKJELSET:  In my experience, there are often reports of abuse that come --

THE COURT:  Come out --

MS. SKJELSET:  -- after a child gets settled in a subsequent home.

THE COURT:  Okay.

And then you're proposing something different than that?

MS. BLAESING:  Yeah.  Instead of just limiting it to

six months, if there's nothing that comes subsequent to their removal from the home that references the time they were in the home, we wouldn't produce it.  But if there's any reference -- and even if it goes past six months -- then we would produce it.  So instead of just setting an arbitrary six months, we will actually review the pages and produce what's relevant.

THE COURT:  So rather than a time limit, you're talking about a subject matter limit?

MS. BLAESING:  Yes, Your Honor.

THE COURT:  Ms. Skjelset?

MS. SKJELSET:  My concern, Your Honor, is that sometimes when I look at case notes regarding what --

THE COURT:  You --

MS. SKJELSET:  -- children are saying or experiencing subsequent to a placement, my interpretation -- or an expert's interpretation -- of it might be that it relates to a concern in a prior placement when --

THE COURT:  Okay.  And is your -- in your experience and at least with respect to your understanding of how your experts may be reviewing any of these documents, that six months is an appropriately narrow -- is an appropriate time and a sufficiently narrow time so it's not so excessive that if anything is going to likely be disclosed, it would be happening within that time period?

MS. SKJELSET:  I mean, often children report years

later.  But as a nod to the request of the Defendants to limit our discovery, I thought six months was appropriate.

THE COURT:  Okay.  All right.  So if the only -- well, if the need for clarification rests on this issue, and then everything else will fall into place, then I will authorize the -- and order -- the production of any of the data -- documents -- relating to the -- from the time in which a child entered the home -- from -- including the time from which a child entered the home and then six months after the child left the home and was placed elsewhere.  So it will be a time limit factor rather than a subject matter limit consideration.

All right.  Where -- what page are we on, Ms. Skjelset?

MS. SKJELSET:  Well, I think we can use the care and condition production to also discuss the "attorneys' eyes only" designations and redactions since that is an issue with regard to these documents.

My goal with targeting what we were asking for with regard to these documents regarding other children who are placed in the home was to request documents that were relevant, and hoping that we wouldn't need to be subject to mass amounts of documents, and also that the Defendants would not have to redact significantly.

And it appears as though the intent to redact information regarding these children's biological families -- however, we

don't see why this is necessary in the -- at this point in time -- because they are marking absolutely everything that relates to any other child in the home as attorneys' eyes only.

And that is something that we do object to, because we think it hampers our ability to communicate with our client, who is an attorney -- a civil rights and criminal attorney in Oregon in good standing -- communicate with him what we're learning about concerns regarding other children in the home, and to potentially convey those documents, or information gained in those documents, to important witnesses from DHS.

THE COURT:  So the solution can either be to remove "attorneys' eyes only" or to expand who can -- who can review the documents --

MS. SKJELSET:  Exactly.

THE COURT:  -- under the attorneys' -- AEO -- designation.  So it could include Mr. Levi or Mr. Levi.  How do I pronounce --

MS. SKJELSET:  Levi, Your Honor.

THE COURT:  Mr. Levi.

MS. SKJELSET:  Yes.  I always thought it was "Levi."

THE COURT:  Okay.  But it is "Levi"?

MS. SKJELSET:  But it is "Levi."

THE COURT:  All right.

MR. RIZZO:  Judge, if I may, this is an issue that I reserved with Ms. Schneider.  The Court may recall our

correspondence. Because I thought I saw this coming with Ms. Schneider. I thought we had worked this out. She said this would not be excessive. And it turns out it is excessive.

THE COURT: Okay.

MS. BLAESING: May I respond, Your Honor?

THE COURT: Yes.

MS. BLAESING: Well, I think the crux of maybe what Mr. Rizzo's referring to here is Defendants had initially taken -- had taken the position and objected to producing information about nonparty children. So if there was a commitment that there wouldn't be a lot of things designated attorneys' eyes only --

THE COURT: It preceded that.

MS. BLAESING: -- it preceded that. Right. So documents that pertain to J.C. are confidential, not attorneys' eyes only. And Plaintiff's counsel raised with us that some documents were incorrectly designated. So we committed to rereview them. We did. We rereviewed almost 3,000 documents in the last two weeks and have downgraded -- actually more than 3,000 -- 3,400 documents we've downgraded. So if they pertain only to J.C. --

THE COURT: How many of those documents that were reviewed -- the 3,400 -- were downgraded to a different class of confidentiality?

MS. BLAESING: So I believe we reviewed 3,700,

approximately, and we downgraded 3,400.

THE COURT: Okay.

MS. BLAESING: So we looked at everything that hit on J.C., Z.C., their biological parents -- their names -- Duncan/Raygosa. All of those were downgraded to confidential, because we understand those are things that the Plaintiff -- Mr. Levi -- or the young woman whose shoes he stands in place of -- would be able to view those documents.

THE COURT: So, now, at least as of the date of -- as of today's date, of that which have been produced, there's only about 300 or 400 documents that are still AEO?

MS. BLAESING: There are -- there are more than that. I don't have, at my fingertips, how many are currently attorneys' eyes only. But there are quite a few emails that we produced that reference other children in DHS care. Not just these other nine we're talking about, but documents about them. And then there are files that we're going to be producing regarding these other children that were in the home that also talk about their biological parents, why they were brought into care, and have quite a bit of sensitive information.

I mean, that was why State Defendants objected to producing it. And so our position is we should be able to designate those as attorneys' eyes only, because those, the Plaintiff is not entitled to view.

THE COURT: Okay.

Ms. Skjelset or Mr. Rizzo?

MS. SKJELSET:  Well, Your Honor, it is -- I gave examples of documents that were designated AEO.  They included training materials relating to the safe home study.  Completely not sensitive whatsoever.  They included emails that related only to my client.  It was the vast majority of documents that have been designated AEO.

And, in the meantime, we are not a huge law firm.  I'm going through these documents coding, reviewing, processing them for subsequent discovery.  And now I'm receiving D designations.  At first I was requested to go through all the documents and assert to them which ones I did not believe merited the AEO designation, which would have taken probably three months for me to compile.

THE COURT:  So what's -- what's your proposed solution?

MS. SKJELSET:  I think we strike the AEO.  I don't think it's necessary.

THE COURT:  And that's because...

MS. SKJELSET:  Because I have no intention -- if we want to include some kind of clause that says that I will not show sensitive files -- sensitive material relating to other children without appropriately redacting -- to J.C., that's fine.  But Mr. Levi should have every right to be able to look at those documents.

And my greater concern -- this is my greater concern -- is that I will get to a deposition, and I will want to show those documents to somebody who works for DHS -- or formerly worked for DHS -- it doesn't meet the requirements in the witness clause.  I think it's 7(f) -- the protective order.  And they will say, "Well, those are attorneys' eyes only, so you cannot use this document at this deposition for this witness," even though it was my understanding that, at the time, they would have had access to the document.  For instance, a CPS report.  But it's, "They're not a custodian."

THE COURT:  And then -- and are you anticipating that you may need to show some of these documents that have been designated as AEO to deponents who would not be authorized to see them if they were AEO?

MR. RIZZO:  Yes.

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  Okay.  So we're going to have to deal with this designation.  So what documents could there have been that would have been appropriately classified as AEO?

MS. SKJELSET:  What I expected from the State was that there might be very sensitive information in individual workers' personnel files that they didn't want me speaking with other DHS workers about.  And of course I would honor that.  Right?  But when it comes to the care and condition of other children, CPS reports and evaluations relating to other

children, I don't want to be hamstrung from being able to use those at deposition with DHS workers.  And it seems like that is the intent.

THE COURT:  And what about former DHS workers who may no longer be employed by DHS and therefore not subject to the same professional standards of maintaining confidentiality?

MS. SKJELSET:  Before I show it to them, they have to sign the protective order if they're marked as confidential.

THE COURT:  Okay.

MS. SKJELSET:  And I wouldn't show it to them unless they were, in some way, involved in the case.

THE COURT:  So removing AEO but maintaining confidentiality -- confidential classification?

MS. SKJELSET:  Absolutely, Your Honor.

THE COURT:  Okay.

Ms. Blaesing?

MS. BLAESING:  Your Honor, the issue is there's a whole constellation of state statutes and OARs that govern the confidentiality of these highly sensitive files.  And it -- by virtue of Plaintiff bringing this action, they are able to get access to federal discovery.  And the rules of discovery are -- in federal court -- are broader than what is permitted in the state court proceedings under the state statutes.

But J.C. and her conservator are the only plaintiff in this case.  And so the concern is that by bringing this action,

they're able to access all of these documents that would otherwise not be available.  But that shouldn't extend as far as other children who are nonparties to have access to those.

And if the concern is what documents can be shown to an employee or former employee under the protective order, I think the solution to that would be looking at if we need to revise the description of categories of people who can look at documents under the protective order.  And perhaps we need to make it clear that a DHS employee or former employee, if they sign the protective order, can look at an AEO document.  I think that would be the fix, not giving Plaintiff access to all of these files of the nonparty children to see.

THE COURT:  Well, the Plaintiff that we're talking about is Mr. Levi.

MS. SKJELSET:  Yes, Your Honor.

MS. BLAESING:  And the child who he is conservator for.

THE COURT:  Okay.  And how old is the child now, approximately?

MS. SKJELSET:  16.

THE COURT:  Okay.  And are you anticipating showing documents to the child -- minor?

MS. SKJELSET:  Very few, if any, Your Honor.  There are -- there may be some pictures.

THE COURT:  Now, are you anticipating showing

documents from other children's files to the minor child?

MS. SKJELSET:  It is -- not documents, Your Honor. But I think that the AEO designation prohibits me from discussing with her information derived from such documents.

THE COURT:  Okay.

And are you objecting to that level of disclosure and discussion with the minor, Ms. Blaesing?

MS. BLAESING:  I certainly object -- the objection is to showing the documents, yes.

Ms. Skjelset, do you think you could help me with identifying which part of the protective order you think limits you from being able to share any information learned?

MS. SKJELSET:  I believe it's paragraph 2, which includes information derived therefrom.  I don't have it in front of me right now.

It's the same paragraph that had the insertion of future clients, which we had concern about.

MS. BLAESING:  And I see it speaks to the information should be restricted solely to the litigation.

Your Honor, I appreciate we have a lot of other issues in front of you.  Is this one where you would like us to confer further on whether we can perhaps modify the protective order to resolve this?

THE COURT:  Well, will this be one of those threshold issues that might resolve other matters, or is it a standalone?

I'm fine working through this if it helps and if conferral might make it more complicated. Or if it might not be that productive, I'd just as soon try to resolve it now.

MS. SKJELSET: I do believe that this is a threshold issue that will inform not only how we perform our depositions and how we prepare our exhibits for our depositions, but also it relates to what I believe is our concern about the supplemental response to the first interrogatory, which points then to documents that are marked "AEO." So the question is, can we use those documents in order to support or confirm what is being said or explained in the answer to the interrogatory?

Does that make sense, Your Honor?

THE COURT: I think so. Sometimes the comprehension -- comprehension is fleeting.

MS. SKJELSET: And I also believe that Mr. Rizzo is more prepared to speak to how the AEO designation and their pointing to AEO designated documents in the supplemental answers to the interrogatory, rather than simply answering the interrogatory, will preclude us from being able to connect the dots between who knew what when, and to use it at deposition, or to use it in evidence.

THE COURT: I'm beginning to appreciate that the AEO designation is just simply a -- well, a designation that becomes more unworkable given some of the nuances here. And I'm interested in crafting something that more substantively

addresses that, which I think is otherwise legitimate information to discuss.

So, for example, I don't see any reason why the minor -- J.C. -- should be shown the documents, but I can appreciate the need for discussion with the minor. And I think Ms. Blaesing has indicated that the primary objection has been the disclosure or showing of documents, at least as it related to somebody -- not an attorney.

I also have less of an issue with Mr. Levi being able to review these documents, generally. Also, as an officer of the court -- a lawyer -- I would hold that person to an incredibly high standard of compliance.

So beyond -- I mean, so if we can -- addressing the discussion as it relates to just those two individuals, then I think we can craft some carve outs. But then if there's something else beyond those two people -- or other people beyond those two people -- then I think Ms. Blaesing has indicated a willingness to carve out exceptions to deponents, particularly those who work or have worked for DHS. And maybe we can -- you can work through those details.

So maybe -- and now as I'm thinking about it, I guess I'm less concerned -- AEO might need to be removed, because, on its face, it means "attorneys' eyes only." But I think that a substantive restriction should still be determined. I mean, so we can call it "confidential," but address the interests and

needs of both parties to ensure that these documents don't end up somewhere where they shouldn't be.

MS. SKJELSET:  Absolutely, Your Honor.

MR. RIZZO:  That would move -- that would move the discovery forward.

THE COURT:  Okay.

MS. BLAESING:  But, Your Honor --

THE COURT:  And it also helps eliminate the need for reviewing documents to -- just to reclassify something as AEO or not.

MR. RIZZO:  And consistent conferrals.

MS. BLAESING:  So, Your Honor, is what you're envisioning that -- that the protective order, instead of having two tiers, have one that's only confidential, or that we still have two tiers, but instead of calling it "attorneys' eyes only," we call it something different, like "highly confidential"?

THE COURT:  Super top secret.

MS. BLAESING:  Yeah, precisely.

THE COURT:  If I were to --

MS. BLAESING:  To avoid this confusion around who's an attorney and who's not and add some specificity about what Mr. Levi's entitled to see.

THE COURT:  That would be fine.  If having the classification -- I mean, they're indetermined classifications,

which is great.  Because then you can define who gets to see tier one and tier two without having, for example, attorneys' eyes only on its face indicating what that definition is, which, you know, becomes incredibly limited.  So I like your suggestion.

Any issue with that?

I mean, my only concern -- I'm going to back up a little bit.  My only concern is I don't want us to be caught up in disagreement about classifying a document.  I'm more interested in giving you a chance to determine who gets to see the document or who gets to discuss the content of a document with -- who gets to receive the discussion.  So, for example, with the minor, it's discussion only, unless it's a nonconfidential document.

MS. SKJELSET:  Right.  That's fine with me, Your Honor.  But there are other individuals who may have had a right to the document, or to receive the document at the time, and may never have received it.

THE COURT:  Well, who gets to make that determination?  And I don't think it's -- I don't think it's the law firm.  Right?  I mean, if they have a right to the document, then maybe they can go request it.

MS. SKJELSET:  Well, for instance, a juvenile attorney who represented a child in juvenile court, contemporaneously with the report of abuse, who should have had

a right to receive that report at that time.

THE COURT: But not had not been -- but had not received it?

MS. SKJELSET: But was not provided that.

THE COURT: Okay. Well, I'm not -- I'm not inclined to confer authority for your law firm to be an arbiter of that decision. If somebody else thinks they need a document, then they can make the appropriate demand and disclosure.

MS. SKJELSET: What if they never knew about it? Part of proving these cases is showing what DHS did and did not disclose at various times. And sometimes --

THE COURT: So what -- of what benefit to the litigation of this case would there be in providing these documents to attorneys of other juveniles?

MS. SKJELSET: Well, that I do not know at this moment in time, because I don't know what was happening with the other children.

THE COURT: So, I mean, are we dealing with a potential hypothetical scenario? I'm trying to understand what the -- what the concrete problem is here about other people not knowing -- other children not relating to this particular case -- and their attorneys not knowing some information that should have been produced to them but had not been.

MR. RIZZO: I can speak to that from my perspective, Judge.

THE COURT:  Sure.

MR. RIZZO:  And I think I want to start with the foundation for this argument, which is we're hearing about state law.  State law confidentiality, we're told, is governing this issue.  And it doesn't, because this is a civil rights case.

And beyond Mr. Levi and beyond the child -- and I confess I hadn't thought about the former employees -- but we have current DHS employees and upper management people -- the program manager, for example -- who isn't referenced in the document, didn't sign it -- right -- maybe never saw it, or did, but left no trace by virtue of how they entered it into the OR-Kids system.

We want to be able to show -- right -- those documents to witnesses like that.  And if it's a -- and I'm working my way to the juvenile counsel -- and if it's a former employee, we're going to honor the order.  To the extent the document is confidential, we can only use it the way the order says we can.

I think with respect to the juvenile counsel is we're concerned that, for example, in this juvenile proceeding -- the underlying juvenile proceeding -- that the juvenile counsel for the children wasn't fully informed about the abuse occurring in the home, which may well have included -- and we now know -- concerns of neglect and abuse regarding other children.

And I understand it's an extension.  But it's related in

the sense that that person -- two things -- that person had a right to the information.  Certainly the juvenile court judge knew or should have known about it -- right -- had it been presented.  And if we can show that that information was available, and it wasn't presented, I do think that relates to our case.  Because it relates to the deliberate indifference under civil rights of the defendant -- individual defendants.

THE COURT:  So let me ask this:  I mean, the question is, is are you -- are you considering the idea -- the -- a communication to counsel for these other children, "Hey, did you get this information?"  I mean, would that be the question?  "Did you ever get this information?"

MR. RIZZO:  Right.  And I think that can come up in one of two ways:  In an interview with a lawyer or ultimately in a deposition, if we have to do that.

THE COURT:  Well, I mean, could there be a blanket question of all -- independent of the actual documents -- that would be posed to counsel for any of these other children before you even knew whether there were documents, you know, evidencing -- evidencing child abuse?

"Did you have information in your files that you can confirm evidence of abuse?"  Because then it -- decoupled from the evidence itself -- the discovery itself -- then, you know, you get that information separate from having to disclose it -- any information -- to those attorneys.  And then you have your

comparators.

MR. RIZZO:  I think we could do that.  I think it would be very helpful to get these other files first -- right -- with the other kids so we know if we have --

THE COURT:  Well, but the point is that if you know, then you're only going to ask the people -- the attorneys -- whose clients may have been abused.  But if you ask the attorneys of all the other children whether there was evidence of abuse or not -- "Did you have evidence during the course of representing this child that they were abused" -- then you have, you know, independent information potentially secured, separate from whether you had prior knowledge from the documents discovered by DHS, that they did or didn't.

MR. RIZZO:  If they answer "yes."

THE COURT:  And if they say "yes" --

MR. RIZZO:  Right.

THE COURT:  -- then -- and if they say "no," and you have it, then you also have information about -- without ever disclosing to them that you have the information.  But you would have the information to show that they said, "No, we didn't," but you had -- but they produced -- the State produced documents that said that there was evidence of it.

I mean, so there's a way to go about it without having to probably -- because I think there's a problem, too, that I think Ms. Schneider had raised -- and it might be in the

paragraph too --

MR. RIZZO:  Mm-hm.

THE COURT:  -- which is the idea -- I think there was a concern of -- to commercial -- commercializing or --

MR. RIZZO:  Right.

THE COURT:  -- or soliciting.

MR. RIZZO:  Right.  Our clients are competing with --

MS. BLAESING:  Competitive Purpose.

THE COURT:  What was that?

MS. BLAESING:  I think the protective order uses the language "competitive purpose."

THE COURT:  Yes.  And so, I mean, I think the idea of showing documents to other parties before they were necessarily aware of it potentially implicates that restriction.  But doing it the way that I suggested doesn't, because you're gathering that information independent of whether those records say so.

MR. RIZZO:  And then if there's a deposition, and the document remains AEO, then we can't -- we can't even discuss the meaning -- the import -- right -- of the --

THE COURT:  Deposition of whom?

MR. RIZZO:  For example, one of the attorneys.

THE COURT:  Well -- so you might -- you might end up deposing attorneys from other children?

MR. RIZZO:  I don't know.  I'm just -- I think that's a potential that --

THE COURT:  Sure.

MR. RIZZO:  -- right -- that --

THE COURT:  I mean, yeah.  I guess lots of things are potentials.

MR. RIZZO:  Yeah.

THE COURT:  And you know how to find me.

MR. RIZZO:  Okay.

THE COURT:  I'm not hiding down here in Eugene.

MR. RIZZO:  No, I know.

THE COURT:  So we could take it up if it becomes a significant enough issue, and we can go from there.

MR. RIZZO:  So our paramount -- because, again, that is a hypothetical, Judge.  I agree.  Our paramount concern is the use of these documents with the DHS people -- the employees who weren't named --

THE COURT:  I think that you should be able to.

Is there any reason why this information should not be part of discussions with DHS employees?  Ms. Blaesing?

MS. BLAESING:  Your Honor, I think the protective order is currently written -- in paragraph 7(f) -- does contemplate quite a few people that can look at these documents in a deposition.  So the authors, the recipients, a custodian, a person who possessed or otherwise knew the information, or a person referenced in the document.

So there's quite a bit of categories here that I can

imagine -- if there's a document and a DHS worker is asked about it in a deposition -- if it's marked as AEO, they can still speak to it if they were on the email, if they knew about or possessed the information in the email, if they're referenced in it.  There's quite a few avenues here.

THE COURT:  Okay.

MR. RIZZO:  But the issue is if they weren't any of those, like a program manager within the branch.

THE COURT:  Yeah.  So I'm not -- I'm having less of any heartburn about including those people.  I mean, so I'm getting concerned that -- I mean, there's a level of detailed classification that might just simply allow or disallow certain people that seem obvious to me should be part of the discussion if need be.

I mean, if they're an employee of DHS, why is that not enough to simply cover everybody?  Or are there people that would be employees of DHS that -- I'm having a hard time appreciating this -- are there employees of DHS that should not -- should not be deposed with discussion of this information?

MS. BLAESING:  No.  I don't think so, Your Honor. And it may just be that that wasn't fully contemplated in the language here.  I don't know.  But if it's a DHS document that DHS produced, and designated AEO, a DHS employee should be able to look at it in a deposition and answer a question about it.

There might be other objections to why they have personal knowledge of the document.

THE COURT:  Sure, of course.  So I'm not seeing a dispute on substantive grounds, but potentially on semantic grounds here, which leads back to probably the problem of just simply designating things as AEO.

MS. BLAESING:  Well, I think paragraph 8 of the protective order allows that additional persons can be stipulated by counsel or authorized by the Court.  So we can reach a stipulation or authorization by the Court that the AEO can include employees of DHS.

THE COURT:  Right.

MS. BLAESING:  And former employees if they sign the protective order.

THE COURT:  Yeah.  And I'd be fine with that, as long as we all agree never to actually speak out the full words that "AEO" refers to.  Because I don't want anyone to say, "Well, this was just attorneys' eyes only," but then now there's these exceptions that don't include any attorneys.

And that's fine.  I want to be pragmatic about it.  But I don't want it to come back and bite us because the record wasn't clear enough that "AEO" really doesn't mean "AEO, attorneys' eyes only."  It means, you know, extremely, highly confidential, which, frankly, probably makes more sense then, at that point.  I'm seeking clarity.

MR. RIZZO:  Right.

THE COURT:  How do we move -- what do we need to distill on this topic to move along?

MR. RIZZO:  My motion would be to rid the order. We're officers of the court.  Everybody knows this material is confidential.  Everybody knows that anybody who sees it, if they're not a current DHS employee, has to sign the order, including our experts, including their experts.

To just give us, last night a, quote, "overlay" of thousands of documents, that have now been redesignated after we've had numerous conferrals and tried to convince them of this issue, we now have to go back -- as Ms. Skjelset was saying -- we have these systems in our own discovery software. And we've coded them "hot, cold, et cetera" documents.  Now we're taking an overlay of thousands and doing exactly what the Court's, I think, trying to figure out, is what's -- is that one now an AEO, or is that one of the ones that went away?  And do we have to keep conferring about these issues when they should be pretty straightforward?

And I think we get there if AEO is relieved from the order in the context of this case, because it's not a trade secret-type case.

THE COURT:  So -- but there are at least two different classes of documents, those relating to the children that are part of this litigation and other children.

MR. RIZZO:  Right.

THE COURT:  And the -- so I think we need to make sure -- thank you -- we need to make sure that -- that there's a carve-out for records relating to other children.

MR. RIZZO:  Okay.

THE COURT:  And so I'm -- so I'm going to tell you what I'm thinking -- then you can respond more specifically to this, Ms. Blaesing -- which is to remove the AEO designation, but to create the -- maintain the confidential designation for all the documents about which we have been speaking.  And then there's a separate classification for records relating to other children.

Records relating to other children shall not be -- shall -- no -- we should talk about what that means.  But the specific context we've been discussing it was Mr. Levi can review these documents.  And for all documents, both confidential and other children's documents, the minor child -- Plaintiff -- won't be shown these documents and will -- and there will be -- and that the Plaintiff's counsel will be allowed to have conversations with that minor child about -- now we need to fill in the blank -- about only documents relating to her file, or documents -- or subject matter arising out of documents relating to other children's files.

My first thought is that the latter is "no."  But, Ms. Skjelset, I need to understand more about how you're, you

know, moving the case forward on that.

MS. SKJELSET:  Well, Your Honor, I don't intend to show her documents.  But she was living with these children when these abuse reports were coming through.  So the information in those documents is something that I will need to discuss with her.  Whether or not I inform her of anything -- I don't want to be precluded from asking her sort of more direct questions because I derived information from the documents relating to other children who were her foster siblings.

THE COURT:  And that involves asking her specifically about certain children?

MS. SKJELSET:  Well, it would have to.  She lived with them.

THE COURT:  All right.  I'm just wanting to make sure that's what we're talking about.

MS. SKJELSET:  Yes.

THE COURT:  Okay.

Ms. Blaesing?

MS. BLAESING:  I'm trying to think if there's any kind of distinction we can draw to thread the needle here so Ms. Skjelset can speak to her client, ask questions, et cetera, without being able to just divulge the content of all of the documents that pertain to other children.

Certainly asking questions makes sense, but how do we preserve, then, the spirit of the protective order of having a

category that's highly confidential if an attorney can then just describe the document --

THE COURT:  Yeah.

MS. BLAESING:  -- to someone who's not covered by it?

THE COURT:  And I'm envisioning -- and, Ms. Skjelset, tell me what you're thinking -- is that you're going to inform yourself about the nature of those documents, but you're -- I can't imagine -- well, I'm not imagining that you would, you know, sit down with this young person and say, "Well, you know, there are these 30 pages in so-and-so's file that describe this, this, this, and this," but you --

MS. SKJELSET:  "And by the way, this is her Social Security number."

THE COURT:  Right.

MS. SKJELSET:  No, Your Honor, that's not --

THE COURT:  Right.  But that you would -- the documents would inform the kinds of questions and conversation that you would have with the young person.

MS. SKJELSET:  Exactly, Your Honor.  And I feel like that is encroaching onto my client relationship to preclude me from being able to even ask those types of questions, especially when J.C. may have been recorded as saying something in connection with one of these reports.

THE COURT:  And so the conversation can include, you know, "When it came to R.D.," -- I'm just making up the

initials here -- "you know, you were there when things were happening.  Did you actually tell somebody, quote, X, Y, Z?"

MS. SKJELSET:  Exactly, Your Honor.

THE COURT:  Okay.  I mean, I can't see how you would be able to prosecute your case without being able to clarify those things.  So, I mean, I'm happy allowing you to try to maybe carve out some language that simply says, you know, you can't cite specific pages and details that are unique to the particular documents.  But the general subject matter and, you know, quotes that people have said are appropriate for you to be able to explore with your client what happened.  So there's -- so there's that classification.

And then there's the issue about how to deal with juvenile counsel of these other children, which is you're going to conduct your double-blind -- double-blind questionnaire -- surveying -- Mr. Rizzo, without any knowledge on your part about whether there was actual abuse, as disclosed by any of these records, before you ask questions.  And then you'll have your data that you can compare to the actual documents that are ultimately produced.

MR. RIZZO:  Yes, Your Honor.

THE COURT:  And then -- and then if there comes a need and a time for you to discuss things in depositions with these other people, and you aren't able to resolve to scope of that questioning with Ms. Blaesing, then we talk again.

MR. RIZZO:  You're still here.

THE COURT:  I'm still -- I'm still here.

MR. RIZZO:  Thank you, Judge.

THE COURT:  Ms. Blaesing?

MS. BLAESING:  I think the other category that we discussed would be DHS employees and former employees.  And I'm referring that -- that you intend that we would have them also be able to view highly confidential documents.

THE COURT:  Yes.  Yes.

MS. SKJELSET:  After signing the protective order, Your Honor.

THE COURT:  Yes.

I'm glad we didn't leave this to go to something else.  I think we needed to hammer this out.

MR. RIZZO:  Mm-hm.

THE COURT:  There were issues about cell phones.  Do we want to talk about those?

MS. SKJELSET:  I think before we move on to that, Your Honor, if I may?

THE COURT:  Yeah.

MS. SKJELSET:  The confidential reporter redactions --

THE COURT:  What page is that?  Or what pages can I find that in?

MS. SKJELSET:  That follows, from the AEO, page 15.

MS. HOFFMAN:  And page 37, Your Honor.

THE COURT:  Say again?

MS. HOFFMAN:  Pages 15 and 37, Your Honor.

THE COURT:  All right.  So it includes also --

MS. HOFFMAN:  Yes.

THE COURT:  -- the Defendants' information?  Thank you, Ms. Hoffman.

MS. SKJELSET:  And this was the issue that I think Ms. Blaesing wanted to start off with, because it was the low-hanging fruit.

THE COURT:  Well, when it's pages 15 through 37, I don't think --

MS. SKJELSET:  No, Your Honor.

THE COURT:  Unless it's a low-hanging watermelon on the ground that's really hard to pick up.

MS. HOFFMAN:  I'm sorry.  Your Honor, I should clarify.  It's not 15 through 27, it's 15 and 37.

THE COURT:  Ah, right.

MS. HOFFMAN:  So a lot of material between --

MS. BLAESING:  Comma.

THE COURT:  Okay.

MS. SKJELSET:  And --

THE COURT:  And there's an "and," not "through."

MS. HOFFMAN:  Correct.

THE COURT:  All right.  I appreciate that.  So maybe

it is low-hanging fruit.  So talk to me about this.  And then I'll -- and, Ms. Hoffman, are you going to be talking on this point, too?

MS. HOFFMAN:  Yes, I am, Your Honor.

THE COURT:  All right.

MS. SKJELSET:  So the Defendants have redacted all confidential reporter information --

THE COURT:  Mm-hm.

MS. SKJELSET:  -- on the child abuse reports that are being produced to us in discovery under the concerns of state law confidentiality.  It is our position that those people are witnesses, particularly with regard to reports of abuse in Duncan/Raygosa's home.  That there's no pending investigation, so there's no concern of a compromise of a child abuse investigation.

THE COURT:  And is there a difference between those who may have been a neighbor reporting versus DHS employees who reported?  I think, as I understood, the way things were discussed, that -- I mean, that -- I think, in the Plaintiff's estimation, the idea that if it was a confidential reporter who was a DHS employee, there should be no question about disclosing that information and not redacting.

MS. SKJELSET:  Absolutely, Your Honor.

THE COURT:  And so maybe that's the low-hanging fruit first.  Maybe we can take that one up.  Is there an issue about

confidential reporter as DHS employee -- or a DHS employee as confidential reporter?

MS. HOFFMAN:  Your Honor, I'm going to reframe the question just a little bit.  Because, actually, the low-hanging fruit is really that, at the end of the day, this just comes down to the fact that DHS needs a court order to unredact this information.

THE COURT:  So ordered.

MS. HOFFMAN:  There's a constellation of statutes and OARs that require it to remain confidential.  We take that really seriously.  The statutes explicitly say we need a court order.  And so that is actually the low-hanging fruit and not the particular category of reporter.

THE COURT:  Okay.  So, at least as it relates to any confidential reporter, whether a neighbor or DHS employee, the state requires an order from the Court?

MS. HOFFMAN:  That's correct.

THE COURT:  Okay.  Ordered.

Now, in state court, I'd do it from the bench and rule, but I think you need something in writing; right?

MS. HOFFMAN:  Yes.  We would appreciate that, Your Honor, if you could put it in writing.

THE COURT:  All right.  So, by the way, I think, Mr. Rizzo or Ms. Skjelset, I'd like for you to draft a proposed order that reflects everything we've been addressing.  And then

confer with Ms. Blaesing and Ms. Hoffman as to form, so that way they can present it to me for signature.

MR. RIZZO:  Okay, Your Honor.

THE COURT:  Thank you.

That was low-hanging fruit.  Thank you, Ms. Hoffman, for keeping me from trying to reach higher when I didn't need to.

MS. HOFFMAN:  You're welcome, Your Honor.  There's no need to assert yourself so close to lunch.

THE COURT:  Oh, we're not close to lunch.  We're --

MR. RIZZO:  Just --

THE COURT:  You thought we were going to break.

MR. RIZZO:  Just to clarify, all the topics we're discussing today are in this order that --

THE COURT:  All the topics.

MR. RIZZO:  All right.

THE COURT:  So we'll do sort of a universal order that resolves that which we've discussed, including whatever that first topic was.

MS. SKJELSET:  The motion for reconsideration.

THE COURT:  Thank you.  And then everything else. Okay.  Now what else, Ms. Skjelset?

MS. SKJELSET:  On to cellular phones, Your Honor.

THE COURT:  Yes.

MS. SKJELSET:  So we found out -- in connection with the preparation of this report -- we received the letter from

Ms. Hoffman on August 31st indicating that most of the text messages for the relevant time period were likely erased. And the letter has some serious -- raises some serious concerns that we have yet to confer about, because it is such new information to us. Our concerns are, one -- well --

THE COURT: Well, it's a spoliation issue, depending on when there was notice. How is it that you want me to address any of that today in the absence of a motion?

MS. SKJELSET: I laid out, on page 10 of our joint status report, what we asked the Court to consider to further order.

THE COURT: There are three items here.

MS. SKJELSET: Yes, Your Honor. So with regard to the first item, there are forms that I've seen in personnel files, typically, that are also available online and are required under the DHS OHA policies that an employee needs to fill out and a manager needs to sign prior to receipt -- replacement -- of a mobile phone device. And I haven't seen those forms.

The Defendants' position is that they don't have to produce those forms to us, because it wasn't responsive to any requests for production. But because the phone list that we've received thus far is only for active employees and not for prior employees, we think that the forms themselves would be instructive in what phone the individual custodians had at that

period of time, when it was destroyed, the information on it was destroyed, and who authorized it.  So we're asking that they produce those documents.

THE COURT:  And is that sort of -- I mean, are you making an oral request for production at this point?  I want to make sure I understand how this is being framed.

MS. SKJELSET:  Well, we had asked for the complete personnel files.  Typically, in my experience, those forms are in the personnel files.  It appears as though they're contained elsewhere.  In the August -- in the July 5th hearing, Your Honor actually asked that they produce a phone list with numbers that existed at the time.  They have not produced a phone list of numbers that existed at that time.  Instead they produced a phone list of numbers that currently exist.  And I think that these forms would respond to the Court's July 5th order.

THE COURT:  Okay.
   Ms. Hoffman?
   Is this --

MS. BLAESING:  I'll be responding.

THE COURT:  Okay.

MS. BLAESING:  Yeah.  Thank you, Your Honor.  So regarding the forms, we did not locate those in the personnel files.  We've produced the personnel files.  They weren't in there.

THE COURT:  And do they exist somewhere else?

MS. BLAESING:  We have not been able to find them. We have searched for them.  We have not been able to find them.

THE COURT:  And we're talking about the MSC 1496 and the MSC 0050 forms?

MS. BLAESING:  Yes.  We are continuing to search for them.  And if we find them, we will produce them.

THE COURT:  Okay.

MS. BLAESING:  But we have not to date.

And regarding the phone list, we've searched for a phone list from the relevant time period -- didn't find it.

THE COURT:  And that's Item No. 2, your January 2016 --

MS. BLAESING:  No. 2, yes.  But we found a current telephone list that includes many -- not every single one -- but many of the custodians who still work in Lane County.  And so we've produced that.  And we've also produced the personnel files of the named Defendants, which we believe includes cell -- telephone numbers in those files.  So we've produced what exists.  And I understand there are things that Plaintiff's counsel think ought to exist, and we haven't been able to find them.  But we've produced what we can find.

THE COURT:  And then Item 3, the Defendants cooperate with a forthcoming request for a records custodian and Rule 30(b)(6) deposition on the topic of phone records.  Is

that --

MS. SKJELSET:  Yes, Your Honor.  How records are -- I think the topics would be how phones are or were issued at that time period.

THE COURT:  All right.

MS. SKJELSET:  The policies that governs those, who was in charge of it, how they were replaced, and what happened to information when people were on notice of a lawsuit.

THE COURT:  Any issue with respect to --

MS. BLAESING:  I do, Your Honor.  Defendants object to this.  And I think this issue is not before the Court right now to order us to a deposition.  There's been no deposition noticed.  Presumably, if it's a 30(b)(6) deposition, it would have to enumerate topics.  Defendants would need an opportunity to review that, confer, object.  We may move for a motion for protective order.

It's very premature here.  They are still reviewing discovery we've produced.  We've been investigating the cell phones, giving them information about what we have.  We have -- we have collected current cell phones from all the custodians.  We've -- we're searching them.  We've searched almost all of them.  We're not done yet.

So there's more to do and update.  And so it's really premature to start having discovery on discovery here where this is becoming a collateral issue.  The focus right now

really should be on merits discovery.  And I don't think that there's been a showing yet to have this kind of discovery on discovery.

THE COURT:  Okay.

Ms. Skjelset?

MS. SKJELSET:  So with regard to their current collection of text messages and data on cell phones, for some reason unknown to me, they have limited the time period that they're looking at from when the Duncan/Raygosa applied to become certified foster parents until when he was convicted. But it's my understanding that there was some fallout from his conviction and maybe concerns about --

THE COURT:  What does that mean, specifically, since I don't know the history?  "Fallout from his conviction" -- what does --

MS. SKJELSET:  Well, I've seen emails -- IM messages, mostly -- where people are more candid.  And they're concerned about an impending lawsuit.

THE COURT:  Oh, so internal fallout?

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  Got it.  Got it.  All right.

MS. SKJELSET:  And J.C. remained in care for a good portion of 2019.  I don't have the date that her term -- she was --

THE COURT:  And it sounds like you're talking about

something slightly different than what Ms. Blaesing has raised about the premature requests for Court assistance on this 30(b)(6) deposition.

MS. SKJELSET: Yeah. It's -- you're right, Your Honor.

THE COURT: Okay.

MS. SKJELSET: I don't believe it's premature for a 30(b)(6) deposition. We do need to craft the notice. But we've been hearing that it's premature for three months now. So, at some point, this topic needs to reach gestation. And I think this time is now; however, the issue that I was raising is with regard to the current collection. I don't understand why they have limited the time frame of the current collection outside of the time frame that we requested for other custodians and for ESI.

So if they are searching devices currently that the agency or the custodians currently have for documents that are relevant, I would like them to confer with us about what appropriate terms and time frame should be utilized.

THE COURT: Okay. So two issues: One is the 30(b)(6) deposition of a records custodians with respect to records. So go ahead and work through that process. And I'll leave it alone unless and until it comes back to me on some objection. Then there's this issue with respect to scope of the time frame.

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  Which is an existing discovery matter that's already in play; correct?

MS. SKJELSET:  That's my understanding.  My understanding from this very recent letter is that they've collected data from the custodians who we requested and the cell phones that they currently have.  But they cut off any requests for data to the time frame when exactly Mr. Raygosa was convicted.  And I don't -- I don't understand that.

THE COURT:  Ms. Blaesing, what can you tell me about this?

MS. BLAESING:  I don't think that we have cut off time period of what we're searching.  What -- what the -- the relevant time period we referenced in that letter is the relevant time period that custodians would be likely to potentially have had any relevant text messages, and that all of these custodians changed cell phones in between the period of when they were likely to have relevant -- potentially relevant -- texts and when the litigation hold was in place because of the tort claim notice.  So we have -- if there's any older phones, we're collecting them.  Current phones, we're collecting them.

THE COURT:  And what's the range that you're asking?  Give me dates.

MS. SKJELSET:  The same range that we did for all of

the emails --

THE COURT: Yeah. But --

MS. SKJELSET: -- which I'll tell you, Your Honor. January --

MS. BLAESING: So January of 2016 is when -- was the start date for the email collection.

MS. SKJELSET: Yes.

MS. BLAESING: And --

MS. SKJELSET: Through January of 2020.

MS. BLAESING: And --

THE COURT: Okay.

MS. BLAESING: And for text messages, we think the relevant time period starts in April, because that's when Duncan --

THE COURT: April of 20 --

MS. BLAESING: 2016. Yes, apologies. April of 2016 was when Duncan and Raygosa applied to be foster parents. And J.C. wasn't even yet in DHS's care at that point.

THE COURT: So --

MS. BLAESING: So I don't see how any texts between January of 2016 and April of 2016 would be relevant.

MS. SKJELSET: I believe that they may have been providing respite care before that period of time.

THE COURT: Respite care to J.C.?

MS. SKJELSET: Respite care to other children.

THE COURT:  Okay.

MS. BLAESING:  That's not our understanding.

THE COURT:  Meaning that --

MS. BLAESING:  I don't believe --

THE COURT:  -- it's not your understanding the Defendant was -- or the Duncan/Raygosa home -- was providing respite care to other children.

MS. BLAESING:  That's not our understanding.

MS. HOFFMAN:  That's not our understanding.

MS. BLAESING:  That's new information to us.

THE COURT:  Well, so if I expanded the range, and then you explored the range, you'd be able to confirm that. And then if there's nothing there, there's nothing there; right?

MS. BLAESING:  Presumably.  This is somewhat of a moot issue, because we -- we have not been able to collect cell phones that people had in 2016.  If we find them, we will search them.

THE COURT:  And then just to make sure that it's clear for the future, if something comes up such that there is a question about what range was to be searched, let's just make it consistent with the emails.  So January 2016 to January 2020.  I mean, I'd hate for this -- for sort of a technical oversight that would exclude something that might otherwise be discoverable to have occurred.

MS. SKJELSET:  I'm also hopeful, Your Honor -- I don't know if it's time for me to talk.

THE COURT:  Say again?  You don't --

MS. SKJELSET:  I'm also hopeful, Your Honor, that we can discuss the search terms used.  Because the search terms that I've created were really designed for email ESI.  And people communicate differently on cell phones.  It's likely more -- likely fewer terms are necessary.  All of those numbers are not necessary.  But numbers regarding -- that relate to case files or to CPS reports -- right -- are unnecessary.  But telephone numbers -- I think that we could confer on which telephone numbers are most likely to yield responsive documents.

THE COURT:  Okay.  So just simply an instruction to confer?

MS. SKJELSET:  Yes, Your Honor.

THE COURT:  Okay.  And when can we complete conferral?

MS. SKJELSET:  I would say next week.

THE COURT:  Will you be able to both confer on search terms and resolve that issue or at least bring whatever remaining dispute to my attention?

MS. BLAESING:  Yes.  And my only hesitation is I'm traveling out of state next week.  But I think if we could have two weeks, we can confer and reach an agreement.  We're open to

different search terms for the text messages.

MS. SKJELSET:  That's fine, Your Honor.

THE COURT:  All right.  Two weeks from today.  Today is September 8th, plus 15, plus 7 -- 22.  All right.  I can still multiply.  All right.  September 22nd.  So that conferral will resolve any issues with respect to search terms or at least bring them -- bring whatever remains to my attention.

And we don't need to take up, at this point, the issue of lost text messages?

MS. SKJELSET:  I don't think -- I think it's premature, actually, Your Honor.

THE COURT:  Okay.  Fair enough.

MS. SKJELSET:  I think we need to go through the 30(b)(6) or the records custodian deposition prior to that.

THE COURT:  All right.  What else is left to address in your portion of the joint status report, Ms. Skjelset?  Since we stopped addressing it page by page, I've lost track.

MS. SKJELSET:  My apologies.

THE COURT:  It's all right.  I'm easily distracted.  But I'm -- I'm hoping that you all are paying attention to what we're doing.

MR. RIZZO:  I can fill in, I think, with some moderately complex matters, if that's okay.

THE COURT:  And it's in the -- it's issues that have been raised in the joint status report?

MR. RIZZO:  Yes, Judge.

MS. SKJELSET:  All right.  Is there a page number that you want me to turn to?

MR. RIZZO:  Just give me a sec, Judge.  I'm going to jump around here.  So...

THE COURT:  And while Mr. Rizzo is looking for some things, I wanted to -- maybe a status check.  After we resolve whatever else is left with Plaintiff's joint status report, how big of a -- how many other issues remain that would be -- that need attention from Defendants' portion of the joint status report?

MS. BLAESING:  I think there is only one issue that -- remaining that Plaintiffs would like to address -- sorry, I said "Plaintiffs" -- that State Defendants would like to address regarding our first request for production --

THE COURT:  Okay.

MS. BLAESING:  -- to Plaintiff.

THE COURT:  Okay.

MS. BLAESING:  And the third-party subpoena documents from the probate matter.

If possible, we would like to be able to put more money on our parking meter before 12:08 if there will be a break.

THE COURT:  What time does your meter run?

MS. BLAESING:  12:08.

MS. HOFFMAN:  12:08.

THE COURT:  Okay.  Why don't we do that now.  So this is what I'm hoping.  And with -- let me double-check with our court reporter.

Lunch break?

THE COURT REPORTER:  I like lunch.

THE COURT:  And how long will it take for you to raise these somewhat complicated issues?

MR. RIZZO:  The one I was just going to?

THE COURT:  And I think I overhead something about a second rog.

MR. RIZZO:  Right.  Right.  I think it's -- I don't think it will take very long.  We could take them when we get -- come back -- or take them --

THE COURT:  Lay it out for me now.  And then we'll break for lunch.  That way I have something to mull over while I'm eating my PB and J.

MR. RIZZO:  We file a complaint.  They file an answer.  They allege an affirmative defense.  They say we fail to state a claim.  We sent them an interrogatory.  I thought it was straightforward.  What claim did -- is failing and why?  We get an objection that the interrogatory is seeking pure interpretation of law.  I don't believe that's accurate.  Let's put it that way.

THE COURT:  And if I -- if we broke up your interrogatory to which -- which claims have failed to have been

stated.

MR. RIZZO:  That would give us a start.

THE COURT:  Yeah.

MR. RIZZO:  And --

THE COURT:  Well, how about we -- can we take that up for a moment?

MR. RIZZO:  Sure.

THE COURT:  Are there claims that have not sufficiently been alleged?

MS. HOFFMAN:  Your Honor, the Defendants have informed Plaintiff during conferral that we intend to withdraw that affirmative defense and amended answer.  We have no intention of pursuing it.  And so we think a response to interrogatories is unnecessary, as it's an affirmative defense we intend to and hope to abandon.

MR. RIZZO:  I'm not hearing they're letting go of it.  And they're going to surprise us at trial.  And so because the interrogatory's been outstanding --

THE COURT:  Meaning that what Ms. Hoffman just told me could be walked back and said, "We were thinking about it but changed our mind"?

MR. RIZZO:  That's what I thought I just heard.

THE COURT:  I heard something more definite.

MS. HOFFMAN:  Correct, Your Honor.  I'm making a definite statement.  We have moved -- we have asked the Court

for leave to amend our answer, because it's been more than 21 days.  We need leave from the Court to do so.  We can't unilaterally --

THE COURT:  And I actually withheld leave until we resolved discovery.  So this is my fault, Mr. Rizzo.

MR. RIZZO:  No.  I would never say that, Judge.

THE COURT:  This is -- so I'm accepting your representation on the record that your amended answer will withdraw that defense.

MR. RIZZO:  But will we see it again?

MS. HOFFMAN:  So, Your Honor --

THE COURT:  Well, I suppose anything can happen again, but with leave of the Court; right?

MS. HOFFMAN:  Well, and, Your Honor, I suppose two points on that.  If we intended to resurrect the affirmative defense, we would need to replead our answer again.  We would need leave from the Court, and we would go through this process, at that time, if it ever happened.

We don't intend to do that.  It is not something we plan to do.  And, at trial, we would not make a 12(b)(6) motion.  It wouldn't be procedurally proper.  We would move for a directed verdict.  It's not a procedural event that could happen at the time of trial.  There's no risk of surprise to Plaintiffs.  We're not going to replead this defense.  We just want to withdraw it.

MR. RIZZO:  All right.

THE COURT:  So if you were offering up an oral motion to withdraw right now, and I accepted that oral motion and granted it, is that something you might be inclined to do right now?

MS. HOFFMAN:  Yes, Your Honor.  The State Defendants would move to withdraw our fifth affirmative defense for failure to state a claim under Rule 12(b)(6).

THE COURT:  Granted.

MS. HOFFMAN:  Thank you.

THE COURT:  Mr. Rizzo, you made that more complicated.

And I'm liking Ms. Hoffman, because you're taking things off my plate.  You did the other thing -- I can't remember what it was.  But the feeling that was left behind was that you made my life easier, Ms. Hoffman.  So, thank you.

MS. HOFFMAN:  Well, you're welcome, Your Honor.  Thank you.

MS. BLAESING:  She's also handling the remaining issues.

THE COURT:  Okay.  Well --

MS. BLAESING:  So maybe we can wrap this up before lunch.

THE COURT:  You said there was another complicated -- another slightly complicated issue.

MR. RIZZO:  Modestly.  We served the request for production.  We were looking to see what Payne -- Mr. Payne -- what Mr. Miles primarily relied on in connection with proffering their respective declarations.

In my mind, lawyers can talk to corporate employees.  There's plenty of law on that.  That's work product.  But once the person becomes an employee witness, he or she is a witness, and we get to ask, "What did you review or rely upon for purposes of your testimony?"  And I think this is going to be an issue, potentially going forward, with other DHS employee witnesses.  So I thought we'd raise it now.

THE COURT:  Okay.  And -- but it's not actually an immediate need to resolve, but at the time that depositions are taken?

MR. RIZZO:  Well, just with the fourth RFP, they're objecting to producing what they showed or what -- or what Payne and Miles relied on.  So that's the immediacy piece of it.

THE COURT:  All right.  So in preparation for depositions, you need to have this issue resolved.

MR. RIZZO:  Right.  For them, right.

THE COURT:  Okay.

MS. BLAESING:  So this issue is actually me, not Ms. Hoffman.

THE COURT:  Well, see, you get to preserve your good

standing with me, Ms. Hoffman.

MS. BLAESING:  Yes.  And so, Your Honor, this request was asking squarely for our attorney-client privileged communications and work product of work that our firm did with these clients to prepare the motion for reconsideration, which has already been denied.  And these are not witnesses on merits issues in this case.  They are not being deposed.  They submitted declarations.

It is really difficult for me to see how this has any relevance, other than being a fishing expedition for our privileged communications.

THE COURT:  How are they not privileged communications?

MR. RIZZO:  I'd just like the documents themselves is my primary --

THE COURT:  You mean the documents that were reviewed --

MR. RIZZO:  Right.

THE COURT:  -- as opposed to the actual communications about the documents?

MR. RIZZO:  Right.  I can let go of communications.

THE COURT:  But I suppose you can ask -- you can ask the deponents, at the time of deposition, what documents they reviewed; correct?

MR. RIZZO:  As long as there's no objection and

instruction not to answer.

THE COURT:  Is there going to be an objection to what documents they've reviewed?

MS. BLAESING:  If a hypothetical fact witness is being asked what they've reviewed, and it's a 30(b)(6) witness, then they're entitled to that.  If it's a fact witness, I think there's case law saying that that invades privilege.

I think this gets at something different, which is what documents did the attorney and client look at together and discuss to prepare a motion and to prepare the legal strategy for the motion?  And what would be submitted as an exhibit and what wouldn't?  And I think that clearly goes to the attorneys' work product and mental impressions.

MR. RIZZO:  They're not clients; they're workers. Miles and Payne and hypothetically another DHS worker down the line is not a client of DOJ.  And that person -- when they proffer that person, that person becomes a witness.  And, again, you should be able to ask a witness, "What did you review in preparation for" --

THE COURT:  I mean, my general response is, "Yes, you can ask what somebody reviewed."  But I can appreciate Ms. Blaesing's position with respect to the preparation and development of this declaration for the motion for reconsideration.  And there may very well have been some appropriate work product that is privileged that these

witnesses might have reviewed. And I don't -- I think there's a limit to what it is that they can disclose.

So, I mean, you know, if we're talking about having reviewed, for example, a training manual on OR-Kids, now, I think that's appropriate for you to know. But if part of that was a memo that you had prepared outlining some of your thought impressions, for whatever reason -- I don't know what -- and that was something that either of these individuals have reviewed, then I think that's off limits, at least -- at least for now. And as far as I'm concerned, unless somebody can show to me there's some other authority for revealing something that is clearly, you know, an attorney work product.

So if I've outlined some boundaries here, what, if anything, can be resolved with respect to this RFP 4?

Ms. Blaesing?

MS. BLAESING: We stand on your objections on the basis of privilege and work product. And I don't think there's anything to be produced.

The last thing Mr. Rizzo said, I just want to go on record that we dispute his assertion that we or DOJ do not have attorney-client privilege with these workers -- Mr. Miles and Mr. Payne -- at DHS. Our position is we do have attorney-client privilege with them for purposes of these communications that took place here.

THE COURT: Okay.

MS. BLAESING: And if that becomes a bigger dispute down the road, then we'll have to --

THE COURT: Well, why don't we brief it. Why don't we set out something that needs -- we need to brief it now. Because if we wait until July, we're going to have to deal with putting this out for another -- a bunch of time.

I'd like -- this is going to be, I think, an ongoing issue. So let's get it resolved more -- more discretely. And the question is, is -- I mean, there might be two questions really. So motion to compel your RFP 4 and then two is a general discussion and decision about, you know, the status of DHS employees for the purposes of privilege.

MR. RIZZO: And it particularly relates -- and I appreciate the opportunity to brief -- to these requests for defense forms. Because these workers clearly are not in an attorney-client relationship by having signed that contract with DOJ. All they're getting is a defense. And these lawyers can use what the workers say against them under the terms of the contract.

So to hear that DOJ is in an attorney-client relationship with witnesses they can prosecute and get fired for what they say truthfully to the lawyer doesn't square with an attorney-client relationship.

THE COURT: I mean, I think it's an important issue for us to resolve. But it needs -- I would benefit from some

thoughtful briefing and opportunity to deliberate.

MR. RIZZO:  All right.  I'll propose we'll confer on a briefing schedule with Ms. Blaesing, Judge, and we'll place that in this order.

THE COURT:  Sure.

MR. RIZZO:  Okay.  So let's take that break so you can plug the meters, get something to eat, and -- all right. What else is left?

On Plaintiff's side, anything else?

And here's actually the thing.  I'm asking you to tell me if there's anything left, and then we're done, and then you remember that there might be something else.  How about we -- let me check in with Ms. Hoffman.  Are there -- how much do you know, at this point, off the top of your head, is left for us to take up on the Defendants' status report?

MS. HOFFMAN:  So off the top of my head, Your Honor, I think there are two outstanding issues.  One of them is our response to -- our supplemental response -- to Plaintiff's first set of interrogatories.  They may not wish to address that, but it seemed to me, from the status report, that they did intend to.  And I think Ms. Skjelset alluded to it earlier. And then there is our -- there is our issue about their response to our first request for production.

THE COURT:  Okay.  All right.  And then there might be at least one other issue on your side, or are those really

the two --

MR. RIZZO:  That's what I'm thinking.  It's their motion -- that last piece is their motion to compel.

THE COURT:  Okay.  Can we come back at 1:00?  Will 1:00 work for everyone?

MS. HOFFMAN:  Yes.

MR. RIZZO:  Yes.

MS. BLAESING:  Yes, Your Honor.

THE COURT:  All right.  So let's --

MS. BLAESING:  I do have a hard stop at 2:00 o'clock.

THE COURT:  Say again?

MS. BLAESING:  I have a hard stop at 2:00 o'clock.

THE COURT:  Okay.  As in you have to get out of here by 2:00?

MS. BLAESING:  Yes.

THE COURT:  Well, you're not going to get into Portland until well into the evening though.

MR. RIZZO:  Yeah.

MS. BLAESING:  I need to be to Salem by 3:00 o'clock.

THE COURT:  Got it.  So I can't imagine these last two issues taking more than an hour.  And, if they do, we'll hard stop.

MS. BLAESING:  Thank you, Your Honor.

MR. RIZZO:  Thank you, Judge.

THE COURT:  All right.  I'll see you at 1:00.

MR. RIZZO:  All right.

THE COURTROOM DEPUTY:  Court is in recess.

(A break was taken from 11:57 AM to 1:07 PM.)

THE COURT:  All right.  Let's continue.  I think there were two remaining issues.

Ms. Hoffman, is that -- were those your issues?

MS. HOFFMAN:  The first is Plaintiff's issue, Your Honor, and then the second is our issue.

THE COURT:  All right.

Mr. Rizzo, were you going to argue that?

MR. RIZZO:  I think so, Judge.

THE COURT:  All right.  Go ahead.

MR. RIZZO:  The first issue, then, was the Defendants' supplemental response to the first set of interrogatories.  And that starts at page 10, Judge, of the joint status report, and goes through roughly top of page 13.

And I feel like we've been down this path with the Court at least twice prior to today where the Court has entered an order explaining what it expects from the Defendants.  So I don't think there's any need to restate that.  So I just go to the answer.

And as I laid out on page 11, the information that we were provided and the fact that we were referenced to these

materials is not responsive with respect to the order itself. And that was particularly the case when persons who had knowledge and who knew of concerns were being shielded under that sentence in the DHS OAR about confidentiality of reporters.  So now that's moved out of the way.

And then there was discussion today about a very recent change in position where the Defendants are now going to produce documents relevant to the care and condition of the other children in the home.  So that's somewhat of a confounder in terms of making an argument that the answer is insufficient. But when we got it, the way it was written, and what they told us to go look at, I felt that was not responsive to the Court's order.

And when they said in their answer that they were talking about the case notes -- the case notes that were produced -- that's true.  But they were only for J.C. and Z.C.  So that I felt was more of a general statement telling the Plaintiff caseworkers to document their concerns in case notes.  Well, it's hard to argue with -- on one level.  But it wasn't terribly responsive.  So that's -- that's where we find ourselves now, Judge.

I don't know that I can ask the Court for more specific relief in light of what I heard today and in light of the recent change in position.  But they really could have told us, for example, who, just the way they did with the cell phone.

Just list out who were these people that knew the concerns. And then instead of referring us to several hundred documents, just tell us the -- just tell us.  Who was the person and what was the concern?  I felt that was the Court's -- that was the thrust of the Court's order.

THE COURT:  Okay.

MR. RIZZO:  So that's really my position, Your Honor.

MS. HOFFMAN:  So, Your Honor, just to back up and sort of provide a little bit of context for the supplemental response that we gave, the initial -- the initial interrogatory, as it was written by Plaintiff, asked for -- it asked three different questions related to paragraph 61 of the complaint.  Paragraph 61 of the complaint refers only to Z.C. and J.C.  And that is specified in Interrogatory No. 3 itself.

So we did not understand the Court's subsequent order to be modifying the subject matter of Interrogatory No. 3, but modifying sort of the questions we were to be answering, but not the scope of this matter.

THE COURT:  My order would not have expanded -- I would be surprised if I -- if my -- if my order expanded the scope of the meaning of a party's interrogatory.  But I can see where I would have given some direction to the respondent about what -- what was to be disclosed, given the language of the interrogatory itself.  So whatever you've said so far sounds very consistent with what I would have done.

MS. HOFFMAN:  Great.  That was how we understood it, as well, Your Honor.

THE COURT:  Okay.

MS. HOFFMAN:  So we're on the same page.

THE COURT:  Okay.

MS. HOFFMAN:  We provided a response that directed Plaintiffs to -- we did not direct Plaintiffs.  I want to be clear.  We didn't direct Plaintiffs to hundreds of documents.  We directed Plaintiffs to specific -- I want -- I want to say -- I haven't counted off the top of my head -- it is between 10 and 20 specific Bates-numbered pages of documents.  And if we did that, that is an allowable interrogatory response under FRCP 33(d).

These are documents we've already produced in the case.  They are documents we carefully selected as pointing to concerns that employees at DHS were aware of.  That is their purpose.  They are not there to demonstrate a general proposition.  They are not there to -- to demonstrate some larger point.  These are the specific documents that we believe that, if Plaintiff looks at them, answer this interrogatory for Plaintiff to the best of our understanding, at this time, answering this interrogatory.

Now, if they -- if they're -- if they feel like they're not getting the answer from those documents, honestly, that's not necessarily our problem.  We -- these are the documents we

would use to answer this interrogatory, and we are therefore entitled to point them to it.  They have exactly what we have.

THE COURT:  Well, what's -- what would be the Defendants' objection to just simply listing the names and the concerns that are in the documents that you referred the Plaintiffs to?

MS. HOFFMAN:  So our objection to doing that would be that we think that it characterizes the documents, and that constitutes work product.  We think these documents speak for themselves.  They are related directly --

THE COURT:  I mean, if we follow that line of thinking, then just about any straightforward answer that doesn't refer to a document in a response to an interrogatory is also work product; right?

I mean, that may -- where do you draw the line between just giving them the answer for any interrogatory or then pointing them to discovered documents for the answer?

MS. HOFFMAN:  So, Your Honor, facts are not work product.  You're correct.  And sometimes we narrate facts in the answers to interrogatories, because often there aren't necessarily documents that will describe those exact facts. These documents do describe the exact facts they're asking for. The names -- the names of who knew are on these documents.

THE COURT:  Okay.  Is the concern -- I'm going to reduce this to the simple problem of you don't want to be in a

position where they cite to a response in an interrogatory where the Plaintiffs say, "The Defendants acknowledge these were the people who knew it.  They admit it," period?  I mean, is that what you're trying to avoid is, in essence, sort of an admission of somebody's name?  "Here are the discoverable documents, and you can draw your own inferences and make your own arguments at the time of trial, Plaintiffs."

MS. HOFFMAN:  To some degree, yes, Your Honor, that's accurate.  We don't -- we don't -- we don't believe that we have any obligation to make this argument for Plaintiffs or to help them make their argument.  Our obligation is to answer their question, which we have done.  These documents contain all of the information that we would use to answer this interrogatory.  They contain all of the information that this interrogatory asks for.  All of the information.  There is nothing missing.

It contains the names, the subject of the concern, in first-person language, describing it at the time it occurred.  There would be nothing I could add in describing it in my own words, other than potentially mischaracterizing something.

And if they're -- if Plaintiff has more information that they'd like to ask for or some admission they'd like to get, they can file another interrogatory or an RFA.  But we have provided exactly the information that they have asked us for.

THE COURT:  Hm.  Okay.

Mr. Rizzo?

And maybe we can clarify. I think you indicated hundreds of pages. You indicated not hundreds of documents. So are we talking about pages or documents that are identified as a response to that Interrogatory No. 3?

MS. HOFFMAN: They are pages, Your Honor. They're pincite pages. There are no page ranges that I see here. And the witness who signed the verification did review them. And I've been over them. They are pages.

THE COURT: What happens if the response to the interrogatory is incomplete? It comes out that there are, in fact, some other names that aren't contained in these documents.

MS. HOFFMAN: Well, we understand that we have an ongoing obligation, under the discovery rules, to supplement discovery as we learn more information. So we will supplement this answer if we learn more information at a later date. We are obliged to do that and happy to do that. But, at this point, this is what we know.

THE COURT: Okay. And how many pages?

MS. HOFFMAN: Um --

MR. RIZZO: Maybe there's a disconnect. I understood this -- when I went to each one of these pages to inform the Court, I understood it was a range of documents in these individual packets DHS, dash, Levi, dash.

And I think I can short-circuit it even further, Your Honor.  The J.H., R.H. kids are not mentioned in this answer, and that was a concern.  And it was known, because we found out about Emily Williams.

So I come back to the point where the difficulty I have is the Court was very clear in what it ordered, and what we've gotten here is insufficient.  It did not list all the persons.  It does not list all the concerns.  And we do have to fish in these referential materials and come up with our own conclusion that the worker may well deny or disown or discount.

And so by referring us to documents, that can be fine in certain instances, but it didn't answer -- it wasn't an answer as ordered.

THE COURT:  And, remind me, the Interrogatory No. 3 would have elicited the information about these other children?  Or I'm -- I don't have -- I don't know if I have the interrogatory in front of me.

MR. RIZZO:  I have it here.  And I wrote that -- do you want me to just read it in?

THE COURT:  Yes.

MR. RIZZO:  Okay.  Just to paraphrase, we went -- we said, "Your Interrogatory No. 1" -- you -- excuse me -- alleged Plaintiff -- "The answer alleged that throughout their placement, DHS had failed to disclose and/or obfuscated notice and knowledge of the concerns in the Duncan/Raygosa home."

That was our allegation.  They answered and they admitted it. That was admitted.  That was -- and I said, "Please identify the concerns in the Duncan/Raygosa home that DHS failed to disclose and/or obfuscated notice and knowledge of; two, the DHS worker or workers, supervisor or supervisors who knew of any of the concerns that you identified; and, three, explain the reason why the worker or workers and supervisor or supervisors failed to disclose and/or obfuscated their knowledge -- their notice -- and knowledge of such concerns."

It was not specific to just our client.  The thrust of our discovery has been notice.  You were on notice of other problems with other children.  And we're trying to find out more about that.  And that's when Ms. Schneider decided she'd made an error and tried to withdraw.  And that's when we came to the Court, and the Court said --

THE COURT:  And the error that she made was what?

MR. RIZZO:  That she admitted the allegation.

THE COURT:  Okay.

MR. RIZZO:  And the Court said, "You can amend, but you have to answer these questions."  And that's where we are.

THE COURT:  All right.

MS. HOFFMAN:  Your Honor, I would like to respond to that, if I may?

THE COURT:  Yeah.

MS. HOFFMAN:  That recitation of Interrogatory No. 3

wasn't complete.  Interrogatory No. 3 reads, "Paragraph 61 of Plaintiff's complaint alleges that throughout their," brackets, "J.C. and Z.C.," bracket, "placement, DHS had failed to disclose and/or obfuscated notice and knowledge of the concerns in the Duncan/Raygosa home."

It specifically says "J.C. and Z.C."  And the reason it's modified that way is because, in the complaint, the preceding paragraph refers to J.C. and Z.C. three times.  It refers to their enduring confinement, not -- it says "J.C.'s and Z.C.'s enduring confinement."  It's says, "DHS then removed J.C. and Z.C. and placed them into separate homes."  And it says, "Both J.C. and Z.C. exhibited an almost immediate improvement in mood and affect upon placement in their respective environments."

61 says, "Throughout their confinement, DHS had failed to disclose and/or obfuscated notice and knowledge of the concerns in the Duncan/Raygosa home."  The antecedent to "their" is J.C. and Z.C., which Plaintiff clarified in the interrogatory. There is no other interpretation of this interrogatory that is tolerable.

MR. RIZZO:  Judge --

THE COURT:  Okay.

MR. RIZZO:  -- I'm not necessarily in disagreement with that, but that was the touchstone.  Those were the kids that we -- J.C. -- we represent.  There are other concerns in the home.  What were they?

What I'm hearing now is that they understood the interrogatory to be concerns only about J.C.  And they didn't object on that ground.  They didn't seek clarification on that ground.  And today's the first time I'm hearing that that's how they read the interrogatory, and, consequently, that's how they read the Court's order.

THE COURT:  Have the parties conferred on this matter?

MR. RIZZO:  No.

MS. HOFFMAN:  We have not, Your Honor.  This joint status report was the first I had heard that Plaintiff interpreted this interrogatory to be broader than how it is written on the page.

THE COURT:  Okay.

MS. HOFFMAN:  I think our response would likely -- we're happy to confer.  But they're also welcome to serve us another interrogatory that relates to other children.  That's an avenue available to them.  But this one doesn't reference other children.

MR. RIZZO:  And the reason why I'm concerned about that is because some of these child welfare abuse assessments are about other kids.

THE COURT:  Say again?

MR. RIZZO:  They are about other children.

THE COURT:  Which ones?  Are you talking the --

regarding the documents that were --

MR. RIZZO:  Right.

THE COURT:  -- provided?

MR. RIZZO:  Right.  So it seems like, on the one hand, they did understand that it meant concerns.  On the other, it's --

THE COURT:  All right.  So I don't have these documents to look at.  So I have to rely on how both of you understand these documents.  Are there references to other children abused in these documents that were provided responsive to Interrogatory No. 3?

MS. HOFFMAN:  There are references to other children in these concerns.  Many of them referred to more than one child in the concerns.  We -- we reviewed the documents that, to our understanding, related to J.C. and Z.C., even if they did refer to concerns about other children or who were currently in the home with them at that time, and provided the largest breadth of what we had that we thought was even remotely applicable to J.C. and Z.C.'s period of confinement.

THE COURT:  Okay.  By the terms of the interrogatory requests, as I understand it, having been orally read it into the record, it is limited to those two minor children.  The fact that you may have provided responses -- documents that are response -- responsive documents that include references to other children don't expand the scope to some unknown breadth.

Mr. Rizzo, if you'd like to go ahead and submit additional interrogatories that clarify that --

MR. RIZZO:  Understood, Your Honor.

THE COURT:  -- please do so.

MR. RIZZO:  Okay.

THE COURT:  I'm a little leery about responding to interrogatories with references to documents.  And that might just be my simple country judge mentality down here in Eugene, Oregon.  So the jury is out on how I feel about it.  I'm going to allow it right now.  But if it becomes a space in which things get unnecessarily confusing, I'll probably -- I'll likely put a hard stop on letting that continue.

So I'm giving you just a heads-up.  I can live with it right now.  But if it becomes an unusual space of confusion, mostly for me, then I'm going to start asking people to provide just answers that are typical of your simple kinds of interrogatories.

I'm just showing you my cards.  You don't have to deal with it, at this point, since, you know, I've resolved this particular issue for now.

MS. HOFFMAN:  Thank you, Your Honor.

THE COURT:  I think that was your issue, Mr. Rizzo.

So I think you have one remaining issue.  And who's arguing that one?

MS. HOFFMAN:  I'm arguing that one, Your Honor.  And

before I start on it, in light of your ruling on the supplemental response to the first interrogatory, the supplemental response was -- it was meant to precede our -- amending our answer.  So, at this point, I'd like to move for leave to file an amended answer.

THE COURT:  And is that that last issue?

MS. HOFFMAN:  No.  There's one more issue.

THE COURT:  Okay.

MS. HOFFMAN:  But, before we get to that, this one seems easier.

THE COURT:  And are you satisfied that the conditions that I've -- I had placed have now been satisfied?

MR. RIZZO:  I think, in light of the ruling, yes, Your Honor.

THE COURT:  All right.  Your motion to amend is allowed.

MS. HOFFMAN:  Thank you, Your Honor.

The last issue before us right now is Plaintiff's response to Defendants' first request for production.  We served a request for production that sought two different categories of subpoenaed documents.  Number -- the second request for production sought documents that Plaintiff obtained through subpoenas filed in this federal case.  They've responded to that.  It's not an issue in this motion today.

The first RFP that we issued sought documents that

Plaintiff obtained through subpoenas filed in the probate matter. And they include documents from Lane County Judicial Department, the juvenile court --

THE COURT: This would be documents from the case files?

MS. HOFFMAN: The case files.

THE COURT: The court files.

MS. HOFFMAN: The court files -- the juvenile court files -- requested from OJD, records from Kids FIRST, records from ODHS, and records subpoenaed from any tribal entity that they subpoenaed.

THE COURT: And these are documents that you've requested of the Plaintiffs?

MS. HOFFMAN: Yes.

THE COURT: Okay.

MS. HOFFMAN: We've requested these of the Plaintiffs.

THE COURT: Okay.

MS. HOFFMAN: Plaintiffs --

THE COURT: And these are documents that the Defendant would not have been able to obtain otherwise?

MS. HOFFMAN: They are documents we do not -- of -- the DHS documents are in our possession. We would like to confirm that everybody has the same things. But the others are not in our possession, no.

THE COURT: Okay. And that's a slightly different answer to the question.

MS. HOFFMAN: Your Honor, we could issue subpoenas to these -- to these entities ourselves.

THE COURT: Fair enough. So what's -- so where's the dispute?

MS. HOFFMAN: So the issue is that Plaintiff has objected to producing all of these categories of documents. And they've cited a couple of different reasons for that. But the crux of the issue seems to be the protective orders that are in place in the probate matter. There are two of them. One applies to the Kids FIRST documents; one applies to the OJD documents.

The joint status report, and, honestly, the objections, don't really address the tribal entities subpoena. There's no protective order related to those. There's an objection about that being vague. It's a little unclear to me where the rub is with that subpoena, if it exists. I assume that it does, or I would have seen an objection or a response saying it doesn't exist.

So the real crux of the dispute seems to be over the OJD documents and the Kids FIRST documents related to the protective orders that were entered in the state case.

THE COURT: In the state probate case?

MS. HOFFMAN: In the state probate case. Yes.

THE COURT:  Remind me why there's a probate in this case.

MS. HOFFMAN:  To appoint the conservator who then brought this lawsuit.

THE COURT:  Got it.

MS. HOFFMAN:  Yes.  And the protective orders that were entered in the probate matter refer to these documents as -- the Kids FIRST -- the Kids FIRST protective order refers to these documents --

THE COURT:  So I'm -- I'm -- there's some questions I have in my mind.  So --

MS. HOFFMAN:  Great.

THE COURT:  The OJD file and the Kids FIRST file -- is it your contention that they can't be produced because of a protective order in the state case?

MR. RIZZO:  We get -- we get there.  But how we got there has not been explained yet by Counsel.  But, yes, they are -- they are not entitled to those documents, absent modification of those orders.

THE COURT:  Of the state court orders?

MR. RIZZO:  Correct.

THE COURT:  Well, so whose order controls?  And may -- if I were to order the production of these documents that are in your possession, what happens?

MR. RIZZO:  I'd have to follow that order.

THE COURT:  Okay.

MR. RIZZO:  So...

THE COURT:  So you're kind of in the same position that DHS is, which is are you waiting for my order?

MR. RIZZO:  No.

THE COURT:  Okay.

MR. RIZZO:  No.

THE COURT:  All right.

MR. RIZZO:  And --

THE COURT:  So you're going to -- yeah -- so you have an argument against it, other than just asking for my court order to do so.

MR. RIZZO:  I do.

THE COURT:  All right.  So let me hear from Mr. Rizzo so I have a better understanding of the context.  Because I -- this is -- this is where you maybe argue, very simplistically, what's good for the goose is good for the gander, Ms. Hoffman.

So help me understand why it isn't.

MR. RIZZO:  I'm going to try, Judge.

THE COURT:  Okay.

MR. RIZZO:  So we prepare releases for information, as I've laid out in our response.  We get resistance, very much like the Court is seeing today.  And nothing happens.  We don't get records.  The releases are not honored.

THE COURT:  From?

MR. RIZZO:  DHS.

THE COURT:  Okay.

MR. RIZZO:  So we get a variety of public records law, objections, provisions, and a request to pay significant money for the agency to, quote, "gather" information.

So we spent thousands of dollars appointing a conservator, getting letters of conservatorship.  There's separate lawyers involved, as I've laid out, in the conservatorship.  The conservator is appointed by Lane County Probate Court.  The conservator obtains subpoena power.  So we are now in a position, along with J.C.'s attorney -- and J.C.'s attorney issued the subpoena to Kids FIRST.  We issued a subpoena to the Lane County Juvenile Court.

Records were produced by Kids FIRST and its lawyer.  And Ms. Uranga, who was J.C.'s attorney -- we were also involved, obviously, in the protective order -- provides that the documents are to be protected in the terms of those orders.

This motion to compel just makes a passing reference to the orders and just concludes there's nothing there that would prevent our firm -- Plaintiff -- from producing documents that were produced by Kids FIRST in the conservatorship.

Again, this is something they want for free.  Something that the Court understands they can get.  They don't deny they can -- they can't request it.  And we believe most recently -- I'm just going to stick with Kids FIRST for a moment -- we

believe most recently that they've had people who have seen J.C.'s video of the DMP -- the designated medical professional -- review of her. Sickening. They've seen that. They may even have it. That I don't know yet. But I'm confident, based on what we know now and learned very recently, they have that.

THE COURT: And you incurred these costs because DHS said you've got to go through the public records process?

MR. RIZZO: Right. You just end up in an endless --

THE COURT: And how much did it cost? You said thousands of dollars.

MR. RIZZO: Right. I mean, that's just part one. Then we serve a subpoena to LCJC -- Lane County Juvenile Court -- and guess who appears on behalf of Lane County Juvenile Court? A DOJ Trial Division colleague of Ms. Schneider. And that attorney --

THE COURT: But that's because DOJ would represent --

MR. RIZZO: Normally the OJD -- right -- handles that. But, for some reason, DHS's lawyer appeared. Same thing -- multiple objections trying to funnel the conservator's subpoena request into the juvenile court itself. Okay?

THE COURT: So what do the protective orders say? That you can't -- you cannot produce this in litigation?

MR. RIZZO: I'm getting there.

THE COURT: Oh.

MR. RIZZO:  And I'm sorry.

THE COURT:  You're killing me with the anticipation.

MR. RIZZO:  And I don't mean to, but it took so long to get to this point.

THE COURT:  Okay.

MR. RIZZO:  So we ultimately have to -- they move for a motion to quash.  The Lane County Juvenile Court --

THE COURT:  "They" being who?

MR. RIZZO:  Lane County Juvenile Court moves --

THE COURT:  They move to quash?

MR. RIZZO:  -- moves to quash --

THE COURT:  The production of?

MR. RIZZO:  -- its own records to the child to whom the records are privileged and confidential.  The probate court denies that motion.  And so we received the Lane County Juvenile Court records after months and after considerable expense in getting there.

And then Ms. Skjelset negotiated an order.  And in the course of that -- and when we received information -- and here it may be better for Ms. Skjelset.  But what we learned was it appeared that -- or did we learn this very recently? -- that DHS had copies of the FTRs, because DHS was a party to the dependency proceeding.

So the three things we subpoenaed in probate court were the record of the case -- the legal file; the supplemental

confidential file, known as the social file; and then we subpoenaed the FTRs.  And that's what we fought about in that case.  And then, ultimately, as I said, probate court rules in our favor.  And it turns out that the DOJ Trial Division had the FTRs.  They had transcribed the FTRs.

THE COURT:  And how do you come to learn that?

MR. RIZZO:  I have personal knowledge of that. It's --

MS. SJKELSET:  We don't know that they were transcribed.

MR. RIZZO:  Well, I --

MS. SJKELSET:  We know that they were reviewed.

MR. RIZZO:  Okay.  Okay.  I take that --

THE COURT:  But --

MR. RIZZO:  Yeah, they have them.  And so what they said is, "Come down to Salem and listen to them.  You can sit in a room -- you and Z.C.'s lawyer" --

THE COURT:  So this is after you already fought the battle of getting the FTRs?

MS. SJKELSET:  This was in the course of it, Your Honor.

MR. RIZZO:  In the course of it.

MS. SJKELSET:  This is just a demonstration of how very difficult it is to represent children who have been abused in foster care, and how the state weaponizes the provisions

that are designed to protect children against them.  So they will read, in a nuanced way -- possible -- the most nuanced possible -- the most narrow way possible -- the confidentiality provisions to deny us the records that we're -- of the child we're currently representing --

THE COURT:  Okay.

MS. SJKELSET:  -- because we're not a juvenile attorney.  Right?  So that's what the juvenile -- that's what the DOJ Trial Division did in this case.  They came and said that they were representing the trial court administrator to preclude us from getting this child's legal file, social file, and the FTRs, so that we can get to --

THE COURT:  How is it that the DOJ steps in on behalf of the trial court administrator?

MS. SJKELSET:  Well, that's a privilege, Your Honor. We don't know.

MR. RIZZO:  We don't know.  It was unusual.

MS. SJKELSET:  But what we do know is that Jill Schneider had already been representing DHS in the course of negotiations with us at a settlement conference in this matter. So two attorneys who consistently work together in the Trial Division, one is representing the juvenile court saying we can't get documents, and one is representing DHS.  And now we know that DHS, all along, had those documents that they're trying to preclude us from getting in the first place.

And now they come around here, and they send an RFP to us asking for our entire file, when it took us tens of thousands of dollars to get it in the first place.  It would be akin to us sending them an RFP saying, "What did you get using your DOJ authority in this case?  Give us your entire file."  Because the only way that we get these records is getting subpoena power just to get to first base.  Just to understand where they are.

It was -- I'm sorry I'm getting heated.  It's extraordinarily frustrating.  And I hope that I've conveyed that to the Court.

THE COURT:  Okay.

MR. RIZZO:  So to get to your --

THE COURT:  So the protective order.  What is --

MR. RIZZO:  So then there's another protective order.  Then we find out that they have this material.  And as Ms. Skjelset just said, with emphasis, you're not supposed to -- you, DOJ Trial Division, are now in possession of records that are privileged and confidential to the child.

So there was another motion, and, ultimately, the parties agreed and entered a supplemental stipulated order.  And I can read from that order.

THE COURT:  I mean, if you would maybe just summarize for me.  I'm not -- I don't understand --

MR. RIZZO:  The records are sequestered in the DOJ

Trial Division.  Only -- they're sequestered on a separate folder.  And no one's supposed to be looking at that.  And the DOJ attorney had to basically recuse herself from further -- that attorney -- had to recuse herself from further representation.

THE COURT:  And do you have these files in your possession?

MR. RIZZO:  We have -- we have -- yes.

THE COURT:  Okay.

MR. RIZZO:  So we've obtained them through this course.

THE COURT:  Okay.  And so you have these files.  And the protective order says what about your ability to disseminate them or produce them?

MR. RIZZO:  The protective order -- we may use the documents to assess the claims and to potentially litigate the claims.  But the DOJ Trial Division may not access those same records because of what happened in the probate court, unless that order is modified.

THE COURT:  By some other court order with -- or a court that has authority to do so?

MR. RIZZO:  Right.  And I was -- and I -- the reason I objected on the grounds of those orders was they were two litigated proceedings, nothing stopping DHS from going into those courts and seeking a modification.  But I doubt that a

probate court judge -- and particularly with the LCJC documents -- would be receptive to that in light of the potential for conflict raised by the Trial Division's possession of this material.  So --

THE COURT:  So you can use it in litigation, but the Trial Division cannot?

MR. RIZZO:  If we waive it -- if we selectively waive certain aspects of it -- because it is a juvenile court proceeding.  If we were to --

THE COURT:  And then why was it that the Trial Court Division is not able to use these documents?  They're sealed in their -- in their offices?

MR. RIZZO:  Well, no, the -- the -- oh, right. Correct.  Yes.

THE COURT:  I'm trying to understand why the Trial Court Division would be prevented from reviewing and using these documents.

MR. RIZZO:  The trial -- I'm talking about the DOJ Trial Division.

THE COURT:  I'm sorry.  The Trial Division --

MR. RIZZO:  Right.  Not TCA.  The TCA has them.

THE COURT:  Yeah.

MR. RIZZO:  Correct.

THE COURT:  So the DOJ Trial Court Division -- why is it that they can't use these documents?

MR. RIZZO:  The DOJ Trial Division?

THE COURT:  Yeah.

MR. RIZZO:  Because they were representing -- the appearance is they were representing DHS and/or were going to represent DHS in this -- in a subsequent legal proceeding. So -- so that's --

THE COURT:  Ms. Sjkelset was going to supplement.

MS. SJKELSET:  Just to add to that, Your Honor.  The reason that they agreed to a stipulated protective order --

THE COURT:  "They" being the Trial Division?

MS. SJKELSET:  Meaning the DOJ Trial Division -- of these documents was that they had repeatedly represented to us that they were not doing this at the behest of DHS.  They were not precluding us from getting these documents in order to advance the litigation of the Department -- and defense -- of the Department of Human Services.

THE COURT:  Okay.  So I think, at one point, you described the cost of obtaining these records as "thousands" but then "tens of thousands."  So what's it more like?

MS. SJKELSET:  Well, we haven't calculated it, but it was --

THE COURT:  Approximately.

MS. SJKELSET:  I would say tens of thousands. Absolutely.  It was many, many hours --

THE COURT:  Are we talking 30?  40?  50?

MS. SJKELSET:  -- of both fighting the DHS -- well, we had to fight the DOJ Trial Division and the DHS subpoena, because they moved to quash that subpoena as well.  We had to fight the --

THE COURT:  I'm -- simplify it for me.  Give me a number, approximately.

MR. RIZZO:  It's between $25,000 and $40,000.

THE COURT:  Okay.  Okay.  All right.

MR. RIZZO:  And that doesn't address the DHS documents.  We'll get -- we'll get to that.

THE COURT:  Okay.  Although we have a hard stop in 18 minutes -- 17-and-a-half minutes.

MS. HOFFMAN:  Your Honor -- all right.  So I really can't speak to a lot of what happened in the probate case and what sounds like a very frustrating situation for Plaintiff's counsel.

THE COURT:  Yeah.  And it doesn't appear to me that the two of you were involved in that.

MS. HOFFMAN:  We were not.  So I have nothing to add.

THE COURT:  But your clients may have been.

MS. HOFFMAN:  They may have been.

THE COURT:  All right.

MS. HOFFMAN:  So, Your Honor --

THE COURT:  And now they want the documents that they were probably -- again, not you -- you would like the documents

for the defense of your clients --

MS. HOFFMAN:  Yes.

THE COURT:  -- at a time for which earlier in this process your clients had been perhaps making people work a little harder to get them.

MS. HOFFMAN:  Correct.  And, Your Honor, I think it's important to step back and take sort of a high level sort of look at, procedurally, where these different events occurred.  In the state probate matter, what was happening at that time was there was a proceeding to appoint a conservator to potentially bring claims someday.

The conservator didn't ever have to bring a lawsuit.  And had he never done so, those documents would -- we would -- we would not be able to demand them of Plaintiff.  They -- Plaintiff has them.  And that's that.  They obtained them via subpoena.  But Plaintiff chose to file a lawsuit in this case.  And we're entitled to defend ourselves against the lawsuit.  Documents that --

THE COURT:  And when you say "we," I want to make sure it's clear --

MS. HOFFMAN:  Oh, I'm sorry.

THE COURT:  -- it's DHS.

MS. HOFFMAN:  Yes.

THE COURT:  All right.

MS. HOFFMAN:  All of the State Defendants.

THE COURT:  I'm not associating you and Markowitz with your client.

MS. HOFFMAN:  Yes.

THE COURT:  Because if I'm going to hold your client acting unusually, I'm not imputing it to you.  So I want to make it very clear that if I start admonishing people, it will be clients unless I specifically say you, Ms. Hoffman -- you've done something.  So --

MS. HOFFMAN:  I appreciate that, Your Honor.  So State Defendants.

THE COURT:  -- I'm going to -- you know -- here's my cards.  I want to share with you what I'm thinking so that way you have an opportunity to tell me why you think I shouldn't go this direction, which is, if you want these documents, then you get to share the cost.

MS. HOFFMAN:  Well, so, Your Honor --

THE COURT:  No, I'm sorry, not you.  If your client wants these documents, and because you think they're necessary, then your client needs to share the cost.

MS. HOFFMAN:  Well, Your Honor, our client isn't necessarily responsible for those costs.  Our client went through the normal channels of representing -- the DOJ represents OJD in the normal course of business.  It also represents DHS in the normal course of business.  This was -- in the probate matter, this is normal litigation over subpoenas

of highly sensitive documents.

THE COURT:  Which seemed to also cost an extensive amount of money that becomes prohibitive for Plaintiffs to prosecute claims against the Government.

MS. HOFFMAN:  It does.  But that -- but how much it costs in a previous proceeding that Plaintiffs also initiated isn't relevant, really, to our RFP.  We're not -- we -- we are entitled -- we -- they -- Plaintiffs sued my clients, and my clients are entitled, under the discovery rules, to have access to all of the relevant discoverable documents the Plaintiff has that we request.

And parties incur massive litigation costs all the time to produce documents, because it takes time to pull them or to dedicate staff time.  Discovery is a very expensive process. This is not unusual in that way.  And Plaintiff brought two cases, one in probate court and one in federal court, and that is Plaintiff's choice.  But there's a cost to doing discovery. And there's a cost to issuing subpoenas.  It's just a fact of the matter.

There's nothing unfair about us now asking to have the documents that are in Plaintiff's possession that are -- they would concede are relevant.  They're discoverable.  They are not work product.  They've come from third parties.  There's no debate here, or there shouldn't be, that these are discoverable documents.

And the terms of the protective orders contemplate that, particularly the Kids FIRST protective order.  Paragraph 6(a), which is in the second labeled "Duration" states, "Upon the final disposition of this conservatorship, including a reasonable period for retaining archival copies and attorney files for possible appeals or other related proceedings" -- and it goes on to explain destroying the documents.  It contemplates related proceedings, which this is, because the documents are meant to aid in bringing this litigation.  And we're entitled to see them.  We're entitled to know what Plaintiff has.  We have to defend -- or my clients have to defend their case.

And my clients, I want to clarify, are not just DHS.  It is DHS and four individual employees who had nothing to do with the probate matter.

THE COURT:  Fair enough. But DHS did.

MS. HOFFMAN:  It did.

MS. BLAESING:  It was subpoenaed.  It was one party that was subpoenaed.

MS. HOFFMAN:  Yes.  It was subpoenaed.  It was brought into that case.  It wasn't a party to the case.

THE COURT:  DHS was?

MS. HOFFMAN:  Yes.  DHS was subpoenaed, as was the Judicial Department.

THE COURT:  Okay.

And if I understand then, Mr. Rizzo, it's not so much that you're objecting to the relevance of these documents; is that correct?

MR. RIZZO:  I think the documents are potentially relevant, Your Honor.  I mean, the Lane County Juvenile Court record --

THE COURT:  Sure.

MR. RIZZO:  Right.  The Kids FIRST --

THE COURT:  I guess it's a bit of a rhetorical question.

MR. RIZZO:  No, I understand.  And I just want to clarify, because I keep hearing this word "Plaintiff." Mr. Levi was the conservator.  He acted in that capacity.  We were of counsel to Ms. Uranga, who represented Mr. Levi in the probate.

The conservator obtained those records in the probate. Yes, we have those records in our possession.  There is nothing that prevents -- from listening to Counsel -- there's nothing that prevents DHS from doing its own work, and writing a subpoena to Kids FIRST, and watching what happens with Kids FIRST.  And the problem with the LCJC --

THE COURT:  When you say "watching what happens" --

MR. RIZZO:  Right.

THE COURT:  -- what do you mean?

MR. RIZZO:  I mean watch what Kids FIRST does.  I

mean, Kids FIRST call to either object to the subpoena or --

THE COURT:  Which agency -- which agency oversees Kids FIRST?

MR. RIZZO:  I'm not sure.  They're part of the MDT.

MS. SJKELSET:  I believe that they're a nonprofit organization, Your Honor.

MR. RIZZO:  Yeah.

THE COURT:  Okay.

MR. RIZZO:  I don't think they're affiliated with DHS.  I think it's a child abuse assessment center like we have in each county.  So...

MS. SJKELSET:  Your Honor, it's my understanding, based on experience, that if they were to subpoena Kids FIRST, they would require a very strict protective order because of the sensitivity and nature of the video.

THE COURT:  Okay.

MS. HOFFMAN:  Your Honor, there was already --

MR. RIZZO:  And then --

MS. HOFFMAN:  -- a protective order in place in --

MR. RIZZO:  I'm sorry.  Can I just --

THE COURT:  Let Ms. Hoffman continue.

MR. RIZZO:  I'm sorry.

THE COURT:  It was their motion, initially.

MS. HOFFMAN:  There is a protective order already in place in this case that is -- that -- the only designation in

the Kids FIRST protective order is a confidentiality

designation, which we have in our protective order.  So there

would be no -- there would be no public disclosure of these

documents.

THE COURT:  Yeah.  So --

MS. HOFFMAN:  They remain protected.

THE COURT:  The issue for me is not so much whether

it's relevant and otherwise discoverable.  It's the manner and

method in which it's going to be produced.  Because to the

extent that your clients -- client -- one of them -- not

necessarily individuals -- played a role in making it more

difficult -- which might have been their right, and, yet, there

were costs incurred -- to the extent that I have authority to

consider and explore costs sharing, I'm inclined to do so.

I don't have a -- I don't have a complete answer to that

question.  And so I'd ask that the parties look into the

matter.  Because I would find that there are some extraordinary

circumstances here where I would be inclined to find -- if I

have the authority to order your client to cover some portion

of the costs for having gone through the efforts to get these

documents -- to share some of that.  And then we go from there.

This isn't a question about whether they -- they aren't

going to be produced on substantive grounds.  It's a question

of how we make sure that the playing field is somewhat level as

it relates to your clients' involvement in the obtaining of

these documents by the Plaintiffs in this case.

MS. HOFFMAN:  So if I understand --

MR. RIZZO:  And the --

MS. HOFFMAN:  Oh, I'm sorry.

THE COURT:  Go ahead, Mr. Rizzo.

MR. RIZZO:  And with respect -- with respect to the -- well, to both categories, but particularly the LCJC, those records are privileged to the child.  So if they're ordered, then obviously I'd follow the order.  If they're ordered to be produced, even with some degree of payment, because Defendant doesn't want to issue its own subpoena to the juvenile court -- if that Defendant -- and I'd encourage the Court to read tab 30, which sets out this supplemental stipulated protective order.  That if they get these records, they're still privileged to the child.  So it's only if we -- if Plaintiff -- waives --

THE COURT:  Waives.

MR. RIZZO:  -- that privilege; right?

THE COURT:  Well, the Plaintiff waives the privilege.

MR. RIZZO:  Right.  In any order, I just want that to be preserved.

THE COURT:  Okay.  And so I appreciate that clarification.

MR. RIZZO:  Yeah.

THE COURT:  So not all the documents are producible,

because there are some that are privileged.

MR. RIZZO:  Right.

THE COURT:  And if -- and I'm not going to order production of that which might be privileged.  But I have to think about -- you may have to delve a little bit deeper into that, given that it's also -- the potential -- the information is relevant and the basis for the complaint.

MR. RIZZO:  I understand.  And there's another wrinkle.  And the other wrinkle is DHS has these documents.  They have the record of the case.  They populate the supplemental confidential file.  And they have the FTRs.  So they're asking us now, for free, to give us --

THE COURT:  No, no, no, not for free.  Because I just told you --

MR. RIZZO:  No, I know.  But then -- before we came in today, that's what it was.

THE COURT:  But that argument has left the room.

MR. RIZZO:  Okay.  And then with respect to the DHS documents, I simply objected on that ground because it was needless.  Why are they asking us to produce the same DHS documents that DHS produced, via Ms. Schneider, in the probate court?

THE COURT:  Fair enough.  But if they want them through you, then you get to explain to me how I'm going to order a cost sharing.

MR. RIZZO:  Okay.  And I just want to follow up to Counsel's point about the tribal entity.  My only objection there is what are they talking about "any tribal entity"?  I don't know what that means.

And when we get into what the conservator did with others, that's work product.  Who the conservator identified and went to, formally or informally, to obtain information -- I think there needs to be a line drawn there.

THE COURT:  Well, no subpoena's been filed against -- or served, rather, on the tribe -- a tribe.

MS. BLAESING:  That's a question for Plaintiff's counsel.

MS. HOFFMAN:  That's a question for Plaintiff, Your Honor.

THE COURT:  Well, the question --

MS. HOFFMAN:  Plaintiff has never represented --

THE COURT:  I'll re-form the question.  Has anyone served a subpoena on the tribe?

MR. RIZZO:  I have not, Your Honor.

THE COURT:  Okay.

MS. HOFFMAN:  Well, in that case, Your Honor, that answers our question.

THE COURT:  Which question?

MS. HOFFMAN:  If Plaintiff has not -- my client had a belief that Plaintiff had subpoenaed a tribe --

THE COURT:  Okay.

MS. HOFFMAN:  -- or a tribal entity.  And so we issued an RFP requesting any documents received from such a subpoena.

THE COURT:  Okay.

MS. HOFFMAN:  The objections did not say that no subpoena -- such a subpoena existed.  If it didn't exist, then we're not seeking documents.

MR. RIZZO:  Right.  And the Court used "tribe," not "any tribal entity."  I didn't know what they were talking about.

MS. HOFFMAN:  I'm a little confused if Plaintiff is making a distinction that I'm not trying to make.  The RFP does -- does -- is broader than this list of four.  It just says, "Documents obtained through any subpoena to any person or entity including but not limited to the following."

THE COURT:  And one of them is what?

MS. HOFFMAN:  One of them is "any tribal entity."  We tried to phrase this as broadly as possible, because we don't know who Plaintiffs have --

THE COURT:  So has any tribal entity been subpoenaed?

MR. RIZZO:  Not to my knowledge, Your Honor.

THE COURT:  Okay.

MS. HOFFMAN:  Well, then I think that part of the issue is moot then.

THE COURT:  Okay.  But we still have to address the other document production that the RFP is asking for.

MS. HOFFMAN:  Yes.

THE COURT:  Okay.  And so I -- go ahead.

MS. HOFFMAN:  I'm sorry.  I wanted to clarify something, Your Honor.  My client -- DHS -- did not have anything to do with the subpoenas to OJD and Kids FIRST.  DHS defended -- moved to quash -- defended against the subpoena to DHS.  That was DHS's only involvement.  So I would ask that, to the extent you'd like to order cost sharing, it be limited to the production of DHS documents, as that is my only client as -- vis-à-vis these subpoenas.

THE COURT:  I'm not prepared to limit anything at this point, because I'm still trying to wrap my head around who all the players were in that process, and who did what, when, and where.  So I'm open to that argument, but I can't say, now, as we all are sitting here -- or standing here -- that I'm -- that it would be limited.  But I'm open to considering it.

MS. HOFFMAN:  Okay.  So --

THE COURT:  And there may -- and there may -- even so, let's assume that to be the fact in play here, there may still be argument to be made, appropriately, under the rules, that cost sharing may nevertheless be appropriate under extraordinary circumstances.

MS. HOFFMAN:  Perhaps.  Although --

THE COURT:  Well --

MS. HOFFMAN:  -- to the extent that the cost sharing the Plaintiff is advocating for derives from the Trial Division's activities in the probate case, that sounds a little bit like it's starting to move into a motion for sanctions against the Trial Division for their activities in the probate case.  And if that is what Plaintiff is seeking, Plaintiff ought to brief it.  And this wouldn't be the proper venue for that motion.

THE COURT:  Which venue would that be?

MS. HOFFMAN:  That would be the Lane County Probate Court where all of those activities occurred.

THE COURT:  So, one, I don't think anybody in front of me was asking for cost sharing.  I think that was my idea.  So -- and, two, I'm not -- I wouldn't construe this so much as a sanction as opposed to -- and I think I've consistently been using extraordinary costs and circumstances that were required to be able to obtain these documents.  Let's explore it within the appropriate legal standards.

So if anyone wants to start using the language of sanctions, it's going to distract me.  And you're going to probably use it to your advantage as to why it's not even appropriate to consider.  And then I'll get further distracted, and then I'll wonder why I even asked for briefing.

MS. HOFFMAN:  Noted, Your Honor.  So if I understand

your ruling properly -- my understanding of your ruling is that the documents that the State Defendants requested in their first request for production are relevant and discoverable, and that the parties are to confer on a cost sharing proposal of some sort.

THE COURT:  Also -- well, and then we have clarified that there are no documents with respect to any tribal entities in the Plaintiff's possession.  And then, two, the social file is a matter of privilege.  And I -- and I know you may have issues about whether privilege is waived as a result of making the claim in the first place.  So I'm going to ask that the parties confer about that and whether it's worth really coming back to me to have to answer that question.  And then whatever else is left after those two items are discussed I think are generally discoverable and would need to be produced.  And then if we need to talk about cost sharing.

MS. HOFFMAN:  Thank you, Your Honor.

THE COURT:  Okay.

Ms. Skjelset?

MS. SJKELSET:  Your Honor, we are required under the protective order with Kids FIRST to return or destroy the video afterwards, which is not included in this Court's protective order.  And, therefore, we may need to negotiate, if we're required to produce those documents, certain provisions.

THE COURT:  I'll allow -- I'll allow -- I mean,

please confer and try to resolve it before I mess it up any more than I already have.

MS. HOFFMAN:  We certainly will, Your Honor.  I think we have to confer on the protective order anyway.  So...

THE COURT:  Yeah.  Okay.

Ten seconds to spare.

MR. RIZZO:  Ten seconds:  They're objecting to producing their documents from the juvenile court on grounds of work product.

MS. BLAESING:  Which files are you referring to?

MS. HOFFMAN:  Which -- I'm not sure -- I don't think that's in the --

MR. RIZZO:  Your --

MS. SJKELSET:  We sent a request for production for files that a worker -- Mr. Hammond -- had reviewed in preparing a document for the juvenile court.  And we received an objection on grounds of privilege.  I didn't see an objection on work product.  And it's only through recent emails that I discovered that he had actually --

THE COURT:  And "he" is who?

MS. SJKELSET:  He -- he was actually a caseworker for J.C.

THE COURT:  And the name is?

MS. SJKELSET:  Stephen Hammond.

THE COURT:  Okay.

MS. SJKELSET:  I wasn't aware of it until we got into discovery really in this case the extent of his involvement. But he had obtained the FTRs from the juvenile court.  And so now we understand that they were in DHS's file all along.  And we have sent a request for production for those documents quite a while back -- many months back, actually -- long before they sent their requests for production.

And we haven't received any documents.  So we're assuming that they're withholding those on claims of work product.  But those are the same documents that they're coming around and requesting that we provide to them when we had to go to so many efforts to get him in the first place.

THE COURT:  All right.  So you have FTR records and -- do you have FTRs?

MS. HOFFMAN:  Not to my knowledge, Your Honor.  And that request is not for FTRs.  Mr. Hammond filed an affidavit in the probate matter -- or in the juvenile -- in the juvenile matter.  I apologize.  He filed an affidavit in the juvenile matter.  And Plaintiff has requested the documents he relied on in preparing that affidavit.

THE COURT:  So kind of back to that other issue you're talking about --

MS. HOFFMAN:  Back to that other issue, yes.  It's not a request for FTRs or for juvenile court records.  It's a request for the records he reviewed and relied upon in

preparing a sworn affidavit.

THE COURT:  Okay.

MS. HOFFMAN:  And we did object, I believe, on work product and attorney-client privilege grounds.  But it's --

THE COURT:  And my ruling sort of separates out the kind of document that needs to be produced.

MS. HOFFMAN:  Yes.  So --

THE COURT:  Can we apply that same scope to this issue?

MS. BLAESING:  Yeah.

MS. SJKELSET:  Your Honor --

MS. BLAESING:  Your Honor, we're still reviewing some --

MS. SJKELSET:  -- the exhibits --

THE COURT:  Okay.

MS. BLAESING:  We're still reviewing a number of documents that we've withheld as potentially privileged or work product.  And we've submitted dates to provide privilege logs to Plaintiff's counsel.  So I believe some of these documents are discoverable and will be produced, and some of them we are going to maintain work product for.  And they'll be logged on the privilege log.

THE COURT:  Okay.  So the draft for order should also reflect that my ruling should be consistent between the -- you know -- the request for material that somebody reviewed in

preparation for an affidavit or declaration.  And, I mean, if it's a document that's just simply not part of any work product or the thought processes of counsel, then it needs to be produced.  And if it does implicate that -- the efforts of the attorney -- and whatever his communication or memo, then it may very well be subject to work product nondisclosure.

So that order should be consistent across the board with respect to anybody preparing a declaration for something.  I imagine there might be somebody.  I'll leave it to all of you able lawyers to distinguish my order in the future as it relates to other future declarations, but we'll leave that for another day.

Okay.  What else?

MS. HOFFMAN:  I don't believe there's anything else from the Defendants, Your Honor.

THE COURT:  Okay.

MS. HOFFMAN:  Thank you.

THE COURT:  And for the Plaintiff?

MR. RIZZO:  Just to say thank you for the time and the attention.  Appreciate it.  Thank you.

THE COURT:  You're welcome.

You know, I'm hoping that by going through some of this discovery in detail now, you also have a sense of how I will rule in the future, and that may inform a more productive conferral process with all of you.  And so I think this is time

well spent both in just simply resolving some of this logjam, but, two, hopefully keeping things moving along going forward.

Obviously, if I need to be of assistance to step in, in the future, I'll do so.  But I ask that you all keep working hard on trying to hammer out the details before having to come back to court.  Because I know it will slow down some of the process waiting for putting it on the docket.

All right.  Last piece:  How are we going to address the briefing on -- oh, you're going to confer on cost sharing.

MR. RIZZO:  Right.

THE COURT:  So I'll leave it to you all to figure that part out.  And then -- and I'll perhaps hear from you in the future.

Thank you, all.  Be well.

MS. SJKELSET:  Thank you, Your Honor.

MR. RIZZO:  Thank you, Your Honor.

MS. BLAESING:  Thank you.

MS. HOFFMAN:  Thank you.

THE COURTROOM DEPUTY:  This court is adjourned.

(The proceedings adjourned at 2:05 PM.)

C E R T I F I C A T E


Ethan Levi v. Chapman, et al.

Case No. 6:22-cv-01813-MK

Oral Argument

September 8, 2023


        I certify, by signing below, that the foregoing is a true

and correct transcript of the record, taken by stenographic

means, of the proceedings in the above-entitled cause.  A

transcript without an original signature, conformed signature,

or digitally signed signature is not certified.


/s/Kendra A. Steppler, RPR, CRR
Official Court Reporter          Signature Date: 9/14/2023

MR. RIZZO: [243]

MS. BLAESING: [163] 3/16 4/1 5/6 5/25 6/5 6/8 6/19 6/25 7/2 7/23 8/8 8/24 9/17 16/12 16/16 16/22 17/10 17/13 18/7 18/14 18/16 18/23 19/2 19/4 19/17 19/21 20/3 20/14 20/17 20/23 21/4 21/7 21/10 21/13 21/19 22/19 23/4 23/19 28/6 28/15 28/25 29/2 29/6 29/12 29/17 30/17 31/1 31/4 32/22 33/3 33/24 35/1 36/1 38/12 39/4 39/15 39/17 39/25 40/3 40/10 41/1 41/8 42/3 43/19 45/14 46/1 47/19 47/25 48/3 48/5 48/12 49/1 49/4 49/10 50/16 50/18 52/23 53/6 53/17 54/3 54/6 54/8 54/19 55/9 58/16 58/18 59/7 60/10 60/15 61/12 61/17 62/6 62/18 63/25 64/9 67/5 67/7 67/14 67/25 68/3 68/12 71/17 72/16 73/8 73/18 76/7 76/12 76/19 76/21 82/8 82/10 83/19 84/21 85/7 85/13 88/19 89/4 91/5 92/20 97/20 97/22 98/2 98/6 98/9 98/14 99/10 102/12 103/5 103/8 103/10 103/12 103/16 103/20 104/2 104/4 104/8 104/10 104/15 105/23 107/12 107/17 107/19 107/24 111/19 111/22 112/23 113/2 114/4 115/16 116/1 118/8 118/10 118/12 118/15 118/19 118/23 150/18 156/11 161/10 163/10 163/12 163/16 165/17

MS. HOFFMAN: [111] 3/20 40/12 40/14 42/17 42/20 43/14 92/1 92/3 92/5 92/16 92/19 92/24 93/4 94/3 94/9 94/17 94/21 95/7 104/9 107/25 109/10 109/24 110/11 110/14 111/6 111/10 111/17 117/16 118/6 119/9 121/8 122/1 122/4 122/6 123/7 123/18 124/8 125/6 125/14 125/21 127/22 127/25 129/10 129/15 130/12 131/21 131/25 132/7 132/9 132/17 133/6 133/8 133/14 133/16 133/19 133/22 134/3 134/7 134/25 135/3 135/6 135/12 146/13 146/19 146/21 146/23 147/2 147/6 147/21 147/23 147/25 148/3 148/9

148/16 148/20 149/5 150/17 150/20 150/23 152/17 152/19 152/24 153/6 154/2 154/4 156/13 156/16 156/21 156/24 157/2 157/6 157/12 157/18 157/24 158/3 158/5 158/19 158/25 159/2 159/11 159/25 160/17 161/3 161/11 162/15 162/23 163/3 163/7 164/14 164/17 165/18

MS. SJKELSET: [22] 140/9 140/12 140/20 140/23 141/7 141/15 141/18 145/8 145/11 145/20 145/23 146/1 152/5 152/12 160/20 161/14 161/21 161/24 162/1 163/11 163/14 165/15

MS. SKJELSET: [104] 3/10 5/11 5/16 5/18 30/11 30/14 31/12 31/21 32/1 32/4 32/8 47/6 52/15 52/18 52/22 56/24 57/4 57/15 58/8 58/12 59/18 60/24 61/4 63/6 63/15 63/18 63/21 64/11 64/14 64/25 65/14 66/14 66/18 66/20 66/22 69/2 69/17 69/20 70/16 70/20 71/7 71/10 71/14 72/15 72/20 72/23 73/2 73/13 74/4 74/15 76/3 77/15 77/23 78/4 78/9 78/15 88/2 88/12 88/16 89/12 89/15 89/19 90/3 91/10 91/18 91/21 91/25 92/8 92/13 92/22 93/6 93/9 93/23 95/19 95/22 95/24 96/9 96/13 97/7 99/2 99/6 100/6 100/16 100/20 100/22 101/4 101/7 102/1 102/4 102/25 103/3 103/7 103/9 103/22 103/25 105/1 105/4 105/16 105/19 106/2 106/10 106/13 106/18 107/2

THE COURT REPORTER: [2] 39/13 108/5

THE COURT: [572]

THE COURTROOM DEPUTY: [4] 3/1 46/10 119/2 165/19

**$**

$25,000 [1] 146/7
$40,000 [1] 146/7

**/**

/s/Kendra [1] 166/14

**0**

0050 [1] 98/5

**1**

1-5 [1] 1/11

10 [3] 96/9 119/17 122/11
100 [2] 20/21 20/21
10:04 [1] 46/12
10:23 [1] 46/12
10th [2] 59/24 60/9
11 [1] 119/24
11:57 [1] 119/4
12 [2] 110/20 111/8
12:08 [3] 107/22 107/24 107/25
12th [3] 51/19 51/24 53/8
13 [1] 119/18
1300 [2] 2/4 2/8
1455 [2] 2/12 2/17
1496 [1] 98/4
15 [6] 91/25 92/3 92/11 92/17 92/17 106/4
16 [1] 72/20
18 [1] 146/11
1813 [1] 3/2
1900 [2] 2/13 2/18
1:00 [3] 118/4 118/5 118/25
1:07 [1] 119/4
1st [3] 60/12 61/21 62/5

**2**

20 [2] 103/15 122/11
2016 [8] 98/13 103/5 103/16 103/16 103/21 103/21 104/17 104/22
2019 [1] 100/23
2020 [2] 103/9 104/23
2023 [3] 1/6 166/6 166/14
21 [1] 110/1
2100 [1] 2/22
22 [1] 106/4
22-1813 [1] 3/2
22nd [1] 106/5
25 [1] 20/12
27 [1] 92/17
29th [2] 57/6 61/2
2:00 [2] 118/10 118/14
2:00 o'clock [1] 118/12
2:05 [1] 165/21

**3**

3,000 [3] 51/9 67/18 67/20
3,400 [3] 67/20 67/23 68/1
3,700 [1] 67/25
30 [19] 9/19 10/6 11/7 18/11 38/14 52/18 52/19 52/21 52/24 89/10 98/25 99/13 101/3 101/8 101/21 106/14 114/5 145/25 154/13
300 [1] 68/11
31 [1] 60/2
31st [3] 60/10 60/13 96/1
33 [1] 122/13
330 [2] 2/4 2/8
34 [1] 23/25
37 [4] 92/1 92/3 92/11 92/17
3:00 o'clock [1] 118/19

**4**

40 [1] 145/25
400 [1] 68/11
405 [1] 2/22
4th [1] 53/10

**5**

50 [1] 145/25

**6**

60 [1] 18/11
61 [4] 121/12 121/13 128/1 128/14
6:22-cv-01813-MK [2] 1/5 166/4
6th [2] 2/4 2/8

**8**

8000 [1] 34/14
8th [3] 2/22 53/11 106/4

**9**

9/14/2023 [1] 166/14
97201 [4] 2/5 2/9 2/13 2/18
97401 [1] 2/23
9:06 [1] 1/6
9th [1] 53/8

**A**

abandon [1] 109/15
ability [2] 66/5 143/13
able [62] 8/6 8/13 9/12 10/14 10/15 10/18 10/21 13/4 15/5 15/8 17/8 17/19 17/24 18/8 18/16 22/4 22/9 22/12 22/17 23/2 24/25 26/24 27/1 27/5 27/15 27/16 28/19 34/10 40/4 51/14 68/8 68/22 69/24 71/1 71/20 72/1 73/12 74/19 75/9 79/14 83/16 84/24 88/22 89/21 90/5 90/5 90/11 90/24 91/8 98/2 98/3 98/22 104/12 104/16 105/20 107/21 114/18 133/21 144/11 147/14 159/18 164/10
about [161] 4/21 4/25 5/18 6/2 7/11 10/7 12/19 12/21 13/10 13/25 14/5 15/6 15/18 16/17 18/21 19/9 19/14 20/19 21/14 21/18 22/16 23/12 23/15 24/6 25/8 25/9 25/18 27/9 27/21 28/3 28/5 29/13 29/20 30/23 31/9 32/8 32/12 34/19 34/22 35/9 35/16 35/17 35/24 36/6 36/13 36/16 37/4 37/19 38/1 38/6 38/14 39/6 39/23 41/13 42/9 42/11 44/13 44/18 47/17 47/21 48/4 49/24 55/1 55/19 58/7 59/8 61/8 62/7 63/1 64/8 66/8 67/10 68/11 68/16 68/16 68/19 70/23 71/4 72/14 73/17 74/7 75/21 76/22 77/9 78/9 78/20

79/3 79/8 79/22 80/3 81/18 81/23 84/2 84/3 84/10 84/25 85/20 86/18 87/10 87/14 87/20 87/21 87/25 88/11 88/15 89/7 90/13 90/17 91/16 91/17 93/1 93/21 93/25 96/4 98/4 99/19 100/12 100/18 100/25 101/2 101/18 102/10 104/21 108/9 109/5 109/20 113/20 115/3 116/11 117/12 117/22 120/4 120/6 120/15 121/22 123/12 125/4 126/4 126/15 127/13 129/2 129/20 129/22 129/24 130/16 131/6 131/9 134/16 140/2 143/13 144/18 149/20 153/22 155/5 156/2 156/3 157/11 160/10 160/12 160/16 162/22
above [1] 166/10
above-entitled [1] 166/10
absence [2] 54/12 96/8
absent [2] 59/24 135/18
absolutely [5] 66/2 71/14 76/3 93/23 145/24
abuse [14] 63/19 77/25 79/22 79/24 80/20 80/22 81/9 88/4 90/17 93/9 93/12 93/14 129/21 152/10
abused [4] 81/7 81/10 130/10 140/24
accepted [1] 111/3
accepting [2] 57/24 110/7
access [46] 4/6 8/4 8/10 8/11 8/17 9/3 9/4 9/10 9/15 9/21 9/25 10/15 10/17 12/20 12/25 16/24 17/16 17/18 17/22 19/6 19/23 21/20 23/24 25/9 25/22 27/24 28/10 39/21 40/6 40/15 40/16 40/17 40/18 41/1 41/4 41/12 41/14 42/21 45/1 70/9 71/21 72/1 72/3 72/11 143/17 149/9
accessed [1] 16/5
accesses [1] 7/18
accessing [1] 15/5
accommodate [2] 4/14 56/15
accomplish [2] 23/14 37/19
accomplished [2] 22/1 23/22
account [5] 28/12 28/14 40/19 42/14 57/1
accurate [3] 22/13 108/22 124/9
acknowledge [2] 27/5 124/2
acronym [1] 39/14
across [1] 164/7

A

acted [1] 151/13
acting [1] 148/5
action [3] 20/24 71/20 71/25
active [1] 96/23
activities [3] 159/4 159/6 159/12
activity [1] 10/2
actual [6] 24/3 32/23 80/17 90/17 90/19 113/19
actually [24] 12/1 12/5 16/4 22/5 22/10 22/10 24/2 34/18 46/24 64/6 67/19 85/16 90/2 94/4 94/12 97/11 106/11 110/4 112/12 112/23 117/10 161/19 161/21 162/6
add [5] 7/20 76/22 124/19 145/8 146/19
added [1] 37/25
additional [7] 5/16 23/9 52/16 52/17 56/25 85/8 131/1
address [13] 33/5 33/22 51/23 75/25 96/8 106/15 107/13 107/15 117/19 134/15 146/9 158/1 165/8
addressed [1] 4/12
addresses [2] 39/5 75/1
addressing [3] 75/13 94/25 106/17
adjourned [2] 165/19 165/21
Administrative [1] 19/22
administrator [2] 141/10 141/14
admission [2] 124/5 124/22
admit [1] 124/3
admitted [3] 127/1 127/2 127/17
admonishing [1] 148/6
advance [2] 34/2 145/15
advantage [1] 159/22
advocating [1] 159/3
AEO [30] 66/15 68/11 69/3 69/7 69/13 69/17 70/13 70/14 70/19 71/12 72/10 73/3 74/9 74/16 74/17 74/22 75/22 76/9 82/18 84/2 84/24 85/6 85/10 85/17 85/22 85/22 86/17 86/20 87/8 91/25
affect [1] 128/13
affecting [1] 23/16
affidavit [5] 162/16 162/18 162/20 163/1 164/1
affiliated [1] 152/9
affirmative [5] 108/18 109/12 109/14 110/15 111/7
after [20] 18/2 18/12 22/10 31/15 46/4 46/16 52/13 53/4 53/20 53/24

60/17 63/21 65/9 86/10 91/10 107/7 139/16 139/16 140/18 160/14
afterward [1] 63/10
afterwards [2] 63/7 160/22
again [16] 25/16 27/15 51/20 61/10 83/12 90/25 92/2 105/3 110/10 110/13 110/16 114/18 118/11 129/23 137/22 146/25
against [10] 11/24 42/13 116/18 136/11 141/1 147/17 149/4 156/9 158/8 159/6
agencies [1] 43/3
agency [10] 1/11 16/18 21/10 44/14 58/4 58/21 101/16 137/5 152/2 152/2
ago [2] 18/1 45/4
agree [4] 4/14 35/11 83/13 85/16
agreed [2] 142/21 145/9
agreement [6] 34/1 38/24 57/6 61/15 62/1 105/25
agreements [1] 58/3
Ah [1] 92/18
ahead [9] 7/1 15/16 16/15 31/3 101/22 119/14 131/1 154/5 158/4
aid [1] 150/9
aim [1] 55/15
akin [1] 142/3
al [2] 3/2 166/3
ALBERT [1] 1/18
all [145] 3/3 3/23 3/25 4/2 4/15 5/17 5/20 5/22 9/21 15/14 17/11 18/9 20/16 20/24 21/17 24/4 24/11 24/12 25/7 26/15 27/6 27/12 27/20 27/22 28/12 28/17 29/23 29/23 39/16 39/22 43/15 43/21 45/5 45/23 46/6 48/6 48/14 50/23 51/17 51/18 51/21 53/2 53/2 53/3 53/3 53/10 53/20 54/20 56/3 56/3 56/9 56/19 56/21 57/3 58/2 58/8 58/10 60/11 60/15 61/6 61/6 61/6 61/8 61/21 62/21 63/11 65/3 65/13 66/23 68/5 69/11 72/1 72/11 80/17 81/8 85/16 87/10 87/16 88/14 88/22 92/4 92/25 93/5 93/6 94/23 95/12 95/14 95/15 99/5 99/20 99/21 100/21 102/16 102/25 105/8 106/3 106/4 106/5 106/15 106/19 106/20 107/2 111/1 112/19 116/17 117/2 117/7 117/24 118/9 118/25 119/1 119/6 119/11 119/14 124/13 124/14 124/15 126/7 126/8 127/21

130/7 132/15 134/8 136/8 136/14 141/24 146/8 146/13 146/22 147/24 147/25 149/10 149/12 154/25 158/15 158/17 159/12 162/4 162/13 164/9 164/25 165/4 165/8 165/11 165/14
allegation [2] 127/1 127/17
allegations [1] 13/10
allege [1] 108/18
alleged [3] 109/9 126/22 126/23
alleges [1] 128/2
allow [9] 15/16 23/1 23/10 41/22 44/15 84/12 131/10 160/25 160/25
allowable [1] 122/12
allowed [6] 10/10 20/19 40/18 40/20 87/20 132/16
allowing [2] 26/4 90/6
allows [1] 85/8
alluded [1] 117/21
almost [4] 49/2 67/18 99/21 128/12
alone [2] 27/3 101/23
along [7] 15/2 32/16 86/3 137/11 141/24 162/4 165/2
already [12] 6/10 8/23 57/2 59/1 102/3 113/6 122/14 140/18 141/19 152/17 152/24 161/2
also [41] 3/20 7/17 7/19 11/17 15/10 17/8 22/22 26/23 36/9 37/2 38/14 42/5 43/19 46/21 47/13 65/15 65/22 68/18 74/6 74/15 75/9 75/10 76/8 81/18 91/7 92/4 96/15 98/17 105/1 105/4 111/19 123/14 129/16 137/15 148/23 149/2 149/6 155/6 160/6 163/23 164/23
altered [1] 18/1
although [6] 4/15 5/14 48/6 57/1 146/11 158/25
always [2] 14/15 66/20
am [7] 1/6 8/2 46/12 46/12 59/19 93/4 119/4
amend [3] 110/1 127/19 132/15
amended [3] 109/12 110/8 132/5
amending [1] 132/4
among [1] 23/15
amount [6] 34/20 43/3 43/5 43/10 55/1 149/3
amounts [1] 65/21
analogize [1] 38/1
analogy [2] 22/7 27/14
ANASTASIA [1] 1/7
another [16] 9/6 20/23 22/4 27/4 36/21 48/17 111/24 111/25 114/15 116/6 124/23 129/17

142/15 142/20 155/8 164/12
answer [32] 32/11 74/11 81/14 84/25 108/18 109/12 110/1 110/8 110/16 114/1 119/23 120/10 120/14 122/20 122/24 123/1 123/12 123/16 123/17 124/11 124/13 125/17 126/2 126/12 126/12 126/23 127/20 132/4 132/5 134/2 153/15 160/13
answered [2] 11/9 127/1
answering [3] 74/18 121/17 122/22
answers [7] 12/25 37/11 37/13 74/18 123/20 131/16 156/22
antecedent [1] 128/16
anticipated [1] 23/25
anticipating [3] 70/11 72/21 72/25
anticipation [1] 139/2
any [62] 8/22 20/10 21/23 24/14 34/21 35/18 37/4 38/23 43/16 43/25 44/3 44/14 45/12 47/17 48/24 62/10 62/23 64/3 64/20 65/6 66/3 72/23 73/12 75/3 77/6 80/18 80/25 83/17 84/7 84/10 85/19 88/19 90/16 90/17 94/14 96/8 96/21 99/9 102/7 102/16 102/20 103/20 106/6 113/9 119/22 123/12 123/16 124/10 127/6 133/10 154/20 156/3 157/3 157/10 157/15 157/15 157/18 157/21 160/7 161/1 162/8 164/2
anybody [4] 40/20 86/6 159/13 164/8
anybody's [1] 21/24
anyone [4] 26/18 85/17 156/17 159/20
anything [15] 23/18 27/25 38/22 39/6 46/4 64/23 88/6 110/12 115/14 115/18 117/9 117/11 158/7 158/13 164/14
anyway [3] 35/23 50/20 161/4
apologies [2] 103/16 106/18
apologize [1] 162/18
apparently [1] 26/17
appeals [1] 150/6
appear [2] 10/17 146/17
appearance [1] 145/4
APPEARANCES [1] 2/1
appeared [2] 138/19 139/21
appears [4] 25/9 65/24 97/9 138/14
applicable [1] 130/19
applied [2] 100/9

103/17
applies [3] 25/25 134/12 134/12
apply [1] 163/8
applying [1] 9/11
appoint [2] 135/3 147/10
appointed [1] 137/9
appointing [1] 137/6
appreciate [14] 3/8 13/2 39/18 42/5 73/20 74/22 75/4 92/25 94/21 114/21 116/14 148/9 154/22 164/20
appreciating [1] 84/18
approach [2] 5/2 5/8
approaching [1] 5/1
appropriate [15] 9/9 13/4 36/24 43/9 55/10 64/21 65/2 78/8 90/10 101/19 114/25 115/5 158/23 159/19 159/23
appropriately [5] 22/25 64/21 69/23 70/19 158/22
approval [1] 31/16
approximately [4] 68/1 72/19 145/22 146/6
April [6] 49/14 50/25 103/13 103/15 103/16 103/21
April 1 [1] 50/25
arbiter [1] 78/6
arbitrary [2] 62/20 64/5
architecture [1] 8/3
archival [1] 150/5
are [224]
aren't [6] 34/16 35/9 90/24 123/20 125/12 153/22
argue [4] 4/24 119/12 120/19 136/16
arguing [4] 5/13 38/19 131/24 131/25
argument [17] 1/21 3/2 4/20 5/9 5/12 6/9 10/7 12/16 79/3 120/10 124/10 124/11 136/11 155/17 158/16 158/22 166/5
arguments [2] 5/23 124/7
arise [1] 40/9
arising [1] 87/22
around [9] 8/2 27/23 39/21 50/5 76/21 107/5 142/1 158/14 162/10
arrival [1] 63/4
arrived [1] 63/13
as [111] 3/7 4/10 4/18 6/23 10/8 10/13 10/16 10/17 12/15 12/15 13/11 14/11 14/12 14/23 15/14 16/3 18/21 19/11 19/18 19/24 20/1 22/23 23/21 24/11 25/3 26/21 33/6 33/12 34/6 35/4 35/12 37/24 37/24 39/20 42/9 44/5 44/25 45/1 51/16 54/9 55/1 57/6 59/1 61/2 65/1 65/24 66/3 68/9 68/9

## A

as... [62]  68/23 70/13 70/19 71/8 72/2 72/3 74/3 75/7 75/10 75/14 75/21 76/9 84/2 85/6 85/15 85/16 86/12 89/22 90/17 93/18 94/1 94/1 94/14 95/1 97/9 109/14 113/19 113/25 113/25 114/11 115/10 115/10 118/13 119/24 121/11 122/2 122/15 125/4 125/16 126/13 130/21 135/8 136/22 137/8 140/1 140/3 142/16 145/18 146/3 150/23 153/24 157/19 157/19 158/11 158/12 158/17 159/15 159/16 159/22 160/10 163/17 164/10
ask [32]  4/25 7/4 13/4 15/10 20/5 21/2 22/12 23/12 23/20 36/12 36/19 38/6 39/13 40/22 59/18 80/8 81/6 81/7 88/21 89/21 90/18 112/8 113/22 113/22 114/18 114/21 120/22 124/22 153/16 158/9 160/11 165/4
asked [21]  20/13 20/14 20/15 20/20 20/21 35/2 36/3 37/7 58/8 58/20 59/23 84/1 96/10 97/7 97/11 109/25 114/5 121/11 121/12 124/24 159/24
asking [22]  10/14 22/20 24/22 27/25 36/25 65/18 88/7 88/10 88/24 97/2 102/23 113/3 117/10 123/22 131/15 136/11 142/2 149/20 155/12 155/20 158/2 159/14
asks [1]  124/15
aspect [1]  35/20
aspects [1]  144/8
assert [2]  69/12 95/8
assertion [1]  115/20
assess [1]  143/16
assessment [1]  152/10
assessments [1]  129/21
assign [1]  56/6
assigned [3]  53/22 55/19 60/6
assignment [1]  60/5
assistance [3]  57/12 101/2 165/3
associated [3]  21/24 57/14 60/22
associating [1]  148/1
associations [1]  44/20
assume [2]  134/18 158/21
assuming [2]  8/5 162/8
attention [7]  46/22 60/19 105/22 106/7 106/20 107/10 164/20
attorney [24]  66/6 66/6

75/8 76/22 77/24 89/1 113/3 114/9 115/12 115/21 115/23 116/16 116/20 116/23 137/11 137/11 137/15 138/16 141/8 143/3 143/4 150/5 163/4 164/5
attorney-client [7]  113/3 115/21 115/23 116/16 116/20 116/23 163/4
attorneys [14]  5/13 19/10 19/10 19/14 19/15 78/14 78/22 80/25 81/6 81/8 82/21 82/23 85/19 141/21
attorneys' [15]  65/15 66/3 66/12 66/15 67/12 67/15 68/14 68/23 70/6 75/23 76/15 77/2 85/18 85/23 114/12
audit [15]  7/14 7/15 8/6 8/12 8/14 9/3 15/7 15/9 17/17 21/20 21/22 23/23 25/11 27/8 40/23
August [9]  53/8 57/6 59/24 60/2 60/9 60/10 61/2 96/1 97/10
August 10th [2]  59/24 60/9
August 29th [2]  57/6 61/2
August 31 [1]  60/2
August 31st [2]  60/10 96/1
August 9th [1]  53/8
authority [6]  78/6 115/11 142/5 143/21 153/13 153/19
authorization [1]  85/10
authorizations [1]  40/5
authorize [1]  65/6
authorized [5]  19/10 28/16 70/13 85/9 97/2
authors [1]  83/22
available [8]  8/23 24/13 37/23 40/5 72/2 80/5 96/15 129/18
avenue [4]  2/4 2/8 2/22 129/18
avenues [1]  84/5
avoid [2]  76/21 124/4
aware [3]  82/14 122/16 162/1
away [2]  12/8 86/17

## B

back [32]  16/8 18/4 18/6 32/18 36/15 37/8 40/21 44/1 45/6 46/6 51/7 51/13 52/4 56/19 60/19 77/7 85/5 85/21 86/12 101/23 108/13 109/20 118/4 121/8 126/5 147/7 160/13 162/6 162/6 162/21 162/23 165/6
backend [1]  8/11
background [4]  16/25 28/11 44/9 44/11
backing [1]  51/3
backseat [2]  29/3 29/9
banker's [1]  26/17

barring [1]  27/15
base [1]  142/7
based [5]  25/23 28/21 62/8 138/5 152/13
basically [1]  143/3
basis [8]  7/8 9/8 22/20 22/22 37/14 61/22 115/17 155/7
Bates [1]  122/11
Bates-numbered [1]  122/11
battle [1]  140/19
be [307]
because [101]  6/5 6/15 7/4 8/1 8/5 9/3 11/20 12/24 13/23 14/19 15/7 15/25 16/18 16/24 18/1 18/6 19/8 25/13 25/18 26/24 28/8 29/7 32/5 33/10 35/17 35/21 38/21 41/10 43/3 43/9 45/4 55/3 55/13 57/20 58/1 58/22 60/3 66/2 66/4 67/1 68/6 68/23 69/19 69/20 75/22 77/1 78/16 79/5 80/6 80/22 81/24 82/15 83/12 85/17 85/21 86/21 88/8 92/9 94/4 96/4 96/21 96/22 102/20 103/13 104/16 105/5 109/17 110/1 111/13 116/5 116/15 123/20 126/3 128/7 129/21 135/14 136/15 138/7 138/17 139/22 141/7 142/5 143/18 144/8 145/3 146/3 148/4 148/18 149/13 150/8 151/12 152/14 153/9 153/17 154/11 155/1 155/13 155/19 157/19 158/14 165/6
become [5]  19/16 37/9 37/14 37/23 100/10
becomes [14]  22/10 36/4 36/8 38/17 47/14 74/24 77/4 83/10 112/7 114/17 116/1 131/10 131/14 149/3
becoming [1]  99/25
been [78]  8/22 8/25 11/2 11/4 13/23 16/24 17/4 17/8 20/10 20/13 20/14 20/15 20/25 27/16 32/3 33/15 40/21 40/22 42/12 43/13 44/24 45/4 49/4 49/24 54/3 59/11 59/15 59/20 60/16 68/10 69/7 70/12 70/18 70/19 75/6 78/2 78/23 78/23 80/3 81/7 86/10 87/10 87/15 89/22 93/17 94/25 98/2 98/3 98/21 99/12 99/18 100/2 101/9 103/22 104/16 106/25 108/25 109/9 109/18 110/1 113/6 114/24 119/19 125/9 127/11 130/21 132/12 133/21 135/17 140/24 141/19 146/20

146/21 147/4 153/12 156/9 157/21 159/16
before [29]  1/23 6/14 9/8 9/20 20/10 20/15 20/22 23/18 39/8 41/11 53/22 53/23 56/11 71/7 80/19 82/13 90/18 91/18 99/11 103/23 107/22 111/22 132/1 132/9 132/18 155/15 161/1 162/6 165/5
beginning [1]  74/22
behalf [2]  138/14 141/13
behest [1]  145/13
behind [1]  111/15
being [30]  15/5 15/8 18/25 20/19 22/9 22/12 22/17 26/24 27/5 28/19 35/2 36/3 49/21 71/1 73/12 74/11 74/19 75/9 88/22 89/21 90/5 93/10 97/6 113/7 113/10 114/5 120/3 134/17 139/8 145/10
belief [1]  156/25
believe [30]  5/11 18/10 20/14 31/21 39/10 43/15 54/19 57/5 57/8 59/1 60/24 67/25 69/12 73/13 74/4 74/7 74/15 98/18 101/7 103/22 104/4 108/22 122/19 124/9 137/24 138/1 152/5 163/3 163/19 164/14
below [1]  166/8
bench [1]  94/19
benefit [2]  78/12 116/25
best [1]  122/21
better [3]  9/17 136/15 139/20
between [11]  5/12 11/15 74/20 92/19 93/16 102/17 103/20 122/11 123/15 146/7 163/24
beyond [5]  75/13 75/16 75/17 79/7 79/7
big [3]  46/5 46/24 107/9
bigger [2]  36/8 116/1
biological [6]  30/14 30/18 58/23 65/25 68/4 68/19
bit [14]  16/14 18/4 36/16 52/16 55/18 55/23 68/20 77/8 83/25 94/4 121/9 151/9 155/5 159/5
bite [1]  85/21
BLAESING [36]  2/16 3/17 3/19 5/23 27/22 31/3 33/21 34/25 35/17 35/25 38/11 39/12 43/12 45/24 47/17 48/24 50/15 53/16 55/8 58/15 61/10 71/16 73/7 75/5 75/17 83/18 87/8 88/18 90/25 91/4 92/9 95/1 101/1 102/10 115/15 117/3
Blaesing's [1]  114/22

blank [1]  87/21
blanket [1]  80/16
Bless [1]  4/8
blind [2]  90/15 90/15
block [1]  55/16
blocking [1]  56/12
blurry [2]  34/16 37/3
board [1]  164/7
bolts [1]  27/22
Bosworth [2]  2/3 2/7
both [17]  4/20 5/9 12/14 23/6 23/16 34/3 34/4 37/4 47/2 76/1 87/16 105/20 128/11 130/8 146/1 154/7 165/1
bottle [1]  24/7
bottom [1]  14/24
boundaries [3]  11/17 23/9 115/13
bracket [1]  128/3
brackets [1]  128/2
branch [1]  84/8
breadth [2]  130/18 130/25
break [7]  46/12 95/11 107/22 108/4 108/15 117/6 119/4
brewing [1]  32/5
brief [6]  46/6 61/14 116/3 116/4 116/14 159/8
briefing [5]  6/10 117/1 117/3 159/24 165/9
bring [7]  46/22 60/18 105/21 106/7 106/7 147/11 147/12
bringing [3]  71/20 71/25 150/9
brings [2]  7/16 28/7
broader [3]  71/22 129/12 157/14
broadly [1]  157/19
Broadway [2]  2/12 2/17
broke [1]  108/24
brought [4]  68/19 135/4 149/15 150/21
bump [1]  51/17
bunch [1]  116/6
Burnell's [1]  20/11
business [2]  148/23 148/24

## C

calculated [1]  145/20
calendar [1]  49/15
calendaring [1]  51/5
call [6]  14/8 14/18 25/23 75/25 76/16 152/1
called [3]  3/11 14/8 26/3
calling [1]  76/15
came [5]  12/12 89/25 127/14 141/9 155/15
can [161]  5/18 6/2 8/11 8/11 8/14 8/18 10/15 12/8 13/2 13/24 14/11 14/11 14/16 14/17 14/23 15/1 15/7 15/10 15/11 16/3 16/17 17/16 17/24 18/4 18/11 20/5 20/6 20/6 21/20 21/25

C

can... [131]  22/7 22/8 22/25 23/11 23/11 23/14 25/14 25/22 25/22 26/9 26/12 26/18 26/21 29/8 32/14 33/1 33/21 34/1 34/6 34/17 35/11 35/12 35/19 36/24 37/4 37/7 37/18 39/13 40/15 40/16 41/2 43/1 44/18 45/9 46/19 47/2 47/3 47/22 49/6 49/8 51/21 54/11 55/17 55/19 56/7 56/15 56/16 56/17 57/3 61/21 65/14 66/11 66/12 66/12 72/4 72/7 72/10 73/22 74/10 75/4 75/13 75/15 75/20 75/20 75/25 77/1 77/22 78/8 78/24 79/18 79/18 80/4 80/13 80/21 83/11 83/21 83/25 84/2 85/8 85/9 85/11 87/7 87/15 88/20 88/21 89/1 89/24 90/19 91/23 93/25 95/2 98/22 102/10 105/5 105/17 105/25 106/4 106/22 109/5 110/12 111/22 112/5 113/21 113/22 113/22 114/21 114/21 115/2 115/10 115/14 116/18 116/21 117/7 118/4 120/22 121/21 124/6 124/23 125/2 126/1 126/11 127/19 131/13 137/23 137/24 140/16 141/12 142/21 144/5 152/20 163/8
can't [25]  13/23 18/1 18/5 18/15 25/13 38/6 41/18 41/18 43/2 45/6 82/18 82/18 89/8 90/4 90/8 110/2 111/14 118/20 135/14 137/24 138/23 141/23 144/25 146/14 158/16
candid [1]  100/17
cannot [5]  16/17 41/8 70/6 138/23 144/6
cap [2]  26/23 33/20
capacities [1]  1/12
capacity [5]  1/7 1/8 1/9 1/10 151/13
cards [2]  131/18 148/12
care [17]  33/4 52/2 54/16 57/4 57/13 65/14 68/15 68/20 70/24 100/22 103/18 103/23 103/24 103/25 104/7 120/8 140/25
carefully [1]  122/15
Caroline [1]  20/11
carve [4]  75/15 75/18 87/4 90/7
carve-out [1]  87/4
case [112]  1/5 3/2 4/17 7/11 8/20 9/5 9/6 9/7 9/14 9/23 9/24 10/2 10/14 10/16 10/16 10/22 11/11 11/12

11/15 11/15 12/22 12/23 13/15 13/17 14/10 14/24 18/1 18/6 18/9 18/12 18/24 18/25 19/5 19/25 20/24 20/24 21/2 26/6 30/1 31/17 33/4 33/6 49/23 49/23 50/9 50/20 51/15 51/17 53/21 53/22 54/1 54/24 55/3 55/19 55/25 56/4 59/13 59/14 59/16 59/24 60/7 61/1 62/8 62/10 62/13 62/21 63/2 63/8 64/12 71/11 71/25 78/13 78/22 79/6 80/6 86/21 86/22 88/1 90/5 105/10 113/7 114/7 120/2 120/15 120/15 120/18 122/14 132/23 133/4 133/6 134/23 134/24 134/25 135/2 135/15 139/25 140/3 141/9 142/5 146/14 147/16 150/12 150/21 150/21 152/25 154/1 155/10 156/21 159/4 159/7 162/2 166/4
cases [6]  12/24 16/23 63/3 63/4 78/10 149/16
caseworker [9]  8/10 10/17 14/20 14/20 15/9 17/18 17/25 18/11 161/21
caseworkers [4]  14/23 18/6 25/3 120/18
categories [5]  72/7 83/25 132/20 134/8 154/7
categorized [1]  58/13
category [3]  89/1 91/5 94/13
caught [1]  77/8
cause [2]  43/24 166/10
causing [1]  19/16
cell [10]  91/16 98/19 99/18 99/20 100/7 102/7 102/17 104/16 105/7 120/25
cellular [1]  95/22
center [1]  152/10
certain [11]  10/10 18/2 31/17 43/5 59/20 61/20 84/12 88/11 126/12 144/8 160/24
certainly [5]  19/17 73/8 80/2 88/24 161/3
certificate [1]  31/16
certification [9]  56/23 57/18 57/20 57/21 59/9 59/21 59/22 59/22 60/8
certified [2]  100/10 166/12
certify [1]  166/8
cetera [3]  14/22 86/14 88/21
challenge [2]  36/11 38/23
challenged [1]  38/15
challenges [1]  38/18
challenging [1]  36/8
chance [4]  16/14 16/20 60/2 77/10

change [3]  16/3 120/7 126/24
changed [4]  18/15 37/25 102/17 109/21
changes [1]  8/20
channels [3]  45/16 49/5 148/22
CHAPMAN [3]  1/7 3/2 166/3
characterizes [1]  123/8
charge [1]  99/7
check [6]  16/25 28/11 44/9 107/7 108/2 117/13
checklist [1]  4/18
child [30]  29/19 29/19 32/23 33/3 59/11 63/21 65/8 65/9 65/10 66/3 72/16 72/18 72/22 73/1 77/24 79/7 80/20 81/10 87/17 87/20 93/9 93/14 129/21 130/14 139/13 141/4 142/19 152/10 154/8 154/15
child's [2]  29/13 141/11
children [64]  29/19 29/19 29/22 55/3 57/5 57/7 57/14 57/24 57/25 58/1 58/22 60/23 60/25 61/1 61/9 61/13 61/14 62/18 63/8 64/14 64/25 65/19 66/8 67/10 68/15 68/18 69/23 70/25 71/1 72/3 72/12 78/17 78/21 79/22 79/24 80/10 80/18 81/8 82/23 86/24 86/25 87/4 87/12 87/13 88/3 88/9 88/11 88/23 90/14 103/25 104/7 120/9 126/15 127/12 129/17 129/19 129/24 130/10 130/12 130/16 130/22 130/25 140/24 141/1
children's [5]  63/2 65/25 73/1 87/17 87/23
choice [2]  6/17 149/17
choices [5]  14/20 15/2 42/7 42/9 42/10
chose [1]  147/16
circle [1]  16/8
circuit [1]  126/1
circumstance [1]  38/25
circumstances [4]  13/16 153/18 158/24 159/17
cite [2]  90/8 124/1
cited [1]  134/9
civil [4]  3/1 66/6 79/5 80/7
CJIS [1]  44/22
claim [6]  9/5 102/20 108/19 108/20 111/8 160/11
claims [9]  19/22 42/13 108/25 109/8 143/16 143/17 147/11 149/4 162/9
clarification [5]  31/2 39/8 65/4 129/3 154/23
clarified [2]  128/17 160/6
clarify [13]  16/16 28/2

28/5 29/17 42/17 90/5 92/17 95/12 125/2 131/2 150/13 151/12 158/5
clarifying [1]  61/7
clarity [1]  85/25
class [2]  20/24 67/23
classes [1]  86/24
classification [5]  71/13 76/25 84/12 87/11 90/12
classifications [1]  76/25
classified [1]  70/19
classifying [1]  77/9
clause [2]  69/21 70/5
clear [12]  24/23 27/24 41/21 55/15 55/18 72/9 85/22 104/20 122/8 126/6 147/20 148/6
clearance [2]  41/7 48/22
clearly [3]  114/12 115/12 116/15
click [2]  14/11 28/19
clicking [2]  28/18 28/23
client [33]  7/5 15/6 24/16 24/19 24/25 28/3 39/20 66/5 69/6 88/21 89/20 90/11 113/3 114/9 114/16 115/21 115/23 116/16 116/20 116/23 127/10 148/2 148/4 148/17 148/19 148/20 148/21 153/10 153/19 156/24 158/6 158/11 163/4
client's [3]  26/6 33/12 41/9
clients [15]  48/25 73/17 81/7 82/7 113/5 114/14 146/20 147/1 147/4 148/7 149/8 149/9 150/11 150/13 153/10
clients' [3]  14/24 27/23 153/25
clip [1]  35/19
close [4]  52/6 53/6 95/8 95/9
closed [2]  31/15 53/11
closer [1]  48/15
closes [1]  52/13
cocounsel [1]  40/10
coded [1]  86/14
coding [1]  69/9
cold [1]  86/14
collateral [1]  99/25
colleague [1]  138/15
collect [1]  104/16
collected [2]  99/20 102/6
collecting [5]  58/25 59/5 61/19 102/21 102/22
collection [5]  59/2 100/7 101/12 101/13 103/6
come [22]  16/8 37/8 39/20 41/11 42/9 44/1 45/6 46/4 46/6 63/19 63/20 80/13 85/21 108/13 118/4 126/5 126/9 140/6 140/16 142/1 149/23 165/5
comes [9]  36/21 51/6

64/1 70/24 90/22 94/5 101/25 104/20 125/11
comfortable [1]  6/16
coming [8]  10/18 22/22 38/22 45/24 67/1 88/4 160/12 162/10
Comma [1]  92/20
commercial [1]  82/4
commercializing [1]  82/4
commitment [1]  67/11
committed [3]  60/11 61/2 67/17
communicate [3]  66/5 66/7 105/7
communicated [1]  44/12
communication [3]  43/5 80/10 164/5
communications [6]  113/4 113/11 113/13 113/20 113/21 115/24
comparators [1]  81/1
compare [1]  90/19
compatible [1]  42/25
compel [3]  116/10 118/3 137/18
competing [1]  82/7
competitive [2]  82/8 82/11
compile [1]  69/14
complaint [8]  13/11 44/24 108/17 121/13 121/13 128/2 128/7 155/7
complete [9]  24/14 36/24 37/8 51/21 60/11 97/7 105/17 128/1 153/15
completed [2]  53/3 53/11
Completely [1]  69/4
completing [1]  52/11
complex [1]  106/23
compliance [2]  45/7 75/12
complicated [5]  74/2 108/7 111/12 111/24 111/25
complication [1]  40/14
complications [2]  34/21 40/9
complied [1]  60/20
comply [3]  41/19 41/24 42/1
comprehension [2]  74/14 74/14
compromise [1]  93/14
computer [2]  17/20 25/21
concede [1]  149/22
conceptually [1]  25/20
concern [26]  31/12 35/1 36/1 38/12 39/5 41/10 41/15 41/16 44/25 64/11 64/16 70/1 70/1 71/25 72/4 73/17 74/7 77/7 77/8 82/4 83/13 93/14 121/4 123/24 124/17 126/3
concerned [8]  42/11 49/20 75/22 79/20

**C**

concerned... [4] 84/11 100/17 115/10 129/20
concerns [27] 11/8 33/23 41/13 66/8 79/24 93/10 96/3 96/5 100/12 120/3 120/18 121/1 122/16 123/5 126/8 126/25 127/3 127/6 127/9 128/4 128/15 128/24 129/2 130/5 130/13 130/14 130/16
concludes [1] 137/19
conclusion [1] 126/9
concrete [1] 78/20
condition [5] 57/5 57/13 65/15 70/24 120/8
conditions [1] 132/11
conduct [1] 90/15
confer [23] 15/24 24/13 46/19 47/2 49/11 60/18 73/21 78/6 95/1 96/4 99/15 101/18 105/11 105/15 105/20 105/25 117/2 129/16 160/4 160/12 161/1 161/4 165/9
conference [6] 8/16 55/12 56/10 56/15 61/18 141/20
conferral [6] 32/12 74/1 105/18 106/5 109/11 164/25
conferrals [3] 61/17 76/11 86/11
conferred [2] 44/12 129/7
conferring [1] 86/18
confess [1] 79/7
confident [1] 138/5
confidential [26] 47/21 67/15 68/5 71/8 71/13 75/25 76/14 76/17 79/18 85/24 86/6 87/9 87/17 89/1 91/8 91/21 93/7 93/20 94/1 94/2 94/10 94/15 139/14 140/1 142/19 155/11
confidentiality [10] 17/1 67/24 71/6 71/13 71/19 79/4 93/11 120/4 141/3 153/1
confined [1] 6/22
confinement [5] 63/9 128/9 128/10 128/14 130/19
confirm [6] 42/23 57/11 74/10 80/22 104/12 133/24
conflict [2] 49/22 144/3
conformed [1] 166/11
confounder [1] 120/9
confused [1] 157/12
confusing [1] 131/11
confusion [2] 76/21 131/14
conjunction [1] 19/18
connect [1] 74/19
connection [6] 57/21 59/20 60/5 89/23 95/24 112/3

consent [6] 53/25 54/1 54/3 54/9 54/12 54/13 54/14
consequences [1] 42/7
consequently [1] 129/5
conservator [12] 71/24 72/16 135/3 137/6 137/9 137/10 147/10 147/12 151/13 151/16 156/5 156/6
conservator's [1] 138/20
conservatorship [4] 137/7 137/8 137/21 150/4
consider [8] 11/19 23/9 23/18 23/20 49/12 96/10 153/14 159/23
considerable [1] 139/16
consideration [2] 27/4 65/12
considerations [2] 28/9 45/25
considered [1] 35/12
considering [2] 80/9 158/18
consistent [5] 76/11 104/22 121/25 163/24 164/7
consistently [2] 141/21 159/16
consolidated [2] 4/10 57/9
constellation [2] 71/18 94/9
constitutes [1] 123/9
constructive [1] 23/15
construe [1] 159/15
construed [1] 41/21
contact [1] 44/20
contain [2] 124/12 124/14
contained [2] 97/9 125/12
contains [1] 124/17
contemplate [2] 83/21 150/1
contemplated [1] 84/22
contemplates [1] 150/8
contemporaneously [1] 77/25
content [2] 77/11 88/22
contention [1] 135/14
context [5] 22/14 86/21 87/15 121/9 136/15
continue [6] 39/2 49/6 49/8 119/6 131/12 152/21
continuing [3] 11/10 11/12 98/6
contract [2] 116/16 116/19
controlled [1] 12/21
controlled-type [1] 12/21
controls [1] 135/22
conversation [4] 23/15 28/7 89/17 89/24
conversations [1] 87/20
convey [1] 66/9
conveyed [1] 142/10
convicted [3] 44/24 100/10 102/9

conviction [2] 100/12 106/14
convince [1] 86/11
cooperate [1] 98/23
coordinate [3] 42/23 43/2 51/21
coordination [2] 43/5 43/10
copies [5] 14/14 15/21 61/23 139/22 150/5
copy [5] 12/15 40/23 59/9 59/22 60/8
corporate [1] 112/5
correct [17] 10/20 11/13 14/15 38/8 48/10 92/24 94/17 102/3 109/24 113/24 123/19 135/21 144/14 144/23 147/6 151/3 166/9
correctly [1] 28/4
correspondence [1] 67/1
cost [17] 27/3 27/4 138/10 145/18 148/15 148/19 149/2 149/17 149/18 155/25 158/10 158/23 159/2 159/14 160/4 160/16 165/9
costing [1] 26/25
costs [9] 26/23 138/7 148/21 149/6 149/12 153/13 153/14 153/20 159/17
could [32] 6/12 10/24 17/21 23/22 27/14 34/8 34/12 34/12 38/1 39/25 43/8 45/4 46/22 53/4 55/2 56/13 60/4 66/16 70/18 73/10 80/16 81/2 83/10 94/22 105/11 105/24 108/12 109/20 110/22 120/24 124/19 134/3
couldn't [1] 9/12
counsel [36] 3/3 3/6 9/7 9/17 16/19 17/18 18/7 20/3 21/1 25/24 28/10 28/18 28/19 33/19 33/25 36/5 36/12 38/13 50/14 67/16 79/16 79/19 79/21 80/10 80/18 85/9 87/19 90/14 98/21 135/17 146/16 151/14 151/18 156/12 163/19 164/3
Counsel's [2] 17/7 156/2
counted [1] 122/10
country [1] 131/8
county [12] 98/16 133/2 137/9 137/13 138/13 138/14 139/7 139/9 139/15 151/5 152/11 159/11
couple [6] 8/25 9/10 28/7 39/25 43/12 134/9
course [11] 24/10 70/23 81/9 85/3 139/19 140/20 140/22 141/19 143/11 148/23 148/24
court [89] 1/1 2/21 6/12 12/12 12/16 12/17

13/23 15/25 28/21 38/5 44/15 46/10 59/14 66/25 71/22 71/23 75/11 77/24 80/2 85/9 85/10 86/5 94/6 94/11 94/16 94/19 96/10 99/11 101/2 108/3 109/25 110/2 110/13 110/17 119/2 119/19 119/20 120/22 125/24 126/6 127/15 127/15 127/19 133/3 133/7 133/8 133/8 135/20 136/11 136/23 137/9 137/13 137/23 138/14 138/15 138/21 139/7 139/9 139/14 139/16 139/24 140/3 141/10 141/14 141/22 142/11 143/18 143/20 143/21 144/1 144/8 144/10 144/16 144/24 149/16 149/16 151/5 154/12 154/13 155/22 157/9 159/12 161/8 161/16 162/3 162/24 165/6 165/19 166/14
Court's [11] 24/6 39/18 41/25 86/16 97/15 120/12 121/4 121/5 121/15 129/6 160/22
Courthouse [1] 2/21
courts [2] 14/14 143/25
cover [2] 84/16 153/19
covered [2] 35/23 89/4
CPS [15] 57/16 57/19 57/23 58/5 58/10 58/22 58/24 59/10 60/6 60/21 60/25 61/8 70/9 70/25 105/10
craft [2] 75/15 101/8
crafted [1] 44/6
crafting [1] 74/25
create [2] 25/15 87/9
created [4] 14/12 14/16 18/10 105/6
creates [1] 19/15
creating [2] 28/12 28/14
creation [1] 7/11
credentials [4] 42/21 42/22 42/25 43/1
credibility [2] 38/15 38/18
criminal [1] 66/6
CRR [2] 2/21 166/14
crux [3] 67/7 134/10 134/21
curiosity [1] 20/8
curious [1] 35/5
current [8] 79/9 86/7 98/14 99/20 100/6 101/12 101/13 102/21
currently [9] 12/22 68/13 83/20 97/14 101/16 101/17 102/7 130/17 141/5
custodian [4] 70/10 83/22 98/24 106/14
custodians [9] 96/25 98/16 99/20 101/15 101/17 101/21 102/6 102/15 102/17

custody [2] 32/24 58/23
customized [2] 14/17 26/3
cut [2] 102/7 102/12
cv [2] 1/5 166/4

**D**

DAS [1] 19/21
dash [2] 125/25 125/25
data [20] 7/20 10/18 15/1 15/7 15/8 15/10 15/19 15/21 21/23 22/8 27/7 33/17 40/22 40/24 41/2 65/7 90/19 100/7 102/6 102/8
database [26] 7/16 7/25 8/8 8/9 9/16 17/14 17/16 17/25 20/4 20/8 24/3 24/16 24/20 24/23 25/20 25/21 27/24 28/1 28/17 28/20 29/14 32/25 36/19 40/16 41/13 42/22
databases [2] 7/19 8/4
date [20] 9/5 14/14 14/15 48/10 48/11 51/20 52/11 52/12 54/23 61/4 61/20 63/14 63/15 68/9 68/10 98/9 100/23 103/6 125/17 166/14
dates [7] 7/11 50/9 50/24 51/23 55/20 102/24 163/18
day [5] 17/14 26/12 26/13 94/5 164/12
days [8] 9/11 18/11 52/18 52/19 52/21 52/24 62/19 110/2
deadline [3] 48/9 51/18 53/7
deadlines [1] 4/13
deal [6] 44/1 46/5 70/17 90/13 116/5 131/18
dealing [1] 78/18
debate [1] 149/24
decided [1] 127/13
decision [2] 78/7 116/11
decisions [2] 46/17 47/9
declaration [7] 10/9 17/15 20/11 38/15 114/23 164/1 164/8
declarations [4] 44/6 112/4 113/8 164/11
declination [1] 42/1
decline [1] 41/19
decoupled [1] 80/22
dedicate [1] 149/14
deeper [1] 155/5
default [2] 54/15 54/17
defend [4] 42/13 147/17 150/11 150/12
defendant [8] 1/19 54/4 61/10 80/7 104/6 133/21 154/11 154/12
defendants [35] 1/13 2/10 2/15 3/15 3/18 3/21 4/4 24/10 48/12 48/23 49/4 57/16 57/23 59/19 60/20 65/1 65/22 67/8 68/21 80/7 93/6 98/18 98/23 99/10

**D**

defendants... [11] 99/14 107/14 109/10 111/6 119/21 120/7 124/2 147/25 148/10 160/2 164/15
Defendants' [10] 6/5 28/11 57/9 92/6 96/20 107/10 117/15 119/16 123/4 132/19
defended [2] 158/8 158/8
defense [17] 9/5 19/24 25/24 33/19 36/12 50/14 108/18 109/12 109/14 110/9 110/16 110/24 111/7 116/15 116/17 145/15 147/1
defer [1] 4/15
define [1] 77/1
definite [2] 109/23 109/25
definitely [1] 56/2
definition [1] 77/3
definitively [1] 41/8
degree [2] 124/8 154/10
delay [1] 49/21
deletion [1] 10/2
deliberate [2] 80/6 117/1
delve [1] 155/5
demand [2] 78/8 147/14
demonstrate [2] 122/17 122/18
demonstration [1] 140/23
denial [1] 23/8
denied [3] 20/21 20/22 113/6
denies [1] 139/15
deny [3] 126/10 137/23 141/4
DEPARTMENT [9] 1/10 1/14 7/5 19/19 19/21 133/3 145/15 145/16 150/24
dependency [1] 139/23
depending [2] 53/21 96/6
deponents [5] 20/5 22/15 70/13 75/18 113/23
depose [2] 10/10 14/2
deposed [3] 38/13 84/19 113/7
deposing [1] 82/23
deposition [33] 9/19 9/19 10/6 11/7 13/4 14/5 23/23 35/13 35/14 36/2 36/4 36/9 37/15 38/14 70/2 70/7 71/2 74/20 80/15 82/17 82/20 83/22 84/2 84/25 98/25 99/12 99/12 99/13 101/3 101/8 101/21 106/14 113/23
deposition-type [1] 36/9
depositions [10] 15/12 37/10 49/21 51/15 52/25 74/5 74/6 90/23 112/13 112/20

derive [1] 15/19
derived [4] 35/13 73/4 73/14 88/8
derives [1] 159/3
describe [6] 18/8 30/24 89/2 89/10 123/21 123/22
described [3] 33/16 59/4 145/18
describing [4] 16/19 17/7 124/18 124/19
description [1] 72/7
designate [1] 68/23
designated [8] 67/11 67/17 69/3 69/7 70/13 74/17 84/24 138/2
designating [1] 85/6
designation [11] 66/16 69/13 70/18 73/3 74/16 74/23 74/23 87/8 87/9 152/25 153/2
designations [2] 65/16 69/11
designed [2] 105/6 141/1
destroy [1] 160/21
destroyed [2] 97/1 97/2
destroying [1] 150/7
detail [1] 164/23
detailed [1] 84/11
details [4] 54/21 75/20 90/8 165/5
determination [1] 77/20
determine [3] 18/20 40/3 77/10
determined [1] 75/24
develop [1] 15/4
developing [1] 13/11
development [2] 39/3 114/23
device [2] 34/20 96/18
devices [1] 101/16
DHS [112] 9/4 9/7 9/20 14/13 16/22 17/5 19/9 19/18 19/25 20/10 20/12 20/23 28/16 28/22 32/22 32/23 33/4 33/18 35/3 36/3 36/13 36/17 40/4 41/16 41/19 41/24 42/12 42/15 42/21 42/23 43/2 43/4 58/2 58/23 66/10 68/15 70/3 70/4 70/23 71/2 71/4 71/5 72/9 75/19 78/10 79/9 81/13 83/14 83/18 84/1 84/15 84/17 84/18 84/23 84/24 84/24 85/11 86/7 91/6 93/17 93/21 94/1 94/1 94/6 94/15 96/16 112/10 114/15 115/22 116/12 120/4 122/16 125/25 126/24 127/3 127/5 128/3 128/10 128/14 133/23 136/4 137/1 138/7 139/22 139/22 141/19 141/23 141/24 143/24 145/4 145/5 145/13 146/1 146/2 146/9 147/22 148/24 150/13 150/14 150/16 150/22 150/23

151/19 152/10 155/9 155/18 155/20 155/21 158/6 158/7 158/9 158/11
DHS's [6] 33/22 45/7 103/18 138/19 158/9 162/4
did [51] 9/22 10/4 17/25 21/2 21/6 24/7 37/23 48/12 49/18 54/2 59/9 61/15 67/18 69/12 78/10 78/10 79/12 80/10 80/12 80/21 81/9 81/13 90/2 97/23 102/25 108/20 111/14 112/8 113/4 114/9 114/18 117/21 120/25 121/15 122/7 122/12 125/8 126/7 130/5 130/16 138/10 139/21 141/9 142/4 150/16 150/17 156/5 157/6 158/6 158/15 163/3
didn't [18] 12/6 15/24 50/21 70/22 79/11 81/13 81/21 91/13 95/6 98/11 122/8 126/12 129/2 129/3 147/12 157/7 157/10 161/17
difference [2] 20/20 93/16
different [33] 5/1 5/3 7/19 10/3 11/14 12/25 16/19 18/9 26/10 30/3 30/23 31/11 32/20 33/9 35/25 36/7 47/16 49/5 59/14 59/15 62/22 63/24 67/23 76/16 86/24 101/1 106/1 114/8 121/12 132/20 134/1 134/9 147/8
differently [2] 35/16 105/7
difficult [3] 113/9 140/24 153/12
difficulty [1] 126/5
digital [2] 15/20 15/21
digitally [1] 166/12
direct [5] 23/24 32/15 88/7 122/7 122/8
directed [3] 110/21 122/6 122/9
direction [3] 28/24 121/22 148/14
directly [1] 123/10
disagreement [2] 77/9 128/22
disallow [1] 84/12
disclose [8] 78/11 80/24 115/2 126/24 127/4 127/8 128/4 128/15
disclosed [4] 51/25 64/23 90/17 121/23
disclosing [2] 81/19 93/22
disclosure [4] 73/6 75/7 78/8 153/3
disclosures [6] 52/2 52/10 52/13 52/19 53/3 53/9
disconnect [1] 125/22
discount [1] 126/10

discoverable [9] 104/25 124/5 149/10 149/22 149/24 153/8 160/3 160/15 163/20
discovered [4] 31/13 81/13 123/17 161/19
discovery [47] 4/13 4/13 20/6 23/2 24/15 41/12 43/22 45/15 46/8 49/5 49/8 50/23 51/22 51/24 52/2 52/6 52/6 52/12 52/13 52/25 53/3 53/6 53/10 65/2 69/10 71/21 71/21 76/5 80/23 86/13 93/10 99/18 99/24 99/24 100/1 100/2 100/3 102/2 110/5 125/15 125/16 127/11 149/9 149/14 149/17 162/2 164/23
discretely [1] 116/8
discuss [11] 10/4 16/14 28/8 65/15 75/2 77/11 82/18 88/6 90/23 105/5 114/10
discussed [5] 10/24 91/6 93/19 95/17 160/14
discussing [3] 73/4 87/15 95/13
discussion [12] 21/4 24/12 62/25 73/7 75/5 75/14 77/12 77/13 84/13 84/19 116/11 120/6
discussions [1] 83/18
disown [1] 126/10
disposition [1] 150/4
dispositive [6] 52/1 52/3 52/7 53/11 53/20 53/24
dispute [11] 28/4 31/9 35/9 58/7 62/7 85/4 105/22 115/20 116/1 134/6 134/21
disseminate [1] 143/14
distill [1] 86/3
distinction [3] 41/2 88/20 157/13
distinguish [1] 164/10
distract [1] 159/21
distracted [2] 106/19 159/23
district [7] 1/1 1/2 2/21 2/22 44/15 53/23 53/24
divided [1] 5/12
DIVISION [20] 1/3 9/15 138/15 140/4 141/9 141/22 142/18 143/1 143/17 144/6 144/11 144/16 144/19 144/20 144/24 145/1 145/10 145/11 146/2 159/6
Division's [2] 144/3 159/4
divulge [1] 88/22
DMP [1] 138/2
DNA [3] 22/4 22/4 24/7
do [102] 4/21 7/24 8/13 9/18 14/23 15/17 16/17 16/22 20/6 26/5 26/18 27/6 27/16 29/8 29/9 34/10 34/17 34/19

34/19 37/2 38/9 38/25 40/2 40/4 40/6 40/16 43/8 43/9 43/9 44/17 44/18 44/21 45/16 46/24 47/15 49/6 51/20 52/1 52/6 52/7 52/10 52/10 52/12 52/14 53/5 54/1 54/17 55/2 56/17 58/6 61/22 62/25 66/4 66/16 73/10 74/4 78/15 80/5 80/15 81/2 86/2 86/2 86/18 88/24 91/16 94/19 95/16 98/1 99/10 99/23 101/8 108/1 110/2 110/19 110/20 111/4 115/20 115/22 117/13 118/10 118/21 123/15 123/22 125/18 125/18 126/8 126/18 131/4 133/22 136/12 136/13 138/22 140/6 141/18 143/6 143/21 150/14 151/24 153/14 158/7 162/14 165/4
docket [1] 165/7
document [25] 70/7 70/9 72/10 77/9 77/11 77/11 77/14 77/17 77/17 77/22 78/7 79/11 79/17 82/18 83/24 84/1 84/23 85/2 89/2 120/18 123/13 158/2 161/16 163/6 164/2
documentation [2] 45/9 45/20
documents [182]
does [24] 1/11 8/10 9/3 14/13 25/25 28/22 33/7 34/4 37/20 47/9 54/24 62/16 74/12 83/20 100/13 100/15 107/23 126/8 134/18 149/5 151/25 157/14 157/14 164/4
doesn't [15] 33/5 37/9 39/24 54/8 70/4 79/5 82/15 85/22 116/22 123/13 129/18 134/19 146/9 146/17 154/11
dog [1] 5/2
doing [14] 8/7 24/3 28/17 29/9 35/21 61/2 62/13 82/14 86/15 106/21 123/7 145/13 149/17 151/19
DOJ [21] 50/18 114/16 115/20 116/17 116/20 138/15 138/17 140/4 141/9 141/13 142/4 142/18 142/25 143/3 143/17 144/18 144/24 145/1 145/11 146/2 148/22
dollars [3] 137/6 138/11 142/3
don't [104] 5/2 10/7 13/1 13/18 14/3 14/5 18/19 20/8 20/17 21/7 21/24 23/25 25/14 25/18 26/18 27/9 31/21 33/9 34/18 35/21 38/16 39/10 44/4 45/14 46/15

**D**

don't... [79] 46/24 54/11 54/19 56/10 58/12 59/18 61/20 66/1 68/13 69/17 71/1 73/14 75/3 76/1 77/8 77/20 77/20 78/16 82/24 84/21 84/23 85/17 85/19 85/21 88/2 88/7 92/12 96/20 100/1 100/14 100/23 101/7 101/12 102/9 102/9 102/12 103/20 104/4 105/2 105/3 106/8 106/10 108/1 108/11 108/22 110/19 115/1 115/7 115/17 116/3 116/3 119/22 120/22 123/25 124/9 124/9 124/9 126/16 126/16 130/7 130/25 131/18 134/15 136/23 137/23 138/4 139/3 140/9 141/16 141/17 142/24 152/9 153/15 153/15 156/4 157/19 159/13 161/11 164/14
done [11] 21/20 26/12 44/11 45/6 58/4 99/22 117/11 121/25 124/12 147/13 148/8
door [3] 22/24 24/11 24/13
dots [1] 74/20
double [4] 43/17 90/15 90/15 108/2
double-blind [2] 90/15 90/15
double-check [1] 108/2
doubt [1] 143/25
down [20] 3/4 14/8 14/9 14/11 14/18 17/6 18/9 36/21 42/6 42/16 61/7 83/8 89/9 94/6 114/15 116/2 119/19 131/8 140/16 165/6
downgraded [5] 67/19 67/20 67/23 68/1 68/5
downs [1] 37/1
draft [3] 38/24 94/24 163/23
draw [3] 88/20 123/15 124/6
drawn [1] 156/8
drive [1] 28/19
driver [7] 29/3 29/5 29/7 29/9 36/13 36/17 37/14
driving [7] 24/3 28/17 33/18 36/3 38/16 40/8 42/24
drop [7] 14/8 14/9 14/11 14/17 17/6 18/9 36/21
drop-down [6] 14/8 14/9 14/11 17/6 18/9 36/21
dropped [1] 25/17
due [3] 51/24 52/20 53/12
dummy [7] 29/13 31/7 32/18 32/19 32/20 33/11 33/17
Duncan [27] 30/2 30/8 30/19 31/15 31/22 33/16 44/11 44/23 44/23 56/21 56/23 57/8 57/18 58/2 62/9 62/11 62/24 68/5 93/13 100/9 103/14 103/17 104/6 126/25 127/3 128/5 128/16
Duncan/Raygosa [23] 30/2 30/19 31/15 31/22 33/16 44/11 44/23 44/23 56/21 56/23 57/8 57/18 58/2 62/9 62/11 62/24 68/5 100/9 104/6 126/25 127/3 128/5 128/16
Duncan/Raygosa's [1] 93/13
Duration [1] 150/3
during [3] 63/9 81/9 109/11

**E**

each [5] 4/21 8/20 11/20 125/23 152/11
earlier [4] 8/16 49/7 117/21 147/3
early [4] 49/21 56/15 56/16 56/16
easier [3] 47/25 111/16 132/10
easiest [2] 47/20 48/8
easily [1] 106/19
easy [2] 48/2 48/7
eat [1] 117/7
eating [1] 108/16
edits [2] 7/11 18/12
educate [1] 15/18
educational [3] 20/4 22/2 31/5
effort [1] 39/18
efforts [3] 153/20 162/12 164/4
either [11] 5/10 10/13 13/1 15/25 16/1 16/9 44/7 53/22 66/11 115/8 152/1
elder [1] 44/11
electronic [1] 12/14
elicited [1] 126/15
eliminate [1] 76/8
else [27] 13/11 17/21 23/5 23/18 29/10 31/10 33/21 37/17 39/6 45/24 46/4 60/22 65/5 75/16 78/7 91/13 95/20 95/21 98/1 106/15 107/8 117/8 117/9 117/12 160/14 164/13 164/14
elsewhere [3] 34/22 65/10 97/10
email [5] 59/2 84/3 84/4 103/6 105/6
emails [6] 68/14 69/5 100/16 103/1 104/22 161/18
Emily [1] 126/4
emphasis [1] 142/17
employed [1] 71/5
employee [19] 28/16 35/3 36/3 40/4 72/5 72/5 72/9 72/9 79/16
employees [18] 42/21 79/8 79/9 83/14 83/18 84/17 84/18 85/11 85/13 91/6 91/6 93/17 96/23 96/24 112/5 116/12 122/16 150/14
encounter [1] 14/21
encourage [1] 154/12
encroaching [1] 89/20
end [8] 8/10 8/12 55/17 56/11 76/1 82/22 94/5 138/9
endless [1] 138/9
ends [1] 51/9
enduring [2] 128/9 128/10
enforcement [3] 25/8 41/14 44/20
engage [1] 10/21
enough [10] 3/6 56/15 56/16 83/11 84/16 85/22 106/12 134/5 150/16 155/23
ensure [2] 37/9 76/1
ensuring [1] 27/23
entered [9] 14/12 14/15 65/8 65/9 79/12 119/20 134/23 135/7 142/21
entire [3] 24/22 142/2 142/5
entirely [1] 25/13
entirety [4] 58/9 59/23 60/3 60/8
entities [3] 134/4 134/15 160/7
entitle [1] 14/21
entitled [11] 68/24 76/23 114/6 123/2 135/18 147/17 149/8 149/9 150/10 150/10 166/10
entity [8] 133/10 156/2 156/3 157/2 157/10 157/16 157/18 157/21
entries [3] 10/18 19/15 19/17
enumerate [1] 99/14
environments [1] 128/13
envisioning [2] 76/13 89/5
equipment [2] 25/4 38/2
erased [1] 96/2
Eraut [2] 2/3 2/7
ERIN [1] 1/9
error [2] 127/14 127/16
escort [2] 15/25 27/16
escorted [2] 16/1 44/16
ESI [2] 101/15 105/6
especially [2] 48/17 89/22
essence [1] 124/4
essentially [2] 18/3 30/3
estimation [1] 93/20
et [5] 3/2 14/22 86/14 88/21 166/3
ETHAN [2] 1/4 166/3
EUGENE [6] 1/3 2/23 3/4 56/8 83/8 131/8

evaluations [1] 70/25
even [19] 17/20 47/15 51/8 51/9 62/19 64/4 70/7 80/19 82/18 89/21 103/18 126/1 130/15 130/18 138/4 154/10 158/20 159/22 159/24
evening [1] 118/17
event [3] 52/24 54/24 110/22
events [1] 147/8
ever [7] 21/7 44/7 44/13 80/12 81/18 110/18 147/12
every [6] 17/14 34/7 46/19 48/1 69/24 98/15
everybody [5] 56/11 84/16 86/5 86/6 133/24
everyone [5] 3/4 28/2 30/22 32/14 118/5
everything [11] 17/3 22/24 51/20 58/12 58/13 62/2 65/5 66/2 68/3 94/25 95/20
evidence [10] 35/13 44/8 44/12 57/13 74/21 80/22 80/23 81/8 81/9 81/22
evidencing [2] 80/20 80/20
evident [1] 47/14
evidently [1] 33/10
exact [2] 123/21 123/22
exactly [14] 13/14 15/13 24/24 25/19 25/25 36/22 47/12 66/14 86/15 89/19 90/3 102/8 123/2 124/24
example [20] 12/24 13/18 13/19 14/7 14/13 14/21 25/19 34/8 35/19 37/20 37/22 44/9 75/3 77/2 77/12 79/10 79/20 82/21 115/4 120/25
examples [1] 69/3
except [1] 36/14
exceptions [2] 75/18 85/19
excessive [3] 64/22 67/3 67/3
exchanged [1] 52/25
exchanges [1] 12/13
exclude [1] 104/24
excuse [5] 4/5 4/7 36/19 37/13 126/22
exercise [1] 54/11
exhibit [1] 114/11
exhibited [1] 128/12
exhibits [2] 74/6 163/14
exist [6] 33/13 97/14 98/1 98/21 134/20 157/7
existed [5] 18/24 31/23 97/12 97/13 157/7
existing [1] 102/2
exists [6] 17/6 58/22 58/24 60/21 98/20 134/18
expand [2] 66/12 130/25
expanded [3] 104/11 121/19 121/20

expectations [2] 42/7 42/7
expected [2] 61/4 70/20
expects [1] 119/21
expediency [1] 45/17
expedition [1] 113/10
expense [1] 139/17
expensive [1] 149/14
experience [6] 4/16 15/22 63/18 64/18 97/8 152/13
experiencing [1] 64/14
expert [11] 17/14 52/6 52/10 52/11 52/12 52/19 52/25 53/3 53/3 53/9 53/10
expert's [1] 64/15
expertise [1] 7/24
experts [5] 51/24 53/5 64/20 86/8 86/8
explain [4] 13/24 127/6 150/7 155/24
explained [3] 7/25 74/11 135/17
explaining [1] 119/21
explanation [1] 13/8
explicitly [1] 94/11
explore [3] 90/11 153/14 159/18
explored [1] 104/12
extend [1] 72/2
extension [1] 79/25
extensive [2] 6/10 149/2
extent [7] 36/14 79/17 153/10 153/13 158/10 159/2 162/2
extract [2] 8/14 26/1
extracted [2] 7/13 7/15
extraordinarily [1] 142/10
extraordinary [4] 20/9 153/17 158/24 159/17
extremely [1] 85/23
eye [1] 37/22
eyes [13] 65/15 66/3 66/12 67/12 67/16 68/14 68/23 70/6 75/23 76/16 77/3 85/18 85/23

**F**

face [4] 14/22 14/22 75/23 77/3
fact [13] 6/22 27/1 38/13 52/6 52/13 94/6 114/4 114/6 119/25 125/12 130/23 149/18 158/21
factor [1] 65/11
facts [4] 123/18 123/19 123/21 123/22
fail [1] 108/18
failed [6] 108/25 126/24 127/3 127/8 128/3 128/14
failing [1] 108/20
failure [1] 111/8
fair [7] 26/22 43/9 54/14 106/12 134/5 150/16 155/23
fall [1] 65/5
fallout [3] 100/11 100/14 100/19

**F**

familiar [1] 14/6
families [1] 65/25
far [8] 15/24 46/2 48/24 49/12 72/2 96/23 115/10 121/24
fault [1] 110/5
favor [2] 35/7 140/4
favors [1] 56/7
FBI [14] 12/20 16/25 28/11 40/15 40/18 40/24 41/5 41/6 42/22 42/23 44/13 44/13 45/11 45/13
feature [1] 37/23
features [1] 37/25
February [3] 49/10 51/16 56/15
federal [6] 23/25 25/8 71/21 71/22 132/23 149/16
feel [6] 10/1 43/8 89/19 119/19 122/23 131/9
feeling [1] 111/15
felt [4] 50/21 120/12 120/17 121/4
few [10] 4/11 16/16 39/19 43/22 46/17 62/19 68/14 72/23 83/21 84/5
fewer [1] 105/8
field [1] 153/24
fifth [1] 111/7
fight [3] 5/2 146/2 146/4
fighting [1] 146/1
figure [7] 4/20 22/25 27/5 56/9 56/10 86/16 165/11
figures [1] 39/20
file [60] 12/20 12/22 12/23 14/25 17/4 21/24 28/3 29/12 29/13 29/13 30/1 30/2 30/10 30/17 30/20 31/11 31/14 31/18 31/22 32/18 32/19 32/19 32/20 32/21 32/23 32/24 33/17 36/17 56/23 57/20 57/22 58/22 58/23 58/24 58/24 59/3 59/9 59/21 59/22 59/22 60/8 87/22 89/10 108/17 108/17 124/23 132/5 135/13 135/13 139/25 140/1 140/1 141/11 141/11 142/2 142/5 147/16 155/11 160/8 162/4
filed [10] 4/4 19/23 30/14 54/4 58/13 132/23 133/1 156/9 162/16 162/18
files [60] 10/16 14/24 14/25 15/6 18/25 19/23 20/24 24/16 24/17 24/19 25/1 26/6 28/5 30/5 31/23 33/12 33/15 33/17 37/24 57/7 57/16 57/23 57/25 58/2 58/9 58/10 60/21 60/25 61/1 61/8 61/8 61/12 61/23

68/17 69/22 70/22 71/19 72/12 73/1 80/21 81/3 87/23 96/15 97/8 97/9 97/24 97/24 98/18 98/19 105/10 133/5 133/6 133/7 133/8 133/9 143/6 143/12 150/6 161/10 161/15
fill [3] 87/21 96/17 106/22
filters [2] 25/14 25/25
final [1] 150/4
finality [1] 43/25
find [15] 15/1 83/6 91/24 98/2 98/3 98/7 98/11 98/22 98/22 104/17 120/20 127/12 142/16 153/17 153/18
fine [13] 5/4 5/21 47/3 47/20 52/22 69/24 74/1 76/24 77/15 85/15 85/20 106/2 126/11
fingertips [1] 68/13
finish [2] 23/5 53/5
fired [1] 116/21
firm [5] 69/8 77/21 78/6 113/4 137/20
first [55] 3/6 4/3 4/17 7/8 11/24 47/1 56/14 56/14 59/10 69/11 74/8 81/3 87/24 93/25 95/18 96/14 107/15 117/19 117/23 119/9 119/15 119/16 124/18 129/4 129/11 132/2 132/19 132/25 133/9 134/12 134/22 135/8 135/8 135/13 137/12 137/14 137/21 137/25 141/25 142/3 142/7 150/2 151/8 151/20 151/21 151/25 152/1 152/3 152/13 153/1 158/7 160/3 160/11 160/21 162/12
first-person [1] 124/18
fish [1] 126/8
fishing [1] 113/10
five [1] 43/19
five-year-old [1] 43/19
fix [1] 72/11
fixture [1] 14/9
fleeting [1] 74/14
flow [1] 48/5
fly [1] 47/14
focus [2] 6/11 99/25
fodder [1] 38/17
folder [1] 143/2
folks [1] 7/24
follow [5] 34/18 123/11 135/25 154/9 156/1
following [6] 44/14 52/12 53/6 63/14 63/15 157/16
follows [1] 91/25
footage [1] 35/22
footnote [1] 25/18
force [1] 49/21
forcing [1] 50/23
foregoing [1] 166/8
foresight [1] 37/3
forgot [1] 11/25

form [7] 15/12 22/13 26/7 27/8 40/23 95/1 156/17
formal [2] 35/13 58/5
formally [1] 156/7
format [4] 15/9 15/18 20/25 25/22
formed [1] 22/10
former [7] 71/4 72/5 72/9 79/8 79/16 85/13 91/6
formerly [1] 70/3
forms [9] 96/14 96/19 96/21 96/24 97/8 97/15 97/23 98/5 116/15
forthcoming [1] 98/24
forward [7] 41/17 51/17 55/20 76/5 88/1 112/10 165/2
foster [4] 88/9 100/10 103/17 140/25
fought [2] 140/2 140/18
found [6] 9/9 57/20 60/1 95/24 98/14 126/3
foundation [1] 79/3
foundational [2] 38/3 38/4
four [11] 16/23 17/25 26/14 26/20 27/1 30/3 33/20 43/18 55/3 150/14 157/14
fourth [1] 112/15
frame [8] 34/11 62/4 62/7 101/13 101/14 101/19 101/25 102/8
framed [1] 97/6
frankly [2] 26/24 85/24
FRCP [1] 122/13
free [3] 137/22 155/12 155/13
front [8] 8/15 13/19 42/15 50/1 73/15 73/21 126/17 159/13
fruit [6] 92/10 93/1 93/24 94/5 94/12 95/5
frustrating [2] 142/10 146/15
FTR [1] 162/13
FTRs [11] 139/22 140/2 140/5 140/5 140/19 141/12 155/11 162/3 162/14 162/16 162/24
fugitive [1] 31/16
full [8] 3/7 7/24 53/25 54/1 54/9 54/12 59/16 85/16
fully [2] 79/22 84/22
functionality [2] 29/14 36/6
funnel [1] 138/20
further [6] 73/22 96/10 126/1 143/3 143/4 159/23
future [13] 32/16 37/10 38/18 38/18 41/16 42/12 73/16 104/20 164/10 164/11 164/24 165/4 165/13

**G**

gain [1] 23/21
gained [1] 66/10

gander [1] 136/17
gather [1] 137/5
gathering [1] 82/15
gave [2] 69/2 121/10
general [6] 39/7 90/9 114/20 116/11 120/17 122/17
generally [3] 5/12 75/10 160/15
generate [3] 8/12 8/24 25/23
genesis [1] 33/8
gestation [1] 101/10
get [73] 4/23 6/14 6/23 11/21 12/8 15/3 15/7 15/24 16/14 21/15 24/7 26/12 27/8 28/10 29/3 31/7 33/9 38/9 39/22 39/22 40/1 42/11 43/25 45/6 47/22 47/23 49/10 49/14 51/11 61/21 70/2 71/20 80/11 80/12 80/24 81/3 86/20 108/13 108/21 112/8 112/25 116/8 116/21 117/7 118/13 118/16 124/22 131/11 132/9 135/16 135/16 136/22 136/24 137/3 137/23 139/4 141/12 141/23 142/3 142/4 142/6 142/7 142/13 146/10 146/10 147/5 148/15 153/20 154/14 155/24 156/5 159/23 162/12
gets [9] 6/20 22/24 63/21 77/1 77/10 77/11 77/12 77/19 114/8
getting [14] 12/19 15/7 84/11 116/17 122/24 137/7 138/24 139/17 140/19 141/11 141/25 142/6 142/9 145/14
give [11] 3/6 20/9 22/7 43/8 86/9 102/24 107/4 109/2 142/5 146/5 155/12
given [9] 17/18 33/10 42/14 43/1 43/21 74/24 121/22 121/23 155/6
giving [5] 72/11 77/10 99/19 123/16 131/13
glad [1] 91/13
go [51] 4/19 4/21 7/1 10/14 14/17 14/23 15/16 16/15 17/16 17/19 18/8 18/11 18/16 19/23 28/20 31/3 33/1 36/18 37/20 39/8 41/12 46/15 46/16 47/3 47/7 47/13 48/8 56/19 62/22 69/11 77/22 81/23 83/11 86/12 91/13 101/22 106/13 109/16 110/17 113/21 115/19 119/14 119/22 120/12 131/1 138/8 148/13 153/21 154/5 158/4 162/11
goal [1] 65/18
goes [6] 41/17 56/5 64/4 114/12 119/18

150/7
going [101] 4/16 4/18 4/19 4/20 5/9 6/15 8/6 11/17 11/20 11/24 14/1 15/15 15/17 17/4 17/24 21/23 23/12 29/9 31/9 32/11 32/14 32/16 34/16 35/3 35/4 37/6 37/14 38/2 38/20 40/4 40/22 40/25 41/19 42/8 43/22 46/15 46/19 47/19 49/22 50/12 50/13 51/14 51/19 51/24 53/18 55/13 55/14 55/16 55/16 56/12 59/5 62/4 62/8 64/23 68/17 69/9 70/17 77/7 79/17 81/6 87/6 89/6 90/14 93/2 94/3 95/11 107/4 108/8 109/17 110/24 112/9 112/10 114/2 116/5 116/7 118/16 119/12 120/7 123/24 131/9 131/15 136/10 136/19 137/25 143/24 145/4 145/7 148/4 148/11 153/9 153/23 155/3 155/24 159/21 159/21 160/11 163/21 164/22 165/2 165/8 165/9
gone [2] 51/12 153/20
good [12] 3/3 3/13 3/16 27/14 46/5 48/5 57/10 66/7 100/22 112/25 136/17 136/17
goose [1] 136/17
got [16] 11/6 11/7 15/24 16/4 16/4 30/16 33/2 51/2 100/21 100/21 118/20 120/11 135/5 135/16 138/8 162/1
gotten [2] 12/25 126/7
govern [2] 46/25 71/18
governing [1] 79/4
government [2] 1/10 149/4
governs [1] 99/6
grant [2] 6/13 7/8
granted [5] 20/10 41/12 41/14 111/4 111/9
great [4] 6/8 77/1 122/1 135/12
greater [2] 70/1 70/1
ground [4] 92/15 129/3 129/4 155/19
grounds [8] 12/14 85/4 85/5 143/23 153/23 161/8 161/17 163/4
guess [8] 4/10 15/20 18/25 60/22 75/21 83/3 138/14 151/9
guessing [1] 26/11

**H**

had [65] 9/20 11/2 11/4 12/1 12/12 14/2 14/20 16/20 16/24 20/10 32/23 50/21 51/6 59/10 60/2 60/11 67/2 67/8 67/9 70/9 73/16 73/17 77/16 77/25 78/2 78/2

**H**

had... [39]  78/23 80/1 80/3 81/12 81/21 81/25 86/11 96/25 97/7 102/16 104/17 115/6 120/2 126/24 128/3 128/14 129/11 130/18 132/12 138/1 139/22 140/4 140/5 141/19 141/24 143/3 143/4 145/12 146/2 146/3 147/4 147/13 150/14 156/24 156/25 161/15 161/19 162/3 162/11
hadn't [1]  79/8
half [4]  16/23 26/12 26/13 146/12
halves [1]  43/16
hammer [2]  91/14 165/5
Hammond [3]  161/15 161/24 162/16
hampers [1]  66/5
hamstrung [1]  71/1
hand [1]  130/5
handed [1]  22/3
handled [1]  45/4
handles [2]  34/21 138/18
handling [2]  5/25 111/19
hanging [7]  92/10 92/14 93/1 93/24 94/4 94/12 95/5
HANNAH [2]  2/11 3/20
happen [5]  48/22 49/8 55/13 110/12 110/22
happened [6]  63/7 90/11 99/7 110/18 143/18 146/14
happening [5]  55/24 64/23 78/16 90/2 147/9
happens [5]  125/10 135/24 136/23 151/20 151/22
happy [3]  90/6 125/18 129/16
hard [16]  12/15 14/14 40/23 59/9 59/22 60/8 61/23 84/17 92/15 118/10 118/12 118/22 120/19 131/12 146/11 165/5
harder [1]  147/5
has [49]  7/25 8/25 10/17 17/4 17/14 17/16 20/9 20/10 20/13 20/14 20/15 29/14 31/25 36/6 38/13 40/17 41/11 42/12 44/22 51/12 58/4 59/11 59/15 75/6 75/6 75/17 86/7 96/3 101/1 113/6 113/9 119/20 124/21 127/11 133/24 134/7 135/17 143/21 144/21 147/15 149/10 150/11 155/9 155/17 156/16 156/17 156/24 157/21 162/19
hasn't [2]  8/22 24/1
hate [1]  104/23
have [280]

haven't [7]  24/1 60/2 90/18 98/21 122/10 145/20 162/8
having [18]  17/8 23/14 37/20 44/1 76/14 76/24 77/2 80/24 81/23 84/9 84/17 88/25 99/24 115/3 116/16 130/21 153/20 165/5
HD [2]  34/14 34/14
he [30]  8/11 9/1 14/3 17/16 17/16 25/21 25/22 25/25 25/25 38/15 38/17 40/18 40/19 40/19 44/12 44/13 68/7 72/16 100/10 112/7 147/13 151/13 161/19 161/20 161/21 161/21 162/3 162/18 162/19 162/25
he'll [1]  38/16
he's [2]  40/19 44/24
head [5]  8/2 117/14 117/16 122/10 158/14
heading [3]  4/19 4/19 47/12
headings [2]  4/12 46/25
heads [1]  131/13
heads-up [1]  131/13
hear [6]  4/20 20/3 50/22 116/20 136/14 165/12
heard [6]  12/16 58/9 109/22 109/23 120/23 129/11
hearing [11]  6/9 16/18 30/25 38/22 79/3 97/10 101/9 109/16 129/1 129/4 151/12
hearings [1]  51/5
heartburn [1]  84/10
heated [1]  142/9
heels [1]  22/23
help [7]  26/23 39/18 46/22 56/5 73/10 124/11 136/18
helpful [6]  22/8 22/14 29/17 33/24 43/7 81/3
helps [2]  74/1 76/8
her [19]  1/7 1/8 1/9 1/9 3/17 3/20 71/24 73/4 87/22 88/3 88/6 88/6 88/7 88/9 88/10 88/21 89/12 100/23 138/3
Herbold [3]  2/12 2/17 3/17
here [56]  3/9 4/24 6/13 7/8 10/3 11/16 20/17 21/1 21/11 24/2 28/2 29/13 30/22 33/16 37/3 37/21 37/21 38/16 41/3 42/20 43/6 43/10 45/17 51/13 59/3 67/8 74/24 78/20 83/8 83/25 84/5 84/23 85/5 88/20 90/1 91/1 91/2 96/12 99/17 99/24 107/5 115/13 115/24 118/13 124/5 125/7 126/7 126/18 131/8 139/19 142/1 149/24 153/18 158/17 158/17 158/21
here's [4]  11/23 12/4

117/10 148/11
herself [2]  143/3 143/4
hesitancy [1]  57/24
hesitation [1]  105/23
Hey [1]  80/10
Hi [1]  40/13
hiding [1]  83/8
high [5]  34/14 34/14 34/15 75/12 147/7
higher [2]  46/21 95/6
highly [6]  71/19 76/16 85/23 89/1 91/8 149/1
him [4]  10/10 25/24 66/7 162/12
his [16]  14/4 17/21 25/14 25/23 25/24 38/15 38/18 40/18 40/19 42/25 43/1 100/11 100/14 115/20 162/2 164/5
historically [1]  42/12
history [7]  8/18 8/20 9/3 17/22 19/6 21/20 100/14
hit [1]  68/3
hm [5]  49/3 82/2 91/15 93/8 124/25
HOFFMAN [20]  2/11 3/20 3/22 6/1 92/7 93/2 95/1 95/5 96/1 97/18 109/19 111/13 111/16 112/24 113/1 117/13 119/8 136/17 148/7 152/21
hold [3]  75/11 102/19 148/4
home [40]  4/21 31/15 57/5 57/8 57/14 61/1 61/9 61/14 62/9 62/11 62/19 62/22 62/24 63/3 63/4 63/8 63/9 63/13 63/16 63/22 64/2 64/3 65/8 65/9 65/10 65/20 66/3 66/8 68/18 69/4 79/23 93/13 104/6 120/9 126/25 127/3 128/5 128/16 128/25 130/17
homes [1]  128/11
honestly [2]  122/24 134/14
honor [152]  3/10 4/1 5/4 5/11 6/9 6/19 7/2 8/16 10/1 10/20 11/24 13/24 16/12 22/19 23/19 24/11 28/6 30/11 31/5 31/12 32/4 35/1 38/12 39/4 39/17 40/14 42/3 42/17 43/8 44/19 45/2 45/22 46/2 47/6 49/1 50/16 52/22 52/23 53/7 53/17 56/24 57/15 58/18 58/19 63/6 64/9 64/11 66/18 67/5 69/2 70/16 70/23 71/14 71/17 72/15 72/23 73/2 73/20 74/12 76/3 76/7 76/12 77/16 79/17 83/19 84/21 88/2 89/15 89/19 90/3 90/21 91/11 91/19 92/1 92/3 92/13 92/16 93/4 93/23 94/3

94/22 95/3 95/7 95/22 96/13 97/11 97/22 99/2 99/10 100/20 101/5 102/1 103/3 105/1 105/4 105/16 106/2 106/11 109/10 109/24 110/11 110/14 111/6 111/17 113/2 117/16 118/8 118/23 119/10 121/7 121/8 122/2 123/18 124/8 125/6 126/2 127/22 129/10 131/3 131/21 131/25 132/14 132/17 134/3 140/21 141/15 145/8 146/13 146/23 147/6 148/9 148/16 148/20 151/5 152/6 152/12 152/17 156/14 156/19 156/21 157/22 158/6 159/25 160/17 160/20 161/3 162/15 163/11 163/12 164/15 165/15 165/16
Honor's [1]  44/8
HONORABLE [1]  1/23
honored [1]  136/24
honorific [1]  3/7
hope [4]  26/11 55/2 109/15 142/10
hopeful [3]  46/16 105/1 105/4
hopefully [2]  51/6 165/2
hoping [7]  15/19 26/7 32/14 65/21 106/20 108/2 164/22
hot [1]  86/14
hour [1]  118/21
hours [9]  26/7 26/9 26/14 26/18 26/21 27/1 27/16 33/20 145/24
how [102]  3/11 4/23 4/24 4/24 8/2 13/12 13/13 14/19 14/20 15/1 16/2 16/2 16/4 20/13 20/16 21/3 22/17 22/17 22/25 23/11 23/14 23/20 24/7 25/10 25/14 25/25 26/5 26/18 27/6 27/7 27/7 27/10 27/11 27/11 27/21 31/5 32/20 32/25 33/1 35/22 36/13 37/4 39/2 39/13 39/20 41/8 43/2 43/19 45/14 47/17 48/4 52/17 53/21 58/12 58/12 64/19 66/16 67/22 68/13 72/18 74/5 74/6 74/16 79/12 83/6 86/2 87/25 88/24 90/4 90/13 96/7 97/6 99/2 99/3 99/7 103/20 107/8 107/9 108/6 109/5 113/9 113/12 117/12 117/13 122/1 125/20 129/4 129/5 129/12 130/8 131/9 135/16 138/10 140/6 140/23 140/25 141/13 149/5 153/24 155/24 164/23 165/8
however [4]  6/16 14/3 65/25 101/11

huge [1]  69/8
HUMAN [4]  1/10 1/14 7/5 145/16
hundred [2]  9/22 121/2
hundreds [3]  122/8 125/2 125/3
hurdles [1]  28/8
hypo [1]  24/6
hypothesis [2]  23/7 23/17
hypothetical [4]  33/17 78/19 83/13 114/4
hypothetically [2]  38/17 114/15

**I**

I'd [16]  3/4 26/11 36/10 37/2 74/3 85/15 94/19 94/24 104/23 113/14 116/7 132/4 135/25 153/16 154/9 154/12
I'll [26]  4/19 5/25 6/19 13/20 45/7 45/18 53/2 54/10 58/18 93/2 97/20 101/22 103/3 117/2 118/25 131/11 131/11 156/17 159/23 159/24 160/25 160/25 164/9 165/4 165/11 165/12
I'm [164]  4/18 5/22 8/1 8/5 11/19 12/19 13/8 13/22 16/18 18/4 18/19 19/12 19/13 20/23 22/2 22/6 22/24 23/7 23/9 23/17 25/21 26/7 28/3 29/8 29/16 29/18 30/25 31/16 31/17 32/4 32/8 32/11 32/14 35/5 35/8 37/3 38/2 38/22 39/1 43/21 43/23 46/14 47/12 47/13 47/16 50/16 51/12 51/19 52/4 54/19 55/12 55/12 55/12 55/12 55/13 55/16 55/16 56/21 59/2 62/7 69/8 69/10 74/1 74/22 74/25 75/21 75/21 77/7 77/9 78/5 78/5 78/19 79/15 82/24 83/8 84/9 84/9 84/10 84/17 85/3 85/25 87/6 87/6 87/7 88/14 88/19 89/5 89/8 89/25 90/6 91/2 91/2 91/6 91/13 92/16 94/3 105/1 105/4 105/23 106/19 106/20 106/20 107/4 108/2 108/16 109/16 109/24 110/7 111/13 115/10 117/10 118/2 123/24 126/16 128/22 129/1 129/4 129/20 131/6 131/9 131/13 131/15 131/18 131/25 135/10 135/10 136/19 137/25 138/4 138/24 139/1 142/9 142/9 142/24 144/15 144/18 144/20 146/5 147/21 148/1 148/4 148/5 148/11 148/12 148/17 152/4 152/20 152/22 153/14

**I**

I'm... [15]  154/4 155/3 155/24 157/12 157/13 158/5 158/13 158/14 158/16 158/17 158/18 159/15 160/11 161/11 164/22

I've [17]  16/22 16/23 31/13 40/22 46/1 96/14 100/16 105/6 106/17 115/13 125/9 131/19 132/12 136/22 137/8 142/10 159/16

idea [8]  16/8 22/7 26/2 80/9 82/3 82/12 93/20 159/14

identified [3]  125/4 127/6 156/6

identify [2]  51/23 127/2

identifying [1]  73/11

IM [1]  100/16

imagine [6]  17/19 55/23 84/1 89/8 118/20 164/9

imagined [1]  12/5

imagining [1]  89/8

immediacy [1]  112/17

immediate [2]  112/13 128/12

impending [1]  100/18

implicate [1]  164/4

implicates [1]  82/14

import [1]  82/19

importance [1]  7/5

important [11]  11/16 11/21 14/19 22/11 32/10 37/24 45/25 57/2 66/10 116/24 147/7

impressions [2]  114/13 115/7

improvement [1]  128/12

imputing [1]  148/5

inclined [5]  23/10 78/5 111/4 153/14 153/18

include [8]  9/3 66/16 69/21 85/11 85/19 89/24 130/24 133/2

included [4]  69/3 69/5 79/23 160/22

includes [5]  33/14 73/14 92/4 98/15 98/18

including [7]  65/8 84/10 86/8 86/8 95/17 150/4 157/16

incomplete [1]  125/11

inconsistency [1]  10/9

inconsistent [1]  38/19

incorrectly [1]  67/17

incredibly [3]  22/11 75/11 77/4

incur [1]  149/12

incurred [2]  138/7 153/13

independent [6]  6/12 7/7 37/14 80/17 81/11 82/16

indetermined [1]  76/25

indicated [4]  75/6 75/18 125/2 125/3

indicating [2]  77/3 96/1

indifference [1]  80/6

individual [11]  1/7 1/8 1/9 1/9 1/11 34/7 70/21 80/7 96/25 125/25 150/14

individuals [5]  12/25 75/14 77/16 115/8 153/11

inferences [1]  124/6

inform [10]  23/11 47/9 56/4 56/5 74/5 88/6 89/6 89/17 125/23 164/24

informal [1]  58/3

informally [1]  156/7

information [75]  7/9 7/10 7/16 7/17 8/5 9/2 11/9 13/13 13/13 15/4 18/22 19/8 21/15 23/1 23/21 25/11 26/1 26/1 32/2 33/1 37/10 55/19 56/25 65/24 66/9 67/10 68/20 70/21 73/4 73/12 73/14 73/18 75/2 78/22 80/2 80/4 80/11 80/12 80/21 80/24 80/25 81/11 81/18 81/19 81/20 82/16 83/17 83/23 84/4 84/20 88/5 88/8 92/6 93/7 93/22 94/7 96/5 97/1 99/8 99/19 104/10 119/24 124/13 124/14 124/15 124/21 124/24 125/16 125/17 126/15 136/21 137/5 139/19 155/6 156/7

informed [4]  15/11 23/12 79/22 109/11

informing [1]  57/4

initial [3]  61/13 121/10 121/10

initially [2]  67/8 152/23

initials [1]  90/1

initiated [1]  149/6

input [3]  7/19 13/13 15/1

insertion [1]  73/16

inspect [1]  9/25

inspection [21]  4/5 4/6 7/9 7/12 12/14 15/3 16/7 19/4 21/3 21/15 26/4 29/12 36/8 38/5 44/15 49/7 56/23 57/1 57/20 59/9 59/25

instance [3]  14/8 70/9 77/23

instances [1]  126/12

instantaneously [1]  9/13

instead [7]  35/8 63/25 64/5 76/13 76/15 97/13 121/2

instructing [1]  36/11

instruction [3]  57/12 105/14 114/1

instructive [1]  96/25

insufficient [2]  120/10 126/7

insult [1]  40/24

intelligent [1]  22/14

intelligently [1]  23/3

intend [6]  88/2 91/7 109/11 109/15 110/19 117/21

intended [1]  110/15

intending [1]  33/25

intent [2]  65/24 71/3

intention [4]  38/7 38/9 69/20 109/13

interagency [1]  43/5

interest [1]  34/9

interested [7]  11/19 12/22 24/16 38/22 39/1 74/25 77/9

interesting [1]  12/4

interests [2]  23/16 75/25

interface [7]  4/6 7/18 8/7 10/19 10/22 11/16 25/3

internal [1]  100/19

Internet [1]  25/18

interpretation [5]  58/19 64/15 64/16 108/22 128/18

interpreted [1]  129/12

interrogatories [7]  109/14 117/19 119/17 123/20 131/2 131/7 131/17

interrogatory [38]  74/8 74/11 74/18 74/19 108/19 108/21 108/25 121/11 121/14 121/16 121/21 121/24 122/12 122/20 122/22 123/1 123/13 123/16 124/1 124/14 124/15 124/23 125/5 125/11 126/14 126/17 126/22 127/25 128/1 128/17 128/18 129/2 129/5 129/12 129/17 130/11 130/20 132/2

interrogatory's [1]  109/18

interrupting [1]  8/1

intertwined [1]  12/18

interview [1]  80/14

intimate [1]  4/16

introduce [1]  3/5

introduced [1]  58/1

intrusive [2]  23/21 23/22

intrusiveness [2]  23/25 27/3

invades [1]  114/7

investigate [2]  38/2 60/7

investigating [1]  99/18

investigation [3]  58/5 93/13 93/15

investigator [1]  60/6

invited [1]  32/6

involved [6]  26/24 33/11 71/11 137/8 137/15 146/18

involvement [4]  47/2 153/25 158/9 162/2

involves [1]  88/10

involving [1]  9/6

is [410]

isn't [9]  31/9 38/19 38/20 43/4 79/10 136/18 148/20 149/7 153/22

issue [72]  4/3 6/9 7/4 8/15 13/21 21/7 22/12 27/3 32/13 36/4 40/17 41/11 42/13 42/15 42/20 44/22 45/12 47/20 47/21 54/16 60/18 65/4 65/16 66/24 71/17 74/5 75/9 77/6 79/5 83/11 84/7 86/12 90/13 92/8 93/25 96/6 99/9 99/11 99/25 101/11 101/24 104/16 105/21 106/8 107/12 111/25 112/10 112/20 112/23 116/8 116/24 117/22 117/25 119/9 119/10 119/15 131/20 131/22 131/23 132/6 132/7 132/18 132/24 134/3 134/7 134/10 153/7 154/11 157/25 162/21 162/23 163/9

issued [6]  42/22 99/3 132/25 137/12 137/12 157/3

issues [30]  6/1 25/7 38/6 39/19 39/21 41/20 46/23 46/25 47/7 47/8 48/22 51/5 56/1 57/11 73/20 73/25 86/18 91/16 101/20 106/6 106/24 107/9 108/7 111/20 113/7 117/17 118/21 119/7 119/8 160/10

issuing [1]  149/18

it [458]

it's [137]  6/16 8/8 8/8 8/11 8/23 10/25 11/21 12/11 12/18 13/11 14/16 15/8 16/1 16/24 17/23 18/11 18/13 18/21 21/19 22/3 22/10 22/22 22/22 24/1 25/17 25/19 27/1 27/24 28/1 29/25 30/5 30/14 32/7 33/3 33/3 34/13 35/2 35/22 36/9 37/24 39/15 41/1 41/20 42/15 44/7 50/5 50/5 50/11 50/13 50/20 50/25 50/25 51/9 53/23 58/2 58/3 59/20 63/11 63/12 64/22 69/18 70/5 70/10 73/13 73/16 77/13 77/13 77/20 77/20 79/15 79/16 79/25 79/25 84/2 84/23 86/21 92/11 92/14 92/17 92/17 96/6 99/13 99/17 99/23 100/11 101/4 101/7 101/9 104/5 104/19 105/2 105/7 106/10 106/19 106/24 106/24 108/11 109/14 110/1 110/22 112/12 114/5 114/6 116/24 118/2 120/19 128/6 128/10 130/6 132/24 134/17 140/8 142/9 146/7 147/6 147/20 147/22 149/18 151/1 151/9 152/10 152/12 153/8 153/8 153/9 153/23 154/15 155/6 159/5 159/21 159/22 160/12 161/18 162/23 162/24 163/4 164/2

item [5]  6/14 46/19 96/14 98/12 98/23

items [5]  5/19 19/16 46/21 96/12 160/14

its [10]  41/7 42/1 59/23 60/3 75/22 77/3 137/14 139/13 151/19 154/11

itself [8]  41/6 42/16 80/23 80/23 120/1 121/14 121/24 138/21

**J**

J.C [29]  29/21 30/6 30/7 30/9 30/9 33/16 67/15 67/21 68/4 69/23 71/24 75/4 89/22 100/22 103/18 103/24 120/16 121/14 128/3 128/6 128/8 128/10 128/12 128/16 128/24 129/2 130/15 130/19 161/22

J.C.'s [5]  128/9 137/11 137/11 137/15 138/2

J.H [2]  57/16 126/2

J.M [4]  9/7 9/22 19/25 49/25

JANE [1]  1/11

January [14]  51/15 54/25 55/14 55/15 55/17 56/14 56/16 98/13 103/4 103/5 103/9 103/21 104/22 104/23

January 2016 [2]  98/13 104/22

January 2020 [1]  104/23

Jill [1]  141/18

jinxed [1]  48/7

job [1]  38/10

JOE [1]  1/18

JOHN [1]  1/11

joint [17]  4/11 4/18 6/1 39/8 46/7 46/14 56/20 56/22 57/9 96/9 106/16 106/25 107/8 107/10 119/18 129/10 134/14

joke [1]  4/23

judge [41]  1/24 3/13 9/9 10/25 12/19 19/25 21/6 21/8 26/11 26/22 27/13 37/18 39/11 45/10 45/19 46/9 49/16 50/1 50/6 53/23 53/24 54/11 55/21 56/7 66/24 78/25 80/2 83/13 91/3 107/1 107/4 110/6 117/3 118/24 119/13 119/17 120/21 128/20 131/8 136/19 144/1

judgment [1]  51/25

Judicial [2]  133/2 150/24

July [12]  8/16 48/15 48/23 48/24 49/12 50/21 51/19 51/24 53/8

**J**

July... [3] 97/10 97/16 116/5
July 12th [3] 51/19 51/24 53/8
July 5th hearing [1] 97/10
July 5th order [1] 97/16
jump [2] 47/18 107/5
jumping [1] 47/14
June [1] 50/21
June/July [1] 50/21
jurisdiction [1] 54/11
jury [1] 131/9
just [126] 5/21 6/11 6/23 7/18 9/10 9/12 10/25 11/1 14/23 15/17 17/19 21/13 23/6 23/20 25/3 27/5 27/12 28/1 28/7 29/14 30/5 31/8 32/5 34/13 35/7 35/11 37/7 37/22 39/17 42/6 42/17 43/4 45/1 45/3 46/15 47/3 47/22 48/7 49/12 50/21 51/6 52/18 54/14 55/12 55/13 55/16 55/16 56/24 57/11 57/15 59/4 59/7 60/3 61/23 62/12 63/25 64/5 68/15 74/3 74/23 75/14 76/9 82/24 84/12 84/22 85/5 85/18 86/9 88/14 88/22 89/2 89/25 94/4 94/5 95/10 95/12 104/19 104/21 105/14 107/4 108/8 109/19 109/22 110/24 112/15 113/14 115/19 119/22 120/25 121/1 121/3 121/3 121/8 123/4 123/12 123/16 126/19 126/21 127/10 131/8 131/13 131/16 131/18 136/11 137/18 137/19 137/25 138/9 138/12 140/23 142/7 142/7 142/17 142/23 145/8 149/18 150/13 151/11 152/20 154/20 155/13 156/1 157/14 164/2 164/19 165/1
Justice [1] 19/19
juvenile [32] 14/13 77/23 77/24 79/16 79/19 79/20 79/21 79/21 80/2 90/13 133/3 133/8 137/13 138/13 138/15 138/21 139/7 139/9 139/16 141/7 141/8 141/22 144/8 151/5 154/12 161/8 161/16 162/3 162/17 162/17 162/18 162/24
juveniles [1] 78/14

**K**

KASSIDY [1] 1/8
KASUBHAI [1] 1/23
keep [8] 16/25 26/17 48/4 55/14 55/17 86/18 151/12 165/4
keeping [2] 95/6 165/2
Kendra [2] 2/21 166/14
kick [1] 6/2
kids [78] 4/6 7/12 7/16 7/18 8/3 8/4 8/7 9/15 9/20 9/25 10/15 10/18 10/19 10/22 11/15 12/25 13/12 13/13 13/19 15/6 15/16 15/17 16/17 16/20 16/24 18/25 21/3 22/17 22/18 23/10 24/15 25/1 25/9 25/12 26/6 27/24 33/15 36/6 36/19 38/14 39/7 39/13 39/15 40/17 40/25 41/4 48/20 48/22 49/6 57/1 62/9 79/13 81/4 115/4 126/2 128/23 129/22 133/9 134/12 134/22 135/8 135/8 135/13 137/12 137/14 137/21 137/25 150/2 151/8 151/20 151/20 151/25 152/1 152/3 152/13 153/1 158/7 160/21
killing [1] 139/2
KIM [1] 1/7
kind [13] 3/6 4/23 4/23 12/18 23/24 34/13 40/6 69/21 88/20 100/2 136/3 162/21 163/6
kinds [2] 89/17 131/16
knew [12] 53/18 74/20 78/9 80/3 80/19 83/23 84/3 120/3 121/1 123/23 124/3 127/5
know [98] 6/10 6/15 10/12 11/1 11/17 12/1 12/4 12/12 15/20 17/11 18/19 20/3 20/5 20/17 20/20 21/20 22/7 23/1 23/7 25/14 25/19 27/9 28/2 28/19 32/10 33/24 36/5 36/6 37/1 37/3 37/19 38/16 38/18 38/20 41/18 42/11 43/23 46/15 51/3 51/14 54/17 56/17 58/6 58/8 58/10 58/12 59/3 77/4 78/15 78/16 79/23 80/19 80/23 81/4 81/5 81/11 82/24 83/6 83/9 84/23 85/23 88/1 89/9 89/9 89/25 90/1 90/7 90/10 100/14 105/2 115/3 115/5 115/7 115/12 116/11 117/14 120/22 125/19 126/16 131/19 138/4 138/5 140/9 140/12 141/16 141/17 141/18 141/24 148/11 150/10 155/15 156/4 157/10 157/20 160/9 163/25 164/22 165/6
knowing [3] 47/12 78/21 78/22
knowledge [13] 81/12 85/2 90/16 120/3 126/25 127/4 127/9 127/9 128/4 128/15
keeping [2] 95/6 165/2
known [3] 80/3 126/3 140/1
knows [3] 24/11 86/5 86/6

**L**

labeled [1] 150/3
laboratory [1] 24/8
laid [4] 96/9 119/24 136/22 137/8
LANE [12] 1/9 98/16 133/2 137/9 137/13 138/13 138/14 139/7 139/9 139/15 151/5 159/11
language [6] 82/11 84/23 90/7 121/23 124/18 159/20
large [2] 20/24 60/12
larger [1] 122/19
largest [1] 130/18
last [18] 8/25 9/10 18/5 20/18 55/15 56/14 59/12 61/13 61/17 63/1 67/19 86/9 115/19 118/3 118/20 132/6 132/18 165/8
later [7] 5/19 31/9 35/9 36/5 57/19 65/1 125/17
latest [1] 60/18
latter [2] 15/23 87/24
LAUREN [2] 2/16 3/16
law [13] 25/8 41/14 44/20 69/8 77/21 78/6 79/4 79/4 93/11 108/22 112/6 114/7 137/4
lawsuit [6] 99/8 100/18 135/4 147/12 147/16 147/17
lawyer [7] 51/10 75/11 80/14 116/22 137/14 138/19 140/17
lawyers [4] 112/5 116/17 137/7 164/10
lay [2] 42/6 108/14
LCJC [4] 138/13 144/1 151/21 154/7
lead [2] 5/8 28/15
leading [2] 5/9 51/5
leads [1] 85/5
learn [5] 39/2 125/16 125/17 139/21 140/6
learned [3] 73/12 138/5 139/20
learning [2] 32/25 66/8
least [14] 13/24 22/1 52/24 64/19 68/9 75/7 86/23 94/14 105/21 106/7 115/9 115/9 117/25 119/20
leave [14] 38/10 45/18 63/16 91/13 101/23 110/1 110/2 110/4 110/13 110/17 132/5 164/9 164/11 165/11
leery [1] 131/6
left [17] 13/20 13/21 14/7 14/17 14/23 16/3 37/1 65/10 79/12 106/15 107/8 111/15 117/8 117/11 117/14
140/7 157/22 162/15
known [3] 80/3 126/3 140/1
knows [3] 24/11 86/5 86/6

legal [9] 9/4 19/3 19/18 20/12 114/10 139/25 141/11 145/5 159/19
legitimate [4] 41/15 41/22 44/10 75/1
less [7] 23/22 55/2 57/2 62/19 75/9 75/22 84/9
let [11] 7/17 13/20 23/6 36/15 49/14 80/8 108/2 113/21 117/13 136/14 152/21
let's [16] 21/17 39/23 46/6 48/7 49/14 55/15 56/19 57/11 104/21 108/22 116/8 117/6 118/9 119/6 158/21 159/18
letter [4] 95/25 96/3 102/5 102/14
letters [1] 137/7
letting [2] 109/16 131/12
level [5] 73/6 84/11 120/19 147/7 153/24
LEVI [19] 1/4 3/2 66/16 66/16 66/18 66/19 66/20 66/21 66/22 68/7 69/24 72/14 75/9 79/7 87/15 125/25 151/13 151/14 166/3
Levi's [1] 76/23
lies [1] 38/12
life [1] 111/16
light [8] 22/14 44/10 48/21 120/23 120/23 132/1 132/13 144/2
like [51] 3/4 4/15 10/1 14/22 15/15 15/18 21/22 23/18 23/22 27/13 28/11 32/13 34/13 34/16 36/10 36/20 43/9 50/21 62/17 71/2 73/21 76/16 77/4 79/15 84/8 89/19 94/24 100/25 101/18 107/13 107/14 107/21 108/5 113/14 116/7 119/19 122/23 124/22 124/22 127/22 130/4 131/1 132/4 133/23 136/23 145/19 146/15 146/25 152/10 158/10 159/5
likely [9] 64/23 96/2 102/15 102/18 105/7 105/8 105/12 129/15 131/12
liking [1] 111/13
limit [8] 34/19 64/7 64/8 65/1 65/11 65/11 115/2 158/13
limited [11] 28/1 41/4 41/22 44/15 77/4 100/8 101/13 130/22 157/16 158/10 158/18
limiting [1] 63/25
limits [2] 73/11 115/9
line [8] 47/7 47/7 47/13 47/13 114/16 123/11 123/15 156/8
lines [1] 32/17
list [11] 96/22 97/11

97/13 97/14 98/10 98/11 98/15 121/1 126/7 126/8 157/14
listen [1] 140/16
listening [1] 151/18
listing [1] 123/4
litigants [1] 41/12
litigate [1] 143/16
litigated [1] 143/24
litigation [22] 11/12 17/3 19/11 19/23 19/24 20/10 23/2 26/24 41/17 41/23 42/12 42/15 73/19 78/13 86/25 102/19 138/23 144/5 145/15 148/25 149/12 150/9
little [14] 16/18 36/16 37/3 52/15 55/18 77/7 94/4 121/9 131/6 134/17 147/5 155/5 157/12 159/4
live [3] 32/18 32/20 131/13
lived [1] 88/12
living [1] 88/3
locate [1] 97/23
locked [6] 18/2 18/6 18/12 18/25 32/19 32/20
locking [1] 46/3
log [4] 51/8 51/11 51/13 163/22
logged [1] 163/21
logistic [1] 35/17
logistical [4] 28/7 36/11 39/19 42/20
logistically [2] 36/8 36/11
logjam [1] 165/1
logs [2] 40/19 163/18
long [13] 6/15 6/21 11/21 41/18 43/2 44/21 45/4 85/15 108/6 108/12 113/25 139/3 162/6
longer [1] 71/5
look [26] 10/16 17/22 18/8 19/10 19/24 20/4 24/25 32/13 33/1 34/16 41/13 54/10 60/2 62/9 62/16 64/12 69/24 72/7 72/10 83/21 84/25 114/9 120/12 130/8 147/8 153/16
looked [2] 19/11 68/3
looking [15] 5/22 19/14 25/12 27/6 27/10 29/14 41/6 41/6 54/25 56/21 72/6 100/9 107/6 112/2 143/2
looks [3] 15/18 27/21 122/20
lost [2] 106/9 106/17
lot [8] 3/23 12/8 26/9 49/5 67/11 73/20 92/19 146/14
lots [1] 83/3
low [7] 92/10 92/14 93/1 93/24 94/4 94/12 95/5
low-hanging [7] 92/10

**L**

low-hanging... [6] 92/14 93/1 93/24 94/4 94/12 95/5
lunch [6] 95/8 95/9 108/4 108/5 108/15 111/23

**M**

machine [1] 38/4
made [15] 8/20 10/22 12/16 18/21 21/10 31/19 39/18 42/8 59/15 60/13 111/11 111/15 127/14 127/16 158/22
magistrate [2] 1/24 54/11
maintain [2] 87/9 163/21
maintaining [2] 71/6 71/12
majority [1] 69/6
make [42] 7/17 8/2 15/12 18/11 18/17 19/13 21/17 27/22 31/8 34/13 36/10 37/8 41/20 42/6 42/8 42/10 45/3 45/10 47/1 47/6 47/10 47/11 55/14 72/9 74/2 74/12 77/19 78/8 87/2 87/3 88/14 97/6 104/19 104/21 110/20 124/6 124/10 124/11 147/19 148/6 153/24 157/13
makes [10] 5/6 29/4 47/15 50/22 51/16 53/7 58/13 85/24 88/24 137/18
making [14] 3/4 9/11 19/16 21/11 41/17 55/12 89/25 97/5 109/24 120/10 147/4 153/11 157/13 160/10
management [2] 51/4 79/9
manager [4] 44/10 79/10 84/8 96/17
managers [1] 9/4
manner [1] 153/8
manual [1] 115/4
many [14] 4/24 20/13 20/16 67/22 68/13 98/15 98/16 107/9 125/20 130/13 145/24 145/24 162/6 162/11
March [5] 48/10 48/11 48/22 48/23 49/22
marked [3] 71/8 74/9 84/2
marking [2] 51/8 66/2
Markowitz [4] 2/12 2/17 3/17 148/1
MARY [2] 2/3 3/10
mass [1] 65/21
massive [1] 149/12
material [8] 12/15 51/11 69/22 86/5 92/19 142/16 144/4 163/25
materials [3] 69/4 120/1 126/9
matter [26] 17/14 26/7

26/9 27/16 64/8 65/11 87/22 90/9 102/2 107/20 121/16 121/18 129/8 133/2 134/11 135/7 141/20 147/9 148/25 149/19 150/15 153/17 160/9 162/17 162/18 162/19
matters [2] 73/25 106/23
may [58] 6/23 11/17 16/5 16/12 27/9 31/14 32/22 36/5 39/19 39/21 40/10 40/10 41/15 42/17 46/21 49/16 53/22 59/7 60/7 64/20 66/24 66/25 67/5 70/12 71/4 72/24 77/16 77/18 79/23 81/7 84/22 89/22 91/19 93/17 99/15 103/22 114/24 117/19 123/15 126/10 127/23 130/23 135/23 138/4 139/20 143/15 143/17 146/20 146/21 155/5 158/20 158/20 158/21 158/23 160/9 160/23 164/5 164/24
maybe [30] 4/21 20/21 24/15 29/6 45/9 46/20 46/23 56/4 56/6 56/6 56/13 57/2 62/2 62/19 67/7 75/19 75/21 77/22 79/11 90/7 92/25 93/24 93/25 100/12 107/7 111/22 125/2 125/22 136/16 142/23
MDT [1] 152/4
me [88] 3/6 4/6 4/7 4/25 7/17 11/19 11/21 11/24 12/1 12/5 14/6 21/22 23/6 23/15 23/17 23/18 25/9 25/10 32/14 36/15 36/19 37/8 37/13 39/24 42/15 44/1 44/2 45/1 46/18 49/14 51/7 52/22 53/23 54/24 60/19 61/10 69/14 70/22 73/3 73/10 73/15 77/15 80/8 83/6 84/13 89/6 89/20 93/1 95/2 95/6 96/7 100/8 101/23 102/10 102/24 105/2 107/3 107/4 108/2 108/14 109/20 112/23 113/1 113/9 115/11 117/10 117/13 117/20 126/14 126/17 126/19 126/22 131/15 134/17 135/1 136/14 136/18 139/2 142/24 146/5 146/5 146/17 148/13 153/7 155/24 159/14 159/21 160/13
mean [64] 16/25 18/18 18/19 20/18 22/3 22/7 22/20 24/19 26/7 26/9 26/12 27/13 27/14 34/4 34/10 35/14 36/15 37/19 39/24 44/2 45/12 48/23 62/16 64/25 68/21 75/13 75/24

76/25 77/7 77/21 78/18 80/8 80/11 80/16 81/23 82/12 83/3 84/10 84/11 84/15 85/22 90/4 90/6 93/19 97/4 100/13 104/23 113/16 114/20 115/3 116/9 116/24 123/11 123/15 124/3 138/12 139/3 142/23 151/5 151/24 151/25 152/1 160/25 164/1
meaning [6] 40/22 82/19 104/3 109/19 121/21 145/11
means [10] 23/22 35/14 39/24 45/6 55/22 75/23 85/23 87/14 156/4 166/10
meant [4] 31/23 130/5 132/3 150/9
meantime [1] 69/8
measures [1] 33/21
mechanisms [1] 24/8
medical [1] 138/2
meet [1] 70/4
memo [2] 115/6 164/5
memory [1] 10/3
mental [2] 55/13 114/13
mentality [1] 131/8
mentioned [3] 48/15 59/8 126/2
menu [2] 17/6 36/21
menus [3] 14/18 18/9 29/15
merited [1] 69/13
merits [2] 100/1 113/6
mess [1] 161/1
messages [7] 96/2 100/7 100/16 102/16 103/12 106/1 106/9
metadata [7] 8/15 8/17 13/21 14/8 17/5 21/19 21/23
metaphor [1] 22/6
meter [2] 107/22 107/23
meters [1] 117/7
method [2] 23/21 153/9
middle [1] 47/15
might [43] 5/14 20/19 32/13 34/5 34/23 36/15 36/18 36/19 36/23 37/7 40/2 42/11 43/12 46/17 46/18 46/22 47/6 47/11 47/20 48/1 48/8 56/25 64/16 70/21 73/25 74/2 74/2 75/22 81/25 82/22 82/22 84/12 85/1 104/24 111/4 115/1 116/9 117/12 117/24 131/7 153/12 155/4 164/9
Miles [5] 44/9 112/3 112/17 114/15 115/21
mind [7] 23/16 23/20 28/7 40/22 109/21 112/5 135/11
mind's [1] 37/22
mindful [1] 43/23
minimize [2] 37/4 37/5
minor [9] 72/22 73/1 73/7 75/3 75/5 77/13 87/17 87/20 130/22

minute [1] 47/19
minutes [3] 46/7 46/12 146/12
mischaracterizing [1] 124/20
missing [1] 124/16
mistaken [1] 59/2
mix [1] 10/2
MK [2] 1/5 166/4
Mm [3] 82/2 91/15 93/8
Mm-hm [3] 82/2 91/15 93/8
mobile [1] 96/18
moderately [1] 106/23
Modestly [1] 112/1
modicum [1] 33/22
modification [3] 43/1 135/19 143/25
modifications [3] 7/11 18/17 18/20
modified [3] 37/25 128/7 143/19
modify [1] 73/22
modifying [2] 121/16 121/17
moment [4] 31/8 78/16 109/6 137/25
money [3] 107/21 137/5 149/3
month [1] 63/10
months [32] 40/1 41/17 43/11 43/12 43/13 43/14 43/18 44/2 44/5 44/17 45/2 45/3 45/5 45/7 48/18 49/7 62/13 62/15 62/20 63/12 63/13 63/15 64/1 64/4 64/5 64/21 65/2 65/9 69/14 101/9 139/16 162/6
mood [1] 128/12
moot [2] 104/16 157/25
more [66] 4/16 6/16 8/9 10/12 11/20 13/9 15/11 16/14 21/13 23/12 23/17 26/20 26/25 27/1 31/13 35/13 36/8 36/25 37/8 39/24 43/25 45/5 46/16 47/1 47/7 47/14 47/15 49/11 53/5 55/18 62/14 62/16 62/16 67/19 68/12 74/2 74/16 74/24 74/25 77/9 85/24 87/7 87/25 88/7 99/23 100/17 105/8 107/21 109/23 110/1 111/11 116/8 116/8 118/21 120/17 120/22 124/21 125/16 125/17 127/13 130/13 132/7 145/19 153/11 161/2 164/24
morning [4] 3/3 3/13 3/16 6/15
most [9] 47/6 50/6 56/11 96/1 105/12 137/24 138/1 141/2 141/3
mostly [2] 100/17 131/15
motion [39] 4/3 4/17 5/13 5/23 6/3 6/6 6/13 7/3 11/18 12/17 12/18

23/8 39/7 41/25 41/25 51/13 86/4 95/19 96/8 99/15 110/20 111/2 111/3 113/5 114/10 114/11 114/23 116/10 118/3 118/3 132/15 132/24 137/18 139/7 139/15 142/20 152/23 159/5 159/9
motions [7] 51/5 52/1 52/1 52/3 53/11 53/20 53/24
mouse [9] 28/17 28/23 33/18 36/3 36/13 36/20 38/16 40/8 42/24
move [21] 16/2 27/20 27/21 43/22 43/24 50/22 51/20 55/20 56/13 76/4 76/4 86/2 86/3 91/18 99/15 110/21 111/7 132/4 139/6 139/10 159/5
moved [7] 4/14 50/5 50/5 109/25 120/5 146/3 158/8
moves [3] 57/10 139/9 139/11
moving [3] 49/4 88/1 165/2
Mr [7] 3/7 26/18 54/7 66/16 76/23 112/2 136/14
Mr. [58] 3/13 3/14 5/13 7/25 8/11 8/14 8/25 9/24 10/9 14/3 16/14 17/13 17/21 24/5 25/10 25/14 36/5 38/14 40/7 40/17 42/24 44/3 44/9 48/10 54/6 54/12 54/18 66/16 66/19 67/8 68/7 69/1 69/24 72/14 74/15 75/9 79/7 87/15 90/16 94/24 102/8 107/6 110/5 111/11 112/3 115/19 115/21 115/22 119/12 125/1 131/1 131/22 151/1 151/13 151/14 154/5 161/15 162/16
Mr. Hammond [2] 161/15 162/16
Mr. Levi [10] 66/16 66/19 68/7 69/24 72/14 75/9 79/7 87/15 151/13 151/14
Mr. Miles [3] 44/9 112/3 115/21
Mr. Payne [13] 7/25 8/11 8/14 8/25 14/3 17/13 17/21 25/14 38/14 40/7 40/17 42/24 115/22
Mr. Payne's [1] 10/9
Mr. Raygosa [3] 54/6 54/18 102/8
Mr. Raygosa's [1] 54/12
Mr. Rizzo [22] 3/14 5/13 9/24 16/14 24/5 25/10 44/3 48/10 69/1 74/15 90/16 94/24 107/6 110/5 111/11 115/19 119/12 125/1 131/1

**M**

Mr. Rizzo... [3] 131/22 151/1 154/5
Mr. Rizzo's [1] 67/8
Mr. Steven [1] 3/13
Mr. X [1] 36/5
Ms [21] 3/7 3/11 3/19 27/22 31/3 33/21 34/25 35/17 35/25 38/11 39/12 45/24 58/15 63/5 73/10 86/12 95/1 114/22 117/3 117/21 151/14
Ms. [70] 3/12 3/16 3/20 3/22 5/23 6/1 12/13 13/20 43/12 47/17 48/24 50/15 52/13 53/16 55/8 58/15 59/8 60/6 61/10 64/10 65/13 66/25 67/2 69/1 71/16 73/7 75/5 75/17 81/25 83/18 87/8 87/25 88/18 88/21 89/5 90/25 91/4 92/7 92/9 93/2 94/24 95/1 95/5 95/21 96/1 97/18 100/5 101/1 102/10 106/16 109/19 111/13 111/16 112/24 113/1 115/15 117/13 119/8 127/13 136/17 137/15 138/16 139/18 139/20 142/17 145/7 148/7 152/21 155/21 160/19
Ms. Blaesing [22] 5/23 43/12 47/17 48/24 50/15 53/16 55/8 58/15 61/10 71/16 73/7 75/5 75/17 83/18 87/8 88/18 90/25 91/4 92/9 101/1 102/10 115/15
Ms. Hannah [1] 3/20
Ms. Hoffman [18] 3/22 6/1 92/7 93/2 95/1 95/5 96/1 97/18 109/19 111/13 111/16 112/24 113/1 117/13 119/8 136/17 148/7 152/21
Ms. Lauren [1] 3/16
Ms. Schneider [7] 12/13 66/25 67/2 81/25 127/13 138/16 155/21
Ms. Sjkelset [1] 145/7
Ms. Skjelset [18] 3/12 13/20 52/13 59/8 64/10 65/13 69/1 87/25 88/21 89/5 94/24 95/21 100/5 106/16 139/18 139/20 142/17 160/19
Ms. Uranga [1] 137/15
Ms. Williams [1] 60/6
MSC [2] 98/4 98/5
much [15] 4/24 5/2 8/9 15/6 26/5 36/8 52/17 62/1 117/13 136/22 138/10 149/5 151/1 153/7 159/15
mull [1] 108/15
multiple [3] 46/25 55/3 138/20
multiply [1] 106/5

music [1] 27/11
MUSTAFA [1] 1/23
mutual [1] 34/1
Mx [1] 3/7
my [108] 3/10 3/17 6/11 7/23 8/2 9/18 10/3 10/12 11/23 11/25 13/9 15/23 15/24 16/8 16/17 17/5 23/7 23/17 28/15 28/21 30/11 32/15 32/22 33/14 34/5 34/18 35/1 36/1 37/2 38/7 38/9 38/12 39/5 40/10 40/21 41/16 41/19 41/21 43/19 45/8 45/18 46/22 47/2 55/14 57/12 58/21 60/19 63/18 64/11 64/15 65/18 68/13 69/6 70/1 70/1 70/8 77/7 77/8 78/24 79/15 86/4 87/24 89/20 97/8 100/11 102/4 102/4 105/22 105/23 106/7 106/18 108/16 110/5 111/14 111/16 112/5 113/15 114/20 117/16 121/7 121/19 121/20 121/20 122/10 124/19 131/8 131/18 135/11 136/4 136/11 148/11 149/8 149/8 150/11 150/13 152/12 156/2 156/24 157/22 158/6 158/11 158/14 159/14 160/1 162/15 163/5 163/24 164/10

**N**

name [5] 3/7 3/10 30/15 124/5 161/23
named [2] 83/15 98/18
names [7] 59/1 68/4 123/4 123/23 123/23 124/17 125/12
narrate [1] 123/19
narrow [3] 64/21 64/22 141/3
narrowing [1] 61/7
narrowly [1] 41/21
national [1] 44/20
nature [3] 42/14 89/7 152/15
navigate [4] 16/20 22/18 36/24 37/7
navigates [2] 22/17 39/2
necessarily [10] 23/8 44/4 58/4 59/18 82/13 122/25 123/21 128/22 148/21 153/11
necessary [7] 23/2 24/2 66/1 69/18 105/8 105/9 148/18
need [71] 4/12 4/14 10/7 11/1 13/2 14/16 27/23 28/1 32/13 33/12 34/19 36/15 36/18 37/7 39/8 42/1 43/22 43/25 44/18 44/19 45/2 45/2 45/15 45/16 49/11 51/25 52/23 53/4 53/5 54/15 55/11 56/17

57/12 65/4 65/21 70/12 72/6 72/8 75/5 75/22 76/8 78/7 84/14 86/2 87/2 87/3 87/21 87/25 88/5 90/23 94/11 94/20 95/6 95/8 99/14 101/8 106/8 106/13 107/10 110/2 110/16 110/17 112/13 112/20 116/4 118/19 119/22 160/15 160/16 160/23 165/3
needed [6] 11/9 12/7 42/12 44/13 45/3 91/14
needing [1] 13/12
needle [1] 88/20
needless [1] 155/20
needs [19] 32/12 33/6 42/15 42/23 45/21 48/15 48/21 52/25 76/1 94/6 96/16 96/17 101/10 116/4 116/25 148/19 156/8 163/6 164/3
neglect [1] 79/24
negotiate [1] 160/23
negotiated [1] 139/18
negotiates [2] 43/16 43/20
negotiations [1] 141/20
neighbor [2] 93/17 94/15
Nelson [3] 50/1 50/6 56/7
nephew [1] 57/17
never [12] 15/24 16/23 20/10 20/19 58/22 77/18 78/9 79/11 85/16 110/6 147/13 156/16
nevertheless [1] 158/23
new [5] 22/19 22/22 32/5 96/4 104/10
next [8] 8/19 27/17 36/18 36/21 43/17 54/25 105/19 105/24
nice [1] 48/2
niece [1] 57/17
night [1] 86/9
nine [1] 68/16
no [70] 1/5 3/2 12/11 12/15 16/22 25/21 26/2 26/16 26/20 27/1 28/4 29/8 29/8 29/8 29/8 30/25 31/2 36/16 44/8 44/12 45/5 45/10 45/20 54/3 57/11 61/4 69/20 71/5 79/12 81/17 81/20 83/9 84/21 87/14 87/24 89/15 92/13 93/13 93/14 93/21 95/7 98/14 99/12 109/12 110/6 110/23 113/25 125/7 128/18 129/9 132/7 133/25 134/15 136/5 136/7 143/2 144/13 148/17 149/23 151/11 153/3 153/3 155/13 155/13 155/13 155/15 156/9 157/6 160/7 166/4
No. [9] 98/12 121/14 121/16 125/5 126/14 126/22 127/25 128/1

130/11
No. 1 [1] 126/22
No. 2 [1] 98/12
No. 3 [7] 121/14 121/16 125/5 126/14 127/25 128/1 130/11
nod [1] 65/1
nonconfidential [1] 77/14
nondisclosure [1] 164/6
nonparties [1] 72/3
nonparty [2] 67/10 72/12
nonprofit [1] 152/5
normal [5] 11/18 148/22 148/23 148/24 148/25
Normally [1] 138/18
not [231]
note [9] 8/20 10/2 14/12 14/12 14/15 18/9 18/12 19/5 39/17
Noted [1] 159/25
notes [12] 7/11 18/1 55/13 62/8 62/10 62/13 62/21 63/8 64/12 120/15 120/15 120/18
nothing [16] 35/11 44/18 60/22 64/1 104/13 104/13 124/16 124/19 136/23 137/19 143/24 146/19 149/20 150/14 151/17 151/18
notice [12] 9/6 96/7 99/8 101/8 102/20 126/24 127/4 127/9 127/11 127/11 128/4 128/15
noticed [1] 99/13
notices [1] 19/22
November [3] 53/11 61/21 62/5
November 1st [1] 62/5
November 8th [1] 53/11
now [74] 6/20 20/24 23/14 26/4 27/3 28/7 32/9 32/11 33/7 33/8 36/7 44/17 45/25 46/3 48/6 48/17 49/2 49/13 51/16 57/6 57/23 59/3 59/11 60/7 61/2 68/9 69/10 72/18 72/25 73/15 74/3 75/21 79/23 85/18 86/10 86/12 86/14 86/17 87/21 94/19 95/21 99/12 99/25 101/9 101/11 108/1 108/14 111/3 111/5 112/11 115/4 115/10 116/4 120/5 120/7 120/21 122/23 129/1 131/10 131/14 131/20 132/12 132/18 137/10 138/5 141/23 142/1 142/18 146/24 149/20 155/12 158/16 162/4 164/23
Now's [1] 3/1
nuance [1] 62/3
nuanced [2] 141/2 141/2
nuances [2] 11/22 74/24

number [7] 12/14 24/14 89/13 107/2 132/21 146/6 163/16
numbered [1] 122/11
numbers [8] 97/12 97/13 97/14 98/19 105/8 105/9 105/11 105/12
numerous [1] 86/11
nuts [1] 27/21

**O**

O'BRIEN [1] 1/8
o'clock [3] 118/10 118/12 118/19
OAR [1] 120/4
OARs [2] 71/18 94/10
oath [2] 38/20 38/22
obfuscated [5] 126/24 127/4 127/8 128/4 128/15
object [7] 66/4 73/8 99/10 99/15 129/3 152/1 163/3
objected [5] 67/9 68/21 134/8 143/23 155/19
objecting [4] 73/6 112/16 151/2 161/7
objection [14] 12/16 73/8 75/6 101/24 108/21 113/25 114/2 123/4 123/7 134/16 134/19 156/2 161/17 161/17
objections [11] 10/5 12/16 21/5 21/11 59/15 85/1 115/16 134/14 137/4 138/20 157/6
obligation [3] 124/10 124/11 125/15
obliged [1] 125/18
observation [1] 23/10
observe [2] 15/16 17/9
observing [2] 13/3 28/18
obtain [3] 133/21 156/7 159/18
obtained [7] 132/22 133/1 143/10 147/15 151/16 157/15 162/3
obtaining [2] 145/18 153/25
obtains [1] 137/10
obvious [2] 47/1 84/13
obviously [3] 137/16 154/9 165/3
occurred [5] 60/3 104/25 124/18 147/8 159/12
occurring [2] 63/2 79/22
October [2] 51/9 53/10
October 4th [1] 53/10
ODHS [2] 9/7 133/10
off [13] 6/2 17/11 45/11 45/13 56/12 92/9 102/7 102/12 111/14 115/9 117/14 117/16 122/10
offer [1] 6/20
offered [2] 50/21 57/16
offering [2] 57/23 111/2
officer [1] 75/10
officers [1] 86/5

**O**

offices [2]  10/15 144/12
official [2]  1/12 166/14
often [3]  63/18 64/25 123/20
oh [9]  31/3 63/6 95/9 100/19 138/25 144/13 147/21 154/4 165/9
OHA [1]  96/16
OJD [7]  133/9 134/12 134/21 135/13 138/18 148/23 158/7
okay [161]  5/5 5/15 6/19 7/22 11/1 11/14 13/7 16/11 18/18 19/3 19/5 19/20 20/2 21/9 21/12 24/17 27/18 29/1 30/9 30/19 31/19 33/5 33/14 34/17 39/4 39/6 39/23 43/15 45/22 46/3 47/24 48/3 48/13 48/16 49/9 50/4 50/7 50/17 50/19 52/19 53/15 53/18 53/20 54/10 54/14 54/20 54/20 55/4 55/11 56/18 56/19 58/11 58/14 59/6 59/17 60/14 61/3 61/16 62/15 63/17 63/23 64/18 65/3 66/21 67/4 68/2 68/25 70/17 71/9 71/15 72/18 72/21 73/5 76/6 78/5 83/7 84/6 87/5 88/17 90/4 92/21 94/14 94/18 95/3 95/21 97/17 97/21 98/8 100/4 101/6 101/20 103/11 104/1 105/14 105/17 106/12 106/23 107/16 107/18 108/1 111/21 112/12 112/22 115/25 117/6 117/24 118/4 118/13 121/6 122/3 122/5 123/24 124/25 125/20 126/21 127/18 128/21 129/14 130/20 131/5 132/8 133/15 133/18 134/1 136/1 136/6 136/20 137/2 138/21 139/5 140/13 140/13 141/6 142/12 143/9 143/12 145/17 146/8 146/8 146/11 150/25 152/8 152/16 154/22 155/18 156/1 156/20 157/1 157/5 157/23 158/1 158/4 158/19 160/18 161/5 161/25 163/2 163/15 163/23 164/13 164/16
old [2]  43/19 72/18
older [1]  102/21
omitted [1]  59/13
once [6]  20/21 34/7 48/1 53/23 55/18 112/6
one [69]  4/21 6/14 6/23 12/6 14/7 22/3 28/8 28/9 30/9 30/17 30/19 31/10 31/12 31/24 34/3 34/4 34/20 34/24 35/20 40/8 44/20 44/20 46/5 47/22 48/2 48/4 48/8 55/11 56/5 73/21 73/24 76/14 77/2 80/14 82/21 86/17 86/17 89/23 93/25 96/5 98/15 101/20 107/12 108/8 117/17 117/25 120/19 125/23 129/18 130/4 130/13 131/23 131/24 131/25 132/7 132/9 134/12 134/12 138/12 141/22 141/23 145/17 149/16 149/16 150/18 153/10 157/17 157/18 159/13
one's [1]  143/2
ones [4]  46/1 69/12 86/17 129/25
ongoing [2]  116/7 125/15
online [1]  96/15
only [53]  25/10 27/3 31/12 36/14 40/15 44/22 46/1 57/20 58/1 59/25 60/4 60/4 62/19 65/3 65/15 66/3 66/12 67/12 67/16 67/21 68/10 68/14 68/23 69/6 70/6 71/24 74/5 75/23 76/14 76/16 77/3 77/7 77/8 77/13 79/18 81/6 85/18 85/23 87/21 96/23 105/23 107/12 120/16 121/13 129/2 142/6 143/1 152/25 154/15 156/2 158/9 158/11 161/18
open [7]  22/24 22/25 37/3 47/16 105/25 158/16 158/18
opened [1]  32/1
opening [2]  28/23 35/3
operate [1]  25/22
operated [2]  21/3 25/3
operating [1]  36/20
operator [1]  28/22
opportunity [6]  9/21 39/1 99/14 116/14 117/1 148/13
opposed [6]  4/11 14/12 34/6 37/24 113/19 159/16
oral [6]  1/21 3/2 97/5 111/2 111/3 166/5
orally [1]  130/21
order [98]  4/5 5/3 13/3 28/21 33/14 35/19 35/23 40/9 41/3 41/19 41/21 44/8 44/15 45/8 45/18 47/19 52/5 59/15 62/8 65/6 70/5 71/8 72/5 72/8 72/10 73/11 73/22 74/10 76/13 79/17 79/18 82/10 83/20 85/8 85/14 86/4 86/7 86/20 88/25 91/10 94/6 94/12 94/16 94/25 95/13 95/16 96/11 97/16 99/12 99/16 117/4 119/21 120/1 120/13 121/5 121/15 121/19 121/20 129/6 134/16 135/8 135/15 135/22 135/23 135/25 136/4 136/12 137/16 139/18 142/14 142/15 142/21 142/22 143/13 143/15 143/19 143/20 145/9 145/14 150/2 152/14 152/19 152/24 153/1 153/2 153/19 154/9 154/14 154/20 155/3 155/25 158/10 160/21 160/23 161/4 163/23 164/7 164/10
ordered [7]  16/1 94/8 94/18 126/6 126/13 154/9 154/10
ordering [1]  40/7
orders [11]  13/24 134/10 134/23 135/6 135/19 135/20 137/17 137/19 138/22 143/23 150/1
OREGON [7]  1/2 1/10 1/14 2/22 7/5 66/7 131/9
organism [1]  22/9
organization [1]  152/6
organize [1]  51/21
original [2]  52/4 166/11
originally [2]  14/1 52/5
OSP [4]  42/23 42/23 45/10 45/13
other [115]  5/18 8/3 8/7 9/14 9/24 10/22 11/20 13/23 16/23 21/23 27/9 28/15 33/21 34/22 34/23 39/3 41/20 43/3 43/23 45/20 46/17 46/23 47/9 49/7 49/23 51/23 55/25 57/5 57/7 57/13 57/14 57/25 59/3 60/23 60/25 61/1 61/8 61/9 61/12 61/13 63/3 65/19 66/3 66/8 68/15 68/16 68/18 69/22 70/23 70/24 70/25 72/3 73/1 73/20 73/25 75/16 77/16 78/14 78/17 78/20 78/21 79/24 80/10 80/18 81/3 81/4 81/8 82/13 82/23 85/1 86/25 87/4 87/11 87/13 87/17 87/23 88/9 88/23 90/14 90/24 91/5 101/14 103/25 104/7 107/9 111/14 112/10 113/10 115/11 117/25 120/9 124/20 125/12 126/15 127/11 127/12 128/18 128/24 129/17 129/19 129/22 129/24 130/6 130/9 130/12 130/16 130/25 136/11 143/20 150/6 155/9 158/2 162/21 162/23 164/11
others [4]  39/20 47/8 133/24 156/5
otherwise [8]  11/18 46/18 72/2 75/1 83/23 104/25 133/21 153/8
ought [3]  47/17 98/21

159/8
our [83]  5/12 6/9 7/5 7/21 10/8 12/13 14/24 15/13 24/14 26/4 33/12 39/20 41/9 46/14 49/15 49/22 57/24 58/19 59/11 59/24 62/2 65/2 66/5 66/5 66/25 68/22 74/5 74/6 74/6 74/7 80/6 82/7 83/12 83/13 86/8 86/13 93/11 96/5 96/9 104/2 104/8 104/9 107/15 107/22 108/2 109/21 110/1 110/16 111/7 113/3 113/4 113/10 115/22 117/17 117/18 117/22 117/22 117/23 119/10 122/21 122/25 123/7 124/11 126/9 127/1 127/10 127/10 129/15 130/15 132/3 132/4 133/23 133/25 136/22 137/20 140/4 142/2 148/20 148/21 149/7 151/17 153/2 156/22
ourselves [3]  120/21 134/4 147/17
out [59]  4/14 4/20 4/24 9/1 10/8 10/18 12/10 15/1 22/25 27/6 34/11 38/22 39/20 43/22 44/5 44/21 48/24 49/1 49/12 49/15 49/19 51/20 53/11 56/9 56/10 56/12 63/20 67/2 67/3 75/18 85/16 86/16 87/4 87/23 90/7 91/14 95/24 96/9 96/17 105/24 108/14 116/4 116/6 118/13 119/24 120/5 121/1 125/11 126/3 127/12 131/9 136/22 137/8 140/4 142/16 154/13 163/5 165/5 165/12
outlined [1]  115/13
outlines [1]  4/11
outlining [1]  115/6
outs [1]  75/15
outside [2]  11/17 101/14
outstanding [3]  57/12 109/18 117/17
over [7]  16/23 26/25 51/9 108/15 125/9 134/21 148/25
overhead [1]  108/9
overlapping [1]  47/8
overlay [2]  86/9 86/15
oversees [1]  152/2
oversight [1]  104/24
own [8]  86/13 124/6 124/7 124/19 126/9 139/13 151/19 154/11

**P**

packets [1]  125/25
page [20]  21/18 46/15 46/15 47/3 56/21 57/10 65/13 91/23 91/25 92/1 96/9 106/17 106/17 107/2 119/17 119/18

119/24 122/4 125/7 129/13
pages [15]  60/4 64/6 89/10 90/8 91/23 92/3 92/11 122/11 125/3 125/4 125/6 125/7 125/9 125/20 125/23
paragraph [10]  73/13 73/16 82/1 83/20 85/7 121/12 121/13 128/1 128/8 150/2
parallel [2]  8/9 49/8
paramount [2]  83/12 83/13
paraphrase [1]  126/21
parent [2]  30/18 58/23
parent's [1]  30/15
parents [4]  68/4 68/19 100/10 103/17
parking [1]  107/22
part [16]  19/11 19/24 24/19 42/20 73/11 78/10 83/18 84/13 86/25 90/16 115/5 138/12 152/4 157/24 164/2 165/12
particular [9]  9/4 10/16 13/21 20/7 35/20 78/21 90/9 94/13 131/20
particularly [7]  75/19 93/12 116/13 120/2 144/1 150/2 154/7
parties [15]  4/20 5/9 23/15 28/2 46/18 47/2 76/1 82/13 129/7 142/20 149/12 149/23 153/16 160/4 160/12
parties' [1]  23/16
partly [1]  22/1
parts [1]  19/7
party [10]  1/16 1/19 5/10 44/24 51/10 54/4 107/19 139/22 150/18 150/21
party's [1]  121/21
passing [1]  137/18
past [3]  12/24 18/23 64/4
path [1]  119/19
pay [1]  137/4
paying [1]  106/20
payment [1]  154/10
Payne [17]  7/25 8/11 8/14 8/25 14/3 17/13 17/21 25/14 38/14 40/7 40/17 42/24 112/2 112/2 112/17 114/15 115/22
Payne's [1]  10/9
PB [1]  108/16
PC [4]  2/3 2/7 2/12 2/17
pending [2]  54/17 93/13
people [27]  14/2 22/25 72/7 75/16 75/16 75/17 78/20 79/9 81/6 83/14 83/21 84/10 84/13 84/16 90/10 90/24 93/11 99/8 100/17 104/17 105/7 121/1 124/3 131/15 138/1 147/4 148/6
percipient [2]  13/3

P

percipient... [1] 22/15
perform [1] 74/5
perhaps [14] 4/5 10/13 17/19 28/1 28/4 46/16 46/18 47/1 60/17 72/8 73/22 147/4 158/25 165/12
period [23] 9/1 18/10 61/14 62/11 62/20 62/21 63/9 63/10 64/24 96/2 97/1 98/11 99/4 100/8 102/13 102/14 102/15 102/17 103/13 103/23 124/3 130/19 150/5
periods [1] 33/10
permanency [1] 58/24
permitted [3] 9/20 40/6 71/22
person [20] 16/1 16/9 25/21 28/17 36/20 38/16 75/11 80/1 80/1 83/23 83/24 89/9 89/18 112/7 114/16 114/17 114/17 121/3 124/18 157/15
personal [2] 85/1 140/7
personnel [7] 70/22 96/14 97/8 97/9 97/23 97/24 98/17
persons [3] 85/8 120/2 126/7
perspective [3] 28/11 39/11 78/24
pertain [3] 67/15 67/20 88/23
pertaining [1] 57/7
phone [10] 96/18 96/22 96/25 97/11 97/13 97/14 98/10 98/10 98/25 120/25
phones [12] 91/16 95/22 99/3 99/19 99/20 100/7 102/7 102/17 102/21 102/21 104/17 105/7
photograph [1] 34/9
photographs [3] 15/22 34/7 35/8
photos [1] 33/25
phrase [1] 157/19
physical [3] 15/20 15/21 15/21
pick [1] 92/15
pictures [2] 34/22 72/24
piece [7] 5/25 22/2 25/3 38/2 112/17 118/3 165/8
pieces [1] 27/9
pincite [1] 125/7
pixel [1] 34/14
place [16] 26/4 33/22 40/1 53/1 65/5 68/7 102/19 115/24 117/3 134/11 141/25 142/3 152/19 152/25 160/11 162/12
placed [4] 65/10 65/19 128/11 132/12
placement [5] 64/15

64/17 126/24 128/3 128/13
places [1] 40/15
plaintiff [49] 1/5 1/16 2/2 2/6 3/9 24/1 39/1 41/25 62/12 68/6 68/24 71/20 71/24 72/11 72/13 87/18 107/17 109/11 120/17 121/11 122/20 122/21 124/21 126/23 128/17 129/11 132/22 133/1 134/7 137/20 147/14 147/15 147/16 149/10 149/15 150/11 151/12 154/16 154/19 156/13 156/16 156/24 156/25 157/12 159/3 159/7 159/7 162/19 164/18
Plaintiff's [32] 3/5 9/7 9/17 16/19 28/10 28/18 28/19 28/23 33/19 33/25 35/5 36/4 36/12 38/13 39/10 56/22 67/16 87/19 93/19 98/21 107/8 117/9 117/18 119/9 128/2 132/18 146/15 149/17 149/21 156/11 160/8 163/19
Plaintiffs [30] 7/10 8/17 17/4 17/23 19/5 22/1 22/20 27/25 48/23 49/11 58/19 107/13 107/14 110/23 122/7 122/7 122/8 122/9 123/6 124/2 124/7 124/10 133/13 133/17 133/19 149/3 149/6 149/8 154/1 157/20
plan [3] 15/23 15/25 110/19
plate [1] 111/14
play [2] 102/3 158/21
played [2] 27/11 153/11
players [1] 158/15
playing [1] 153/24
please [6] 3/5 16/15 38/25 127/2 131/4 161/1
plenty [1] 112/6
plug [1] 117/7
plus [2] 106/4 106/4
PM [2] 119/4 165/21
point [29] 18/1 18/2 18/12 18/19 21/14 42/14 45/3 49/18 51/10 59/7 66/1 81/5 85/25 93/3 97/5 101/10 103/18 106/8 117/14 122/19 123/2 125/19 126/5 131/19 132/4 139/4 145/17 156/2 158/14
pointed [3] 10/8 44/5 44/21
pointing [4] 12/10 74/17 122/15 123/17
points [3] 24/12 74/8 110/15
policies [3] 12/21 96/16 99/6

policy [2] 42/15 43/4
populate [1] 155/10
portion [6] 56/22 57/9 100/23 106/16 107/10 153/19
portions [1] 61/25
Portland [9] 2/5 2/9 2/13 2/18 9/14 10/23 13/17 55/1 118/17
posed [2] 37/11 80/18
position [17] 16/24 35/5 41/5 41/9 43/4 67/9 68/22 93/11 96/20 114/22 115/22 120/7 120/24 121/7 124/1 136/3 137/11
positions [1] 6/23
possessed [2] 83/23 84/4
possession [10] 60/21 133/23 133/25 135/24 142/18 143/7 144/4 149/21 151/17 160/8
possible [6] 107/21 141/2 141/3 141/3 150/6 157/19
posture [1] 59/19
postured [1] 53/21
potential [5] 37/21 78/19 82/25 144/3 155/6
potentially [14] 19/10 32/24 66/9 81/11 82/14 85/4 102/16 102/18 112/10 124/20 143/16 147/11 151/4 163/17
potentials [1] 83/4
power [2] 137/10 142/7
practical [1] 28/9
pragmatic [1] 85/20
precede [1] 132/3
preceded [3] 63/4 67/13 67/14
preceding [2] 63/11 128/7
precisely [1] 76/19
preclude [4] 74/19 89/20 141/11 141/25
precluded [1] 88/7
precluding [1] 145/14
prefer [1] 3/11
preference [2] 34/5 52/15
preferred [1] 5/1
premature [6] 99/17 99/24 101/2 101/7 101/9 106/11
preparation [5] 95/25 112/19 114/19 114/22 164/1
prepare [5] 74/6 113/5 114/10 114/10 136/21
prepared [3] 74/16 115/6 158/13
preparing [4] 161/15 162/20 163/1 164/8
present [9] 8/4 13/16 13/16 14/4 14/14 29/11 33/19 34/23 95/2
presentation [1] 33/15
presented [4] 12/17 26/2 80/4 80/5

presents [2] 7/17 13/12
preserve [2] 88/29 112/25
preserved [1] 154/21
press [1] 32/11
Presumably [3] 51/11 99/13 104/15
pretrial [6] 55/11 55/22 55/23 56/9 56/10 56/15
pretty [8] 46/5 47/22 51/4 60/16 61/23 62/1 62/20 86/19
prevent [1] 137/20
prevented [1] 144/16
prevents [2] 151/18 151/19
previous [1] 149/6
previously [2] 14/10 38/13
primarily [4] 4/4 15/3 27/10 112/3
primary [2] 75/6 113/15
printouts [1] 17/2
prior [11] 18/24 18/24 52/2 52/2 58/20 64/17 81/12 96/17 96/24 106/14 119/20
priority [1] 46/21
privilege [17] 12/15 51/8 51/13 114/7 115/17 115/21 115/23 116/12 141/15 154/18 154/19 160/9 160/10 161/17 163/4 163/18 163/22
privileged [11] 113/3 113/11 113/12 114/25 139/14 142/19 154/8 154/15 155/1 155/4 163/17
probably [19] 15/11 26/25 28/8 29/7 29/10 51/15 54/8 54/15 54/25 55/22 56/12 61/21 69/13 81/24 85/5 85/24 131/11 146/25 159/22
probate [26] 59/13 107/20 133/1 134/11 134/24 134/25 135/1 135/7 137/9 139/14 139/24 140/3 143/18 144/1 146/14 147/9 148/25 149/16 150/15 151/15 151/16 155/21 159/4 159/6 159/11 162/17
problem [11] 35/21 44/4 44/5 44/14 45/10 78/20 81/24 85/5 122/25 123/25 151/21
problems [4] 44/1 44/2 45/7 127/12
procedural [1] 110/22
procedurally [2] 110/21 147/8
proceed [2] 23/2 23/18
proceeding [7] 79/20 79/21 139/23 144/9 145/5 147/10 149/6
proceedings [7] 1/22 71/23 143/24 150/6 150/8 165/21 166/10

process [11] 28/9 39/22 61/18 101/22 110/18 138/8 147/4 149/14 158/15 164/25 165/7
processes [1] 164/3
processing [2] 58/4 69/9
produce [37] 8/6 8/18 8/19 8/19 8/23 9/12 9/12 9/21 17/4 20/6 45/15 49/5 57/7 57/16 57/23 59/5 61/19 61/24 62/4 62/8 62/12 62/13 62/21 62/24 64/3 64/4 64/6 96/21 97/3 97/11 98/7 120/8 138/23 143/14 149/13 155/20 160/24
produced [53] 8/23 9/6 9/22 17/3 17/4 17/24 20/25 20/25 32/3 40/23 41/2 57/21 58/5 59/11 59/16 59/20 59/23 60/8 60/9 60/10 60/24 61/1 61/21 68/10 68/15 78/23 81/21 81/21 84/24 90/20 93/10 97/12 97/14 97/24 98/17 98/17 98/19 98/22 99/18 115/18 120/15 122/14 135/14 137/14 137/21 153/9 153/23 154/10 155/21 160/15 163/6 163/20 164/4
produces [1] 22/5
producible [1] 154/25
producing [10] 9/8 31/20 61/18 67/9 68/17 68/22 112/16 134/8 137/20 161/8
product [25] 9/2 9/9 19/9 19/15 19/16 20/1 112/6 113/4 114/13 114/25 115/12 115/17 123/9 123/14 123/19 149/23 156/6 161/9 161/18 162/9 163/4 163/18 163/21 164/2 164/6
production [28] 57/13 58/20 59/12 59/21 59/21 60/2 60/11 60/12 61/20 65/6 65/15 96/22 97/5 107/15 112/2 117/23 132/19 132/20 132/22 135/23 139/12 155/4 158/2 158/11 160/3 161/14 162/5 162/7
productive [2] 74/3 164/24
professional [2] 71/6 138/3
proffer [1] 114/17
proffering [1] 112/4
program [2] 79/10 84/8
prohibitive [1] 149/3
prohibits [1] 73/3
pronounce [1] 66/17
pronouns [1] 3/17
proper [2] 110/21 159/8

**P**

properly [1] 160/1
proposal [1] 160/4
propose [1] 117/2
proposed [5] 48/10 48/11 62/12 69/15 94/24
proposing [4] 62/3 62/5 62/13 63/24
proposition [1] 122/18
prosecute [3] 90/5 116/21 149/4
protect [1] 141/1
protected [2] 137/17 153/6
protective [45] 13/24 35/18 35/23 41/3 44/8 59/14 70/5 71/8 72/5 72/8 72/10 73/11 73/22 76/13 82/10 83/19 85/8 85/14 88/25 91/10 99/16 134/10 134/16 134/23 135/6 135/8 135/15 137/16 138/22 142/14 142/15 143/13 143/15 145/9 150/1 150/2 152/14 152/19 152/24 153/1 153/2 154/14 160/21 160/22 161/4
protocols [1] 17/1
provide [8] 16/7 21/23 33/22 39/21 121/9 131/15 162/11 163/18
provided [14] 11/9 24/8 25/11 27/7 37/13 45/21 78/4 119/25 122/6 124/24 130/3 130/10 130/17 130/23
provider [6] 12/20 14/25 30/2 31/14 31/22 31/23
provides [2] 33/11 137/16
providing [6] 23/24 39/1 60/20 78/13 103/23 104/6
proving [1] 78/10
provisions [4] 137/4 140/25 141/4 160/24
public [3] 137/3 138/8 153/3
pull [2] 17/16 149/13
pulled [1] 19/7
pulling [1] 34/11
pure [1] 108/21
purely [1] 31/5
purported [1] 57/17
purpose [4] 31/5 82/8 82/11 122/17
purposes [8] 11/10 32/24 41/16 41/22 51/25 112/9 115/23 116/12
pursuant [1] 41/2
pursuing [2] 37/15 109/13
push [1] 51/14
pushing [1] 49/1
put [8] 17/15 26/21 33/21 36/17 94/22 107/21 108/23 131/12

putting [2] 116/6 165/7

**Q**

qualifications [1] 17/21
quality [1] 34/15
quash [5] 139/7 139/10 139/11 146/3 158/8
question [35] 10/12 12/19 13/9 28/13 28/16 31/4 32/8 32/18 36/20 37/19 37/21 38/6 40/21 74/9 80/8 80/11 80/17 84/25 93/21 94/4 104/21 116/9 124/12 134/2 151/10 153/16 153/22 153/23 156/11 156/13 156/15 156/17 156/22 156/23 160/13
questioning [2] 21/25 90/25
questionnaire [1] 90/15
questions [33] 4/25 13/4 15/10 15/12 20/5 22/13 22/13 23/13 23/23 34/22 35/2 36/2 36/13 36/16 36/23 37/5 37/6 37/11 38/1 38/3 38/5 59/19 88/8 88/21 88/24 89/17 89/21 90/18 116/9 121/12 121/17 127/20 135/10
quick [3] 39/22 39/24 43/24
quickest [1] 47/20
quite [11] 4/11 8/24 11/21 43/22 55/23 68/14 68/20 83/21 83/25 84/5 162/5
quote [3] 86/9 90/2 137/5
quotes [1] 90/10

**R**

R.D [1] 89/25
R.H [2] 57/17 126/2
raise [2] 108/7 112/11
raised [6] 25/7 67/16 81/25 101/1 106/25 144/3
raises [1] 96/3
raising [2] 31/4 101/11
ran [1] 59/1
range [6] 102/23 102/25 104/11 104/12 104/21 125/24
ranges [1] 125/7
rare [1] 7/3
rather [5] 27/11 64/7 65/11 74/18 156/10
raw [3] 15/7 21/23 22/8
RAYGOSA [30] 1/18 30/2 30/8 30/19 31/15 31/22 33/16 44/11 44/23 44/23 54/6 54/7 54/18 56/21 56/23 57/8 57/18 58/2 62/9 62/11 62/24 68/5 100/9 102/8 103/17 104/6 126/25 127/3 128/5 128/16
Raygosa's [2] 54/12 93/13
re [1] 156/17

re-form [1] 156/17
reach [5] 61/15 85/10 95/15 101/10 105/25
reached [1] 62/1
read [7] 126/19 129/5 129/6 130/21 141/2 142/22 154/13
reading [2] 13/19 13/21
reads [1] 128/1
ready [3] 3/23 5/21 8/19
real [5] 15/10 19/8 20/8 34/6 134/21
really [28] 5/2 6/11 6/17 15/13 15/24 18/21 23/24 34/15 51/14 51/17 56/10 85/22 92/15 94/5 94/11 99/23 100/1 105/6 113/9 116/10 117/25 120/24 121/7 134/15 146/13 149/7 160/12 162/2
reason [13] 8/22 12/23 48/24 75/3 83/17 100/8 115/7 127/7 128/6 129/20 138/19 143/22 145/9
reasonable [1] 150/5
reasons [8] 6/12 7/7 7/7 20/4 43/23 48/14 51/17 134/9
reassigned [1] 53/23
rebuttal [5] 52/20 52/24 53/4 53/7 53/10
rebuttals [1] 52/11
recall [2] 62/25 66/25
recalling [1] 13/22
receipt [2] 61/5 96/17
receive [5] 58/9 63/8 77/12 77/17 78/1
received [12] 9/10 14/10 31/18 77/18 78/3 95/25 96/23 139/15 139/19 157/3 161/16 162/8
receiving [1] 69/10
recent [4] 102/5 120/6 120/24 161/18
recently [7] 31/13 32/23 50/6 137/24 138/1 138/5 139/21
receptive [1] 144/2
recess [3] 46/6 46/10 119/2
recipients [1] 83/22
recitation [1] 127/25
reclassify [1] 76/9
recognize [4] 7/2 14/3 33/9 37/6
recollection [1] 9/18
recommendation [1] 28/22
recommendations [1] 34/18
reconsideration [14] 4/3 4/17 5/14 5/24 6/3 6/13 7/3 11/18 22/23 23/8 39/7 95/19 113/5 114/24
record [10] 16/5 38/10 85/21 110/8 115/19 130/22 139/25 151/6 155/10 166/9

recorded [1] 89/22
recording [1] 34/20
recordings [1] 34/1
records [34] 82/16 87/4 87/11 87/13 90/18 98/24 98/25 99/2 101/21 101/22 106/14 133/9 133/9 133/10 136/24 137/3 137/14 138/8 139/13 139/14 139/16 141/4 142/6 142/18 142/25 143/18 145/18 151/16 151/17 154/8 154/14 162/13 162/24 162/25
recuse [2] 143/3 143/4
redact [2] 65/23 65/24
redacted [5] 9/2 9/8 19/8 19/25 93/6
redacting [2] 69/23 93/22
redactions [4] 9/11 47/21 65/16 91/22
redesignated [1] 86/10
reduce [1] 123/25
refer [3] 123/13 130/16 135/7
reference [7] 59/12 62/10 62/23 64/3 68/15 129/18 137/18
referenced [5] 79/10 83/24 84/5 102/14 119/25
references [5] 64/2 130/9 130/12 130/24 131/7
referential [1] 126/9
referred [2] 123/5 130/13
referring [6] 62/7 67/8 91/7 121/2 126/11 161/10
refers [5] 85/17 121/13 128/8 128/8 135/8
reflect [1] 163/24
reflects [2] 38/24 94/25
reframe [1] 94/3
refuses [1] 41/24
regard [6] 65/16 65/18 93/12 96/13 100/6 101/12
regarding [16] 35/20 51/13 60/25 61/1 63/7 64/12 65/19 65/25 66/8 68/18 79/24 97/23 98/10 105/9 107/15 130/1
regulations [3] 25/8 40/24 41/7
reissued [1] 31/15
rejected [1] 12/13
relate [1] 105/9
related [11] 59/10 69/5 75/7 79/25 121/12 123/10 130/15 134/16 134/22 150/6 150/8
relates [11] 64/16 66/3 74/7 75/14 80/5 80/6 94/14 116/13 129/17 153/25 164/11
relating [15] 57/16 57/24 57/25 65/7 69/4

69/22 70/25 78/21 86/24 87/4 87/11 87/13 87/22 87/23 88/9
relationship [4] 89/20 116/16 116/20 116/23
relatively [1] 6/15
releases [2] 136/21 136/24
relevance [3] 18/20 113/10 151/2
relevant [28] 10/16 11/16 33/6 41/22 45/14 61/24 62/23 63/1 64/6 65/20 96/2 98/11 101/18 102/14 102/15 102/16 102/18 102/19 103/13 103/21 120/8 149/7 149/10 149/22 151/5 153/8 155/7 160/3
relied [4] 112/3 112/17 162/19 162/25
relief [1] 120/23
relies [1] 8/4
relieved [1] 86/20
reluctant [1] 51/20
rely [2] 112/8 130/8
remain [3] 94/10 107/9 153/6
remained [1] 100/22
remaining [5] 105/22 107/13 111/19 119/7 131/23
remains [2] 82/18 106/7
remarks [1] 6/11
remedy [1] 20/9
remember [4] 13/1 14/5 111/14 117/12
remind [2] 126/14 135/1
remote [1] 45/1
remotely [1] 130/19
removal [1] 64/2
remove [2] 66/11 87/8
removed [2] 75/22 128/10
removing [1] 71/12
reopened [1] 31/14
repeatedly [1] 145/12
replaced [1] 99/7
replacement [1] 96/18
replead [2] 110/16 110/24
replication [3] 14/4 25/14 25/22
report [38] 4/10 4/11 4/18 6/2 7/14 7/15 9/10 10/8 14/17 25/23 27/8 39/9 46/7 46/14 56/20 56/22 57/9 57/19 59/10 59/12 59/25 60/5 62/2 64/25 70/9 77/25 78/1 95/25 96/10 106/16 106/25 107/8 107/11 117/15 117/20 119/18 129/11 134/14
reported [1] 93/18
reporter [10] 2/21 91/21 93/7 93/20 94/1 94/2 94/13 94/15 108/3 166/14
reporters [2] 47/22 120/5

**R**

reporting [1]  93/17
reports [29]  8/6 8/12 8/14 9/3 9/21 10/2 10/10 11/6 15/8 15/9 17/5 21/21 21/23 23/23 25/11 26/3 40/23 52/20 52/20 52/24 53/4 53/10 63/19 70/25 88/4 89/23 93/9 93/12 105/10
represent [5]  43/2 128/24 138/17 140/24 145/5
representation [2]  110/8 143/5
representations [1]  17/12
represented [6]  25/12 27/8 77/24 145/12 151/14 156/16
representing [11]  20/23 44/19 81/10 141/5 141/10 141/19 141/22 141/23 145/3 145/4 148/22
represents [2]  148/23 148/24
reproduced [1]  59/24
request [33]  9/15 9/19 9/25 10/21 12/13 22/23 28/24 31/19 32/2 58/20 65/1 65/20 77/22 97/5 98/24 107/15 112/1 113/2 117/23 132/19 132/20 132/21 137/4 137/24 138/21 149/11 160/3 161/14 162/5 162/16 162/24 162/25 163/25
requested [11]  10/6 10/25 31/22 69/11 101/14 102/6 133/9 133/13 133/16 160/2 162/19
requesting [2]  157/3 162/11
requests [6]  96/22 101/2 102/8 116/14 130/21 162/7
require [4]  11/19 28/11 94/10 152/14
required [5]  46/18 96/16 159/17 160/20 160/24
requirements [1]  70/4
requires [2]  43/4 94/16
requiring [1]  4/5
rereview [1]  67/18
rereviewed [1]  67/18
reserved [1]  66/25
resetting [1]  48/9
resistance [1]  136/22
resolution [1]  47/1
resolve [16]  21/6 27/6 45/25 46/19 47/1 47/21 73/23 73/25 74/3 90/24 105/21 106/6 107/7 112/13 116/25 161/1
resolved [6]  53/21 110/5 112/20 115/14 116/8 131/19
resolves [1]  95/17

resolving [2]  46/23 105/1
respect [23]  4/4 4/12 15/6 22/12 27/23 45/12 57/13 61/11 63/2 64/19 79/19 99/9 101/21 101/24 106/6 114/22 115/14 120/1 154/6 154/6 155/18 160/7 164/8
respective [2]  112/4 128/13
respite [4]  103/23 103/24 103/25 104/7
respond [6]  16/12 58/18 67/5 87/7 97/15 127/22
responded [1]  132/23
respondent [1]  121/22
responding [2]  97/20 131/6
response [24]  9/5 44/6 50/22 74/8 109/13 114/20 117/18 117/18 117/23 119/16 121/10 122/6 122/12 123/13 124/1 125/5 125/10 129/15 130/24 132/2 132/3 132/18 134/19 136/22
responses [2]  10/13 130/23
responsible [3]  40/8 40/8 148/21
responsive [8]  32/2 96/21 105/12 120/1 120/12 120/20 130/11 130/24
restate [1]  119/22
restrict [1]  23/1
restricted [2]  8/9 73/19
restriction [3]  26/21 75/24 82/14
restrictions [3]  25/8 40/15 40/18
rests [1]  65/4
result [4]  11/5 11/6 42/9 160/10
resurrect [1]  110/15
retaining [1]  150/5
return [1]  160/21
revealing [1]  115/11
review [16]  27/25 36/25 41/22 51/10 60/17 62/14 62/22 64/6 66/12 75/10 87/16 99/15 112/8 114/19 125/8 138/3
reviewed [16]  60/16 67/23 67/25 113/17 113/24 114/3 114/5 114/21 115/1 115/4 115/9 130/14 140/12 161/15 162/25 163/25
reviewing [10]  15/10 26/5 61/19 64/20 69/9 76/9 99/17 144/16 163/12 163/16
revise [1]  72/6
RFA [1]  124/23
RFP [11]  59/24 112/15 115/14 116/10 132/25 142/1 142/4 149/7

157/3 157/13 158/2
rhetorical [1]  151/9
rid [1]  86/4
right [179]
rights [3]  66/6 79/5 80/7
risk [2]  41/10 110/23
risks [1]  41/14
Rizzo [28]  2/3 2/7 2/7 3/13 3/14 5/13 9/24 16/14 24/5 25/10 26/18 44/3 48/10 69/1 74/15 90/16 94/24 107/6 110/5 111/11 115/19 119/12 125/1 131/1 131/22 136/14 151/1 154/5
Rizzo's [1]  67/8
road [2]  42/16 116/2
rog [1]  108/10
role [1]  153/11
roll [1]  4/2
rolling [1]  61/22
room [5]  2/22 33/19 34/23 140/17 155/17
roughly [1]  119/18
route [2]  7/9 21/15
routine [1]  41/12
RPR [2]  2/21 166/14
rub [1]  134/17
rule [7]  23/25 43/16 56/17 94/19 98/25 111/8 164/24
ruled [2]  12/17 57/2
rules [5]  71/21 125/15 140/3 149/9 158/22
ruling [8]  57/1 58/21 132/1 132/13 160/1 160/1 163/5 163/24
rulings [1]  32/15
run [2]  32/16 107/23

**S**

safe [1]  69/4
said [26]  17/14 36/5 43/11 43/14 48/7 67/2 74/11 81/20 81/22 90/10 107/14 109/20 111/24 115/19 120/14 121/24 126/22 127/2 127/15 127/19 138/8 138/10 140/3 140/16 141/9 142/17
Salem [2]  118/19 140/16
salient [1]  47/8
same [23]  10/7 17/2 17/25 20/25 21/10 21/18 23/6 25/10 27/7 40/24 52/11 55/1 71/6 73/16 102/25 122/4 133/24 136/3 138/19 143/17 155/20 162/10 163/8
sanction [1]  159/16
sanctions [3]  42/1 159/5 159/21
satisfied [3]  11/8 132/11 132/12
saw [5]  18/6 38/10 44/7 67/1 79/11
say [41]  12/7 23/6 25/13 26/20 29/8 36/5

37/22 37/22 41/8 43/18 48/22 48/23 48/29 53/4 62/6 70/6 81/15 81/17 82/16 85/17 89/9 92/2 94/11 105/3 105/19 108/18 110/6 116/18 116/22 118/11 122/10 124/2 129/23 138/22 145/23 147/19 148/7 151/22 157/6 158/16 164/19
saying [11]  32/8 36/7 38/6 44/25 64/14 86/13 89/22 114/7 134/19 141/22 142/4
says [10]  69/21 79/18 90/7 128/6 128/9 128/10 128/11 128/14 143/13 157/15
scanned [1]  61/24
scenario [1]  78/19
schedule [4]  49/6 55/17 56/11 117/3
scheduled [2]  39/22 40/1
schedules [1]  51/21
Schneider [8]  12/13 66/25 67/2 81/25 127/13 138/16 141/19 155/21
scope [6]  90/24 101/24 121/18 121/21 130/25 163/8
screen [2]  34/24 41/6
screening [2]  59/25 60/5
screens [4]  13/22 16/3 20/7 34/23
screenshot [1]  13/1
screenshots [7]  14/2 15/15 17/23 20/7 23/23 33/9 35/8
sealed [1]  144/11
search [9]  59/1 62/14 98/6 104/18 105/5 105/5 105/20 106/1 106/6
searched [4]  98/3 98/10 99/21 104/21
searching [4]  24/3 99/21 101/16 102/13
seat [2]  29/5 29/7
sec [1]  107/4
second [5]  17/20 108/10 119/10 132/21 150/3
secondary [1]  17/12
seconds [2]  161/6 161/7
secret [2]  76/18 86/22
secret-type [1]  86/22
sections [1]  62/2
secure [1]  17/1
secured [1]  81/11
security [5]  17/1 27/23 33/22 39/21 89/13
see [50]  10/18 12/23 12/24 14/7 14/11 14/17 14/19 16/3 17/2 17/19 17/25 18/5 19/5 19/6 20/7 22/4 25/10 31/5 32/25 33/12 34/6 34/8

34/8 37/24 38/1 45/9 45/14 48/7 51/8 53/18 60/4 66/1 70/14 72/12 73/18 75/3 76/23 77/1 77/10 90/4 103/20 110/10 112/2 112/25 113/9 118/25 121/21 125/7 150/10 161/17
seeing [4]  13/1 20/8 85/3 136/23
seek [1]  129/3
seeking [10]  7/10 7/10 8/17 10/3 15/15 85/25 108/21 143/25 157/8 159/7
seem [1]  84/13
seemed [2]  117/20 149/2
seems [6]  49/12 71/2 130/4 132/10 134/10 134/21
seen [8]  37/20 59/10 96/14 96/18 100/16 134/19 138/1 138/3
sees [2]  40/19 86/6
select [2]  14/20 16/10
selected [1]  122/15
selections [1]  15/2
selectively [1]  144/7
semantic [2]  24/15 85/4
send [1]  142/1
sending [1]  142/4
sense [16]  5/6 15/12 43/8 47/7 47/10 47/11 47/15 50/22 51/16 53/7 58/13 74/12 80/1 85/24 88/24 164/23
sensitive [8]  23/1 68/20 69/5 69/22 69/22 70/21 71/19 149/1
sensitivity [1]  152/15
sent [4]  108/19 161/14 162/5 162/7
sentence [1]  120/4
separate [11]  8/8 17/15 27/4 31/14 59/13 80/24 81/12 87/11 128/11 137/7 143/1
separately [1]  19/7
separates [1]  163/5
September [7]  1/6 53/9 53/9 60/12 106/4 106/5 166/6
September 1st [1]  60/12
September 22nd [1]  106/5
September 6th will [1]  53/9
September 8th [1]  106/4
sequestered [2]  142/25 143/1
serious [3]  51/4 96/3 96/3
seriously [2]  42/4 94/11
serve [2]  129/16 138/13
served [4]  112/1 132/19 156/10 156/18
service [2]  44/14 58/3
SERVICES [5]  1/10 1/15 7/6 19/22 145/16

S

session [1] 3/24
set [14] 3/1 17/20 38/5 46/17 46/23 50/10 50/11 51/18 52/5 53/22 54/23 116/4 117/19 119/16
sets [2] 30/4 154/13
setting [2] 55/20 64/5
settle [2] 43/17 49/14
settled [1] 63/21
settlement [1] 141/20
seven [1] 61/13
several [5] 7/19 9/22 43/11 43/13 121/2
shall [2] 87/13 87/14
share [8] 6/1 40/20 51/11 73/12 148/12 148/15 148/19 153/21
sharing [10] 45/12 153/14 155/25 158/10 158/23 159/2 159/14 160/4 160/16 165/9
she [10] 3/17 3/20 43/14 67/2 88/3 88/12 100/23 112/7 127/16 127/17
she'd [1] 127/13
She's [2] 20/11 111/19
she/her [2] 3/17 3/20
sheet [1] 27/12
shielded [1] 120/3
ship [1] 47/13
shoes [1] 68/7
short [2] 47/22 126/1
short-circuit [1] 126/1
shots [2] 16/2 16/10
should [36] 6/13 27/14 27/15 27/15 28/4 28/5 28/8 35/21 36/16 51/23 56/6 58/5 68/22 69/24 73/19 75/4 75/24 77/25 78/23 80/3 83/16 83/17 84/13 84/18 84/19 84/24 86/19 87/14 92/16 93/21 100/1 101/19 114/18 163/23 163/24 164/7
shouldn't [4] 72/2 76/2 148/13 149/24
show [16] 8/14 13/23 23/6 35/19 40/19 54/8 69/22 70/2 70/12 71/7 71/10 79/14 80/4 81/20 88/3 115/10
showed [1] 112/16
showing [9] 23/17 72/21 72/25 73/9 75/7 78/10 82/13 100/2 131/18
shown [5] 24/1 38/4 72/4 75/4 87/18
shows [1] 8/20
shut [2] 24/11 24/13
sibling [1] 29/25
siblings [1] 88/9
Sickening [1] 138/3
side [4] 29/5 29/7 117/9 117/25
side-seat [2] 29/5 29/7
Sidecar [1] 29/6
sign [7] 45/13 71/8

sign-off [1] 45/13
signature [5] 95/2 166/11 166/11 166/12 166/14
signed [3] 116/16 125/8 166/12
significance [1] 20/20
significant [3] 20/19 83/11 137/4
significantly [1] 65/23
signing [2] 91/10 166/8
signs [1] 45/11
similar [6] 9/15 32/16 55/24 56/1 56/1 62/25
similarly [1] 9/7
simple [3] 123/25 131/8 131/16
simplify [1] 146/5
simplistically [1] 136/16
simply [14] 15/17 35/11 42/6 74/18 74/23 84/12 84/16 85/6 90/7 105/14 123/4 155/19 164/2 165/1
since [6] 56/11 61/17 65/16 100/13 106/17 131/19
single [2] 46/19 98/15
sit [8] 6/16 6/18 6/20 6/23 15/25 16/1 89/9 140/16
site [1] 38/23
sitting [4] 6/20 27/17 59/3 158/17
situated [1] 24/17
situation [1] 146/15
six [13] 62/13 62/15 62/20 63/10 63/11 63/13 63/15 64/1 64/4 64/5 64/20 65/2 65/9
six-month [1] 63/10
Sjkelset [1] 145/7
SKJELSET [24] 2/3 3/11 3/12 13/20 52/13 59/8 63/5 64/10 65/13 69/1 73/10 86/12 87/25 88/21 89/5 94/24 95/21 100/5 106/16 117/21 139/18 139/20 142/17 160/19
slash [2] 30/7 30/8
sleeves [1] 4/2
slight [1] 62/3
slightly [5] 35/16 35/25 101/1 111/25 134/1
slow [1] 165/6
smaller [1] 36/10
so [403]
so's [1] 89/10
so-called [1] 26/3
social [5] 44/14 89/12 140/1 141/11 160/8
software [3] 25/4 25/17 86/13
solely [2] 4/5 73/19
soliciting [1] 82/6
solution [3] 66/11 69/16 72/6
some [85] 4/14 5/16 8/7 8/24 9/2 10/9 11/22

15/19 19/16 23/9 23/10 27/9 32/12 34/1 34/22 36/18 37/6 37/14 37/14 38/3 38/4 39/19 43/1 43/3 45/25 46/17 46/21 46/24 47/7 54/21 56/1 56/7 56/12 56/24 58/3 59/3 61/14 61/22 62/3 62/18 67/16 69/21 70/12 71/11 72/24 74/24 75/15 76/22 78/22 90/7 96/3 96/3 100/7 100/11 101/10 101/23 106/22 107/6 114/24 115/6 115/11 115/13 116/25 121/22 122/18 124/8 124/22 125/12 129/21 130/25 135/10 138/19 143/20 153/17 153/19 153/21 154/10 155/1 160/5 163/13 163/19 163/20 164/22 165/1 165/6
somebody [17] 5/8 10/17 21/2 22/8 29/4 31/10 33/18 41/18 43/16 70/3 75/8 78/7 90/2 114/21 115/10 163/25 164/9
somebody's [1] 124/5
someday [1] 147/11
somehow [1] 41/7
someone [6] 9/20 17/21 29/10 29/10 32/25 89/4
something [51] 8/18 13/10 13/11 14/16 17/24 19/25 20/6 22/10 22/16 30/23 32/5 34/8 34/15 34/15 35/25 36/7 36/25 37/1 42/18 43/16 62/15 63/24 66/4 74/25 75/16 76/9 76/16 88/5 89/22 91/13 94/20 101/1 104/20 104/24 108/9 108/15 109/23 110/19 111/4 114/8 115/8 115/11 116/4 117/7 117/12 124/20 137/22 137/22 148/8 158/6 164/8
sometime [1] 52/13
sometimes [6] 22/8 43/23 64/12 74/13 78/11 123/19
somewhat [6] 19/6 55/14 104/15 108/7 120/9 153/24
somewhere [3] 37/17 76/2 98/1
son [1] 44/12
soon [2] 4/23 74/3
sooner [1] 61/22
sorry [14] 8/1 26/16 35/8 92/16 107/14 139/1 142/9 144/20 147/21 148/17 152/20 152/22 154/4 158/5
sort [18] 5/7 10/6 31/13 32/15 32/18 46/23 61/7 88/7 95/16 97/4 104/23 121/9 121/17 124/4 147/7 147/7 160/5

163/5
sought [3] 132/20 132/22 132/25
sounds [7] 21/22 27/11 60/19 100/25 121/24 146/15 159/4
source [1] 37/9
space [2] 131/10 131/14
spare [1] 161/6
speak [11] 13/20 21/13 40/10 59/7 74/16 78/24 84/3 85/16 88/21 123/9 146/14
speaking [2] 70/22 87/10
speaks [1] 73/18
specific [8] 13/9 87/15 90/8 120/22 122/9 122/11 122/19 127/10
specifically [5] 87/7 88/10 100/13 128/6 148/7
specificity [1] 76/22
specified [1] 121/14
speed [1] 11/22
spell [1] 39/13
spent [2] 137/6 165/1
spirit [1] 88/25
spoke [2] 20/11 21/14
spoliation [1] 96/6
SQL [6] 8/8 14/4 17/15 25/14 25/16 25/23
square [1] 116/22
squarely [1] 113/3
staff [3] 19/9 19/17 149/14
stand [2] 6/17 115/16
standalone [1] 73/25
standard [1] 75/12
standards [2] 71/6 159/19
standing [3] 66/7 113/1 158/17
stands [2] 51/16 68/7
start [12] 3/5 47/3 51/15 79/2 92/9 99/24 103/6 109/2 131/15 132/1 148/6 159/20
starting [2] 63/12 159/5
starts [2] 103/13 119/17
state [35] 1/13 2/10 2/15 3/18 6/5 43/7 44/21 58/1 59/14 68/21 70/20 71/18 71/23 71/23 79/4 79/4 81/21 93/10 94/16 94/19 105/24 107/14 108/19 111/6 111/8 134/23 134/24 134/25 135/15 135/20 140/25 147/9 147/25 148/10 160/2
stated [2] 57/8 109/1
statement [4] 18/5 20/18 109/25 120/17
statements [1] 38/19
states [5] 1/1 1/24 2/21 44/15 150/3
status [26] 4/10 4/11 4/18 6/2 8/16 10/8 31/16 39/8 46/7 46/14 56/20 56/22 57/9 61/18

96/10 106/16 106/25 107/8 107/10 116/11 117/15 117/20 119/18 129/11 134/14
statutes [4] 71/18 71/23 94/9 94/11
stay [2] 54/24 63/3
staying [1] 63/3
stenographic [1] 166/9
step [2] 147/7 165/3
Stephen [1] 161/24
Steppler [2] 2/21 166/14
steps [1] 141/13
STEVEN [2] 2/7 3/13
stick [1] 137/25
still [18] 16/2 18/13 68/11 75/24 76/15 84/3 91/1 91/2 91/2 98/16 99/17 106/5 154/15 158/1 158/14 158/22 163/12 163/16
stillshots [1] 34/16
stipulated [4] 85/9 142/21 145/9 154/14
stipulation [1] 85/10
stop [5] 118/10 118/12 118/22 131/12 146/11
stopped [1] 106/17
stopping [1] 143/24
straight [1] 23/8
straightforward [3] 86/19 108/20 123/12
strategy [1] 114/10
strict [1] 152/14
strike [1] 69/17
strikes [1] 45/1
stuck [2] 11/20 14/4
study [1] 69/4
subject [14] 4/12 17/13 35/18 39/7 59/14 64/8 65/11 65/21 71/5 87/22 90/9 121/16 124/17 164/6
subjects [1] 57/19
submission [1] 60/18
submit [1] 131/1
submitted [5] 6/10 38/15 113/8 114/11 163/18
subpoena [22] 107/19 134/15 134/18 137/10 137/12 137/12 138/13 138/21 142/6 146/2 146/3 147/16 151/20 152/1 152/13 154/11 156/18 157/4 157/7 157/7 157/15 158/8
subpoena's [1] 156/9
subpoenaed [11] 132/21 133/10 133/11 139/24 140/2 150/18 150/19 150/20 150/23 156/25 157/21
subpoenas [7] 132/23 133/1 134/3 148/25 149/18 158/7 158/12
subsequent [7] 62/10 63/22 64/1 64/15 69/10 121/15 145/5
subsequently [1] 32/1
substance [2] 17/3

**S**

substance... [1]  36/17
substantially [1]  60/11
substantive [5]  36/12 38/6 75/24 85/4 153/23
substantively [1]  74/25
such [9]  3/7 7/4 40/9 73/4 96/4 104/20 127/9 157/3 157/7
sued [2]  54/15 149/8
suffice [1]  26/20
sufficient [1]  20/9
sufficiently [2]  64/22 109/9
suggested [2]  63/7 82/15
suggestion [1]  77/5
suggestions [2]  37/4 47/16
suing [1]  44/23
Suite [4]  2/4 2/8 2/13 2/18
summarize [1]  142/23
summary [1]  51/25
Super [1]  76/18
supervisor [3]  35/20 127/5 127/7
supervisors [2]  127/5 127/8
supplement [3]  125/15 125/16 145/7
supplemental [11]  74/8 74/17 117/18 119/16 121/9 132/2 132/3 139/25 142/21 154/13 155/11
support [1]  74/10
suppose [3]  110/12 110/14 113/22
supposed [3]  5/22 142/17 143/2
sure [35]  7/17 8/2 18/4 18/19 19/13 21/2 21/17 23/7 27/22 31/8 31/17 34/13 41/17 41/20 42/8 45/10 46/16 47/11 54/19 55/14 79/1 83/1 85/3 87/3 87/3 88/14 97/6 104/19 109/7 117/5 147/20 151/7 152/4 153/24 161/11
surprise [2]  109/17 110/23
surprised [2]  51/12 121/20
surveying [1]  90/16
suspect [2]  31/13 46/15
SW [4]  2/4 2/8 2/12 2/17
swiftly [1]  49/5
sworn [3]  38/20 38/21 163/1
system [5]  23/11 36/13 39/2 44/22 79/13
systems [1]  86/13

**T**

tab [2]  14/9 154/13
tabs [1]  28/23
tag [2]  5/7 5/21
take [40]  4/17 5/3 5/20 6/20 10/5 10/6 16/2 16/2 16/10 20/4 26/6 26/25 32/13 34/9 39/25 41/20 42/16 43/2 43/3 46/6 46/7 52/2 53/1 54/16 55/1 55/23 56/25 83/10 93/25 94/10 106/8 108/6 108/12 108/12 108/13 109/5 117/6 117/15 140/13 147/7
taken [8]  35/18 46/12 67/9 67/9 69/13 112/14 119/4 166/9
takes [2]  8/24 149/13
taking [15]  4/19 15/15 23/19 24/2 33/25 34/7 34/11 34/22 41/5 42/3 42/14 44/17 86/15 111/13 118/21
talk [12]  5/18 12/21 35/17 39/23 68/19 87/14 90/25 91/17 93/1 105/2 112/5 160/16
talking [29]  6/2 12/19 22/16 26/10 27/21 28/3 28/5 29/13 29/20 30/23 35/24 49/24 61/8 64/8 68/16 72/13 88/15 93/2 98/4 100/25 115/3 120/14 125/4 129/25 144/18 145/25 156/3 157/10 162/22
targeted [3]  62/14 62/16 62/16
targeting [1]  65/18
TCA [2]  144/21 144/21
team [2]  5/7 5/21
technical [2]  7/24 104/24
technology [2]  34/19 34/20
telephone [4]  98/15 98/19 105/11 105/12
tell [14]  4/25 23/17 39/24 44/2 61/10 87/6 89/6 90/2 102/10 103/3 117/10 121/3 121/3 148/13
telling [4]  25/10 29/8 45/2 120/17
tells [1]  25/24
ten [3]  46/6 161/6 161/7
tends [1]  35/7
tens [3]  142/2 145/19 145/23
term [2]  28/3 100/23
terminal [1]  17/20
terms [18]  24/10 24/18 27/5 33/25 35/22 59/1 101/19 105/5 105/5 105/8 105/21 106/1 106/6 116/18 120/10 130/20 137/17 150/1
terribly [1]  120/20
territory [1]  41/10
tertiary [1]  17/12
testimony [10]  14/5 35/5 35/10 35/12 35/18 37/15 38/20 38/21 39/3 112/9
text [6]  96/1 100/7 102/16 103/12 106/1 106/9
texts [2]  102/19 103/20
than [30]  9/18 10/3 10/13 16/19 26/20 26/25 27/1 27/11 32/20 36/25 47/8 49/7 62/20 63/24 64/7 65/11 67/19 68/12 71/22 74/18 101/1 110/1 113/10 118/21 124/20 129/12 130/13 136/11 157/14 161/2
thank [40]  3/3 3/11 3/12 3/14 3/19 3/22 4/9 6/19 6/25 24/4 39/4 45/19 46/2 46/8 46/9 53/17 55/21 87/3 91/3 92/6 95/4 95/5 95/20 97/22 111/10 111/16 111/18 118/23 118/24 131/21 132/17 160/17 164/17 164/19 164/20 165/14 165/15 165/16 165/17 165/18
thanks [2]  6/9 61/7
that [971]
that's [121]  5/4 6/5 6/17 7/21 7/23 8/18 10/20 11/1 13/8 14/14 14/25 15/3 15/13 15/21 16/17 17/23 19/9 20/24 21/25 21/25 22/1 22/19 24/9 25/4 26/22 27/10 27/13 29/14 30/11 30/22 31/17 32/5 32/23 33/7 33/8 33/12 34/8 34/24 34/24 35/18 37/21 37/23 40/21 42/13 42/24 45/14 47/3 47/22 47/25 49/1 49/19 49/20 50/1 51/14 54/3 54/8 54/14 57/2 58/4 58/10 58/21 58/25 60/16 69/19 69/23 76/14 77/15 82/24 85/20 88/15 89/1 89/15 92/15 93/24 94/17 98/12 102/3 102/4 103/13 104/2 104/8 104/9 104/10 106/2 106/23 108/22 109/22 112/6 112/17 115/5 115/9 118/2 120/5 120/9 120/16 120/20 120/20 121/7 122/24 124/8 127/13 127/14 127/20 129/4 129/5 129/17 134/1 138/12 138/17 140/2 141/8 141/8 141/15 145/6 147/15 155/16 156/6 156/11 156/13 161/12 164/2
their [46]  1/11 16/24 40/16 41/14 44/6 51/8 58/9 59/1 60/21 63/3 63/4 63/9 64/1 68/4 68/4 68/19 74/16 78/22 86/8 100/6 112/4 117/22 118/2 118/3 120/14 120/18 122/16 124/11 124/12 126/23
them [86]  4/21 9/8 9/22 14/3 14/18 19/24 20/9 21/15 24/2 24/14 41/10 41/21 58/24 59/5 59/11 61/19 61/19 61/19 67/18 68/16 69/10 69/12 70/14 71/7 71/10 78/23 81/19 86/11 86/14 88/13 91/7 98/2 98/3 98/3 98/7 98/7 98/7 98/22 99/19 99/21 99/22 101/18 102/21 102/22 104/17 104/18 106/7 108/12 108/13 108/19 112/21 115/23 116/18 117/17 122/20 123/2 123/16 123/17 124/11 125/8 125/9 128/11 129/18 130/13 130/17 134/11 140/15 140/16 141/1 142/4 143/10 143/14 143/14 144/21 147/5 147/14 147/15 147/15 149/13 150/10 153/10 155/23 157/17 157/18 162/11 163/20
theme [1]  46/23
themes [2]  32/15 46/17
themselves [4]  3/5 96/24 113/14 123/10
then [162]  4/10 4/13 4/18 4/21 5/18 6/1 9/12 10/4 10/5 10/7 11/4 12/17 12/21 14/4 14/19 15/4 16/3 17/21 18/6 18/12 19/5 19/7 25/21 26/17 28/12 29/4 29/8 30/1 30/7 30/13 30/19 31/10 32/13 33/16 35/2 35/3 35/4 36/2 36/4 36/4 37/9 38/17 41/12 41/19 45/2 45/7 45/20 46/7 49/11 51/3 51/22 51/23 52/6 52/6 52/11 52/20 53/3 53/20 54/14 54/15 54/23 55/11 55/19 56/7 57/11 57/19 60/18 61/13 61/24 62/9 62/21 63/9 63/13 63/24 64/4 65/5 65/5 65/9 68/17 70/11 74/9 75/14 75/15 75/17 77/1 77/22 78/7 80/22 80/23 80/25 81/6 81/10 81/17 81/18 82/17 82/18 85/18 85/24 87/7 87/10 88/25 89/1 90/13 90/18 90/22 90/22 90/25 93/1 94/25 95/20 98/23 101/24 104/12 104/13 104/19 108/14 114/6 115/9 116/2 116/10 117/11 117/11 117/22 117/24 119/10 119/15 120/6 121/2 123/12 123/16
there [169]
there's [88]  5/1 12/21 16/5 17/6 17/15 18/10 19/14 19/22 19/23 20/19 22/12 22/16 22/16 34/20 34/23 35/2 35/3 36/1 41/9 42/25 44/8 44/12 44/17 47/8 52/24 54/3 58/6 58/23 59/2 60/18 62/10 62/23 64/1 64/3 68/10 71/17 75/15 81/23 81/24 82/17 83/25 84/1 84/5 84/11 85/18 87/3 87/11 88/19 90/12 90/12 90/13 92/23 93/13 93/14 94/9 95/7 99/12 99/23 100/2 101/24 102/20 104/13 104/13 110/23 112/6 113/25 114/7 115/1 115/11 115/17 117/11 119/22 125/22 132/7 134/15 134/16 135/1 135/10 137/7 137/19 142/15 149/17 149/18 149/20 149/23 151/18 155/8 164/14
therefore [3]  71/5 123/1 160/23
therefrom [1]  73/14
these [111]  8/14 9/21 10/9 11/22 14/2 14/18 15/11 24/12 25/11 39/19 40/23 58/22 62/18 64/20 65/17 65/19 65/25 68/16 68/18 69/9 70/12 71/19 72/1 72/12 75/10 76/1 78/10 78/13 80/10 80/18 81/3 83/14 83/21 85/18 86/13 86/18 87/16 87/18 88/3 88/4 89/10 89/23 90/14 90/18 90/24 97/15 102/17 108/7 113/5 113/6 114/25 115/8 115/21 115/23 116/14 116/15 116/17 118/20 119/25 121/1 122/14 122/19 122/25 123/9 123/22 123/23 124/2 124/12 125/12 125/23 125/24 126/9 126/15 127/20 129/21 130/7 130/9 130/10 130/13 133/12 133/16 133/20 134/4 134/4 134/8 135/7 135/9 135/23 138/7 142/6 143/6 143/12 144/11 144/17
128/10 131/15 135/3 138/13 139/18 140/1 140/3 142/15 142/16 144/10 145/19 148/14 148/19 151/1 152/18 153/21 154/9 155/15 155/18 155/24 157/7 157/24 157/25 159/23 159/24 160/6 160/8 160/13 160/15 164/3 164/5 165/12
127/8 127/9 128/2 128/9 128/13 128/14 128/16 144/12 144/12 150/12 152/23 153/12 159/6 160/2 161/8 162/7

**T**

these... [17] 144/25 145/12 145/14 145/18 147/8 148/14 148/18 149/24 151/2 153/3 153/20 154/1 154/14 155/9 158/12 159/18 163/19

they [227]

they'd [2] 124/22 124/22

they'll [2] 51/11 163/21

they're [58] 12/19 17/2 17/24 18/2 21/11 21/18 22/16 23/12 28/14 32/16 32/16 40/5 42/3 44/17 44/19 44/23 44/25 45/1 51/7 51/10 70/10 71/8 72/1 76/25 84/4 84/15 86/7 97/9 100/9 100/17 109/16 109/17 112/15 114/6 114/14 114/14 116/17 122/23 122/23 123/22 124/21 125/6 129/16 141/24 143/1 144/11 148/18 149/22 152/4 152/5 152/9 154/8 154/9 154/15 155/12 161/7 162/9 162/10

they've [12] 13/23 20/25 24/11 38/14 102/5 114/3 114/5 132/23 134/9 138/1 138/3 149/23

thing [11] 7/3 11/24 12/4 22/3 22/4 31/7 31/10 111/14 115/19 117/10 138/20

things [29] 7/12 7/13 9/4 9/8 14/22 15/22 16/7 16/16 17/2 26/10 28/8 49/1 52/7 67/11 68/6 80/1 83/3 85/6 90/1 90/6 90/23 93/18 98/20 107/7 111/13 131/11 133/24 139/24 165/2

think [178]

thinking [11] 24/6 35/15 35/15 54/25 75/21 87/7 89/6 109/20 118/2 123/12 148/12

thinks [1] 78/7

third [9] 1/16 1/19 21/14 44/24 51/10 54/4 54/12 107/19 149/23

third-party [6] 1/16 1/19 44/24 51/10 54/4 107/19

this [265]

those [97] 7/13 8/4 9/3 9/6 9/8 9/11 12/16 13/16 16/7 18/25 30/2 36/23 42/9 42/22 43/3 44/6 44/7 46/1 51/17 54/21 57/24 57/25 58/1 60/22 60/22 60/25 61/5 61/11 61/12 61/18 62/12 66/9 66/10 67/22 68/5 68/6 68/8 68/23

68/23 69/25 70/2 70/6 71/22 72/3 73/24 74/10 75/14 75/16 75/17 75/19 75/20 79/14 80/25 82/16 84/8 84/10 86/24 88/5 89/7 89/21 90/6 91/17 93/11 93/16 96/19 96/21 97/3 97/8 97/23 98/19 99/6 105/8 117/25 119/8 122/24 123/21 128/23 130/22 134/16 135/18 135/19 137/17 141/24 143/17 143/23 143/25 147/13 148/21 151/16 151/17 154/8 159/12 160/14 160/24 162/5 162/9 162/10

though [7] 7/23 46/3 62/2 65/24 70/8 97/9 118/17

thought [23] 31/9 31/10 35/16 45/3 46/1 48/8 48/14 51/6 54/2 56/25 65/2 66/20 67/1 67/2 79/8 87/24 95/11 108/19 109/22 112/11 115/6 130/18 164/3

thoughtful [1] 117/1

thoughts [5] 4/25 5/16 47/5 47/17 52/21

thousands [10] 51/7 60/3 86/10 86/15 137/6 138/11 142/2 145/18 145/19 145/23

thread [1] 88/20

three [14] 6/12 7/7 26/10 49/16 50/20 50/25 55/6 69/14 96/12 101/9 121/12 127/6 128/8 139/24

three-week [3] 49/16 50/20 50/25

threshold [2] 73/24 74/4

through [45] 8/7 8/7 10/5 22/18 23/22 25/1 25/1 25/2 25/11 25/22 35/13 36/24 39/18 40/23 42/22 45/16 46/17 46/19 47/19 54/21 58/2 62/22 69/9 69/11 74/1 75/20 88/4 92/11 92/17 92/23 101/22 103/9 106/13 110/17 119/18 132/22 133/1 138/8 143/10 148/22 153/20 155/24 157/15 161/18 164/22

throughout [3] 126/23 128/2 128/14

thrust [2] 121/5 127/10

thus [1] 96/23

TIBBETTS [1] 1/8

tie [2] 11/25 12/5

tier [2] 77/2 77/2

tiers [2] 76/14 76/15

time [99] 3/1 7/25 8/24 9/1 11/21 15/10 18/2 18/10 19/8 20/8 23/6 26/5 26/21 26/25 33/10 34/6 37/9 43/4 43/16 43/18 44/18 44/19

44/21 45/4 49/11 52/16 52/17 53/1 53/5 54/21 55/1 55/2 56/12 56/12 57/18 59/10 60/4 61/14 62/3 62/7 62/9 62/11 62/23 63/1 63/12 63/12 63/12 64/2 64/7 64/21 64/22 64/24 65/7 65/8 65/11 66/2 70/8 77/17 78/1 78/16 84/17 90/23 96/2 97/1 97/12 97/13 98/11 99/4 100/8 101/11 101/13 101/14 101/19 101/25 102/8 102/13 102/14 102/15 103/13 103/23 105/2 107/23 110/18 110/23 112/13 113/23 116/6 122/21 124/7 124/18 129/4 130/17 147/3 147/9 149/12 149/13 149/14 164/19 164/25

timeline [2] 43/8 53/13

timely [1] 41/24

times [6] 20/13 20/16 20/21 20/21 78/11 128/8

today [17] 3/23 6/10 11/24 18/21 33/12 44/25 46/4 95/13 96/8 106/3 106/3 119/20 120/6 120/23 132/24 136/23 155/16

today's [2] 68/10 129/4

together [3] 53/19 114/9 141/21

told [7] 12/1 12/5 79/4 109/19 120/11 120/24 155/14

tolerable [1] 128/19

too [12] 6/21 7/23 29/11 41/17 43/24 47/16 48/7 48/24 56/16 81/24 82/1 93/3

took [4] 44/21 115/24 139/3 142/2

top [6] 14/24 76/18 117/14 117/16 119/18 122/10

topic [4] 86/3 95/18 98/25 101/10

topics [6] 10/11 47/9 95/12 95/14 99/3 99/14

tort [3] 9/5 19/22 102/20

touchstone [1] 128/23

towards [1] 27/20

trace [1] 79/12

track [1] 106/17

trade [2] 56/7 86/21

trail [1] 17/17

trained [2] 33/10 34/24

training [4] 32/24 33/11 69/4 115/4

transcribed [2] 140/5 140/10

transcript [4] 1/22 35/4 166/9 166/11

transform [1] 15/8

travel [1] 56/8

traveling [1] 105/24

treated [1] 35/4

trial [39] 49/17 50/9

50/24 51/1 51/4 53/22 54/23 54/24 55/19 55/20 56/13 56/17 109/17 110/20 110/23 124/7 138/15 140/4 141/9 141/10 141/14 141/21 142/18 143/1 143/17 144/3 144/6 144/10 144/15 144/18 144/19 144/20 144/24 145/1 145/10 145/11 146/2 159/3 159/6

tribal [9] 133/10 134/15 156/2 156/3 157/2 157/10 157/18 157/21 160/7

tribe [5] 156/10 156/10 156/18 156/25 157/9

tried [4] 10/5 86/11 127/14 157/19

trip [1] 43/24

true [4] 26/19 60/7 120/16 166/8

truthfully [1] 116/22

try [8] 14/2 49/7 55/14 55/17 74/3 90/6 136/19 161/1

trying [24] 8/2 14/25 15/3 18/20 22/25 24/9 24/14 25/4 35/17 36/14 43/24 52/4 78/19 86/16 88/19 95/6 124/4 127/12 138/20 141/25 144/15 157/13 158/14 165/5

turn [1] 107/3

turning [2] 35/9 46/14

turns [5] 36/2 37/1 37/1 67/3 140/4

tweaked [1] 37/25

twice [2] 20/21 119/20

two [62] 5/12 23/15 26/10 28/2 29/23 30/2 30/5 30/5 33/15 41/17 43/14 44/2 44/5 44/17 44/20 45/2 45/2 45/5 45/7 48/17 49/7 52/20 52/22 53/4 55/6 55/9 55/15 60/23 61/12 62/2 67/19 75/14 75/16 75/17 76/14 76/15 77/2 80/1 80/14 86/23 101/20 105/25 106/3 110/14 116/9 116/10 117/17 118/1 118/21 119/7 127/4 130/22 132/20 134/11 141/21 143/23 146/18 149/15 159/15 160/8 160/14 165/2

type [3] 12/21 36/9 86/22

types [1] 89/21

typical [3] 8/10 8/12 131/16

typically [2] 96/15 97/8

**U**

ultimately [8] 10/4 10/8 26/2 80/14 90/20 139/6 140/3 142/20

Um [1] 125/21

uncharted [1] 41/10

unclear [2] 44/7 134/17

under [22] 13/23 17/1 30/14 35/23 38/20 38/22 66/15 71/23 72/5 72/8 80/7 93/10 96/16 111/8 116/18 120/3 122/13 125/15 149/9 158/22 158/23 160/20

undergo [1] 28/12

underlying [2] 41/2 79/21

understand [51] 4/13 7/17 10/14 12/12 12/18 13/3 13/25 14/10 15/1 15/14 22/3 22/15 22/17 23/11 24/9 25/20 26/18 27/7 30/22 31/8 32/15 33/8 36/14 36/18 37/16 42/2 42/8 45/16 68/6 78/19 79/25 87/25 97/6 98/20 101/12 102/9 121/15 125/14 130/5 130/9 130/21 136/18 142/7 142/24 144/15 151/1 151/11 154/2 155/8 159/25 162/4

understandable [1] 60/15

understanding [34] 7/21 7/23 9/18 11/19 11/23 13/12 16/17 17/5 18/7 19/13 22/2 22/9 29/18 30/12 32/12 32/22 38/24 41/5 51/19 58/21 64/19 70/8 100/11 102/4 102/5 104/2 104/5 104/8 104/9 122/21 130/15 136/15 152/12 160/1

understands [1] 137/23

understood [9] 8/17 18/5 35/24 93/18 122/1 125/22 125/24 129/1 131/3

underway [1] 6/14

undue [1] 23/24

unfair [1] 149/20

unforeseen [1] 27/15

unilaterally [1] 110/3

unique [2] 13/15 90/8

unit [5] 9/4 19/9 19/18 20/12 44/9

UNITED [4] 1/1 1/24 2/21 44/14

universal [1] 95/16

unknown [2] 100/8 130/25

unless [9] 32/10 35/13 71/10 77/13 92/14 101/23 115/10 143/18 148/7

unnecessarily [1] 131/11

unnecessary [2] 105/10 109/14

unplanned [1] 22/6

unredact [1] 94/6

unredacted [1] 59/23

unsophisticated [1] 10/13

unsure [1] 32/4

**U**

until [9]  12/5 51/8 51/15 100/10 101/23 110/4 116/5 118/17 162/1
unusual [4]  7/3 131/14 141/17 149/15
unusually [1]  148/5
unworkable [1]  74/24
up [55]  4/2 4/17 4/19 4/24 5/3 6/20 6/23 11/21 17/20 17/22 18/4 19/7 23/14 32/14 35/3 36/15 38/5 38/24 39/20 41/11 41/20 42/16 45/24 46/4 46/7 51/4 51/5 51/9 52/5 53/5 55/1 55/24 57/10 76/2 77/7 77/8 80/13 82/22 83/10 89/25 92/15 93/25 104/20 106/8 108/24 109/5 111/2 111/22 117/15 121/8 126/9 131/13 138/9 156/1 161/1
update [1]  99/23
upheld [1]  20/1
upon [4]  112/8 128/13 150/3 162/25
upper [1]  79/9
ups [1]  37/1
Uranga [2]  137/15 151/14
us [55]  6/2 13/19 14/19 16/8 27/17 39/18 43/8 43/24 43/24 44/10 45/25 49/21 51/14 57/10 57/21 59/23 67/16 73/21 74/19 77/8 85/21 86/9 93/10 96/5 96/21 99/12 101/18 104/10 109/2 109/17 116/25 117/14 120/12 120/24 121/2 121/3 121/3 124/24 126/11 129/16 132/18 141/4 141/11 141/20 141/25 142/1 142/2 142/4 142/5 145/12 145/14 149/20 155/12 155/12 155/20
use [23]  4/18 12/20 15/17 25/14 28/16 32/25 35/22 65/14 70/7 71/1 74/10 74/20 74/21 79/18 83/14 116/18 123/1 124/13 143/15 144/5 144/11 144/25 159/22
used [4]  14/4 49/21 105/5 157/9
user [4]  7/18 8/10 8/12 10/19
users [1]  28/12
uses [1]  82/10
using [6]  28/3 51/10 142/4 144/16 159/17 159/20
usually [1]  43/17
utilized [1]  101/19

**V**

vacation [1]  9/1

vague [1]  134/17
valid [1]  13/8
variety [2]  12/20 137/3
various [5]  10/10 13/22 14/2 14/18 78/11
vast [1]  69/6
vehicle [3]  7/19 25/1 33/11
venue [2]  159/8 159/10
verdict [1]  110/22
verification [1]  125/8
versus [7]  20/21 28/18 32/18 50/23 55/6 62/15 93/17
very [32]  7/3 17/1 41/21 41/22 42/4 45/1 49/4 49/12 51/19 56/13 57/10 60/12 70/21 72/23 81/3 99/17 102/5 108/12 114/24 120/6 121/25 126/6 136/16 136/22 138/5 139/21 140/24 146/15 148/6 149/14 152/14 164/6
via [2]  147/15 155/21
vial [1]  22/4
video [12]  16/2 16/9 34/6 34/11 35/7 35/8 35/19 35/20 36/2 138/2 152/15 160/21
videotaped [1]  35/2
view [5]  24/22 41/9 68/8 68/24 91/8
viewed [1]  40/25
viewing [3]  11/15 15/19 38/23
violation [1]  41/7
virtue [2]  71/20 79/12
vis [2]  158/12 158/12
vis-à-vis [1]  158/12
visible [1]  7/12
visit [1]  14/21
visual [4]  4/5 4/6 21/3 23/10
visualize [4]  15/5 17/9 22/9 27/2
visually [3]  9/25 25/12 27/8
voluminous [2]  60/16 61/23
voluntary [1]  58/3
volunteer [1]  26/4
volunteered [1]  35/12

**W**

wait [1]  116/5
waiting [2]  136/4 165/7
waive [2]  144/7 144/7
waived [1]  160/10
waives [3]  154/16 154/17 154/19
walk [1]  22/24
walked [1]  109/20
want [79]  5/3 6/11 12/23 14/7 16/16 17/23 19/5 19/5 19/13 20/7 21/13 21/16 21/19 21/20 22/2 24/25 25/10 26/3 27/20 27/21 27/22 27/22 28/20 30/24 31/8 34/19 36/18 36/19 37/2 38/23 39/17 41/20 42/6

42/6 42/8 43/17 43/24 46/22 52/1 52/10 52/12 56/10 56/25 57/15 59/18 69/21 70/2 70/22 71/1 77/8 79/2 79/14 85/17 85/20 85/21 88/7 91/17 96/7 97/5 107/3 110/24 115/19 122/7 122/9 122/9 123/25 126/19 137/22 146/24 147/19 148/5 148/12 148/14 150/13 151/11 154/11 154/20 155/23 156/1
wanted [6]  5/21 23/5 27/4 92/9 107/7 158/5
wanting [3]  20/4 21/18 88/14
wants [5]  32/25 41/18 52/14 148/18 159/20
warehouse [1]  38/2
was [199]
wasn't [12]  60/9 79/22 80/5 84/22 85/22 96/21 103/18 120/19 126/12 128/1 150/21 162/1
watch [1]  151/25
watching [2]  151/20 151/22
watermelon [1]  92/14
way [37]  3/4 5/1 15/2 17/2 17/6 17/25 23/12 25/19 25/20 34/15 37/7 41/24 44/6 47/16 51/12 52/5 52/14 71/11 79/15 79/18 81/23 82/15 89/12 93/18 94/23 95/2 108/15 108/23 120/5 120/11 120/25 128/7 141/2 141/3 142/6 148/12 149/15
ways [3]  8/3 24/14 80/14
we [466]
we'd [2]  55/11 112/11
we'll [26]  3/5 9/12 31/7 40/3 41/19 45/15 45/20 46/7 49/6 51/11 54/20 54/23 56/9 56/9 61/22 61/24 62/11 95/16 108/14 116/2 117/2 117/3 118/21 146/10 146/10 164/11
we're [78]  4/19 4/20 6/15 9/11 10/3 11/20 13/19 13/21 14/25 15/3 17/4 17/11 21/17 24/9 24/23 25/4 26/2 28/5 29/19 30/23 43/22 46/3 47/12 47/14 48/17 51/13 54/24 58/25 59/4 59/4 59/5 61/7 61/18 62/8 62/13 66/7 68/16 68/17 70/17 72/13 79/3 79/4 79/16 79/19 86/5 86/15 88/15 95/9 95/9 95/12 97/2 98/4 99/21 99/22 102/13 102/21 102/21 105/25 106/21 110/24 115/3 116/5 117/11 122/4 127/12 129/16 141/4 141/5

141/7 147/17 149/7 150/16 150/10 157/8 160/23 162/8 163/12 163/16
we've [32]  6/10 12/24 14/1 31/17 31/21 49/23 62/1 67/20 86/11 86/14 87/15 94/25 95/17 96/22 97/24 98/10 98/17 98/17 98/19 98/22 99/18 99/18 99/21 99/21 101/9 119/19 122/14 126/6 133/16 143/10 163/17 163/18
weaponizes [1]  140/25
week [10]  8/19 49/16 50/20 50/25 56/14 56/14 59/12 62/20 105/19 105/24
weekend [1]  4/22
weeks [10]  8/25 52/20 52/22 53/4 55/6 55/9 55/15 67/19 105/25 106/3
welcome [6]  6/16 6/17 95/7 111/17 129/16 164/21
welfare [1]  129/21
well [95]  4/2 5/11 11/23 12/15 16/3 18/7 18/18 23/4 24/19 26/9 26/13 26/17 26/21 29/16 31/9 31/21 34/5 36/15 37/22 39/23 40/7 43/11 43/15 43/21 48/1 53/2 54/20 56/6 56/9 56/13 62/18 65/4 65/14 67/7 69/2 70/6 72/13 73/24 74/23 77/19 77/23 78/5 78/15 79/23 80/16 81/5 82/22 85/7 85/17 88/2 88/12 89/8 89/9 92/11 96/5 96/6 97/7 100/16 104/11 109/5 110/12 110/14 111/17 111/21 112/15 112/25 114/24 116/3 118/16 118/17 120/18 122/2 123/3 125/14 126/10 135/22 140/11 141/15 144/13 145/20 146/1 146/3 148/16 148/20 154/7 154/19 156/9 156/15 156/21 157/24 159/1 160/6 164/6 165/1 165/14
went [8]  21/7 25/18 50/6 86/17 125/23 126/21 148/21 156/6
were [118]  8/17 9/6 10/4 10/10 12/17 12/22 13/16 15/16 18/9 19/10 20/20 24/13 25/7 26/19 31/15 37/25 44/6 46/25 49/20 50/24 51/24 53/18 57/7 57/17 57/18 57/19 58/1 58/22 59/1 61/14 62/3 64/4 62/9 62/11 62/19 62/21 62/24 63/8 64/2 65/18 65/20 67/17 67/22

67/23 68/5 68/18 68/19 69/3 70/14 71/11 76/20 80/19 81/10 82/13 84/3 88/4 88/9 90/1 90/1 91/16 93/18 95/11 96/2 99/3 99/7 99/8 102/18 105/6 109/20 111/2 112/2 113/16 119/7 119/8 119/12 119/24 119/25 120/3 120/14 120/15 120/16 121/1 121/17 122/16 124/3 127/11 128/23 128/25 130/1 130/10 130/16 134/23 135/7 135/23 137/14 137/15 137/21 139/24 140/9 140/12 141/10 143/23 144/9 145/3 145/4 145/4 145/13 145/13 146/18 146/19 146/25 151/14 152/13 153/13 157/10 158/15 159/17 162/4
weren't [4]  33/10 83/15 84/7 97/24
what [236]
what's [14]  4/16 16/4 25/16 26/13 55/13 64/6 69/15 69/15 86/16 102/23 123/3 134/5 136/17 145/19
whatever [13]  14/3 25/2 31/23 33/11 53/5 95/17 105/21 106/7 107/8 115/7 121/24 160/13 164/5
whatsoever [2]  44/8 69/5
wheel [2]  24/2 29/4
when [66]  8/15 14/1 14/12 14/12 14/15 15/4 16/4 18/10 19/9 19/22 19/23 25/12 27/11 31/22 37/22 38/3 38/19 40/4 40/19 47/23 55/19 57/1 59/8 62/6 62/11 62/21 62/23 63/13 64/12 64/17 70/24 74/20 86/18 88/4 89/22 89/25 90/1 92/11 95/6 96/7 97/1 99/8 100/9 100/10 102/8 102/18 102/19 103/5 103/13 103/17 105/17 108/12 114/16 120/2 120/11 120/14 125/23 127/13 127/14 139/19 142/2 147/19 151/22 156/5 158/15 162/11
where [42]  8/20 12/11 14/1 17/16 17/20 18/11 28/20 32/24 36/2 36/4 36/18 40/24 43/25 47/12 48/8 48/17 49/2 49/12 56/5 59/12 61/10 65/13 73/21 76/2 99/24 100/17 119/20 120/7 120/20 121/22 123/15 124/1 124/2 126/5 127/20 134/17 136/16 142/7 147/8 153/18 158/16 159/12

**W**

where's [1]  134/5
wherever [1]  10/15
whether [25]  11/2 13/10 15/20 18/20 21/25 28/13 31/17 31/23 41/25 44/7 44/13 58/2 58/3 73/22 80/19 81/8 81/12 82/16 88/6 90/17 94/15 153/7 153/22 160/10 160/12
which [75]  5/21 7/16 8/15 9/21 10/3 15/9 20/9 22/14 23/7 23/12 24/17 26/23 28/10 28/16 47/2 49/6 49/22 51/23 55/24 59/22 60/20 60/21 60/21 63/1 65/7 65/9 68/10 69/12 69/13 73/11 73/13 73/17 74/8 75/1 77/1 77/4 79/3 79/23 82/3 85/5 85/24 87/8 87/10 90/14 95/17 98/18 102/2 103/3 105/11 108/25 108/25 113/5 114/8 124/12 128/17 129/25 131/10 136/4 147/3 148/14 149/2 150/3 150/8 152/2 152/2 153/2 153/9 153/12 154/13 155/4 156/23 159/10 160/22 161/10 161/11
while [6]  34/7 48/1 53/19 107/6 108/15 162/6
who [73]  4/16 5/22 10/17 12/25 16/5 17/14 40/3 40/15 44/9 44/10 54/15 57/7 57/17 57/18 60/6 61/14 63/8 65/19 66/6 66/12 66/12 70/3 70/13 71/4 72/3 72/7 72/16 74/20 75/19 77/1 77/10 77/11 77/12 77/16 77/19 77/24 77/25 79/10 83/15 83/23 86/6 88/9 93/17 93/17 93/20 97/2 98/16 99/6 102/6 120/2 120/3 120/25 121/1 121/3 123/23 124/3 125/8 127/5 130/16 135/3 137/15 138/1 138/14 139/8 140/24 141/21 150/14 151/14 156/6 157/20 158/14 158/15 161/20
who's [11]  3/9 5/9 17/13 28/16 32/25 36/3 36/20 76/21 76/22 89/4 131/23
whoever [1]  42/24
whole [3]  30/17 31/7 71/18
whom [3]  53/21 82/20 139/13
whose [3]  68/7 81/7 135/22
why [36]  8/22 15/3

21/14 22/20 33/8 33/12 36/6 37/20 37/23 40/2 46/24 49/20 54/8 66/1 68/19 68/21 75/3 83/17 84/15 85/1 101/13 108/1 108/20 116/3 116/3 127/7 129/20 135/1 136/18 144/10 144/15 144/24 148/13 155/20 159/22 159/24
will [78]  4/14 4/15 4/24 5/7 5/8 5/8 5/13 5/20 6/1 7/12 8/18 23/14 27/7 28/15 29/10 32/15 33/18 33/19 33/20 34/3 39/20 41/9 41/24 42/9 43/2 43/3 43/24 45/15 47/9 49/7 49/11 53/4 53/8 53/9 53/10 53/13 55/19 55/22 55/23 56/4 58/9 58/17 61/19 62/22 62/24 64/6 65/5 65/5 65/10 69/21 70/2 70/2 70/6 73/24 74/5 74/19 87/18 87/19 87/19 88/5 98/7 104/17 105/20 106/6 107/22 108/6 108/12 110/8 110/10 118/4 123/21 125/16 141/2 148/6 161/3 163/20 164/23 165/6
Williams [2]  60/6 126/4
willing [2]  47/13 47/13
willingness [2]  23/9 75/18
winter [1]  49/22
wish [3]  6/24 26/19 117/19
withdraw [6]  109/11 110/9 110/25 111/3 111/7 127/14
withheld [2]  110/4 163/17
withholding [2]  59/4 162/9
within [9]  10/2 12/23 24/7 24/8 34/22 47/8 64/24 84/8 159/18
without [17]  12/8 12/10 17/8 41/6 41/6 43/25 46/19 47/2 47/12 69/23 77/2 81/18 81/23 88/22 90/5 90/16 166/11
witness [15]  36/5 38/7 38/23 39/3 44/10 70/4 70/7 112/7 112/7 114/4 114/5 114/6 114/17 114/18 125/8
witnesses [13]  13/3 15/11 15/12 22/15 23/13 44/7 66/10 79/15 93/12 112/11 113/6 115/1 116/21
woman [1]  68/7
won't [7]  34/21 38/21 51/8 51/12 51/14 56/7 87/18
wonder [1]  159/24
Wonderful [1]  6/7
wondering [1]  13/9
word [1]  151/12
words [2]  85/16 124/20

wordsmith [1]  36/15
work [43]  3/23 7/24 9/2 9/9 19/9 19/15 19/16 20/1 24/14 39/2 39/18 44/11 45/16 53/13 54/21 75/19 75/20 98/16 101/22 112/6 113/4 113/4 114/13 114/25 115/12 115/17 118/5 123/9 123/14 123/18 141/21 147/4 149/23 151/19 156/6 161/9 161/18 162/9 163/3 163/17 163/21 164/2 164/6
worked [6]  10/5 16/22 20/11 67/2 70/3 75/19
worker [6]  84/1 114/15 126/10 127/5 127/7 161/15
workers [11]  12/24 33/9 70/23 71/2 71/4 114/14 115/21 116/15 116/18 127/5 127/7
workers' [1]  70/22
working [10]  3/24 8/25 17/11 23/7 23/17 24/10 53/19 74/1 79/15 165/4
works [6]  17/14 19/18 23/11 33/1 36/14 70/3
worth [1]  160/12
would [153]  3/6 3/7 4/15 7/15 8/12 9/17 10/17 10/18 11/14 11/16 11/18 15/23 15/25 16/7 16/9 16/9 17/20 18/8 18/20 19/6 19/7 22/13 22/15 23/20 25/11 26/6 26/11 26/23 26/25 28/9 28/10 28/13 29/12 29/17 29/21 32/19 32/19 32/20 33/24 34/5 35/23 42/13 43/7 43/9 44/13 46/4 46/25 47/1 48/24 52/5 52/7 52/23 54/15 54/25 55/2 55/9 55/24 64/4 64/23 65/22 67/3 68/8 69/13 70/8 70/13 70/19 70/23 72/1 72/6 72/11 73/21 75/11 76/4 76/4 76/24 78/13 80/11 80/18 81/3 81/20 84/17 86/4 88/12 89/8 89/16 89/17 89/18 90/4 91/6 91/7 94/21 96/24 97/15 99/3 99/13 99/14 101/18 102/15 103/21 104/24 105/19 107/9 107/13 107/14 107/21 109/2 110/6 110/16 110/16 110/17 110/20 110/21 111/7 114/11 116/25 121/19 121/20 121/22 121/25 123/1 123/3 123/7 124/13 124/19 126/15 127/22 129/15 133/4 133/21 133/23 134/19 137/19 138/17 142/3 142/23 144/2 144/16 145/23 146/25 147/13 147/13

147/14 149/22 152/14 153/3 153/3 153/47 153/18 158/9 158/18 159/10 159/11 160/15
wouldn't [14]  12/2 17/18 18/16 34/10 37/21 38/7 64/3 65/21 67/11 71/10 110/21 114/12 159/8 159/15
wrap [2]  111/22 158/14
wrapped [1]  8/2
wrinkle [2]  155/9 155/9
writing [3]  94/20 94/22 151/19
written [4]  83/20 120/11 121/11 129/13
wrote [1]  126/18

**Y**

yeah [40]  3/16 12/3 12/9 17/10 20/23 23/5 26/16 31/7 32/7 42/19 48/5 48/19 49/25 52/8 52/8 54/22 63/25 76/19 83/3 83/5 84/9 85/15 89/3 91/20 97/22 101/4 103/2 109/3 118/18 127/24 136/10 140/15 144/22 145/2 146/17 152/7 153/5 154/24 161/5 163/10
year [3]  43/19 49/2 56/11
years [4]  16/23 17/25 20/12 64/25
yes [87]  4/1 5/6 5/25 6/4 6/22 16/8 16/13 18/14 18/14 19/2 23/19 28/6 28/25 30/11 30/17 36/1 39/15 40/12 42/3 42/5 44/25 47/12 48/12 50/3 53/7 53/14 53/17 56/24 58/16 58/19 62/6 63/6 64/9 66/20 67/6 70/15 70/16 72/15 73/9 81/14 81/15 82/12 88/16 90/21 91/9 91/9 91/12 92/5 93/4 94/21 95/23 96/13 98/6 98/14 99/2 100/20 102/1 103/7 103/16 105/16 105/23 107/1 111/6 113/2 114/20 118/6 118/7 118/8 118/15 124/8 126/20 132/13 133/14 134/25 135/6 135/17 143/8 144/14 147/2 147/23 148/3 150/20 150/23 151/17 158/3 162/23 163/7
yet [12]  16/21 26/2 27/9 60/16 61/20 96/4 99/22 100/2 103/18 135/17 138/4 153/12
yield [1]  105/12
you [357]
you'd [4]  23/18 104/12 131/1 158/10
you'll [2]  16/14 90/18
you're [44]  6/16 6/22 8/5 8/6 10/14 15/14 24/22 25/9 27/6 27/10

28/3 29/9 38/4 45/24 62/5 63/24 64/7 76/12 81/6 82/15 87/25 89/6 89/6 89/7 90/14 91/1 95/7 100/25 101/4 102/23 111/13 111/17 118/16 123/19 124/4 136/3 136/10 139/2 142/17 151/2 159/21 162/22 164/21 165/9
you've [8]  48/6 48/7 57/2 59/4 121/24 133/12 138/8 148/7
young [3]  68/7 89/9 89/18
your [232]
yourself [3]  15/18 89/7 95/8

**Z**

Z.C [15]  29/21 30/6 30/7 30/9 33/16 68/4 120/16 121/13 128/3 128/6 128/8 128/11 128/12 128/17 130/15
Z.C.'s [3]  128/9 130/19 140/17