Steven Rizzo, OSB # 840853
Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut, PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

ATTORNEYS FOR PLAINTIFF LEVI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>                    Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>                    Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>RESPONSE TO DEFENDANTS' OBJECTIONS |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>          Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>          Third Party Defendant. | |

**INTRODUCTION**

The Court should affirm Judge Kasubhai's November 14, 2023 Order. (ECF 92).

**STANDARDS**

"A non-dispositive order entered by a magistrate must be deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241

1 - RESPONSE TO DEFENDANTS' OBJECTIONS

(9th Cir. 1991) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)). Factual determinations and discretionary decisions are reviewed under the "clearly erroneous" standard. *Lin v. Kia Motors Am., Inc.*, 2012 WL 12887102, at *2 (C.D. Cal. Aug. 27, 2012). This "significantly deferential" standard requires a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 623 (1993). "A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statu[t]es, case law, or rules of procedure." *Lin*, 2012 WL 12887102, at *2. The reviewing court "may not simply substitute its own judgment for that of the deciding court." *Id.*

## RELEVANT BACKGROUND

### *Pre-Litigation Events*

J.C., a minor female, was a party to Lane County Juvenile Court ("LCJC") dependency proceeding initiated by DHS in July 2016. DHS placed J.C. in the DHS-certified foster home operated by Ms. Nicole Duncan and Mr. Joe Raygosa ("Duncan-Raygosa") from July 2016-July 2017. Having severely sexually abused J.C., Raygosa was convicted of sex crimes against J.C. and went to prison in August 2018.[1] DHS maintained legal custody and guardianship of J.C. until October 2019. In April 2020, counsel for J.C. requested child welfare records from DHS regarding DHS's certification of Duncan-Raygosa and J.C.'s abuse in care. DHS's Public Records unit stonewalled the request, and contended that J.C. first had to pay DHS $4930 to obtain her records. (Decl. of Steven Rizzo, ("Decl.")).

In January 2021, the Lane County Circuit Court, Probate Department, appointed Oregon attorney, Mr. Ethan Levi, as Conservator for J.C. In May 2021, Conservator subpoenaed DHS, seeking the Duncan-Raygosa provider file. Oregon Department of Justice ("DOJ") Child Advocacy Section Assistant Attorney General ("AAG-ChAS"), Ms. Michelle Watkins, appeared in response to the subpoena and produced responsive documents. (Blaesing Decl., Ex. 1-3). In May 2021, Conservator subpoenaed Kids FIRST, a child abuse assessment center, seeking

---

[1] *See State v. Raygosa*, Lane County Circuit Court Case No. 18CR10987.

2 - RESPONSE TO DEFENDANTS' OBJECTIONS



RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

documents pertaining to J.C.'s trauma care and medical treatment. Conservator and Kids FIRST stipulated to a protective order to preserve J.C.'s privilege and confidentiality. (*Id.*, Ex. 6).

In February 2022, Judge Beckerman held a pre-litigation settlement conference with Conservator, DHS, and the Oregon Department of Administrative Services ("DAS"). No settlement was reached. DOJ Trial Division Assistant Attorney General ("AAG-TD") Ms. Jill Schneider, attended by phone. (Decl.).

In June 2022, Conservator subpoenaed LCJC, seeking J.C.'s juvenile court records, including the social file and hearing transcripts ("FTRs"). (Blaesing Decl., Ex. 5). In response, DOJ AAG-TD, Ms. Elleanor Chin, appeared on behalf of LCJC. Ms. Chin, who defends DHS in foster care abuse litigation along with Ms. Schneider, moved to quash the subpoena on behalf of the Lane County Trial Court Administrator ("TCA").[2] (Decl.). She argued that Conservator was not permitted to inspect and copy J.C.'s juvenile court records because he did not represent J.C. in the dependency proceeding. Judge Tennyson rejected this argument and denied the motion to quash in October 2022. DOJ-TD produced J.C.'s juvenile court records to Conservator. (Blaesing Decl., Ex. 5, 7-8).

