Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| ETHAN LEVI,<br><br>      Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN,<br><br>      Defendants.<br><br>OREGON DEPARTMENT OF HUMAN SERVICES,<br>      Third-Party Plaintiff, | Case No.: 6:22-CV-1813-MK<br><br>**PLAINTIFF'S DISCOVERY MOTION AND RESPONSE** |

Page 1 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

v.

JOE  ALBERT RAYGOSA,

   Third-Party Defendant

_____

## INTRODUCTION

  Defendants in this case are withholding as privileged  hundreds of communications that do not include attorneys or that merely copy attorneys. Plaintiff contests the privileged status of these documents, where (1) some of Defendants' privilege justifications are facially inadequate or suggest an overly-broad interpretation of the doctrine; (2) Defendants' own production shows that they inappropriately withhold and redact non-privileged material; and (3) Defendants are now attempting to claw back documents non-privileged documents that contain key liability evidence in this case.

  On March 4, 2024, the Court ordered briefing from both parties on outstanding discovery matters. Plaintiff brings three requests. First, Plaintiff seeks a determination that Defendants cannot "claw-back" the highly-relevant documents previously produced, because (1) the communications are not covered by attorney-client privilege; and (2) Plaintiff has a substantial need for the documents and cannot obtain them in any other way. Second, Plaintiff seeks *in camera* review to determine whether certain documents withheld by Defendants are privileged, based on factual evidence that Defendants are applying an overly-broad interpretation of the privilege doctrine to withhold, among other things, communications among non-attorneys on the grounds that they may peripherally relate to attorney direction or advice. Third, Plaintiff asks this Court to deny Defendants' Motion to Compel. This Motion and Response is based on FRCP 26(b)(5)(A); FRCP 26(b)(3); Declaration of Counsel and Exhibits; and the following points and authorities.

Page 2 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel have conferred in good faith but have been unable to reach agreement.

## BACKGROUND

Plaintiff J.C. filed a Complaint on November 18, 2022, alleging Constitutional and negligence claims against DHS and named defendants, based on abuse that Plaintiff suffered in foster care. (ECF 1). Plaintiff briefly provides relevant background as to each of the three discovery matters addressed in this Motion and Response.

*Background Relating to Defendants' Improper Assertions of Privilege.*

On January 5, 2024, Plaintiff sent Defendants a letter raising concerns about Defendants' assertions of privilege over nearly 1000 documents. (Pl.'s January 5, 2024 Letter, attached as Ex. 1 to Decl. of Mary Skjelset.) First, Plaintiff identified a series of withheld communications that should not have been designated as privileged because they included third parties, including J.C.'s own juvenile dependency attorney and medical providers. (*Id*. at Appendix A.) Second, Plaintiff identified a series of communications over which privilege had previously been waived, through voluntary (and often repeated) production or other disclosure. (*Id*. at Appendix B.) Finally, Plaintiff identified a third category of communications between non-attorney DHS employees that appeared to have been withheld pursuant to an overly-broad interpretation of the privilege doctrine. (*Id*. at Appendix C.) On February 2, 2024, Defendants agreed to produce all the communications identified in Appendix A and some of the communications identified in Appendix B. (Def.'s February 2, 2024 Letter, attached as Ex. 2 to Decl. of Mary Skjelset). Defendants refused, however, to produce unredacted versions of five of the communications identified in Appendix B, and nearly all the communications in Appendix C. Plaintiff has provided a list of documents from Appendices

Page 3 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

B and C that Defendants continue to redact or withhold, along with Defendants' privilege log entries pertaining to those documents, at "Table of Contested Documents," Ex. 3 to Decl. of Mary Skjelset.

Over the course of this litigation Plaintiff has become aware of other contexts in which Defendants have fully or partially withheld documents without proper justification. Notably, Defendants have produced numerous communications containing redactions of non-privileged material. (Ex. 4 to Skjelset Decl.) Defendants also appear to have withheld in this litigation (and omitted from the privilege log) relevant, responsive communications that were, in part at least, printed and placed in the certification file and produced in the probate proceeding. (Exhibit 5 to Skjelset Decl.)

