Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

Caitlin V. Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

|  |  |
|---|---|
| ETHAN LEVI,<br><br>                          Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN,<br><br>                          Defendants. | Case No.: 6:22-CV-1813-MK<br><br>**EXHIBITS 6 & 8 TO DECLARATION OF MARY SKJELSET** |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br>            Third-Party Plaintiff,<br>v.<br><br>JOE  ALBERT RAYGOSA,<br><br>            Third-Party Defendant |  |

Page 1 - **EXHIBITS 6 & 8 TO DECLARATION OF MARY SKJELSET**



**Harry B. Wilson | Lawyer**
HarryWilson@MarkowitzHerbold.com

February 23, 2024

<u>**Via Email Only**</u>

Mary D. Skjelset
Steven V. Rizzo
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR  97201
mskjelset@rizzopc.com
srizzo@rizzopc.com

> **Re:    Ethan Levi v. Kim Chapman, et al.**
> **US District Court for Oregon (Eugene) Case No. 6:22-cv-01813-MK**

Dear Mary:

This letter addresses the issues you raised in your February 9, 2024 letter to State Defendants' counsel.

## I.    Plaintiff's position on State Defendants' privilege assertions

We understand that plaintiff continues to dispute privilege assertions reflected on the privilege log.  Please identify the specific entries you continue to dispute and the basis for your dispute in light of our response.

We do not agree to *in camera* review.  Your letter fails to state the required threshold showing for such review.  If you intend to seek *in camera* review, identify your basis for seeking such review so that we may confer.

## II.    Return of privileged documents

We rescind our request for the return or destruction of DHS_LEVI_025969.

With respect to the remainder of the inadvertently produced documents, we understand you to be opposing our assertion of privilege.  Pursuant to the Amended Protective Order, "A party opposing the claim of privilege and/or protection must

Exhibit 6 to Decl. of Skjelset
Page 1 of 2

Mary D. Skjelset
February 23, 2024
Page 2

promptly present the information to the court under seal for a determination of the claim." (Dkt. 91.) Your letter did not indicate a timeline for submission to the Court, and we request that you do so as soon as practicable. If you do not do so, we will move to enforce the Amended Protective Order.

**III.    Depositions**

As previously stated, we do not stipulate to plaintiff taking more than 10 depositions. Absent an agreement to combine depositions with the *Conley* matter, we will oppose any deposition in excess of 10 unless you seek leave of the Court pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i). As these are plaintiff's requested depositions, we encourage you to coordinate with the plaintiff in *Conley*.

Very truly yours,

Harry B. Wilson
Special Assistant Attorney General

cc: All counsel

2100955

Exhibit 6 to Decl. of Skjelset
Page 2 of 2

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ETHAN LEVI,                              )
                                         )
            Plaintiff,                   )   No. 6:22-cv-01813-MK
                                         )
       v.                                )   July 5, 2023
                                         )
KIM CHAPMAN, et al.,                     )   Eugene, Oregon
                                         )
            Defendants.                  )
_____          )
                                         )
OREGON DEPARTMENT OF HUMAN               )
SERVICES,                                )
                                         )
            Third-Party Plaintiff,       )
                                         )
       v.                                )
                                         )
JOE ALBERT RAYGOSA,                      )
                                         )
            Third-Party Defendant.       )

**DIGITALLY-RECORDED TRANSCRIPT OF PROCEEDINGS**
(Discovery Hearing by teleconference)


BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


**COURT REPORTER:**
Kellie M. Humiston, RMR, CRR
(503) 326-8186
Kellie_Humiston@ord.uscourts.gov

Exhibit 8 to Decl. of Skjelset
Page 1 of 5

simple matter of who is going to pay for the defense of work that's done while you're an employee.

THE COURT: The DOJ defense contract as described on page 4 of plaintiff's June 14th letter is ordered to be produced.

Oregon-Kids metadata?

MS. SCHNEIDER: Yeah. This is -- this is --

MS. SKJELSET: Your Honor --

MS. SCHNEIDER: This is the --

THE COURT: Let's hear from Ms. Skjelset. Well, first, is there agreement or disagreement about it? Ms. Schneider?

MS. SKJELSET: Your Honor, I can --

MS. SCHNEIDER: (Indiscernible) this.

THE COURT: All right. Let me hear from Ms. Skjelset first. I'm not sure I -- I want to make sure we've received the information in sort of an ordered fashion. So Ms. Skjelset, what's the issue?

MS. SKJELSET: So, Your Honor, most of the information regarding child welfare activity is stored in what's called OR-Kids. It's a database that has different files. There is a provider file for the certified foster family; there are Child Protective Services files relating to those types of investigations; there is a case file relating to the child, for instance, JC, which may be designated under specific adults' names. Those files include notations that are placed in the database, such as case notes in the child's file. These case

Exhibit 8 to Decl. of Skjelset
Page 2 of 5

notes are meant to memorialize case man- -- case activities, such as home visits, the caseworker went to the home and reports what happened there; or CPS assessment activities, somebody interviewed a child and described what the child said; or provider notes, a certifier goes to the home and describes what happened in that home visit as well.

What is interesting about what is produced in discovery in these files is that it has a date of occurrence and the time. And the caseworker is able to put that in manually.  It doesn't automatically populate what -- when the note is being made.  So these notes can be made well into the future and can be retroactive as well to the past.

THE COURT:  And are you saying that you would be able to evaluate the metadata to determine if any notes have been changed, updated, revised after the fact, after the initial notes --

MS. SKJELSET:  So there's -- yes.  We have had that ordered previously for certain case notes and provider notes, but even prior to that step, we believe and -- that there is a drop-down, it's just simply a drop-down menu that has case notes, and when you click on it, it says when it was supposed to have occurred and when it was created.  And starting -- launching from that position would be incredibly helpful in understanding how this official narrative came to be, when, and why, essentially.

THE COURT:  And you're -- you're seeking this metadata

Exhibit 8 to Decl. of Skjelset
Page 3 of 5

only as it relates to the provider file for Duncan-Raygosa and the case file for the plaintiff?

MS. SKJELSET:  Yes, Your Honor, with regard to the provider notes and to the case notes for the -- for the -- for JC.

THE COURT:  And how is -- how would this file be presented to you in the absence of these, I guess the primary -- or the original application from which these drop-down menus would appear?

MS. SKJELSET:  So, Your Honor, they typically produce us the OR-Kids provider file in discovery; they just don't drop down that portion of the case notes or provider notes so that we can see when it occurred and when it did not.

It is also my belief, although I don't know if this is (indiscernible) founded, that the provider notes and case notes can be produced in a way that -- that shows when it was actually created.

THE COURT:  And does this also dovetail, then, with your -- the following request there with respect to the provider file inspection?

MS. SKJELSET:  Yes, Your Honor, it does.

THE COURT:  Okay.  So there -- both of these are related?

MS. SKJELSET:  Yes.

THE COURT:  Ms. Schneider?

Exhibit 8 to Decl. of Skjelset
Page 4 of 5

**C E R T I F I C A T E**

I certify, by signing below, that the foregoing is a true and correct transcript of the record, taken by stenographic means, of the FTR-recorded proceedings in the above-entitled cause.

Where (indiscernible) has been indicated, the audio file was unable to be heard due to simultaneous cross-talk, fast speaking, mumbling, or other room noises overriding what was being said.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

DATED this 15th day of July 2023.

/s/ Kellie M. Humiston

Kellie M. Humiston, RMR, CRR
Transcriber
Official Court Reporter
Certificates Expire:  9/2024

Exhibit 8 to Decl. of Skjelset
Page 5 of 5