Mr. Steven Rizzo, OSB # 840853
Ms. Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>             Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>             Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>RESPONSE TO DEFENDANTS' AND THIRD PARTY PLAINTIFF DHS' DISCOVERY MOTIONS: (i) COMPEL INTERROGATORY RESPONSES; (ii) COMPEL PRODUCTION OF DOCUMENTS; AND (iii) SUPPLEMENT PROTECTIVE ORDER RE KIDS FIRST<br><br><br>*Oral argument requested* |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>             Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>             Third Party Defendant. | |

1 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS

RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

TABLE OF CONTENTS

                                                                    Page

INTRODUCTION                                                           4

BACKGROUND                                                            4
  A. The underlying probate proceeding                       4
  B. Relevant events occurring in this action                 7
  C. Defendants' proposed "supplemental" order re Kids FIRST  9
  D. Recent events occurring in Lane County Juvenile Court   11

ARGUMENT                                                              11
  1. Response to Motion to Compel Responses to First Set of Interrogatories   11
    a. Interrogatory No. 1                          11
    b. Privilege                                   12
    c. Work product                                13
    d. Interrogatory No. 2                          14
    e. Interrogatory No. 3                          15
    f. Interrogatory No. 4                          16
    g. Interrogatories 5-8                          17
    h. Interrogatory No. 9
    i. Interrogatory No. 11
  2. Response to Motion to Enter "supplemental" Kids FIRST Protective Order   17
  3. Response to the Motion to Compel Documents                20
    a. Regarding the defendants' definitions        22
    b. Regarding Plaintiff's privilege and work product objections   22
    c. Regarding request No. 13                     22
    d. Regarding production of J.C.'s medical records   23
    e. Regarding production of J.C.'s educational records   23
    f. Regarding the preparation of a privilege log   23

CONCLUSION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

## **TABLE OF AUTHORITIES**

Cases .................................................................................................................................. Page(s)

*Leone v. Fisher*, 2006 U.S. Dist. LEXIS 75571 * 5 | 2006 WL 2982145 (D. Conn. 2006) ......... 11

*Loop AI Labs Inc. v. Gatti.,* 2016 U.S. Dist. LEXIS 25416 * | 2016 WL 787924 (N.D. Cal. 2016) ................................................................................................................................................. 17

*McCoy v. Southwest Airlines Co.,* 211 F.R.D. 381, 386 (C.D. Cal. 2002) ................................ 18

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019). ......... 12

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ............................................. 18

*Rickels, Inc. v. Frances Denny Corp.,* 508 F. Supp. 4 (D. Mass. 1980) .................................... 15

*Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ........................................................... 13

*U.S. v. Zolin,* 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989). .......................... 11

*United States v. Nobles*, 422 U.S. 225, 238 (1975). ................................................................. 12

*United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) ..................................... 12

*Williams v. Rushmore Loan Mgmt. Servs., LLC,* 2016 U.S. Dist. LEXIS 22897 * 3 (D. Conn. 2016) ................................................................................................................................... 11


Rules

Rule 26(b)(1). ........................................................................................................................ 13
Rule 26(b)(3)(A). .................................................................................................................. 14
Rule 45 ................................................................................................................................. 17
Rule 45(c)(3) ........................................................................................................................ 17


Statutes

ORS 419B.255(2)(a) ............................................................................................................. 20
ORS 125.005(8) ..................................................................................................................... 3
ORS 125.005 (7) .................................................................................................................... 3
ORS 125.005(2) ..................................................................................................................... 3
ORS 125.005(6) ..................................................................................................................... 3
ORS 40.225(2)(a ................................................................................................................... 12

3 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS



## INTRODUCTION

Pursuant to Fed. R. Civ. P. 26, 34, Plaintiff responds to the defendants three above-captioned discovery motions. The Court should deny the motions.

## BACKGROUND

### A. *The underlying probate proceeding*

To recap, the Petition for Appointment for a Conservator for J.C. was filed in Lane County Circuit Court, Probate Department, on January 21, 2021. The petitioner, Mr. Levi, was an Oregon attorney. Mr. Levi was represented by Ms. Maite Uranga. (Decl., Ex. 1 at 6) ("The Petitioner and proposed fiduciary has employed Maite Uranga of Uranga Law to represent him in this matter."). The purpose of seeking the conservatorship was to investigate potential claims against DHS on behalf of J.C., a protected person.[1] Meanwhile, J.C. was separately represented in the probate proceeding by Ms. Michelle Johansson. (Decl., Ex. 2). The court issued Letters of Conservatorship on May 5, 2021, appointing Mr. Levi as Conservator for J.C. (Decl., Ex. 3) (Mr. Levi "has the authority and duties of conservator of the estate of the named protected person [J.C.]."). The undersigned filed a Notice of Association with Ms. Uranga on May 27, 2021. (Decl., Ex. 4). Therefore, at all times material, Mr. Levi has acted in his legal and representative capacity in the context of these professional and fiduciary relationships. Put differently, Mr. Levi is not a percipient witness.

---

[1] *See* ORS 125.005(2) ("Fiduciary" includes a "conservator appointed . . . by a court to assume duties with respect to a protected person. . . ." ); ORS 125.005(6) ("Minor" means "any person who has not attained 18 years of age."); ORS 125.005 (7) ("Protected person" means a person for whom a protective order has been entered."); and ORS 125.005(8) ("Protective order" means an order a court appointing a fiduciary or any other order of the court entered for the purpose of protecting the person. . . .").



RIZZO | BOSWORTH | ERAUT<sub>PC</sub>
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Conservator Levi issued a subpoena to the Lane County Juvenile Court ("LCJC") on June 15, 2022, regarding *In re J.C. and Z.C.* (Case Nos. 16JU05857/8, 17JU03535/6). The subpoena sought the following LCJC materials: (i) the FTRs; (ii) the legal file; and (iii) the social file (also known as the supplementary confidential file) regarding *In re J.C. and Z.C.* (Case Nos. 16JU05857/8, 17JU03535/6). (Decl., Ex. 5). Oregon Department of Justice Trial (DOJ) Division Assistant Attorney General, Ms. Chin, appeared on behalf of LCJC.[2] Ms. Chin objected to the subpoena on behalf of LCJC, claiming broadly that LCJC was not required to obey the subpoena, that Conservator's ability to access the materials was "limited to portions" thereof under ORS 419A.255, and that Conservator was required to file a motion under ORS 419A.258. (Decl., Ex. 6) (Decl., Ex. 7).

