Mr. Steven Rizzo, OSB # 840853
Ms. Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

ATTORNEYS FOR PLAINTIFF LEVI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>         Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al,<br><br>         Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>         Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>         Third Party Defendant. | |

I, Mr. Steven Rizzo, declare as follows:

1.  On behalf of Plaintiff in the above-captioned matter, I make this Declaration in support of Plaintiff's Motion For Leave To File First Amended Complaint.

1 - DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT




2.  Attached as Exhibit 1 is a true and accurate copy of the proposed First Amended Complaint, which meets the requirements of LR 15-1(b). This proposed pleading was provided to the defendants prior to the filing of the motion. There are no new claims or parties sought to be added at this time.

3.  Briefly, some proposed amendments are ministerial, e.g., defendant Tibbetts is now known as ("nka") Brooks, deletion of certain specifications pertaining to J.C.'s supervised visitation, and as indicated, the renumbering of paragraphs and reordering of sub-paragraphs.

4.  Plaintiff seeks to allege additional facts and specifications of deliberate indifference against the individual defendants based on the discovery to date, which primarily relate to J.C's subsequent placement in a DHS-certified foster home, the defendants' efforts to undermine J.C.'s credibility and her disclosure of Raygosa's sexual abuse, and their withholding of pertinent facts and information from the juvenile court, J.C's advocates, treating providers, etc. Plaintiff proposes to increase the prayer for punitive damages against the individual defendants.

5.  Plaintiff seeks to add conforming specifications of negligence against DHS.

**I declare under penalty of perjury that the foregoing is true and correct**.

Dated: August 13, 2024.

By: */s/ Steven Rizzo*
Mr. Steven Rizzo

2 - DECLARATION OF STEVEN RIZZO IN SUPPORT OF PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUTpc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Steven Rizzo, OSB # 840853
Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

Caitlin V. Mitchell, OSB #123964
Johnson Johnson Lucas & Middleton PC
975 Oak Street, Ste. 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
cmitchell@justicelawyers.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>             Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, nka "BROOKS" in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOES 1-5; in their individual and/or official capacities,<br><br>             Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**PROPOSED FIRST AMENDED COMPLAINT** |

OREGON DEPARTMENT OF
HUMAN SERVICES,

1 – PROPOSED FIRST AMENDED COMPLAINT

Third Party Plaintiff,

v.

JOE ALBERT RAYGOSA,

Third Party Defendant.

Plaintiff alleges that at times relevant and material:

* * *

## PARTIES

### Plaintiff

1.      Ethan Levi (OSB # 994255) is the duly appointed conservator of the estate of J.C., a female minor. For purposes of Fed. R. Civ. P. 17(c)(1), Levi is a Representative and sues on behalf of J.C., a minor female.

### Defendants

2.      Defendant, Kim Chapman, was an Oregon Department of Human Services ("DHS") employee, acting in the scope of her employment. Chapman certified Nicole Marie Duncan and Joe Albert Raygosa ("Duncan-Raygosa") to operate a foster home and placed J.C. and her younger brother, Z.C., into that home.

3.      Defendant, Anastasia Tibbetts, nka "Brooks," was a DHS employee, acting within the scope of her employment or duties. Tibbetts supervised Chapman.

4.      Defendant, Kassidy O'Brien, was a DHS employee, acting within the scope of her employment or duties. O'Brien was a caseworker for J.C. and Z.C.

5.      Defendant, Erin Lane, was a DHS employee, acting within the scope of her employment and duties. Lane supervised O'Brien.

2 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

6.      Defendant, the Oregon Department of Human Services ("DHS") was responsible for the delivery and administration of federal and state programs relating to the provision of foster care services. DHS had physical and legal custody of J.C. Entrusted with guardianship, DHS had the duty to protect J.C.'s legal interests.

7.      DHS is liable under *respondeat superior* and through the Oregon Tort Claims Act for the acts and omissions of the individual Defendants and Duncan-Raygosa.

8.      In the course of their respective agency and employment relationships with DHS, all Defendants and Duncan-Raygosa acted for and on behalf of one another and they are jointly and severally liable.

9.      Defendants Jane or John Does 1-5 are attorneys, caseworkers, caseworker-supervisors, certifiers, certification supervisors, child protective services workers, directors, officers, managers and others who engaged in constitutional deprivations, statutory violations and/or torts, and/or abetted and aided in the alleged constitutional deprivations, statutory violations and/or torts. Their true identities and the nature of their involvement remain unknown to Plaintiff, but will become known as formal discovery progresses.

* * *

**JURISDICTION**

10.     The Court has jurisdiction of this civil action under 28 USC §§ 1331 and 1343(a), as this action arises under the Civil Rights Act, 42 USC §§ 1983 and 1988; and, in part, 28 USC §1332. The Court also has supplemental jurisdiction under 28 USC §1367(a).

* * *

**FACTUAL ALLEGATIONS**

11.     The State of Oregon ("Oregon") protects children who cannot protect themselves

3 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

from abuse and maltreatment.

12.    As *parens patriae*, Oregon has the power to involuntarily remove a child from an abusive household and place her into foster care.

13.    The act of removal and placement is often traumatic to the child. The child is defenseless and vulnerable to abuse. She is rendered dependent on Oregon to protect her safety and well-being.

14.    Under the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), Oregon was eligible to receive federal reimbursement for foster care maintenance payments made on behalf of eligible children in consideration for the creation of an approved plan for foster care and adoption assistance (i.e., the "State plan"). *See* 42 USC §671(a); *see also* 42 USC §672(a)(1),(2).

