**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Alexandra L. Rhee, OSB #230770**
AlexRhee@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for State Defendants
and Third-Party Plaintiff*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| ETHAN LEVI, | Case No. 6:22-cv-01813-MK |
| Plaintiff, | **STATE DEFENDANTS' MOTION TO COMPEL DEPOSITION OF J.C.** |
| v. | ORAL ARGUMENT REQUESTED |
| KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOES 1-5; in their individual and/or official capacities, | EXPEDITED CONSIDERATION REQUESTED |
| Defendants. |  |
| OREGON DEPARTMENT OF HUMAN SERVICES, |  |
| Third-Party Plaintiff, |  |
| v. |  |
| JOE ALBERT RAYGOSA, |  |
| Third-Party Defendant. |  |

## INTRODUCTION

J.C. has critical, unique information regarding her claims.  In particular, J.C. knows about any prior disclosures she made to State Defendants about her sexual abuse in the Duncan-Raygosa home and J.C. knows about the injuries and impairments that her conservator has alleged are permanent and disabling, justifying her demand for $20 million in damages.  Federal courts across the country have held that minors with relevant information must sit for depositions, especially where the minor voluntarily put their testimony at issue by filing suit.  But Plaintiff has refused to make J.C. available for a deposition, absent a court order.  J.C. is seventeen years old and State Defendants will agree to appropriate limits on location and attendees to account for J.C.'s age.  Refusing to allow discovery of her relevant knowledge is neither appropriate or necessary.

## LOCAL RULE 7-1(a) CERTIFICATION

Counsel for Kim Chapman, Anastasia Tibbetts, Kassidy O'Brien, Erin Lane, and the Oregon Department of Human Services ("ODHS") (collectively, "State Defendants") certifies that following a contested hearing, the Court directed the filing of this motion.  State Defendants and J.C. were unable to resolve this dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure 37(a)(1), State Defendants respectfully move the Court for an order compelling J.C. to appear for a deposition in this action.  State Defendants' motion is supported by the Declaration of Lauren F. Blaesing ("Blaesing Decl.") and the exhibits attached thereto.

**MEMORANDUM**

**I.    Background.**

    **A.    Plaintiff's Complaint alleges that State Defendants knew about but failed to stop J.C.'s abuse eight years ago, and that she suffers unspecified, permanent medical conditions as a result.**

J.C. is seventeen years old and was in ODHS custody between the ages of nine and eleven because her biological parents were unable to care for her. J.C.'s resource parent, Joseph Raygosa, sexually abused her at some point during her time in care. J.C. will turn eighteen next year. (*See* 11/18/22 Complaint (Dkt. 1) ("Compl.") ¶ 37.) Mr. Raygosa was convicted in 2018 and is incarcerated for his offenses against J.C. (*Id.* ¶ 65.)

Ethan Levi, as conservator for J.C., filed this lawsuit on behalf of J.C. alleging that various ODHS officials failed to investigate and stop J.C.'s abuse. (*Id.* ¶¶ 39-42.) Plaintiff alleges that State Defendants knew of but ignored Mr. Raygosa's "abuse, maltreatment and neglect." (*See, e.g., id.* ¶¶ 76, 89-90, 97-98.) Plaintiff alleges that J.C.'s abuse at the hands of Mr. Raygosa caused J.C. to suffer various psychological injuries including "fear, confusion, severe emotional distress and psychological injury, physical injury, disruption of attachment, cognitive and developmental delays, difficulty forming mature and positive personal relationships, loss of self-esteem, lack of trust and suspicion of caregivers, and/or physical impairment and disability." (*Id.* ¶ 78.) And Plaintiff alleges that the conditions described above are "permanent" and thus intends to seek damages for current medical conditions even though the events in the Complaint occurred eight years ago. (*Id.* ¶ 77.) In sum, plaintiff seeks more

than $15 million in non-economic damages and an additional $5 million in punitive damages on behalf of J.C.[1]  (*Id.* ¶¶ 79-81.)

