UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| ETHAN LEVI, | CASE No. 6:22-cv-01813-MK |
| Plaintiff, | |
| v. | **ORDER** |
| KIM CHAPMAN, *et al.*, | |
| Defendants. | |

OREGON DEPARTMENT OF
HUMAN SERVICES,

        Third Party Plaintiff,

v.

JOE ALBERT RAYGOSA,

        Third Party Defendant.

---

**KASUBHAI,** United States Magistrate Judge:

At issue before the Court is whether Defendants are properly withholding documents under the attorney-client privilege. The Court conducted an *in camera* review of a sample of withheld documents and sets forth the following principles for Defendants to apply when reexamining the withheld documents in its privilege log.

Page 1 — ORDER

**BACKGROUND**

Plaintiff Ethan Levi ("Plaintiff") filed this action on behalf of J.C., a minor child, against the Oregon Department of Human Services ("DHS") and several of its employees (collectively, "Defendants"). Plaintiff's Complaint alleges civil rights violations arising out of the sexual abuse of J.C. while in the custody of DHS-certified foster care provider Joe Albert Raygosa.

On July 10, 2024, the Court held a teleconference to consider the parties' pending discovery motions, including those in the related case *Conley v. Chapman et al.*, Case No: 23-cv-01353-MK. ECF No. 157. The Court Ordered Plaintiff Levi to select "a sample of no more than 10% of the documents identified in Appendices B & C for *in camera review* to determine whether Defendants' privilege designations [were] appropriate." *Id.* One of the withheld documents at issue was Log No. 147, an email between DHS employees described as staffing notes memorializing AAG Gonzalez's legal advice and work product regarding the hearing outcome and permanency status of J.C. After the Court's ruling, in which Defendants maintained that Log No. 147 needed to be withheld from Plaintiff Levi in its entirety, on July 18, 2024, Defendants produced a redacted version of Log No. 147 to Plaintiff Conley. In preparing the selected documents for submission to the Court, Defendants discovered this apparent inconsistent application of withholding documents based on the attorney-client privilege. Defendants contacted Plaintiff Levi and produced the redacted version of Log No. 147. Rather than selecting a different withheld document for *in camera* review, Plaintiff Levi opted to have the Court compare the redacted and unredacted versions of Log No. 147. On July 29, 2024, Defendants hand delivered a binder of eight documents selected by Plaintiff Levi from State Defendants' October 16, 2023, privilege log of email documents.

Page 2 — ORDER

On August 6, 2024, the Court held a Status Conference. ECF No. 166. Defendants notified the Court that they had reexamined some of the withheld documents in their database and determined that one of the documents submitted for *in camera* review, privilege Log No. 637, was in fact discoverable. August 6, 2024 Hearing Transcript, 217 ECF No. 167. Defendants asserted that while the email "itself may be privileged, the body of that e-mail was copied in full into a case note in OR-Kids" and was therefore not protected by the attorney-client privilege. *Id.* The Court acknowledged Defendants for their candidness and professionalism and told the parties that it would devise a set of rules for Defendants to apply in reexamining the withheld documents at issue. *Id.* at 217-18.

In addition to Log Nos. 147 and 637, before the Court are Log Nos. 161, 379, 497, 545, 678, and 824. The documents under review are email exchanges between DHS employees in which Oregon DOJ attorneys are involved in the email chains to varying degrees.

## STANDARD OF REVIEW

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The 9th Circuit defines the attorney-client privilege in eight parts:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

"'What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*.'" *Richey*, 632 F.3d at n.3 566

(quoting *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original) (citation removed)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation removed). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Richey*, 632 F.3d at 566.

## DISCUSSION

The Court Orders Defendants to reexamine the withheld documents at issue in accordance with the following principles and to produce any withheld documents that are not protected by the attorney-client privilege.

## I.     Waiver of the Attorney-Client Privilege

As previously decided by the Court, communications entered into a DHS case worker database such as OR-Kids are not communications made in confidence and are not protected by the attorney-client privilege. Defendants are Ordered to reexamine the withheld documents at issue and produce any documents in which the underlying communication was entered into a DHS case worker database.

## II.     The Primary Purpose of the Communication

Defendants are Ordered to reexamine the withheld documents at issue and produce all documents withheld on the basis of attorney-client privilege in which the primary purpose of the communication was not to obtain or communicate legal advice from an attorney.

That an attorney is involved in a communication is not determinative of its privileged status.[1] *Richey*, 632 F.3d at 566 . Such a rule "would create perverse incentives for companies to

---

[1] Similarly, whether the communication involves other non-attorney employees is also nondeterminative.

Page 4 — ORDER

add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation." *In re Grand Jury*, 23 F.4th 1088, 1093–94 (9th Cir. 2021); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) ("merely copying or "cc-ing" legal counsel, in and of itself, is not enough to trigger the attorney-client privilege[,] . . . each element of the privilege must be met"). For the attorney-client privilege to apply, the purpose of the communication must be obtaining legal advice from a lawyer. *Richey*, 632 F.3d 559, n.3 566 (9th Cir. 2011).

