Steven Rizzo, OSB # 840853
Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

Caitlin V. Mitchell, OSB #123964
Johnson Johnson Lucas & Middleton PC
975 Oak Street, Ste. 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
cmitchell@justicelawyers.com

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al,<br><br>Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>DECLARATION OF MARY SKJELSET IN SUPPORT OF PLAINTIFF LEVI'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>    Third Party Defendant. | |

1 – DECLARATION OF MARY SKJELSET IN SUPPORT OF
    PLAINTIFF LEVI'S RESPONSE TO DEFENDANTS'
    MOTION FOR RECONSIDERATION



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

I, Mary Skjelset, declare as follows:

1.    On behalf of Plaintiff Levi in the above-captioned matter, I make this Declaration in support of Plaintiff Levi's Response to Defendants' Motion for Reconsideration.

2.    Attached as Exhibit 1 is a true and accurate copy of relevant excerpts from Plaintiff's First Request for Production to Defendants, dated March 3, 2023.

3.    Attached as Exhibit 2 is a true and accurate copy of relevant pages from Defendants' Responses to Plaintiff's First Request for Production, dated April 11, 2023.

4.    Attached as Exhibit 3 is a true and accurate copy of Defendants' correspondence to the court, dated June 21, 2023.

5.    Attached as Exhibit 4 is a true and accurate copy of the case note search criteria results pages, i.e. the "drop-down" menu of case notes with metadata for the OR-Kids case notes pertaining to J.C.'s family file, which Plaintiff found in the course of the inspection.   FILED UNDER SEAL.

6.    On July 31, 2023 and August 2, 2023, the defendants produced the OR-Kids files they deemed responsive to Plaintiff Levi's First RFP, which Plaintiff presumed constituted "the entire ODHS record" based on representations made by the defendants.

7.    The only document contained in the OR-Kids files that the defendants refused to allow undersigned to view was a bill from "Other Eugene Solutions Therapy & Consulting" contained in the File Cabinet of J.C.'s family file. In a subsequent letter prepared by Ms. Hoffman on December 15, 2023, the defendants claims this apparent bill for services constituted "work product and privilege." *See* ECF 113-5 at 13.

8.    Attached as Exhibit 5 is a true and accurate copy of relevant excerpts from the transcript of the July 10, 2024 hearing held before the Honorable Judge Kasubhai.

9.    Attached as Exhibit 6 is a true and accurate copy of relevant pages from the transcript of the August 6, 2024 hearing held before the Honorable Judge Kasubhai.

10.   Attached as Exhibit 7 is a table of testimony elicited from various DHS Child Welfare employees relating to their ability to access the OR-Kids records of cases to which they are not

2 – DECLARATION OF MARY SKJELSET IN SUPPORT OF
  PLAINTIFF LEVI'S RESPONSE TO DEFENDANTS'
  MOTION FOR RECONSIDERATION



assigned, with true and accurate copies of relevant extracts from the referenced transcripts.

11.   Attached as Exhibit 8 is a table of testimony elicited from various DHS Child Welfare employees relating to the requirement that they discovery all case notes entered into the OR-Kids system to parties in the juvenile dependency proceedings, with true and accurate copies of relevant extracts from the referenced transcripts.

**I declare under penalty of perjury that the foregoing is true and correct**.

Dated: September 19, 2024.

By: */s/ Mary Skjelset*
Ms. Mary Skjelset

3 – DECLARATION OF MARY SKJELSET IN SUPPORT OF
   PLAINTIFF LEVI'S RESPONSE TO DEFENDANTS'
   MOTION FOR RECONSIDERATION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com


ATTORNEYS FOR PLAINTIFF


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| Ethan Levi,<br><br>                    Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>                    Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION** |


Plaintiff's First Request for Production is directed to defendants, Kim Chapman, Anastasia Tibbetts, Kassidy O'Brien, Erin Lane and the Oregon Department of Human Services ("DHS") and DOJ AAGs, Jill Schneider and Nicholas Mancuso, under Fed. R. Civ. P 26 and 34. Plaintiff requests that defendants produce the following documents and electronically-stored information ("ESI") within thirty (30) days of the service of this request, separately in response to each numbered request to Rizzo Bosworth Eraut PC, 1300 SW Sixth Avenue, Portland, Oregon 97201,

1 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 1 of 5

26. All Certificates of Approval to operate a foster home issued to Duncan/Raygosa.

27. The complete and unredacted hardcopy certification and re-certification files relating to Duncan/Raygosa.

28. The complete and unredacted OR-Kids provider file of Duncan/Raygosa, including all electronically stored information in drop-downs, screens and tables, and all provider notes with indicia of the time/date of creation.

29. All documents, communications, files and reports relating to complaints, notifications and reports of suspected child abuse and/or neglect occurring in the Duncan/Raygosa foster home.

30. All documents, communications and notations relating to the care and condition of any child placed in the Duncan/Raygosa foster home, including J.C. and Z.C.

31. All documents and communications relating to inactive referral status, revocation, suspension and/or termination of any Certificate of Approval issued to Duncan/Raygosa, including all filings and records in any related administrative law proceeding.

32. All documents, communications and notations evincing reasonable cause to believe that any child was abused or neglected while placed in the Duncan/Raygosa foster home.

33. All documents, communications and notations evincing any DHS worker's belief, knowledge or suspicion that Duncan/Raygosa (i) failed to maintain appropriate boundaries with any children placed in their home; (ii) failed to adhere to or comply with foster care rules and requirements regarding children placed in the home; (iii) manipulated or otherwise emotionally abused children placed in the home; and (iv) were otherwise abusive and/or neglectful toward any children, including foster children, placed in the home.

34. All documents relating to any CPS screening report, assessment, investigation and/or founding of medical neglect, threat of harm or other abuse allegation regarding the Haury children.

35. All documents, communications and information requests or exchanges with any physician, psychologist, counselor, nurse and/or other medical or mental health provider regarding any foster child placed in the Duncan/Raygosa foster home.

8 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND INSPECTION

36. All police, sheriff or other law enforcement agency reports relating to Duncan/Raygosa or the Duncan/Raygosa foster home.

37. All reports relating to sensitive issue(s) or report(s) prepared by or on behalf of DHS-LCCW and sent to DHS Central Office relating to the Duncan/Raygosa foster home.

38. Any DHS Central Office certification file review(s) of the Duncan/Raygosa certification file and re-certification file, including all drafts and related communications.

39. Any DHS Central Office file review of all CPS assessments or investigations relating to the Duncan/Raygosa foster home, including all drafts and related communications.

40. All DHS Central Office documents, communications and notations relating to its review of any sensitive issue(s) or report(s), certification file(s) and/or CPS assessments or investigation of the Duncan/Raygosa foster home.

41. All documents, communications, notations and information exchanges between DHS-LCCW and the Lane County Multidisciplinary Team ("MDT") and any member(s) thereof relating to the care and condition of any child in the Duncan/Raygosa foster home, including J.C. and Z.C.

42. All documents, communications and notations provided or "discovered" to the parties in the J.C. and Z.C. juvenile dependency proceedings, including indicia of the time and date of such discovery.

43. All documents, communications and information requests relating to any Relative Search performed regarding J.C. and Z.C.

44. The complete and unredacted child welfare history and files relating to J.C. and Z.C.

45. The complete and unredacted OR-Kids files relating to J.C. and Z.C., including all electronically stored information in drop-downs, screens and tables, and all case notes with indicia of the time/date of creation.

46. All documents, communications and information requests between DHS-LCCW and any physician, psychologist, counselor, nurse and/or other medical or mental health provider regarding J.C. and/or any member of her biological family.

9 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
AND INSPECTION

**REQUEST FOR INSPECTION**

56. Plaintiff seeks a mutually convenient time/date to inspect the following documents referenced above: (i) the original certification file; (ii) the pre-adoption file and/or adoption file; and (iii) the OR-Kids electronic file.

Dated: March 3rd, 2023.

RIZZO BOSWORTH ERAUT PC

By: s/*Steven Rizzo*
Steven Rizzo OSB No. 840853
Mary D. Skjelset OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

ATTORNEYS FOR PLAINTIFF

11 – PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
   AND INSPECTION

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

Exhibit 1
Page 4 of 5

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI, | CASE NO. 6:22-cv-01813-MK |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| KIM CHAPMAN, et al., | |
| Defendants. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Plaintiffs' First Request for Production and Inspection**

**VIA EMAIL**

**Jill Schneider**
**Nicholas S. Mancuso**
**Oregon Department of Justice**
**100 SW Market Street**
**Portland, OR 97201**
**Ph. 971-673-1880**
**Fax: 971-673-5000**
**Email: jill.schneider@doj.state.or.us**
**Email: nicholas.mancuso@doj.state.or.us**
*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

Dated this 3rd day of March, 2023.

