Mr. Steven Rizzo, OSB # 840853
Ms. Mary D. Skjelset, OSB # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

Ms. Caitlin V. Mitchell, OSB #123964
Johnson Johnson Lucas & Middleton PC
975 Oak Street, Ste. 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
cmitchell@justicelawyers.com

ATTORNEYS FOR PLAINTIFF LEVI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al.,<br><br>　　　　　Defendants. | CASE NO. 6:22-cv-01813-MK<br><br>*Lead Case*<br><br>**LEVI'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVE MOTION TO STRIKE** |
| OREGON DEPARTMENT OF HUMAN SERVICES, et al.,<br><br>　　　　　Third-Party Plaintiffs,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>　　　　　Third-Party Defendant. | |
| SHANNON CONLEY, Conservator for Z.C., a minor,<br><br>　　　　　Plaintiff, | |

1 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS OR ALTERNATIVE MOTION TO STRIKE



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

vs.

KIM CHAPMAN et al.,

          Defendants.

CASE NO. 6:23-cv-01353-MK

*Trailing Case*

## INTRODUCTION

The Court should deny defendants' Rule 12(b)(6) motion to dismiss in *Levi* (ECF 214) for procedural and substantive deficiencies. As to procedure, Mr. Jindal's Declaration presents matters outside the pleadings, which under Rule 12(d) may convert the motion into a Rule 56 summary judgment motion. To avoid premature and unnecessary briefing, the Court should exclude – or strike – the Jindal Declaration and treat the motion as a motion to dismiss. However, if the Court is inclined to effect the conversion, Plaintiff *Levi* seeks an opportunity to respond in accord with the existing dispositive motions deadlines (Nov. 27, 2024 Dispositive Motion deadline; ECF 157). The defendants' alternative Rule 12(f) motion to "dismiss" lacks merit. (ECF 214 at 2). The Court should deny it. Plaintiff *Levi's* Response is supported by Rules 1, 8 and 12, and the correspondence, papers, and pleadings on file with Court.[1]

## RELEVANT PROCEDURAL BACKGROUND

Plaintiff *Levi* filed suit on behalf of J.C. against the defendants on November 18, 2022. *Levi* alleged in pertinent part that DHS certified the Duncan-Raygosa foster home in July 2016 with knowledge that Ms. Duncan and Mr. Raygosa were unfit to safely parent. *Levi* alleged that the defendants placed J.C. (9 years old) and her younger brother, Z.C., into the Duncan-Raygosa home, and that Raygosa sexually abused J.C. in that home. (ECF 1, *Levi*). Plaintiff *Conley* filed a civil rights action on behalf of Z.C. against the same defendants on September 18, 2023. *Conley* alleged that Z.C. was abused in the Duncan-Raygosa foster home. (ECF 1, *Conley*).

The defendants in both cases have been represented by two Oregon DOJ AAGs and  at

---

[1] The Court's September 24 2024 Discovery Order formalized the September 6, 2024 consolidation of *Levi* and *Conley* for discovery purposes. (ECF 210). Plaintiff *Levi's* Response therefore reflects the consolidated case caption.


RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

least seven private attorneys employed by Markowitz Herbold PC. (ECF 10, 12, 48, 49, 59, 76, 137, 163, 194). Document production responsive to both cases included fragments of the provider file of Spicer-McCool, where Z.C. and then J.C. were placed following their removal from the Duncan-Raygosa foster home in 2017. These select documents indicated that Z.C. and other young boys were subject to abusive conduct in that home. On June 3, 2024, Plaintiff *Conley* amended the pleadings to include allegations pertaining to the Spicer-McCool foster home. *Conley* alleged in pertinent part that Spicer-McCool used excessive physical discipline and withheld food as discipline, and that Z.C. was subjected to sexual touching in that home. *Conley* also alleged that the defendants were aware of excessive physical discipline, and that ultimately, "DHS determined there were multiple founded allegations of abuse" against the Spicer-McCool home. (ECF 36, *Conley*, 3rd Amend. Compl., ¶ 36-37). *Conley* sought and obtained the full certification file and additional documents and materials relating to the Spicer-McCool home that were not produced to *Levi*.

