UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>    Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al.,<br><br>    Defendants.<br><br>———<br><br>OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>    Third Party Defendant. | Case No. 6:22-cv-01813-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Plaintiff Ethan Levi filed this civil rights action on behalf of J.C., a minor child, against the Oregon Department of Human Services ("DHS") and several of its employees (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss to the allegations added in

Page 1 — OPINION AND ORDER

Plaintiff's First Amended Complaint ("FAC"). Defs.' Mot. ECF No. 214. Defendants' move in the alternative to strike these allegations. The Court heard argument on Defendants' Motion at the Status Conference held by video on 11/22/2024. ECF No. 247. For the reasons explained below, Defendants' Motion to Dismiss is DENIED.

## BACKGROUND

Plaintiff alleges civil rights violations arising out of the sexual abuse of J.C. while in the custody of DHS-certified foster care provider Joe Raygosa. After the close of discovery and with leave of the Court, on September 12, 2024, Plaintiff filed the FAC. ECF No. 196. Relevant to this motion, the FAC adds allegations related to (1) J.C.'s placement in the S-M foster home following her removal from the Duncan-Raygosa foster care home and (2) J.C.'s caseworker's alleged actions following J.C.'s disclosure of sexual abuse, discussed below.

Plaintiff alleges that Defendants deprived J.C. of her protected right to be provided safe foster care by "[p]lacing J.C. in the S-M foster home with knowledge that S-M could not provide appropriate support and care to a victim of sexual abuse." FAC ¶ 79(k). Plaintiff also alleges that Defendant acted with deliberate indifference by placing J.C. in the S-M home where "physical discipline as punishment and other abuse occur[ed,]" FAC ¶ 79(l), causing physical and emotional injury, FAC ¶ 81. Plaintiff further alleges that Defendants' negligent placement of J.C. in the S-M foster home was a substantial factor in the cause of her injury and damage. FAC ¶¶ 118-19.

Plaintiff's Original Complaint alleges that Defendant O'Brien failed to protect J.C.'s safety while in the custody of Duncan-Raygosa. Complaint ¶¶ 94-99, ECF No. 1. The FAC adds allegations that, after J.C. was removed from the Duncan-Raygosa foster home, Defendant O'Brien expressed doubts about the truth of J.C.'s disclosures of Raygosa's abuse and took

affirmative steps to undermine J.C.'s credibility. FAC ¶¶ 100-04. Plaintiff alleges that Defendant O'Brien's actions "impacted [J.C.'s] health and wellbeing and undermined her ability to receive proper care for the sexual abuse." FAC ¶ 104. For example, Plaintiff alleges:

> O'Brien exerted influence over the CPS assessment of Raygosa's sexual abuse, and advocated for a disposition of "unable to determine," calling into question the credibility of J.C.'s disclosure. O'Brien then withheld the fact of Raygosa's sexual abuse from the juvenile court, and withheld documents relaying the nature, scope and severity of J.C.'s abuse from parties to the juvenile proceeding and from J.C.'s therapist and treating psychologist.

FAC ¶ 101.

Plaintiff also alleges that after Joseph Raygosa was arrested, Defendant "O'Brien prepared a case note suggesting that J.C.'s disclosure was untruthful and that her biological father had abused her." FAC ¶ 102. Defendant O'Brien then allegedly met with the prosecutor and offered to gather exculpatory evidence, such as the case note she had prepared. FAC ¶ 102. Plaintiff alleges that "[w]ithout informing J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about the case note she created after his arrest." FAC ¶ 103. Post Raygosa's conviction for his multiple sex crimes against J.C., Defendant O'Brien allegedly continued to take affirmative steps to undermine the veracity of J.C.'s testimony against Raygosa. FAC ¶ 104. Plaintiff alleges that these actions show that Defendant O'Brien acted with deliberate indifference in violation of J.C.'s constitutional rights. FAC ¶ 105.

## STANDARDS

### I.    Motion to Dismiss — Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers, Inc.*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**II.    Motion to Strike — Fed. R. Civ. P. 12(f)**

Under Fed. R. Civ. P. 12(f), a party may move the court to strike pleadings that are "immaterial" or "impertinent". An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting C. Wright, A. Miller, et al., 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2013)).

"Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Id.* The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008). The disposition of a motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).

