Mr. Steven Rizzo, OSB # 840853
Ms. Mary D. Skjelset, OSB  # 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelset@rizzopc.com

*Additional counsel listed on signature page*

ATTORNEYS FOR PLAINTIFF LEVI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>            Plaintiff,<br><br>v.<br><br>KIM CHAPMAN, et al ,<br><br>            Defendants. | Case No. 6:22-cv-01813-MTK<br><br><br>**PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>            Third Party Plaintiff,<br><br>v.<br><br>JOE ALBERT RAYGOSA,<br><br>            Third Party Defendant. | |

**INTRODUCTION**

The  officials  move  to  exclude  the  McCowan  and  Estrada  declarations  under  Rule 37,

1 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

claiming they were "concealed." The officials also want the Court to "disregard" facts regarding "experts" and "witness statements in case notes" as hearsay. The Court should deny the Rule 37 motion, and it should not "disregard" facts. This Surreply is supported by FRE 702, 703, 803(3), and 803(4) and the Declaration of counsel with attached exhibits.

### A. Surreply to Rule 37 motion to exclude the McCowan and Estrada Declarations

### I. Background

***Pleadings***

As though it were required, the officials contend that Plaintiff's complaint (ECF 1) and the first amended complaint (FAC, ECF 196) "*did not clearly allege* that *a personal reference disclosed the death* in California to Chapman" or that defendants "had *actual knowledge* about Duncan-Raygosa's *connection to a child's death prior* to certifying" them to operate a foster home in Oregon. (ECF 291 at 25) (emphasis added).

***The Complaint****.* In ¶ 27 of the complaint Plaintiff alleged that on information and belief, in 2012, Duncan-Raygosa "were involved in/and or questioned in connection with the death of a three-year-old female child in or around Fresno, California . . . [which] was considered suspicious by emergency medical professionals who made abuse reports on her behalf." (ECF 1 at ¶ 27). In response, the defendants answered that ¶ 27 "refer[s] to persons other than the [the defendants]," "deny the characterizations of persons other than themselves," and "have no knowledge of the mind set of any person, other than themselves." (Answer, ECF 19 at ¶ 9). This was non-responsive.

In ¶ 71, Plaintiff alleged that Chapman "*failed . . . to elicit* (*or chose to ignore*) information concerning Duncan-Raygosa's role in the life and death of the child in California" and that she *knew and/or suspected* that Duncan-Raygosa gave false or conflicted reasons for their motivation to relocate to Oregon." (*Id.* ¶ 71) (emphasis added). In response, the defendants answered that ¶ 71 was a "conclusion of law, to which [they] were not required to respond." (*Id* at ¶ 30). The defendants did not deny the allegations. They simply excused themselves from answering.

In 2023, Plaintiff produced to the defendants documents received in response to subpoenas to Valley Children's Hospital (July 7, 2023 - PLFVCH000001–000174), Fresno County Child

2 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Welfare (August 25, 2023 - PLFFCCW000001–000423), and Fresno County Sheriff's Office (December 13, 2023 - PLFFCSO000001–000260). These documents pertained to Duncan-Raygosa's role in N.S.'s death in California, and included child welfare records, police reports and the coroner's report, and medical records from Valley Children's Hospital (to which N.S. was life-flighted) and publicly accessible court reports – all of which were extant at the time of the certification. (Decl.). These records evidenced N.S.'s severe physical injuries and her death, and the ensuing CPS investigation and police investigation of Duncan-Raygosa. The hospital records identified Duncan-Raygosa as foster parents, and the child welfare records identified Deborah McCowan. (Decl., Ex. 1 at 8, 33, 41, 43, 46, 48, 49).

*The First Amended Complaint*. With leave of the Court, Plaintiff filed his First Amended Complaint ("FAC") on September 12, 2024 to add allegations regarding the S-M home and O'Brien's post-disclosure conduct which were brought to light in *Conley*. In his FAC, Plaintiff realleged the allegations in ¶ 27 (regarding Duncan-Raygosa's involvement in the death of N.S. in Fresno) and ¶ 71 (now ¶ 73) (regarding Chapman's failure to elicit or choice to ignore their role in N.S.'s death and their conflicting reasons for coming to Oregon).

