**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Alexandra L. Rhee, OSB #230770**
AlexRhee@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for State Defendants*
*and Third-Party Plaintiff*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI, | Case No. 6:22-cv-01813-MK |
| Plaintiff, | **STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOES 1-5; in their individual and/or official capacities, | **ORAL ARGUMENT REQUESTED** **FILED UNDER SEAL** |
| Defendants. | |
| OREGON DEPARTMENT OF HUMAN SERVICES, | |
| Third-Party Plaintiff, | |
| v. | |
| JOE ALBERT RAYGOSA, | |
| Third-Party Defendant. | |

**STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

LOCAL RULE 7-1(a) CERTIFICATION......................................................................1

MOTION.............................................................................................................1

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

    I.       Kim Chapman certified the Duncan-Raygosa resource home after a lengthy process that included interviews, personal references, a home study, background checks, and a home inspection. ................................3

    II.      While J.C. was in ODHS custody, State Defendants connected her with numerous services, including clothing, healthcare, and therapy. ...........5

    III.   While J.C. was in the Duncan-Raygosa home, her caseworkers, CASA, and healthcare providers were in frequent contact with her and the resource parents; everyone believed that the home was a healthy and positive environment for J.C. ...................................................6

    IV.   During J.C.'s time in the Duncan-Raygosa home there were three unfounded reports of inadequate supervision in the home, unrelated either to J.C. or Z.C. ...........................................................8

    V.    ODHS moved J.C. and Z.C. from the Duncan-Raygosa home over the objections of J.C. and members of her care team. ...............................12

    VI.   ██████████████████████████████████████...............................13

LEGAL STANDARD.........................................................................................15

ARGUMENT .....................................................................................................16

    I.       Qualified immunity requires a two-step analysis...................................17

    II.      State Defendants are entitled to qualified immunity on plaintiff's theory that they failed to stop ongoing harm to J.C. .........................................20

         A.    Plaintiff's theory fails the first step of the qualified immunity analysis because State Defendants were not deliberately indifferent...............................................................20

              1.    State Defendants were not deliberately indifferent because they investigated all reports of inadequate supervision in the Duncan-Raygosa home. .........................................20

              2.    State Defendants were not deliberately indifferent because the prior safety concerns did not establish a substantial risk of harm and regardless the reports were investigated by non-party CPS workers. ...............................................24

B.    Plaintiff's theory fails the second step of the qualified immunity analysis because it is not clearly established that State Defendants' specific conduct violated the Due Process Clause...................................27

III.    State Defendants are entitled to qualified immunity on plaintiff's theory regarding the Duncan-Raygosa home's certification...............................28

    A.    Plaintiff's theory fails at the first step of the qualified immunity analysis because Chapman and Brooks were not deliberately indifferent...............................................................................29

        1.    Chapman followed applicable policy to certify Duncan and Raygosa, which included out-of-state criminal history and child welfare checks.....................................................29

        2.    Unbeknownst to Chapman or any other State Defendant, there was an unfounded report in California regarding the death of a child in Duncan and Raygosa's care. ............................29

        3.    Chapman and Brooks were not deliberately indifferent because no information they had at the time compelled them to conclude that there was a substantial risk of harm. ..........31

    B.    Plaintiff's theory fails the second step of the qualified immunity analysis because it is not clearly established that State Defendants' specific conduct violated the Due Process Clause....................................35

IV.    █████████████████████████████████████████████████████ ████████████████████████████████████

    █    ███████████████████████████████████████████████

    █    ███████████████████████████████████████████████████

    █    ███████████████████████████████████████████████████

    █    ██████████████████████████████...............................39

V.    State Defendants are entitled to qualified immunity on plaintiff's newly pled allegations regarding the ████████████ home..............................39

VI.    O'Brien is also entitled to qualified immunity on plaintiff's theory regarding her alleged efforts to "undermine" J.C.'s disclosure of sexual abuse. .............................................................................42

VII.    If this Court denies summary judgment on all of plaintiff's federal claims, it must make individualized determinations regarding each State Defendant's subjective knowledge and culpability and grant summary judgment to individual State Defendants................................43

CONCLUSION.................................................................................45

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................. 15

*Ansara v. Maldonado*,
   647 F. Supp. 3d 958 (D. Nev. 2022)................................................. 22, 23

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011)................................................................................. 19

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
   520 U.S. 397 (1997)................................................................................. 18

*Bianchi v. Rylaarsdam*,
   334 F.3d 895 (9th Cir. 2003) ........................................................... 37, 38

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................. 15

*Chappell v. Mandeville*,
   706 F.3d 1052 (9th Cir. 2013) .............................................................. 19

*Cherewick v. State Farm Fire & Cas.*,
   578 F. Supp. 3d 1136 (S.D. Cal. 2022).............................................. 16

*City & Cnty. of San Francisco, Cal. v. Sheehan*,
   575 U.S. 600 (2015)................................................................................. 16

*Cooper v. Ramos*,
   704 F.3d 772 (9th Cir. 2012) ................................................................ 37

*Cox v. Dep't of Soc. & Health Servs.*,
   913 F.3d 831 (9th Cir. 2019) ................................................................ 26

*Cuevas v. City of Tulare*,
   107 F.4th 894 (9th Cir. 2024) ............................................................... 18

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*,
   489 U.S. 189 (1989)................................................................................. 18

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018)............................................................................ 28, 35

*Est. of Ford v. Ramirez-Palmer*,
   301 F.3d 1043 (9th Cir. 2002) ........................................................ 27

*Evans v. Skolnik*,
   997 F.3d 1060 (9th Cir. 2021) ........................................................ 19

*Grimes v. Alameda Cnty. Soc. Servs.*,
   No. C, 11-02977 WHA, 2011 WL 4948879 (N.D. Cal. Oct. 18, 2011) .................................. 38

*Grossman v. City of Portland*,
   33 F.3d 1200 (9th Cir. 1994) ........................................................ 32

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ........................................................ 38

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) ........................................................ 22, 27, 28, 40

*Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Reg. Servs.*,
   380 F.3d 872 (5th Cir. 2004) ........................................................ 22, 25

*Hughes v. Rodriguez*,
   31 F.4th 1211 (9th Cir. 2022) ........................................................ 19

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ........................................................ 15

*J.H. ex Rel. Higgin v. Johnson*,
   346 F.3d 788 (7th Cir. 2003) ........................................................ 21, 22, 25

*J.R. v. Gloria*,
   593 F.3d 73 (1st Cir. 2010) ........................................................ 21, 25, 33, 34

*Lavelle-Hayden v. Legacy Health*,
   No. 3:22-cv-01752-IM, 2024 WL 3822712 (D. Or. 2024) .................................... 16

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988)…………..……………………………………………………43

*Lewis v. Anderson*,
   308 F.3d 768 (7th Cir. 2002) ........................................................ 22, 25, 40

*Lintz v. Skipski*,
   25 F.3d 304 (6th Cir. 1994) ........................................................ 22

*Lipscomb By & Through DeFehr v. Simmons*,
   962 F.2d 1374 (9th Cir. 1992) ........................................................ 18

*M.M.E. by and through Flores v. Cnty. of San Bernardino, by and through the San Bernardino Cnty. Dep't of Children and Family Servs.*,
  709 F.Supp 3d 1033 (C.D. Cal. 2023) ....................................................................... 23, 24, 25

*M.P. v. Cnty. of Los Angeles*,
  No. CV 19-10755-GW-JPRx, 2020 WL 6031957 (C.D. Cal. July 17, 2020) ........ 24, 25, 34, 35

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
  692 F.3d 983 (9th Cir. 2012) ............................................................................... 38, 39

*Momox-Caselis v. Donohue*,
  987 F.3d 835 (9th Cir. 2021) ...................................................................... 18, 20, 25, 32

*Mullenix v. Luna*,
  577 U.S. 7 (2015)........................................................................................................ 19

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...................................................................................... 15

*Noel v. Hall*,
  341 F.3d 1148 (9th Cir. 2003) ..................................................................................... 37

*O'Doan v. Sanford*,
  991 F.3d 1027 (9th Cir. 2021) ..................................................................................... 16

