**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Alexandra L. Rhee, OSB #230770**
AlexRhee@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for State Defendants*
*and Third-Party Plaintiff*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI,<br><br>                         Plaintiff,<br><br>        v.<br><br>KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOES 1-5; in their individual and/or official capacities,<br><br>                         Defendants.<br>OREGON DEPARTMENT OF HUMAN SERVICES,<br><br>                Third-Party Plaintiff,<br><br>        v.<br><br>JOE ALBERT RAYGOSA,<br><br>                Third-Party Defendant. | Case No. 6:22-cv-01813-MTK<br><br>**STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**<br><br>**Oral Argument Requested**<br><br>**FILED UNDER SEAL** |

**STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.    ODHS's duty to preserve evidence did not begin until it received J.C.'s tort claim notice on February 11, 2020. ...................................................................................... 2

        A.    Nothing prior to J.C.'s tort claim notice triggered a duty to preserve evidence. ............ 2

        B.    The duty to preserve evidence was not triggered by Oregon's public records or juvenile dependency proceedings statutes. ................................................................................ 6

        C.    The duty to preserve evidence arose on February 11, 2020, when ODHS received J.C.'s tort claim notice. ................................................................................................ 7

    II.    After receiving J.C.'s tort claim notice in February 2020, ODHS implemented a litigation hold and properly preserved relevant evidence according to its standard procedures. ............... 8

    III.    There is no evidence that ODHS destroyed relevant evidence—intentionally or otherwise—that it was under a duty to preserve. ....................................................................... 9

        A.    There is no evidence ODHS destroyed relevant text messages on the ODHS phones used by Brooks, Chapman, Hammond, Lane, or O'Brien. ...................................... 9

            1.    There is no evidence that ODHS wiped the cell phones used by Chapman, Lane, or O'Brien during the relevant time period after receiving J.C.'s tort claim notice. .............. 9

            2.    There is no evidence Brooks' phone that was briefly used during the relevant time period contained relevant text messages. ........................................................... 11

            3.    Hammond's recently discovered cell phone was cracked. ..................................... 12

        B.    Even if the Court determines that ODHS lost some text messages, there is no evidence that those texts are relevant to the issues in this litigation. ................................................ 12

        C.    There is no evidence that O'Brien's, Hammond's, or Chapman's personal phones contained relevant evidence. ................................................................................... 12

    IV.    State Defendants have produced enormous quantities of evidence, including both hundreds of thousands of pages of documents and many days of depositions. ........................ 13

    V.    Under these circumstances, sanctions are not appropriate. .............................................. 15

        A.    The Court does not have inherent authority to impose sanctions; sanctions may only be imposed according to Rule 37(e). ......................................................................... 15

        B.    Sanctions are not available here under Rule 37(e)(1). ................................................. 15

        C.    Rule 37(e)(2) sanctions are not available because plaintiff has no clear and convincing evidence that State Defendants intended to deprive plaintiff of unavailable information.... 18

CONCLUSION ........................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AMC Tech., LLC v. Cisco Sys., Inc.*,
   No. 11-CV-3403 PSG, 2013 WL 3733390 (N.D. Cal. July 15, 2013) ....................................5

*Anderson v. Cryovac, Inc.*,
   862 F.2d 910 (1st Cir. 1988) ...............................................................................................19

*Facebook, Inc. v. OnlineNIC Inc.*,
   No. 19-CV-07071-SI, 2023 WL 9019050 (N.D. Cal. Nov. 15, 2023) ...................................19

*Gregory v. Montana*,
   118 F.4th 1069 (9th Cir. 2024) ............................................................................................15

*Jones v. Riot Hospitality Grp. LLC*,
   95 F.4th 730 (9th Cir. 2024) ................................................................................................18

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   No. 15CV9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ..........................19

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................................18

*Micron Tech., Inc. v. Rambus Inc.*,
   645 F.3d 1311 (Fed. Cir. 2011) .............................................................................................19

*Neighborhood Networks Publ'g, Inc. v. Lyles*,
   No. 7:19-CV-89-BO, 2021 WL 328844 (E.D.N.C. Feb. 1, 2021) ..........................................17

*PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*,
   187 F.3d 988 (8th Cir.1999) .................................................................................................18

*Pelishek v. City of Sheboygan*,
   No. 23-cv-1048, 2025 WL 325782 (E.D. Wis. Jan. 29, 2025) ................................................6

*Pittman v. King*,
   No. 20-cv-03371-PAB-NRN, 2024 WL 4866548 (D. Colo. Nov. 22, 2024) ...........................7

*Porter v. City & Cnty. of San Francisco*,
   No. 16-CV-03771-CW(DMR), 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ........................16

*Reinsdorf v. Skechers U.S.A., Inc.*,
   296 F.R.D. 604 (C.D. Cal. 2013) .....................................................................................17, 18

*Shepherd v. ABC*,
    62 F.3d 1469 (D.C. Cir.1995) ...............................................................................................19