In November 2022, Conservator issued a second subpoena to DHS, seeking J.C.'s family file. In response, DOJ-TD AAG, Ms. Schneider, reappeared on behalf of DHS and filed a motion to quash, claiming that the filing of this action deprived the probate court of its jurisdiction. Judge Tennyson denied that motion in March 2023. (*Id.,* Ex. 4, 10). DOJ-TD's objections and ensuing motions practice was unnecessary and expensive. Also, Conservator grew concerned that DOJ-TD had obtained possession of J.C.'s juvenile court records, which were otherwise confidential and privileged to J.C. Conservator moved for a protective order to restrict DOJ-TD's access to J.C.'s records. Ultimately, the parties negotiated a stipulated protective order – which significantly

---

[2] Defendants' note 1 represents – as though it were fact – that the Lane County TCA "is part of the Oregon Judicial Department" (OJD). (ECF 94, Defs' Obj. at 4). But even if that assertion was properly supported, there is still no explanation why DOJ AAG-TD (which defends DHS) appeared in lieu of counsel for OJD.

3 - RESPONSE TO DEFENDANTS' OBJECTIONS



constrains DOJ-TD's ability to access these records for any purpose. (*Id*., Ex. 11).

### Summary of the pleadings in this action

Plaintiff, Mr. Levi, filed this action on behalf of J.C. in November 2022, alleging in pertinent part that DHS certified Duncan-Raygosa in July 2016 to operate the foster home with knowledge that Duncan-Raygosa were unfit to safely parent traumatized children. Near simultaneously with the certification, DHS removed J.C. and Z.C. (her younger brother) from their family and placed the siblings into the Duncan-Raygosa foster home, which DHS knew and/or should have known was abusive and neglectful. Raygosa isolated J.C. from her family supports and sexually abused her. J.C. disclosed the sexual abuse in October 2017. In response, Duncan-Raygosa fled to Oklahoma. Following his arrest and extradition, Raygosa was tried and convicted in Oregon on four counts of first degree sexual abuse and two counts of first degree sexual penetration. Plaintiff alleges § 1983 claims against several DHS officials who were involved in the certification and monitoring of child safety in the home, and a negligence claim against DHS. (Compl., ECF 1 at 3). In their Answer, the defendants collectively deny any liability; DHS alleges a third-party claim for battery against Raygosa, claiming that his conduct is the "sole cause" of J.C.'s injury and damage. (ECF 19).

### Defendants' First Request for Production ("RFP")

There are six defense lawyers representing the defendants.[3] The defendants served the RFP to Plaintiff in July 2023. (Blaesing Decl., Ex 12). In pertinent part, this discovery request sought – free of charge – *all documents* that were produced to Conservator in the probate proceeding, including documents produced by Kids FIRST, LCJC (or TCA), and DHS. Plaintiff objected on grounds of relevancy, child privacy, privilege/work product.[4] (*Id*., Ex 13). The parties conferred

---

[3] DOJ-TD AAGs, Ms. Schneider and Mr. Nicholas Mancuso. In June 2023, DAS and DOJ retained Markowitz Herbold attorneys, Ms. Blaesing, Mr. Wilson, and Ms. Rhee, as Special Assistant Attorney Generals ("SAAGs"). And in turn, they enlisted Markowitz attorney, Ms. Hoffman. (*See* Professional Services Contract, ECF 80 at 205)

[4] (Joint Status Report, ECF 73 at 19-24) (citing *In re Grand Jury Subpoenas,* 357 F.3d 900, 907 (9th Cir. 2018)("A document should be considered prepared in anticipation of litigation if in light of the nature of the document and the factual situation in the particular case, the document can be

4 - RESPONSE TO DEFENDANTS' OBJECTIONS



RIZZO | BOSWORTH | ERAUT pc

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

in August 2023. The defendants would not subpoena any of the documents or seek modification of the protective orders issued by the probate court. The defendants' motion to compel asserted that the documents at issue "are neither privileged nor are they work product" and that the probate court's protective orders "do not prevent plaintiff from producing these documents as part of discovery in this case." (ECF 73 at 42). In sum, the defendants were simply assuming that J.C. somehow waived any privilege by filing the Complaint.