*Background Relating to the O'Brien-Hammond Drafts and Related Emails.*

On February 2, 2024, Defendants informed Plaintiff of their intent to "claw back" five documents which, they claim, are privileged. (Ex. 2 to Skjelset Decl.) DHS_LEVI_064799 and DHS_LEVI_064800 are an email correspondence between named defendant Kat O'Brien and DHS worker Stephen A. Hammond, along with an attachment to that email. (Exhibit 11 to Skjelset Decl.) Defendant produced those documents to Plaintiff on September 27, 2023. (Skjelset Decl. at 9.) DHS_LEVI__068748 and DHS_LEVI__068749 are duplicates, which Defendants produced to Plaintiff on October 31, 2023.[1] (*Id.*) (Plaintiff refers to these documents collectively as the "O'Brien-Hammond drafts and related emails.) Due to Defendants' new assertions of privilege over these communications and their attachments, Plaintiff describes their content and relevancy in the attached Declaration and exhibits, which are filed under seal. (*See* Exhibits 7 & 11 to Skjelset

---

[1] The fifth document is no longer contested. (Def.'s February 23, 2024 Letter, attached as Ex 6. to Decl. of May Skjelset) (withdrawing claw-back request as to DHS_LEVI_025969).

Page 4 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

Decl.)

*Background Relating to Defendants' Motion to Compel.*

Defendants seek to compel Plaintiff to produce a video, prepared by Plaintiff's counsel, of an inspection (which occurred pursuant to the Court's order) of certain electronic files in DHS's OR-Kids system. Plaintiff first requested inspection in his March 3, 2023, First Request for Production. (ECF 68 at 3) (seeking "a mutually convenient time/date to inspect . . . (i) the original certification file; (ii) the preadoption file and/or adoption file; and (iii) the OR-Kids electronic file."). Defendants objected to Plaintiff's request "in its entirety," asserting that it was "unduly burdensome, duplicative of the response to written requests, and unlikely to lead to discovery of relevant evidence other than that which will be produced through written discovery." (*Id.*)

On June 9, 2023, Plaintiff sought the Court's assistance in facilitating the inspection. Plaintiff explained that "a simple drop-down menu of [case and provider] notes" contains important metadata – such as the date of creation – which was omitted "[w]hen printed for discovery." (Hoffman Decl., ECF 113-2 at 4-5) (Plaintiff's June 9, 2023, letter to the Court). Defendants previously had refused to produce the menu, claiming it "different from how the information is ordinarily maintained in the course of ODHS ordinary business operations." (*Id.*)

At Oral Argument, Plaintiff's counsel reiterated her understanding that DHS's electronic file contains a drop-down menu showing metadata concerning the creation and timing of data entry, which was not identified in the discovery provided by Defendants. She also confirmed that she was not seeking review of DHS's entire database, but of the provider file for Duncan-Raygosa and the case file for J.C., only. (Ex 8 to Skjelset Decl.)

The Court permitted Plaintiff to inspect the OR-Kids metadata pertaining to the "provider file" for Duncan-Raygosa and the "case file" for J.C. (ECF 56.) Defendants (represented by

Markowitz Herbold PC SAAGs) filed a Motion for Reconsideration. (ECF 60). Defendants represented to the Court that "no 'drop-down menu' exists which provides this information"; that "OR-Kids does not contain a drop-down menu that reveals the metadata for case notes"; and that "allowing plaintiff's counsel direct access to OR-Kids will not provide them with the case notes metadata they seek." (*Id*. at 3, 8, 9.)[2] Defendants offer to "create a custom database report that provides this information" was unresponsive. (*Id*. at 3.)