Ultimately, Ms. Chin filed a motion to quash the Conservator's subpoena on behalf of the Lane County Trial Court Administrator (TCA). After substantial briefing and argument, Probate Judge Tennyson rejected Ms. Chin's arguments and denied the motion on October 26, 2022. Judge Tennyson's order required the TCA to produce:

> a. All audio and video recordings of any hearing, trial and/or other court appearance held *In re J.C. and Z.C.* (Lane County Juvenile Court Case Nos. 16JU05857/8, 17JU03535/6) from July 1, 2016 through December 31, 2019—and any transcripts, if they exist, of such recordings;
>
> b. The complete legal file, a.k.a. "record of the case," associated with *In re J.C. and Z.C.* . . . ;
>
> c. The complete social file, a.k.a. "confidential supplementary file," maintained in connection with *In re J.C. and Z.C.* . . .; and
>
> d. All logs, notes and notations and records kept or made by court staff that identify any witnesses that were called and/or testified in connection with any hearing, trial and/or court appearance in the above-referenced matters.

---

[2] Ms. Chin and DOJ Trial Division defense attorney, Ms. Schneider, defend foster care abuse cases brought against DHS.

5 – PLAINTIFF'S RESPONSE TO DISCOVERY
  MOTIONS



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

(Decl., Ex. 8).

DOJ Trial Division was involved in producing the LCJC materials that were privileged to J.C. In addition to driving up the costs, Conservator expressed concerns that DOJ Trial Division used its "representation" of LCJC and/or TCA to obtain possession of these privileged materials. Conservator informed Judge Tennyson as follows:

> DOJ Trial Division now maintains possession of J.C.'s juvenile court records, including her *privileged supplemental confidential file*, without any protection from or limitations on disclosure or unauthorized use. Given DOJ Trial Division's concurrent representation of DHS, <u>Conservator requested that it promptly undertake efforts to sequester all of these confidential and privileged materials pending a resolution of the issues</u>.
> …
>
> The DOJ Trial Division's selective, inconsistent statutory and legal interpretations exacerbate the harm done to children abused in foster care, creating unnecessary obstacles to accessing materials relating to their own history and prognosis, their own juvenile dependency case and the truth about the extent of DHS's culpability. In this case, DHS required that Conservator and J.C. prepare and enter a protective order before producing documents. AAG Chin required an order compelling production of documents *privileged to the children*, subject to a protective order. <u>Yet, the DOJ Trial Division concurrently received, copied, inspected and continues to maintain records privileged to J.C. and Z.C. without any assurances against their misuse</u>.

(Decl., Ex. 9) (underlining added).

Following conferral with Ms. Chin, Conservator moved for a protective order on December 9, 2022, seeking to "protect[] from future use and disclosure confidential and privileged documents that have come into the possession of [DOJ] over the objection of J.C. and the Conservator." (Decl., Ex. 10). The parties reached accord while the motion was pending, and Judge Tennyson subsequently entered the parties' Stipulated Protective Order ("SPO") on January 31, 2023, which provides in pertinent part:

> **II. DEFINITIONS**
> a. **Documents**: All materials regarding *In re J.C.* and *In re Z.C.* provided by TCA to ODOJ in connection with the [Conservator's] Subpoena.
> . . .
> c. **Oregon Department of Human Services ("DHS")** includes all agents, consultants, directors, employees, managers, officers and supervisors.

6 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

d. **Oregon Department of Justice ("ODOJ")** includes all attorneys, law students, legal assistants, paralegals and staff, *and any experts and* **affiliated outside counsel**.
…

## IV. ACCESS AND USE LIMITATIONS

b. *Unless otherwise ordered by the Court or agreed to in writing by all parties stipulating to this Order*:

(1) ODOJ shall maintain and store *the* **documents** *and any information derived therefrom* in a secure, protected file as described above;

(2) ODOJ *shall not disclose the* **documents** *and any information derived therefrom to any other person or entity, including DAS and DHS, or to any third party;*
…

This Court *shall retain continuing jurisdiction for the purpose of enforcing this protective order.*

(Decl., Ex. 11) (emphasis added).

### B. *Relevant events occurring in this action*

Plaintiff Levi's Complaint in this action focuses entirely on J.C.'s removal and placement in the DHS-certified Duncan-Raygosa foster home and the abuse occurring in that home. It makes no mention of or allegations regarding the conduct of J.C.'s dependency proceeding. With the exception of Raygosa, the defendants were represented by DOJ Trial Division AAGs Ms. Schneider and Mr. Mancuso. The defendants' January 30, 2023 Answer *admitted* that DHS obfuscated its knowledge of the abuse occurring in the Duncan-Raygosa foster home and that Raygosa "physically abused J.C. by raping and sodomizing" her in that disgusting "home." The defendants did not raise any allegations regarding J.C.'s dependency proceeding. (ECF 19 at 9-10).[3] Several Markowitz Herbold defense attorneys associated with DOJ in approximately June 2023.

Notwithstanding the SPO, the defendants (including DHS) served their first request for production to Plaintiff on July 26, 2023, to collect:

---

[3] The Amended Answer filed by Markowitz Herbold restates these same admissions. (ECF 110 at 15).