15.    The State plan designated DHS as the state authority responsible to establish and maintain standards for foster family homes, including safety and protection of civil rights. *See* 42 USC §671(a)(10).

16.    DHS promulgated standards for the certification of individuals seeking a certificate of approval to operate a foster home.

17.    All such individuals were required to possess and demonstrate certain abilities, characteristics and qualifications that bear on child safety. These included *inter alia* (1) sound judgment, responsibility, stability and emotional maturity; (2) the ability to maintain conditions in the home that provide for the safety, health and wellbeing of the child; (3) the physical and mental capacity to safely provide foster care services for a child; and (4) a willingness to provide protected health information and/or participate in an expert evaluation.

18.    DHS knew that heightened scrutiny of foster care applicants and providers was

4 – <u>PROPOSED FIRST AMENDED </u>COMPLAINT

necessary to protect defenseless and vulnerable foster children from abuse.

19.    DHS has been repeatedly sued in federal and state courts in connection with its failure to properly certify and re-certify its foster care providers, its failure to properly monitor foster care providers and to maintain appropriate professional boundaries with them, and for its concomitant failure to protect child safety. DHS has paid, and has been ordered to pay, significant sums to resolve many of these claims and lawsuits.

20.    DHS has been audited by the Secretary of the U.S. Department of Health and Human Services and by the Oregon Secretary of State ("SOS"). The respective audits identified myriad deficiencies, errors, and omissions relating to DHS's delivery and administration of Oregon's foster care program. The audits were critical of DHS's recruitment, retention, supervision and training of its foster care providers, and noted DHS's inability to protect child safety. The SOS has been critical of DHS's organizational culture and lack of accountability.

21.    In response to the repeated lawsuits, audits and public outcry, DHS shuffled numerous officers and managers and repeatedly pledged and/or promised to undertake corrective actions.

22.    DHS adopted the Structured Analysis Family Evaluation Home Study ("SAFE Study") methodology.

23.    DHS relied on the SAFE Study to direct assessment inquiry and to elicit information from foster care applicants necessary to meet the certification standards. DHS knew that the failure to correctly utilize SAFE, or haphazard application of its methodology, could impact child safety.

24.    In approximately February 2016, DHS recruited Duncan-Raygosa to serve as certified foster care providers for non-relative children. DHS employed the SAFE Study to assess

5 – PROPOSED FIRST AMENDED COMPLAINT

Duncan-Raygosa's fitness to serve as foster care providers.

25.    Duncan was abandoned by her father at an early age and raised by a single mother who utilized physical discipline – in the form of whipping – as punishment. Duncan lacked the ability to understand whether and to what extent she had herself suffered sexual trauma. She had never maintained employment.

26.    Raygosa came from a family of origin with extreme deprivation and trauma. Raygosa's mother was only 16 years old at the time of his birth. His father, in his twenties at the time, abandoned him and left him with a mother unable to meet his needs. Raygosa eventually came to live with grandparents. Raygosa weighed approximately 340 pounds and suffered from medical ailments.

27.    On information and belief, in 2012 Duncan-Raygosa were involved in and/or questioned in connection with the death of a three-year-old female child in or around Fresno, California, where they had resided prior to relocating to Oregon. The child's death was considered suspicious by emergency medical professionals who made abuse reports on her behalf. Raygosa was later ordered by a California Court to have no contact with the child's older brother.

28.    Duncan-Raygosa relocated to Oregon in 2015. Duncan-Raygosa claimed that they relocated to Oregon to care for Raygosa's dying mother. But Raygosa's mother had died in 2010.

29.    Close in time to their arrival in Oregon, Duncan-Raygosa attempted but were unable to become certified foster parents through a Native American tribe.

30.    Duncan-Raygosa had no friends or family connections in Oregon, and lacked a support system to assist in caring for children.

31.    Duncan-Raygosa were accompanied by an adult son and two small children. Duncan-Raygosa identified the adult son as both Raygosa's "stepson" and his biological child.

6 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

They claimed that the two small children were apparently a niece and nephew who were "adopted." Duncan-Raygosa had no legal documentation to support these claimed familial relationships. Duncan-Raygosa could not identify when they were married.

32.    DHS knew that Raygosa both preferred and requested to foster female children.

33.    DHS knew or suspected that Duncan-Raygosa were unfit to serve as foster care providers, yet issued its first Certificate of Approval ("COA") authorizing Duncan-Raygosa to operate a foster home for non-relative children in July 2016.

34.    DHS removed J.C. and Z.C. from their family of origin and placed them into the Duncan-Raygosa foster home in July of 2016, prior to the completion of their SAFE Study.

35.    J.C. had a special relationship with Oregon, and all defendants' conduct posed a state-created danger.

36.    J.C. and Z.C. were traumatized and DHS knew and/or should have known that J.C. and Z.C would require a specialized level of care, and that Duncan-Raygosa were unfit to provide the level of care necessary to safely parent them.

37.    Raygosa (age 44) was immediately infatuated with J.C. (age 9). Both he and Duncan urged J.C. to call them "mom" and "dad," and discussed wanting to adopt her from the outset.

38.    In approximately August of 2016, Duncan-Raygosa expressed concerns about Z.C.'s behavior in the home.

39.    During an initial screening by phone with Duncan-Raygosa following from the apparent concerns, J.C. began to disclose possible sexual abuse by "dad." Duncan-Raygosa quickly terminated the call. DHS failed to make diligent attempts to follow up on the disclosure, omitted J.C.'s initial disclosure from the screening report, and failed to investigate J.C.'s true

7 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

condition in the home.