> **B.     In discovery, plaintiff has not provided information to substantiate the Complaint allegations regarding State Defendants' alleged knowledge of J.C.'s abuse or the nature of her injuries.**

The Complaint, in the First through Fourth Claims for Relief, alleges actual knowledge by State Defendants of the Raygosas' abuse of J.C.  State Defendants believe that the first time that J.C. revealed Mr. Raygosa's sexual abuse to ODHS was on October 9, 2017, when she disclosed the abuse to a foster parent.  (10/9/17 Email from Kim Chapman [DHS_LEVI_068708], Blaesing Decl. Ex. 1.)  J.C. left the Duncan-Raygosa household in July 2017, before this October 2017 disclosure.  Discovery to date has not revealed any factual basis for any prior disclosure.  The documents exchanged in discovery do not reveal any prior disclosures of sexual abuse by J.C. about Mr. Raygosa and no witness has testified to any such prior disclosures.

State Defendants have specifically requested in discovery the factual basis for the allegations in the Complaint that State Defendants allegedly knew about but failed to investigate concerns about the home.  Plaintiff has failed to provide discovery on this critical factual point with interrogatory responses being at best vague if not actively evasive.  (*See* 3/15/24 Pl's Resp. to Defs' First Set of Interrog. at 2-3, Blaesing Decl. Ex. 2.)  Plaintiff's Complaint is not ambiguous and asserts in multiple places that individual State Defendants failed to investigate or ignored maltreatment, abuse, and/or neglect.  However, simply cross-referencing the language in the Complaint allegations does not actually furnish a factual basis for the allegations, nor do

---

[1] Plaintiff has indicated that he intends to amend the complaint to increase the amount of punitive damages he is seeking to $25 million.

circular references to State Defendants' own interrogatory responses. (*See id*.) In the absence of any factual support for knowledge of J.C.'s sexual abuse prior to October 2017, at this Court's August 6, 2024 conference, State Defendants requested that plaintiff stipulate that October 2017 was the first time J.C. disclosed her abuse to ODHS. Plaintiff refused to stipulate while also refusing to identify any earlier disclosure. (*See* Pl's Interrog. Resp., Blaesing Decl. Ex. 2.)

Plaintiff has also failed to disclose or describe the ongoing injuries that J.C. has suffered because of her prior abuse. In response to an interrogatory asking for the facts and evidence supporting plaintiff's damages calculation, plaintiff responded in conclusory terms stating that J.C. suffered "pain and suffering" and "loss of enjoyment of life." (*Id.* at 4-5.) Plaintiff refused to provide any additional details, asserting that any conversation he had with J.C. or her family was privileged. (*Id.*) In his deposition, when asked for the factual basis for his assertion that J.C. suffered "extensive" and "lifelong" injuries, plaintiff again refused to respond about J.C.'s circumstances, citing privilege.[2] Plaintiff also cited privilege when asked about the facts supporting allegations of ongoing effects of Mr. Raygosa's abuse on J.C. or whether J.C. has been diagnosed with any psychological injuries or medical conditions.[3]

### C.    Plaintiff rejected State Defendants' offer to forego J.C.'s deposition.

Prior to filing this motion, at this Court's August 6, 2024 status conference, State Defendants offered to forego a deposition of J.C. if plaintiff (1) stipulated that J.C. will not

---

[2] (7/25/24 Levi Dep. at 40:7-40:21, Blaesing Decl. Ex. 3.) ("Q. Okay. So how -- what is the basis for your knowledge that the injuries are extensive and lifelong? A. Well, I don't think I can answer that because the answer would be privileged.")

[3] (*Id.* at 41:2-42:23.) ("Q. To your knowledge, has J.C. suffered any permanent injury as a result of that abuse? A. I mean, I think that's privileged too."); *see also id.* at 42:19-23. ("Q. Okay. Do you know if J.C. is currently receiving any treatment for any medical or psychological condition? A. Outside -- outside the bounds of the same objection that Mr. Rizzo made, I can't answer that.")

testify at trial; (2) stipulated that J.C. did not tell anyone at ODHS about her abuse by Mr. Raygosa until October 9, 2017; (3) agreed not to use statements from J.C. at trial (*e.g.*, videotaped interviews, prior testimony); and (4) agreed not to present expert testimony that relies on statements from J.C. at trial (*e.g.*, interviews, prior testimony).  Plaintiff rejected this offer.

## II.      Standard.

A party opposing a motion for discovery "carries the heavy burden of showing why discovery should be denied."  *Dence v. Wellpath, LLC*, No. 1:20-CV-00671-CL, 2022 WL 17261990, at *1 (D. Or. Nov. 29, 2022) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  When a party fails to provide requested information discoverable under Rule 26(a)(1), Rule 37(a) allows the requesting party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  When a party is seeking to depose a witness, "a strong showing is required before a party will be denied entirely the right to take a deposition."  *Blankenship*, 519 F.2d at 429 (internal quotation omitted).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient to bar discovery under Rules 26 and 37. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

## III.     Argument.

### A.      J.C.'s testimony is highly relevant to the issues in this case including whether and when J.C. disclosed her abuse to State Defendants and the nature of her injuries.