When a communication has more than one purpose, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *In re Grand Jury*, 23 F.4th at 1091 (citing *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) ("We consider whether the predominant purpose of the communication is to render or solicit legal advice.")). In deciding for the first time that the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications, the 9th Circuit favorably cited *In re Cnty. of Erie*, 473 F.3d 413 (2d Cir. 2007). *In re Grand Jury*, 23 F.4th at 1091. There, the Second Circuit explained that:

> [t]he predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

*In re Cnty. of Erie*, 473 F.3d at 420–21.

*Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 629–31 (D. Nev. 2013) is persuasive and provides an instructive framework for assessing privilege claims for dual purpose communications. "[I]n making an ultimate determination as to whether the 'primary purpose' of

Page 5 — ORDER

the communication was to generate legal advice[,]" the privilege asserting party must consider

the following factors:

> (1) the context of the communication and content of the document; (2) the facts surrounding the creation of the document and the nature of the document; (3) whether the legal purpose so permeates any non-legal purpose such that the two cannot be discretely separated from the factual nexus as a whole; (4) the breadth of the recipient list in assessing the centrality of potential legal advice generated by the communication; and (5) whether the communication explicitly sought advice and comment.

*Id.* at 629 (cleaned up) (internal quotations and citations omitted). Regarding internal

communications between non-lawyers discussing legal advice, the privilege asserting party "will

have to determine, in each instance, whether the non-attorneys were seeking or forwarding legal

advice to non-attorneys who needed it to fulfill the purpose for which the lawyer was consulted

and/or that disclosure to other non-lawyer employees was reasonably necessary for the

transmission of the communication." *Id.* at 631.

The Court finds that communications between DHS employees and Oregon DOJ

attorneys are analogous to the employees of a corporation communicating with in-house counsel

and must be reviewed accordingly. That DHS case workers are involved with juvenile

proceedings does not make every DHS communication involving an Oregon DOJ attorney

privileged by default. The primary purpose of the communication must have been the receipt of

legal advice from a lawyer. Having conducted an *in camera* review of the documents selected by

Plaintiff, the Court makes the following specific findings:[2]

1. **Log No. 379:** The portion of the email chain from DHS employee Amelia Ballard to

   DHS employees Kassidy O'Brien and Erin Lane with DHS employee Morgan Tony-

---

[2] These findings are made without knowledge of whether Defendants waived the privilege by entering the communication into a DHS case worker database and must produce it regardless of its primary purpose.

Marie copied is not protected by the attorney-client privilege and must be produced. No attorneys are involved in the communication and Ballard is not seeking or forwarding any legal advice. In contrast, the primary purpose of the message from O'Brien to Ballard and Lane with Tony-Marie copied is the forwarding of legal advice from Oregon DOJ Attorney Tricia Gonzales and may be redacted along with the portion of the email chain from Attorney Gonzales.

2. **Log No. 824:** The substantive portion of the communication is protected by the attorney-client privilege, the remaining portion is not discoverable because it is not relevant.

3. **Log No. 637:** Defendants have already informed the Court that this document was entered into OR-Kids and will be produced to Plaintiff based on privilege waiver. However, applying the principles above, the Court finds that the communication is not protected by the attorney-client privilege, irrespective of waiver. Nowhere in the communication does O'Brien solicit legal advice from a lawyer. Rather, she "figured [she]'d share the info just FYI[.]" O'Brien does not ask any questions nor does she implicitly seek a response. She relays to lawyer and non-lawyer recipients Z.C.'s driver's observations. Although not determinative, the fact that the only attorney included in the message is merely copied on the email rather than directly addressed is further evidence that O'Brien's primary purpose was not to seek legal advice from an attorney but was instead to inform her supervisors. This communication is not protected by the attorney-client privilege and must be produced.

/ / /

/ / /

Page 7 — ORDER

4. **Log. No. 497:** The substantive portion of this communication explicitly seeks legal advice from a lawyer. The communication is protected by the attorney-client privilege.

5. **Log No. 545:** The primary purpose of this communication is seeking legal advice from a lawyer, specifically directing a legal question to an attorney. The communication is protected by the attorney-client privilege.

6. **Log No. 678:** The primary purpose of this communication is seeking legal advice from a lawyer, specifically directing a legal question to an attorney. The communication is protected by the attorney-client privilege.

7. **Log No. 161:** The primary purpose of this communication is seeking legal advice from a lawyer, specifically directing a legal question to an attorney. The communication is protected by the attorney-client privilege.

8. **Log No. 147:** Having compared the unredacted version with the redacted version produced to Plaintiff Conley, the redacted portions of this communication are protected by the attorney-client privilege. The DHS employees were seeking or forwarding legal advice from a lawyer to non-lawyers who needed it to fulfill the purpose for which the lawyer was consulted.

## CONCLUSION

The Court Orders Defendants to reexamine the withheld documents at issue, apply the framework above, and produce any documents or portions of documents that are not protected by the attorney-client privilege. Burdensome as this task may be, the Court reminds Defendants that

/ / /

"the party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Richey*, 632 F.3d at 566.

IT IS SO ORDERED.

DATED this 29th day of August 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge

Page 9 — ORDER