 *s/ Cheridan Carr*
Cheridan Carr
Paralegal

1- Certificate of Service

Exhibit 1
Page 5 of 5

ELLEN F. ROSENBLUM
Attorney General
JILL SCHNEIDER #001619
Senior Assistant Attorney General
NICHOLAS MANCUSO #151262
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Jill.Schneider@doj.state.or.us
        Nicholas.Mancuso@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>        Plaintiff,<br><br>    v.<br><br>KIM CHAPMAN, et al; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOE,<br><br>        Defendants. | Case No.  6:22-CV-1813-MK<br><br>**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION** |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>        Third-Party Plaintiff,<br><br>    v.<br><br>JOE ALBERT RAYGOSA,<br><br>        Third-Party Defendant. | |

Page 1 -  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 1 of 5

**RESPONSE:**  Subject to the foregoing general and specific objections State Defendants will produce responsive documents to the extent they exist and can be located using reasonable efforts.

**REQUEST FOR PRODUCTION NO. 27:**  The complete and unredacted hardcopy certification and re-certification files relating to Duncan/Raygosa.

**RESPONSE:**  Subject to the foregoing general and specific objections State Defendants will produce the provider record with the identification number 1126389.

**REQUEST FOR PRODUCTION NO. 28:**  The complete and unredacted OR-Kids provider file of Duncan/Raygosa, including all electronically stored information in drop-downs, screens and tables, and all provider notes with indicia of the time/date of creation.

**RESPONSE:**  State Defendants object to the Request to the extent "indicia of the time/date of creation" purports to require production or creation of information different from how the information is ordinarily maintained in the course of ODHS ordinary business operations. Subject to the foregoing general and specific objections State Defendants will produce the OR-Kids record for provider number 1126389, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 29:**  All documents, communications, files and reports relating to complaints, notifications and reports of suspected child abuse and/or neglect occurring in the Duncan/Raygosa foster home.

Page 14 - **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 2 of 5

information is ordinarily maintained in the course of ODHS ordinary business operations. State Defendants further object to the extent "communications" and "notations" purports to require production of information subject to attorney client privilege or work product doctrine.

Subject to the foregoing general and specific objections State Defendants will produce responsive documents to the extent they exist and can be located using reasonable efforts, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 43:**  All documents, communications and information requests relating to any Relative Search performed regarding J.C. and Z.C.

**RESPONSE:**  State Defendants object to the Request to the extent the term "Relative Search" as vague and undefined. Subject to the foregoing general and specific objections, State Defendants will produce responsive information to the extent it exists and can be located using reasonable efforts, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 44:**  The complete and unredacted child welfare history and files relating to J.C. and Z.C.

**RESPONSE:** Subject to the foregoing general and specific objections, State Defendants will produce the child welfare and child protection family file with the number 897560, associated with services to J.C. and Z.C.'s family and identified with the name of their biological mother, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 45:**  The complete and unredacted OR-Kids files relating to J.C. and Z.C., including all electronically stored information in drop-downs, screens and tables, and all case notes with indicia of the time/date of creation.

Page 20 -  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 3 of 5

**RESPONSE:**  State Defendants object to the Request to the extent "indicia of the time/date of creation" purports to require production or creation of information different from how the information is ordinarily maintained in the course of ODHS ordinary business operations. Subject to the foregoing general and specific objections State Defendants will produce the OR-Kids record for family file 897560, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 46:**  All documents, communications and information requests between DHS-LCCW and any physician, psychologist, counselor, nurse and/or other medical or mental health provider regarding J.C. and/or any member of her biological family.

**RESPONSE:**  Subject to the foregoing general and specific objections, State Defendants will produce responsive information to the extent it exists and can be located using reasonable efforts, once a protective order has been entered in this case.

**REQUEST FOR PRODUCTION NO. 47:**  All Child and Adolescent Needs and Strengths (CANS) assessments for J.C. and Z.C.

**RESPONSE:**  State Defendants object to the Request to the extent the term "Child and Adolescent Needs and Strengths (CANS) assessments" is vague and undefined. Subject to the foregoing general and specific objections, State Defendants will produce responsive information to the extent it exists and can be located using reasonable efforts, once a protective order has been entered in this case.

Page 21 - **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 4 of 5

## REQUEST FOR INSPECTION

**REQUEST FOR PRODUCTION NO. 56:**  Plaintiff seeks a mutually convenient time/date to inspect the following documents referenced above: (i) the original certification file; (ii) the pre-adoption file and/or adoption file; and (iii) the OR-Kids electronic file.

**RESPONSE:**  State Defendants object to this Request in its entirety as unduly burdensome, duplicative of the response to written requests, and unlikely to lead to the discovery of relevant evidence other than that which will be provided through written discovery.

DATED April <u>11</u>, 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____s/ Jill Schneider_____
JILL SCHNEIDER #001619
Senior Assistant Attorney General
NICHOLAS MANCUSO #151262
Assistant Attorney General
Tel (503) 947-4700
Fax (503) 947-4791
Jill.Schneider@doj.state.or.us
Nicholas.Mancuso@doj.state.or.us
Of Attorneys for State Defendants

Page 25 -  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR INSPECTION**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 2
Page 5 of 5



ELLEN F. ROSENBLUM
Attorney General

LISA M. UDLAND
Deputy Attorney General

## DEPARTMENT OF JUSTICE
` DIVISION

June 21, 2023

VIA E-MAIL - kasubhai_crd@ord.uscourts.gov

Hon. Mustafa T. Kasubhai
Wayne L. Morse United States Courthouse
Room 5400
405 East Eighth Avenue
Eugene, OR 97401

Re: *Ethan Levi v. Kim Chapman, et al.* Case No: 6:22-cv-01813-MK

Dear Judge Kasubhai:

I write to provide a response to plaintiff's concerns regarding discovery. The number of issues the plaintiff raises, including both procedural issues and substantive disputes regarding the scope of the discovery, may be difficult to resolve without additional briefing, but state defendants wish to address all of the issues at least preliminarily here.

The state defendants recognize plaintiff desires to receive all responsive documents as soon as possible. We share the goal to effectively advance the discovery phase of this action. Plaintiff has requested extremely voluminous discovery, and some of it is complex to collect, review, and produce. The Oregon Department of Human Services has provided extensive documents in prior actions in probate court, but in order to reconcile the duplicative discovery, identify overlapping areas of inquiry, and collect and review new information, the state defendants and their counsel must expend extensive effort.

### 1.    Case Context

Plaintiff is the conservator for minor J.C., who along with a sibling, was formerly in the custody of ODHS after being adjudicated dependent due to conditions in their home of origin. Plaintiff filed the suit in November 2022 against ODHS, several named individual ODHS employees, and two of the former resource parents with whom J.C. and her sibling resided while in DHS custody. Plaintiff initiated the suit after undertaking an extensive investigation, including but not limited to subpoenas issued through the Lane County Probate Court. Plaintiff continued to pursue discovery in probate court after initiating this action, necessitating diversion of ODHS efforts to discovery in a different forum that does not have jurisdiction over the federal claims before this Court.

It is important to note that plaintiff has already received the bulk of the core documents in this case. ODHS produced case files before litigation began. Plaintiff has the entire juvenile record, including the confidential supplemental file, as well as the certification materials relating to the Duncan/Raygosa resource home placement. Plaintiff's discovery requests in this federal action include these materials, as well as many more.

Exhibit 3
Page 1 of 4

`

June 21, 2023
Page 2

Due to the amount of legal resources needed to respond to discovery, a Special Assistant Attorney General is joining the Department of Justice as co-counsel for the state defendants. The Markowitz Herbold firm and attorney Lauren Blaesing will be entering an appearance very shortly and Ms. Blaesing will ultimately assume the role as lead counsel.

**2.      Discovery Efforts to Date**

ODHS has been collecting documents and providing documents to ODOJ to respond to discovery since the before plaintiff served discovery. The parties have conferred on proposed custodians and search terms for identifying potentially responsive information. The state defendants have agreed to all of plaintiff's proposed custodians and are testing all of plaintiff's proposed search terms. Potential collection and search efforts have yielded more than a million documents necessitating further processing before review can begin.

ODHS's counsel will use appropriate, industry standard techniques and technology to manage the discovery burden. But the universe of electronically stored information remains large, and will necessitate prolonged preproduction review and processing. We have tried to provide reasonable estimates of the time needed to conduct all of the necessary steps, including preparation of a privilege log, but until the transition to the co-counsel is complete, the estimates are very preliminary. State defendants are committed to producing the responsive documents as soon as possible and believe the additional staffing will aid in that effort.