At the request of the defense counsel, the parties jointly scheduled depositions of the named defendants, other state employees, treating providers and other third-party witnesses subpoenaed by the defendants. As the depositions progressed, new information came to light about the post-disclosure conduct of Defendant Kat O'Brien, whom multiple witnesses testified made statements that undermined J.C.'s disclosure of abuse in the Duncan-Raygosa foster home. At the same time, *Conley* began to mark and question deponents on the defendants' documents pertaining to the Spicer-McCool foster home, where J.C. was placed during O'Brien's efforts to undermine her disclosure. The documents and discovery thereon showed that the Spicer-McCool home was unfit and abusive toward many children in the home, and that Spicer-McCool's unmitigated trauma history and pornography habits posed a particular threat of harm to J.C. as a sexual abuse victim, of which the defendants were subjectively aware.

On August 13, 2024, the defendants moved to compel J.C.'s deposition (prompted (apparently) by the news on August 5 of *Levi's* and *Conley's* alleged "fiduciary abnegation"), *see*

3 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS OR ALTERNATIVE MOTION TO STRIKE



ECF 170, and Plaintiff *Levi* moved for leave to file the first amended complaint to conform to the Spicer-McCool discovery and increase the existing prayer for punitive damages. (*Levi,* ECF 168, 169).[2] The defendants opposed *Levi's* motion to amend, making the same arguments which they now rehash in their Rule 12(b)(6)/12(f) motion, e.g., "new allegations regarding the S-M home are too vague and conclusory," "O'Brien has absolute immunity for her role in the judicial process," etc. (ECF 178 at 7, 9)

On September 6, 2024, the Court heard argument on the above motions and dealt with numerous other matters common to both cases. In connection with the consolidation referenced above, the Court denied defendants' motion to compel J.C.'s deposition and granted Plaintiff *Levi's* motion to amend. The Court permitted the defendants to prepare a discovery plan to address the new allegations. (ECF 210).[3] As part of the plan, the defendants were permitted to serve additional written discovery on *Levi,* re-open previously taken depositions, and depose Spicer-McCool, if need be. (*Id.* at 5).

The defendants served their additional interrogatories and requests for admissions in *Levi* on September 13, 2024. Plaintiff *Levi* responded to these written discovery requests, as ordered, on October 3, 2024. (*Id.* at 5). The defendants, however, decided they could not wait for the discovery responses that the Court allowed and filed the Rule12(b)(6)/12(f) motion in *Levi* on September 24, 2024. (ECF 214).

**STANDARDS**

In ruling on a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of the complaint should be construed favorably to the plaintiff." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 40 L. Ed. 2d 90,

---

[2] The defendants' contention that Plaintiff had unduly delayed in seeking to amend was rebutted by the fact that the defendants withheld production of the Spicer-McCool certification and provider files until July 11, 2024 – relevant portions of which were first marked at Chapman's continuation deposition on August 1, 2024. (ECF 189, Levi, Reply to Defs. Resp to Mot. for Leave).

[3] Relatedly, the Court ruled that (i) if *Levi* submits J.C.'s declaration in connection with dispositive motions the defendants may depose her; and (ii) *Levi* must provide a minimum of 30 days-notice in advance of trial (February 10, 2025) if he intends to call J.C. (*Id.*).



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

94 S. Ct. 1683; *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), *cert. den*, 441 U.S. 965, 99 S. Ct. 2416, 60 L. Ed. 2d 1072 (1979). A complaint should not be dismissed for failure to state a cause of action unless it appears *beyond doubt* that plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief. *Sun Sav. & Loan Ass'n. Diedorff,* 825 F.2d 187, 191 (9th Cir. 1987) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)) (cleaned up); *see also Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (same).