## DISCUSSION

### I.     Allegations of J.C.'s Placement in the S-M Home

Defendants argue that Plaintiff's conclusory allegation that the S-M home was "unfit" is insufficient to state a claim because it fails to provide notice of what Defendants did wrong or how J.C. was harmed. For example, according to Defendants, Plaintiff's allegation that "DHS overfilled the S-M foster home, and received multiple reports of abuse and neglect occurring in the home, including inappropriate physical discipline, emotional abuse and sexual abuse" fails to put Defendants on notice about the harm that J.C. suffered. FAC ¶ 65. Similarly, Defendants argue that Plaintiff's allegation that "DHS knew and/or suspected that the S-M home could not provide the necessary care and support for a child sexual abuse victim such as J.C.", FAC ¶ 65, is insufficient because Plaintiff fails to allege that the S-M foster home "in fact" failed to provide adequate care, Defs.' Mot. at 7. The Court disagrees.

Children in foster care have a protected liberty interest in "reasonable safety and minimally adequate care and treatment *appropriate to the age and circumstances of the child*." *Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (emphasis added). Accepting Plaintiff's allegations as true, if the S-M foster home "could not" provide

adequate care, then J.C. did not receive adequate care in the S-M foster home. Drawing all reasonable inferences in Plaintiff's favor, given J.C.'s particular needs as a victim of sexual abuse, Plaintiff plausibly alleges that the S-M foster home did not provide minimally adequate care and treatment appropriate to J.C.'s circumstances. Plaintiff also alleges that Defendants were a proximate cause of J.C.'s physical and emotional harm by placing her in another abusive environment following her removal from the Duncan-Raygosa home. The FAC provides Defendants with "fair notice" of not just "what the claim is" but also "the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal alterations and citation omitted).

II.  **Allegations of Defendant O'Brien's Efforts to Undermine J.C.'s Disclosure of Abuse**

   A.  **Nature of the Allegations**

Defendants argue that Defendant O'Brien's alleged efforts to undermine J.C.'s disclosure of abuse fails to state a claim because the due process clause does not protect J.C. from a stand-alone emotional injury of stigmatic or reputational harm. Plaintiff responds that the new allegations of Defendant O'Brien's efforts to undermine J.C.'s disclosure of abuse are not a stand-alone claim; the new allegations relate to Defendant O'Brien's pattern of deceptive conduct which harmed J.C. before and after removal from the Duncan-Raygosa foster home.

The due process clause of the Fourteenth Amendment prohibits the state from depriving "any person of life, liberty, or property, without due process of law." Children in foster care have a liberty interest protected by the Fourteenth Amendment that requires the State to provide for foster children's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety[.]" *Lipscomb By and Through DeFehr*, 962 F.2d at 1379 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).

Plaintiff's FAC includes the following additional allegations of Defendant O'Brien's conduct following J.C.'s disclosure of sexual abuse:

101. O'Brien was made aware that J.C. disclosed Joe Raygosa's sexual abuse occurring in the Duncan-Raygosa foster home, that the disclosure was detailed and credible and that Duncan-Raygosa had fled with their purported niece and nephew. Acting in self-interest, O'Brien failed to familiarize herself with J.C.'s forensic child abuse evaluation and other supportive facts and instead maintained that J.C.'s disclosure was untruthful.

102. When O'Brien became aware of the prospect of a criminal trial against Joe Raygosa for the acts of sexual abuse perpetrated against J.C., O'Brien prepared a case note suggesting that J.C.'s disclosure was untruthful and that her biological father had abused her. O'Brien met with the prosecuting attorney and offered to gather exculpatory evidence, including the case note she had prepared.

103. O'Brien situated herself as J.C.'s support person at the criminal trial in place of J.C.'s therapist and J.C.'s mother. O'Brien characterized J.C.'s trial testimony as "performative" and told various providers and parties of her belief that J.C. had lied under oath. Without informing J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about the case note she created after his arrest.

104. Notwithstanding Raygosa's conviction, O'Brien continued to tell co-workers and service providers that she doubted J.C.'s disclosure. O'Brien's continued efforts to undermine the credibility of J.C.'s disclosure betrayed J.C.'s confidence and trust, impacted her health and wellbeing and undermined her ability to receive proper care for the sexual abuse.