In response to FAC ¶ 27, the defendants – represented by the Markowitz defense attorneys – answered that hospital records "document the death of a child who allegedly lived in Duncan and Raygosa's care," but that defendants "otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations . . . and therefore deny them." (Amend. Answer, ECF 261 at ¶ 16). The defendants characterized the factual allegations in FAC ¶ 73 as "conclusions of law, to which [they] are not required to respond," thereby sidestepping their acquired, actual knowledge of Duncan-Raygosa's role in the life and death of the child in California. (*Id*. at ¶ 52) The defendants repeatedly failed to frankly admit or deny that Chapman was aware of the facts and/or failed to elicit facts.

### Interrogatories

Building on the *did not clearly allege – personal reference disclosed – actual knowledge* characterization of Plaintiff's factual allegations, the officials assert – broadly –  that "*multiple*

3 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

interrogatories *called for the disclosure of* <u>*information contained* in</u>" the McCowan declaration and the Estrada declaration. (ECF 291 at 25) (emphasis added). The officials contend that interrogatories *explicitly* requested *this information* – meaning that *a personal reference disclosed the death in California* to Chapman, and that Plaintiff "never once indicated that *he believed* that a personal reference told ODHS about the death during" the SAFE Study. (*Id*. at 26) (emphasis added). The officials point to three such interrogatories, which they present out of order as ## 13, 1, and 6. Tracking the interrogatories in order (and in context) avoids the confusion created by the officials' disjointed presentation.

The defendants served their first set of interrogatories on February 16, 2024.

*Interrogatory # 1* asked Plaintiff to "*describe all information* You *had*, *at the time you filed the Complaint*, supporting . . . paragraph 33," which alleged that "DHS knew or suspected that Duncan-Raygosa were unfit to serve as foster care providers, yet issued its first Certificate of Approval ('COA') authorizing Duncan-Raygosa to operate a foster home for non-relative children in July 2016." (ECF 291 at 27) (referencing ECF 1 at 6). Plaintiff responded on March 15, 2024. Plaintiff objected because the term "You" (meaning essentially, everyone) was vague and overbroad and the breadth of the term "information" plainly encompassed work product, materials prepared in anticipation of litigation, and privileged materials – reflecting an intentional overreach. Plaintiff also objected because to *describe all information … at the time You filed* was equivalent with to *state all facts on which a claim . . . is based,* and therefore violated LR 33-1(d).

The officials offer no evidence that Plaintiff was required to *describe that a personal reference disclosed the death in California at the time* the *You* group *filed* this action in November 2022, or whether Plaintiff had the ability do so at the time specified.

*Interrogatory # 6* asked Plaintiff to identify so-called "material and specific facts" that support Your allegations that [defendants] individually or collectively, acquiesced in or ignored the abuse, maltreatment, or neglect of *J.C.*" (ECF 292-18 at 2) (emphasis added). The defendants omitted citation to any particular allegation(s) to again invite disagreement and dispute. But the interrogatory, on its face, is inapt. It had nothing to do with the certification of Duncan-Raygosa,

4 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

or the death of N.S., or the CPS investigation in Fresno, California – all of which occurred prior to "the abuse, maltreatment, or neglect of J.C." in the Duncan-Raygosa foster home.

In responding, Plaintiff incorporated his response to interrogatory #4 – which the officials do not challenge – and directed defendants to complaint ¶¶ 71 – 76, 85 – 90, 93 – 98, 101 – 105, 111, 114. Deviating from these allegations, however, the officials reference complaint ¶¶ 22-32, i.e., all 10 paragraphs, which apparently "state" that the defendants "failed 'to elicit' information, including the death." (ECF 291 at 25).

The officials are wrong: complaint ¶¶ 22-32 did not allege a "failure to elicit" anything; rather, those allegations alleged the SAFE Study and Plaintiff's "information and belief" regarding the events that took place in Fresno, California, in 2012. (*e.g.,* ECF 1 at ¶ 27). Skipping ahead, the officials opine that ¶ 71 *"ambiguously* alleges that Chapman "'failed to elicit (or chose to ignore)' the death." (ECF 291 at 27-28) (emphasis added). There was nothing *ambiguous* about ¶ 71 – which defendants had labeled as "conclusions of law."

Plaintiff alleged the defendants' knowledge of the facts and/or failure to elicit facts, both of which constitute deliberate indifference. The defendants never moved to make more definite and certain the "conclusions of law" which they now regard as *ambiguous*. In sum, the officials' torturous argument poorly disguises defendants' failure to seek any discovery from Fresno County. The officials' *post hoc* tantrum over Plaintiff's complaint does nothing to show that Plaintiff was required to disclose work product in response to interrogatory # 6.