*Orr v. Bank of American, NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ...................................................................................... 16

*Peck v. Montoya*,
  51 F.4th 877 (9th Cir. 2022) ......................................................................................43

*Rico v. Ducart*,
  980 F.3d 1292 (9th Cir. 2020) ..................................................................................... 19

*Rivera v. Philip Morris, Inc.*,
  395 F.3d 1142 (9th Cir. 2005) ..................................................................................... 15

*Sabbe v. Washington Cnty. Bd. Of Comm'rs*,
  84 F.4th 807 (9th Cir, 2023) ....................................................................................... 19

*Tamas v. Dep't of Soc. & Health Servs.*,
  630 F.3d 833 (9th Cir. 2010) ............................................................................ 18, 27, 43, 44

*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996) ........................................................................................ 15

Page v –     **STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Turner v. Cnty. of Washoe*,
   No. 3:23-cv-00407-ART-CSD, 2024 WL 3859311 (D. Nev. Aug. 19, 2024) ........................ 38

*Washington Mut. Inc. v. United States*,
   636 F.3d 1207 (9th Cir. 2011) ................................................................................................ 15

*Waubanascum v. Shawano Cnty*,
   416 F.3d 658 (7th Cir. 2005) ....................................................................................... 32, 33, 34

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ……………………………………………………………………… 43

Statutes

28 U.S.C. § 1257 ......................................................................................................................... 37

34 U.S.C. § 20990 ....................................................................................................................... 30

42 U.S.C. § 671(a)(20)(B) .......................................................................................................... 30

42 U.S.C. § 1983 ........................................................................................................................... 1

Cal. Penal Code § 11165.12(a) ................................................................................................... 31

Cal. Penal Code § 11169(a) .................................................................................................. 30, 31

Cal. Penal Code § 11170(e)(1) .................................................................................................... 30

ORS 419B.337(5) ........................................................................................................................ 12

Rules

Fed. R. Civ. P. 56 ............................................................................................................... 1, 15, 16

Regulations

OAR 413-200-0274(1)(L)(A) ...................................................................................................... 30

## LOCAL RULE 7-1(a) CERTIFICATION

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Kim Chapman, Anastasia Brooks, [1]

Kassidy O'Brien and Erin Lane (collectively, "State Defendants") conferred with plaintiff's

counsel via telephone on November 25, 2024, regarding the relief sought in this motion.

Plaintiff opposes this motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56(a), State Defendants move for summary

judgment in their favor on plaintiff's federal claims under 42 U.S.C. § 1983, *i.e.*, the First,

Second, Third, and Fourth Claims for Relief in the First Amended Complaint.

## INTRODUCTION

This Court should grant summary judgment against plaintiff's federal claims because

each of the individual State Defendants has qualified immunity. J.C.'s sexual abuse at the hands

of Joe Raygosa was a horrific tragedy. But the Ninth Circuit has instructed district courts not to

judge safety determinations made by foster care workers in hindsight. To get beyond summary

judgment, plaintiff must point to evidence in the record that would support a finding that each

individual State Defendant was deliberately indifferent to J.C.'s sexual abuse in the home. And

even if plaintiff could meet that burden—which he cannot—plaintiff would also have to show

that State Defendants' specific conduct was prohibited by clearly established law. Plaintiff

cannot meet either burden.

There is no evidence that any State Defendant was aware of Raygosa's abuse of J.C.

while it was occurring. It is undisputed that J.C. did not report her abuse until after she had left

the home and the abuse had ended. During the approximately one year that J.C. lived in the

---

[1] Anastasia Brooks is named in the complaint by her former name, Anatasia Tibbetts.

**Page 1 –**     **STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Duncan-Raygosa home, defendant Oregon Department of Human Services ("ODHS") did not receive *any* reports that J.C. was being physically or sexually abused in the home. Although there were prior reports of minor injuries to other children in the home, non-party state employees investigated and responded to those reports and none of those investigations alerted any State Defendant to sexual or physical abuse. While in ODHS's care and custody, J.C. had a robust care team that included therapists, a skills builder, a primary care physician, a court-appointed special advocate ("CASA"), a juvenile dependency attorney, and ODHS caseworkers and other staff—none of whom suspected that J.C. was being abused in the home. In hindsight, the parties now know the perpetrator was able to conceal his abuse from everyone. But hindsight knowledge does not establish deliberate indifference on the part of State Defendants. This Court should grant this motion and grant judgement to State Defendants on plaintiff's federal claims.

## BACKGROUND



(Decl. of Chad Naso in Supp. of Partial Mot. for Summ. J. ("Naso Decl.") Exs. 1, 2.)

(Naso Decl. Ex. 2 at 2-3, 5-6.)

(*Id.* at 6; Naso Decl. Ex. 3 at 4.)

(Naso Decl. Ex. 2 at 2.)



(Naso Decl. Ex. 4.)

(Naso Decl. Ex. 5 at 3.)

The State of Oregon prosecuted Raygosa for his crimes and he is currently serving, effectively, a life sentence.

J.C., through her conservator, plaintiff Ethan Levi, now brings state-law claims against ODHS and federal claims against four individual state employees (a resource home certifier, a permanency caseworker, and their respective supervisors). Plaintiff's claims are based on J.C.'s time in the Duncan-Raygosa and ███████████ homes.

**I.    Kim Chapman certified the Duncan-Raygosa resource home after a lengthy process that included interviews, personal references, a home study, background checks, and a home inspection.**

(Naso Decl. Ex. 6.)

(Naso Decl. Exs. 7, 8.)

---

[2] ODHS now uses the terms "resource home" and "resource parent" instead of "foster home" and "foster parent." The terms are used interchangeably in this motion because both terms appear in documents cited in support of this motion.

**Page 3 –     STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**



(Naso Decl. Exs. 9, 10.)

(Naso Decl. Ex. 9 at 4-6.)

(Naso Decl. Ex. 11.)

(Naso Decl. Ex. 7.)

(Naso Decl. Ex. 12).

(Naso Decl. Ex. 13.)

(Naso Decl. Ex. 14.)

(*Id.* at 2.)

(*Id.*)

(Naso Decl. Ex. 9 at 4-6.)

**II.    While J.C. was in ODHS custody, State Defendants connected her with numerous services, including clothing, healthcare, and therapy.**



(Naso Decl. Ex. 15.)

(Naso Decl. Ex. 16.)

(Naso Decl. Ex. 17 at 4.)

(Naso Decl. Ex. 18.)

(Naso Decl. Ex. 3 at 4, Ex. 17 at 6.)

(*Id.*)

(Naso Decl. Ex. 16.)

(Naso Decl. Ex. 19 at 59:24-60:8, 98:4-10, 100:11-101:3.)

(*Id.* at 14:18-15:7.)

(Naso Decl. Ex. 20 at 262:15-263:8.)



(Id.; see also Naso Decl. Ex. 19 at 89:19-22, Naso Decl. Ex. 21 at 446:16-21; Naso Decl. Ex. 30 at 2.)

### III.  While J.C. was in the Duncan-Raygosa home, her caseworkers, CASA, and healthcare providers were in frequent contact with her and the resource parents; everyone believed that the home was a healthy and positive environment for J.C.

J.C. had an extensive care and juvenile advocacy team with whom she was in regular contact, including her caseworkers, mental healthcare providers, and other healthcare providers. None of these individuals believed or had reason to believe that J.C. was being abused in the Duncan-Raygosa home.

(Naso Decl. Ex. 22 at 39:7-18.)

(Naso Decl. Ex. 23 at 21:18-22:8.)

(Naso Decl. Ex. 24 at 52:23-53:3.)

(Naso Decl. Ex. 19 at 59:24-60:8, 100:11-101:3; Naso Decl. Ex. 20 at 262:15-263:8.)

(Naso Decl. Ex. 25.)  J.C. did not disclose any abuse by Raygosa during the time she was living in the Duncan-Raygosa household.