*Silhan v. Allstate Ins. Co.*,
    236 F. Supp. 2d 1303 (N.D. Fla. 2002)....................................................................................7

*Siskiyou Buckle Co., Inc. v. GameWear, Inc.*,
    No. CV 09-3073-CL, 2011 WL 13248530 (D. Or. Nov. 3, 2011) .......................................2, 4

*Toussie v. County of Suffolk*,
    No. CV 01-6716(JS)(ARL), 2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007) ....................2, 4, 7

*Transamerica Life Ins. Co. v. Arutyunyan*,
    93 F.4th 1136 (9th Cir. 2024) ...............................................................................................20

*Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*,
    No. CV 13-33WES, 2019 WL 118412 (D. R.I. Jan. 7, 2019) .................................................19

*Yela Fiduciary Servs., LLC for Est. of Sund v. Benton Cnty.*,
    No. 6:20-CV-01925-MK, 2022 WL 17666400 (D. Or. Dec. 14, 2022) .................................21

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
    774 F.3d 1065 (6th Cir. 2014) ...............................................................................................16

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................................2, 4

**Statutes**

ORS 192.005(5)(a)(C) ....................................................................................................................6

ORS 419B.881 .................................................................................................................................7

ORS 419B.881(2)(b), (7), (8), (11).................................................................................................7

**Rules**

FRCP 37................................................................................................................................ passim

**INTRODUCTION**

The duty to preserve evidence only arises when a substantial number of key personnel at an organization receive notice of a potential claim or understand that future litigation is probable. No standard requires that a party accurately anticipate and capture every possible source of discovery. Key Oregon Department of Human Services ("ODHS") personnel did not learn that Levi's claims were probable until February 11, 2020, when they received J.C.'s tort claim notice.

ODHS can only preserve information that exists at the time a litigation hold obligation attaches. Prior to learning that litigation is likely, ordinary operational activity determines what information is available. ODHS properly implemented litigation holds after receiving J.C.'s tort claim notice, preserving vast quantities of relevant data.

Plaintiff has offered no evidence that ODHS spoliated relevant text messages. The key custodians identified by plaintiff had all obtained new phones before February 11, 2020, and there is no evidence their old phones contained relevant text messages after that date. Even if ODHS could have preserved texts on those devices, plaintiff has not established that any of those messages are relevant to this litigation or that plaintiff could not or has not learned all the information contained in such text through other avenues, including emails, assessments, hard copy documents, interrogatories, or extensive depositions.

There is also no evidence that ODHS intentionally deleted any information to deprive another party of the information's use in the litigation. On the contrary, the evidence demonstrates that ODHS took appropriate steps to preserve evidence, and that any oversights were not intended to withhold or destroy evidence. Although one phone—belonging to Stephen Hammond—was inadvertently missed during the collection of documents, ODHS promptly brought the mistake to opposing counsel and the Court's attention when it was discovered, and

**Page 1 –     STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

had the phone forensically unlocked and searched.  State Defendants are presently reviewing the contents of the phone and expect to report the results to all counsel and the Court soon.

Plaintiff fails to meet the strict standards for imposition of any sanction.  There is not clear and convincing evidence that ODHS failed to take reasonable steps to preserve evidence, and no evidence at all, much less clear and convincing evidence, that ODHS intentionally sought to deprive plaintiff of relevant evidence.  The law does not entitle plaintiff to the onerous and overreaching sanction he demands, and the Court should deny plaintiff's motion.

## ARGUMENT

**I.      ODHS's duty to preserve evidence did not begin until it received J.C.'s tort claim notice on February 11, 2020.**

The duty to preserve arises "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Siskiyou Buckle Co., Inc. v. GameWear, Inc.*, No. CV 09-3073-CL, 2011 WL 13248530, at \*5 (D. Or. Nov. 3, 2011) (citation omitted).  However, a "general concern over litigation does not trigger a duty to preserve evidence." *Id.* (internal quotations and citations omitted).  Nor does the duty to preserve arise "because one or two employees contemplate the possibility" of litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  Rather, the duty to preserve only attaches when "a potential claim is identified or future litigation becomes probable," *Siskiyou Buckle Co.*, 2011 WL 13248530, at \*5, and "a substantial number of key personnel at a company or organization anticipate litigation." *Toussie v. County of Suffolk*, No. CV 01-6716(JS)(ARL), 2007 WL 4565160, \*7 (E.D.N.Y. Dec. 21, 2007).

**A.      Nothing prior to J.C.'s tort claim notice triggered a duty to preserve evidence.**

Plaintiff first incorrectly contends that ██████████ (the biological father of J.C.) triggered the State's duty to preserve evidence by threatening to sue the State.  (Pl. Levi Mot. for

**Page 2 –      STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

Sanctions ("Levi Mot.") at 7 ("While acting as J.C.'s permanency worker, O'Brien received emails from the children's biological father intent on suing ODHS and individuals in connection with O'Brien's performance and the children's care and treatment.").)