### *September 8, 2023 discovery hearing*

Judge Kasubhai held a five hour hearing on September 8 to address discovery issues. Regarding the defendants' motion to compel, Plaintiff related how DHS-DAS-DOJ act in prelitigation settings to stonewall a foster child abuse victim's request to obtain child welfare records. For example, in disregard of releases to obtain child welfare records, DHS and DAS weaponize Oregon Public Records Law provisions to create delay and demand advance payment of exorbitant sums to "gather" hardcopy documents. (Decl., Ex. 1. at 2, lines 19-25). To level the playing field, the conservatorship allowed Conservator to issue subpoenas and seek protective orders where necessary to protect confidentiality, child privacy and privilege. (*Id*. at 3, lines 1-17). Plaintiff also pointed that nothing prevented the defendants from issuing their own subpoenas or from seeking a modification of the protective orders. (*Id*. at 4, 7-17; 7, lines 20-25). Plaintiff related that DOJ-TD's AAGs objections and unsuccessful motions to quash created significant unnecessary expense. (*Id*. at 5, lines 23-25; at 6, lines 1-12; at 8, lines 1-16; at 9, lines 1-7). Defense counsel quipped: "sounds like a very frustrating situation for Plaintiff's counsel." (*Id*., at 9, lines 13-15). Indeed.

The court observed initially as follows:

> THE COURT: The issue for me is not so much whether it's relevant and otherwise discoverable. It's the manner and method in which it's going to be produced. Because to the extent that your clients -- client -- one of them – not necessarily individuals – played a role in making it more difficult -- which might have been their right, and, yet, there were costs incurred -- to the extent that I have authority

fairly said to have been prepared or obtained because of the prospect of litigation.").

5 - RESPONSE TO DEFENDANTS' OBJECTIONS



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

to consider and explore costs sharing, I'm inclined to do so. I don't have a -- I don't have a complete answer to that question. And so *I'd ask that the parties look into the matter.* Because I would find that there are some *extraordinary circumstances* here where I would be inclined to find -- *if I have the authority* to order your client to cover some portion of the costs for having gone through the efforts to get these documents -- to share some of that. And then we go from there. This isn't a question about whether they -- they aren't going to be produced on substantive grounds. It's a question of how we make sure that the playing field is somewhat level as it relates to your clients' involvement in the obtaining of these documents by the Plaintiffs in this case.

(*Id*. at 10, lines 7-25; 11, line 1) (emphasis added).

Upon Plaintiff's mention that certain documents remain privileged to J.C., the Court added

as follows:

THE COURT: "So not all the documents are producible *because there are some that are privileged* . . . and I'm not going to order production of that which might be privileged. But I have to think about – you may have to delve a little bit deeper into that, given that it's also – the potential – the information is relevant and the basis for the complaint."

(*Id*. at 11, lines 6-25; at 12, lines 1-7) (emphasis added).

In response to defense counsel's indication that any potential cost sharing could be limited

to costs incurred by the Conservator in connection with obtaining documents from only DHS, the

court stated as follows:

THE COURT: I'm not prepared to limit anything at this point, because I'm still trying to wrap my head around who all the players were in that [probate] process, and who did what, when, and where. So I'm open to that argument, but I can't say, now . . . that it would be limited. But I'm open to considering it . . . under the rules, that *cost sharing may nevertheless be appropriate* under *extraordinary circumstances.*"

(*Id*. at 13, lines 5-24) (emphasis added).[5]

### *The draft Orders*

The court directed Plaintiff's counsel to prepare the order. Plaintiff provided the defendants

---

[5] Yet, in the defendants' telling, "the magistrate judge stated that the requested documents *were discoverable*;" and "the magistrate judge directed the parties that if [the defendants] wanted to obtain the documents through their [RFP], they *must* share the costs [Conservator] incurred in the state court probate matter." (Objs., ECF 94 at 5) (emphasis added). As shown above, this is an exaggeration, at best.

6 - RESPONSE TO DEFENDANTS' OBJECTIONS

with a draft thereof, which provided in pertinent part as follows:

14. As discussed on the record, acting as the Conservator in the underlying state court probate proceeding, Mr. Levi issued subpoenas to Kids First ("KF"), Lane County Juvenile Court ("LCJC") and DHS . . . DOJ Trial Division ("DOJ-TD") attorneys objected to the Conservator's subpoenas issued to LCJC and DHS. The probate court overruled the objections and the documents were produced, subject to separate protective orders. The DOJ-TD's objections required the Conservator to expend significant sums to obtain the documents.