The Court denied Defendants' Motion for Reconsideration and allowed the file review to proceed. (ECF 92). It ordered DHS to permit Plaintiff's counsel to inspect the files at issue with certain restrictions and limitations requested by Defendants: the inspection would occur on one day and last up to four hours, with defense counsel in attendance. Plaintiff could videotape the inspection and have an expert present. The Court ordered that a "knowledgeable ODHS employee" be made available to "operate the OR-Kids interface," "take direction from Plaintiff's counsel," and answer non-substantive questions "regarding the configuration of the OR-Kids interface and its operation." Any colloquy between Plaintiff's counsel and the ODHS employee-operator was non-sworn and could not be used in subsequent depositions. (*Id*. at 2-3). The Order did not permit an OR-Kids "database" inspection. Although Defendants requested extensive and wide-ranging limitations on the file inspection (chaperone, time limit, an order prohibiting use of the video at any subsequent deposition), Defendants did not ask for a copy of the video. Nothing in the Court's Order prevented Defendants from making their own audio/visual record of Plaintiff's inspection had they chosen to do so.[3]

---

[2] The inspection established that those repeated representations were false.
[3] Defendants filed Objections to the Order on November 13, 2023, which are pending before United States District Judge Ann Aiken. (ECF 94)

Page 6 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

While the file inspection did take place on October 30, 2023, it was not in accordance with the Court's requirements. Most significantly, DHS failed to provide a knowledgeable ODHS employee to operate the OR-Kids use interface and answer questions. (Skjelset Decl. at 13-14; *see also* Hoffman Decl., ECF 113-1 at 2-3) (Plaintiff's November 14, 2023, letter to Defendants). Defendants selected Operations Policy Analyst Mr. Payne, who is not a caseworker, supervisor, or member of DHS's so-called Discovery Unit, to operate the interface. Plaintiff's counsel had to expend considerable amounts of time attempting to guide him. (Skjelset Decl. at 13-14.) Payne denied that drop-down menus existed and claimed he was not aware of how to print multiple notes.[4] (*Id.*) Ultimately, despite the obstacles presented by Payne, Plaintiff's counsel was able to access screens, menus and drop-downs, as well as critical documentary evidence that Defendants had withheld prior to the inspection. Payne's misstatements and/or his lack of knowledge created unnecessary delay and compromised Plaintiff's ability to complete the inspection, which Defense Counsel ignored when she cut off the inspection precisely at four hours. (*Id.*)

It is within this context that Defendants demand production of Plaintiff's video of the "inspection of the OR-Kids database," claiming that it is now relevant evidence under Rule 26(b) despite the express restrictions on the use of the video in the Order. (Hoffman Decl., ECF 113-1 at 5). While Defendants' December 15, 2023 letter primarily attacks Plaintiff's reason for requesting the file inspection, Plaintiff's attempts along the way to inform the Court, and ultimately, Plaintiff's manner of performing the inspection, Defendants have nothing to say about their history of obfuscation, their repeated representations that the drop down menu was non-

---

[4] In his Declaration, Mr. Payne admitted that he is "unaware of which 'drop-downs' plaintiff's counsel may have been referring to in his [sic] statements to the court" . . . "I am not aware of a 'drop-down' menu that provides access to the information counsel appears to be describing." (ECF 63 at 6).

Page 7 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

existent, their selection of "unaware" Mr. Payne (a Policy Analyst IV) instead of a knowledgeable

OR-Kids end-user, or their failure to have produced "copies of the *entire* ODHS record," as they

had previously claimed. (ECF 113-5).

**ARGUMENT**

Plaintiff requests that this Court conduct an *in camera* review for privilege of all, or at least

a sampling, of the redacted and withheld emails contained in Appendices B and C. Plaintiff further

seeks a determination that Plaintiff is entitled to the O'Brien-Hammond drafts and related emails,

either because they are not privileged or because they are work product for which Plaintiff has

substantial need. Finally, Plaintiff seeks denial of Defendants' Motion to Compel.