7 – PLAINTIFF'S RESPONSE TO DISCOVERY MOTIONS


RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

> **[RFP] NO. 1:** All documents You received pursuant to Your subpoenas duces tecum issued in *the Matter of the Estate of JC, Case No. 21PR00099 (Lane Cnty. Cir. Ct. Probate Dep't.),* to any persons or entities, including but not limited to subpoenas issued to:
>
> a) Lane County Juvenile Court
>
> b) Kids FIRST
>
> c) ODHS
>
> d) Any tribal entity

(Decl., Ex. 12). Plaintiff objected to the defendants' request in pertinent part:

> **RESPONSE:** Defendants' definition of Plaintiff and You as J.C.'s attorneys of record, legal counsel, and any agents, is vague and overbroad
> . . .
> Documents produced by and compelled to be produced by the entities listed in subparagraphs a) and b) are protected against disclosure by juvenile dependency laws, child privacy interests, and protective orders issued by the Lane County Circuit Court in *J.C.*

(Decl., Ex. 13) (simplified).

Conferral with the defendants was futile, and the defendants moved to compel on September 5, 2023. (Joint Status Rpt., ECF 73 at 40). The defendants repurposed the SPO, claiming that "plaintiff's counsel was unable to identify any provision in the probate-matter protective orders that would preclude *release* of these documents." (*Id*. at 41) (emphasis added). In the defendants' telling, Plaintiff was permitted to *release* documents that DOJ and DHS were precluded from accessing, which was an absurdity. The defendants made what has become a familiar, conclusory refrain: the LCJC documents "are neither privileged nor are they work product," without citation to authority. (*Id*. at 42).

The defendants were unsuccessful. At the September 8, 2023 oral argument, the Court did not grant the defendants' motion to compel, stating in part that "the social file is a matter of privilege. And I – know you may have issues about whether privilege is waived as a result of making the claim in the first place." (Decl., Ex. 14). Within 10 days after the hearing, the defendants "withdrew" their **RFP NO. 1**. The defendants then urged the Court to incorporate the

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

fact of the withdrawal in its order. (Decl., Ex. 15). After significant briefing, the Court's October 30, 2023 Order reflected in pertinent part:

> 15. Following the hearing held on September 8, 2023, State Defendants withdrew their First Request for Production, Request No. 1, so the issues discussed at the hearing regarding Plaintiff's objections to this request are moot.

> 16. As discussed on the record, acting as the Conservator in the underlying state court probate proceeding, Mr. Levi issued subpoenas to Kids First ("KF"), Lane County Juvenile Court ("LCJC") and DHS. The Conservator did not subpoena "any tribal entity" or the tribe. *KF produced responsive documents, which are subject to a protective order.* Substantial litigation involving significant c[os]ts to the Conservator was required to secure a probate court order requiring production of the LCJC and ODHS records.

> …

> 18. In connection with defendants' First Request for Production, the parties *shall confer* regarding: (i) *a cost sharing arrangement* whereby defendants compensate the Conservator for the efforts spent in obtaining the documents; and (ii) *whether the filing of this action constitutes a waiver of J.C.'s juvenile law privilege*. In the event the parties cannot reach agreement, they *shall return to the Court to seek guidance*.

(Order, ECF 92) (emphasis added). But the defendants had already made other plans. Leveraging their *post hoc* withdrawal of **RFP NO. 1**, the defendants filed Objections on November 11, 2013, claiming that the order was therefore "vague, contradictory and impossible to comply with." (ECF 94 at 6).

C. *Defendants' proposed "supplemental" order re Kids FIRST*

The defendants served Kids FIRST with a subpoena dated October 18, 2023. The subpoena commanded Kids FIRST as follows:

> **REQUEST NO. 1:** All documents You produced in response to the subpoena *duces tecum* served on Kids FIRST on May 24, 2021, in the Matter of the Conservatorship of J.J. . . . That subpoena sought documents prepared, reviewed, and received in connection with any assessment, evaluation interview, or treatment of J.C. by Kids FIRST on October 13, 2022.

(Decl., Ex. 16). Kids FIRST objected to the defendants' subpoena. Plaintiff also objected to the

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

subpoena, reminding counsel that the requested documents were subject to the parties March 3, 2023 stipulated protective order regarding Kids FIRST. (Decl., Ex. 17). The March 3 order required Conservator to destroy documents received from Kids FIRST at the close of the probate proceeding. (Decl., Ex. 18).

In an effort to avoid a dispute, Plaintiff offered to participate in a joint protective order that allowed him the opportunity to review the requested documents first for relevancy, privacy and privilege prior to any production to the defendants. Plaintiff does not dispute that a forensic interview of J.C. relevant.[4] Rather, in light of the extremely sensitive and private nature of the evaluation, upon entry of a protective order, Plaintiff offered to make the video available to the defendants to view – but not possess – with the understanding that Plaintiff was not waiving privilege and privacy objections.[5] Plaintiff also pointed out that a DHS caseworker had observed J.C.'s evaluation in real time and that another DHS employee, Mr. Stephen Hammond, had seen the video as well. Plaintiff also advised the defendants that in the event of a disagreement, he intended to address the issues by letter in accord with the Court's case management order, and to not "be routed into motions practice." (Decl., Ex. 19). The defendants rejected Plaintiff's offer out of hand.

On November 27, 2023, the defendants proffered their form of a proposed "supplemental" protective order regarding the Kids FIRST documents. In response, counsel for Kids First raised concerns regarding the breadth of the draft. (Decl., Ex. 20). Plaintiff also raised concerns regarding the overlap between Kids FIRST documents and documents contained in the supplemental confidential file, and Plaintiff raised other concerns regarding the form and content of the proposed order. (Decl., Ex. 19). The defendants were unmoved by these concerns.

---

[4] However, J.C. did not participate in such an interview on October 13, 2022.

[5] The defendants' indication that a Lane County District Attorney prosecutor used "a portion" of J.C.'s interview during Raygosa's criminal trial has no bearing on Plaintiff's assertion of privilege in this action. (ECF 226 at 20).