40.     In approximately October September 2016, a medical provider contacted the DHS child abuse hotline to report medical neglect regarding Duncan-Raygosa's purported niece and nephew.

41.     DHS assigned a worker to respond to the report, but the investigation languished for months. Duncan-Raygosa displayed a reluctance to cooperate in the assessment and answer basic questions. DHS failed to timely investigate the reasons for Duncan-Raygosa's failure to meet the medical needs of those children.

42.     In the same timeframe, DHS knew and/or was aware that Duncan-Raygosa were discouraging J.C. from having contact with protective adults and impeding J.C.'s and Z.C.'s ability to have visits with their mother. DHS also knew and/or was aware that J.C. began to express that she no longer wanted to be identified by her given name; she wanted instead to be called by a different name and for Duncan-Raygosa to adopt her. DHS failed to investigate J.C.'s true condition in the home in response to these signs.

43.     By November 2016, Z.C. was exhibiting signs and symptoms of distress and neglect, which included bed-wetting, "lying," and threatening to commit suicide. DHS failed to investigate Z.C.'s true condition in the home in response to these signs.

44.     In December 2016, notwithstanding allegations of medical neglect, DHS amended the COA to allow for five foster children in addition to the purported niece and nephew, their adult son and Raygosa-Duncan. This approval allowed ten occupants in Duncan-Raygosa's small home.

45.     In connection with this overfill, DHS newly placed additional sets of foster sibling groups into the Duncan-Raygosa home.

46.     By end of year 2016, DHS had received multiple additional calls to the child abuse

8 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

hotline regarding the foster children. One child's hair was singed. Other high-needs children were left unattended for extended periods of time.

47. DHS knew that children placed in the home presented with persistent rashes and poor hygiene.

48. DHS placed the Duncan-Raygosa home on a so-called "inactive referral status" and removed the other children from the home to protect their safety. Yet, DHS permitted J.C. and Z.C. to remain in the unsafe home and let Duncan-Raygosa take J.C. with them on an unsupervised two-week "vacation" away from the home.

49. In January 2017, upon her return from the "vacation," J.C.'s condition had further deteriorated: she began exhibiting signs of severe emotional distress and abuse, which included eating problems and hair loss. Commensurate with those signs, DHS knew and/or was aware that J.C. began referring to her mother by name, rather than as "mom." She voiced that she did not want to return to her mother, and that she wanted Duncan-Raygosa to adopt her. DHS knew and/or suspected that Duncan-Raygosa were coaching or grooming J.C. DHS permitted Duncan-Raygosa to terminate all of J.C.'s subsequent visitation with her mother and isolate her from her natural supports.

50. Consistent with their preference for little girls, Duncan-Raygosa requested the removal of boys from the home, and complained repeatedly to DHS about Z.C.'s behavior, blaming him for problems and illness in the home.

51. Notwithstanding concerns about J.C.'s psychological condition and isolation, and Duncan-Raygosa's concurrent scapegoating of Z.C., DHS lifted the "inactive referral status" in approximately March 2017.

52. Subsequently, DHS placed two more siblings into the Duncan-Raygosa home. At

9 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

the time of placement, the two children had no visible bruises or injuries and were described as well-behaved, sweet kids. Duncan-Raygosa displayed a bizarre apathy toward these children: They failed to acknowledge the children or make any effort to learn their names for the entirety of their confinement. DHS received reports of concern about Duncan-Raygosa's conduct.

53.    When the siblings presented at the DHS facility for parental visitation, the young girl appeared to have a black eye and facial scratches and the young boy exhibited physical trauma to the top of his head and also had facial scratches. The injuries were consistent with "suspicious physical injuries" under ORS 419B.022 – 024. One child reported that he was beaten with a hanger while Duncan sat in the living room and said nothing. DHS staff described the children as "pretty banged up."

54.    Duncan-Raygosa claimed that the two siblings had the injuries upon placement, which DHS knew or suspected was false.

55.    DHS again placed the Duncan-Raygosa home on inactive referral status, pending further investigation and removed the siblings from the Duncan-Raygosa home to protect their safety.

56.    In the course of the investigation, DHS ignored Z.C.'s report that Duncan would pull him around by his hair as discipline, and caused J.C. and Z.C. to remain confined in the unsafe home.

57.    In June 2017, Z.C. (age 6) escaped from the home by managing to climb over a tall backyard fence. He was later found in immediate danger, wandering alone in a lane of traffic along a highway, over a mile away from the Duncan-Raygosa home, in 90+ degree heat, wearing only shorts and a pair of flip flops.

58.    The police questioned Duncan-Raygosa's failure to timely discover Z.C.'s absence

10 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

and make a missing person report.

59.    Duncan-Raygosa requested that DHS remove Z.C. from the home. Upon learning that J.C. would then also have to be removed, Duncan-Raygosa relented, and begged to continue providing foster care for both children. DHS deferred to Duncan-Raygosa and caused J.C. to remain confined in the unsafe home.

60.    Subsequently, DHS characterized J.C.'s and Z.C.'s enduring confinement in the Duncan-Raygosa home as "unnecessary compound trauma." Under that rubric, DHS then removed J.C. and Z.C. and placed them into separate homes. Both J.C. and Z.C. exhibited an almost immediate improvement in mood and affect upon placement in their respective environments.