The factual basis of a party's damages, for which they seek compensation in an action they bring, is not just discoverable, it is vital to being able to litigate a claim at all.  This Court should compel J.C.'s deposition because she has important evidence regarding State Defendants' liability and the extent of her damages.  Per Rule 26(b), the parties are generally permitted to

obtain discovery "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). There is scarcely any evidence more relevant than J.C.'s own knowledge. J.C. is the real party-in-interest in a $20-million personal injury lawsuit. She is a percipient fact witness to every event described in the Complaint, including her own prior interactions with State Defendants. If J.C. intends to testify at trial regarding a prior disclosure of abuse to ODHS, or if she has already described some other disclosure to plaintiff's expert witnesses, State Defendants are entitled to discover that evidence, and potentially cross examine J.C. on that evidence, prior to trial.

Federal litigation is not trial by ambush. Before trial, State Defendants are entitled to learn the nature of the psychological injuries, impairments, and disabilities described in the Complaint so that they can fairly respond to plaintiff's anticipated evidence about the nature and cause of these injuries. The Complaint alleges in general terms that J.C. suffers from "psychological injury," "physical impairment," and "disability." (Compl. ¶ 78.) Plaintiff then demands compensatory, non-economic and punitive damages for these injuries totaling at least $20 million. (*Id*. ¶¶ 79-81.) Yet, plaintiff is unwilling to stipulate that his expert witnesses will not interview J.C. or otherwise rely on her out-of-court statements when assessing liability and damages. Thus, it is possible, if not likely, that plaintiff's experts are going to interview and examine J.C. to determine the extent of her injuries and damages. State Defendants are entitled to depose J.C. to similarly learn the nature and extent of her injuries so they can be prepared to respond to plaintiff's experts and plaintiff's evidence.

Further, discovery taken to date has not shed light on these issues. As shown, State Defendants have no knowledge of any prior disclosure to ODHS about Mr. Raygosa's sexual abuse of J.C. But plaintiff will not stipulate that no such disclosure occurred. Similarly, plaintiff

**Page 7 –**    STATE DEFENDANTS' MOTION TO COMPEL DEPOSITION OF J.C.

refuses to respond to interrogatories and deposition questions regarding J.C.'s injuries and damages, citing privilege.  And plaintiff refuses to be limited at trial to the medical records and other documents describing medical conditions, leaving open the possibility that J.C. will testify at trial or be interviewed by plaintiff's experts.  A deposition of J.C. is therefore highly relevant and necessary for State Defendants to prepare their defense.

> **B.     J.C.'s age and the sensitive nature of her testimony are not sufficient justifications to bar her deposition.**

Plaintiff has not met his burden of demonstrating that a deposition of J.C. is improper. Rule 26(c) permits this Court to bar disclosure of otherwise discoverable information for good cause.  Fed. R. Civ. P. 26(c).  Persuasive authority from district courts across the country confirms that a minor party with relevant information regarding their own claims must sit for a deposition even if their deposition testimony will likely cover sensitive and stressful topics.  (*See infra*.)

> **1.     Persuasive authority holds that a minor with relevant information must sit for a deposition even if the deposition is likely to cover stressful topics such as sexual abuse.**

Federal courts, including courts in the Ninth Circuit, routinely hold that a deponent's age and the sensitive nature of her likely testimony are not grounds for barring a deposition entirely. *See, e.g.*, *M.M. v. United States*, No. ED-CV-19631-JGB-SPX, 2020 WL 4037165, at *3 (C.D. Cal. June 30, 2020) ("The court is sympathetic that the deposition may be difficult for [the] minor plaintiff . . . . Nonetheless, under these circumstances, defendant is entitled to depose him regarding his claims for economic and emotional damages."); *A.G.1 v. City of Fresno*, No. 1:16-CV-01914-LJO-SAB, 2018 WL 2045092, at *1 (E.D. Cal. Apr. 30, 2018) ("While the Court is sympathetic that these depositions are emotional for the minors involved, the minors brought the claims in this action and Defendants are entitled to depose them.").