**3.      Procedural issues**

The plaintiff declined to agree to the entry of the Oregon Department of Justice's ordinary protective order, incorporating the District of Oregon language for the most part, resulting in briefing and entry of an order on May 30, 2023. Plaintiff's counsel has since contacted state defendant's counsel with additional concerns about the order. The state defendants have begun production pursuant to the entered protective order.

The Court has entered the initial scheduling order on May 30, 2023, but the scope and complexity of plaintiff's discovery demands may require additional time. Plaintiffs have served First and Second written requests for discovery and interrogatories. State Defendants have responded and asserted written objections as appropriate.

**4.      Substantive areas of dispute.**

•       Workers' cell phone numbers -  Plaintiff requested and ODHS produced organizational charts and phone lists. Plaintiff's counsel incorrectly asserts state defendants created a document and accuses state defendants of "withholding" cell phone numbers. ODHS produced the organizational charts the agency had for Lane County. ODHS does not object to providing relevant information about state employees, including mobile device information if requested, but has no obligation to create new records.

•       Tort claim notices, foster care abuse complaints – Defendants will produce all tort claim notices provided by the minor, J.C. and for her sibling, although these would be duplicates of what plaintiff already has. Plaintiff, however, wants the universe of all civil complaints, including captions, made against ODHS alleging child and foster care abuse since 2015. That information is not relevant to the claims and defenses made in this case, and implicates statutorily protected and privileged information. Additionally, all complaints filed against ODHS are a matter of public record.

Exhibit 3
Page 2 of 4

`

June 21, 2023
Page 3

• Litigation hold notices– Litigation hold are not relevant to the plaintiff's claims. In particular, litigation hold materials are work product and privileged. A document is privileged as attorney work-product when it was prepared (1) "in anticipation of litigation or for trial," and (2) "by or for another party or by or for that other party's representative." *Rojas v. Fed. Aviation Admin.,* 989 F.3d 666, 676 (9th Cir. 2021), cert. denied, 142 S. Ct. 753 (2022).

• Request for Defense forms: the State provides a defense to State employees where such employees are sued in the course and scope of their duties. The plaintiff makes a number of legally and factually inaccurate characterizations of this defense coverage practice but ultimately, the fact of the individual named defendants receiving a defense is neither remarkable nor relevant to the plaintiff's claims.

• Personnel files – Defendants will produce the personnel files of the named defendants and have not objected to doing so.

• Other children in home: The records of non-party children and families are highly confidential and protected by numerous laws. including but not limited to, ORS 419B. 035. These families are not before the court, nor represented by counsel and DHS objects to producing their information on the basis of relevance and confidentiality. Defendants will produce the Child Protective Services records for minor J.C. and for her sibling. Defendants will also produce any reports or complaints of abuse or injury to any child while in the Duncan/Raygosa home.

• Inspection of documents – ODHS is producing copies of the entire ODHS record, in electronic and physical files for the plaintiff's family and the provider certification of the Duncan/Raygosa home. Plaintiff has not demonstrated that the production of copies is inadequate or deficient. To avoid dispute, state defendants will provide hard copies for physical inspection at a location determined by defendants' lead counsel. Plaintiff is not entitled to direct access to the State's secure information systems. State defendants object to plaintiff's request to directly access the State's confidential business systems, specifically ODHS ORKIDS application database, as irrelevant, unduly burdensome, and on the basis of risk of exposure of confidential information of non-parties.

• Interrogatories – Defendants have served written, signed responses to the Interrogatories.

• Amended answer – Defendants have filed for leave to file an amended answer to correct some scrivener's errors. The specific changes were provided to plaintiff before filing. If those changes did not come through on the form filed with the court, defendants will be happy to re-file a red-lined copy of the proposed amended answer.

We understand that plaintiff does not wish to begin depositions until the responsive documents have been received. If that scheduling requires a postponement in the discovery schedule, we will work with plaintiff to determine when depositions may be reasonably concluded, and inform the court accordingly.

Exhibit 3
Page 3 of 4

`

June 21, 2023
Page 4

   In sum, we ask the court to 1) grant defendants leave to amend the answer; (2) decline to order expedited discovery because defendants are working in good faith to produce a large volume of material to plaintiff; and (3) order that plaintiff should confer with defendants further as to what additional discovery she believes she needs after defendants produce the bulk of the documents.

         Sincerely,

         *s/ Jill Schneider*

         Jill Schneider
         Senior Assistant Attorney General

cc:  Nick Mancuso
   Lauren Blaesing

Exhibit 3
Page 4 of 4

# EXHIBIT 4 – FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ETHAN LEVI,                          )
                                     )
                    Plaintiff,       )   Case No. 6:22-cv-01813-MK
                                     )
          v.                         )
                                     )   July 10, 2024
KIM CHAPMAN, in her                  )
individual capacity; ANASTASIA       )
TIBBETS, in her individual           )
capacity; KASSIDY O'BRIEN, in        )
her individual capacity, ERIN        )
LANE, in her individual              )
capacity; THE OREGON                 )
DEPARTMENT OF HUMAN SERVICES,        )
a government agency; and JANE        )
and JOHN DOES 1-5; in their          )
individual and/or official           )
capacities,                          )
                                     )
                    Defendants.      )
_____)
OREGON DEPARTMENT OF HUMAN           )
SERVICES,                            )
                                     )
          Third-Party Plaintiff,     )
                                     )
          v.                         )
                                     )
JOE ALBERT RAYGOSA,                  )
                                     )
          Third-Party Defendant.     )
_____)


STATUS CONFERENCE

TRANSCRIPT OF FTR-RECORDED PROCEEDINGS

BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

Exhibit 5
Page 1 of 6

THE COURT:  How would --

MR. NASO:  Yes.

THE COURT:  Yes.

How would it be entered in the privilege log where -- where a portion was produced and the remainder was redacted for -- on the basis of ACP?

MR. NASO:  Yeah, I believe it would identify the email in question.  It would -- it would simply have an entry of what was withheld on the basis of that privilege.

THE COURT:  Okay.  All right.  So the thrust of your argument is that the plaintiffs haven't made a showing sufficient for consideration of *in camera* review; and, secondarily, or perhaps relatedly, it would be a -- it would be an unnecessary use of judicial resources?

MR. NASO:  That's correct, Your Honor.

They haven't made any -- they haven't identified any specific examples in the privilege log as to showing -- making a factual showing as to why the privilege assertion was improper and a mere suspicion is not enough for an *in camera* review.

THE COURT:  Okay.  Anything else with respect to this issue before I turn back to Ms. Skjelset?

MR. NASO:  No, Your Honor.

THE COURT:  Ms. Skjelset?

MS. RICHARDSON:  Sorry, Your Honor.  This is

Exhibit 5
Page 2 of 6

I'll come back to you and hear more about work product in a minute.

MS. RICHARDSON:  Okay.

THE COURT:  Thanks.

So, Ms. Skjelset, did you have anything else in response to Mr. Naso?

MS. SKJELSET:  I do, Your Honor.

First, I would like to address the issue of Judge Mosman's decision in J.M.  That is -- that was a case that we briefed significantly because we did believe that they were covering a significant amount of facts in large swath assertions of privilege.  There were, similarly, hundreds of emails between caseworkers and attorneys over which they were asserting privilege, and we tried to narrow it, and the court declined *in camera* review in that case.

THE COURT:  You tried to -- you tried to narrow it in the same way that you narrowed it with Appendices B and C.

MS. SKJELSET:  We did -- we did not do as good of a job, Your Honor, and that is why I offered a sampling.  Because I simply want the Court to be able to see and evaluate whether or not it's appropriate.

Because this is the concern:  As we move forward, DHS can copy an AAG on any concern regarding foster care, any concerns regarding children being abused in a home, and

Exhibit 5
Page 3 of 6

simply not have to produce that to anybody, and that is not justice.

And that is why we appealed it to the Ninth Circuit.  I was there when it was argued at the Ninth Circuit; and, frankly, the courts raised an eyebrow, the judges, at the argument of the fact that it was not reviewed *in camera*, and she didn't understand.  That was said at oral argument.  Did not understand why a judge would not review it *in camera*.

And that is why we will do anything in our power to ensure that you have the opportunity to review whatever portion is acceptable to the Court and does not overly burden the Court.

THE COURT:  So you read --

MS. SKJELSET:  The second -- the second --

THE COURT:  You took the issue of the discoverability of these documents to the Ninth Circuit?

MS. SKJELSET:  Yes.  And they (indiscernible) ruling on the collateral doctrine.  Yeah, the collateral order doctrine, saying that the --

THE COURT:  How did the Ninth Circuit resolve it?