Rule 12(f) motions to strike are generally disfavored and infrequently granted. (ECF 40, 5/12/23 Order) (citing *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings."); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) ("Courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike."); *Contreras, ex rel. Contreras v. Cty. of Glenn*, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010) ("A motion to strike should not be granted unless it is clear that the matter to be stricken could have *no possible bearing* on the subject matter of the litigation.") (emphasis added) (cleaned up)).[4]

ARGUMENT

**A.  *The defendants' motions are procedurally improper.***

Fed. R. Civ. P. 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Such a statement must simply "give the defendant *fair notice* of what the plaintiff's claim is and the *grounds* upon which it rests." *Conley* v. *Gibson,* 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (emphasis added). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swirkiewicz*

---

[4] The defendants' alternative motion to strike is bereft of Rule 12(f) standards.



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

*v. Sorema N.A.,* 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (simplified).[5] Despite their

use of Rule 12(b)(6), the defendants do not seek dismissal of the *Levi* action, and fail to identify

any distinct claim for relief the First Amended Complaint ("FAC") that is not meritorious.

The defendants suggest (*via* footnote 1) that the Rule 12(b)(6) motion is useful to excise

certain paragraphs in the FAC and unspecified "portions of paragraphs," which the defendants

conclude (in the twilight most favorable to themselves) are "insufficient" or exaggerate as "too

conclusory." (ECF 214, n.1 at 2, 5).[6]

On the lookout for "insufficiency," the defendants broadly assert (also *via* a footnote) that

a Rule 12(b)(6) motion "is the proper vehicle for disputing the legal sufficiency of *part* of a claim,"

*see id.*, n.3 at 5. To buttress the assertion, the defendants cite "generally" to a part of Moore's

Federal Practice – Civil § 2-34 (2017) at 84-85, but which reads in its entirety as follows:

> A Rule 12(b)(6) motion is most often brought to seek dismissal of an entire action,
> or one or more distinct claims for relief presented within the action. But the scope
> of the rule is not so limited, and a defendant may seek dismissal as to *particular
> elements of a claim such as one or more categories of damages* sought by the
> plaintiff, even if granting the motion will not entirely dispose of the claim for relief.

*Id.* (emphasis added). Section 2-34 in turn cites to *Vaughn v. Anderson Reg'l Med. Ctr.*, which

affirmed the district court's dismissal of the plaintiff's "claims for pain and suffering damages and

punitive damages because Fifth Circuit precedent *bars* such recoveries under the ADEA [Age

Discrimination in Employment Act]." 849 F.3d 588, 590 (5th Cir. 2017) (cleaned up, emphasis

added). But Plaintiff *Levi's* claim for damages are *not barred* under § 1983 and the defendants are

not moving against damages. Nor are they moving against any other distinct claims for relief or

---

[5] The Court permitted the defendants to propound additional written discovery, re-open depositions, and take others to address the amended allegations. Yet, the defendants saw fit to file motions against the FAC, without regard to the discovery they complained was necessary to defend themselves and without regard for the existing dipositive motions deadline.

[6] (E.g*.,* ECF 215 at 5) ("The conclusory assertion that the S-M home was 'unfit' is insufficient because it fails to provide notice of what [the defendants] did wrong."). *But cf., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("It is well established that, under Rule 8(a), a plaintiff need only provide "enough facts to state a claim to relief that is plausible on its face.").

6 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS OR ALTERNATIVE MOTION TO STRIKE



particular elements thereof. Nothing in Moore's § 2-34 greenlights the defendants' usurpation of Rule 12(b)(6) as a procedural vehicle to excise "insufficient" or "conclusory" allegations.