FAC ¶¶ 100-04. Plaintiff further alleges that Defendant O'Brien acted with deliberate indifference by "[f]ailing to timely inform and/or withholding information from J.C.'s advocates, natural supports, and treatment providers;" and by "[f]ailing to recognize her own bias and conflict of interest[.]" FAC ¶ 105(k-l).

Defendants' framing of the allegations as a stand-alone claim for reputational harm is too narrow. Plaintiff's allegation of Defendant O'Brien's alleged betrayal of J.C.'s trust is made in the context of Plaintiff's claim for deliberate indifference, which is actionable under the due process clause. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012). These allegations are not stand-alone theories of relief, but instead relate to Defendant O'Brien's alleged pattern of deceptive and biased conduct. The allegations added in Plaintiff's FAC, if proved, support a showing that Defendant O'Brien acted with deliberate indifference by taking affirmative steps to undermining J.C.'s ability to receive appropriate care and treatment under the circumstances.

Assuming the truth of these allegations, it is plausible that the evidence will show for example, how Defendant O'Brien harmed J.C.'s wellbeing and care by inhibiting J.C.'s psychological evaluator's ability to provide appropriate and informed recommendations. Defendants' reliance on cases holding that stigmatization and reputational harm alone are insufficient to state a claim is misplaced where, as here, Defendant O'Brien's alleged efforts to discredit J.C. support a showing of a pattern of deliberately indifferent conduct. Plaintiff alleges that Defendant O'Brien's actions harmed J.C. by withholding information necessary to provide constitutionally adequate care.

### B.    Absolute Immunity for Trial Testimony

Defendants argue that Defendant O'Brien is entitled to absolute immunity for her testimony during Joe Raygosa's criminal trial. At Oral Argument, Plaintiff agreed that Defendant O'Brien cannot be held liable for her testimony at the criminal trial. Plaintiff contends, however, that the allegations of Defendant O'Brien's testimony are made in the context of her alleged pattern of deceitful conduct.

"A witness has absolute immunity from liability for civil damages under § 1983 for giving perjured testimony at trial." *Franklin v. Terr*, 201 F.3d 1098, 1099 (9th Cir. 2000). "Absolute witness immunity is based on the policy of protecting the judicial process and is 'necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *Franklin*, 201 F.3d at 1101 (quoting *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)).

Plaintiff alleges:

> 102. When O'Brien became aware of the prospect of a criminal trial against Joe Raygosa for the acts of sexual abuse perpetrated against J.C., O'Brien prepared a case note suggesting that J.C.'s disclosure was untruthful and that her biological father had abused her. O'Brien met with the prosecuting attorney and offered to gather exculpatory evidence, including the case note she had prepared.

> 103. O'Brien situated herself as J.C.'s supportt person at the criminal trial in place of J.C.'s therapist and J.C.'s mother. O'Brien characterized J.C.'s trial testimony as "performative" and told various providers and parties of her belief that J.C. had lied under oath. Without informing J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about the case note she created after his arrest.
>
> 104. Notwithstanding Raygosa's conviction, O'Brien continued to tell co-workers and service providers that she doubted J.C.'s disclosure. O'Brien's continued efforts to undermine the credibility of J.C.'s disclosure betrayed J.C.'s confidence and trust, impacted her health and wellbeing and undermined her ability to receive proper care for the sexual abuse.

FAC ¶¶ 102-04.

Plaintiff's allegation that "[w]ithout informing J.C., O'Brien was called by the defense to testify on behalf of Joe Raygosa about the case note she created after his arrest" FAC ¶ 103, is not a standalone claim for Defendant O'Brien's trial testimony. As explained above, this allegation is made in support of Plaintiff's claim that Defendant O'Brien's alleged pattern of deceitful conduct violated J.C.'s substantive due process rights by preventing J.C. from receiving adequate care and treatment. Defendants essentially argue that any allegation of Defendant O'Brien's trial testimony should be dismissed because evidence supporting that allegation is inadmissible. However, deciding the admissibility of that evidence, if offered, is premature at the motion to dismiss stage. Drawing all reasonable inferences in Plaintiff's favor, these allegations support a plausible claim for relief.

## CONCLUSION

The allegations added in the FAC plausibly state a claim for relief, and the Court finds no reason strike. Defendants' Motion to Dismiss or Strike (ECF No. 214) is DENIED.

IT IS SO ORDERED.

DATED this 27th day of November 2024.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States District Judge