***Interrogatory # 13*** asked Plaintiff to "identify *each person* You believe has *knowledge*, directly or indirectly, of any fact upon which You base Your claims in this lawsuit." (ECF 292-18 at 5) (emphasis added). In response, Plaintiff prepared an initial list of persons on March 28, 2024. Plaintiff indicated the parties and their attorneys, the dependency parties and their attorneys, the Eugene police department, Kids FIRST and J.C.'s medical providers, and Plaintiff also indicated Fresno County Child Welfare, Fresno County Sheriff's Office, and Valley Children's Hospital.

The officials do not deny that they were aware of McCowan and Estrada, including their contact information in the defendants' files and records. (ECF 291 at 26). Likewise, the officials

5 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

do not deny their awareness that both "persons" had "direct" or so-called "indirect" knowledge of facts pertaining to J.C.'s claims. For example, Chapman had interviewed McCowan by phone and she had relied on the SAFE Reference form submitted by Estrada.

### *Course of discovery*

#### *The defendants' motion to compel answers to interrogatories – 4/3/24*

The defendants filed a motion to compel answers to interrogatories on April 3, 2024, The motion failed to include interrogatory #13. (*See e.g.,* ECF 129 at 11-17). This failure was not inadvertent: the defendants were always aware of the persons listed in their own files.

#### *The Deborah McCowan declaration – 4/17/24*

In preparation for discovery depositions, Plaintiff contacted McCowan and learned that the SAFE Reference form which Chapman had filled out omitted facts, including that McCowan had told Chapman about N.S.'s death and the CPS investigation in Fresno. McCowan signed her declaration to that effect on April 17, 2024. There is no dispute that the declaration is attorney work product.

#### *Chapman's deposition – 5/24/24*

When the plaintiffs deposed Chapman on May 24, 2024, she claimed that to have no memory of the phone interview with McCowan, other than what she (Chapman) wrote down on the reference form. Chapman testified that she checked the boxes on the form (similar to her check marks for Duncan-Raygosa on their DHS Application). (Decl., Ex. 2). As such, the pertinent McCowan form is Chapman's rendition of what she was allegedly told by McCowan – not McCowan's own statements. Chapman's lack of memory reflected the defendants' plan to rely on the form for the truth of the matter, as reported by Chapman.

#### *The order denying defendants' motion to compel – 7/12/24*

On July 12, 2024, the Court denied the defendants' above motion, which encompassed interrogatories ## 1 and 6. (Order, ECF 157). The Court granted the motion as to interrogatory # 2, which asked Plaintiff to identify the "current and former employees of ODHS" that were "spoken with regarding the allegations in the Complaint." (*Id*.); (ECF 292-18 at 2). (In contrast

6 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

with interrogatory # 2, interrogatory # 13 did not, as seen, request Plaintiff to answer whether he spoke with a *personal reference* who *disclosed the death in California – explicitly* or otherwise).

### *Plaintiff's supplemental response to interrogatory # 2 – 7/23/24*

In response to the above order, Plaintiff served the supplemental response to interrogatory # 2 on July 23, 2024, stating that he had not spoken with current or former employees of DHS regarding the allegations in the complaint.

As a precaution, given the defendants' penchant for filing discovery motions, Plaintiff amended his response to interrogatory # 13 to add "all persons listed in documents produced by DHS," including "foster/resource parents, employers, references, members of the household, police, reporters to the hotline," etc., "witnesses who have been deposed," and, "all persons identified in Plaintiff's productions" as well. The defendants did not confer or seek clarification or additional information regarding the amendment. (ECF 292-19). Now, the officials chasten Plaintiff *post hoc* for not denoting the names of each person appearing in DHS's own records and productions. (Decl.).

### *August 6, 2024 hearing re logging witness statements*

Plaintiff sought the Court's guidance at the August 6, 2024 hearing to determine whether parties were required to log their respective "witness statements" obtained in the course of discovery. After discussing the matter with the Court, the parties were agreed that they were not required to log such statements. (Decl., Ex. 3). The officials' motion omits mention of the August 6 hearing and the parties' agreement. However, had no agreement been reached, Plaintiff would have logged the McCowan declaration as work product.