ODHS employees also had frequent contact with J.C.  O'Brien had frequent face-to-face contact with each sibling and foster parent and often visited the children in the Duncan-Raygosa home to assess the condition of the home.  (Naso Decl. Ex. 26 at 54:2-23.) ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Naso Decl. Ex. 26 at 52:18-53:13, 201:16-22.) █████████████████████████████

████████████████████████████ (Naso Decl. Ex. 19 at 70:9-20; Naso Decl. Ex. 22 at 51:4-15). ██████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ (Naso Decl. Ex. 19 at 70:11-17.) ████

███████████████████████████████████████████████████

█████████████████████████████ (Naso Decl. Ex. 22 at 52:8-21, 55:7-12.)

J.C. had ongoing contacts with her care team and representatives while in foster care and no one suspected that she was being abused in the Duncan-Raygosa home until her first disclosure in October 2017. ███████████████████████████████

██████████████████████████████████████████████ (Naso Decl. Ex. 27 at 1.) ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████ (*Id.*) ███████████████████████

██████████████████████████████████████████████ (*Id.* at

3.) 

(*Id.* at 4.)

(Naso Decl. Ex. 22 at 62:19-25, 79:23-80:17.)

(Naso Decl. Ex. 28.)

(*Id.*)

(Naso Decl. Ex. 29

Conversely, J.C. exhibited signs of distress at the prospect of being returned to her biological mother.

(Naso Decl. Ex. 30.)

## IV.     During J.C.'s time in the Duncan-Raygosa home there were three unfounded reports of inadequate supervision in the home, unrelated either to J.C. or Z.C.

It is undisputed that J.C. did not disclose Raygosa's sexual abuse to anyone until after she left the Dunca-Raygosa home and that no State Defendant was aware of this abuse while it was occurring.  Instead, plaintiff asserts that three reports of inadequate supervision in the Duncan-

Raygosa home should have alerted State Defendants that the Duncan-Raygosa home was generally unsafe.



(Naso Decl. Ex. 31 at 13.)

(*Id.* at 5.)

(*Id.* at 13.)

(*Id.*)

(*Id.* at 14.)

(*Id.* at 17.)

(Naso Decl. Ex. 32 at 48:11-19.)



(Naso Decl. Ex. 31 at 4.)

(*Id.* at 13.)

(*Id.*) (*Id.* at 17.)

(Naso Decl. Ex. 33.)

(*Id.* at 3.)

(Naso Decl. Ex. 34 at 21.)

(*Id.* at 21-22.)



(*Id.* at 21-22.)

(*Id.* at 21.)

(Naso Decl. Ex. 35.)

(Naso Decl. Ex. 21 at 362:10-365:6.) [3]

(Naso Decl. Ex. 36 at 131:9-18.)

In sum, each of these CPS investigations involved children other than J.C., involved allegations of inadequate supervision (not abuse), and ODHS promptly responded to and thoroughly investigated each incident.  When injuries occurred, they matched the descriptions given to them, namely rough play by and between children.



(Naso

[3]

(Naso Decl. Ex. 34.)

(*Id.*)



Decl. Ex. 34 at 3.)

(*Id.* at 20.)

## V.    ODHS moved J.C. and Z.C. from the Duncan-Raygosa home over the objections of J.C. and members of her care team.

When ODHS moved J.C. and Z.C. from the Duncan-Raygosa home following the June 2017 incident involving Z.C. wandering away, ODHS did so over the *objections* of the other members of the children's care teams.  Others advocated for J.C. to remain in the Duncan-Raygosa home, notwithstanding the concerns regarding inadequate supervision.

(Naso Decl. Ex. 37 at 6:3-15; Naso Decl. Ex. 38 at 8:9-17.)

(Naso Decl. Ex. 37 at 9:21-22.)

(Naso Decl. Ex. 38 at 6:22-8:8.)

(Naso Decl. Ex. 37 at 6:3-15; Naso Decl. Ex. 38 at 8:9-17.)

(Naso Decl. Ex. 39 at 44:2-6.)

(*Id.* at 44:9-12.)



(Naso Decl. Ex. 40.)

(Naso Decl. Ex. 38 at 8:9-17, 17:9-16.)

(Naso Decl. Ex. 39 at 136:21-137:11, 139:22-140:2.)

(Naso Decl. Ex. 4.)

(Naso Decl. Ex. 5.)  This was the first such disclosure J.C. made to anyone.

**VI.     J.C. was not abused in the ▇▇▇▇▇▇▇ home and continued to receive social services (*e.g.*, therapy) while in that home.**

Plaintiff's original Complaint asserted that State Defendants failed to stop Raygosa's abuse of J.C.  After the close of fact discovery, plaintiff amended the Complaint to assert a new theory regarding the ▇▇▇▇▇▇ home.  Plaintiff's Complaint does not allege that J.C. was harmed in the home, but states in general terms that the ▇▇▇▇▇▇ home was "unfit" because the foster mother was a victim of childhood sexual abuse herself and the foster father admitted to watching pornography in the past. (Dkt. No. 196 ¶ 65.)  The First Amended Complaint does not allege any actual injury or harm suffered by J.C. in the ▇▇▇▇▇▇ home, but alleges that J.C. should be awarded money damages for being placed there.   (Dkt. No. 196 ¶ 82.)

**Page 13 –     STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

J.C. was not abused in the ████████ home. ████████████████████

████████████████████████████████████████████

████████ (Naso Decl. Ex. 20 at 262:15-263:8.) ████████████████████

████████████████ (*Id.*) ████████████████████████

████████████████████████████████████████████

(Naso Decl. Ex. 41.) ████████████████████████████

████████████████████████████████████████████

████████████████ (*Id.*)

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (Naso Decl. Ex. 42 at 379:17-24.) ████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ (*Id.* at 379:9-16.) ████████████

████████████████████████████████████ (Naso Decl. Ex. 21 at

503:10-504:8.) ████████████████████████████████████

████████████ (Naso Decl. Ex. 43.)

████████████████████████████████████████████████

████████ (Naso Decl. Ex. 4.) ████████████████████████████

████████████████████ (Naso Decl. Ex. 19 at 148:17-149:4.) ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (*Id.* at 149:13-150:19.) ████████████████████████████████████████

████████████████████████████ (*Id.* at 148:22-23.)

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The trial court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). On issues where the nonmoving party bears the burden of proof at trial, the moving party carries its burden by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The nonmoving party's burden is "not a light one. . . . The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. Because plaintiff bears the burden of establishing that the constitutional violation occurred, he also bears the burden of rejoinder at summary judgment to provide evidence to establish the elements of the underlying constitutional claim. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of American, NT & SA*, 285 F.3d 764, 771 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c)(2). Because summary judgment qualifies as a substitute for a trial, and hearsay (absent an exception or exclusion) is inadmissible at trial, a motion for summary judgment and papers opposing it may not be supported by hearsay. *Lavelle-Hayden v. Legacy Health*, No. 3:22-cv-01752-IM, 2024 WL 3822712, at *1 (D. Or. 2024) (quoting *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022)). Plaintiff cannot introduce his expert or the expert's report as lay testimony on summary judgment. *Id.*

The U.S. Supreme Court has cautioned that qualified immunity is a question of law and cannot be defeated by expert opinions that second-guess the defendant's conduct. *City & Cnty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 616 (2015) ("[S]o long as a reasonable officer could have believed that his conduct was justified, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.") (citation omitted); *see also O'Doan v. Sanford*, 991 F.3d 1027, 1043 (9th Cir. 2021) (stating that qualified immunity is a question of law and should not be based on "after-the-fact perspective" of an expert witness).

## ARGUMENT

Each of the four individual State Defendants has qualified immunity for the federal claims, and this Court should therefore grant summary judgment in favor of State Defendants on plaintiff's First, Second, Third, and Fourth Claims for Relief in their entirety. Plaintiff's first four claims each correspond to one of the four individual State Defendants: a permanency caseworker (O'Brien), a certification caseworker (Chapman), and the respective supervisors for each (Brooks and Lane).

Plaintiff advances five theories—each meritless—contending that State Defendants, or some of them, violated Section 1983:

1.     State Defendants failed to recognize and stop Raygosa's abuse of J.C.  (All State Defendants.)  (Dkt. No. 196 ¶¶ 79(c)-(h) (Chapman); 92(f),(g),(i)-(k) (Brooks); 105(a)-(h), (j)-(l) (O'Brien); 112(c)-(f), (h)-(l), (m), (o), (p), (q) (Lane).)