This is false. ████████ threat of a lawsuit concerned his own treatment by the State, not the way his children were being treated while they were in foster care. He made these complaints before J.C.'s disclosure of sexual abuse. ████████████████████

████████████████████ (████ emails, attached to Decl. of M. Skjelset in Supp.

of Pl. Levi's Mot. for Sanctions (Dkt. 279) ("Skjelset Decl.") as Ex. 21.) ████ ████

████████████████████████████████████

████████████████████████████████████

████████████████████. (*Id.*) Thus, ████ complaints could not have given rise

to a reasonable belief that J.C. would subsequently bring a claim related to Raygosa's sexual abuse. Nothing about ████ complaints would have triggered a litigation hold on materials relevant to this case.

Next, plaintiff incorrectly contends that the State should have issued a litigation hold in 2018, when an investigator threatened to sue the State. (Levi Mot., at 8.) ████████████

████████████████████████████████████

(Skjelset Decl. Ex. 29 at 3.) ████████████████████ (*Id.*) ████████

████████████████████████████████████

████ (*Id.* at 2) ████████████████████████████

████████████████████████████████ (*Id.*)

████████████████████████████████████

████████████ (*Id.*)

Thus, this was hardly a threat of litigation that should have triggered a litigation hold.



(*Id.*) Even if this third-hand information, that originated from someone O'Brien had never met or communicated with, constituted a general concern, a "general concern over litigation does not trigger a duty to preserve evidence." *Siskiyou Buckle*, 2011 WL 13248530, at *5 (cleaned up). A small number of people in an organization hearing of a potential litigation threat does not trigger the duty to preserve. *Zubulake*, 220 F.R.D. at 217. A "substantial number" of people at ODHS were not reasonably anticipating litigation from these events. *Toussie*, 2007 WL 4565160, *7.

ODHS cannot implement a litigation hold every time it receives an ambiguous, unspecific, and third-hand threat of litigation.



(2/12/25 Decl. of Caroline Burnell in Supp. of State Defs.' Resp. to Levi's Mot. ("Burnell Decl.") ¶ 5.)

(*Id.*, ¶ 9.)

(*Id.*)

. (*Id.* ¶ 10.)

(*Id.* ¶ 6.)

Implementing a litigation hold every time the agency receives a nonspecific threat of litigation

**Page 4 –     STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED
            MOTION FOR SANCTIONS**

would cripple multiple agency functions. *AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-CV-3403 PSG, 2013 WL 3733390, at *3 (N.D. Cal. July 15, 2013) ("Requiring a litigant to preserve all documents, regardless of their relevance, would cripple parties who are often involved in litigation or are under the threat of litigation.").

Plaintiff also incorrectly argues that news reports of Duncan and Raygosa's flight, and Raygosa's extradition and conviction, triggered ODHS's duty to issue a litigation hold. (Levi Mot. at 7, 18.) But the story plaintiff cites did not identify any potential claims against ODHS or its employees or indicate that anyone, much less plaintiff or J.C., were contemplating litigation against ODHS or its employees. Further, Child Welfare is a frequent subject of newspaper articles. ███████████████████████████████████████████████ (Decl. of Greg Scott in Supp. of State Defs.' Resp. to Levi's Mot. ("Scott Decl."), ¶ 7.) Media stories may or may not be tied to current or future litigation, and litigated matters may or may not receive media coverage.

Plaintiff is also wrong to contend that Sensitive Issue Reports ("SIR") related to reports of abuse and injuries sustained by children in the Duncan-Raygosa home, called for a litigation hold. (Levi Mot. at 7.) The SIRs issued in this case describe assessments and reports related to Duncan and Raygosa, but they do not identify any potential claims against ODHS, nor any contemplated litigation. Indeed, they do not even suggest that any ODHS employee was engaged in misconduct. ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████ (Burnell Decl. ¶¶ 8, 11.)

Plaintiff's position on when the duty to preserve evidence is triggered would call for ODHS to implement precautionary litigation holds in response to every newspaper article, media

**Page 5 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED**
**MOTION FOR SANCTIONS**

story, SIR, and unspecific and ambiguous threat ODHS receives.  That, in turn, would require

ODHS Child Welfare to preserve virtually all its information for an indefinite period of time.

That is neither the law nor practically feasible.  F



(*Id.* ¶ 13.)

(*Id.*)

**B.    The duty to preserve evidence was not triggered by Oregon's public records or juvenile dependency proceedings statutes.**

Plaintiff also incorrectly contends that State Defendants had an "independent duty" to

preserve evidence.  (Levi Mot. at 19-20.)  Plaintiff first cites to Oregon public records law.  (*Id.*

at 19.)  Plaintiff's argument incorrectly assumes that all text messages are public records.  That is

not the case.  A document is only a public record if it contains information that is "necessary to

satisfy the legal, administrative, fiscal, tribal cultural or historical policies, requirements or needs

of the state agency."  ORS 192.005(5)(a)(C).  Text messages concerning "[f]actual or logistical

information that is not related to conducting official state business" and "[r]outine

communications that do not meet the definition of a public record" are not public records.