15. As further discussed on the record, defendants have not requested the probate court to modify the protective orders that pertain to the KF and LCJC documents. Defendants have the DHS documents that were produced in the probate proceeding. Defendants stated that they do not have the KF and LCJC documents. Defendants have not issued subpoenas to KF and LCJC in this action.

16. In connection with defendants' [RFP], the parties shall confer regarding: (i) a cost sharing arrangement whereby defendants compensate the Conservator for the efforts spent in obtaining the documents; and (ii) whether the filing of this action constitutes a waiver of J.C.'s juvenile law privilege. In the event the parties cannot reach agreement, they shall return to the Court to seek guidance.

(*See* ECF 82 at 7-8). This language was consistent with the discussion held on the record.

However, the defendants' Response to Plaintiff's Motion to Enter Order re the September 8, 2023 hearing (ECF 89), characterized Plaintiff's draft order as follows:

- Plaintiff's proposed order improperly seeks to obtain fees from [DHS] for documents plaintiff obtained in a separate matter in a separate court stemming from a dispute with a different party;

- There is no factual or legal basis for the Court to order fee shifting in this litigation;

- Plaintiff will not incur any fees producing documents to [defendants] because [they] have withdrawn the [RFP].

(*Id.*).

Armed with these characterizations, the defendants submitted their own draft order, which requested a *post hoc* finding of mootness:

18. Following the hearing held on September 8, 2023, State Defendants withdrew their First Request for Production, Request No. 1, so the issues

7 - RESPONSE TO DEFENDANTS' OBJECTIONS

discussed at the hearing regarding Plaintiff's objections to this request are moot.

(Blaesing Decl., ECF 90-1).

### *Entry of the court's Order (ECF 92)*

Paragraph 15 of the Order (ECF 92) reflects the language proposed by the defendants in ¶ 18 of their draft order. Paragraph 18 of the Order reflects Plaintiff's proposed ¶ 16.

### *The defendants' November 13, 2023 Objections*

Having requested the court to insert their strategic withdrawal into the Order, the defendants now challenge it, asserting that the Order is vague; contradictory; and "impossible" to obey. Meanwhile, the defendants argue that Paragraphs 15 and 18 of the Order "must be read together," which allows the defendants to claim that Paragraph 18 "contradicts paragraph 15" and that it is otherwise "impossible" to confer in furtherance of consensus. (ECF 94 at 7).[6] This is self-serving, and the defendants have avoided conferring with Plaintiff on any aspect of the costs issue in advance of filing the Objections. (Decl., Ex. 2).

### ARGUMENT

**First,** in recognition of the defendants' withdrawal of the RFP subsequent to the September 8 hearing, Paragraph 15 of the Order reflects that the "issues discussed at the hearing regarding Plaintiff's objection to [the RFP] are moot." Paragraph 18 of the Order directs the parties to confer on the following issues: "a cost-sharing arrangement" and whether the filing of this action waived J.C.'s privilege. Plainly, Judge Kasubhai did not order cost sharing; rather, in listening to both sides, the court was contemplating whether *extraordinary circumstances* justified a cost sharing. Accordingly, the court directed the parties to confer on that issue.

The defendants' RFP requested Plaintiff to produce DHS documents, LCJC records, and Kids FIRST documents. However, while the defendants' withdrawal of the RFP (currently) moots the requirement to discuss cost sharing in relation to DHS documents and the LCJC records, the

---

[6] Prior to filing the Objections, the defendant avoided asking Judge Kasubhai to clarify the Order.

8 - RESPONSE TO DEFENDANTS' OBJECTIONS



defendants have now undertaken to subpoena Kids FIRST. Their subpoena seeks the same documents that Kids FIRST produced to Conservator, which are subject to the probate court's protective order. Plaintiff has objected to the subpoena. Kids FIRST has also objected to the subpoena. (Decl., Ex. 3). The parties intend to confer regarding the objections in the near future. Thus, it is premature for the defendants to suggest that it is "impossible" to confer on any cost sharing proposal.