> *This Court Should Conduct an In Camera Review of Withheld Documents from Appendices B and C to Determine Whether Attorney-Client Privilege Applies.*

"Because it impedes full and free discovery of the truth, the attorney-client privilege is

strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). To establish a need

for *in camera* review to determine whether privilege applies, the party challenging privilege "need

only show a factual basis sufficient to support a reasonable, good faith belief that *in camera*

inspection may reveal evidence that information in the materials is not privileged." *In re Grand

Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). The standard is a "minimal threshold"; a

*prima facie* showing that the privilege does not apply is not required. *Dolby Lab'ys Licensing

Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 864 (N.D. Cal. 2019). Once the challenging party makes

an initial showing, the court can exercise discretion to grant *in camera* review, considering the

amount of material the court has been asked to review, the relevance of the alleged privileged

material, and the likelihood that *in camera* review will reveal evidence that information in the

materials is not privileged. *In re Grand Jury Investigation*, 974 F.2d 1068 at 1074–75.

Page 8 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

Here, Defendants' privilege log fails to establish a *prima facie* showing of privilege, because Defendants' justifications for the withheld emails in Appendices B and C suggest an overly-broad application of the privilege doctrine that would protect communications among non-attorney employees whose primary purpose was not transmitting or discussing legal advice. *See In re Grand Jury investigation*, 974 F.2d at 1071 (party asserting privilege must make a *prima facie* showing that privilege protects the information the party intends to withhold). In addition, Plaintiff's good-faith belief that *in camera* inspection may reveal evidence of privilege is supported by evidence of Defendants' history of inappropriately redacting and/or withholding documents that are not privileged.

i.      Defendants' privilege log suggests that they are withholding non-privileged communications among non-lawyers.

The Ninth Circuit utilizes an eight-part test to determine whether information is protected under attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client [or attorney], (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived. *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Each element of the test must be proven by the party invoking the privilege. *Id*. at 608.

Attorney-client privilege attaches to communications between non-lawyers only in very limited circumstances: "Where (1) [nonlegal] employees discuss or transmit legal advice given by counsel, and (2) an employee discuss her intent to seek legal advice about a particular issue." *Datel Holdings Ltd. V. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *6 (N.D. Cal. Mar. 11 2011) (citing *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d. 1065, 1077 (N.D. Cal. 2002)). Crucially, the communication must actually "discuss or transmit legal advice" – "a vague

declaration stating only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Id.* (*quoting Hynix Semiconductor Inc. v. Rambus Inc.,* 2008 WL 350641, at *3 (N.D. Cal. Feb. 2 2008)).

Even where legal advice is involved, communications among employees that are made primarily for a business purpose, rather than for the purpose of discussing or transmitting legal advice, are not privileged. *In re Grand Jury*, 23 F.4th 1088, 1092-1095 (9th Cir. 2021) (adopting the "primary purpose" test in assessing dual-purpose documents). That is true even when an attorney initiated the communication or is included on it. *Datel*, 2011 WL 866993, at *6 ("a document prepared for a purpose other than or in addition to obtaining legal advice and intended to be seen by persons other than the attorney does not become subject to the privilege merely by being shown to the attorney"). In assessing whether the privilege applies, courts often require "sufficiently detailed declarations to demonstrate that the communications at issue were actually connected to the employees' intent to seek legal advice or upon attorneys' instructions/direction of employees' actions." *Castillo v. Well Cmty. Church*, No. 121CV01460ADABAM, 2023 WL 4134428, at *2 (E.D. Cal. June 22, 2023) (citing *Datel*, 2011 WL 866993, at *6).

The question of whether a document has a dual purpose is particularly relevant here, as there is considerable overlap between topics addressed by the AAG in course of providing legal advice and the core functions of DHS caseworkers. The AAG, for example, may advise DHS on whether the statutory bases for changing the permanency plan from reunification to adoption have been met. But regardless of advice provided by the AAG, DHS caseworkers also are responsible for ensuring that children are safely placed and cared for, and that the permanency plan for the child (whether reunification or adoption) is being carried out. Although an AAG may provide input into permanency planning issues, communications among DHS case workers regarding the

Page 10 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

permanency plan are not necessarily privileged, both because they may not involve the discussion or transmission of legal advice, and because the primary purpose of the communications may be to carry out DHS' business functions.