RIZZO | BOSWORTH | ERAUTᴘᴄ
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

### D. *Recent events occurring in Lane County Juvenile Court*

Notwithstanding the Court's October 30 discovery order, the defendants filed their motion to inspect J.C.'s juvenile court records in LCJC on January 30, 2024. (Decl., Ex. 21). Notwithstanding the SPO, the defendants' motion intertwines this action and *Conley v. Chapman et al.*, 6:23-cv-01353-MK, i.e., Z.C., and seeks an order permitting the defendants to "access, use, and disclose material contained in the record" of J.C.'s dependency proceeding "including recordings of hearings, the supplemental confidential file, and any sealed portions of the record" in this action. (*Id*. at 2). And again, the defendants assert in conclusory fashion that "[b]y filing the complaints in the Federal Lawsuits . . . J.C. and Z.C. waived the privilege established under ORS 419A.255 as to the juvenile court records sought." The defendants' motion omits mention of the SPO, which precludes DOJ and DHS from accessing J.C.'s LCJC records.

Conservator Levi (by and through his attorneys) opposes the motion to inspect. (Decl., Ex. 22). J.C. (by and through her attorney) has filed objections, and Mother (by and through her attorney) has filed objections. Z.C. (by and through his attorneys) also opposes the defendants' motion. Lane County Circuit Court Judge Valeri Love has set oral argument on April 24, 2024.

**ARGUMENT**

### 1. *Response to Motion to Compel Responses to First Set of Interrogatories*

The defendants' First Set of Interrogatories were served on February 16, 2024. The defendants challenge Plaintiff's responses to 11 out of 13 interrogatories. The defendants' motion invites debate concerning the undersigned's objections generally without reference to specific interrogatories. Because there is no point in debating objections taken out of context, Plaintiff will address each of the challenged interrogatories, inclusive of the objections, while also noting that the responses were provided without waiving the objections.

***Interrogatory No. 1*** was directed to "Plaintiff," Mr. Levi, and to "You," a term that encompassed (i) Mr. Levi; (ii) J.C. (a minor); (iii) their attorneys; and (iv) any agents (hereafter the *You* group). As thus framed, the interrogatory asked the *You* group to "[d]escribe *all* the



information *You* [s/he and/or or they] *had,* at the time *you filed* the Complaint, *supporting* ¶ 33 of the Complaint," pertaining to what "DHS knew or suspected" regarding Duncan-Raygosa's lack of fitness. (Decl., Ex. 23) (emphasis added).

The undersigned objected to the defendants' definition of the *You* group because it was (i) vague and overbroad; and (ii) because to "describe all information" the *You* group *had* was the same as or substantially similar to "state all facts," a "broad general" form of interrogatory that is prohibited by LR 33-(d). The Court should sustain these objections, and treat the interrogatory as directed to Plaintiff only – and not J.C., their attorneys, or any agents.

Plaintiff also objected on grounds of attorney-client privilege and attorney work product. As discussed above, Mr. Levi has acted in a professional and representative capacity at all times material. Mr. Levi is represented by counsel. He is not a percipient witness to the events giving rise to the litigation and he is not litigating this case.

**Privilege**. Questions of privilege that arise in the course of the adjudication of federal rights are governed by FRE 501. *U.S. v. Zolin,* 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989). In pertinent part, the attorney-client privilege prevents disclosure of a communication from a client to a lawyer, where it "*relates to a fact of which the attorney was informed* (a) by his client . . . (c) for the purpose of securing primarily either (i) an opinion on the law or (ii) legal services or (iii) assistance in some legal proceeding. . . ." *See e.g., Leone v. Fisher*, 2006 U.S. Dist. LEXIS 75571 * 5 | 2006 WL 2982145 (D. Conn. 2006) (emphasis added). The privilege also protects "the *information communicated* by the client that provides a basis for giving advice." *Williams v. Rushmore Loan Mgmt. Servs., LLC,* 2016 U.S. Dist. LEXIS 22897 * 3 (D. Conn. 2016) (emphasis added). Moreover, federal common law recognizes the "client-representative" extension of the attorney-client privilege where "the client is an individual and is either disabled or is in some unique position requiring another to intervene between the client and counsel." *Leone,* 2006 U.S. Dist. LEXIS 75571 at * *3-4.

Applying these authorities, when the Complaint was filed on November 18, 2022, any

12 – PLAINTIFF'S RESPONSE TO DISCOVERY
    MOTIONS



*information* that Plaintiff *had* that *supports* ¶ 33, i.e., allegations regarding DHS's knowledge or suspicion, was communicated to him by Ms. Uranga and/or by the undersigned. The defendants' claim that they can probe Plaintiff for such *information* because "he is a conservator" for J.C., a protected person, and "not her attorney" is feckless.

Stretching further, the defendants assert that Plaintiff is not "an attorney for [J.C.'s] *family or other witnesses*" and therefore "has no attorney-client privilege *with them*." (ECF 116 at 5) (emphasis added).[6]  Insofar as privilege is concerned, these conclusory assertions are likewise immaterial. As a minor, and as a child abuse victim, J.C. is in a unique position that required the appointment of a fiduciary to represent her interests and investigate claims on her behalf.[7] Accordingly, the Court should sustain the privilege objection.

**Work product**. In federal court, the work-product doctrine is governed by federal law. *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019). The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things *prepared by a party or his representative in anticipation of litigation. See United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (internal use of quotation marks and citations omitted) (emphasis added). Its primary purpose is to prevent a party's ability to "exploit[] a party's efforts in preparing for litigation." *Admiral Ins. Co.*, 881 F.2d at 1494; *United States v. Nobles*, 422 U.S. 225, 238 (1975).

In their effort to exploit Plaintiff's work product, the defendants segue from their use of *information* and assert that the *You* group'*s facts* are unprotectible. (ECF 116 at 10). But the defendants' interrogatory No. 1 did not ask the *You* group to state or *describe all facts* because that would have run afoul of LR 33-(d)'s express prohibition. Accordingly, keeping the focus where it

---

[6] The *You* group definition makes no reference to J.C.'s *family or other witnesses.*

[7] *Cf.,* ORS 40.225(2)(a) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal service to the client . . . Between the client or the client's representative . . . or a representative of the law practitioner.").