61.    Throughout their confinement, DHS had failed to disclose and/or obfuscated notice and knowledge of the concerns in the Duncan-Raygosa home.

62.    DHS facilitated supervised visits between J.C. and Z.C. and Duncan-Raygosa at the DHS facility through October 2017.

63.    DHS observed Raygosa's fixation with J.C.'s physicality and his inattentiveness toward Z.C. DHS knew and permitted Duncan-Raygosa to continue nightly calls to J.C. during which they continued their grooming and manipulation of J.C. In one visit, Raygosa used his cell phone to show J.C. a photo of her then-foster home, which was understood to be kept confidential and protected, and warned J.C. that he could always find her.

64.    In approximately October 2017, J.C. disclosed that Raygosa had repeatedly sexually abused her in the Duncan-Raygosa home. Following J.C.'s disclosure, Duncan-Raygosa fled from Oregon. Raygosa was later arrested in Oklahoma and extradited to Oregon for trial.

65.    Shortly after J.C.'s disclosure, DHS placed her in the S-M foster home into which Z.C. had also been placed. DHS had certified S-M on an "emergency basis" for children unknown

11 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

to them, when it knew and/or suspected that Ms. S had an unmitigated sexual victimization history and had exposed her children to a familial sex offender, and that Mr. M watched pornography on his phone. DHS knew and/or suspected that the S-M home could not provide the necessary care and support for a child sexual abuse victim such as J.C. DHS overfilled the S-M foster home, and received multiple reports of abuse and neglect occurring in the home, including inappropriate physical discipline, emotional abuse and sexual abuse.

66.    Meanwhile, DHS withheld pertinent investigative facts concerning J.C.'s disclosure of Joe Raygosa's sexual abuse from J.C.'s treating providers, advocates and the court having wardship.

66.67.  In February of 2018, Raygosa was indicted by Grand Jury on four counts of Sexual Abuse in the first degree, two counts of Unlawful Sexual Penetration in the first degree, four counts of Sodomy in the first degree, and two counts of Rape in the first degree. A unanimous jury convicted Raygosa on all counts.

* * *

## CLAIMS FOR RELIEF

### I.    CIVIL RIGHTS CLAIMS

### FIRST CLAIM FOR RELIEF:  42 USC §1983 - Deprivation of Civil Rights

### (Defendant Chapman and Does)

67.68.   Plaintiff incorporates all prior paragraphs as though fully realleged.

68.69.  42 USC §1983 provides in relevant part that every person who under color of any statute, ordinance, regulation, custom, or usage, subjects or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other

12 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

proceeding for redress.

69.70.  Plaintiff had an established constitutional right to safe foster care, including adequate medical care, social work supervision and protection from infliction of harm by a foster care provider.

70.71.   As the certifier, Chapman had a duty to protect the safety of all children in the Duncan-Raygosa home, including Plaintiff.

71.72.  Chapman had the duty to investigate Duncan-Raygosa and obtain and evaluate information relating to their fitness to serve as foster care providers. That duty required Chapman to subject Duncan-Raygosa to the SAFE Study methodology, and to not render herself ignorant or unaware of relevant facts (i.e., willful blindness).

72.73.  Chapman knew and/or suspected that Duncan-Raygosa gave false or conflicted reasons for their motivation to relocate to Oregon. Chapman knew they had no family or community support systems in the area, lacked legal documentation for children in their physical custody and that they produced no documentation to explain the nature of their own relationship. Chapman knew that both Duncan and Raygosa had personal family histories of extreme trauma and loss, that Duncan had never managed to maintain employment and that Raygosa suffered significant health issues. Chapman failed to investigate the reasons why Duncan-Raygosa did not achieve tribal certification and failed to elicit (or chose to ignore) information concerning Duncan-Raygosa's role in the life and death of the child in California and the basis of the court's non-contact order.

73.74.  Notwithstanding her knowledge and awareness that Duncan-Raygosa were unfit, Chapman recommended the issuance of a COA in July 2016. She immediately placed J.C. and Z.C. into that newly certified home, which she knew and/or suspected was a flawed placement

13 – PROPOSED FIRST AMENDED COMPLAINT

match.

~~74.~~75.  Chapman knew and/or was aware early on that Raygosa was infatuated with J.C. Chapman acquiesced in allowing J.C. to identify Raygosa as "dad," yet failed to investigate J.C.'s disclosure of sexual abuse by "dad." Chapman failed to follow up on J.C.'s disclosure and permitted Duncan-Raygosa to shield J.C. from agency contact following the abrupt disconnection.

~~75.~~76.  Chapman acquiesced in Duncan-Raygosa's continued isolation of J.C. through missed visits, feigned illness and rejection. Chapman ignored and/or failed to act upon Duncan-Raygosa's manipulation and grooming of J.C. to lie on their behalf, reject her mother and other protective adults, and seek adoption by Duncan-Raygosa. Chapman likewise ignored or failed to act upon Duncan-Raygosa's preference for little girls.

~~76.~~77. Chapman participated in the removals of the other foster children from the home due to concerns for their safety and wellbeing. Yet, Chapman caused J.C. and Z.C. to remain confined in the Duncan-Raygosa home when she knew and/or suspected that it was unsafe. ~~Following J.C.'s removal from the Duncan-Raygosa home, Chapman nonetheless acquiesced in the continued visitation of J.C. and Z.C. with Duncan-Raygosa.~~

78.     Chapman emergently certified and/or recertified S-M to serve as foster care providers for J.C. and other children when she knew and/or suspected that they were unfit. Chapman knew and/or suspected that a child's disclosure of sexual abuse would likely trigger Ms. S's own history of unmitigated sexual abuse, and that S would be unfit to provide proper care and support to J.C. In addition, Chapman knew and/or was aware of S-M's inappropriate and ongoing use of physical discipline as punishment.