For instance, in *Kuyper v. Bd. of Cnty. Comm'rs of Weld Cnty.*, a seven-year-old girl sued local officials after she was sexually assaulted by a foster child placed in her home. No. 09-CV-00342-PAB-MEH, 2010 WL 4038831, at *1 (D. Colo. Oct. 14, 2010). The District of Colorado ordered the girl's deposition notwithstanding her argument that the deposition would "further traumatize" her. *Id.* In *Doe v. New Fairfield Bd. of Educ.*, a middle school student sued a school district for failing to prevent her sexual assault by a ninth grader at the neighboring high school. No. 3:13-CV-1025-WWE, 2014 WL 7271522, at *3 (D. Conn. Dec. 18, 2014). The District of Connecticut rejected the argument against deposing the plaintiff, reasoning that the deposition testimony was relevant to determining the extent of the child's damages and the cause of her alleged injuries. (*Id.*) In *Edgin on behalf of I.E. v. Blue Valley USD 220*, an elementary school student alleged that she had been sexually assaulted by another student at school and her father sued the school district on her behalf for her injuries. The District of Kansas ordered the deposition notwithstanding assertions that the deposition would "re-traumatize and harass" the child. No. 20-2547-EFM, 2021 WL 1750861, at *1, 3 (D. Kan. May 4, 2021).[4]

District courts in the Ninth Circuit have followed this persuasive body of law when ordering the deposition of minor children. In *Hereford v. City of Hemet*, four minor children (aged 5 to 11) were percipient witnesses to alleged police misconduct. 5:22-CV-00394-JWH-SHK, 2024 WL 3059056, at *1 (CD Cal June 14, 2024). The Central District of California

---

[4] *See also Arassi v. Weber-Stephen Prod. LLC*, No. 13-CV-684, 2014 WL 1385336, at *1 (E.D. Wis. Apr. 9, 2014) (compelling deposition of a 14 year-old and 10 year-old regarding father's accident notwithstanding assertion of "harmful mental and emotional effects" of depositions); *Graham v. City of New York*, No. 08-CV-3518(KAM) (RML, 2010 WL 3034618, at *5 (E.D.N.Y. Aug. 3, 2010) (compelling deposition of a seven-year old child about witnessing father's wrongful arrest notwithstanding assertion that the deposition would "unnecessarily upset" him); *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 105 (D.D.C. 2005) (compelling third-party deposition of child sex abuse victim in case involving same perpetrator).

**Page 9 –**    STATE DEFENDANTS' MOTION TO COMPEL DEPOSITION OF J.C.

compelled their depositions notwithstanding plaintiffs' assertions of potential "psychological harm" to the children. *Id.* at *2. In *M.M.*, a twelve-year-old sued the Veterans Administration for the wrongful death of his father. 2024 WL 3059056, at *1. The Central District of California ordered the deposition notwithstanding the child's assertion that testifying about the death and its effects would force him to "relive the trauma" of losing his father. *Id.*; *see also A.G.1*, 2018 WL 2045092, at *1 (requiring minor to testify regarding father's shooting death).

Courts have reasoned that good cause for barring a deposition is especially lacking where, as here, the minor put the sensitive testimony at issue by filing suit. *Edgin on behalf of I.E.*, 2021 WL 1750861, at *2 ("[I]t's highly unusual to entirely preclude a deposition, particularly of a named party in the case."); *M.M.* 2020 WL 4037165, at *3 ("Plaintiff M.M., Jr. has therefore put his relationship with his deceased father at issue by filing a wrongful death action seeking compensation for loss of society and companionship."); *Graham* 2010 WL 3034618, at *4 ("Where a plaintiff voluntarily brings an action seeking damages, defendants should not be so precluded from obtaining the discovery necessary to rigorously defend against the claims."); *Tate v. City of Chicago*, No. 18-C-7439, 2020 WL 5800817, at *1 (N.D. Ill. Sept. 29, 2020) ("[T]he deposition of a named plaintiff – or, as here, three named plaintiffs – goes to the very heart of this case and will almost certainly adduce relevant evidence to which Defendants are entitled.").