MS. SKJELSET:  They -- they -- they dismissed the appeal, saying that the court had discretion to make that ruling, and it, therefore, had to be fully litigated in order to take it up under the collateral doctrine rule.

THE COURT:  Got it.

Exhibit 5
Page 4 of 6

context of punitive damages or in the context of a theory around a coverup, simply no other way, that I'm aware of, that the parties have pointed out to me, that it could otherwise be reasonably obtained, again, in this -- in this -- in the way in which it's been sent through this email as the draft -- the draft affidavit.

The motion for a clawback, if -- to the extent that it's been construed as a motion for a clawback of these two documents, is denied. They shall be -- they shall be produced.

With respect to the issues associated with the privileged documents identified in Appendices B and C, I am going to allow *in camera* review of, as Ms. Skjelset has described, a sampling, a sampling of no more than 10 percent of the documents that are indicated or outlined in the -- in those appendices for my review to determine whether attorney-client privilege applies to those documents.

If -- and to the extent that I'm capable of deriving a principle to describe whether additional documents under those principles would also be producible, I will do so, or I will find that they're not producible because they are appropriately within attorney-client privilege, or I may find that these documents alone might be -- may be producible because they are not protected under the attorney-client privilege, but there would be no generalized

Exhibit 5
Page 5 of 6

                        C E R T I F I C A T E

                     Ethan Levi v. Kim Chapman

                        6:22-cv-01813-MK

                              and

                  Shannon Conley v. Kim Chapman

                        6:23-cv-01353-MK

                       Status Conference

                        July 10, 2024

        I certify, by signing below, that the foregoing is

a true and correct transcript of the record, taken by

stenographic means, of the FTR-recorded proceedings in the

above-entitled cause.  Where (indiscernible) has been

indicated, the audio file was unable to be heard due to

simultaneous crosstalk, fast speaking, mumbling, or other

room noises overriding what was being said.  A transcript

without an original signature, conformed signature, or

digitally signed signature is not certified.


/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
_____

Transcriber/Official Court Reporter      Date: 7/19/2024
Oregon CSR No. 98-0346    CSR Expiration Date:  9/30/2026

Exhibit 5
Page 6 of 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ETHAN LEVI,                          )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )    No. 6:22-cv-01813-MK
                                     )
KIM CHAPMAN, in her individual       )
capacity; ANASTASIA TIBBETTS, in     )
her individual capacity; KASSIDY     )
O'BRIEN, in her individual           )
capacity; ERIN LANE, in her          )
individual capacity; THE OREGON      )
DEPARTMENT OF HUMAN SERVICES, a      )
government agency; and JANE and      )
JOHN DOES 1-5; in their individual   )
and/or official capacities,          )
                                     )
        Defendants.                  )
_____)
                                     )
OREGON DEPARTMENT OF HUMAN           )
SERVICES,                            )
                                     )
        Third-Party Plaintiff,       )
                                     )
        v.                           )
                                     )
JOE ALBERT RAYGOSA,                  )
                                     )
        Third-Party Defendant.       )
_____)

Status Conference

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MUSTAFA T. KASUBHAI

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

August 6, 2024

Exhibit 6
Page 1 of 5

to.  Let's just -- I just want to keep it clean as -- as -- as little back and forth as possible.  So file a motion to compel.

MR. EDELSON:  We'll take the burden.  That's fine.  Or at least we'll take the first brief.  I don't know about the burden, but we'll take the first brief.

THE COURT:  All right.

MR. RIZZO:  And that's on Tuesday -- next Tuesday?

THE COURT:  Tuesday.

All right.  So Ms. Tshala's going to be filing a motion.  What are we going to call it?  Motion to compel --

MS. TSHALA:  Waived documents.

THE COURT:  I don't know.  It's becoming late in the day, so I'm at a loss for my creative titling of captions.

MR. RIZZO:  How about a determination of subject matter waiver?

THE COURT:  All right.  The Rule 502(a) -- motion to compel under Rule 502(a) privileged subject matter.  Waiver of -- of -- of subject matter privilege, or something like that.  Just that way I know what it is that I'm looking at when I get the documents in on -- in the next couple of weeks.

Okay.  I closed my eyes for a minute, hoping you'd all disappear, but it didn't work.

All right.  I appreciate all your patience as we head into the -- really the last bit of time.  I don't think we have that much left.  Are there some other -- do we need to clarify

Exhibit 6
Page 2 of 5

anything that we've talked about so far?

MS. HOFFMAN:  Defendants do need to clarify one issue related to the in-camera review documents, Your Honor.  We have looked at them again and reviewed some documents in our database.  And we've determined that privilege log number -- I think it's 647, but I need my privilege log -- 637, which is one of the in-camera review documents, it's an e-mail with the subject line "Colby Driver."

We have determined that that e-mail, while itself may be privileged, the body of that e-mail was copied in full into a case note in OR-Kids that we have produced.  And so the e-mail, we don't think we can claim privilege over.  We're going to produce it to --

THE COURT:  And what log number was that?

MS. HOFFMAN:  637.

THE COURT:  And so then the follow-up question would be are there other documents that -- in the privilege log that were claimed to have been privileged documents that would've included e-mails -- or would have been e-mails that were incorporated into the -- the database?

MS. HOFFMAN:  That's a question I can't answer for you right now, Your Honor.  I've only reviewed these that were for in-camera inspection for today.  I -- I can't tell you yes or no.

THE COURT:  And I appreciate that.  But I think

Exhibit 6
Page 3 of 5

that's -- that's going to be the next step that you're -- you'll need to take, which is to confirm that if documents have been incorporated -- and what was it, the database, again?  It was called?

MS. HOFFMAN:  OR-Kids.

THE COURT:  OR-Kids, Oregon Kids.

MS. HOFFMAN:  Yes.

THE COURT:  Okay.  So -- I mean, so that would be one of those sort of rules that we're -- that we would devise through an in-camera review.  I will also note this:  I would not have been able to figure that out, but for your very candid and honest disclosure.  So I want to express my appreciation on the record for your high degree of professionalism and integrity.  Thank you.

MS. HOFFMAN:  Thank you, Your Honor.  And we will conduct that review.

THE COURT:  Thank you.

All right.  We've addressed the depositions, the amount of time in the Korbel deposition.  We need to address the Levi -- this is number three on the Markowitz letter:  "Plaintiffs' refusal to produce responsive juvenile court records in compliance with this Court's July 16, 2024, order." This is Levi?

MS. HOFFMAN:  It is.  Yes, Your Honor.

MR. RIZZO:  Yes, Your Honor.  I -- I thought we had

Exhibit 6
Page 4 of 5

C E R T I F I C A T E


Ethan Levi v. Kim Chapman, et al.

Case No. 6:22-cv-01813-MK

and

Shannon Conley v. Kim Chapman, et al.

Case No. 6:23-cv-01353-MK

Status Conference

August 6, 2024


I certify, by signing below, that the foregoing is a true and correct transcript of the record, taken by stenographic means, of the proceedings in the above-entitled cause.  A transcript without an original signature, conformed signature, or digitally signed signature is not certified.


/s/Lindsey A. Weresch, RMR, CRR, CSR

_____

Official Court Reporter          Signature Date: 8/9/2024
Oregon CSR No. 14-0427           CSR Expiration Date: 6/30/2026

Exhibit 6
Page 5 of 5



# RIZZO|BOSWORTH|ERAUT PC

*Levi v. Chapman et al* **Case No. 6:22-cv-01813-MK**
**OR-Kids Access**

| Witness | Date | Page/ Line | Ex. Page # | Description |
|---|---|---|---|---|
| Billy Cordero, DHS supervisor, Marion County Child Welfare | September 4, 2020 | 85/8 – 85/25 | Pg. 6 | Q. Now, if a Child Welfare case is not specified, do a lot of people have access to it? MS. SCHNEIDER: Object to the form of the question. (Pause in the proceedings). MS. SCHNEIDER: You can go ahead and answer, Mr. Cordero. *THE WITNESS: Okay. I'm going to think, if it's not specified, do a lot of people have access to the record? My understanding is that each staff member, depending on your position, is given a certain clearance and access, depending on your role. So I'm not sure what "a lot" is. But if a record is not sensitized, if you have been given clearance based on your job duties and your particular role, and your role is to access provider files, then you should have access to them.* |
| Sue Kauzlarich, screening supervisor, Lane County Child Welfare | June 20, 2024 | 49/23 – 50/19 | Pg. 9-10 | Q. And you're supervising the people overseeing visits right now. Right? A. Correct. Q. They type in their notes into OR-Kids whether it's from the field or directly in there? A. Uh-huh. Q. Do you have occasion to look at those notes? A. Oh, yes. *Q. And you can look at them even when they* |

p 503.229.1819 | 1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
www.rizzopc.com