The defendants' reliance on *Sierra Club v. Portland Elec. Co.*, 663 F. Supp. 2d 983 (D. Or. 2009) is similarly inapt. There, the defendant in pertinent part moved to dismiss the parts of the plaintiff's NSPS (New Source Performance Standards) Subpart Da (standards of performance for electric utility steam generating units) claim (one) for modifications that occurred prior to January 15, 2003, that were *barred* by the statute of limitations. The plaintiff conceded the motion. For that reason, the court ruled that the plaintiff was in turn barred from proceeding on the parts of that claim relating to modifications occurring prior to January 15, 2003. *Id*. at 995. There is no argument that *Levi*'s claims are time barred, and *Sierra Club* does not otherwise lend support to the defendants' broad "proper vehicle" assertion.

Tellingly, the defendants' footnote 3 offers that "if the Court disagrees," the defendants "alternatively moves [*sic*] to strike the new factual allegations under Rule 12(f)." (ECF 214 n.3 at 5). Rule 12(f) provides in pertinent part that the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Id*. However, the defendants' "alternative" motion fails to specify any such matter in the FAC, and alleged "insufficiency" (which is not listed) is addressed on a Rule 12(e) motion for more definite statement, which the defendants strategically avoided filing. Also, as noted above, the defendants' "alternative" motion ignores applicable Rule 12(f) standards, which provide that a motion to strike "should not be granted unless it is clear that the matter to be stricken could have *no possible bearing* on the subject matter of the litigation." *Contreras, supra,* 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010) (emphasis added). Casual though it may be, the defendants' offer in footnote 3 does not come close to meeting this standard.

In sum, the defendants' "alternative" motion to strike is baseless, and the unnecessary Rule 12(b)(6) motion to dismiss smacks of procedural impropriety. For these reasons alone, the Court should deny both motions. If the Court is inclined to reach the merits, then the following points



are relevant.

**B.** ***The defendants' attributed "reputational and stigmatic injury" claim is fiction.***

To set the table for the attribution, the defendants suggest that FAC ¶¶ 100 and 102 allege,

apparently, that "O'Brien harmed J.C.'s reputation and credibility by voicing doubts about J.C.'s

disclosure of sexual abuse." (ECF 217 at 7). But ¶ 100 alleges:

> O'Brien was made aware that J.C. disclosed Joe Raygosa's sexual abuse occurring
> in the Duncan-Raygosa foster home, that the disclosure was detailed and credible
> and that Duncan-Raygosa had fled with their purported niece and nephew. Acting
> in self-interest, O'Brien failed to familiarize herself with J.C.'s forensic child abuse
> evaluation and other supportive facts and instead maintained that J.C.'s disclosure
> was untruthful.

(ECF 196 at 19). In other words, when viewed in the light most favorable to Plaintiff,

O'Brien used her willful blindness to the Kids First forensic evaluation to undermine J.C.'s

disclosure. The defendants skip ¶ 101. Paragraph 102 alleges:

> When O'Brien became aware of the prospect of a criminal trial against Joe Raygosa
> for the acts of sexual abuse perpetrated against J.C., O'Brien prepared a case note
> suggesting that J.C.'s disclosure was untruthful and that her biological father had
> abused her. O'Brien met with the prosecuting attorney and offered to gather
> exculpatory evidence, including the case note she had prepared.

(*Id.*).  In other words, when viewed favorably to Plaintiff, O'Brien used her willful blindness to

manufacture a case note (replete with hearsay) months after the CPS investigation and Kids FIRST

evaluation in anticipation that the prosecutor would likely have to disclose the note to Raygosa's

defense attorney (Mr. Kolego) as exculpatory evidence.[7]

To be clear, Plaintiff does not allege a state law defamation claim. FAC ¶¶ 100 and 102 do

not use the words "reputational" or "stigmatic." Likewise they do not allege a "reputational" injury

---

[7] The Court may recall that the defendants cried foul in response to J.C.'s first and only motion to
amend the complaint to conform to the evidence. The defendants clamored that they were forced
to depose numerous witnesses – including both the prosecutor and defense counsel – of whom they
were always aware. Small wonder: the defendants avoided deposing these two "critically
important" witnesses, and others, notwithstanding the clamoring.