### *Defendants' discovery re the first amended complaint*

In consideration of allowing Plaintiff to file the FAC, the Court allowed defendants to reopen depositions and propound additional written discovery to Plaintiff. The defendants continued to depose fact witnesses through November 5, 2024. As discussed below, the defendants never claimed that they were prejudiced by the McCowan and Estrada declarations, and never sought to cure by deposing them.

7 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### *Expert discovery – 10/9/24*

The parties exchanged Rule 26 expert witness reports on October 9, 2024. Plaintiff supplied the report prepared by Ms. Jan Butts and her file materials. Plaintiff supplied work product to Butts, including the McCowan and Estrada declarations, and produced the materials to the defendants along with the report.

On October 14, 2024, defense counsel, Ms. Blaesing, wrote to Plaintiff, stating that in addition to expert file materials "required by FRP 26," the defendants "specifically requested" that Plaintiff broadly produce "emails / text messages received from Deborah McCowan and Priscilla Estrada." (Decl., Ex. 4). Ms. Blaesing did not claim prejudice, or request to depose these witnesses while discovery regarding S-M and O'Brien was ongoing.

On November 8, 2024, defense counsel, Mr. Wilson, deposed Ms. Butts and questioned her on both of the declarations. There was no mention of any prejudice at deposition, and the defendants did not seek to depose McCowan or Estrada thereafter.

### *Mr. Wilson's November 21, 2024 letter to the Court*

On November 21, 2024 – the day before the November 22, 2024 hearing on the defendants' motion to dismiss and strike Plaintiff's first amended complaint – Mr. Wilson wrote to the Court, claiming that Plaintiff was required to supplement responses to the second set of interrogatories, ## 14-17, 19, 21, which he had served on October 3, 2024. The defendants did not mention interrogatories ## 1, 6, or 13. Despite yet another opportunity to address the issues, the letter was silent regarding the McCowan and Estrada declarations. (Decl., Ex. 5). The same holds for the November 22 hearing – at which defense counsel, Mr. Jindal, argued the defendants' motion to dismiss and strike the FAC.

### *Dispositive motions practice – 11/27/24*

On November 20, 2024, the parties conferred in advance of dispositive motions. The defendants did not raise any issues with the McCowan or Estrada declarations. Following the conferral, the officials filed their partial motion for summary judgment on November 27, 2024.

As to Chapman, the officials argued in their motion that "she received information from

8 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

four different personal references all of whom supported the [Duncan-Raygosa] home's certification," and that she "found no disqualifying information after following this exhaustive process." (ECF 253 at 3-4). In footnote # 6, the officials conveyed that during their discovery of the allegations in connection with the first amended complaint, Plaintiff "revealed that in April 2024, he had obtained" what they characterized as "a declaration purporting to be from a former friend of the Duncan-Raygosa family stating that the friend had informed an unnamed ODHS official about the child's death in California."

This description failed to *reveal* the officials' awareness that the declarant was Raygosa's former supervisor, Deborah McCowan, who Chapman had interviewed by phone during the certification process. Asserting that the declaration "is not proper evidence at trial or summary judgment," the officials threatened to bring a Rule 37 motion, but without stating whether or how they were prejudiced or efforts to cure. (*Id*. at 33-34, n. 6). There was no mention of the August 6 hearing and the officials overlooked the Estrada declaration. (ECF 281 at 17 n. 19; 18 n. 20). Also pertinent to the instant motion, the officials asserted that "*even if Chapman and Brooks knew* that a child had died in Duncan and Raygosa's care," the certifier and her supervisor "were not compelled to conclude that there was a substantial risk of harm." (ECF 253 at 34-35) (emphasis added).[1]

### *Parties' conferral on the instant motion*

The parties conferred in advance of the instant motion on February 13, 2025. Defense counsel, Mr. Jindal, stated that the officials would also move to exclude the Estrada declaration. The officials' awareness of these witnesses was put to rest during the call. However, Mr. Jindal contended that the declarations were improper because they "contradict" the reference forms. (Decl., Ex. 7). Mr. Jindal was also prepared to move against Annete Simth's declaration.

/ / /

---

[1] As such, the officials relied on the footnote to argue that the minimal "background checks" render *the information contained in* the purported family friend's declaration immaterial. Yet, in the instant motion, they move to exclude it, again without claiming they were prejudiced.