2.     Chapman and Books improperly certified Duncan and Raygosa as resource parents.  (Chapman and Brooks only.)  (Dkt. No. 196 ¶¶ 79(a)-(b) (Chapman); 92(c)-(d),(h) (Brooks).)

3.     State Defendants allowed J.C. to have continued contact with Duncan and Raygosa after she was moved from the home.  (All State Defendants.)  (Dkt. No. 196 ¶¶ 62-63.)

4.     State Defendants improperly certified ███ and ██████ and failed to keep J.C. safe in their home.  (Dkt. No. 196 ¶¶ 79(i)-(l) (Chapman); 92(l)-(o) (Brooks); 105(m)-(n) (O'Brien); 112(r)-(s) (Lane).)  (Certification Chapman and Brooks; safety all State Defendants.)

5.     O'Brien aided Raygosa's defense during his criminal trial and sought to "undermine" J.C. disclosure of sexual abuse.  (Dkt. No. 196 ¶¶ 105(i) (O'Brien); 112(n) (Lane).)

All four of these theories fail.  Plaintiff cannot show that any of the State Defendants were deliberately indifferent to J.C.'s basic human needs.  And, even if they could, there is no clearly established law providing that State Defendants' specific conduct is unconstitutional.

## I.     Qualified immunity requires a two-step analysis.

To determine whether qualified immunity applies, the Court asks (1) whether each defendant violated a federal statutory or constitutional right and (2) whether the unlawfulness of

her conduct was "clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024). Here, the answer to both questions is no.

To address the first question, the Ninth Circuit has explained that children in foster care have a liberty interest protected by the Due Process Clause of the Fourteenth Amendment that requires that the state provide for foster children's "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety[.]" *Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)). Thus, to answer the first question, the Court must determine whether each State Defendant was deliberately indifferent to J.C.'s basic human needs.

Deliberate indifference has both objective and subjective components. In particular, plaintiff must establish (1) J.C. faced an objectively substantial risk of harm; (2) each defendant was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (3) each defendant actually drew that inference or a reasonable official would have been compelled to draw that inference. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010).

Deliberate indifference is a stringent standard and requires misconduct that "shock[s] the conscience." *Id.*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (stating that "deliberate indifference is a stringent standard of fault") (cleaned up). Negligence or even gross negligence will not suffice. *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021).

To answer the second question, the Court must determine whether it is "clearly established" that State Defendants' specific conduct violated J.C.'s constitutional rights. "A clearly established right is one that is sufficiently clear that every reasonable official would have

understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). "[P]laintiff bears the burden of pointing to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (citation omitted). To determine whether the law was clearly established, courts do not "require a case directly on point," but existing precedent must have placed the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The focus of the inquiry is whether the defendants had fair notice that "*their actions* were unconstitutional." *Chappell v. Mandeville,* 706 F.3d 1052, 1061 (9th Cir. 2013) (emphasis added). Even where existing precedent recognizes a "general right[]" that "is not the end of the analysis;" the Court still must consider "the specific facts under review here." *Rico v. Ducart,* 980 F.3d 1292, 1299 (9th Cir. 2020) (citation omitted). Where there is no binding Ninth Circuit or Supreme Court precedent on point, courts should look to persuasive authority from other courts to determine if there is a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021). Qualified immunity will still apply if the circumstances of a prior case denying immunity are "materially distinguishable from the one before us." *Sabbe v. Washington Cnty. Bd. Of Comm'rs,* 84 F.4th 807, 826 (9th Cir, 2023) (citation omitted). When this test is properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Evans,* 997 F.3d at 1066. (citation omitted).

II.     **State Defendants are entitled to qualified immunity on plaintiff's theory that they failed to stop ongoing harm to J.C.**

      A.     **Plaintiff's theory fails the first step of the qualified immunity analysis because State Defendants were not deliberately indifferent.**

            1.     **State Defendants were not deliberately indifferent because they investigated all reports of inadequate supervision in the Duncan-Raygosa home.**

There is no dispute that ODHS received, responded to, and investigated reports of inadequate supervision in the Duncan-Raygosa home. (Naso Decl. Exs. 31, 34.) Persuasive and binding cases addressing due process challenges brought by children in foster care have considered similar facts and claims and, under that precedent, plaintiff cannot survive summary judgement on deliberate indifference as to any of the four individual State Defendants.

Case law establishes three principles that are relevant to this Court's qualified immunity analysis: (1) a foster parent's occasional lack of adequate supervision over children is insufficient to establish a substantial risk of harm, even where the lack of supervision results in minor injuries, (2) state officials are not deliberately indifferent where they investigate and evaluate reports of safety threats, even if the results of the investigation turn out to be wrong in hindsight, and (3) caseworkers are entitled to rely on the investigations conducted by their colleagues when determining whether there is a substantial risk of harm in a home.

In *Momox-Caselis*, a foster father struggled with underlying health issues for a few weeks, requiring additional assistance from the foster mother. 987 F.3d at 841. The foster father over-administered a foster child's allergy medication, killing him. *Id.* The Ninth Circuit held that child welfare workers did not know about the father's health struggles and thus were not deliberately indifferent and regardless the father's "occasional overwhelm" was not sufficient to demonstrate a substantial risk of harm. *Id.* at 847. Thus, under binding authority, a foster parent's "occasional overwhelm" is insufficient to a establish a substantial risk of serious harm.

Similarly, in *J.R. v. Gloria*, two young twin boys were placed in a foster home.  During their 18-month stay, there were various reports that the children sustained physical injuries, including scrapes and bruises in the home.  593 F.3d 73, 77 (1st Cir. 2010).  Child welfare workers investigated, but the prior reports did not result in a founded finding of abuse.  *Id.* (reports of injuries were unfounded for abuse and neglect where children said "injuries came from fighting with each other").  The boys later disclosed that a caretaker in the home sexually abused them, and the boys sued various state officials under the Due Process Clause.  *Id.* at 78.  The First Circuit granted qualified immunity and, in doing so, specifically rejected the plaintiffs' theory that unfounded reports, including reports with minor physical injuries and allegations of abuse, "should be viewed in the aggregate as general warning signs of abuse in the home."  *Id.* at 81.

As a matter of law, the four individual State Defendants—none of whom were directly responsible for conducting CPS investigations—are each entitled to rely on the ODHS CPS investigation into allegations of inadequate supervision.  In *J.H. ex Rel. Higgin v. Johnson*, the Seventh Circuit affirmed summary judgment in favor of child welfare workers who were sued after a young child was sexually abused by a foster parent who had previously been accused of sexually abusing children in his care.   The Court found that the prior allegations of sexual abuse did not evidence deliberate indifference because "investigations had concluded those allegations were unfounded."  346 F.3d 788, 790 (7th Cir. 2003).  As the Seventh Circuit explained, the knowledge of unfounded reports of abuse is insufficient to establish a triable issue of deliberate indifference, because caseworkers are entitled to rely on the investigations conducted by their colleagues:

> In a large state agency like [a child welfare agency], it is imperative that labor be divided and that employees be able to rely on the

> determinations of their colleagues. Absent awareness that these
> internal investigations were a sham, a reasonable jury could not find
> that a defendant's knowledge of these reports was equal to
> knowledge or suspicion that Mr. Hill was a probable child molester.

*Id.* at 794. Other circuit courts have reached similar conclusions. *See, e.g.*, *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Reg. Servs.*, 380 F.3d 872, 883 (5th Cir. 2004) (granting qualified immunity where children's bruises were investigated and determined to be result of play); *Lintz v. Skipski*, 25 F.3d 304, 306-307 (6th Cir. 1994) (granting qualified immunity where guardian ad litem and attorney opposed moving foster children following allegation of abuse); *Lewis v. Anderson*, 308 F.3d 768, 774 (7th Cir. 2002) (rejecting due process claim based on previous incident of foster parent slapping a child). The Ninth Circuit has specifically cited this out-of-circuit authority as persuasive when describing the contours of deliberate indifference in this circuit. *See Henry A. v. Willden*, 678 F.3d 991, 1001 (9th Cir. 2012) (citing *Hernandez* and *J.H.*).