(Skjelset Decl. Ex. 50.)  Plaintiff offers no evidence or argument that any text messages meet the

legal definition of public record.

Regardless, Oregon public records law establishes standards for public disclosure of

certain records; it does not govern preservation for litigation and is not applicable to Rule 37.

*See Pelishek v. City of Sheboygan*, No. 23-cv-1048, 2025 WL 325782, at *4 (E.D. Wis. Jan. 29,

2025) (Fact that city's deletion of information "may have violated state public records laws does

not establish bad faith" under Rule 37.)

**Page 6 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

Plaintiff also contends that juvenile proceeding discovery establishes a duty of preservation. (Levi Mot. at 19.) But juvenile proceeding discovery is governed by ORS 419B.881 and related statutes, and state court judges have authority to determine the bounds of that discovery and sanctions for failures to preserve and disclose material. ORS 419B.881(2)(b), (7), (8), (11). Even if any of the text messages at issue were subject to other statutory duties in different contexts, such duties are irrelevant to State Defendant's preservation requirements for *this litigation*. *Pittman v. King*, No. 20-cv-03371-PAB-NRN, 2024 WL 4866548, at *4 (D. Colo. Nov. 22, 2024) ("The fact that Warren may have had an independent obligation to preserve the emails does not necessarily mean that he had such a duty with respect to *this litigation*[.]" (Emphasis in original)).[1]

### C.    The duty to preserve evidence arose on February 11, 2020, when ODHS received J.C.'s tort claim notice.

ODHS received J.C.'s tort claim notice on February 11, 2020. (Burnell Decl. ¶ 14.) The tort claim notice allowed "a substantial number of key personnel at" ODHS to "anticipate litigation," *Toussie*, 2007 WL 4565160, *7, triggering the duty to preserve evidence. None of the events before J.C. served the tort claim notice justified a litigation hold. Those events were not specific, did not identify potential claims, and did not inform a "substantial number of key personnel" about the likelihood of litigation. The tort claim notice was the only event that flagged a credible threat of potential litigation or even articulated a potential claim on which

---

[1] Plaintiff also contends that State Defendants should have recognized, as J.C.'s guardian while she was in care, that they had a claim against themselves. Obviously, however, State Defendants deny plaintiff's claims (Am. Answer, Dkt. 261), and so they had no reason to anticipate that they or anyone else would or should file such claims. And, even if they did, any duty they had to themselves to preserve evidence for litigation they might have contemplated does not establish a separate duty to plaintiff in this litigation. *See Silhan v. Allstate Ins. Co.*, 236 F. Supp. 2d 1303, 1313 (N.D. Fla. 2002) (Defendant's "interest in pursuing a claim for itself does not give rise to a duty to the Plaintiffs.").

**Page 7 –**    **STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

ODHS could implement a litigation hold.  And even that notice of a potential claim did not materialize into litigation until 2022, when plaintiff filed the complaint.

**II.    After receiving J.C.'s tort claim notice in February 2020, ODHS implemented a litigation hold and properly preserved relevant evidence according to its standard procedures.**



(Burnell Decl. ¶ 14.)

(*Id.* ¶ 15.)

(*Id.* ¶ 16.)

(*Id.*)

. (*Id.* ¶ 16.)

(*Id.* ¶ 17.)

(*Id.*)

(*Id.*)

**III.     There is no evidence that ODHS destroyed relevant evidence—intentionally or otherwise—that it was under a duty to preserve.**

    **A.     There is no evidence ODHS destroyed relevant text messages on the ODHS phones used by Brooks, Chapman, Hammond, Lane, or O'Brien.**

        **1.     There is no evidence that ODHS wiped the cell phones used by Chapman, Lane, or O'Brien during the relevant time period after receiving J.C.'s tort claim notice.**

Chapman, Lane, and O'Brien obtained new phones between the time J.C. and Z.C. were reunified with their mother on April 1, 2019 and when ODHS received J.C.'s tort claim notice on February 11, 2020. ███████████████████████████████

███████████████████████████████████████████

████████████████ (Decl. of Douglas Jones in Supp. of State Defs.' Resp. to Levi's Mot. ("Jones Decl.") ¶ 6.) ████████████████████████████

████████████ (Scott Decl. Ex. 4, 1/8/2025 Jones Dep. at 114:22-115:1.) ███████

███████████████████████████████████████████

███████████████████████████████████████████

(*Id.* at 122:15-16.)

████████████████████████████████████████

███████████████████████████████████ (Jones Decl. Ex.1 at 33; Levi

---

2 ████████████████████████████████

████████ (Jones Decl. ¶¶ 10-12.)

████████ (*Id.*, Exs.1, 2 .)