*Second,* the defendants' "contrary to law" assertion that "the magistrate judge lacked authority to award costs sharing" is illusory. Also, the assertion itself is divorced from the context of the parties' discussion of a potential cost sharing on the record. As demonstrated above, the Order directs the parties to confer on that issue and to return to the court "to seek guidance," if necessary. The Order does not "award" any costs. The defendants' quest to "vacate" seeks to preserve their unilateral control of information and its deployment to smother the rightful claims of abused foster care children.

*Third*, the defendants' tutorial as to select Federal Rules (37 and 45) does not render the court's consideration of cost sharing under the circumstances "contrary to law." DOJ-TD's appearance on behalf of LCJC was calibrated to impede Conservator's efforts to investigate J.C.'s potential claims against DHS, to make those efforts unnecessarily expensive, and ultimately, to acquire possession of J.C.'s privileged juvenile court records. That history, coupled with the defendants' intention to then use the RFP as a way to avoid collateral estoppel and unjustly profit from Conservator's efforts to obtain documents – for free – could constitute *extraordinary circumstances* that the court alluded to on the record. Little wonder then that the SAAG-AAG defense team hurriedly withdrew the RFP following the September 8 hearing.

Relatedly, the defendants' rendering of Rule 37 and 45 is under-inclusive. For example, the defendants somehow manage to overlook Rule 26(c)(1), which allows the court to protect parties from undue burden or expense – such as what DOJ-TD put the Conservator through in the probate proceeding. *See e.g., Rusoff v. Happy Grp., Inc.,* 2023 U.S. Dist. LEXIS 1899 ** 24-25 |

9 - RESPONSE TO DEFENDANTS' OBJECTIONS

2023 WL 114224 (N.D. Ca. 2023) ("[A] court may protect the responding party from 'undue burden or expense' by shifting some or all of the cost of production to the requesting party."). Further, the defendants omit any mention of the court's inherent authority to award costs in the interests of justice. *But cf., Signorlie c. Quaker Oats Co.,* 499 F.2d 142, 145 (7th Cir. 1974) (citing *Sprauge v. Ticonic National Bank,* 307 U.S. 161, 166-67, 83 L. Ed. 1184, 59 S. Ct. 777 (1939)) ("Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation.").[7]

### CONCLUSION

Judge Kasubhai did not make a mistake or rule contrary to law. The defendants' strained quest to "vacate" the Order is merely attempt to erase the fact that a federal court considered equitable cost sharing as a means to redress the expensive and unnecessary tactics engaged in by DOJ-TD in anticipation of foster care abuse litigation against DHS. The Court should therefore affirm the Order.

Dated: November 28, 2023.

RIZZO BOSWORTH ERAUT PC


By: */s/ Steven Rizzo*
Steven Rizzo OSB # 840853 (he/him/his)
Mary D. Skjelset OSB # 075840 (she/her/hers)
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

ATTORNEYS FOR PLAINTIFF LEVI

---

[7] The defendants' omission of inherent authority as an equitable basis to award costs is peculiar because the defendants relied on the court's inherent authority in connection with its unsuccessful motion for reconsideration of the court's order allowing Plaintiff to inspect J.C.'s child welfare files in OR-Kids. (ECF 60).

10 - RESPONSE TO DEFENDANTS' OBJECTIONS

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>   Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>   Defendants.<br><br>---<br><br>OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>   Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>   Third Party Defendant. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |

   I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon.  I am over the age of eighteen years and not a party to the subject cause.  My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

   On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof: **Response to Defendants' Objections**

<u>**VIA ECF**</u>

| | |
|---|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: jill.schneider@doj.state.or.us**<br>**Email: nicholas.mancuso@doj.state.or.us**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* | Lauren Blaesing<br>Harry B. Wilson<br>Alexandra Rhee<br>Markowitz Herbold PC<br>1455 SW Broadway<br>Ste. 1990<br>Portland, OR. 97201<br>Ph: 503-295-3085<br>Email: laurenblaesing@markowitzherbold.com<br>Email: harrywilson@markowitzherbold.com<br>Email: alexrhee@markowitzherbold.com<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

   Dated this 28th  day of November, 2023.

       *s/ Cheridan Carr*
      Cheridan Carr
      Paralegal

1- Certificate of Service