Here, Defendants have withheld numerous communications between non-attorneys because they purportedly "exchang[e] information" in furtherance of legal advice; "request information to facilitate" legal advice; and/or "relay" or "reflect" counsel's advice. (Ex. 3 to Skjelset Decl.) Appendix C also includes communications that were not directed to an attorney but merely copied one, in the context of apparently "providing," "requesting" or "exchanging" some type of "information." Other documents listed in the log lack even the basic information that Defendants are required to provide. For example, the privilege log entry for Document 765, withheld because it "reflect[s] legal advice," does not indicate the sender or recipient of the email. (*Id.*)

Defendant's privilege log suggests that Defendants are improperly withholding communications between and among non-lawyer DHS caseworkers when those communications do not discuss or transmit legal advice, but merely touch on or relate tangentially to subject matter addressed by the AAG. Such a broad interpretation would allow Defendants to impermissibly shield highly relevant emails written and received by the named defendants in this case. The following documents identified in Appendix C are examples of Defendants' overly-broad application of the privilege doctrine:

- Documents 641, 764, 765: defendants assert that these communications between non-lawyers are privileged because they "reflect[ ] legal advice." This justification is insufficient on its face. *See Datel Holdings Ltd. V. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *6 (N.D. Cal. Mar. 11 2011) ("a vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged").

Page 11 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

- Document 759 is an email from Stephen Hammond to Kat O'Brien. Defendants assert that the communication is privileged because it "provid[es] information in furtherance of rendition of AAG T. Gonzalez's legal advice re: J.C.'s permanency." This justification is unclear and does not establish privilege.

- Documents 76, 379, 491, 683, 687, all between non-lawyer DHS employees, have been withheld based on the assertion that they relate to legal advice and work product that concerns the placement of children, working with the biological parents, and permanency. It is unclear whether the primary purpose of these documents is to discuss or transmit legal advice, or whether these communications, either in whole or in part, were made for DHS's business purposes.

Defendants have failed to make a *prima facie* showing of privilege based on these justifications.

ii.     Defendants in this case have a history of inappropriately redacting and/or withholding documents that are not privileged.

Plaintiff's good-faith belief that Defendants are withholding non-privileged materials is supported by Defendants' history of improperly redacting and/or withholding documents. Plaintiff has identified three categories of documents that illustrate these practices. First, Defendants have produced documents with inconsistent redactions that show the overbreadth of their interpretation of the privilege doctrine. For example, Defendants produced an email exchange between defendant O'Brien and a non-attorney co-worker in which Defendants erroneously redacted as "privileged" O'Brien's statement admitting that JC had disclosed physical abuse to multiple people (the rest of the exchange, which does not include potential admissions, is not redacted). (Ex 4 to Skjelset Decl. at 10-11.) Inexplicably, Defendants have also redacted as "privileged" communications among non-lawyers in which DHS employees discuss availability for scheduling a meeting; joke about getting fired; and criticize DOJ's handling of the case. (*Id*. at 1-4; 5-6; 8-9.) Second, Defendants have failed to produce or account for responsive documents in their possession, including at least one communication memorializing JC's reports of abuse by her foster father. (Ex 5 to Skjelset Decl. at 1-2.) Third, Defendants routinely produce email chains in which parts of the correspondence are redacted or omitted, without any discernible basis. (Ex 9 to Skjelset Decl.)

Page 12 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

This pattern of repeated misapplication of the privilege doctrine suggests continued withholding of non-privileged materials, if not obfuscation of non-privileged facts.

    iii.       Discretionary factors weigh in favor of *in camera* inspection.