13 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS



RIZZO | BOSWORTH | ERAUT<sub>PC</sub>

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

belongs – on interrogatory No. 1 as framed – *all information* that the *You* group *had* in November 2022 that *supports Complaint* ¶ 33 was obtained in anticipation of litigation involving DHS. Therefore, *all* such *information* reflects counsel's litigation efforts, strategies and impressions, all of which are protected work product. *Cf., Upjohn Co. v. Unites States*, 449 U.S. 383, 396 (1981) ("Discovery was hardly intended to enable a learned profession to perform its functions . . . . on wits borrowed from the adversary.") (internal citations omitted).

And, in recasting their apparent need for investigative *facts,* the defendants have made no effort to meet the requirements of Fed. R. Civ. P. 26(b)(3)(A), i.e., to establish that they have "substantial need" for the *You* group's "facts" (relating back to November 2022) about DHS's knowledge or suspicion regarding Duncan-Raygosa's lack of fitness and that they "cannot, without undue hardship, obtain their substantial equivalent." *Id.* The defendants' auxiliary quest for the "underlying factual information within [Plaintiff's] communications is [not] protected" is erroneous. (ECF 116 at 11).

Finally, Plaintiff answered the broad general interrogatory, without waiving the above objections. Plaintiff stated that "at the time of filing, information that I had was based on communications and contacts with counsel and the family, which are privileged and protected." (Decl., Ex. 23 at 2). Therefore, acting in a representative capacity, Plaintiff referred the defendants to the 10 preceding paragraphs in the Complaint, i.e., ¶¶ 22-32, each of which provides *support* for the allegations made in ¶ 33. The burden imposed by the defendants' expensive and unnecessary motion to extract additional *supporting information* from November 2022 outweighs its likely benefit, if any, particularly where the hide-and-seek defendants also "withdrew" their failure to state claim defense in response to Plaintiff's motion to make more definite. *See* Rule 26(b)(1). Plaintiff incorporates the above arguments to the following interrogatories, and requests the Court to find that Plaintiff's response to interrogatory No. 1 is sufficient

***Interrogatory No. 2*** asked that the *You* group disclose or "identify all of the current or former" DHS employees s/he or they "*have spoken with* regarding the allegations in the

14 – PLAINTIFF'S RESPONSE TO DISCOVERY
  MOTIONS



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Complaint." (Decl., Ex. 23 at 2). Applying the above arguments, the fact of Plaintiff's communications with former or current DHS workers, if any, is privileged and/or protected.

As a hedge to their overreaching, the defendants segue that Plaintiff "has no basis to refuse to identify current or former ODHS employees with potentially discoverable knowledge of plaintiff's claims." (ECF 116 at 14). But that is something that the defendants already know and it is not what interrogatory No. 2 asked. Interrogatory No. 2 asked the *You* group to disclose the identity of workers that it *spoke with*, which is protected work product. Again, Plaintiff is not litigating this case, and facts concerning the undersigned's communications with such workers are not discoverable, particularly where the defendants have failed to establish the requirements of Rule 26(b)(3)(A). The Court should find that Plaintiff's response to interrogatory No. 2 is sufficient.

***Interrogatory No. 3*** asked that the *You* group identify so-called "material and principal facts that support [the] allegations that ODHS knew, before it placed J.C. in the Duncan-Raygosa home, that J.C. would need a specialized level of care." To build in a basis for motions practice, defendants failed to define "material and principal facts." (Decl., Ex. 23 at 2). The undersigned objected primarily because the interrogatory asked the *You* group to (i) accept the defendants' so-called "material and principal facts" on its face; (ii) assume that Plaintiff's extant allegations do not qualify as "material and principal facts," and (iii) to undertake to distinguish apparently supportive "material and principal facts" from apparently immaterial and/or peripheral facts, i.e., do this work for the defendants and supply them with conforming legal conclusions.

In a hurry to file this motion to compel, the defendants lumped argument regarding interrogatory No. 3 together with argumentation regarding their dissatisfaction with the responses to interrogatories Nos. 1, 4-8, and 10, i.e., an omnibus-type argument. Using the one-size-fits-all approach, the defendants bypassed directly addressing the merits of Plaintiff's objections in the context of each challenged interrogatory response, preferring instead to broadly claim that any time Plaintiff refers to allegations in the Complaint that is a "failure to answer." (ECF 116 at 13).

15 – PLAINTIFF'S RESPONSE TO DISCOVERY
    MOTIONS



The defendants' citation to *Rickels, Inc. v. Frances Denny Corp.,* 508 F. Supp. 4 (D. Mass. 1980) is inapposite because the court observed that interrogatory "[a]nswers are insufficient *if they fail to supply facts which were omitted* from the complaint; and if they neither clarify nor narrow broad issues posed by the complaint." *Id.* at 7 (emphasis added). That is not the case here. And the defendants do not claim that Plaintiff's Complaint fails to supply facts, nor do they assert that Plaintiff's answer fails to supply facts that were omitted therefrom. Here, it is defendants who refuse to acknowledge that the facts alleged in Plaintiff's Complaint – which they have answered and subsequently withdrew their failure to state a claim defense – are responsive to the interrogatory. Applying *Rickels,* the Court should therefore sustain the undersigned's objections regarding "materials and principal facts" across the board.

Without waiving the objections, Plaintiff responded by referring the defendants to Complaint ¶¶ 13, 22, 34, 36-37 that pertain to the placement. (Decl., Ex. 23). But for the defendants' "material and principal" tag, these detailed factual allegations are responsive. The Court should find that Plaintiff's response to interrogatory No. 3 is sufficient.

***Interrogatory No. 4.*** Driven by their creation of "material and principal facts," the defendants next queried the *You* group to "identify" such facts that support *Your* allegation that ODHS failed to investigate J.C.'s condition" in the Duncan-Raygosa foster home. (Decl., Ex. 23 at 2). Without directly addressing the undersigned's objections to interrogatory No. 4, the defendants challenged the sufficiency of Plaintiff's response.