~~77.~~79.  Chapman acted with deliberate indifference to J.C.'s recognized liberty interests and rights in one or more of the following ways:

14 – PROPOSED FIRST AMENDED COMPLAINT



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

a) Failing to properly determine Duncan-Raygosa's fitness to serve as foster care providers;

b) Certifying Duncan-Raygosa to operate a foster home;

c) Acquiescing in and/or approving Duncan-Raygosa's violations of supervision and reunification plans;

d) Failing to act on Duncan-Raygosa's manipulation and grooming of J.C.;

e) Failing to investigate and/or ignoring abuse, maltreatment and neglect occurring in the Duncan-Raygosa home;

f) Failing to investigate J.C.'s true condition in the Duncan-Raygosa home;

g) Failing to timely remove J.C. from the Duncan-Raygosa home;

h) Failing to timely suspend or revoke the Duncan-Raygosa COA;

i) ~~Acquiescing in Duncan-Raygosa's continued visitation and contacts with J.C. following her removal from the home.~~

a) Failing to properly determine S-M's fitness to serve as foster care providers;

b) Certifying and/or recertifying S-M to operate a foster home;

c) Placing J.C. in the S-M foster home with knowledge that S-M could not provide appropriate support and care to a victim of sexual abuse;

~~a)~~d) Failing to investigate and/or acquiescing in S-M's inappropriate use of physical discipline as punishment and other abuse occurring in the foster home.

~~78.~~80. Chapman's conduct was a proximate cause of Plaintiff's injury and damage, some or all of which is permanent.

~~79.~~81. Plaintiff suffered non-economic injury and damage including fear, confusion, severe emotional distress and psychological injury, physical injury; disruption of attachment,

15 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

cognitive and developmental delays, difficulty forming mature and positive personal relationships, loss of self-esteem, lack of trust and suspicion of caregivers, and/or physical impairment and disability.

80.82.  Plaintiff seeks non-economic damages in the amount of $15,000,000.

81.83.  Plaintiff seeks economic damages in an amount to be proven at trial.

82.84.  Plaintiff seeks an award of punitive damages in the amount of $25,000,000.

83.85.  Plaintiff seeks her reasonable attorney fees, costs, and disbursements, under 42 USC §1988.

**SECOND CLAIM FOR RELIEF:  42 USC §1983 – Deprivation of Civil Rights**

**(Defendant Tibbetts, nka "Brooks" and Does)**

84.86.  Plaintiff incorporates all prior paragraphs as though fully realleged.

85.87.  As the certification supervisor, Tibbetts/Brooks had a duty to protect the safety of all children in the Duncan-Raygosa home, including J.C.

86.88.  Tibbetts/Brooks signed the COA authorizing Duncan-Raygosa to operate a foster home and placed and/or acquiesced in the placement of J.C. and Z.C. into the Duncan-Raygosa home on or about July 18, 2016. Tibbetts/Brooks approved and verified Chapman's SAFE Study of Duncan.

87.89.  Tibbetts/Brooks knew and/or was aware of reports from medical providers of neglect to Duncan-Raygosa's "nephew," but nevertheless issued another COA on or about December 8, 2016, allowing Duncan-Raygosa to increase their capacity to five foster children. Tibbetts/Brooks was aware of child abuse hotline reports that quickly followed from her overfilling the home.

88.90.  Tibbetts/Brooks knew and/or was aware of the physical injuries suffered by other

16 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

children in the Duncan-Raygosa home and participated in their removal because it was unsafe. Yet, Tibbetts/Brooks acquiesced in and/or approved of keeping J.C. and Z.C. confined there.

89.91. Tibbetts/Brooks knew that Duncan-Raygosa's explanation of the events surrounding Z.C.'s disappearance in June 2017 was suspicious and/or inconsistent with the facts known to DHS. Yet, Tibbetts/Brooks extended J.C.'s and Z.C.'s confinement in the Duncan-Raygosa home.

90.92. Tibbetts/Brooks approved and/or acquiesced in the continued visitation of J.C. and Z.C. with Duncan-Raygosa following their removal from the home when she knew and/or suspected that continued contact was unsafe and detrimental to J.C.

91.93. Tibbetts/Brooks acted with deliberate indifference to J.C.'s recognized liberty interests and rights in one or more of the following ways:

a)  Failing to adequately train Chapman;

b)  Failing to properly supervise Chapman;

c)  Certifying Duncan-Raygosa to operate a foster home;

d)  Approving and/or acquiescing in the placement of J.C. into the Duncan-Raygosa home;

e)  Failing to ensure that J.C. was safe in the Duncan-Raygosa home;

f)  Failing to investigate and/or ignoring abuse, maltreatment and neglect occurring in the Duncan-Raygosa home;

g)  Acquiescing in and/or approving Duncan-Raygosa's violation of supervision and reunification plans;

h)  Overfilling the Duncan-Raygosa home;

i)  Acquiescing in and/or approving the continued confinement of J.C. in the Duncan-

17 – PROPOSED FIRST AMENDED COMPLAINT

Raygosa home;

j)  Failing to timely remove J.C. from the Duncan-Raygosa home;

k)  Failing to timely suspend or revoke the Duncan-Raygosa COA;

l)  ~~Acquiescing in Duncan-Raygosa's continued visitation and contacts with J.C. following her removal from the home~~;

l)  Failing to properly determine S-M's fitness to serve as foster care providers;

m) Approving the certification and/or recertification of S-M to operate a foster home;

n)  Acquiescing in the placement of J.C. in the S-M foster home with knowledge that S-M could not provide appropriate support and care to a victim of sexual abuse;

o)  Failing to investigate and/or acquiescing in S-M's inappropriate use of physical discipline as punishment and other abuse occurring in the foster home.