> **2.    J.C. must sit for a deposition about the interactions and injuries she put at issue by filing this lawsuit.**

Under this line of persuasive authority, J.C. must sit for a deposition. J.C., through her conservator, voluntarily filed a $20 million personal injury lawsuit against State Defendants putting at issue her interactions with ODHS and the physical and mental conditions for which she now seeks compensation. (*See supra*.) She has critical information about the nature and

causes of her injuries and the timing of any alleged disclosures to ODHS of her abuse.  Federal courts have repeatedly required children in sexual abuse cases to sit for depositions notwithstanding the potential stress of the deposition.  *See, e.g.*, *Kuyper*, 2010 WL 4038831, at *1; *Doe*, 2014 WL 7271522, at *3; *Edgin on behalf of I.E.*, 2021 WL 1750861, at *3.  J.C. is seventeen years old, far older than the children ordered to sit for a deposition in other cases.  The law is clear; the State Defendants may obtain deposition testimony from J.C. about the factual basis for the claims she filed against State Defendants.

Plaintiff's conclusory assertions about the potential stress of a deposition on J.C. are insufficient to prevent the deposition from going forward.  *Flanagan*, 231 F.R.D. 98, 105 ("Without independent evidence that S.G. will suffer psychological or other harm, S.G.'s conclusory statements are not sufficient for a total prohibition of the deposition."); *see also* *Arassi*, 2014 WL 1385336, at *2 ("cursory" and "conclusory" letters from mental health providers insufficient to justify barring deposition); *Doe* 2014 WL 7271522, at *2 ("conclusory" letter from longtime family friend asserting that deposition would be "detrimental" to child insufficient to justify barring deposition).

In a prior hearing, plaintiff has asserted that J.C.'s prior statements in other contexts can substitute for her deposition here.  J.C.'s prior testimony or statements described Mr. Raygosa's abuse of J.C.  In this litigation, State Defendants and plaintiff agree that Mr. Raygosa abused J.C.  The vital facts at issue in this litigation, for which State Defendants seek discovery from J.C., are different, namely whether ODHS had knowledge of the abuse while J.C. was a foster child and what damages J.C. suffered as a result.  J.C.'s earlier statements do not address these issues and thus are no substitute for deposition testimony.  Indeed, the fact that J.C. testified at the criminal trial when she was considerably younger underscores that she is capable of testifying.

**Page 11 –**    STATE DEFENDANTS' MOTION TO COMPEL DEPOSITION OF J.C.

To be absolutely clear, State Defendants do not intend to use this deposition to harass or intimidate J.C. State Defendants will be sensitive in their questioning due to J.C.'s youth and the personal and sensitive nature of the issues in this case. Further, because the facts of J.C.'s abuse at the hands of Mr. Raygosa are not in dispute, it is unlikely that the deposition will require J.C. to recount those facts. However, State Defendants are entitled to understand the basis for plaintiff's assertion that they allegedly knew about J.C.'s abuse and neglect while it was occurring. State Defendants are also entitled to probe the basis for plaintiff's demand of over $15 million in non-economic, compensatory damages. Because J.C. has critical information about these and other issues, and State Defendants have been systematically deprived of learning the details and evaluating the evidence, State Defendants are entitled to depose her.

**C.      State Defendants will agree to reasonable limitations on the deposition.**

Although courts do not typically bar the deposition of minors, they often put reasonable limits on those depositions. Consistent with the limitations observed in other cases, State Defendants agree that (1) the deposition will be conducted at an adequate location of plaintiff's choosing (*e.g.*, plaintiff's counsel's office, chambers), (2) a friend, family member, or victim advocate may accompany J.C. to the deposition, and (3) the parties will notify the Court of the deposition date so that the Court is available to address any issues that might arise during the deposition.

**CONCLUSION**

For the reasons set forth above, this Court should grant State Defendants' motion to compel the deposition of J.C.

DATED: August 13, 2024

ELLEN F. ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


*s/ Lauren F. Blaesing*
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Alexandra L. Rhee, OSB #230770
AlexRhee@MarkowitzHerbold.com
*Special Assistant Attorneys General for State*
*Defendants and Third-Party Plaintiff*

Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Hannah K. Hoffman, OSB #183641
HannahHoffman@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880407
JeffEdelson@MarkowitzHerbold.com
*Of Attorneys for State Defendants and Third-Party*
*Plaintiff*

Jill Schneider, OSB #001619
Jill.Schneider@doj.oregon.gov
Nicholas Mancuso, OSB #151262
Nicholas.Mancuso@doj.oregon.gov
*Of Attorneys for State Defendants and Third-Party*
*Plaintiff*

2183440.8