Exhibit 7
Page 1 of 19

| | | | | | |
|---|---|---|---|---|---|
| | | | | *are not finalized. Right?* *A. Yes. If they've been started in OR-Kids anyone can see them unless it's a sensitive case.* *Q. So it's only if it's -- but if it's a sensitive case it doesn't matter whether the note is finalized? Here. Let me step back. As long as a note is started in OR-Kids anybody can see the note. Right? A. Correct. Q. Assuming it's not a sensitive case? A. Yes.* |
| Kassidy O'Brien, caseworker, Lane County Child Welfare | June 11, 2024 | 318/2 – 319/2 | Pg. 13-14 | Q. Is there some way that you would check to see whether or not there was an open assessment on a child that you had concerns about? A. I -- *I would have access to check that in our system.* What my practice would more commonly be is reaching out to the caseworker. Q. Okay. And I want to talk about that. When you say you would have access to see about assessments, can you describe what that is? A. What my access point is like? Q. Yeah. A. Sure. So we use the OR-Kids system to track our cases, and *I would be able to view cases I'm not assigned to unless there's a specific reason I can't. So some cases are marked sensitive or confidential. But in general, I would be able to open a case assigned to someone else in our computer system.* And if there's an open assessment, it should be logged in our system. That wouldn't necessarily give me access to current information like if a -- if an assessment is in progress and the report hasn't been typed up yet, I wouldn't necessarily have all the current |

| | | | | 1 information, but I would be able to see that there's 2 an open assessment and who it's assigned to. |
|---|---|---|---|---|
| Kassidy O'Brien, caseworker, Lane County Child Welfare | June 11, 2024 | 334/14 – 335/8 | Pg. 15-16 | 14 Q. Now, with respect to JC and ZC -- I just 15 want to make sure that I understand -- when they 16 lived at the Duncan-Raygosa home, there were other 17 children who also lived there that were placed by 18 DHS; is that correct? 19 A. That's correct. 20 Q. And if you wanted to, you could access the 21 case notes for those other children; is that 22 correct? 23 A. I can't say with certainty because I don't 24 know if those other children were on sensitive or 25 confidential cases. *If they were not, then I* *1 believe I would have been able to access case notes* *2 that were finalized in our OR-Kids system.* 3 Q. So if the other DHS-placed children in the 4 household were not marked as sensitive and 5 confidential, you would be able to access those case 6 notes of other children in the Duncan-Raygosa home? 7 A. *I believe I would be able to access any* *8 case notes that were finalized.* |
| Kassidy O'Brien, caseworker, Lane County Child Welfare | June 11, 2024 | 346/11 – 347/19 | Pg. 17-18 | 11 Q. All right. So at that time what could you 12 access about the Duncan-Raygosa home? 13 A. So in our system -- so everything I'm 14 talking about is in the OR-Kids system. 15 In the OR-Kids system, the -- in a folio 16 for foster parents is separate from the one for all 17 the kids in their home. So, for example, the folio 18 that I would access to see things about the |

Duncan-Raygosa home would, for the most part, not include information about the children in their home other than a list of household residents. So I would be able to access for those resource parents the part of their file that gives me their name, their address, their phone number, who is in their home -- there may be more than that that I would be able to see specific to the resource parents. And then specific to the children -- again, with the presumption their case is not sensitive or confidential -- I would be able to access anything in -- I think anything -- I don't know -- there may be spaces I can't access -- but I think I would be able to access most things in OR-Kids that another worker has typed and completed and finalized. So that would include case notes, a finalized assessment -- I don't -- I would have to check with a supervisor before I knew if it was appropriate for me to look at another child's, like, notes and documentations. That's nothing I've ever been called on to do so. I don't actually know where the line would be drawn. But as far as like, technically, I think I would have access to those things.

1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

A.F.,                           )
                                )
        Plaintiff,              )    Case No.
                                )
   vs.                          )    2:18-cv-01404-SU
                                )
CHRISTOPHER EVANS, et al.       )
                                )
            Defendants.         )
_____)
E.F.,                           )
                                )
            Plaintiff,          )    Case No.
                                )
   vs.                          )    2:18-cv-01056-SU
                                )
CHRISTOPHER EVANS, et al.       )
                                )
            Defendants.         )
_____)


        VIDEOTAPED DEPOSITION OF BILLY CORDERO

        Taken at the instance of the Plaintiffs



                            September 4, 2020

                            12:38 p.m.

                            Via Videoconference



            BRIDGES REPORTING & LEGAL VIDEO
             Certified Shorthand Reporters
                    P. O. Box 223
              Pendleton, Oregon  97801
             (541) 276-9491 - (800) 358-2345

Exhibit 7
Page 5 of 19

85

page.  I don't know if they are exactly stored within OR-Kids.

Q.    So you don't know if there is a link that took you elsewhere or the document itself was on the database.

Is that fair?

A.    Right.

Q.    Now, if a Child Welfare case is not specified, do a lot of people have access to it?

MS. SCHNEIDER:  Object to the form of the question.

(Pause in the proceedings).

MS. SCHNEIDER:  You can go ahead and answer, Mr. Cordero.

THE WITNESS:  Okay.  I'm going to think, if it's not specified, do a lot of people have access to the record?

My understanding is that each staff member, depending on your position, is given a certain clearance and access, depending on your role.

So I'm not sure what "a lot" is.  But if a record is not sensitized, if you have been given clearance based on your job duties and your particular role, and your role is to access provider files, then you should have access to them.

STATE OF OREGON          )
                         )  ss.
County of Umatilla       )


          I, William J. Bridges, do hereby certify that
at the time and place heretofore mentioned in the
caption of the foregoing matter, I was a Notary Public
for the State of Oregon; that at said time and place I
reported in stenotype all testimony adduced and
proceedings had in the foregoing matter; that
thereafter my notes were reduced to typewriting and
that the foregoing transcript consisting of 161
typewritten pages is a true and correct transcript of
all such testimony adduced and proceedings had and of
the whole thereof.

          Witness my hand at Pendleton, Oregon, on
this _____ day of September, 2020.




                         _____
                         William J. Bridges
                         Notary Public of Oregon
                         My certificate expires: 10/10/22

162

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ETHAN LEVI,                    )Case 6:22-CV-01813-MK

          Plaintiff,       )

   v.                          )Deposition of

KIM CHAPMAN, in her individual)Sue Kauzlarich

capacity, et al.,              )

          Defendants.      )June 20, 2024

_____

SHANNON CONLEY, Conservator   )Case 6:23-CV-01353-MK

for Z.C., a minor,             )

          Plaintiff,       )

   v.                          )

KIM CHAPMAN, et al.,           )

          Defendants.      )

_____

OREGON DEPARTMENT OF HUMAN    )

SERVICES,                      )

   Third-Party Plaintiff,   )

   v.                          )

JOE ALBERT RAYGOSA,            )

   Third-Party Defendant.   )

Exhibit 7
Page 8 of 19

Sue Kauzlarich

49

A.    No, I don't think so.

Q.    Are you still a manager?

A.    Yes.

Q.    PEMC?

A.    Not anymore.

Q.    Can you explain to me what that means?

A.    We are now called Child Welfare Manager 2. I don't know why it changed.  I'm sure there was an email about it.

Q.    What did PEMC stand for?

A.    Principal Executive Manager, and then I want to say the A, B, and C had to -- it was -- I think it was in reference to maybe who or how many people you supervised or what they did, but I don't know for sure.

Q.    As a manager can you look at any case notes you need to for the purposes of your work in child welfare?

A.    I believe so.  I believe managers -- I don't think I've ever had to assign myself to a sensitive case in OR-Kids.  I don't remember FACIS at all.  But I think I can just pop into stuff.

Q.    And you're supervising the people overseeing visits right now.  Right?

A.    Correct.

Exhibit 7
Page 9 of 19

Sue Kauzlarich

50

Q.    They type in their notes into OR-Kids whether it's from the field or directly in there?

A.    Uh-huh.

Q.    Do you have occasion to look at those notes?

A.    Oh, yes.

Q.    And you can look at them even when they are not finalized.  Right?

A.    Yes.  If they've been started in OR-Kids anyone can see them unless it's a sensitive case.

Q.    So it's only if it's -- but if it's a sensitive case it doesn't matter whether the note is finalized?

Here.  Let me step back.

As long as a note is started in OR-Kids anybody can see the note.  Right?