8 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS OR ALTERNATIVE MOTION TO STRIKE

or a "stigmatic" injury. But the defendants are not concerned with reality.[8] The point is that the defendants' need these preferred characterizations to "square" with caselaw, which provides that defamation by governmental officials *alone* generally does not trigger the procedural due process guarantees of the Fourteenth Amendment. (ECF 214 at 9).

Accordingly, in pursuit of a dismissal (or striking) of an attributed procedural due process claim (in FAC ¶¶ 100 and 102) for J.C.'s apparent "reputational" injury and her "stigmatic" injury, the defendants lead off with citation to *Paul v. Davis,* 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

In *Paul*, the plaintiff-respondent ("respondent") was arrested for shoplifting, but the charge was "filed away with leave to reinstate." Meanwhile, the defendant police officials circulated an "Active Shoplifters" flyer in the local business community, which depicted a photograph of the respondent and noted the fact of his arrest. The shoplifting charge was dismissed by the court shortly after the flyer was circulated. The respondent, who worked as a photographer for a local newspaper, then brought a procedural due process claim against the officials, alleging that the circulation of the flyer deprived him of a "liberty" interest protected by the Fourteenth Amendment. The respondent claimed that the "Active Shoplifter" designation inhibited him from entering local businesses for fear of being suspected as a shoplifter and possibly apprehended, and that the publication of the flyer jeopardized his future employment opportunities. 424 U.S. at 697-98.

Based on a review of prior precedent, the Supreme Court noted that, governmental action, in addition to the defamation, was required to deprive the individual of a right previously held under state law. In other words, the alteration of a legal status combined with the resulting defamatory injury triggers "the invocation of procedural safeguards." *Id.* at 708-09 (citations omitted). Relatedly, the Supreme Court also noted that "stigma," or "reputation alone, *apart from*

---

[8] The defendants are prone to embellishing Plaintiff's allegations. For example, they also attribute to Plaintiff allegations such as "O'Brien *privately* voiced concerns," "O'Brien's *private* statements," "O'Brien's *private* comments," etc. (*Id*. at 9).



RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

*some more tangible interests*, does not constitute 'liberty' or 'property' itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 709 (emphasis added). In applying that reasoning, the Supreme Court held that the publication of the flyer did not deprive the respondent of any 'liberty' or 'property' interested protected by the Due Process Clause. *Id.* at 712.

In *Krainski v. State ex rel. Bd. of Regents*, the plaintiff alleged that the defendant university and defendant employees violated her procedural due process rights in connection with a school disciplinary proceeding. 616 F.3d 963 (9th Cir. 2010) *cert. den*. 562 U.S.1286 (2011). The Ninth Circuit pointed out that a procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection. *Id.* at 970. The *Krainski* court noted that while the plaintiff alleged that the defendants damaged her reputation by charging her with violations of the Student Conduct Code and finding her "Responsible" of those charges, she did not allege that the defendant employees "suspended or expelled her" for the alleged conduct, or that she was "otherwise deprived of an entitlement to education conferred by the state or secured by some other independent source or understanding." *Id.* at 971. Citing to *Paul,* the Ninth Circuit found that because the plaintiff's allegations "amount to mere reputational injury," the actions taken on behalf of the university were not deserving of procedural due process protections. *Id.*

Finally, *Miller v. Cal. Dep't of Soc. Servs.,* dealt in pertinent part with the placement of Mr. Miller's name on the California CACI, i.e., the Child Abuse Central Index. Mr. Miller claimed that the placement impugned his reputation and limited his freedom of action, freedom of association, and freedom of activity. He claimed therefore that the placement was a denial of procedural due process because he was classified as a child abuser without any opportunity to be heard. 355 F.3d 1172 (9th Cir. 2004). Citing *Paul*, the Ninth Circuit noted that "reputational harm alone" does not suffice for a constitutional claim; rather, Mr. Miller had to "show that the stigma was *accompanied by some additional deprivation of liberty or property*, which the court nominated as the "stigma-plus" test. By definition, the 'plus' means that there "must be a



RIZZO | BOSWORTH | ERAUT PC

1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

deprivation of liberty or property by the state that *directly affects* the plaintiff's rights." *Id.* at 1178 (citations omitted) (emphasis added).