9 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## II.      ARGUMENT

### *The complaint "clearly alleged" a claim for relief – even with hindsight*

As to the pleadings, the officials' convolution of *did not clearly allege – personal reference disclosed – actual knowledge* construct lacks merit. The pleadings sufficiently alleged that the defendants knew and/or should have known about the events in Fresno or that they failed to elicit them – both of which allege deliberate indifference. The officials present no case stating a requirement that a party allege with specificity which witnesses will best undermine the defendants' selective notetaking in order to state a claim. The defendants did not move to make more definite and certain, and witness statements are regularly submitted at the dispositive motions phase.

### *The officials' twist on the three interrogatories is misinformed– not persuasive*

Interrogatories ## 1, 6, and 13 did not ask whether *a personal reference disclosed the death.*

Interrogatory # 1 pertained to *information at the time you filed the Complaint*. Plaintiff objected to the sweeping interrogatory, including on grounds of overbreadth, work product and privilege. The Court sustained the objections. Interrogatory # 6 called for argumentative "material and specific facts" regarding *the abuse, maltreatment, or neglect of J.C.* On its face, the interrogatory had nothing to with the certification of Duncan-Raygosa, the death of N.S., or the CPS investigation in Fresno, California. The interrogatory did not ask – plainly or otherwise – whether *a personal reference disclosed the death.* And the court sustained Plaintiff's objections.

Interrogatory # 13 asked to identify *each person* the You group believes has *knowledge*, directly or indirectly, of facts. It did not ask for *information contained in* work product materials. Without waiver of his objections, Plaintiff answered the interrogatory and listed the names of persons and entities with knowledge. The defendants did not seek to clarify and they did not move to compel.

Plaintiff amended the response in July 2024 when he supplemented the response to interrogatory # 2 in response to the Court's order. Again, the defendants did not challenge the response – because parties were obviously aware of *each person* with *knowledge* listed in each

10 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

other's document productions. Given DHS's rolling document productions and defendants' cannonade of discovery motions, the amendment was necessary and practical. Rule 33(d) allowed for Plaintiff to refer defendants to review DHS's productions and it provided antidote to a claim made that any *person* not listed in the answer itself was off-limits to parties. There was no request made to clarify the response, and the officials fail to explain what difference, if any, it would have made had Plaintiff continually updated the response by listing *each person* known to the parties as they appeared in DHS's document productions.

As framed by the officials, the question whether any of the three interrogatories at issue *explicitly called for the disclosure that a personal reference disclosed the death in California* is answered in the negative. Indeed, in light of defendants' practice of using vague, overbroad, and argumentative interrogatories to forge discovery disputes and hammer out discovery motions one after another in this case, the officials' *post hoc* characterization of Plaintiff's amended response as "misleading" and "catch-all" lacks insight, at best.

### The McCowan declaration was attorney work product

In April 2024, Plaintiff obtained a written statement during discovery from McCowan, a key witness who was well known to the parties. There is no dispute that the statement was attorney work product. "Work product enjoys immunity from discovery and is defined under Fed. R. Civ. P. 26(b)(3)." *See e.g., Salazar v. Monaco Enters.,* 2015 U.S. Dist. LEXIS 167081 * 11 (E.D. Wash. 2015).

In August 2024, Plaintiff sought guidance on whether parties were required to log witness statements that were obtained during discovery, and the parties agreed on the record that they were *not* required to do so. The officials do not deny the parties' agreement and, consistent therewith, Plaintiff did not log the McCowan declaration. Had there been no agreement, Plaintiff would have logged the statement as work product. Plaintiff would not have otherwise voluntarily waived work product by disclosing *the information contained in* the McCowan declaration.

The officials do not deny the parties' agreement; rather, because they self-adjudicate that *the information contained in* the Declaration _contradicts_ every piece of _discovery_ evidence,

11 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff was therefore required to *disclose* work product in response to Interrogatories ## 1, 6 and/or 13 – regardless whether the Court had sustained Plaintiff's objections to interrogatories ## 1 and 6 and regardless whether interrogatory # 13 merely asked to identify *each person* with knowledge.

The parties' agreement on the record did not require parties to log witness statements obtained during discovery that were consistent with *every piece of* so-called *discovery evidence.* The officials' invention of *discovery evidence* creates a misimpression that defendants were somehow prevented from discovering *the information contained in the* declarations. But that is not true: rather, the defendants made a decision to avoid discovery of McCowan and Estrada. Also, the officials' belief that the declarations *contradict every piece of* so-called *discovery evidence* is exaggeration: McCowan's testimony cannot fairly be said to *contradict* language and check marks on the form attributed to her by Chapman, which is hearsay. Likewise, Estrada's declaration explains why she filled out the form in the way she did and that she was expecting a callback from DHS, which never came. The declarations expose the defendants' plan all along to rely on the forms as substantive evidence. The question whether the declarations *contradict* or impeach Chapman's rushed certification is a genuine dispute of material fact.