District courts in the Ninth Circuit have held that child welfare workers are not deliberately indifferent when they take "affirmative actions" to respond to reports of suspected abuse. In *Ansara v. Maldonado*, caseworkers received a report that a foster father was an alcoholic who abused his wife. 647 F. Supp. 3d 958, 967 (D. Nev. 2022), appeal dismissed, No. 23-15142, 2023 WL 3221749 (9th Cir. May 1, 2023). The caseworks responded to the report by interviewing the family and observing the home. *Id.* at 968. In a separate visit, foster care workers observed a half-inch scratch on the child's forehead, which the foster mother attributed to playing. *Id.* Later, the foster father killed the boy by throwing him into a wall during a drunken rage. *Id.* at 969. The boy's biological grandparents sued foster care workers on behalf of the boy alleging due process violations. *Id.* The District of Nevada granted summary judgment to the caseworkers, finding that the facts did not support an inference of deliberate

indifference. *Id.* at 981. The court surveyed the existing case law in the Ninth Circuit regarding harm to foster children and determined that deliberate indifference applies to foster care safety reports when two factor are met: (1) the reports are of "sufficient quantity and quality" to notify officials of a safety threat and (2) the officials fail to respond to the reports. *Id.* at 975. The Court found that the facts did not support deliberate indifference because the child welfare workers "took affirmative actions to corroborate the allegations of abuse" lodged against the foster parent and because the observation of a half-inch scratch on the child's forehead did not support a reasonable inference that the foster father posed a substantial risk of harm to the child. *Id.* at 976.

District courts in this circuit have further concluded that unfounded reports of suspected abuse and evidence of minor injuries are insufficient to raise a triable issue of deliberate indifference. In *M.M.E. by and through Flores*, there were eight unfounded reports of neglect and one unfounded report of abuse against a foster home prior to the placement of an infant in the home. *M.M.E. by and through Flores v. Cnty. of San Bernardino, by and through the San Bernardino Cnty. Dep't of Children and Family Servs.*, 709 F.Supp 3d 1033, 1039 (C.D. Cal. 2023). The infant was in the home for approximately a month. *Id.* at 1039. Upon leaving the home, the infant had a rose-colored mark on her cheek, which child welfare workers attributed to cold weather. *Id.* A later forensic examination determined that child had been physically and sexually abused in the home. *Id.* The child sued alleging violations of her rights under the Due Process Clause, and the Central District of California granted qualified immunity. *Id.* at 1045. The court reasoned that most of the prior referrals were for general neglect not physical abuse and that the reports were determined to be unfounded. *Id.* at 1044. Similarly, the court held that the child welfare workers' conclusions regarding the rose color mark on the child's cheek was

not unreasonable and regardless the mark was not evidence of a Fourteenth Amendment violation. *Id.* at 1043; *see also M.P. v. Cnty. of Los Angeles*, No. CV 19-10755-GW-JPRx, 2020 WL 6031957 at *4 (C.D. Cal. July 17, 2020) (allegations that child welfare workers knew about prior unfounded allegations of sexual abuse and inadequate supervision by foster parents were insufficient to state a claim that child welfare workers were deliberately indifferent to a substantial risk of harm in the home).

In sum, these cases establish that the fully investigated minor injuries and unfounded reports at issue in this case are insufficient to establish a due process violation and are therefore insufficient to overcome each individual State Defendants' qualified immunity.

        **2.**        **State Defendants were not deliberately indifferent because the prior safety concerns did not establish a substantial risk of harm and regardless the reports were investigated by non-party CPS workers.**

Here, like in several of the cases described above, the prior reports against the Duncan-Raygosa home involved reports of minor injuries, not physical or sexual abuse by foster parents.



(Naso Decl. Exs. 31, 34.)

(Naso Decl. Ex. 34 at 21-22.)

<hr />

[4] Although not alleged in the First Amended Complaint,

(Naso Decl. Ex. 44.)

███████████████████████████████████ (Naso Decl. Ex. 31 at 17.)  None of these reports would have put any State Defendant on notice that there was a substantial risk that J.C. was being abused in the home.  Instead, these occasional instances of inadequate supervision are analogous to the "occasional overwhelm" that the Ninth Circuit addressed in *Momox-Caselis* and the minor injuries sustained by the plaintiffs in *J.R.*, *Hernandez*, *Lewis*, *Ansara*, and *M.M.E. through Flores*.  In each of these cases, the courts granted qualified immunity.

Non-party CPS workers investigated each instance of alleged inadequate supervision and determined them to be unfounded for abuse.  (Naso Decl. Exs. 31, 34.) ████████████████ ██████████████████████████████████████ ██████████████████████████████ (*Id.*)  Plaintiff has not challenged the adequacy of these investigations.  Even if he had, as in *J.R.*, *Ansara*, *M.M.E.*, *J.H.*, and *M.P.*, the individual State Defendants were entitled to rely on these investigations by their colleagues.

Further, State Defendants adequately supervised the Duncan-Raygosa home by periodically visiting the home and connecting with the family and other members of J.C.'s care team. ████████████████████████████████████████ ███████████ (Naso Decl. Ex. 26 at 54:2-23; Naso Decl. Ex. 19 at 70:13-20). ████████████ ████████████████████████████████████████████ ███████████ (Naso Decl. Ex. 26 at 201:16-22; Naso Decl. Ex. 45 at 90:19-25.) ██████ ████████████████████████████████████████████ █████████████████████████████ (Naso Decl. Ex. 22 at 52:8-12, 55:7-12.) ████████████████████████████████████████ (Naso Decl. Ex. 19 at 70:13-20.)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (Naso Decl. Ex. 37 at

6:3-15, 9:21-22; Naso Decl. Ex. 38 at 8:9-10, 6:22-8:8; Naso Decl. Ex. 39 at 44:2-12; Naso Decl.

Ex. 40.)

Although it is now undisputed that J.C. was being sexually abused in the home, the Ninth

Circuit has instructed district courts not to second-guess safety determinations with the benefit of

"hindsight." In *Cox v. Dep't of Soc. & Health Servs.*, child welfare workers permitted children

to visit with their father in his home, even though the father was a suspect in the disappearance

of the children's mother. 913 F.3d 831, 838 (9th Cir. 2019). Law enforcement, the father's

sister, and the boys' grandparents all "strongly" stated their fear that the father would harm the

boys during these visits. *Id.* at 838. But the children's guardian ad litem and the psychiatrist

who evaluated the father both recommended that the visits continue. *Id.* at 836, 838. During one

such visit, the father murdered the two boys. *Id.* The Ninth Circuit held that the stated safety

concerns were "generalized" and would not have put the child welfare workers on notice of the

substantial risk that the father would physically harm the boys. *Id.* Instead, the Ninth Circuit

cautioned about evaluating the evidence "in hindsight" even where stated concerns turned out to

be "heartbreakingly prescient." *Id.* The Ninth Circuit recognized "how difficult it is for social

workers to sift through safety fears and concerns, and to make reasoned and expeditious

judgments about the risk of harm." *Id.*

Indeed, because the summary judgment record does not establish *any* concerns about

substantial harm to J.C. raised during the relevant time periods, plaintiff's claim here relies

*entirely* on hindsight, making it even weaker than the kinds of claims rejected for second-guessing social workers who had "sift[ed] through safety fears and concerns" to make "reasoned and expeditions judgments about the risk of harm." *Id.* On these facts, plaintiff has not established that State Defendants were deliberately indifferent to a substantial risk of harm to J.C.

      **B.**    **Plaintiff's theory fails the second step of the qualified immunity analysis because it is not clearly established that State Defendants' specific conduct violated the Due Process Clause.**

Even if plaintiff could show that State Defendants were deliberately indifferent, State Defendants still have qualified immunity because it is not clearly established that their specific conduct violated the Due Process Clause. *See Est. of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002) ("Even though the constitutional issue turns on the officers' state of mind (here, deliberate indifference to a substantial risk of serious harm), courts must still consider whether—assuming the facts in the injured party's favor—it would be clear to a reasonable officer that his conduct was unlawful.").