███████████████████████████████████████████

███████████████████████████████████████████.

(Skjelset Decl. Ex. 36, Jones Dep. at 248:12-22; Jones Decl. ¶ 13.)

███████████████████████████████████████████

████████████████ (Skjelset Decl. Ex. 36, Jones Dep. 249: 7-23.)

**Page 9 –     STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

Mot. at 11.) ██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████ (Jones Decl. Ex. 1 at 158; Levi Mot. at 11.)  Defendant Anastasia Brooks obtained a

new ODHS phone in approximately January 2019, and her previous phone was processed as

returned by the vendor in July 2019.  (Levi Mot. at 11)  O'Brien ordered a new phone in April

2018, long after ODHS removed J.C. and Z.C. from the Duncan-Raygosa household and more

than six months after ODHS learned of J.C.'s disclosures.  (*Id.*)  She ordered another new phone

in January 2020, and there is no record of her previous phone communicating with ODHS's

systems after February 9, 2020.  (*Id.*.)

The data provides no evidence that ODHS wiped Chapman's, Lane's, or O'Brien's

phones *after* receiving the tort claim notice.  Although the data can offer some date ranges as

guides, it does not conclusively establish when a phone was wiped or destroyed.  ██████████

██████████████████████████████████████████████████████

████████████████████████████████████ (Jones Decl. Ex. 1 at 223.)  ██████

██████████████████████████████████████████████████████

██████████████████████████████ (*Id.*; Levi Mot. at 11.)  ██████

██████████████████████████████████████████████████████

---

Plaintiff's motion claims that some phones were not returned to the vendor (Levi Mot. at 8), but that does not change the analysis.  Even if phones were not returned to the vendor, there is no evidence that they still exist and contain information, and none that ODHS is intentionally hiding or withholding them.  Furthermore plaintiff is mista████████████████████████████ ████████████████████████████████.  (Scott Decl. Ex. 4, Jones. Dep. at 39:20-22.) ████████████████████████████████████████ ████████████████████ (*Id.* at 39:23-40:13.)

**Page 10 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED**
**MOTION FOR SANCTIONS**



(Skjelset Decl. Ex. 36, Jones Dep. at 251:2-5.)  Lane's phones used during the relevant period last reported activity on January 9, 2018 and December 10, 2019.  (Levi Mot. at 11.)

(Skjelset Decl. Ex. 36, Jones Dep. at 251:2-5.)  Thus, there is *no* evidence that Chapman's, Lane's, or O'Brien's phones were wiped *after* ODHS received the tort claim notice, just as there is no evidence that they were wiped *before* the notice.  And, even if they were wiped after ODHS received the tort claim notice, there is absolutely no evidence suggesting that ODHS took any steps to intentionally prevent plaintiff from obtaining the data on the phones.

(Levi Mot. at 11-12; Skjelset Decl. Exs. 40, 41.)  Indeed, ODHS has no record of O'Brien's second phone (which would have sent and received messages between June 2018 and February 2020) interacting with ODHS's servers after February 9, 2020.  (Levi Mot. at 11.)

**2.    There is no evidence Brooks' phone that was briefly used during the relevant time period contained relevant text messages.**

Brooks used one of her ODHS phones between approximately January 29, 2019 and September 16, 2021.  (Levi Mot. at 11.)  It was returned to the vendor on October 21, 2022.  (*Id.*)

**Page 11 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

Thus, this phone was in use for approximately two months during which J.C. and Z.C. remained

in ODHS custody.

(Scott Decl. ¶ 4.)

(*Id.*)

### 3. Hammond's recently discovered cell phone was cracked.

(Scott

Decl. ¶ 3.)

(*Id.*)

### B. Even if the Court determines that ODHS lost some text messages, there is no evidence that those texts are relevant to the issues in this litigation.

Plaintiff has not established that any text messages that are purportedly missing were

relevant to the claims and defenses in this case. Plaintiff makes much of the fact that O'Brien

texted with individuals such as Duncan, Raygosa, the children's CASA Dale Gilad, and their

therapist April Clark. But the mere fact that someone texted another person involved in the case

does not prove that the message was relevant to the case. Many and likely most text messages

are sent for mundane purposes: scheduling, confirming locations, drops-offs and pickups, and

other minor matters. Furthermore, plaintiff has not identified any circumstance in which any

witness has testified in deposition that key information was contained in a text message that is

missing. In other words, whether or not any text messages might contain relevant information is

purely speculative; there are no known missing relevant texts.

### C. There is no evidence that O'Brien's, Hammond's, or Chapman's personal phones contained relevant evidence.

In August 2024, a vendor collected the three personal phones of O'Brien, Hammond, and

Chapman. The vendor then performed a full file extraction on those phones. After performing a

**Page 12 – STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

deletion analysis, and running search terms provided by plaintiff, State Defendants concluded that the phones contained no responsive documents.