Defendant's inadequate privilege log, in conjunction with its history of improper redaction and incomplete production, establishes a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal that non-privileged documents are being withheld. The discretionary factors for review also weigh in Plaintiff's favor. Plaintiff seeks review of a relatively small number of documents (72), particularly compared to the vast record of the case as a whole. The documents are highly relevant, as many of them are communications between and among the named defendants pertaining to the placement and maintenance of J.C. in the Duncan-Raygosa home, a topic central to liability. This Court should therefore conduct an *in camera* review of the documents listed in Appendices B and C that Defendants continue to withhold and/or redact.[5]

*Plaintiff is Entitled to the O'Brien-Hammond Drafts and Related Emails.*

Filed under seal. (Exhibit 7 to Skjelset Decl.)

---

[5] The case of *J.M. v. Major*, No. 6:18-CV-00739-YY, 2022 WL 1223275, at \*1 (D. Or. Apr. 26, 2022) is distinguishable. There, the court declined to review contested documents *in camera*, in large part because the plaintiffs had not provided evidence extrinsic to the privilege log itself suggesting that the defendant's attorney was mis-applying the privilege doctrine. *Id*. at \*2 ("Plaintiffs provide no evidence that would support an inference that [counsel] operates with an erroneous understanding of privilege"). In the absence of such evidence, the trial court credited the defendant's assertions about its process and motives regarding the privilege log and the discovery process in that particular case. *Id*. (noting that Magistrate Judge You "interpreted [defendant's] adjustments [to the privilege log] as genuine revisions"). Unlike in *J.M.*, Plaintiff in this case has offered evidence – in the form of documents with inappropriate privilege redactions, documents that have been improperly withheld, and highly-relevant, non-privileged documents that Defendants are now attempting to claw back – showing that Defendants are misapplying the privilege doctrine in this case. Those documents, combined with the inadequacies and ambiguities contained in the privilege log itself, distinguish this case from *J.M.* and support *in camera* review.

*The File Review Video is Protected Work Product and not Subject to Production*

As an initial matter, Defendants' characterization that Plaintiff's "first basis to object to the discovery request – that no inspection occurred – is frivolous" is devoid of proper context. Plaintiff objected to Defendants' express demand to produce "[a] copy of the entire, unaltered video-recording of [Plaintiff's] inspection of the OR-Kids *database*," which is non-existent. The Court's October 30, 2023, Order required the defendants to make the three above-referenced *files* available for Plaintiff's inspection on the terms specified therein, or face sanctions.

Second, Defendants' reliance on *Cahill v. Nike, Inc*. is inapposite. There, the plaintiffs – represented by Markowitz Herbold PC attorneys – filed a motion to compel Nike "to provide declarations showing its *efforts to locate responsive documents* in response to the Court's October order . . . plaintiffs argue Nike should provide a declaration identifying the documents produced that are responsive to each of the Order's subparts. . . ." 2020 U.S. Dist. LEXIS 142717 ** 13-14 | 2020 WL 4584241 (D. Or 2020) (emphasis added). The court denied the motion to compel because the "discovery sought is collateral to the relevant issues (i.e., discovery on discovery)," and the plaintiffs failed to provide an "adequate factual basis to justify the discovery." *Id.*

Here, Defendants are moving to conduct "discovery on discovery" – not Plaintiff. Plaintiff is not seeking any Declaration from Defendants, and Plaintiff has not moved for sanctions regarding Defendants' selection of Payne as the "knowledgeable" ODHS employee to operate the OR-Kids interface during the inspection, or regarding how they could have reasonably believed that Payne was appropriately qualified when – by his own admission – he was unaware of the drop-down menu, or regarding why the entire ODHS record had not been produced, as Defendants had previously represented. Plaintiff's letter calling out Defendants for the strategic waste of time was not a motion to conduct "discovery on discovery"—it was a lawyer-to-lawyer communication

Page 14 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

to express sincere frustration regarding Defendants' conduct. Contrary to Defendants, Plaintiff is not "already relying on the video to litigate this case." (ECF 112 at 6.) Defendants' attempt to leverage Plaintiff's November 14 letter to support their motion is a distortion of *Cahill*.