However, Plaintiff's response cited the Duncan-Raygosa abuse in care documents that the Court ordered the defendants to produce as a condition to allowing them to amend the Answer by withdrawing DHS's obfuscation of knowledge admission, claiming "scrivener error." (ECF 56). Plaintiff even identified the documents by using the defendants' Bates numbers. The defendants' documents establish their failure to investigate as alleged in Plaintiff's Complaint. Thus, the defendants' claim that "Plaintiff has an obligation to disclose the facts that are responsive" is unintelligible. (ECF 116 at 13-14). The Court should find that Plaintiff's response to interrogatory

16 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

No. 4 is sufficient.

***Interrogatories No. 5-8.*** Each of these interrogatories requested that the *You* group "identify" the "material and principal facts," and the defendants' motion reiterates the same argument. Again, to avoid unnecessary repetition, Plaintiff incorporates by reference the above points and authorities made in Plaintiff's responses to interrogatories Nos. 1-4 and requests the Court find that Plaintiff's responses to interrogatories No. 5-8 are likewise sufficient.

***Interrogatory No. 9*** asked *You* to "identify each and every . . . health care professional that J.C. has visited for diagnosis, counseling, examination, or treatment of any kind, including without limitation all doctors, therapists, psychologists, psychiatrists, and counselors." The undersigned incorporated by reference the objections to interrogatory No.1 (to protect against disclosure of expert evaluations and health care professionals referenced in the supplement confidential file) and objected to the term "visited." (Decl., Ex. 23 at 3).

Without waiving any objection, Plaintiff listed approximately 20 medical and mental health professionals. (Decl. Ex. 23 at 4). The defendants argue that Plaintiff's list is "incomplete" because it did not strictly adhere to the defendants' definition of the term "identify," which apparently obligated Plaintiff to state each "person's full name, present or last known address, [and] the present or last known place of employment." (ECF 116 at 15). However, in providing the response, Plaintiff again worked directly from the provider list that the defendants produced to Plaintiff, and used the defendants' Bates numbers, e.g., "DHS_in RE-JC_SDT_000470-475." (Decl., Ex. 24) (FILED UNDER SEAL). The defendants' provider list identifies each performing provider, i.e., by name, "billing provider," i.e., the entity, and it provides their addresses. Plaintiff will supplement the response by identifying other treating providers that J.C. "visited" after she left care.

As seen, the defendants did not have a genuine need for information that they already had in their own files, but this is how the defendants prefer to operate. The Court should find that Plaintiff's response to interrogatory No. 9 is sufficient.

17 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS



***Interrogatory No. 11*** asked the *You* group to "identify" so-called "specific injuries and damage" to J.C. that were caused by Joe Raygosa. (Decl., Ex. 23 at 4). To preface, the defendants' interrogatory No. 10 asked that *You* identify such injuries and damage caused by "State Defendants." In response thereto, Plaintiff referred the defendants to Complaint ¶¶ 63-64, and 78 ECF 1 at 10-13), and to the defendants' Amended Answer ¶ 75, where they admit that "Raygosa physically abused J.C.by raping and sodomizing J.C." (ECF 110 at 15). The defendants' admission must have been sufficiently "specific" because the defendants did not challenge Plaintiff's response to interrogatory No. 10. It seems that the defendants only complain when Plaintiff references the Complaint; their own pleadings are exempt, apparently.

In response to interrogatory No. 11 then, Plaintiff incorporated by reference the response to interrogatory No. 9 (which reflected in part J.C.'s treatment in care) and referred the defendants to Complaint ¶ 8, which alleges that "all defendants and Duncan-Raygosa acted for and on behalf of one another and they are jointly and severally liable." (ECF 1 at 2). In their motion, the defendants characterize Plaintiffs' response to interrogatory No. 11 as "non-responsive." (ECF 116 at 15). But that is a fiction: Plaintiff's position is that the defendants and Duncan-Raygosa are jointly and severally liable for the same injury and damages. That is responsive. The Court should find that Plaintiff's response to interrogatory No. 11 is sufficient.

2. ***Response to Motion to Enter "supplemental" Kids FIRST Protective Order***

To erect a procedural hurdle, the defendants now argue that the Court should "disregard" Plaintiff's "objections" because they are "not permitted" by Rule 45. (ECF 116 at 22).

A party generally lacks standing under Rule 45(c)(3) to challenge a subpoena issued to a non-party "unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Loop AI Labs Inc. v. Gatti.,* 2016 U.S. Dist. LEXIS 25416 * | 2016 WL 787924 (N.D. Cal. 2016). Here, Plaintiff raised J.C.'s juvenile law privilege and privacy interest with respect to the documents requested in the Kids FIRST subpoena. Therefore, Plaintiff has standing. *See also Bass Underwriters, Inc. v. Kono,* 2023 U.S. Dist. LEXIS 72586 * 4 | 2023

18 – PLAINTIFF'S RESPONSE TO DISCOVERY
MOTIONS


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

WL 3094777 (D. Nev. 2023).

The defendants' alternative timeliness argument is peculiar, however, given that all parties were conferring on the form of a protective order regarding Kids FIRST documents. Both non-party Kids FIRST and Plaintiff objected within 14 days of service of the Kids FIRST subpoena. Therefore, defendants' citation to *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) does not foreclose the Court from ruling on the merits. In *Moon,* only the defendant objected. The non-party who was served with the subpoena did not object. Also, *Moon* provides that "in unusual circumstances and for good cause . . . the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." *Id.* (internal use of quotations and brackets omitted); *cf., McCoy v. Southwest Airlines Co.,* 211 F.R.D. 381, 386 (C.D. Cal. 2002) (courts have found unusual circumstances where the subpoena is overbroad on its face and exceeds the bounds of fair discovery). Plaintiff's concerns about the defendants' proposed "supplemental" protective order were expressed timely, and the Court gave the parties 30 days to file a consolidated motion "regarding all current discovery disputes." (ECF 114).[8] But even assuming *arguendo* that Plaintiff should have abstained from conferring in favor of filing a separate motion for protective order or to quash, good cause exists under the circumstances to reach the merits.

With respect to the merits, there are several reasons why the Court should reject the defendants' proposed "supplemental" protective order, which in effect, seeks to supersede the terms of the Court's Amended Protective Order – which was extensively litigated. (ECF 84).