~~92.~~94.  Tibbetts's/Brooks' conduct was a proximate cause of Plaintiff's injury and damage, some or all of which is permanent.

**THIRD CLAIM FOR RELIEF:  42 USC §1983 - Deprivation of Civil Rights**

**(Defendant O'Brien and Does)**

~~93.~~95.  Plaintiff incorporates by reference all previous paragraphs as though fully realleged.

~~94.~~96.  O'Brien was a caseworker for J.C. and Z.C. from approximately July 2016 and beyond May 2018.

~~95.~~97.  O'Brien had a duty to protect the safety of all children in the Duncan-Raygosa home, including J.C.

~~96.~~98.  O'Brien was required to have meaningful face-to-face contacts with J.C. in the home and timely review facts and information pertaining to J.C.'s ongoing emotional, mental and

18 – PROPOSED FIRST AMENDED COMPLAINT

physical condition. O'Brien was required to monitor Duncan-Raygosa's ability to provide safe care and/or whether the present demands exceeded their ability to provide such care and support reunification.

97.99.  O'Brien knew and/or suspected that Duncan-Raygosa were exerting undue influence over J.C. and repeatedly violated supervision plans and failed to support reunification. O'Brien knew that J.C. exhibited signs and symptoms consistent with abuse, maltreatment and severe distress including a deteriorating mental and physical state, rejection of her identity, anxiety, hair loss and prolonged illness.

100.    O'Brien knew that various children were removed from the Duncan-Raygosa foster home due to concerns of physical abuse and neglect, yet caused J.C. to remain in the home, which she knew and/or suspected was unsafe.

101.    O'Brien was made aware that J.C. disclosed Joe Raygosa's sexual abuse occurring in the Duncan-Raygosa foster home, that the disclosure was detailed and credible and that Duncan-Raygosa had fled with their purported niece and nephew. Acting in self-interest, O'Brien failed to familiarize herself with J.C.'s forensic child abuse evaluation and other supportive facts and instead maintained that J.C.'s disclosure was untruthful.

102.    O'Brien exerted influence over the CPS assessment of Raygosa's sexual abuse, and advocated for a disposition of "unable to determine," calling into question the credibility of J.C.'s disclosure. O'Brien then withheld the fact of Raygosa's sexual abuse from the juvenile court, and withheld documents relaying the nature, scope and severity of J.C.'s abuse from parties to the juvenile proceeding and from J.C.'s therapist and treating psychologist.

103.    When O'Brien became aware of the prospect of a criminal trial against Joe Raygosa for the acts of sexual abuse perpetrated against J.C., O'Brien prepared a case note suggesting that

19 – PROPOSED FIRST AMENDED COMPLAINT


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

J.C.'s disclosure was untruthful and that her biological father had abused her. O'Brien met with the prosecuting attorney and offered to gather exculpatory evidence, including the case note she had prepared.

104.    O'Brien situated herself as J.C.'s support person at the criminal trial in place of J.C.'s therapist and J.C.'s mother. O'Brien characterized J.C.'s trial testimony as "performative" and told various providers and parties of her belief that J.C. had lied under oath. Without informing J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about the case note she created after his arrest.

98.105.    Notwithstanding Raygosa's conviction, O'Brien continued to tell co-workers and service providers that she doubted J.C.'s disclosure. O'Brien's continued efforts to undermine the credibility of J.C.'s disclosure betrayed J.C.'s confidence and trust, impacted her health and wellbeing and undermined her ability to receive proper care for the sexual abuse.

99.106.    O'Brien acted with deliberate indifference to J.C.'s recognized liberty interests and rights in one or more of the following ways:

a)  Failing to protect the safety of J.C.;

b)  Failing to investigate and/or ignoring Duncan-Raygosa's exercise of undue influence over J.C.;

c)  Failing to act upon and/or ignoring signs and symptoms that J.C. was being abused in the Duncan-Raygosa home;

d)  Failing to investigate and/or ignoring the abuse, maltreatment and neglect in the Duncan-Raygosa home;

e)  Acquiescing in Duncan-Raygosa's manipulation and grooming of J.C.;

f)  Acquiescing in Duncan-Raygosa's violations of supervision and reunification

20 – PROPOSED FIRST AMENDED COMPLAINT



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

plans;

g) Encouraging and/or acquiescing in J.C.'s isolation from her natural supports, and including treating professionals;

h) Failing to timely remove J.C. from the Duncan-Raygosa home;

i) ~~Acquiescing in continued visitation and contacts with J.C. following her removal from the home.~~

i) Engaging in conduct to undermine J.C.'s disclosure of Raygosa's sexual abuse and/or create exculpatory evidence to favor Raygosa's defense;

j) Faling to timely inform and/or withholding information from the parties in J.C.'s dependency proceeding;

k) Failing to timely inform and/or withholding information from J.C.'s advocates, natural supports, and treatment providers;

l) Failing to recognize her own bias and conflict of interest;

m) Acquiescing in the placement of J.C. in the S-M foster home;

n) Failing to support J.C.'s mental and emotional needs in the S-M foster home.