A.    Correct.

Q.    Assuming it's not a sensitive case?

A.    Yes.

Q.    It does not have to be finalized in order to see it.  Right?

A.    Correct.

Q.    Who can make changes to it?

A.    I believe only the person who started the note.  So if -- you can do a case note on a case and

Exhibit 7
Page 10 of 19

Sue Kauzlarich

146

State of Oregon    )
                   )         ss.
County of Lane     )

I, Sara Fahey Wilson, CSR, a Certified Shorthand Reporter for the State of Oregon, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported all testimony and other oral proceedings had in the foregoing matter; that the foregoing transcript consisting of 145 pages contains a full, true and correct transcript of said proceedings reported by me to the best of my ability on said date.

If any of the parties or the witness requested review of the transcript at the time of the proceedings, such correction pages are attached.

IN WITNESS WHEREOF, I have set my hand this 27th day of June 2024, in the City of Eugene, County of Lane, State of Oregon.

Sara Fahey Wilson, CSR

Oregon CSR No. 06-0400

Expiration Date:  March 31st, 2026

Washington CSR No. 21014643

Expiration Date:  May 7th, 2025

ccreporting.com

Exhibit 7
Page 11 of 19

Kassidy O'Brien
Volume 2

266

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

ETHAN LEVI,                          )
                                     )
        Plaintiff,                   )
                                     )
     v.                              )No.6:22-CV-01813 MK
                                     )
KIM CHAPMAN, in her                  )
individual capacity, et al.,         )
                                     )
        Defendants.                  )
_____        )
SHANNON CONLEY, Conservator          )
for Z.C., a minor,                   )
                                     )Volume 2
        Plaintiff,                   )Pages 266-567
                                     )
     v.                              )No.6:23-CV-01353 MK
                                     )
KIM CHAPMAN, et al.,                 )
                                     )
        Defendants.                  )
_____        )
                                     )
OREGON DEPARTMENT OF HUMAN           )
SERVICES,                            )
                                     )
     Third-Party Plaintiff,          )
                                     )
     v.                              )
                                     )
JOE ALBERT RAYGOSA,                  )
                                     )
     Third-Party Defendants.         )

DEPOSITION OF KASSIDY O'BRIEN

June 11th, 2024

Tuesday

9:36 A.M.

ccreporting.com

Exhibit 7
Page 12 of 19

Kassidy O'Brien

Volume 2

318

they were already actively working on it.

Q.    Is there some way that you would check to see whether or not there was an open assessment on a child that you had concerns about?

A.    I -- I would have access to check that in our system.  What my practice would more commonly be is reaching out to the caseworker.

Q.    Okay.  And I want to talk about that. When you say you would have access to see about assessments, can you describe what that is?

A.    What my access point is like?

Q.    Yeah.

A.    Sure.  So we use the OR-Kids system to track our cases, and I would be able to view cases I'm not assigned to unless there's a specific reason I can't.  So some cases are marked sensitive or confidential.

But in general, I would be able to open a case assigned to someone else in our computer system.  And if there's an open assessment, it should be logged in our system.

That wouldn't necessarily give me access to current information like if a -- if an assessment is in progress and the report hasn't been typed up yet, I wouldn't necessarily have all the current

Exhibit 7
Page 13 of 19

information, but I would be able to see that there's an open assessment and who it's assigned to.

Q.    Okay.  And that's through the OR-Kids system?

A.    Correct.

Q.    And if you wanted to know if a child -- if there was an abuse assessment/investigation open for that child and it wasn't your child, you would be able to look at that assessment/investigation?

A.    I would be able to look and see that there was an assessment.  I probably would not have access to the details of it until it was completed.

Q.    And you say probably.  Are you not certain about that?

A.    Well, if it's a sensitive or confidential case, I wouldn't be able to access it, but in that case, I would know that I couldn't access it.

So, for example, the Colby case was marked sensitive and so other workers not assigned would not have been able to see if there was an open assessment.  They would have had to ask a supervisor, ask me.  They wouldn't have been able to see it in the system.

Q.    I want to get back to that sensitive and confidential marking later, but I wanted to ask:

Exhibit 7
Page 14 of 19

were you able, if you wanted to, to access the case notes of any other child that was living at the same home?

A.    I don't know.

Q.    Have you ever done that?

MR. EDELSON:  Objection.  Vague.

A.    I don't think I've ever had cause to, no.

BY MS. RICHARDSON:

Q.    Let me ask you outside of JC/ZC, as a caseworker, have you ever looked at another child case notes who lived in that home, the same home as the child that you were in charge of?

A.    Not that I recall.

Q.    Now, with respect to JC and ZC -- I just want to make sure that I understand -- when they lived at the Duncan-Raygosa home, there were other children who also lived there that were placed by DHS; is that correct?

A.    That's correct.

Q.    And if you wanted to, you could access the case notes for those other children; is that correct?

A.    I can't say with certainty because I don't know if those other children were on sensitive or confidential cases.  If they were not, then I

Exhibit 7
Page 15 of 19

believe I would have been able to access case notes that were finalized in our OR-Kids system.

Q.   So if the other DHS-placed children in the household were not marked as sensitive and confidential, you would be able to access those case notes of other children in the Duncan-Raygosa home?

A.   I believe I would be able to access any case notes that were finalized.

Q.   So if there was some sort of case note that had not been finalized, you don't think you could access that?

A.   I don't think so.  I'm -- I'm not certain, but I don't think I'd be able to.

Q.   So can you tell me what a finalized case note is?

A.   So when we're entering notes into OR-Kids, they are editable by the author until the author checks a little button that says finalized or I think they automatically finalize, like, a certain amount of time after they're written.

And so what I'm saying is that if someone has a -- like, a draft form, I don't know whether I can see that or not.  Once the note is marked final, to the best of my knowledge, I'd be able to see it unless it was sensitive or confidential.

Exhibit 7
Page 16 of 19

Q.    -- so what would you be able to access? And let's just talk about the Duncan-Raygosa home because that was from 2016 to 2019 when you were in charge of JC and ZC; correct?

A.    When they were assigned to my caseload, yes.

Q.    Yes.  And when they were assigned to your caseload at some point in time they lived at the Duncan-Raygosa home; correct?

A.    Correct.

Q.    All right.  So at that time what could you access about the Duncan-Raygosa home?

A.    So in our system -- so everything I'm talking about is in the OR-Kids system.

In the OR-Kids system, the -- in a folio for foster parents is separate from the one for all the kids in their home.  So, for example, the folio that I would access to see things about the Duncan-Raygosa home would, for the most part, not include information about the children in their home other than a list of household residents.

So I would be able to access for those resource parents the part of their file that gives me their name, their address, their phone number, who is in their home -- there may be more than that

Exhibit 7
Page 17 of 19

Kassidy O'Brien
Volume 2

347

that I would be able to see specific to the resource parents.

And then specific to the children -- again, with the presumption their case is not sensitive or confidential -- I would be able to access anything in -- I think anything -- I don't know -- there may be spaces I can't access -- but I think I would be able to access most things in OR-Kids that another worker has typed and completed and finalized.

So that would include case notes, a finalized assessment -- I don't -- I would have to check with a supervisor before I knew if it was appropriate for me to look at another child's, like, notes and documentations.

That's nothing I've ever been called on to do so.  I don't actually know where the line would be drawn.  But as far as like, technically, I think I would have access to those things.

Q.    I want to go back to the part -- because you said there was a separate folio.  Is that a word that you use or is that an industry term?

A.    Probably neither.  That's the best word that came to mind in the moment.  I really don't know, like, what the right language for it is.  But

Exhibit 7
Page 18 of 19

STATE OF OREGON        )
                       )   ss.
County of Lane         )


     I, Deborah M. Bonds, CSR-RPR, a Certified Shorthand Reporter for the State of Oregon and Washington, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported all testimony and other oral proceedings in the foregoing matter; that the foregoing transcript consisting of pages 266-565 contains a full, true and correct transcript of the proceedings reported by me to the best of my ability on said date.

     If any of the parties or the witness requested review of the transcript at the time of the proceedings, correction pages have been inserted.

     IN WITNESS WHEREOF, I have set my hand and CSR seal this 28th day of June 2024, in the City of Eugene, County of Lane, State of Oregon.