Contrary to the defendants, the reasoning in *Paul*, *Krainski*, and *Miller* does not "squarely" (or otherwise) to support a piecemeal dismissal of Plaintiff's "new allegations" regarding O'Brien's pattern of deceptive conduct. (ECF 217 at 9). That is, the defendants' attributed procedural due process claim for a stand-alone "reputational" injury or "stigmatic" injury is fiction. Not fact.

However, if the Court were inclined to view ¶¶ 100 and 102 in accord with the defendants' preference, the Court should find that these allegations meet the "stigma plus" test expressed in *Miller*: unlike any of the above three procedural due process cases, the defendants expressly acknowledge that "children in foster care," including J.C., "*have a liberty interest protected by the Fourteenth Amendment*." (*Id.* at 8) (emphasis added). J.C. had a protected right to safe foster care. O'Brien's deceptive conduct, i.e., manifested in part by her (apparently) "private" defamatory "comments" (which are not alleged ¶¶ 100 and 102) undermining J.C.'s disclosure and causing others to do so, including J.C.'s providers, directly impacted her protected right to safety and social worker supervision.[9] *See Tamas v. Dep't of Soc. & Health Servs.,* 630 F.3d 833, 842 (9th Cir. 2010) (citing *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992)).

### C. *O'Brien does not enjoy absolute immunity*

**1.      *There is no absolute immunity for O'Brien's deceptive conduct leading to and following from her trial testimony***

In an effort to conjure an absolute immunity on the pleadings defense for O'Brien's trial testimony on behalf of Raygosa, the defendants proceed to ignore the whole of the FAC and numerous other allegations alleged therein regarding O'Brien's deceptive conduct that led up to

---

[9] For example, Plaintiff believes that the evidence will show how the misconduct impacted J.C.'s wellbeing and care, i.e. the dependency court could not ensure her needs were met and the evaluator (Dr. Sorenson, whom the defendants have twice deposed) could not offer appropriate, informed recommendations.

her appearance at the trial as well as her deceptive conduct following the trial. Consistent with their pattern of repurposing allegations (and portions thereof), the defendants surmise that Plaintiff is alleging merely that it "was wrong" for O'Brien "to participate" in the criminal trial "on behalf of" Raygosa, without informing J.C. (ECF 214 at 10) (also alluding to ¶ 103).[10]  That is not the case.

However, armed with that characterization, the defendants conclude that Plaintiff was therefore remiss for not alleging "any fact or theory" about "how O'Brien *could have avoided responsibility* to a lawfully issued subpoena."[11] While apparently vouching for O'Brien's credibility, the defendants wonder about "how truthfully testifying under oath, whatever the content of the testimony." Inching further out on a limb, the defendants attest to a prosecutor's "constitutional obligation" to discover *Brady* material to criminal defendants, and assert that "[i]t necessarily follows that *gathering* [by whom?] exculpatory evidence . . . is not itself a constitutional violation." (*Id.*) (emphasis added). This argument lacks legal merit.

"[S]ocial workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions or recommendations." *Tamas, supra,* 630 F.3d at 842. (citations omitted). Accordingly, O'Brien does not have absolute immunity for her deceptive conduct leading up to the trial, and her deceptive conduct occurring thereafter. Also, despite the defendants' characterization, Plaintiff alleges that O' Brien *created* the case note after Raygosa was arrested. (ECF 196 at ¶ 103). She does not have absolute immunity for the act of creation. The case note is not akin to an affidavit or declaration filed with the dependency court, or the criminal court for

---

[10] Paragraph 103 alleges: "O'Brien *situated herself* as J.C.'s *support person at the criminal trial in place of J.C.'s therapist and J.C.'s mother.* O'Brien characterized J.C.'s trial testimony as "performative" and told various providers and parties of her belief that J.C. had lied under oath. *Without informing* J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about *the case note she created after his arrest.*" (ECF 196 at 19) (emphasis added).