### *No defendant claimed prejudice – or took steps to cure*

Consistent with the parties' understanding, Plaintiff provided the McCowan and Estrada declarations to his Rule 26 expert. Plaintiff timely produced both statements to the defendants in accordance with the expert discovery timetable and thereby waived work product. Shortly after receiving these materials, defendants merely sought "emails / texts" from McCowan and Estrada and proceeded to depose Butts – both without any mention of prejudice.

Also, the officials had from October 9 to November 27 to correct the failure to depose McCowan and Estrada during discovery. That is, the officials had several opportunities to raise issues with court and counsel while their discovery regarding the FAC was underway. But the officials remained silent. They filed the PMSJ, claiming that Chapman *received* information from four different personal references *all of whom supported* Duncan-Raygosa and that *she found* no

12 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

disqualifying information. The officials footnoted their knowledge of the "purported family friend's" declaration to insinuate that Plaintiff had acted improperly and threatened a Rule 37 motion. Further, the officials argued – without the backing of any DHS employee's declaration – that evidence of Chapman's prior knowledge of N.S.'s death while in Duncan-Raygosa's care in Fresno was immaterial. This argument demonstrates the officials' belief that they were not prejudiced.

In other words, the officials filed their dispositive motion without bringing concerns regarding the declaration(s) to the attention of the court in advance. The PMSJ represents facts that the officials knew were inconsistent with the declaration(s) (as well as the record), avoids identifying either declarant, and downplays the evidentiary impact – all in favor of waiting on the manufacture of a Rule 37 motion accusing Plaintiff of "concealment," which is reminiscent of Mr. Wilson's accusation of "fiduciary abnegation" to excuse the failure to depose J.C.

The officials have neither cited nor have they met the elements necessary to exclude the declarations and sanction Plaintiff for their failed litigation strategy. *See Merchant v. Corizon Health, Inc.,* 993 F.3d 733, 740-41 (9th Cir. 2021) ("[A] district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless but if a Rule 37(c)(1) sanction will deal[] a fatal blow to a party's claim, a district court must consider . . . whether the claimed noncompliance involved willfulness, fault, or bad faith.") (cleaned up).

Plaintiff did not commit a discovery violation, as alleged. Despite the officials' usage of dramatic "concealment" descriptor, the officials were not surprised or prejudiced by going along with defendants' failure to depose McCowan and Estrada. At a minimum, the officials had ample time to raise issues with court and counsel and opportunity to cure – had they chosen to do so – by deposing the declarants prior to filing their dispositive motions. That the officials did not do so is not Plaintiff's fault. Accordingly, the Court should admit the declarations and deny the instant motion.

/ / /

13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**B. Surreply to the request that the Court disregard "experts"**

The officials indicate that "experts' descriptions of interviews and their contents" are "substantive evidence," and attribute Plaintiff's apparent attempt to "offer" such "descriptions of interviews and their contents . . . [a]s improper hearsay." (ECF 291 at 34).

First, the officials do not identify such "experts," with one exception: Dr. Jennifer Harris, who performed a psychological evaluation of J.C. She is referenced as an "example" only. The officials do not identify any particular "interview(s)" or any particularized "description(s)" of any interview(s) by "experts." Leveraging this ambiguity, the officials appear prepared to posture that "experts" and "expert reports" may include treating experts, including Kids FIRST, Clark, and Dr. Sorenson and the reports of their evaluations, interviews, and sessions with J.C. while she was in DHS custody; their descriptions of such interviews in records provided to and relied upon by DHS and the dependency court; and any or all of Plaintiff's Rule 26 expert witnesses, but not "experts" used by the officials who may roam freely on favorable hearsay. The officials should not be permitted to force Plaintiff to guess what "experts" means, whose "interviews" are at issue, and/or whose "descriptions" of interviews are subject to challenge. (*Id.*).

Second, the officials' paragraph in section II does not constitute a proper motion; it lacks substance and amounts to mere commentary. If treated as a formal motion, it is unclear what rule(s) forms the basis to then simply "disregard the facts described in [unidentified] expert reports." (*Id.*). For these reasons, the apparent motion to "disregard" facts is either void for vagueness or the Court should restrict the motion to Dr. Harris's clinical interview with J.C. only, because the officials "disregarded" their obligation to be forthcoming in the Reply.