As shown, the case law from other circuits and district courts in this circuit all confirm that isolated reports of minor injuries and occasional lack of supervision are not evidence of a Fourteenth Amendment violation and that the individual State Defendants were entitled to rely on the investigations performed by their CPS colleagues regarding these reports. Even if this Court disagrees with this body of case law, it demonstrates that there was no consensus in the case law that would have put State Defendants on notice that their actions were unlawful. For that reason alone, State Defendants are entitled to qualified immunity.

To be sure, the Ninth Circuit has stated that children in foster care have a due process right to "reasonable safety." *Tamas*, 630 F.3d at 846); *Henry A.*, 678 F.3d at 1001. But that general right does not obviate the requirement that courts engage in an analysis of whether it was

**Page 27 –**    **STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

clearly established that the defendants' *specific* conduct was unconstitutional. The Supreme Court has emphasized that the "clearly established" standard "requires a high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up). "We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (cleaned up). Here, although plaintiff may allege a general right to "reasonable safety," there is no clearly established law that *any* of the *specific* conduct plaintiff alleges is unconstitutional.[5]

### III.   State Defendants are entitled to qualified immunity on plaintiff's theory regarding the Duncan-Raygosa home's certification.

Plaintiff alleges Chapman "failed to elicit (or chose to ignore)" information about a child that died in California while in Duncan and Raygosa's care. (Dkt. No. 196 ¶ 73.) The evidence does not support this theory, and regardless it fails as a matter of law.

---

[5] To State Defendants' knowledge, the only reported case in which the Ninth Circuit denied qualified immunity to foster care workers is *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012). In that case, the complaint alleged that a foster child had a colon condition that required a colonoscopy and other treatment, but his caseworkers ignored his doctor's request that the county approve the necessary treatment. A different foster child reported that she was being physically abused in her foster home and another child reported that he was being sexually abused and defendants failed to respond to the reports of abuse at all. Based on these allegations, the Ninth Circuit denied qualified immunity at the pleading stage because "failing to respond" to repeated reports of abuse and failing to authorize necessary medical treatment "despite knowledge of [a child's] serious illness and repeated requests from his treating physician" both constituted deliberate indifference. *Id.* at 1001.

*Henry A.* is easily distinguishable. Plaintiff does not challenge the adequacy of the medical care J.C. received, State Defendants did not receive any reports that J.C. was physically or sexually abused in the Duncan-Raygosa home while she resided there, and there is no evidence that State Defendants "fail[ed] to respond" to the reports regarding other children that ODHS did receive.

**A.     Plaintiff's theory fails at the first step of the qualified immunity analysis because Chapman and Brooks were not deliberately indifferent.**

**1.     Chapman followed applicable policy to certify Duncan and Raygosa, which included out-of-state criminal history and child welfare checks.**

Chapman followed state policy to certify Duncan and Raygosa. █████████████



(Naso Decl. Exs. 7-10.) █████████████

(Naso Decl. Ex. 7.) █████████████

(Naso Decl. Ex. 8.) █████████████

(Naso Decl. Exs. 9, 10.) █████████████

(*Id.*) █████████████

(Naso Decl. Ex. 13.)

**2.     Unbeknownst to Chapman or any other State Defendant, there was an unfounded report in California regarding the death of a child in Duncan and Raygosa's care.**

Despite following the required processes, plaintiff alleges that Chapman failed to discover information regarding the death of a child in Duncan and Raygosa's custody in another state four years earlier.  Understanding plaintiff's concerns regarding this certification process requires understanding the relevant state and federal laws on child abuse reporting.

**Page 29 –     STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Adam Walsh Child Protection Act of 2006 requires states to maintain registries of "substantiated" instances of abuse and similarly requires that each state check the registry for each other state where a foster home applicant resided in the preceding five years. 42 U.S.C. § 671(a)(20)(B); 34 U.S.C. § 20990. To comply with the Adam Walsh Act, California's Department of Justice maintains a Child Abuse Central Index ("CACI") that maintains a record of all "substantiated" reports of child abuse and severe neglect. *See* Cal. Penal Code § 11170(e)(1); *see also* (Naso Decl. Ex. 9 at 4-6.) But California law prevents local agencies from submitting reports of abuse other than "substantiated" dispositions to the California Department of Justice for inclusion in the CACI. Cal. Penal Code § 11169(a) ("An agency shall not forward a report to the Department of Justice unless it has conducted an active investigation and determined that the report is substantiated . . . .").

As part of ODHS's resource home certification process, and consistent with federal law, ODHS seeks a "child abuse history background check from each state" where the resource home applicant or other relevant individual has resided within the last five years. OAR 413-200-0274(1)(L)(A). ███████████████████████████████████████████████

██████████████████████████████████████ (Naso Decl. Ex. 9 at 4-6.) ████████████

███████████████████████████████████████████████

████████████████████████████████████ (*Id.*) ████████████

███████████████████████████████████████████████

(*Id.*)

███████████████████████████████████████████████

████████████████████████████ (Naso Decl. Ex. 14.) ██████████████████████

███████████████████████████████████████████████

 (*Id.*)  Under California law, an unfounded report means that the report was investigated and determined "to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect[.]"  Cal. Penal Code § 11165.12(a).  California Penal Code Section 11169(a) provides that an agency "shall not" forward a report to CACI "unless it has conducted an active investigation and determined that the report is substantiated[.]"

(Naso Decl. Ex. 9 at 4-6.)

*See, e.g.*, Naso Decl. Ex. 26 at 218:22-219:13

### 3.    Chapman and Brooks were not deliberately indifferent because no information they had at the time compelled them to conclude that there was a substantial risk of harm.

Plaintiff's theory appears to be that when certifying the Duncan-Raygosa home, Chapman should not have relied on the background check forms provided by the California Department of Justice, but should have instead engaged in an independent investigation of county-level information.  Plaintiff's theory fails as a matter of law because Chapman was entitled to rely on the background check process provided by law.  Regardless, deliberate indifference requires *actual* knowledge of the relevant facts and cannot be satisfied by merely proving that a defendant failed to elicit additional damaging information.

As a threshold matter, Chapman and Brooks are entitled to summary judgment unless plaintiff can demonstrate that the background check process authorized by state and federal law was "patently violative" of J.C.'s due process rights.  As the Ninth Circuit has held, where a state

official acts pursuant to "a statute or ordinance authorizing particular conduct" that state official

has qualified immunity unless the statute "authorizes official conduct which is patently violative

of fundamental constitutional principles[.]" *Grossman v. City of Portland*, 33 F.3d 1200, 1209

(9th Cir. 1994). Federal law only requires that child welfare agencies search statewide databases

for substantiated dispositions. California law in turn bars California's Department of Justice

from maintaining records in CACI of anything other than substantiated dispositions. And

Oregon's implementing regulations only require child welfare workers to search statewide

databases, *e.g.*, California's CACI. It was not "patently" obvious that the Due Process Clause

required State Defendants search for something other than substantiated instances of abuse in

other states, which Chapman did. (Naso Decl. Ex 9 at 4-6.) Because Chapman conducted the

necessary background checks according to state law, she cannot have been deliberately

indifferent.

       Regardless, as the Ninth Circuit has explained, a child welfare worker "[can]not be

deliberately indifferent to a situation of which [she] had no knowledge." *Momox-Caselis*, 987

F.3d at 846 (holding that foster care workers were not liable when they were "never notified" of

foster parent's physical limitations). Persuasive authority from circuit courts outside the Ninth

Circuit confirms that a child welfare worker is not deliberately indifferent even if a more

rigorous background check process would have turned up damaging information about a foster

family. The Seventh Circuit's decision in *Waubanascum v. Shawano Cnty* is instructive. In that

case, child welfare workers in a Wisconsin county performed a home study, interviewed the

family, inspected the home, and reviewed references when certifying a foster home. 416 F.3d

658, 663 (7th Cir. 2005). The officials also submitted a criminal background check to the state's

department of justice but did not seek a background check from a neighboring state where the

applicant previously lived.  *Id.* at 664.  Unbeknownst to the Wisconsin child welfare workers, the applicant had been repeatedly sighted in his earlier state of residence prowling outside children's bedrooms at night with binoculars.  *Id.*  One such incident resulted in a misdemeanor conviction for disorderly conduct.  *Id.*  Wisconsin officials certified the applicant, who then sexually abused the foster child placed with him.  *Id.* at 663.  The child sued the child welfare workers under the Due Process Clause and a jury rendered a verdict for the child.  *Id.* at 664.  On appeal, the Seventh Circuit reversed and held that the officials were entitled to judgment as a matter of law. *Id.* at 670.  In particular, the Seventh Circuit rejected the argument that by failing to seek a background check from outside the state, foster care workers violated the Due Process Clause. *Id.* at 666.  The Seventh Circuit held that the child welfare workers lacked the actual knowledge required for deliberate difference.  *Id.* at 668.