Plaintiff makes much of the fact that Hammond reset his personal phone during the summer of 2024, and suggests that he did so to conceal evidence relevant to this case. (Levi Mot. at 16-17.) ██████████████████████████████████████████

██████████████████ (Scott Decl. Ex. 2, 10/30/2024 Hammond Dep. at 298:11-12 ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ (Ex. 6 to 7/12/2024 Decl. of Marissa Korbel in *Conley v. Chapman, et al.*, Case No. 6:23-cv-01353-MTK (Dkt. 61-2) (O'Brien Dep. at 380:13-14) (███████████████████████████████

███████

As for Chapman, there is no evidence that any texts that were on her personal phone were relevant to this case or were deleted after ODHS received the litigation hold on February 11, 2020.

## IV.    State Defendants have produced enormous quantities of evidence, including both hundreds of thousands of pages of documents and many days of depositions.

State Defendants have produced enormous quantities of documentary evidence from the relevant time period. ████████████████████████████████████████

---

[3] Plaintiff also contends that State Defendants lost some handwritten notes written by Hammond. State Defendants have searched for such notes but have never been able to locate them if they exist. Even if the notes did exist, and existed at the time State Defendants had a duty to preserve evidence beginning on February 11, 2020, there is no evidence that State Defendants intentionally destroyed them.

**Page 13 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

 (Scott Decl. ¶ 2.)

(*Id.*)

(*Id.*)

(*Id.* ¶ 5.)

D (*Id.*)

Plaintiff and Conley also took two days of deposition of Chapman, and more than a day of deposition of Brooks and Hammond.

Importantly, this voluminous production records the substance of State Defendants' actions through the relevant time period, even where there are text messages that plaintiff contends are missing.

(Skjelset Decl. Ex. 40 at 4.)

(Scott Decl. Ex. 5 at 6.)

(*Id.* at 2.) There are many additional examples, showing ODHS workers documenting their case work in the ordinary fashion prescribed by ODHS practice, even if contemporaneous texts are unavailable.

---

[4]  (Scott Decl. ¶ 2.)

**Page 14 –   STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED
MOTION FOR SANCTIONS**

**V.      Under these circumstances, sanctions are not appropriate.**

Plaintiff has not met the standard for imposing standards under FRCP 37(e), much less drastic dispositive sanctions.  There is no evidence that ODHS failed to preserve relevant evidence after the duty to preserve arose on February 11, 2020.  And even if ODHS did fail to preserve some evidence, any failure was unintentional.

**A.      The Court does not have inherent authority to impose sanctions; sanctions may only be imposed according to Rule 37(e).**

The standard for imposing sanctions for the destruction of electronic information is provided in FRCP 37(e), which was significantly amended in 2015, and which has received considerable judicial gloss in recent years.  Plaintiff is wrong that the Court may impose sanctions under its "inherent authority." (Levi Mot. at 5, 14.)  That is no longer the case after the 2015 amendments to the rule.  The Ninth Circuit has recently explained that given Rule 37(e)'s careful specification of the findings that must be made before any sanction may be imposed, "it is clear that the rule, by its terms, precludes a court from resorting to inherent authority to evade its strictures."  *Gregory v. Montana*, 118 F.4th 1069, 1079 (9th Cir. 2024).  Indeed, the advisory committee notes "confirm that this effect of the rule's language was intentional."  *Id.*  "The committee stated that, because the rule 'authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures,' the rule '*forecloses reliance on inherent authority* or state law to determine when certain measures should be used.'  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (emphasis added)."  *Id.* (emphasis in original).

**B.      Sanctions are not available here under Rule 37(e)(1).**

In general, Federal Rule of Civil Procedure 37(e)(1) "sets forth three criteria to determine whether spoliation of [electronically stored information ("ESI")] has occurred: (1) the ESI

**Page 15 –   STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

'should have been preserved in the anticipation or conduct of litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) 'the ESI cannot be restored or replaced through additional discovery.' Fed. R. Civ. P. 37(e). If these criteria are met and the court finds that there is 'prejudice to another party from [the loss] of the ESI,' Rule 37(e)(1) instructs a court to 'order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1)." *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (cleaned up).

Plaintiff's motion fails all three criteria. First, as discussed above, there is no conclusive evidence that ODHS failed to preserve evidence that should have been preserved in the anticipation or conduct of litigation. Most of the key cell phones identified by plaintiff—those used by Chapman, Lane, and O'Brien—could have been wiped before ODHS received the tort claim notice on February 11, 2020. There is, at minimum, no definitive evidence that ODHS wiped these devices after it received the notice.

Further, even if ODHS had a duty to preserve some of these texts, plaintiff has the burden under Rule 37(e)(1) of showing that any such missing information is "relevant to the contested issue." *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070–71 (6th Cir. 2014). ███████████████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████ (Scott Decl. ¶ 4.) O'Brien and Chapman did not even have ODHS phones during most of the time J.C. was placed with Duncan and Raygosa, so there are no texts that could have been preserved. (Lev Mot., at 11.) With respect the other witnesses, all or most of the texts likely concerned mundane minutia, such as scheduling, meals,

**Page 16 – STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

and drop-offs.  Many of the messages could have been personal.  (Levi Mot. at 12 n.14 (noting O'Brien and the children's therapist, April Clark, had a relationship outside of work).)