Also, Plaintiff's file inspection has no relevance to any claim or defense in this case, nor is Plaintiff's file inspection video thereof likely to lead to the discovery of admissible evidence in this case. *See* Rule 26(b)(1). The Court's October 30 Order explicitly provides that colloquy between Plaintiff's counsel and Mr. Payne is not sworn testimony and the colloquy may not be discussed during depositions (of any witnesses) absent stipulation or further order of the court. If that were not the case, then Plaintiff could have introduced the video for purposes of impeaching Payne's Declaration filed in support of Defendants' Motion for Reconsideration. But the inspection has been rendered irrelevant for that purpose.

Finally, the Court's October 30 order does not order that Plaintiff waived work product by performing the file inspection on the terms specified therein. Plaintiff's file inspection video is work product, i.e., it constitutes  material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery – that Plaintiff had to compel no less. *See Hickman v. Taylor*, 329 U.S. 495, 509-12, 67 S. Ct. 385, 392-94, 91 L. Ed. 451 (1947).  Had they wanted to claim entitlement to Plaintiff's file inspection video (have their own videographer present, or create their own video), Defendants had multiple opportunities to do so, i.e., the July 5 discovery conference, the September 8 hearing, and along with the submission of their proposed form of order. Instead, Defendants gambled on Payne's useful lack of awareness, and their asymmetric "discovery on discovery" motion to compel fails to establish substantial need for the video "to prepare [their] case" and undue hardship. *See* Rule 26(b)(3)(B).

Page 15 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

**CONCLUSION**

For the reasons stated above, Plaintiff asks this Court to conduct an *in camera* review of the specified documents; to determine that the O'Brien-Hammond drafts and related emails are not privileged and/or to order their continued disclosure; and to deny Defendants' Motion to Compel the video of the file review.

DATED this 3rd day of April, 2024.

JOHNSON JOHNSON LUCAS & MIDDLETON PC

_____/s/ Caitlin V. Mitchell_____
Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882

Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

Attorneys for Plaintiff

Page 16 - **PLAINTIFF'S DISCOVERY MOTION AND RESPONSE**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 3, 2024, a true copy of Plaintiff's Discovery Motion and Response was served as indicated below:

| | |
|---|---|
| **Jill Schneider** | [    ] U.S. Mail |
| **Nicholas Mancuso** | [ x ] Electronic Filing |
| Oregon Department of Justice | [    ] Email |
| 100 SW Market Street | [     ] Fax |
| Portland, OR 97201 | |
| Ph: 971-673-1880 | |

Emails**:** jill.schneider@doj.state.or.us
        Nicholas.mancuso@doj.state.or.us
 Attorneys for State Defendants & Third-party Plaintiff

| | |
|---|---|
| | [    ] U.S. Mail |
| **Lauren Blaesing** | [ x ] Electronic Filing |
| **Harry Wilson** | [    ] Email |
| **Alexandra Rhee** | [     ] Fax |
| **Hannah Hoffman** | |
| Markowitz Herbold PC | |
| 1455 SW Broadway Ste.   1990 | |
| Portland, OR 97201 | |
| Ph: 503-295-3085 | |

Emails:
laurenblaesing@markowitzherbold.com
harrywilson@markowitzherbold.com
alexrhee@markowitzherbold.com
hannahhoffman@markowitzherbold.com
 Attorneys for  State Defendants & Third-party Plaintiff

                        JOHNSON JOHNSON LUCAS & MIDDLETON, PC

                        *Jaclyn Hays*

                        Jaclyn R. Hayes, Legal Assistant
                        541/484-2434   541/484-0882 fax
                        jhayes@justicelawyers.com

Page 1 – **CERTIFICATE OF SERVICE**