*First,* the purported finding that this "action concerns *allegations of injuries in connection with programs and services of* [DHS] that were apparently *documented* through Kids FIRST" merely assumes facts and it is vague and argumentative. (ECF 117-2 at 3). There is no evidence that Kids FIRST "documented" any such vague allegations. *Second,* the purported finding that

---

[8] (*See also,* Hoffman Decl., ECF 117-8 at 13) (Hoffman's 11/2/23 email: "Ali and Steve . . . Today is the deadline for Kids FIRST to produce documents. We agree to set that deadline aside while we work out the protective order. We will agree to set a new production deadline after the protective order is entered by the Court.").

19 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

defendants and Kids FIRST "expect to *exchange* documents and information . . . *including but not limited to* sensitive personal information . . . of J.C." is vague and it creates a conduit (or back-door) that would allow the defendants to *exchange* documents, i.e., the act of giving one thing and receiving another in return, without Plaintiff's knowledge and without the Court's oversight; it would also allow the defendants and Kids FIRST to *exchange* documents pertaining to Z.C. – whose counsel is known to defense counsel. *Third,* the defendants' "[e]xcept where it conflicts" language creates an unnecessary conflict with the Amended Protective Order so that the proposed order will "govern[] the terms of *use* for documents, *testimony*, and *other materials* produced by Kids First in this litigation," i.e., the defendants intend to supersede the Amended Protective Order and thereby eliminate Plaintiff's ability to object to admissibility of any Kids First *documents*, Kids FIRST *testimony*, or *other* Kids FIRST *materials exchanged* between and among the defendants and Kids FIRST. *Fourth,* the Court should also reject the defendants' attempt to elevate Oregon "public records retention laws" and disallow them from "preserv[ing]" a copy of J.C.'s video for five years.[9] (ECF 117-2 at 3).

Accordingly, the Court should not enter the defendants' proposed "supplemental" protective order. It should allow the defendants to (again) view J.C.'s abuse evaluation in October 2017, under the APO but not allow them to maintain possession of the video for any reason.

Also, in light of the defendants' LCJC motion to inspect, the Court should not reach the merits of the defendants' argument that "the Kids FIRST documents are not subject to the juvenile court privilege." (ECF 116 at 24). Not only have the defendants refused to confer as required by the Court's October 30 discovery order (because they made it "impossible") – their pending motion to inspect raises this same argument using the same case law, and they forced Plaintiff to file a response thereto. The defendants should be bound by their deliberate forum shopping and they should be estopped from playing off the Court against LCJC to wager on inconsistent rulings. This

---

[9] As the Court has seen, the defendants had no trouble destroying relevant text messages.

20 – PLAINTIFF'S RESPONSE TO DISCOVERY
  MOTIONS


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

is particularly apt where all affected parties in the dependency proceeding (with the exception of Father, who has not been served) have filed objections and supporting legal memoranda and where LCJC has scheduled oral argument on April 24.

**3.  *Response to the Motion to Compel Documents***

The defendants served their Third Request for Production (RFP) on February 13, 2024. (Decl., Ex. 25). To provide context, there is no dispute that J.C. was abused in the DHS-certified Duncan-Raygosa foster home, that she was "raped and sodomized" in that home, and that Raygosa was convicted.  The documents that support Plaintiff's allegations regarding liability and damages can be categorized as follows: (i) the defendants' provider notes, permanency casenotes, and child protective services casenotes, sensitive issue reports, sensitive file reviews, email, text messages and related documents, evaluations; (ii) Kids FIRST documents (as addressed above); (iii) police reports; (iv) records of Raygosa's prosecution, trial, and sentencing, which the defendants have alluded to in their motion; and (v) J.C.'s medical and school records. Plaintiff has virtually no control over documents listed in categories (i) – (iv) and has to rely on the parties to produce responsive documents and information. Plaintiff's Complaint makes no reference to J.C.'s dependency proceeding, and the Court is aware of Plaintiff 's position that the juvenile court materials are privileged under Oregon law – not merely confidential.[10]

In response to the defendants' Third RFP, Plaintiff advised initially:

> Plaintiff understands that the defendants are not requesting Plaintiff to reproduce the defendants' supportive communications and documents or such documents already produced by Plaintiff.

(Decl., Ex. 26). For that reason, Plaintiff did not re-produce the "more than 16,000" documents that the defendants claim to have produced, which includes documents pertaining to the numerous other children who were abused in the Duncan-Raygosa foster home that the defendants were

---

[10] *See e.g.,* ORS 419B.255(2)(a) (in pertinent part: "[r]eports and other material relating to the child . . . in the records of the case or the supplemental confidential file are privileged and, except as the request of the child . . . shall be withheld from public inspection except that inspection is permitted in as set forth in subsection (1)(b) of this section and paragraph (b) of this subsection.").

21 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS



ordered to produce by the Court.

Also, as stated above, ordinarily it is useful to address the merits of a party's objections in the context of specific requests, not simply for the purpose of "disregarding" objections in a vacuum. However, the defendants' motion targets instead what the defendants proceed to characterize as "a raft of general, form, and boilerplate objections," without reference to specific requests to which the objections pertain. (ECF 116 at 16). To correct the record, unlike the defendants' excessive use of General Objections in their discovery responses (which the Court has already rejected), Plaintiff did not make any general objections in the Response to the Third RFP.

**Regarding the defendants' definitions**, the Third RFP defined "Plaintiff" or "You" even more broadly to encompass (i) Mr. Levi; (ii) J.C.; (iii) Levi's and J.C.'s attorneys; (iv) legal counsel; and (v) any agents. (Decl., Ex. 25 at 2-3). Therefore, Plaintiff objected to this definition because it is vague and overbroad. That is not a "boilerplate" objection, particularly where it purported to require Plaintiff to query the other attorneys, unidentified "legal counsel" or "any agents," i.e., to do the defendants' work for them just as they had tried to make Plaintiff do in connection with their withdrawn **RFP No. 1**.