~~100.~~107.    O'Brien's conduct was a proximate cause of injury and damage to Plaintiff ~~J.C.,~~ some or all of which is permanent.

## FOURTH CLAIM FOR RELIEF:  42 USC §1983 - Deprivation of Civil Rights

## (Defendant Lane and Does)

~~101.~~108.    Plaintiff incorporates all previous paragraphs as though fully realleged.

~~102.~~109.    On information and belief, Lane supervised O'Brien in connection with J.C.'s and Z.C.'s placement in the Duncan-Raygosa home, which persisted through Raygosa's criminal prosecution.

21 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

103.110.    Lane acquiesced in and/or approved O'Brien's failure to assess and document Duncan-Raygosa's ability to provide safe care to these children.

104.111.    Lane acquiesced in and/or approved O'Brien's failure to investigate J.C.'s overidentification with Duncan-Raygosa; she knew and/or suspected that Duncan-Raygosa were exerting undue influence over J.C. and that Raygosa-Duncan worked against the reunification plan.

105.112.    Lane knew that J.C. exhibited signs of extreme distress in the Duncan-Raygosa home, including a rejection of her identity, anxiety, hair loss and protracted illness. Lane knew of and/or ignored reports of abuse and maltreatment of other children occurring in the Duncan-Raygosa home.

106.113.    Defendant Lane acted with deliberate indifference to J.C.'s recognized liberty interests and rights in one or more of the following ways:

a) Failing to properly train O'Brien;

b) Failing to properly supervise O'Brien;

c) Failing to protect the safety of J.C.;

d) Acquiescing in and/or approving the failure to investigate J.C.'s overidentification with Duncan-Raygosa;

e) Acquiescing in and/or approving the failure to investigate Duncan-Raygosa's fixation on J.C.;

f) Acquiescing in and/or ignoring evidence of abuse, maltreatment and neglect in the Raygosa-Duncan home;

g) Permitting and/or ignoring Duncan-Raygosa's violations of supervision and reunification plans;

h) Acquiescing in and/or ignoring evidence of abuse, maltreatment and neglect in the

22 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Raygosa-Duncan home;

i)  Encouraging and/or acquiescing in J.C.'s isolation from her natural supports, including treating professionals;

j)  Failing to timely remove and/or authorize the timely removal of J.C. from the Duncan-Raygosa home;

k)  Failing to remove J.C. from the Raygosa-Duncan home upon notice of improper care and neglect toward children in the home;

l)  Failing to remove J.C. from the Raygosa-Duncan home upon notice of unexplained physical injury toward children in the home;

m) ~~Acquiescing in Duncan-Raygosa's continued visitation and contacts with J.C. following her removal from the home.~~

e)  Acquiescing in and/or acting in complicity with O'Brien to undermine J.C.'s disclosure of Raygosa's sexual abuse;

f)  Acquiescing in and/or acting in complicity with O'Brien's attempt to create exculpatory evidence to favor Raygosa's defense;

g)  Acquiescing in withholding information from the parties in J.C.'s dependency proceeding;

h)  Acquiescing in withholding information from J.C.'s advocates, natural supports, and treatment providers;

i)  Failing to recognize her own bias and conflict of interest;

j)  Acquiescing in the placement of J.C. in the S-M foster home;

k)  Failing to support J.C.'s mental and emotional needs in the S-M foster home.

~~107.~~114.    Lane's conduct was a proximate cause of injury and damage to J.C., some

23 – PROPOSED FIRST AMENDED COMPLAINT



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

or all of which is permanent.

* * *

## II.    STATE CLAIMS

### FIFTH CLAIM FOR RELIEF:  Negligence

### (Defendant DHS)

108.115.    Plaintiff incorporates by reference all prior paragraphs as though fully realleged, with the exception of ¶¶ 84-85.

109.116.    DHS is liable for its tortious conduct and it is vicariously liable for the tortious conduct of its officers, employees, and agents acting within the scope of their employment or duties.

110.117.    Each and every act of physical and/or sexual abuse and/or exposure to physical and sexual abuse and/or each and every act of child abuse of Plaintiff was a separate occurrence and cause of Plaintiff's injuries and damages.

111.118.    DHS's duty to protect Plaintiff's safety and bodily integrity was non-delegable.

112.119.    DHS acted negligently and/or recklessly in one or more of the following particulars:

    a)  Failing to properly train Chapman;

    b)  Failing to properly supervise Chapman;

    c)  Failing to properly train Tibbetts;

    d)  Failing to properly supervise Tibbetts;

    e)  Certifying Duncan-Raygosa when it knew and/or should have known that they were unfit;

24 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

f)  Placing J.C. in the Duncan-Raygosa home that it knew and/or should have known could not meet her needs;

g)  Failing to adequately protect J.C.'s safety in the Duncan-Raygosa home;

h)  Failing to properly train O'Brien;

i)  Failing to properly supervise O'Brien;

j)  Failing to properly train Lane;

k)  Failing to properly supervise Lane;

l)  Failing to timely remove J.C. and protect the safety of J.C.;

m) Failure to timely revoke or suspend the Duncan-Raygosa COA;

n)  ~~Acquiescing in Duncan-Raygosa's continued visitation and contacts with J.C. following her removal from the home~~;

n)  Failing to properly determine S-M's fitness to serve as foster care providers;

o)  Certifying and/or recertifying S-M to operate a foster home;

p)  Placing J.C. in the S-M foster home;

q)  Failing to properly monitor the care and condition of the children in the S-M foster home;

r)  Failing to timely remove J.C. from the S-M foster home;

~~n)~~s)      Failing to protect J/C.'s safety and emotional wellbeing in the S-M foster home.