Deborah M. Bonds, CSR, CCR, RPR

Oregon CSR No. 01-0374, Expires September 30, 2026

Washington CCR No. 21014344, Expires May 5, 2025

Exhibit 7
Page 19 of 19



# RIZZO | BOSWORTH | ERAUT PC

*Levi v. Chapman et al* Case No. 6:22-cv-01813-MK
**Case Note Discovery**

| Witness | Date | Page/ Line | Ex. Page # | Description |
|---|---|---|---|---|
| Dawn Hunter, former Program Manager, Marion County Child Welfare | June 3, 2022 | 169/23 – 170/20 | Pg. 5 | 23 Q. *What discovery goes out routinely?* 16:01:30<br>24 A. *Information from the case record that has* 16:01:33<br>25 *been gained since the last time discovery was sent*<br>1 *or if it's an initial discovery, the information* 16:01:40<br>2 *that's available to the case worker.* 16:01:46<br>3 Q. *Would that include case notes?* 16:01:47<br>4 A. *Yes.* 16:01:54<br>5 Q. *And visitation notes?* 16:01:54<br>6 A. *Yes.* 16:01:59<br>7 Q. *Would it include screening reports?* 16:01:59<br>8 A. *Yes.* 16:02:09<br>9 Q. *I sensed a little bit of hesitation and I* 16:02:14<br>10 *want to see if there are circumstances in which it* 16:02:19<br>11 *would not contain screening reports.* 16:02:21<br>12 MS. CHIN: *Objection to the form.* 16:02:24<br>13 A. *No. It would be from one point to another* 16:02:26<br>14 *point, so yes.* 16:02:28<br>15 Q. *And what about completed Child Protective* 16:02:30<br>16 *Services assessments?* 16:02:35<br>17 A. *Yes.* 16:02:35<br>18 Q. *And does that include CPS assessments* 16:02:35<br>19 *relating to abuse in foster care?* 16:02:44<br>20 A. *Yes.* |
| Dawn Hunter, former Program Manager, Marion County Child Welfare | June 3, 2022 | 171/23 – 172/13 | Pg. 7 | 23 Q. *And is it the case worker's responsibility* 16:04:49<br>24 *to put information to be discovered in a designated* 16:04:55<br>25 *place within their cube with ongoing discovery form* 16:04:59<br>1 *attached to the front of the information?* |

Exhibit 8
Page 1 of 16

| | Date | Line | Pg. | Testimony |
|---|---|---|---|---|
| | | | | 16:05:02<br>A. Yes, at that time it was. 16:05:06<br>Q. And then for the -- would that include the 16:05:08<br>case notes? 16:05:12<br>A. It could include the case notes. Case 16:05:13<br>notes are often held electronically in the 16:05:19<br>electronic file rather than the paper case file. 16:05:22<br>Q. And then in the event that they're in the 16:05:24<br>electronic file was it the discovery clerk who 16:05:26<br>would print them out... and then what? 16:05:29<br>A. Well, they may not have printed them out. 16:05:33<br>Our discovery is sent electronically; so attach it, 16:05:39<br>yes. |
| Erin Lane, supervisor, Lane County Child Welfare | June 26, 2024 | 142/16 – 143/3 | Pg. 11 | Q. What is your understanding of the discovery process in the juvenile court?<br>A. Excuse me.<br>So my understanding is that documents that we receive or create, including case notes, court --<br>well, court reports are distributed through the regular course of business, but reports from providers, reports from case notes, family time coordinators, et cetera, documents that we receive or create, then we have to provide them to all the parties on the case so they're aware of the information that we have and how we are making the decisions we're making. |
| Kassidy O'Brien, caseworker, Lane County Child Welfare | June 11, 2024 | 330/8 – 330/24 | Pg. 15 | Q. Is that something that you would tell his therapist?<br>A. I would give her the information that I thought was important for her to know so that would generally be gender, age, and if there's something about their personality that's relevant, and then trust that -- it is very easy for the therapist, if they feel like they need a name, they can have a |

Exhibit 8
Page 2 of 16

| | | | | conversation with the child, you know, who is it that you're sharing a room with or who do you play with the most in the home? They would be able to get that information, no problem. *But everything -- everything I put in my notes is discoverable and goes out to all parties.* So if I were to identify a child, I would be violating their right to confidentiality. |
|---|---|---|---|---|

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

J.M., et al.,                    )
                                 )
          Plaintiffs,            )
                                 )
          vs.                    )   No. 6:18-CV-00739-YY
                                 )
KARLA MAJOR, et al.,             )
                                 )
          Defendants.            )
                                 )

VIDEOTAPED DEPOSITION OF

DAWN HUNTER

Volume I

Taken on behalf of Plaintiffs

*    *    *

June 3, 2022

Salem, Oregon

9:24 a.m.

Reported by:

Gwen Dickson, CSR/RPR/CCR

Page 1

Exhibit 8
Page 4 of 16

Dawn Hunter , Volume I - June 3, 2022

A.    Yes.    16:00:20

Q.    And then it says retrieve files from case worker at the bottom.    16:00:21    16:00:24

A.    Yes.    16:00:26

Q.    Can you explain to me how that process works?    16:00:26    16:00:30

A.    The discovery person goes to the desk of the case worker and picks up the files.    16:00:30    16:00:34

Q.    And are the files prepared in advance for the discovery person?    16:00:38    16:00:41

A.    The request is prepared in advance and potentially either information from the files or information tagged from the files in there. Depends on what the request is.    16:00:42    16:00:50    16:00:53    16:00:58

Q.    So who makes the request?    16:00:59

A.    Case worker.    16:01:02

Q.    And does the case worker dictate the scope of the discovery?    16:01:02    16:01:08

A.    If it's discovery of a particular item, yes; otherwise there's discovery that goes out just routinely on cases from the last discovery till this, over a certain period of time.    16:01:11    16:01:20    16:01:23    16:01:28

Q.    What discovery goes out routinely?    16:01:30

A.    Information from the case record that has been gained since the last time discovery was sent    16:01:33    16:01:37

Page 169

or if it's an initial discovery, the information     16:01:40

that's available to the case worker.     16:01:46

Q.   Would that include case notes?     16:01:47

A.   Yes.     16:01:54

Q.   And visitation notes?     16:01:54

A.   Yes.     16:01:59

Q.   Would it include screening reports?     16:01:59

A.   Yes.     16:02:09

Q.   I sensed a little bit of hesitation and I     16:02:14
want to see if there are circumstances in which it     16:02:19
would not contain screening reports.     16:02:21

     MS. CHIN:  Objection to the form.     16:02:24

A.   No.  It would be from one point to another     16:02:26
point, so yes.     16:02:28

Q.   And what about completed Child Protective     16:02:30
Services assessments?     16:02:35

A.   Yes.     16:02:35

Q.   And does that include CPS assessments     16:02:35
relating to abuse in foster care?     16:02:44

A.   Yes.     16:02:45

Q.   And in 2011 was there an exception for CPS     16:02:46
assessments relating to abuse in foster care?     16:02:50

A.   I don't recall in 2011 whether or not     16:02:52
those were sent routinely or not.     16:03:00

Q.   Do you recall whether there was a point in     16:03:03

Page 170

Exhibit 8
Page 6 of 16

which they started to be sent routinely and were    16:03:06

not previously?    16:03:10

A.    There was a point when they were started    16:03:12
to be sent routinely, I don't remember exactly when    16:03:15
that was in part because reports for allegations in    16:03:17
foster care are -- were contained under the name of    16:03:22
the foster parent rather than the child's case    16:03:27
name.    16:03:32

Q.    Turning to 19,454, please.    16:03:33

Under ongoing discovery, I think that    16:04:15
that's what you were referring to earlier with    16:04:19
regard to not the initial discovery but discovery    16:04:21
in the case as it progresses.  Right?  From one    16:04:25
hearing to the next or something.  Is that what you    16:04:27
mean?    16:04:29

A.    Yes.  Well, not necessarily one hearing    16:04:29
but a period of time.  It could include hearing to    16:04:34
hearing but it's a period of time.    16:04:36

Q.    Okay.  Under case worker, is it the case    16:04:37
worker's responsibility to fill out the ongoing    16:04:43
discovery form?    16:04:46

A.    Yes.    16:04:48

Q.    And is it the case worker's responsibility    16:04:49
to put information to be discovered in a designated    16:04:55
place within their cube with ongoing discovery form    16:04:59

Page 171

Exhibit 8
Page 7 of 16

attached to the front of the information?     16:05:02

A.     Yes, at that time it was.     16:05:06

Q.     And then for the -- would that include the     16:05:08
case notes?     16:05:12

A.     It could include the case notes.   Case     16:05:13
notes are often held electronically in the     16:05:19
electronic file rather than the paper case file.     16:05:22

Q.     And then in the event that they're in the     16:05:24
electronic file was it the discovery clerk who     16:05:26
would print them out...   and then what?     16:05:29

A.     Well, they may not have printed them out.     16:05:33
Our discovery is sent electronically; so attach it,     16:05:39
yes.     16:05:44

         MS. CHIN:  Are you done with this exhibit?     16:05:52

         MS. SKJELSET:  Yes.     16:05:55

         MS. CHIN:  I'm going to de-designate it.     16:05:59
It's got a confidentiality stamp on it.  So to the     16:06:00
extent that you need it for anything we will remove     16:06:01
the confidentiality designation.     16:06:07

Q.     Turning to the next exhibit, 433.  Please.     16:06:14

         Are you familiar with this disclosure     16:06:27
analysis guidelines resource guide?     16:06:29

A.     No, I don't recall seeing this.     16:06:31

Q.     Most interested in page 19,556.     16:06:42

         Do you see this information memorandum     16:06:59

Page 172

Exhibit 8
Page 8 of 16

C E R T I F I C A T E

I, Gwen A. Dickson, a Registered Professional Reporter, and Oregon Certified Shorthand Reporter, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, DAWN HUNTER appeared personally before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 197, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

Witness my hand at Woodburn, Oregon, this 15th day of June, 2022.