[11] In reality, the FAC does not mention a subpoena. There is a reference to being "subpoenaed to appear" on page 2 of Exhibit 2 to Mr. Jindal's Declaration filed under seal. (ECF 216). There is no copy of the subpoena or a contemporaneous certificate of service (even assuming for the sake of argument that his Exhibit 2 were properly authenticated and not hearsay).



RIZZO | BOSWORTH | ERAUT pc
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

that matter. O'Brien does not have absolute immunity for (as the defendants would have it) for *gathering* the case note to give to the prosecutor and then discover to Raygosa's defense attorney.

2. ***O'Brien has failed to meet her burden to establish absolute immunity for the testimony elicited at trial***

O'Brien's assertion that she simply has absolute immunity for the testimony elicited at trial is premature as well as self-authenticating.

The Supreme Court has explained that the presumption is that qualified immunity rather than absolute immunity is sufficient to protect government official, and that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486-87, 111 S. Ct 1934, 114 L. Ed. 2d 547 (1991). The Supreme Court has emphasized that "we have been 'quite sparing' in our recognition of absolute immunity and have refused to extend it any 'further than its justification would warrant.'" *Id.* at 487. The Ninth Circuit has "recognized absolute immunity for social workers only for the discretionary, quasi-prosecutorial decisions to institute dependency proceedings to take custody away from parents." *Miller v. Gammie,* 335 F.3d 889, 895, 897-98 (9th Cir 2003).

O'Brien is not alleged to have testified in connection with the dependency proceeding. Rather, Plaintiff alleges that – while pretending to act as J.C.'s emotional support at the trial in place of J.C.'s therapist and her mother – O'Brien testified for the defense, without informing J.C. Plaintiff alleges that O'Brien *created* the case note in anticipation that it would have to be discovered to the defense attorney as "exculpatory" evidence. As noted above, there is no allegation that O'Brien was required to *create* the case note, and the Jindal Declaration does not establish that O'Brien's self-serving creation of the note in support of undermining J.C.'s disclosure was as quasi-prosecutorial decision rather than an act of self-preservation and exculpation (both to herself and to Mr. Raygosa – whom DHS alleges is the "sole cause" of J.C.'s harm).

In *Young v. Vega*, the Sixth Circuit Court of Appeals notes that absolute immunity does

13 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS OR ALTERNATIVE MOTION TO STRIKE



not apply to actions taken in the context of a "complaining witness." 574 Fed. Appx. 684, 688 (6th Cir. 2014). In regard to whether the testimony or sworn statement are actions of a complaining witness, the court noted that "[i]t is the act of personally vouching for the truth of the facts that provide the evidentiary support for a finding of probable cause that is not protected by absolute immunity." *Id.* at 689 (citing *Kalina v. Fletcher,* 522 U.S. 118, 129-30, 118 S .Ct. 502, 139 L. Ed. 2d 471 (1997)). The court in *Young* agreed then that when the "official switches from presenting the charging document to vouching personally for the truth of the contents of the document . . . absolute immunity must give way to qualified immunity." *Id.* at 689. *Cf.*, *Malley v. Briggs*, 475 U.S. 335, 340-41, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), (At common law, a complaining witness" who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. The police officers' actions were analogous to those of a complaining witness, so absolute immunity did not apply.); *see also Cox v. Dept. of Soc. & Health Servs.,* 913 F.3d 831, 838 (9th Cir. 2019) ("[a]bsolute immunity is available only if the social worker's 'activity or function'...was part and parcel of presenting the state's case as a generic advocate."); *accord*, *Zahrey v. Coffey,* 221 F.3d 342 (2nd Cir. 2000). O'Brien's testimony does not meet these requirements.