Finally, as to Dr. Harris, the officials correctly indicate that she "conducted extensive interviews" of J.C. during her clinical evaluation. (*Id.*). The officials do not cite to any portion of Dr. Harris's Rule 26 report or any particular statement made by J.C. during the evaluation. Instead, the officials simply brand "statements" made by J.C. to Dr. Harris as "hearsay" and cite to Plaintiff's Response, asserting that Plaintiff "cites J.C.'s hearsay statements to Dr. Harris as *evidence* that the [S-M] home imposed physical punishments and that J.C. saw I.S. watch

14 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

pornography."

The officials characterize the referenced statements as "unsworn hearsay." (*Id*) (citing ECF 281 at 44). The officials do not claim that the probative value of such statements substantially outweighs their prejudicial effect.

FRE 702 provides in pertinent part that a person properly qualified as an expert witness may testify in the form of an opinion or otherwise if the proponent shows that it is more likely than not that "the testimony is based on sufficient facts or data." *See* FRE 702(b). There is no dispute that Dr. Harris is properly qualified and that her opinion is based on sufficient facts. FRE 703 in pertinent part allows the expert to base an opinion on "facts or data that the expert has been made aware of or personally observed," if other "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," which "need not be admissible for the opinion to be admitted." *Id*. To the extent the facts or data are deemed inadmissible, the proponent of the opinion "may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* Meanwhile FRE 803(4)(A) and (B) provide in pertinent part that a "statement made for – and reasonably pertinent to – medical diagnosis or treatment; and [] describes the medical history; past or present symptoms or sensations; their inception; or their general cause" is not excluded by the rule against hearsay. *Id*. The officials ignore these rules of evidence and their application.

The statements made by J.C. to Dr. Harris during her clinical evaluation directly bear on what she experienced during her placement in the S-M foster home, which are not hearsay. FRE 803(4). If J.C.'s statements were deemed hearsay, Rule 703 permits such hearsay "upon which an expert relied, to be admitted to explain the basis of the expert's opinion." *Paddack v. Dave Christensen,* 745 F.2d, 1254, 1261-62 (9th Cir. 1984) (cited by the officials). The defendants deposed Dr. Harris, and there is extant – if not overwhelming – evidence already in the record documenting S-M's inappropriate use of physical punishments and DHS's tolerance for it as well

as Mr. S's pornography habits, including in DHS's own case files and deposition testimony.[2] The officials, including O'Brien, have made no secret of their intention to defend J.C.'s claims by calling her a liar, and the defendants waived their opportunity to depose J.C. after they repeatedly failed to identify discrete topics for her deposition other than when she came to believe it was "wrong" to be raped and sodomized by a 500 pound man.

Accordingly, the Court should not "disregard" any "facts described in" Dr. Harris's Rule 26 report.

### C. Response to disregard "witness statements in case notes"

Again, without specifying "any statements" in unidentified "case notes or CPS assessments" the officials sweepingly claim that such "any [such] statements" are hearsay. (ECF 291 at 34). This argument is ambiguous enough to swallow "any statements" made by DHS workers themselves who have a duty to speak, and it provides no basis to determine whether any particular statement is in fact hearsay or, if it is, whether an exception to rule against hearsay is available.

Also, the officials' analogy to police is unavailing: unlike accident victims, crime victims, or bystanders, DHS has custody and control over *foster children*, and a constitutional duty to protect them from harm inflicted by a foster parent. When DHS workers enter a foster home to interview children or foster parents, the workers have a duty not merely to report what they observe, but to make a determination whether there is a reasonable basis to believe that abuse or neglect is occurring and take appropriate action. This is the case regardless whether what they are told by children or foster parent is true or false. Absent a contemporaneous recording, DHS has complete control over how the child's statement is made to appear in case notes. Also, DHS relies on case notes and discovers them to dependency parties to be used as evidence in court. *Cf.,* FRE

---

[2] Mother's declaration, which reflects what J.C. told her, is likewise consistent evidence in the record concerning the S-M home. It may be offered to corroborate J.C.'s statements made to Dr. Harris concerning her experience in the home or to impeach the defendants' contention that inappropriate discipline was fiction, and it also may be admitted as a present sense impression of J.C. under FRE 803(3), along an appropriate limiting instruction if need be.