In *J.R. v. Gloria*, Rhode Island child welfare workers were aware that two adult men were residing on the third floor of a foster home and participating in the caretaking of foster children.  593 F.3d 73, 76-77 (1st Cir. 2010).  The DCYF officials did not complete background checks on either man.  *Id.* at 77.  The children later reported that one of the men sexually abused him and sued.  *Id.* at 78.  The First Circuit rejected the argument that the "failure to conduct" background checks was the type of "inherently egregious conduct" giving rise to a due process violation.  *Id.* at 81.  Instead, "at worst" plaintiff identified "possible violations of state law."  *Id.*

*J.R.* and *Waubanascum* stand for the proposition that a child welfare agency is not deliberately indifferent for failing to uncover damaging information regarding a foster parent. Here, no State Defendant was aware of the details of the child's death in California.[6]  Unlike the

---

[6] After the close of discovery (except as to limited discovery allowed as to Levi's amended complaint), plaintiff revealed that in April 2024, he had obtained a declaration purporting to be from a former friend of the Duncan-Raygosa family stating that the friend had

child welfare officials in *J.R.* and *Waubanascum*, ████████████████████

████████████████████████████████████████████████████████████

███████████████████████     (Naso Decl. Exs. 9, 10.)  Due process did not

require that State Defendants scour local records in Fresno County, California for the details of

any unfounded allegations against the Duncan-Raygosa family.

Even if State Defendants had learned about the child's death in California, that

information would not support a finding of deliberate indifference.  Rather, because the report

regarding that death was determined to be unfounded, that information would not compel an

inference that the Duncan-Raygosa household presented a substantial risk of harm to J.C.

Indeed, a district court in this circuit reached just this conclusion.  In that case, the plaintiff

alleged that child welfare officials knew that a foster parent faced a previous allegation of sexual

abuse, but nonetheless placed a child with the parent.  *M.P. v. Cnty. of Los Angeles*, No. 19-cv-

10755-GW-JPRX, 2020 WL 6031957, at *2 (C.D. Cal. July 17, 2020).  The foster parent then

sexually and physically abused the child.  *Id.*  The district court held that "[e]ven if [the child

welfare officials] knew about the prior sexual abuse allegations [against the foster parents] from

three years ago, Plaintiffs still fail to plead a due process violation."  *Id.* at *4.  Because the prior

"allegations were 'unfounded,'" the court explained that the "Plaintiffs have not adequately pled

that a reasonable official would have been compelled to infer that there was a substantial risk of

harm."  *Id.* (some quotation marks omitted).  The same is true here: even if Chapman and Brooks

---

informed an unnamed ODHS official about the child's death in California.  This declaration is
not proper evidence at trial or summary judgment, and State Defendants intend to move to
exclude it under Rule 37 in the event plaintiff attempts to rely on it to oppose the instant motion.
Regardless, however, Chapman confirmed that there was no substantiated abuse reports or
criminal records in California before certifying the home and the Constitution does not require
more.

knew that a child had died in Duncan and Raygosa's care, because the background checks did not reveal any founded reports or criminal history, they were not compelled to conclude that there was a substantial risk of harm.

Plaintiff also alleges that Duncan and Raygosa misstated their family history when applying to be foster parents because they stated that Raygosa's mother died in 2015 and she actually died in 2010. (Dkt. No. 196 ¶ 28.) There is no evidence that Chapman knew about this discrepancy, and regardless, this minor timeline discrepancy would not have compelled the inference that the household presented a substantial risk of harm to children. State Defendants are entitled to summary judgment on plaintiff's theory regarding the initial certification of the Duncan-Raygosa home.

> **B.** **Plaintiff's theory fails the second step of the qualified immunity analysis because it is not clearly established that State Defendants' specific conduct violated the Due Process Clause.**

Even if plaintiff could show that Chapman and Brooks were deliberately indifferent, his claim stills fails because there is no clearly established law holding that Chapman and Brooks "conduct was unlawful in the situation [they] confronted." *See Wesby*, 583 U.S. at 63. Indeed, the Central District of California's decision in *M.P.* demonstrates that the law actually provides that—even if Chapman knew of the death of a child in Duncan and Raygosa's care in California—her conduct was constitutional. There is no case law clearly establishing that their conduct was unconstitutional, and thus Chapman and Brooks are entitled to qualified immunity.

**IV.**





██████████████████████████████████████ (Naso Decl. Ex.
38 at 8:9-17, 17:14-16; Naso Decl. Ex. 39 at 136:21-137:11, 139:22-140:2.) ████████

██████████████████████████████████████████

████████████████████████████ (Dkt. No. 196 ¶¶ 62-63.) ████████████

██████████████████████████████████████████

████████████████████████████████████████

**A.** ██████████████████████████████████
████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

(Naso Decl. Ex. 38 at 8:9-17.) ██████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████ (*Id.* at 17:14-16.) ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (Naso Decl. Ex. 39 at 136:21-23.) ██████████████████

██████████████████████████████████████████



(*Id.* at 139:22-140:1; Naso Decl. Ex. 46 at 3.)

**B.**



(Naso Decl. Ex. 38 at 8:9-17, 17:14-16; Naso Decl. Ex. 39 at 136:21-23, 139:22-140:1; Naso Decl. Ex. 46 at 3.)

C.



(Naso Decl. Ex. 39 at 139:22-140:1; Naso Decl. Ex. 46 at 3.) ████████████████

**D.** ████████████████████

**V.    State Defendants are entitled to qualified immunity on plaintiff's newly pled allegations regarding the ████████████ home.**

This Court should also grant summary judgment on plaintiff's new theory regarding the ████████████ home. The First Amended Complaint states in general terms that the home was unfit and makes various scandalous allegations about ██████ and ████████████ own personal history (*i.e.*, surviving sexual abuse and pornography viewing, respectively). (Dkt. No. 196 ¶

65.)  This theory fails as a matter of law because plaintiff has not proven a violation of J.C.'s substantive due process rights under the Fourteenth Amendment.

There is no evidence—let alone any disputed materials facts—that J.C.'s constitutional rights were violated in this home.  Plaintiff has admitted in response to requests for admission that J.C. was not physically or sexually abused in the home.  (Naso Decl. Ex. 47 at 2-3.)  Plaintiff has asserted that *other* children were forced to run laps as a form of physical punishment in the home, but discovery has confirmed that this did not happen to J.C. ███████████████████ ███████████████████████████████████████████████ (Naso Decl. Ex. 48 at 35:2-5.)  There is no triable issue of fact as to this theory.[7]

Regardless, the Ninth Circuit has never stated or suggested that running laps is the type of conscience-shocking safety threat that gives rise to a constitutional claim.  The Ninth Circuit has only stated that the Due Process Clause protects against physical abuse and sexual abuse.  *Henry A.*, 678 F.3d at 1001.  Case law from outside the Ninth Circuit holds that physical punishment is not necessarily a form of physical abuse giving rise to a constitutional violation.  *Lewis*, 308 F.3d at 774 (foster parent slapping a child).  Thus, even if J.C. was made to ran laps as a form of physical punishment, this would not state a claim under the Due Process Clause, let alone a clearly established one, as necessary to survive qualified immunity.

The First Amended Complaint also implies that J.C. ceased receiving "the necessary care and support for a child sexual abuse victim" after she was placed in the ████████ home.  (Dkt. No. 196 ¶ 65.)  There is no evidence for this theory. ██████████████████████ ███████████████████████████████████████

---

[7] To the extent J.C. told people that she was made to run laps in the ████████ home, those statements are hearsay and are not proper evidence at summary judgment.