There is, likewise, no firm evidence that ODHS failed to take reasonable steps to preserve evidence.  ODHS implemented a litigation hold when it received J.C.'s tort claim notice and State Defendants preserved, collected, reviewed, and produced an extraordinary quantity of information, including text messages archived in OR-Kids.  Even where State Defendants have missed something, like with Hammond's phone, they have attempted to correct the mistake. "[T]he Federal Rules do not demand perfection."  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (cleaned up).

Finally, even if the Court concludes that ODHS failed to preserve some text messages, the loss of any such messages is replaced by the extensive other discovery State Defendants provided.  ████████████████████████████████████████████ ████████████████████████████████████ (Scott Decl. ¶ 2.)  ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ (Scott Decl. ¶ 5.) Plaintiff has not shown that this copious additional information is insufficient to replace any information that may have been lost.  *Neighborhood Networks Publ'g, Inc. v. Lyles*, No. 7:19-CV-89-BO, 2021 WL 328844, at *3 (E.D.N.C. Feb. 1, 2021) ("Even if plaintiffs were able to show that any information was lost, plaintiffs are unable to show that the information could not be replaced through additional discovery.").

**Page 17 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED
            MOTION FOR SANCTIONS**

If the Court determines that a sanction is appropriate under Rule 37(e)(1), but also that there is no evidence that ODHS or State Defendants intentionally destroyed evidence, "[c]are must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2)."  2015 Comments to Fed. R. Civ. P. 37.  "An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case."  *Id.*  However, "[a]n award of attorneys' fees for bringing a sanctions motion is an appropriate remedy for spoliation under Rule 37(e)(1)[.]"  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1241 (N.D. Cal. 2022).  If "serious measures" are necessary, the Court may permit "the parties to present evidence and argument to the jury regarding the loss of information."  2015 Comments to Fed. R. Civ. P. 37.

> **C.**      **Rule 37(e)(2) sanctions are not available because plaintiff has no clear and convincing evidence that State Defendants intended to deprive plaintiff of unavailable information.**

The Court may only impose the serious sanctions requested by plaintiff if the Court finds that ODHS and State Defendants "acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).  This is a stringent standard.  The Court may not order a Rule 37(e)(2) sanction even if it finds ODHS and State Defendants were negligent or grossly negligent in preserving evidence.  2015 Comments to Fed. R. Civ. P. 37 (2015 amendments to Rule 37(e)(2) "reject[] cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence.").  And although the Court may necessarily rely on circumstantial evidence to determine State Defendants' intent, *Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024), "'it is improper to infer nefarious intent or bad faith' from 'ordinary discovery errors.'"  *Reinsdorf* , 296 F.R.D. at 615 (quoting *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 993 (8th Cir.1999).)

**Page 18 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

In addition to these requirements, plaintiff must also show intent by clear and convincing evidence.  Although the Ninth Circuit itself has not yet issued an opinion on this point, many circuits so hold.  *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328–29 (Fed. Cir. 2011) (sanctions under Rule 37(e)(2) "should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party" *citing Shepherd v. ABC*, 62 F.3d 1469, 1472, 1477 (D.C. Cir.1995) (noting that dismissal requires proof by clear and convincing evidence).  *See also Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071-SI, 2023 WL 9019050, at *12 (N.D. Cal. Nov. 15, 2023) (to justify 37(e)(2) sanction, "bad faith must be shown by clear and convincing evidence"); *Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, No. CV 13-33WES, 2019 WL 118412, at *7 (D. R.I. Jan. 7, 2019) (applying clear and convincing standard to Rule 37(e)(2) sanctions, *citing Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988) (same)); *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15CV9363 (ALC) (DF), 2018 WL 1512055, at *1 (S.D.N.Y. Mar. 12, 2018) ("given the severity of the sanctions available under Rule 37(e)(2), the requisite intent finding should be based on clear and convincing evidence, and, in this case, while some circumstantial evidence is suggestive of an intent to deprive, that evidence is not sufficiently compelling to justify the necessary finding.").

Severe sanctions under Rule 37(e)(2) are not appropriate here for multiple reasons.  First, since, as discussed above, Rule 37(e)(1) sanctions are not available against State Defendants, it necessarily follows that the harsher sanctions under Rule 37(e)(2), including terminating sanctions, are not available.