**Regarding Plaintiff's privilege and work product objections**, request No. 4 sought "[a]ll Documents and Communications that support Your contention that State Defendants knew or suspected that [Dunca-Raygosa] were unfit to serve as resource parents, as alleged in paragraph 33 of Your complaint." (Decl., Ex. 25 at 8). As discussed above in connection with the defendants' first set of interrogatories, this broad request for supporting documents and communications implicated Plaintiff's attorney-client privilege and protected work product. While the defendants may act dismissively, these are valid objections – not "boilerplate." Plaintiffs have therefore incorporated these objections throughout the Response.

**Regarding request No. 13**, the defendants requested sought "[a]ll Documents and Communications that support Your contention that State Defendants knew and/or ignored reports of abuse and other children occurring in the Duncan-Raygosa resource home, as alleged in

22 – PLAINTIFF'S RESPONSE TO DISCOVERY
    MOTIONS


RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

paragraph 104 of Your complaint." (Decl., Ex. 25 at 10). As noted above, Plaintiff did not reproduce the documents that the Court ordered the defendants to produce regarding the abuse of the other children in home In response, Plaintiff referred to his response to No.7, which indicated that the defendants' Answer ¶ 24 admits that "DHS [] failed to disclose and/or obfuscated notice and knowledge of the concerns in the Duncan-Raygosa foster home" and to the defendants' supplemental response to Plaintiff's first set of interrogatories. (Decl., Ex. 26 at 4). In other words, Plaintiff responded without waiving the objections. But aside from the defendants' zealous criticism of Plaintiff's alleged "nesting" of objections, the defendants offer no substantive argument showing that Plaintiff's response to request No. 13 is rendered insufficient.

**Regarding production of J.C.'s medical records**, Plaintiff incorporated the above objections by reference in the responses to requests Nos. 5-19, 23-31. With respect to request Nos. 14-16 and 28-30, Plaintiff was primarily concerned with work product protection. For example, request No. 14 sought "[a]ll Documents relating to any counseling, diagnosis, examination . . . by any doctor, psychologist . . . or other healthcare provider of any kind for or with J.C., or involving J.C." (*Id.*, at 4). As framed, the request encompassed consulting expert medical or psychological evaluation(s), which are not discoverable under Rule 26(b)(3)(A), and/or Rule 26 testifying expert evaluations, which are not required to be disclosed at this juncture, and treatment records contained in the supplemental confidential file. (Plaintiff had similar concerns related to requests Nos. 15-16 and 28-30, which pertained to medical issues). In response to request Nos. 14, 15 16, and 17, Plaintiffs will produce J.C.'s updated treating records as soon as reasonably practical and without waiving the objections.

**Regarding production of J.C.'s educational records**, Plaintiff will produce J.C.'s educational records in response to request No. 25, again as soon as reasonably practical and without waiving the objections.

**Regarding the preparation of a privilege log,** Plaintiff has not created a privilege log to reflect the privileged juvenile court records and files. Again, the defendants withdrew their request


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

for these materials to avoid discussing cost sharing, and the discoverability of these materials will be addressed by LCJC – set in motion by the defendants. Also, DHS was a party to the dependency proceeding and DOJ Trial Division received and processed the LCJC materials that Judge Tennyson ordered to be produced and restricted. Therefore, at this juncture, the defendants are not prejudiced by not having of a privilege log concerning these documents. Under the circumstances, the Court should await LCJC's ruling, and then order the parties to confer on the need for and timing of a privilege log for LCJC materials and others.

Given the defendants have focused primarily on objections in the abstract, there are no other substantive arguments to which Plaintiff can respond. That is, Plaintiff is not in a position to counter (or guess at) arguments pertaining to any specific requests that the defendants have not expressly made. For example, request No. 26 seeks "[a]ll Documents *originating from any law enforcement agency*, including without limitation police reports, sentencing reports, or transcripts, related to Joe Raygosa, Ray Colby, Rachel Colby, or J.C." (Decl., Ex. 25 at 13) (emphasis added). Plaintiff objected because such documents are publicly available. That objection is appropriate: In responding to a discovery request, Plaintiff is not obligated to locate "originating" law enforcement agencies or run discovery errands (including to Oklahoma where Raygosa was arrested) for the defendants particularly where the defendants have not served any subpoenas to obtain such records.[11]

## CONCLUSION

The Court should deny the defendants' motions for the reasons stated above.

---

[11] The defendants' statement that "plaintiff has not produced any documents," is false. (ECF 116 at 19). Plaintiff has produced documents from parties' subpoenaed in this action, including records from Fresno County Sheriff's Office relating to the investigation of the mysterious death of an infant in Duncan-Raygosa's foster care in California shortly before their arrival in Oregon.

24 – PLAINTIFF'S RESPONSE TO DISCOVERY MOTIONS

Dated: April 18, 2024.

RIZZO BOSWORTH ERAUT PC


By: s/*Steven Rizzo*
Steven Rizzo OSB No. 840853 (he/him/his)
Mary D. Skjelset OSB No. 075840 (she/her/hers)
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

ATTORNEYS FOR PLAINTIFF

25 – PLAINTIFF'S RESPONSE TO DISCOVERY
   MOTIONS

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>      Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>      Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>      Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>      Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon.  I am over the age of eighteen years and not a party to the subject cause.  My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Plaintiff's Response to Defendants' Discovery Motions**

## <u>VIA ECF</u>

| | |
|---|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: <u>jill.schneider@doj.state.or.us</u>**<br>**Email: <u>nicholas.mancuso@doj.state.or.us</u>**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* | Lauren Blaesing<br>Harry B. Wilson<br>Alexandra Rhee<br>Markowitz Herbold PC<br>1455 SW Broadway<br>Ste. 1990<br>Portland, OR. 97201<br>Ph: 503-295-3085<br>Email: <u>laurenblaesing@markowitzherbold.com</u><br>Email: <u>harrywilson@markowitzherbold.com</u><br>Email: <u>alexrhee@markowitzherbold.com</u><br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

Dated this 18th   day of April, 2024.

   *s/ Cheridan Carr*
   Cheridan Carr
   Paralegal

1- Certificate of Service