~~113.~~120.      DHS's negligence was a substantial factor in the cause of Plaintiff's injury and damage, some or all of which may be permanent.

**SIXTH CLAIM FOR RELIEF:  Negligence *per se***

**(Defendant DHS)**

25 – PROPOSED FIRST AMENDED COMPLAINT



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

114.121.    Plaintiff incorporates by reference ¶ 115 as though fully realleged.

115.122.    DHS was negligent *per se* in one or more of the following particulars:

a) Failing to place J.C. in the least physically restrictive environment that appropriately met her needs, in violation of OAR 413-010-0180(1)(a);

b) Failing to provide J.C. appropriate care and supervision, and discipline, in violation of OAR 413-010-0180(1)(c);

c) Failing to provide J.C. routine and necessary medical, dental, and mental health care and treatment, in violation of OAR 413-010-0180(1)(d);

d) Failing to protect J.C. from physical and sexual abuse, emotional abuse, neglect, and exploitation, in violation of OAR 413-010-0180(1)(f);

e) Failing to provide J.C. services designed for reunification with her parent, in violation of OAR 413-010-0180(1)(g);

f) Failing to ensure visitation and communication with J.C.'s parent, siblings and members of her family, in violation of OAR 413-010-0180(1)(k);

g) Failing to monitor the Duncan-Raygosa home, and/or appropriately make and document contacts, in violation of OAR 413-080-0059;

h) Failing to place J.C. with a person or family of good standing for care or services, in violation of ORS 418.015(3).

116.123.    DHS's negligence *per se* was a substantial factor in the cause of Plaintiff's injury and damage, some or all of which may be permanent.

* * *

**PRAYER**

Plaintiff prays for judgment and relief in her favor and against defendants as follows:

26 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

1.     On the First Claim for Relief: **42 USC §1983 – Deprivation of Civil Rights,** against Defendant Chapman and Does, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an amount to be proven at the time of trial, and reasonable attorney fees, costs and disbursements, and punitive damages in the amount of $25,000,000.

2.     On the Second Claim for Relief: **42 USC §1983 – Deprivation of Civil Rights,** against Defendant Tibbetts and Does, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an amount to be proven at the time of trial, and reasonable attorney fees, costs and disbursements, and punitive damages in the amount of $25,000,000.

3.     On the Third Claim for Relief: **42 USC §1983 – Deprivation of Civil Rights,** asserted against Defendants O'Brien and Does, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an amount to be proven at the time of trial, and reasonable attorney fees, costs and disbursements, and punitive damages in the amount of $25,000,000.

4.     On the Fourth Claim for Relief: **42 USC §1983 – Deprivation of Civil Rights,** asserted against Defendants Lane and Does, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an amount to be proven at the time of trial, and attorney fees, costs and disbursements, and punitive damages in the amount of $25,000,000.

**State Claims:**

5.     On the Fifth Claim for Relief: **Negligence**, asserted against Defendant DHS, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an amount to be proven at the time of trial, and costs and disbursements.

6.     On the Sixth Claim for Relief: **Negligence *per se***, asserted against Defendant DHS, Plaintiff seeks non-economic damages in the amount of $15,000,000, economic damages in an

27 – PROPOSED FIRST AMENDED COMPLAINT

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

amount to be proven at the time of trial, and costs and disbursements.

Plaintiff seeks further necessary or proper relief as the Court may deem equitable and just.

Dated:  August __ , 2024

RIZZO BOSWORTH ERAUT PC

By:_____
Steven Rizzo OSB No. 840853
Mary D. Skjelset OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

Caitlin V. Mitchell, OSB #123964
Johnson Johnson Lucas & Middleton PC
975 Oak Street, Ste. 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
cmitchell@justicelawyers.com

ATTORNEYS FOR PLAINTIFF

28 – PROPOSED FIRST AMENDED COMPLAINT



UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>          Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>          Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>          Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>          Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon.  I am over the age of eighteen years and not a party to the subject cause.  My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof: **Declaration of Steven Rizzo in Support of Plaintiff's Motion to File First Amended Complaint**

<u>**VIA EMAIL**</u>

| |
|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: jill.schneider@doj.state.or.us**<br>**Email: nicholas.mancuso@doj.state.or.us**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

<u>**VIA EMAIL & US MAIL**</u>

Lauren Blaesing
Harry B. Wilson
Alexandra Rhee
Hannah Hoffman
Chad Naso
Jeffrey Edelson
Markowitz Herbold PC
1455 SW Broadway
Ste. 1990
Portland, OR. 97201
Ph: 503-295-3085
Email: laurenblaesing@markowitzherbold.com
Email: harrywilson@markowitzherbold.com
Email: alexrhee@markowitzherbold.com
Email: hannahhoffman@markowitzherbold.com
Email: chadnaso@markowitzherbold.com
Email: jeffedelson@markowitzherbold.com
*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

Dated this 13th day of August, 2024.

          *s/Cheridan Carr*
          Cheridan Carr, Paralegal

1 – Certificate of Service