GWEN DICKSON, RPR

OR CSR #15.0434 Exp 9/30/24

Page 198

Exhibit 8
Page 9 of 16

Erin Lane

SUBJECT TO PROTECTIVE ORDER

1

```
                US DISTRICT COURT
                DISTRICT OF OREGON
                 EUGENE DIVISION

ETHAN LEVI,                     )
                                )
         Plaintiff,             )
                                )
     v.                         ) No. 6:22-CV-01813 MK
                                )
KIM CHAPMAN, in her individual  )
capacity, et al.,               )
                                )
         Defendants.            )
--------------------------------)
SHANNON CONLEY, Conservator     )
for Z.C., a minor,              )
                                )
         Plaintiff,             )
                                )
     v.                         ) No. 6:23-CV-01353 MK
                                )
KIM CHAPMAN, et al.,            )
                                ) SUBJECT TO PROTECTIVE
         Defendants.            )
_____)        ORDER
OREGON DEPARTMENT OF HUMAN      )
SERVICES,                       )
                                )
     Third-Party Plaintiff,     )
                                )
              v.                )
                                )
JOE ALBERT RAYGOSA,             )
                                )
     Third-Party Defendant.     )
```

DEPOSITION OF ERIN LANE

June 26, 2024

Wednesday

9:03 A.M.

ccreporting.com

Exhibit 8
Page 10 of 16

Erin Lane

SUBJECT TO PROTECTIVE ORDER

142

Q.    Let me reframe that by asking the same question but inserting correctly "permanency supervisor."

A.    So it -- the -- any trainings that they would have received in relation to conflict of interest would have come through their -- their general training through essentials or core, depending on when they were hired by the agency.  If there was something that I observed that I would have thought was a conflict, I would have pointed it out typically, but the training is typically done through essentials and core is my understanding.

Q.    Nothing that you needed to do in addition then.  Is that right?

A.    Correct.

Q.    What is your understanding of the discovery process in the juvenile court?

A.    Excuse me.

So my understanding is that documents that we receive or create, including case notes, court -- well, court reports are distributed through the regular course of business, but reports from providers, reports from case notes, family time coordinators, et cetera, documents that we receive or create, then we have to provide them to all the

Exhibit 8
Page 11 of 16

1: Case 6:22-cv-01813-MTK    Document 203    Filed 09/19/24    Page 60 of 65

parties on the case so they're aware of the information that we have and how we are making the decisions we're making.

Q.    Did you provide the 307s?

A.    I -- that is not -- wasn't my specific responsibility as a supervisor to engage in the discovery process.

Q.    Did you ever confirm whether the 307 or the abuse assessment relating to Mr. Raygosa's sexual abuse of JC was discovered to the juvenile court?

A.    Again, it's not my specific responsibility as a supervisor to look at every single document that is or isn't discovered.  If there is an item that wasn't and it's brought to my attention, then I can follow up, but I don't have any recollection of that happening, of that being brought to my attention that it wasn't discovered.

Q.    So you've -- you've never confirmed that the abuse assessment relating to Mr. Raygosa's sex abuse of JC was discovered to the juvenile court. Is that right?

A.    So it's -- and maybe this is my misunderstanding, but it's my -- but I believe that discovery is when we provide it to the parties and

Exhibit 8
Page 12 of 16

SUBJECT TO PROTECTIVE ORDER

279

State of Oregon     )
                    )       ss.
County of Lane      )

     I, Christine Oljace, CSR-RPR, a Certified Shorthand Reporter for the State of Oregon, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported by stenotype all testimony and other oral proceedings had in the foregoing matter; that the foregoing transcript consisting of 278 pages contains a full, true and correct transcript of said proceedings reported by me to the best of my ability on said date.

     If any of the parties or the witness requested review of the transcript at the time of the proceedings, correction pages are attached.

     IN WITNESS WHEREOF, I have set my hand this 12th day of July 2024, in the City of Eugene, County of Lane, State of Oregon.

Christine Oljace, CSR-RPR-CRC

CSR No. 05-0397

Expiration Date:  September 30, 2024

Exhibit 8
Page 13 of 16

266

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

ETHAN LEVI,                        )
                                   )
        Plaintiff,                 )
                                   )
     v.                            )No.6:22-CV-01813 MK
                                   )
KIM CHAPMAN, in her                )
individual capacity, et al.,       )
                                   )
        Defendants.                )
_____    )
SHANNON CONLEY, Conservator        )
for Z.C., a minor,                 )
                                   )Volume 2
        Plaintiff,                 )Pages 266-567
                                   )
     v.                            )No.6:23-CV-01353 MK
                                   )
KIM CHAPMAN, et al.,               )
                                   )
        Defendants.                )
_____    )
                                   )
OREGON DEPARTMENT OF HUMAN         )
SERVICES,                          )
                                   )
     Third-Party Plaintiff,        )
                                   )
     v.                            )
                                   )
JOE ALBERT RAYGOSA,                )
                                   )
     Third-Party Defendants.       )

DEPOSITION OF KASSIDY O'BRIEN

June 11th, 2024

Tuesday

9:36 A.M.

Exhibit 8
Page 14 of 16

use gender, age, and if there's anything that's really relevant.

And then -- excuse me -- ZC, there's no barriers on what he or any other child can say. So he could identify that child by first name, full name, initials, whatever he wants, but that's not something that I would put in my case notes.

Q. Is that something that you would tell his therapist?

A. I would give her the information that I thought was important for her to know so that would generally be gender, age, and if there's something about their personality that's relevant, and then trust that -- it is very easy for the therapist, if they feel like they need a name, they can have a conversation with the child, you know, who is it that you're sharing a room with or who do you play with the most in the home?

They would be able to get that information, no problem. But everything -- everything I put in my notes is discoverable and goes out to all parties. So if I were to identify a child, I would be violating their right to confidentiality.

Q. Okay. And who trained you to do that?

Exhibit 8
Page 15 of 16

STATE OF OREGON        )

                       )    ss.

County of Lane         )


    I, Deborah M. Bonds, CSR-RPR, a Certified Shorthand Reporter for the State of Oregon and Washington, certify that the witness was sworn and the transcript is a true record of the testimony given by the witness; that at said time and place I reported all testimony and other oral proceedings in the foregoing matter; that the foregoing transcript consisting of pages 266-565 contains a full, true and correct transcript of the proceedings reported by me to the best of my ability on said date.

    If any of the parties or the witness requested review of the transcript at the time of the proceedings, correction pages have been inserted.

    IN WITNESS WHEREOF, I have set my hand and CSR seal this 28th day of June 2024, in the City of Eugene, County of Lane, State of Oregon.


Deborah M. Bonds, CSR, CCR, RPR

Oregon CSR No. 01-0374, Expires September 30, 2026

Washington CCR No. 21014344, Expires May 5, 2025

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>          Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>          Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>          Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>          Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Declaration of Mary Skjelset in Support of Plaintiff Levi's Response to Defendants' Motion for Reconsideration**

<u>**VIA ECF**</u>

| |
|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: jill.schneider@doj.state.or.us**<br>**Email: nicholas.mancuso@doj.state.or.us**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services* |

<u>**VIA ECF**</u>

Lauren Blaesing
Harry B. Wilson
Alexandra Rhee
Chad Naso
Jeffrey Edelson
Anit Jindal
Markowitz Herbold PC
1455 SW Broadway
Ste. 1990
Portland, OR. 97201
Ph: 503-295-3085
Email: laurenblaesing@markowitzherbold.com
Email: harrywilson@markowitzherbold.com
Email: alexrhee@markowitzherbold.com
Email: chadnaso@markowitzherbold.com
Email: jeffedelson@markowitzherbold.com
Email: anitjindal@markowitzherbold.com
*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

Dated this 19th     day of September, 2024.

 s/Cheridan Carr
Cheridan Carr, Paralegal

1 – Certificate of Service