When viewed in the light most favorable to Plaintiff, the FAC alleges implicitly that insofar as O'Brien testified concerning her "truth" of the case note, she did so merely as a complaining witness. The Court should therefore reject the defendants' attempt to self-adjudicate absolute immunity on the pleadings, particularly where the defendants will have an opportunity to meet their burden to establish the claimed absolute immunity at the dispositive motions phase.

**D.**    ***The Court should not treat the defendants' Rule 12(b)(6) motion as a motion for summary judgment.***

The Court should exercise discretion, and not convert the defendants' Rule 12(b)(6) motion into a summary judgment motion. *See Sierra Club v. Portland GE,* 663 F. Supp. 2d 983, 995 (D. Or. 2009). At this late stage, questions concerning whether and to what extent O'Brien enjoys

14 – LEVI'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVE MOTION TO STRIKE



RIZZO | BOSWORTH | ERAUT pc

1300 SW Sixth Ave, Suite 330  |  Portland, OR 97201
rizzopc.com

absolute immunity is evidentiary in nature, and best reserved for dispositive motions.

## CONCLUSION

Respectfully, the Court should deny both motions.

Dated: October 10, 2024.

RIZZO BOSWORTH ERAUT PC

By: s/          *Steven Rizzo*
    Steven Rizzo OSB No. 840853
    Mary D. Skjelset OSB No. 075840
    Rizzo Bosworth Eraut PC
    1300 SW Sixth Avenue, Suite 330
    Portland, OR 97201
    Tel: (503) 229-1819
    Fax: (503) 229-0630

    Caitlin V. Mitchell, OSB #123964
    Johnson Johnson Lucas & Middleton PC
    975 Oak Street, Ste. 1050
    Eugene, OR 97401
    Tel: (541) 484-2434
    Fax: (541) 484-0882
    cmitchell@justicelawyers.com

    ATTORNEYS FOR PLAINTIFF LEVI

RIZZO | BOSWORTH | ERAUT PC
1300 SW Sixth Ave, Suite 330 | Portland, OR 97201
rizzopc.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>        Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>        Defendants. | CASE NO. 6:22-cv-01813-MK<br><br><br>**CERTIFICATE OF SERVICE** |
| OREGON DEPARTMENT OF<br>HUMAN SERVICES,<br><br>        Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>        Third Party Defendant. | |

I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Declaration of Mary Skjelset in Support of Plaintiff's Response to Defendants' 6/25/2024 Motion to Extend Case Deadlines**

<u>**VIA ECF**</u>

| | |
|---|---|
| **Jill Schneider**<br>**Nicholas S. Mancuso**<br>**Oregon Department of Justice**<br>**100 SW Market Street**<br>**Portland, OR 97201**<br>**Ph. 971-673-1880**<br>**Fax: 971-673-5000**<br>**Email: jill.schneider@doj.state.or.us**<br>**Email: nicholas.mancuso@doj.state.or.us**<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman,*<br>*and Oregon Department of Human Services* | Lauren Blaesing<br>Harry B. Wilson<br>Alexandra Rhee<br>Hannah Hoffman<br>Chad Naso<br>Markowitz Herbold PC<br>1455 SW Broadway<br>Ste. 1990<br>Portland, OR. 97201<br>Ph: 503-295-3085<br>Email: laurenblaesing@markowitzherbold.com<br>Email: harrywilson@markowitzherbold.com<br>Email: alexrhee@markowitzherbold.com<br>Email: hannahhoffman@markowitzherbold.com<br>Email: chadnaso@markowitzherbold.com<br>*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon*<br>*Department of Human Services* |

Dated this 10th day of October, 2024

        *s/ Shannon Boyd*
        Cheridan Carr, Paralegal

1- Certificate of Service