16 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

807(1) and (2) (regarding trustworthiness).

Therefore, depending on what "statements" the officials think are or may be at issue, the information being conveyed may be admissible in evidence for a variety of reasons, including, e.g., present sense impression, notice, impeachment, etc. Once again, the officials' demonstrable willingness to rely on Chapman's rendition of what she was allegedly told by McCowan and Estrada's written statement is – to borrow a phrase used by the officials – *wildly* inconsistent with their sweeping attempt to now exclude any and all "witness statements in case notes," without identifying any such statement or note. In other words, the officials welcome in hearsay that they create when it helps them but attempt to exclude statements on hearsay grounds when they conclude it is not helpful.

Plaintiff cannot brief the officials' conclusory and inconsistent hearsay assertion in a vacuum, and the Court should therefore deny the request at this time.

## CONCLUSION

For the reasons set forth above, the Court should deny the officials' arguments and award reasonable costs to Plaintiff.

Dated: February 26, 2025.

RIZZO BOSWORTH ERAUT PC

By: s/ *Steven Rizzo*
Steven Rizzo OSB No. 840853
Mary D. Skjelset OSB No. 075840
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630

Caitlin V. Mitchell, OSB #123964
Johnson Johnson Lucas & Middleton PC
975 Oak Street, Ste. 1050
Eugene, OR 97401
Tel: (541) 484-2434
Fax: (541) 484-0882
cmitchell@justicelawyers.com

17 – PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Nadia Dahab, OSB #125630
Sugerman Dahab
101 SW Main Street, Suite 910
Portland, Oregon 97204
Tel: (503) 228-6474
nadia@sugermandahab.com

ATTORNEYS FOR PLAINTIFF LEVI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ETHAN LEVI,

          Plaintiff,

v.

KIM CHAPMAN, et al.,

          Defendants.

OREGON DEPARTMENT OF HUMAN SERVICES, et al.,

          Third-Party Plaintiffs,

      v.

JOE ALBERT RAYGOSA,

          Third-Party Defendant.

CASE NO. 6:22-cv-01813-MTK

**CERTIFICATE OF SERVICE**

      I am employed by the law firm of Rizzo Bosworth Eraut PC in Portland, Oregon.  I am over the age of eighteen years and not a party to the subject cause.  My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

      On the date below, I caused to be served on all parties in this action by transmitting a true copy thereof**: Plaintiff's Surreply to Defendants' Motion for Partial Summary Judgment**

1 – Certificate of Service

**VIA ECF & EMAIL**

Jill Schneider
Nicholas S. Mancuso
Michelle Watkins
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Ph. 971-673-1880
Fax: 971-673-5000
Email: jill.schneider@doj.state.or.us
Email: nicholas.mancuso@doj.state.or.us
Email: michelle.watkins@doj.state.or.us
*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

Nicole A.W. Abercrombie
Jon W. Monson
Cable Huston LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201
Ph. 503-224-3092
Fax: 503-224-3176
Email: jmonson@cablehuston.com
Email: nabercrombie@cablehuston.com
*Of Attorneys for Defendant O'Brien*

Bonnie Richardson
Marissa Korbel
Manuella Tshala
Allegiant Law
100 SW Main Street, Ste. 400
Portland, OR. 97204
Ph. 503-546-4637
Email: bonnie@allegiantlaw.com
Email: marissa@allegiantlaw.com
Email: manuella@allegiantlaw.com
*Of Attorneys for Plaintiff Conley*

Lauren Blaesing
Harry B. Wilson
Alexandra Rhee
Chad Naso
Jeffrey Edelson
Anit Jindal
Vivek Kothari
Markowitz Herbold PC
1455 SW Broadway
Ste. 1990
Portland, OR. 97201
Ph: 503-295-3085
Email: laurenblaesing@markowitzherbold.com
Email: harrywilson@markowitzherbold.com
Email: alexrhee@markowitzherbold.com
Email: chadnaso@markowitzherbold.com
Email: jeffedelson@markowitzherbold.com
Email: anitjindal@markowitzherbold.com
Email: vivekkothari@markowitzherbold.com
*Of Attorneys for Defendants Tibbetts, O'Brien, Lane, Chapman, and Oregon Department of Human Services*

Dated this 26th day of February, 2025.

 *s/Shelley Maddox*
Shelley Maddox, Paralegal

2 – Certificate of Service