**Page 40 –　STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

 (Naso Decl. Ex. 20 at 262:15-263:8.) With the aid of these ODHS-referred behavioral health services, J.C. was able to succeed in school and reconnect with her mother. These services also assisted J.C. in processing both the abuse she experienced in the Duncan-Raygosa home and abuse and neglect in her biological home prior to removal. (Naso Decl. Ex. 19 at 148:17-150:19.) Plaintiff's allegation that State Defendants deprived J.C. of care and support following her disclosure of sexual abuse is contrary to the evidence.

 (Naso Decl. Ex. 48 at 29:23-30:7.) There is no evidence that the ▉▉▉▉▉ home was an unfit placement in which J.C. was deprived of constitutionally-required support and services. This Court should enter summary judgment on this claim.

In any event, even if plaintiff could establish that State Defendants were deliberately indifferent, there is no clearly established law providing that any of State Defendants' conduct was unconstitutional.

**VI.    O'Brien is also entitled to qualified immunity on plaintiff's theory regarding her alleged efforts to "undermine" J.C.'s disclosure of sexual abuse.**

Defendant O'Brien is also entitled to qualified immunity on the newly pled allegations related to her conduct and participation at the Raygosa criminal trial[8] and her alleged efforts to undermine J.C.'s disclosure of sexual abuse.  (Dkt. No. 196 ¶¶ 101-104, 105(i).)

First, Plaintiff cannot establish that O'Brien's "doubts" about J.C.'s disclosure, her creation of a "case note," or her production of that case note to the prosecuting attorney violated J.C.'s substantive due process rights.  (*See* Dkt. No. 196 ¶¶ 101-104.)  State Defendants' argument about why these allegations do not plausibly allege a substantive due process violation (*see generally* Dkt. No. 214), also show why the claim fails to clear the first element of qualified immunity.[9]  Plaintiff also cannot show that O'Brien's testimony at the Raygosa criminal trial somehow constituted deliberate indifference to J.C.'s constitutional rights.  Defendant O'Brien was subpoenaed to testify by Raygosa's defense counsel.  (*See* Dkt. No. 216 at Ex. 2.)  Plaintiff cannot establish that providing (absolutely privileged) testimony at a criminal trial meets the objective and subjective tests for deliberate indifference—particularly given that Raygosa was ultimately convicted.  At best, Plaintiff asserts that J.C. might have felt betrayed, but O'Brien's compliance with a lawful subpoena in a criminal trial is not a violation of J.C.'s constitutional rights.  In sum, there is no evidence of an objectively substantial risk of serious harm created by O'Brien's conduct, let alone a subjective awareness of that harm or that a reasonable caseworker

---

[8] State Defendants previously asserted that O'Brien is absolutely immune from the allegations related to her role and participation in the Raygosa criminal trial.  (*See generally,* Dkt. No. 214.)  Even though the Court denied the motion (*See* Dkt. No. 251), those allegations are still covered by qualified immunity.

[9] Rather than repeat the briefing here, O'Brien incorporates by reference the arguments made in connection with State Defendants' Motion to Dismiss, or in the Alternative, Motion to Strike.  (Dkt. No. 214.)

would have drawn such inference. *Tamas*, 630 F.3d at 844. Thus, Plaintiff cannot meet the first prong of the qualified immunity analysis.

Second, even if this Court found a triable issue on whether O'Brien's conduct constituted deliberate indifference, O'Brien would still be entitled to qualified immunity on the "clearly established" prong. Plaintiff can point to no authority (let alone controlling authority) that would have put O'Brien on clear notice that a caseworker violates the Due Process Clause by expressing "doubts" about a sex abuse claim, drafting a case note, providing that case note to prosecuting attorneys in a criminal trial, or testifying in a criminal trial about the sex abuse claim. Thus, defendant O'Brien is entitled to qualified immunity on this theory.

## VII. If this Court denies summary judgment on all of plaintiff's federal claims, it must make individualized determinations regarding each State Defendant's subjective knowledge and culpability and grant summary judgment to individual State Defendants.

If this Court denies summary judgment with respect to plaintiff's federal claims, the law requires the Court to evaluate the conduct of each State Defendant and make individualized determinations as to each defendant's culpability. The state, unlike cities or counties, is not a person for the purposes of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, there is no *Monell*-style pattern-and-practice claim against the individual defendants; liability is assessed on an individual basis. Put another way, "liability may not be imposed based on a 'team effort' theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Peck v. Montoya*, 51 F.4th 877, 890 (9th Cir. 2022). The Court's inquiry at summary judgment "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). As the Ninth Circuit explained in *Tamas*, each defendant's

"potential liability varies, depending on whether each [defendant] was aware of facts from which an inference could be drawn that a substantial risk of serious harm to [J.C.] existed, and upon whether each [defendant] *actually drew* that inference." *Tamas*, 630 F.3d at 847 (emphasis in original).

Thus, this Court must make defendant-specific findings about the facts known to each State Defendant and whether each State Defendant knew or was on notice that J.C. faced a substantial risk of harm in the Duncan-Raygosa and ▮▮▮▮▮▮▮▮ homes and disregarded that risk. Further, this Court must assess liability in the context of the duties and responsibilities for each State Defendant. For instance, permanency caseworker O'Brien and her supervisor, Lane, were not responsible for the initial certification of the home and thus would have had no role in investigating the death of the child in California. Similarly, O'Brien stopped being the permanency caseworker for J.C. beginning in January 2019, halfway through her stay in the ▮▮▮▮▮▮▮▮ home. Thus, O'Brien and her supervisor Lane cannot be liable for anything that occurred in that home after January 2019. Although State Defendants believe that this Court should grant them judgment on the First, Second, Third, and Fourth Claims for Relief in their entirety because no State Defendant is liable, if this Court disagrees, the law mandates individualized findings regarding each State Defendant's liability and entitlement to qualified immunity before the claim against that State Defendant can proceed to trial.

## CONCLUSION

For the reasons set forth above, this Court should grant State Defendants judgment on

plaintiff's First, Second, Third, and Fourth Claims for Relief.

DATED: November 27, 2024.  ELLEN F. ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


*s/ Chad A. Naso*
Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Alexandra L. Rhee, OSB #230770
AlexRhee@MarkowitzHerbold.com
*Special Assistant Attorneys General for State*
*Defendants and Third-Party Plaintiff*

Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880407
JeffEdelson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Of Attorneys for State Defendants and Third-Party*
*Plaintiff*

Jill Schneider, OSB #001619
Jill.Schneider@doj.oregon.gov
Nicholas Mancuso, OSB #151262
Nicholas.Mancuso@doj.oregon.gov
*Of Attorneys for State Defendants and Third-Party*
*Plaintiff*

CABLE HUSTON LLP

*s/ Nicole A.W. Abercrombie*
Jonathan W. Monson, OSB #102650
jmonson@cablehuston.com
Nicole A.W. Abercrombie, OSB #144581
nabercrombie@cablehuston.com
*Of Attorneys for Defendant Kassidy O'Brien*

2191754.10

**Page 46 –    STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT**

## <u>ATTORNEY CERTIFICATE OF SERVICE</u>

I hereby certify that on November 27, 2024, I have made service of the foregoing

**STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on the

parties listed below in the manner indicated:

Steven V. Rizzo
Mary D. Skjelset
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR  97201
*Attorneys for Plaintiff Levi*

☒ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☒ Email:  srizzo@rizzopc.com;
        mskjelset@rizzopc.com;
        ccarr@rizzopc.com;
        smaddox@rizzopc.com
☐ Electronically via USDC CM/ECF system

Caitlin Mitchell
Johnson Johnson Lucas Middleton, PC
975 Oak Street, Suite 1050
Eugene, OR  97401
*Attorneys for Plaintiff Levi*

☒ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☒ Email:  cmitchell@justicelawyers.com
☐ Electronically via USDC CM/ECF system

DATED: November 27, 2024.

*s/ Chad A. Naso*
Chad A. Naso, OSB #150310
*Attorneys for State Defendants and Third-Party Plaintiff*