Second, there is no evidence that State Defendants intentionally spoliated any evidence. Plaintiff's motion relies on innuendo and insinuation, but contains no concrete evidence—

**Page 19 –   STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED
            MOTION FOR SANCTIONS**

circumstantial or otherwise—that State Defendants intentionally destroyed evidence.  On the contrary, when they have encountered ordinary discovery errors, such as discovery of Hammond's phone last summer, they have acted briskly to correct them.  With Hammond's phone, State Defendants reported its discovery to plaintiff and the Court.  ██████████ ████████████████████████████████ (Scott Decl. ¶ 3.)  ████████ ████  (*Id.*)  ████████████████████████████████████████████ ██████████████████████  (*Id.*)

Plaintiff incorrectly points to ODHS's practice of deleting data from cellular devices before returning them to their vendor as evidence that State Defendants took "affirmative steps" to delete evidence.  But this is plainly wrong.  ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████  (*See* Jones Decl. ¶¶ 5-7.)  It would be extraordinarily inappropriate for ODHS to maintain a cache of cellular devices that have not been cleared of operational data of any kind.

State Defendants did not "selectively" preserve evidence.  There is no evidence that any defendant picked and chose different documents to keep and delete.

Plaintiff's request for terminating sanctions is particularly overreaching and uncalled for in this case.  The Ninth Circuit has identified five factors that a district court may consider before dismissing a case or declaring a default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [other party]; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024).

**Page 20 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED
MOTION FOR SANCTIONS**

Plaintiff accuses ODHS of egregious lapses in its monitoring of J.C. in her foster home. The public has an interest in having this claim determined on its merits, and the risk to ODHS of prejudice in having the claims resolved through a default is manifest. Even if plaintiff had evidence of spoliation, which does not exist, sanctions far less drastic than termination of the litigation would be available, like a permissive jury instruction. *See, e.g., Yela Fiduciary Servs., LLC for Est. of Sund v. Benton Cnty.*, No. 6:20-CV-01925-MK, 2022 WL 17666400, at *9 (D. Or. Dec. 14, 2022) (imposing permissive jury instruction). In the absence of evidence, plaintiff posits an untenable conspiracy theory in which multiple ODHS employees purportedly schemed for years to hide unspecified malfeasance. Plaintiff reaches much too far, and the Court should deny this motion out of hand and proceed to litigating the merits.

## CONCLUSION

The Court should deny plaintiff's motion in its entirety.

DATED: February 12, 2025.

DAN RAYFIELD
ATTORNEY GENERAL
FOR THE STATE OF OREGON

*s/ Harry B. Wilson*

Lauren F. Blaesing, OSB #113305
LaurenBlaesing@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Alexandra L. Rhee, OSB #230770
AlexRhee@MarkowitzHerbold.com
*Special Assistant Attorneys General for State Defendants and Third-Party Plaintiff*

Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880407
JeffEdelson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com

**Page 21 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

*Of Attorneys for State Defendants and Third-Party Plaintiff*

Jill Schneider, OSB #001619
Jill.Schneider@doj.oregon.gov
Nicholas Mancuso, OSB #151262
Nicholas.Mancuso@doj.oregon.gov
*Of Attorneys for State Defendants and Third-Party Plaintiff*

2268383

**Page 22 –**  **STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR SANCTIONS**

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, I have made service of the foregoing **STATE**

**DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED MOTION FOR**

**SANCTIONS** on the parties listed below in the manner indicated:

| | |
|---|---|
| Steven V. Rizzo<br>Mary D. Skjelset<br>Rizzo Bosworth Eraut PC<br>1300 SW Sixth Avenue, Suite 330<br>Portland, OR  97201<br>*Attorneys for Plaintiff Levi* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email:  srizzo@rizzopc.com;<br>       mskjelset@rizzopc.com;<br>       ccarr@rizzopc.com;<br>       smaddox@rizzopc.com<br>☐ Electronically via USDC CM/ECF system |
| Caitlin Mitchell<br>Johnson Johnson Lucas Middleton, PC<br>975 Oak Street, Suite 1050<br>Eugene, OR  97401<br>*Attorneys for Plaintiff Levi* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email:  cmitchell@justicelawyers.com<br>☐ Electronically via USDC CM/ECF system |
| Nadia H. Dahab<br>Sugerman Dahab<br>101 SW Main Street, Suite 910<br>Portland, OR  97204<br>*Attorneys for Plaintiff Levi* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email:  nadia@sugermandahab.com<br>☐ Electronically via USDC CM/ECF system |
| Jonathan W. Monson<br>Nicole A.W. Abercrombie<br>Cable Huston LLP<br>1455 SW Broadway, Suite 1500<br>Portland, OR  97201<br>*Attorneys for Defendant Kassidy O'Brien* | ☒ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ Email:  jmonson@cablehuston.com;<br>       nabercrombie@cablehuston.com<br>☐ Electronically via USDC CM/ECF system |

DATED: February 12, 2025.

*s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
*Special Assistant Attorney General for State*
*Defendants and Third-Party Plaintiff*

Page 23 –   **STATE DEFENDANTS' RESPONSE TO PLAINTIFF LEVI'S AMENDED**
                **MOTION FOR SANCTIONS**