**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Alexandra L. Rhee, OSB #230770**
AlexRhee@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for State Defendants*
*and Third-Party Plaintiff*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ETHAN LEVI, | Case No. 6:22-cv-01813-MTK |
| Plaintiff, | **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| KIM CHAPMAN, in her individual capacity; ANASTASIA TIBBETTS, in her individual capacity; KASSIDY O'BRIEN, in her individual capacity; ERIN LANE, in her individual capacity; THE OREGON DEPARTMENT OF HUMAN SERVICES, a government agency; and JANE and JOHN DOES 1-5; in their individual and/or official capacities, | **FILED UNDER SEAL** |
| Defendants. | |
| OREGON DEPARTMENT OF HUMAN SERVICES, | |
| Third-Party Plaintiff, | |
| v. | |
| JOE ALBERT RAYGOSA, | |
| Third-Party Defendant. | |

**REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................1

ARGUMENT.................................................................................................................2

I.    This Court should grant summary judgment to State Defendants on plaintiff's federal claims. ................................................................................2

    A.    Plaintiff has not identified clearly-established case law that governed State Defendants' "particular conduct."......................................2

    B.    Accepting the facts in the light most favorable to plaintiff, State Defendants were not deliberately indifferent..............................................5

        1.    Chapman's certification of the Duncan-Raygosa home did not violate due process or clearly-established case law...................5

        2.    State Defendants' casework with respect to the Duncan-Raygosa home did not violate due process or clearly-established case law. ......................................................................8

        3.    When State Defendants sought to remove J.C. from the Duncan-Raygosa home, they did so over the objections of the other members of the children's care team. ...........................11

        4.    Chapman's certification of the ████████ home did not violate due process or clearly-established case law.................12

        5.    State Defendants' casework with respect to the ████ ██████ home did not violate due process or clearly-established case law. .......................................................................13

        6.    There is no causal connection between J.C.'s injuries and facts plaintiff identifies as concerns...............................................16

    C.    Plaintiff misstates the governing legal standard for substantive due process claims and qualified immunity........................................................16

        1.    Plaintiff bears the burden of proving that a constitutional violation occurred and of identifying clearly-established case law. ......................................................................................16

        2.    Plaintiff must prove each State Defendant's subjective knowledge. ...........................................................................17

        3.    Violations of state regulations or departmental policy do not establish violations of substantive due process.......................18

    D.    If nothing else, this Court should grant summary judgment to supervisors Lane and Brooks. ..................................................................22

    E.    This Court should also grant summary judgment as to plaintiff's challenge to court-ordered visitation and O'Brien's involvement in the criminal trial...........................................................................23

**Page i –**    **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

II.    Plaintiff relies on inadmissible evidence that is not properly in this record. .........24

    A.    The Court should strike the declarations of Deborah McCowan and Priscilla Estrada because plaintiff concealed the substance of this proposed testimony. ..................................................................24

        1.    Plaintiff's complaint did not clearly allege that a personal reference disclosed the death in California to Chapman. ..............25

        2.    Multiple interrogatories called for the disclosure of information contained in the declarations. ....................................25

        3.    After the close of discovery, plaintiff revealed declarations from the Duncan-Raygosa home's personal references that plaintiff obtained in April 2024. ....................................................28

        4.    Plaintiff's failure to timely correct or supplement his interrogatory responses to include McCowan and Estrada's statements violated Rule 26(e). ......................................................29

        5.    Plaintiff's catch-all paragraph directing State Defendants to review hundreds of thousands of pages of discovery "productions" was inadequate........................................................31

        6.    Plaintiff's catch-all paragraph was also misleading.......................31

        7.    Plaintiff's incomplete interrogatory responses are not substantially justified. ...................................................................32

        8.    Plaintiff's failure to provide complete interrogatory responses was not harmless. ...........................................................33

    B.    The Court should disregard the facts described in the expert reports. ..............................................................................................34

    C.    Witness statements in case notes are hearsay and cannot be offered into evidence for their truth.........................................................34

CONCLUSION.....................................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. California Highway Patrol*,
712 F.3d 446 (9th Cir. 2013) ......................................................................................17

*A.F. v. Evans*,
No. 2:18-cv-01404-SU, 2021 WL 4255043 (D. Or. Sept. 17, 2021)................................20, 21

*A.G. v. Oregon Dep't of Hum. Servs.*,
No. 3:13-CV-01051-AC, 2015 WL 5178707 (D. Or. Sept. 3, 2015) ..........................19, 20, 21

*Ansara v. Maldonado*,
647 F. Supp. 3d 958 (D. Nev. 2022).................................................................................4, 6

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)..........................................................................................................2

*B-K Lighting, Inc. v. Vision3 Lighting*,
930 F. Supp. 2d 1102 (C.D. Cal. 2013) .............................................................................30

*Backlund v. Barnhart*,
778 F.2d 1386 (9th Cir. 1985) ..........................................................................................18

*Bearchild v. Cobban*,
947 F.3d 1130 (9th Cir. 2020) ..........................................................................................16

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) .................................................................................30, 31

*Carley v. Aranas*,
103 F.4th 653 (9th Cir. 2024) ....................................................................................3, 4, 21

*Case v. Kitsap Cty. Sheriff's Dep't*,
249 F.3d 921 (9th Cir. 2001) ............................................................................................18

*Castro v. Cnty. of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) .....................................................................................17, 18

*Chappell v. Mandeville*,
706 F.3d 1052 (9th Cir. 2013) ...........................................................................................4

*Colvin v. United States*,
479 F.2d 998 (9th Cir. 1973) ............................................................................................35

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ...............................................................................3

*Davis v. Scherer*,
468 U.S. 183 (1984).............................................................................................18

*Davis v. Washington State Dep't of Soc. & Health Servs.*,
795 F. App'x 542 (9th Cir. 2020) ..................................................................18, 21

*Davis v. Washington State Dep't of Soc. & Health Servs.*,
795 F. App'x 544 (9th Cir. 2020) ...........................................................................6

*Davis v. Washington State Dep't of Soc. & Health Servs.*,
No. 2:17-cv-00062-SMJ, 2018 WL 2033703 (E.D. Wash. Mar. 26, 2018) ......20, 21

*Doe v. New York City Dep't of Soc. Servs.*,
649 F.2d 134 (2nd Cir. 1981)...............................................................................18

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011) ..........................................................................29, 31

*Foster v. City of Indio*,
908 F.3d 1204 (9th Cir. 2018) ................................................................................2

*Fox v. California Sierra Fin. Servs.*,
120 F.R.D. 520 (N.D. Cal. 1988)..........................................................................33

*Hamby v. Hammond*,
821 F.3d 1085 (9th Cir. 2016) ...........................................................................3, 4

*Harner v. USAA Gen. Indem. Co.*,
590 F. Supp. 3d 1217 (S.D. Cal. 2022)..................................................................30

*Hickman v. Taylor*,
329 US 495 (1947)................................................................................................33

*J.H. ex Rel. Higgin v. Johnson*,
346 F.3d 788 (7th Cir. 2003) .............................................................................5, 7

*Humphries v. Cnty. of Los Angeles*,
554 F.3d 1170 (9th Cir. 2008), *as amended* (Jan. 30, 2009), *rev'd and
remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) ......8

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
921 F.3d 803 (9th Cir. 2019) ...............................................................................30

*Isayeva v. Sacramento Sheriff's Dept.*,
872 F.3d 938 (9th Cir. 2017) ...............................................................................17

**Page iv –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

*J.P. by & through Villanueva v. Cnty. of Alameda*,
  803 F. App'x 106 (9th Cir. 2020) ........................................................................14

*J.R. v. Gloria*,
  593 F.3d 73 (1st Cir. 2010) ...............................................................................5, 7

*Jeremiah M. v. Crum*,
  695 F. Supp. 3d 1060 (D. Alaska 2023) ...............................................................17

*Lawman v. City & Cnty. of San Francisco*,
  159 F. Supp. 3d 1130 (N.D. Cal. 2016) ................................................................31

*Lewis v. Anderson*,
  308 F.3d 768 (7th Cir. 2002) ...............................................................................13

*Lindner v. Meadow Gold Diaries, Inc.*,
  249 F.R.D. 625 (D. Haw. 2008).............................................................................29

*M.M.E. by & through Flores v. Cnty. of San Bernardino by & through San
  Bernardino Cnty. Dep't of Child. & Fam. Servs.*,
  709 F. Supp. 3d 1033 (C.D. Cal. 2023) ..................................................................5

*M.P. v. Cnty. of Los Angeles*,
  No. 2:19-cv-10755-GW-JPR, 2020 WL 6031957 (C.D. Cal. July 17, 2020)............................1

*Momox-Caselis v. Donohue*,
  981 F.3d 835 (9th Cir. 2021) ...............................................................................17

*Morales v. Fry*,
  873 F.3d 817 (9th Cir. 2017) ...............................................................................16

*Oyarzo v. Turner*,
  641 F. App'x 700 (9th Cir. 2015) ..........................................................................30

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) ..............................................................................34

*Pastrana v. Loc. 9509, Commc'ns Workers of Am., AFL-CIO*,
  No. 06cv1779 W(AJB), 2007 WL 2900477 (S.D. Cal. Sept. 28, 2007)................................33

*Rico v. Ducart*,
  980 F.3d 1292 (9th Cir. 2020) ................................................................................3

*Romero v. Kitsap Cnty.*,
  931 F.2d 624 (9th Cir. 1991) ...............................................................................17

*Schafer v. Cnty. of Santa Barbara*,
  868 F.3d 1110 (9th Cir. 2017) ..............................................................................17

**Page v –     REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
                SUMMARY JUDGMENT**

*Scott & Fetzer Co. v. Dile*,
    643 F.2d 670 (9th Cir. 1981) .......................................................................................29, 30

*Smith v. Agdeppa*,
    81 F.4th 994 (9th Cir. 2023) ..................................................................................................2

*Tamas v. Dep't of Soc. & Health Servs.*,
    630 F.3d 833 (9th Cir. 2010) ..............................................................................................4, 5

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ...............................................................................................22

*Waubanascum v. Shawano Cnty.*,
    416 F.3d 659 (7th Cir. 2005) ...................................................................................................7

*White v. Pauly*,
    580 U.S. 73 (2017) (per curiam) .............................................................................................2

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2011) ..............................................................................................29

**Rules**

Fed. R. Civ. P. 26(e) .......................................................................................26, 29, 30, 32

Fed. R. Civ. P. 37(c) .................................................................................................26, 29

Fed. R. Civ. P. 62.1(a)(3).................................................................................................23

Fed. R. Evid. 803(8)...................................................................................................34, 35

**INTRODUCTION**

To overcome the qualified immunity that shields each of the State Defendants, plaintiff must provide evidence showing that State Defendants violated clearly-established constitutional law. Plaintiff fails to make this showing for all four of the individual defendants. It is undisputed that Chapman obtained a finger-print based background check from the Federal Bureau of Investigation on Duncan, Raygosa, and their adult son Joseph. It is also undisputed that Chapman complied with state law requiring her to query the California Child Abuse Central Index for any substantiated or unable to determine reports about Duncan, Raygosa, and Joseph. Plaintiff agrees that both checks came back negative: Duncan, Raygosa, and Joseph had not been charged or convicted of any crimes, and there were no founded reports that they abused or neglected any children.

Even if Chapman knew that a child had died while in their care in California, and even if she knew that California had investigated the incident, there is no clearly-established law anywhere in the country particularized to these facts establishing that Chapman violated the Constitution by certifying Duncan and Raygosa. On the contrary, the sole on-point case found exactly the opposite, holding that even if child welfare officials knew that a prospective parent had been accused of sexual abuse, but that there was no founded report, the officials did not violate the Constitution. *M.P. v. Cnty. of Los Angeles*, No. 2:19-cv-10755-GW-JPR, 2020 WL 6031957, at *4 (C.D. Cal. July 17, 2020) ("Even if [officials] knew about the prior sexual abuse allegations from three years ago, Plaintiffs still fail to plead a due process violation."). Regardless of whether this Court concludes that Chapman's actions were deliberately indifferent to a known risk of danger, the Court must find that she is immune from liability in this case because there is no clearly-established law governing her particular actions.

**Page 1 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Qualified immunity protects the other State Defendants as well.  There is no evidence that J.C. disclosed Raygosa's sexual abuse to anyone while she resided in the Duncan-Raygosa household.  Reports of minor injuries to other children (not J.C.), unfounded reports of neglect, and alleged lapses in caseworker visits (even if true) do not amount to deliberate indifference, and even if the Court were to conclude that they did, there is no clearly-established law particularized to these facts that would inform any of the individual State Defendants that their conduct was unconstitutional.  Plaintiff's federal claims fail as a matter of law; State Defendants have qualified immunity.

## ARGUMENT

**I.    This Court should grant summary judgment to State Defendants on plaintiff's federal claims.**

    **A.    Plaintiff has not identified clearly-established case law that governed State Defendants' "particular conduct."**

To overcome qualified immunity, plaintiff must demonstrate that each State Defendant's "particular conduct" violated clearly-established case law.  For over a decade now, the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  The Ninth Circuit and the district courts within it have taken heed and repeatedly held that "the clearly established law at issue must be *particularized to the facts* of the case." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)) (emphasis added).  In other words, "the dispositive question is whether the violative nature of *particular conduct* is clearly established." *Smith v. Agdeppa*, 81 F.4th 994, 1002 (9th

**Page 2 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Cir. 2023) (emphasis added) (citation omitted); *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (same).[1]

Plaintiff argues that a State Defendant's "particular conduct" is only relevant to the qualified immunity analysis for some constitutional claims, namely Fourth Amendment excessive force claims. (Levi's Resp. to Individual Defs.' Mot. for Partial Summ. J. ("Levi Resp.") at 8 n.6.) But in 2016, the Ninth Circuit considered and rejected this very argument, stating that the "particular right at issue in no way changes the fact-specific, highly contextualized nature of the 'clearly established' analysis." *Hamby*, 821 F.3d at 1091-92. Plaintiff is simply wrong to contend that the qualified immunity inquiry changes depending on the right at issue. To be sure, the Ninth Circuit has said that in certain exceptional cases, a court should deny qualified immunity "even if there [is] no prior holding directly on point," but the Ninth Circuit has stated that this exception only applies where the conduct is "so egregious" and "obviously" unconstitutional that "no one would defend it." *Id.* at 1095. The evidence in this case does not meet this standard, as a matter of law.

Here, State Defendants accept as true that J.C. was harmed in custody, and that the harm was severe. But in the deliberate indifference context, the Ninth Circuit frequently grants public officials qualified immunity, even where individuals have been harmed in state custody. For instance, prisoners[2] have a constitutional right to "necessary medical treatment," but in *Carley v. Aranas*, the Ninth Circuit held that prison officials were entitled to qualified immunity when they

---

[1] *See also Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009) (inquiry "must be undertaken in light of the *specific context* of the case") (emphasis added); *Rico v. Ducart*, 980 F.3d 1292, 1298-99 (9th Cir. 2020) (citation omitted) (court must consider "the *specific facts* under review") (emphasis added).

[2] Oregon law refers to persons incarcerated in correctional facilities as "adults in custody," whereas federal case law uses the term prisoner.

**Page 3 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

refused to provide costly anti-viral medication to a prisoner with chronic Hepatitis C.  103 F.4th 653, 661 (9th Cir. 2024).  In that case, the prevailing medical guidelines and the plaintiff's medical experts stated that the plaintiff should have received the medications, but because there was a split in case law on the issue, the Ninth Circuit granted qualified immunity.  Similarly, in *Hamby*, a prison doctor refused surgery for a painful umbilical hernia, recommending medications and a hernia belt instead.  821 F.3d at 1094-96.  Although the plaintiff's medical expert recommended surgery, the Ninth Circuit granted qualified immunity because there was a split in the case law on whether surgery was required for that type of hernia.  In *Chappell v. Mandeville*, a contraband search led to shackling a prisoner to his bed for a week, monitoring his bowel movements, and keeping him in continuous lighting.  706 F.3d 1052, 1056 (9th Cir. 2013).  Although the Ninth Circuit acknowledged that prisoners have a general right to safe living conditions and human needs such as sleep, and the contraband search was "more severe" than in other cases, the court still granted qualified immunity because "no court had held that conditions similar to those [the plaintiff] experienced were unconstitutional."  *Id.* at 1062.

Here, although the Ninth Circuit has recognized a general right to "social worker supervision and protection from harm," that general right is not enough to establish that a defendant's specific conduct violated clearly-established law.  *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010).  Instead, *Tamas* is materially distinguishable from the instant facts because it involved numerous credible or substantiated reports of abuse combined with a failure to respond to the reports.  *Ansara v. Maldonado*, 647 F. Supp. 3d 958, 975 (D. Nev. 2022) (distinguishing *Tamas* because *Tamas* involved "substantiated" and "reliable" abuse reports followed by "inaction" by defendants).  By contrast, where, as here, there are isolated reports of neglect and those reports are investigated, no clearly-established law

**Page 4 –     REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL**
**                         SUMMARY JUDGMENT**

permits a court to second-guess the safety determinations made by the investigators. *See*, *e.g.*, *M.M.E. by & through Flores v. Cnty. of San Bernardino by & through San Bernardino Cnty. Dep't of Child. & Fam. Servs.*, 709 F. Supp. 3d 1033, 1042 (C.D. Cal. 2023) (distinguishing *Tamas* because in *M.M.E.* there was "unsubstantiated evidence of abuse and the social worker took affirmative actions to corroborate the allegations of abuse"). Similarly, where, as here, the reports involved minor injuries, not physical or sexual abuse, courts have rejected due process claims. *J.R. v. Gloria*, 593 F.3d 73 (1st Cir. 2010). Further, where, as here, non-party investigators performed the investigations, caseworkers are entitled to rely on the work of their colleagues. *See*, *e.g.*, *J.H. ex Rel. Higgin v. Johnson*, 346 F.3d 788, 790 (7th Cir. 2003). Because no case law put State Defendants on notice that their "particular conduct" was unlawful, this Court should grant qualified immunity.

**B.    Accepting the facts in the light most favorable to plaintiff, State Defendants were not deliberately indifferent.**

There is no triable issue of fact that precludes summary judgment. Unlike cases finding substantive due process violations, no one reported or suspected that J.C. was being sexually abused during the time she lived in the Duncan-Raygosa home. Plaintiff has combed through case notes and provider files to identify alleged deficiencies in the certification and casework. But even accepting the evidence in the light most favorable to plaintiff, his federal claims still fail as a matter of law because none of the issues identified by plaintiff would have alerted State Defendants to a substantial risk of sexual abuse in the home.

**1.    Chapman's certification of the Duncan-Raygosa home did not violate due process or clearly-established case law.**

Chapman's work to certify the Duncan-Raygosa home did not violate clearly-established law. Chapman received and reviewed the family's applications, which included basic biographical information. (Decl. of Chad Naso in Supp. of State Defs.' Mot. for Partial Summ.

**Page 5 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

J. ("Naso Decl.") Ex. 6.)  Chapman then interviewed the family, performed a home study, received information from four personal references, and reviewed background checks in Oregon and other jurisdictions.  (Naso Decl. Exs. 7-10.)  The SAFE Home study describes the family's medical history, personal history, reasons for fostering, home life, community support, home layout, and psychosocial characteristics, among other things.  (Naso Decl. Ex. 7.)

Plaintiff now contends that various features of the home study made the Duncan-Raygosa home uncertifiable as a matter of substantive due process: Duncan and Raygosa used different colored pens to fill out their application paperwork, the family had a low income (approximately $30,000), Raygosa misstated the year his mother died, and the family "had taken care of" children but not previously fostered them.  (Levi Resp. at 13, 17-18.)  But even assuming that the home study raised each of these concerns, Chapman did not violate the Constitution or any clearly-established law interpreting it when she certified the home.  As shown, a substantive due process claim requires subjective knowledge of a "substantial risk of serious harm."  Case law applying this standard in the foster care setting has required credible, substantiated reports of abuse.  *See*, *e.g.*, *Ansara*, 647 F. Supp. 3d at 967; *Davis v. Washington State Dep't of Soc. & Health Servs.*, 795 F. App'x 544, 545 (9th Cir. 2020).  Plaintiff's unrelated, attenuated concerns regarding the Duncan-Raygosa home study are insufficient as a matter of law.

Similarly, plaintiff contends that Chapman failed to uncover two pieces of collateral information that would have contradicted the family's application materials.  First, plaintiff contends that Chapman could have searched county-level death records in California, and determined that Raygosa misstated the date and location of his mother's death.  Second, plaintiff wildly contends that Chapman *knew* that a child died while in the family's custody in California. Plaintiff bases this entire argument on a belatedly-disclosed declaration of questionable

**Page 6 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

credibility that is inadmissible for reasons discussed below in section II.A. and that contradicts the only admissible evidence on the same subject, Chapman's testimony and contemporaneous documents.  (Naso Decl. Ex. 7.; Decl. of Anit Jindal in Supp. of Reply in Supp. of Mot. for Partial Summ. J. ("Jindal Decl.") Ex. 1.)  Even accepting the truth and admissibility of plaintiff's declaration, plaintiff does not dispute that Chapman queried California's statewide child abuse database and determined that there were no *substantiated* abuse reports against the family.  (Levi Resp. at 25 ("There is no dispute that California's response to Oregon's inquiry indicated that there were no substantiated reports in the CACI for D-R."); Naso Decl. Ex. 9.)[3]

Plaintiff argues that Chapman could have *also* requested detailed records regarding the unfounded allegations from agencies in Fresno County.  But even assuming plaintiff is right about that, cases have repeatedly rejected due process claims based on an allegation that more robust background checks could have uncovered disqualifying information.  *See*, *e.g.*, *J.R.*, 593 F.3d at 76-77; *Waubanascum v. Shawano Cnty.,* 416 F.3d 659, 663, 667-668 (7th Cir. 2005).[4] Further, cases have repeatedly held that unsubstantiated allegations of abuse are not sufficient to establish deliberate indifference because certifiers are entitled to rely on the work of investigators.  *See*, *e.g.*, *J.H. ex Rel. Higgin*, 346 F.3d at 790.  Due process did not require Chapman to search for death records and police reports in Fresno County for details of

[3] Levi is mistaken to argue that Fresno County's determination that the abuse allegation was "unfounded" is inadmissible hearsay. (Levi Resp. at 20.)  The fact that Chapman's California search turned up no substantiated instances of abuse is offered for its effect on the listener, namely that Chapman was aware that there was no founded allegation of abuse against the home.  That said, State Defendants agree that Fresno County's investigation materials themselves are inadmissible and would join plaintiff in a stipulation to that effect prior to trial.

[4] Despite a successful motion to strike, plaintiff repeatedly relies on the deposition testimony of State Defendants' expert Kellie Figoten for the proposition that the Fresno County officials were negligent. (Levi Resp. at 20, 24.)  Because plaintiff affirmatively relies on this evidence to avoid summary judgment, he has opened the door to State Defendants relying on it at trial.

**Page 7 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

unfounded allegations that she did not know existed. The case plaintiff cites, *Humphries v. LA*, is inapposite. In *Humphries*, the plaintiffs were the subject of a substantiated child abuse report and alleged that the report was false and its inclusion in the California database violated procedural due process. The case did not involve substantive due process, foster care certification, county-level records, or an unfounded report. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1194 (9th Cir. 2008), *as amended* (Jan. 30, 2009), *rev'd and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010).

### 2.     State Defendants' casework with respect to the Duncan-Raygosa home did not violate due process or clearly-established case law.

As explained in State Defendants' motion, plaintiff's theories regarding the Duncan-Raygosa house fail as a matter of law because the reported incidents, involving minor injuries to other children and another where Joseph Jr. fell asleep while watching the kids, were insufficient to put State Defendants on notice of abuse happening in the home. (State Defs.' Mot. for Partial Summ. J. ("Mot.") at 9-11.) Regardless, the incidents were investigated by CPS, and State Defendants were entitled to rely on the investigations performed by non-parties. The additional arguments raised by plaintiff do not change this result.



(Decl. of Steven Rizzo in Supp. of Pl.'s Resp. to Defs.' Partial Mot. for Summ. J. ("Rizzo Decl.") Ex. 38 at 3.)

(*Id.*)



(*See*, *e.g.*, *id.* at 10

*see also* Jindal Decl. Ex. 2.)

(Rizzo

Decl. Ex. 40.)

(*Id.* at 4.)

(Rizzo Decl. Ex. 38 at 3.)

. (*See*, *e.g.*, *id.* at 11

*id.*

Regardless, the individual State Defendants are not liable for an investigation conducted by CPS workers.[5]

Similarly, plaintiff points to a September 2016 medical neglect referral regarding a relative of the Duncan-Raygosa family. Again, the evidentiary record is clear that these reports did not involve any allegations against the Duncan-Raygosa home.

---

[5]

. (*See*, *e.g.*, Jindal Decl. Ex. 3 (        Dep. at 47:15-49:12 (                                          .)

**Page 9 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**



(Rizzo Decl. Ex. 44 at 4.)

(*Id.*) (emphasis added.)

. (*Id.*)

(Jindal Decl. Exs. 5-6.)  Plaintiff never explains how this medical neglect accusation against someone else about a different child would have signaled that the Duncan-Raygosa home was unsafe, let alone that Raygosa was sexually abusing J.C.

Finally, plaintiff contends that O'Brien and Chapman did not visit with the children frequently enough.

. (Jindal Decl. Ex. 7.)

(Jindal Decl. Ex. 8.)

(Jindal Decl. Ex. 9.)

(Jindal Decl. Ex. 10.)

(*See*, *e.g.*, Naso Decl. Ex. 19 at 6; Naso Decl. Ex. 22 at 3.)  In sum, the named State Defendants had **forty-four in-person visits with J.C. and Z.C.**

**Page 10 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

during the period they were in these two homes, most of which occurred in the home.[6]  Plaintiff contends that State Defendants should have had even more contact with the family, but no clearly-established case law would have put any State Defendant on notice that due process required this.[7]

> **3.    When State Defendants sought to remove J.C. from the Duncan-Raygosa home, they did so over the objections of the other members of the children's care team.**

As explained in State Defendants' motion, State Defendants' removal of the children and the de-certification of the Duncan-Raygosa home was the subject of a contested hearing in juvenile court in July 2017.  (Mot. at 12-13.)  ███████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████  (Jindal Decl. Ex.

13.)  ███████████████████████████████████████████████████████

██████████████████████████████████████████  ██████████████████████████████

_____

[6] ██████████████████████████████████████████████████████████
████████████████████████████████████  (Jindal Decl. Ex. 11.)  Ramirez is not named as a defendant in this matter.

[7] Plaintiff also points out that a high-needs five-year old was placed in the Duncan-Raygosa home.  ████████████████████████████████████████████████
█████████████  (Jindal Decl. Ex. 12.)  ██████████████████████████
████████████████████████████  This child's behaviors and the response to these behaviors, do not establish State Defendants were deliberately indifferent to physical or sexual abuse in the home.

[8] (*See*, *e.g.*, *id.* at 121-22 ████████████████████████████████████████████
██████████████████████████████████████████████████████████; *id.* at 130 ████
██████████████████████████████████████████████████████████
█████████████████████████████████

**Page 11 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
          SUMMARY JUDGMENT**

███████████████████████████████████████████████████

█████████████████████████████

Plaintiff contends that the other members of the care team were not told about the neglect referrals regarding minor injuries to other children as they occurred.  Plaintiff misses the point. The care team actually did receive details about these referrals during the de-certification process.  Then, *after* speaking to the children about the facts, and questioning Raygosa and ODHS employees under oath, J.C.'s care team *still* advocated for her to remain in the Duncan-Raygosa home.  Plaintiff also contends that State Defendants were slow to provide the juvenile court with details about J.C.'s subsequent sexual abuse disclosure against Raygosa.  (Levi Resp. at 46.)  State Defendants deny the accusation, but it is also irrelevant.[9]  By the time J.C. disclosed her abuse, she had already been removed from the Duncan-Raygosa home.  No delay in updating the juvenile court prolonged the abuse.

**4.     Chapman's certification of the** ████████████ **home did not violate due process or clearly-established case law.**

When certifying the ████████████ home, Chapman interviewed the family and reviewed their application materials.  (Rizzo Decl. Ex. 75; Jindal Decl. Ex. 14 at 2-6.)  ████



████████████ (Rizzo Decl. Ex. 75; Jindal Decl. Ex. 20; *see also* Jindal Decl. Ex. 21

---

[9] Plaintiff also contends that O'Brien "excised" damaging information about Raygosa's abuse from a later report to the juvenile dependency court.  ███████████████████████████████ (*See* Rizzo Decl. Ex. 94 at 4 (describing ████████████████████████████████████████ ███████████████████████████

**Page 12 –     REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

(December 2018 SAFE Study).)  Plaintiff contends that two facts made the ▮▮▮▮▮▮▮▮ home

uncertifiable as a matter of law: the father admitted to having watched pornography in the past

and the mother had been the victim of childhood sexual abuse by her biological father.  (Levi

Resp. at 47-48.)

(Jindal Decl Exs. 20, 21.)  Plaintiff does

not allege that J.C. interacted with ▮▮▮▮▮▮▮▮▮ and plaintiff has not demonstrated

that J.C. reported to any State Defendant that she saw pornography while in the home.  (Levi

Resp. at 44.)  No case law would have put State Defendants on notice that certifying resource

parents with this personal history violated due process.

> **5.    State Defendants' casework with respect to the ▮▮▮▮▮▮▮ home did not violate due process or clearly-established case law.**

Plaintiff challenges several aspects of the ▮▮▮▮▮▮▮ home as violative of

substantive due process, but none is sufficient to overcome qualified immunity.  For one,

plaintiff contends that J.C. and Z.C. were forced to run laps as a form of physical discipline for

acting out.  (Levi Resp. at 49.)  This theory fails for two reasons.  First, physical discipline such

as running laps is not a clearly-established due process violation.[10]  *Lewis v. Anderson*, 308 F.3d

768, 774 (7th Cir. 2002) (rejecting due process claim based on previous incident of foster parent

slapping a child).  Second, State Defendants were not deliberately indifferent to the physical

discipline in the home.  Chapman reprimanded ▮▮▮▮▮▮▮ and instructed the family to stop

the practice, and the family agreed.  At her deposition, Chapman described the issue:

---

[10] As plaintiff points out, physical discipline is inconsistent with Oregon state policy, but this state policy is irrelevant to plaintiff's federal claims.



(Jindal Decl. Ex. 14 at 374:4-22; Ex. 15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮)[11]

Plaintiff also observes that another child in the ▮▮▮▮▮▮ household sexually touched Z.C.  But State Defendants were not deliberately indifferent to this issue; ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Jindal Decl. Ex. 15 at 3.) ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 4.) ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *J.P. by & through Villanueva v. Cnty. of Alameda*, 803 F.

App'x 106, 108 (9th Cir. 2020) ("Appellee never alleged any direct harm to him, only to his

sibling.  Our cases have not recognized a Fourteenth Amendment violation under these two

exceptions [state-created danger or special-relationship] for emotional distress alone, or for direct

harm to another party.") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Rizzo Decl. Ex. 85 at 4.)

**Page 14 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

 (*Id.* at 8.)  As a threshold

matter, this issue did not harm J.C. because she did not stay in the boys' room.  Regardless,

plaintiff neglects to mention State Defendants' response to this report.

. (*Id.* at 8-9.)

(*Id.* at 8

. ." (*Id.* at 3.)

(*Id.* at 9.)

**6.      There is no causal connection between J.C.'s injuries and facts plaintiff identifies as concerns.**

In a Section 1983 action, the plaintiff must establish both causation-in-fact and proximate causation. *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020).  Plaintiff raises various concerns regarding the certification and casework in the Duncan-Raygosa and ▮▮▮▮▮▮ homes, but many of the concerns were not factual or legal causes of J.C.'s injuries.  For instance, plaintiff asserts that ▮▮▮▮▮▮▮▮ was a sex abuse perpetrator, but plaintiff does not assert that J.C. ever met this person let alone was abused by him.  Similarly, plaintiff contends that the ▮▮▮▮▮▮ house briefly had an inadequate fire evacuation plan.  But none of J.C.'s injuries were sustained in a house fire, because there was no fire in the ▮▮▮▮▮▮ house.  This Court should not consider factual theories untethered from J.C.'s injuries.

**C.      Plaintiff misstates the governing legal standard for substantive due process claims and qualified immunity.**

**1.      Plaintiff bears the burden of proving that a constitutional violation occurred and of identifying clearly-established case law.**

Plaintiff's statement of the governing legal standard is not correct.  For one, plaintiff contends that State Defendants bear the burden of proof on qualified immunity.  "Qualified immunity shields government officials from civil liability unless *a plaintiff* establishes that:  (1) the official violated a constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct, such that 'every reasonable official' would have understood that what he is doing violates that right."  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (emphasis added).

Although qualified immunity is an affirmative defense, the Ninth Circuit has made clear that "[o]nce the official pleads qualified immunity, the burden is *on the plaintiff* to prove two elements:  (1) that the right was violated; and (2) that the right was clearly established at the time

**Page 16 –      REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

of the alleged misconduct." *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 946 (9th Cir. 2017) (emphasis added). "If [the] plaintiff carries this burden, then the [official] must prove that [his] conduct was reasonable even though it might have violated constitutional standards." *Romero v. Kitsap Cnty.,* 931 F.2d 624, 627 (9th Cir. 1991). Accordingly, to survive summary judgment, plaintiff bears the burden both to show that the rights allegedly violated were "clearly established," *Schafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017), and to set forth evidence that "would make out a constitutional violation" by each individual State Defendant. *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

### 2.      Plaintiff must prove each State Defendant's subjective knowledge.

Subjective knowledge of the relevant facts is still a requirement of a substantive due process claim for foster care children. (Levi Resp. at 15-16.) As recently as 2021, the Ninth Circuit reiterated that children in foster care must prove the defendants' subjective knowledge of the relevant facts when bringing substantive due process claims. *Momox-Caselis v. Donohue,* 981 F.3d 835, 846 (9th Cir. 2021). *Momox-Caselis* was decided five years *after* the *Castro* case that plaintiff argues overturned this requirement. The Ninth Circuit's decision in *Castro v. County of Los Angeles* did not overrule the subjective knowledge requirement. Plaintiff is wrong on the law; he must still prove each State Defendant's subjective knowledge. *Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1091 n.185 (D. Alaska 2023) ("The fact that this test was cited with approval in a case five years after it was purportedly overturned is a strong indicator that *Castro* did not, in fact, overturn this test.").[12]

---

[12] Plaintiff's claims fail even under the *Castro* test for claims brought by pre-trial detainees. That test still requires plaintiff to show that the "defendant made an *intentional* decision with respect to the [living] conditions" and "a reasonable officer in the circumstances would have appreciated the *high degree of risk* involved—making the consequences of the

**Page 17 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

### 3.    Violations of state regulations or departmental policy do not establish violations of substantive due process.

The Ninth Circuit has repeatedly held that state law is irrelevant to Section 1983 claims. For this reason, plaintiff's citations throughout to various state-law regulations and policies have no bearing on this motion. State Defendants only seek summary judgment on plaintiff's federal claims, and a violation of state agency policy is "irrelevant" to the question of whether state officials are entitled to qualified immunity. *Backlund v. Barnhart*, 778 F.2d 1386, 1390 n. 5 (9th Cir. 1985). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). In determining qualified immunity, "[w]hether [an official] violated a state law or an internal departmental policy is not the focus of our inquiry." *Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001). Rather, the focus "is on whether a reasonable [official] would have known that the … conduct violated [the plaintiff's] federal statutory or constitutional rights rather than merely a state law or policy provision." *Id.*; *see also Davis v. Washington State Dep't of Soc. & Health Servs.*, 795 Fed. Appx. 542 (9th Cir. Feb. 26, 2020) (unpublished) (rejecting due process claim brought against foster care supervisor).[13]

In arguing otherwise, plaintiff cites to an out-of-circuit case that held that a municipal child welfare agency could be charged with constructive knowledge of "unconstitutional conditions when they persistently violated a statutory duty to inquire about such conditions[.]" *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2nd Cir. 1981). But the Ninth

---

defendant's conduct *obvious*[.]" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (emphasis added).

[13] State Defendants do not agree that any of them violated any state law. Plaintiff's alleged violations of state regulations and policy are disputed between plaintiff's and State Defendants' experts. (Jindal Decl. Exs. 16-17 (State Defendants' expert reports.)

**Page 18 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Circuit has never adopted this theory of liability. Regardless, there is no evidence in this case that any individual State Defendant "persistently" failed to "inquire" about the conditions in either the Duncan-Raygosa or ████████ homes. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ ████████████████████████████████████

██████████████████████████████████████████████████████████

(Naso Decl. Ex. 22 at 55:7-12; *see also id.* at 52:21 ████████████████████████; Naso Decl. Ex. 19 at 70:13-20 (██████████████████████████████████████████

████████)

Plaintiff also cites two unpublished cases from this district adopting the persistent violation theory, but those cases are distinguishable and inconsistent with an intervening, unpublished Ninth Circuit case. (Levi Resp. at 17.) *A.G.* involved a motion to dismiss at the pleading stage and did not raise qualified immunity. *A.G. v. Oregon Dep't of Hum. Servs.*, No. 3:13-CV-01051-AC, 2015 WL 5178707 (D. Or. Sept. 3, 2015). Regardless, the facts were distinguishable because in that case, the State Defendants allegedly failed to conduct any "child welfare history" check, "failed to obtain" employment history and background references, failed to find a prior criminal conviction, failed to conduct any "face-to-face checkups of the [foster family] in their home," and "failed to investigate" known physical and psychological injuries to the plaintiff-children. *Id.* at *6-*7, *9. Here, unlike in *A.G.*, it is undisputed that Chapman performed a home study that included obtaining employment histories and personal references, Chapman ran criminal background checks and child abuse history checks in Oregon and every

---

[14] ODHS uses the term "resource parent" to refer to individuals providing substitute care to children and young adults in ODHS custody. Because foster parent is the term used in the pleadings and federal case law, State Defendants use it here.

other state where the family resided, Chapman and O'Brien conducted frequent face-to-face visits with the children, including visits in the foster homes, and that the minor injuries to other children in the Duncan-Raygosa home were referred to CPS for investigation. (*See* Mot. 6-11.)

Similarly, in *A.F.*, State Defendants certified a foster parent despite the "alarming information about his mental health and history of attempted suicide." *A.F. v. Evans*, No. 2:18-cv-01404-SU, 2021 WL 4255043 at *13-14 (D. Or. Sept. 17, 2021). In that case, the children actually testified about their experience and described incidents that included their foster parent hitting them with a belt and other physical violence. *Id.* at *11. Critically, the child also testified that they reported this physical abuse to the defendant caseworker who did not report it to CPS for investigation. *Id.* Here, J.C. and Z.C. have not testified and there are no contemporaneous reports of physical abuse. In contrast, when minor or accidental injuries occurred, State Defendants referred them to CPS for investigation. Further, it is undisputed that Chapman obtained child welfare and criminal history checks for all five adults in both foster homes, and these checks did not turn up any "alarming information" like the arrest record or mental health history in *A.F.* Even assuming that violations of certain state-law casework and certification requirements could give rise to a due process violation, the relevant underlying facts clearly distinguish this case from *A.G.* and *A.F.*

Regardless, in 2020 a Ninth Circuit panel in an unpublished decision rejected the argument that violating state-law certification and casework requirements provides constructive knowledge of the conditions in the home. In *Davis*, a foster parent habitually physically abused a foster child and ultimately beat him so severely that he died. *Davis v. Washington State Dep't of Soc. & Health Servs.*, No. 2:17-cv-00062-SMJ, 2018 WL 2033703 at *2, *5 (E.D. Wash. Mar. 26, 2018). The child's school saw the child with physical injuries and ultimately reported the

**Page 20 – REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

foster parent to the state child welfare agency for abuse. *Id.* at \*2-\*3. A social worker investigated the report but determined it to be unfounded after interviewing the child and the foster parent. *Id.* at \*4. Separately, caseworkers failed to perform a home study when certifying the foster home and failed to request courtesy supervision of the foster home by the local child welfare agency where the foster family resided, both of which were required by state law. *Davis v. Washington State Dep't of Soc. & Health Servs.*, 795 F. App'x 542, 543 (9th Cir. 2020). The child's estate argued that the failure to comply with these state standards for foster home certification and supervision established defendants' constructive knowledge of the abusive conditions in the home. *Id.*

The Ninth Circuit held that the defendants had qualified immunity. *Id.* at 544. The court reiterated the well-established circuit law that substantive due process claims requires plaintiff to prove that the defendant was "subjectively aware of" the harmful facts and held that "whether the social worker violated a state law or an internal departmental policy is not the focus of our inquiry." *Id.* at 543 (internal citation omitted). Instead, because there were no "*substantiated* reports showing that [the foster parent] either harmed [the foster child] or her own children" the defendants were entitled to qualified immunity. *Id.* at 544 (emphasis added) (affirming grant of qualified immunity to caseworker). The mere fact of this significant division in case law is enough to grant qualified immunity. *See Carley v. Aranas*, 103 F.4th 653, 662 (9th Cir. 2024) (holding that the law is not clearly established "if the courts that have addressed the issue on the merits (step one) have reached conflicting conclusions."). Even if this Court were inclined to agree with unpublished decisions from two judges of this Court in *A.G.* and *A.F.*, and disagree with the unpublished decision from a three-judge panel of the Ninth Circuit in *Davis*, *Carley* means the Court should not reach those decisions at all under these circumstances.

**Page 21 –     REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**D.    If nothing else, this Court should grant summary judgment to supervisors Lane and Brooks.**

There is no *respondeat superior* liability under Section 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  At the very least, the Court should grant summary judgment to defendants Lane and Brooks, because they are not vicariously liable for their subordinates' actions.  "A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.*  Here, plaintiff has offered no facts showing defendants Lane and Brooks knew of or participated in any of the actions he alleges violated J.C.'s civil rights, therefore Lane and Brooks are entitled to summary judgment.



(Rizzo Decl. Ex. 89 at 6.)  (*Id.* at 4-6.)  Plaintiff also cites to various documents that plaintiff asserts establish liability for "O'Brien and Lane."  But the documents do not mention Lane.  Simply put, Lane is not vicariously liable for O'Brien's casework and this Court should grant her summary judgment.

Page 22 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

██████████████████████████████████████████████████████████

████████████ (Rizzo Decl. Ex. 14 at 18-20.)  Because due process does not require home

certifiers to scour "county" and "local" records for details regarding unfounded allegations,

Brooks is not liable for failing to direct her subordinates to do this.

> **E.** **This Court should also grant summary judgment as to plaintiff's challenge to court-ordered visitation and O'Brien's involvement in the criminal trial.**

In their motion for partial summary judgment, State Defendants explained that they are

not liable for facilitating visitation that J.C. requested and the juvenile court ordered.  Plaintiff

does not defend this theory in his response brief, and this Court should grant summary judgment

on it.

Similarly, defendants explained why O'Brien's conduct after J.C.'s disclosure against

Raygosa (*e.g.*, drafting a case note based on a conversation with J.C., providing that case note to

prosecuting attorneys in a criminal trial, testifying at Raygosa's trial pursuant to a subpoena), do

not demonstrate deliberate indifference and did not violate clearly-established law.  (Mot. at 42-

43.)  Plaintiff's only response is a footnote arguing that it was improper for State Defendants to

raise the defense of qualified immunity in their motion because there was a pending interlocutory

appeal regarding absolute immunity.  (Levi Resp. at 56.)  Plaintiff's chronology is wrong;

O'Brien filed her notice of appeal after State Defendants file their motion for partial summary

judgment.  That said, plaintiff is correct that the appeal regarding absolute immunity divests this

Court of jurisdiction to address the aspects of plaintiff's claims subject to the appeal (*e.g.*,

O'Brien's testimony at Raygosa's criminal trial).  But qualified immunity is distinct from

absolute immunity, and this Court can issue an indicative ruling under Fed. R. Civ. P. 62.1(a)(3)

on qualified immunity as to the aspects of the case which are on appeal.

**Page 23 –**  **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

II.    **Plaintiff relies on inadmissible evidence that is not properly in this record.**

Plaintiff should not be permitted to rely on discovery violations to oppose summary judgment. Federal discovery is supposed to provide parties a full and fair opportunity to obtain and exchange evidence. Plaintiff deprived State Defendants of the information contained in the declarations of Deborah McCowan and Priscilla Estrada in discovery and the Court should strike those declarations entirely. Likewise, plaintiff cannot rely on material the Rules of Evidence would bar from ever reaching the trier of fact. The Court should thus strike the declaration of ▮▮▮▮▮▮ in part, because it contains inadmissible hearsay. Finally, the Court should disregard hearsay in plaintiff's expert reports and case notes (*e.g.*, statements from children regarding conditions in the homes).

A.    **The Court should strike the declarations of Deborah McCowan and Priscilla Estrada because plaintiff concealed the substance of this proposed testimony.**

This Court should strike the belatedly-disclosed testimony of Deborah McCowan and Priscilla Estrada—former personal references for Duncan and Raygosa. These new declarations are critical to plaintiff's theory regarding the certification process. The McCowan declaration is plaintiff's *only* evidence that Chapman purportedly knew about the death of a child in California in the Duncan-Raygosa family's custody. McCowan's proposed testimony contradicts every piece of discovery evidence on this point, including McCowan's reference form, the reference forms for other personal references, the family's application materials, Chapman's deposition testimony, and the home study. Estrada's declaration states that she too knew about the death but was never asked about it. Despite serving multiple interrogatories that asked plaintiff to identify his factual theories and witnesses, plaintiff never disclosed this critical theory or these witnesses to State Defendants until months after the close of fact discovery. The federal rules do not permit this gamesmanship and the Court should strike the declarations.

**Page 24 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.    **Plaintiff's complaint did not clearly allege that a personal reference disclosed the death in California to Chapman.**

Plaintiff filed this lawsuit in November 2022 and amended his complaint in September 2024.  (Dkt. 1; Dkt. 196.)  Neither the original nor amended complaint alleges that any State Defendant had actual knowledge about Duncan's or Raygosa's connection to a child's death prior to certifying the Duncan-Raygosa home as a resource home.  Paragraphs 22 and 23 of the original complaint allege that the home study process is necessary "to elicit information from foster care applicants" and ODHS failed to "correctly utilize" the home study methodology, or applied the methodology "haphazard[ly]."  (Dkt. 1 ¶¶ 22-23.)  Paragraphs 24-31 then list various facts about the Duncan-Raygosa family that ODHS could have, but ostensibly did not, "elicit" during the home study process, including the death in California.  (*Id.* ¶¶ 24-31.)  Paragraph 32 alleges that the Duncan-Raygosa family preferred to foster female children.  (*Id.* ¶ 32.)  Paragraph 33 then alleges that "DHS" knew or suspected that the home was "unfit" but chose to certify it anyway.  (*Id.* ¶ 33.)  Paragraph 71 alleges that Chapman "failed to elicit (or chose to ignore) information concerning Duncan-Raygosa's role in the life and death of the child in California[.]"  (*Id.* ¶ 73 (emphasis added).)  In sum, plaintiff's original complaint did not allege that Chapman or any other State Defendant learned about the death in California as part of the home study process; it was ambiguous on this point.  (Dkt. 196 ¶¶ 22-33, 73.)

2.    **Multiple interrogatories called for the disclosure of information contained in the declarations.**

Plaintiffs rely on evidence they obtained months before the close of fact discovery to oppose summary judgment.



. (Jindal Decl. Ex. 18.)

**Page 25 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**



Plaintiff's failure to supplement his responses is an unambiguous violation of Federal Rule of Civil Procedure 26(e) and Rule 37 provides a clear remedy: plaintiff may not rely upon that evidence.

(Jindal Decl. Ex. 18 at 5-7.)

(Jindal Decl. Ex. 19 at 2-4.)

**Page 26 –     REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**



(Jindal Decl. Ex. 18 at 1-2.)

(*Id.* at 3.)  As shown, none of the paragraphs referenced in this response allege that any State

Defendant actually knew about a death in California before this lawsuit, let alone disclose the

factual theory that a personal reference told Chapman about the death.  Instead, as discussed

above, paragraphs 22-32 of the complaint stated that State Defendants failed "to elicit"

**Page 27 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
              SUMMARY JUDGMENT**

information, including the death, and paragraph 71 ambiguously states that Chapman "failed to elicit (or chose to ignore)" the death.

   **3.    After the close of discovery, plaintiff revealed declarations from the Duncan-Raygosa home's personal references that plaintiff obtained in April 2024.**

Fact discovery closed on August 12, 2024, and the parties exchanged initial expert reports on October 9, 2024. ████████████████████████████████

████████████████████████████████████████

██████████████████████████ (Rizzo Decl. Ex. 8.) ████████████

████████████████████████████████████████████

████████████████████████████████████

████████████

████████████████████████████████████

████████████████████████████████████████

████████████████

(*Id.* at ¶ 9.) ████████████████████████████ (*id.*) ████████████

████████████████████████████████████████

████████████████████████ Yet, plaintiff provided the McCowan declaration to his own testifying expert.

████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (*Id.* ¶ 9.) ████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████ (Rizzo Decl.

Ex. 10 ¶ 5.)

> **4.    Plaintiff's failure to timely correct or supplement his interrogatory responses to include McCowan and Estrada's statements violated Rule 26(e).**

This Court should strike the McCowan and Estrada declarations, because plaintiff never disclosed this information as required by Rule 26(e) and this failure is neither justified nor harmless.  Rule 26(e) provides that a party "who has responded to an interrogatory, . . . —must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  Fed. R. Civ. P. 37(c) provides that if information is not provided in accordance with Rule 26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  Rule 37(c)'s exclusion sanction is both "self-executing" and "automatic."  *Lindner v. Meadow Gold Diaries, Inc.*, 249 F.R.D. 625, 641 (D. Haw. 2008) (citing Fed. R. Civ. P. 37(c) advisory committee notes).  Where Rule 37(c) applies, the burden is on plaintiff to establish that an incomplete response was substantially justified or harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2011).

The Ninth Circuit has cautioned that the purpose of federal discovery generally, and interrogatories in particular, is to "mak[e] the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 674 (9th Cir. 1981) (citation omitted); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 790 (9th Cir. 2011) ("The Federal Rules of Civil Procedure exist to move a case forward to disposition, and to do so promptly and expeditiously. . . . [D]iscovery too often

**Page 29 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

has become a desultory game of hide and seek."). The Ninth Circuit has excluded theories and witnesses when a plaintiff fails to disclose the relevant evidence in response to interrogatories. *See*, *e.g.*, *Scott & Fetzer*, 643 F.2d at 675; *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 822 (9th Cir. 2019); *Oyarzo v. Turner*, 641 F. App'x 700, 702 (9th Cir. 2015).[15]

Here, in their interrogatories, State Defendants asked plaintiff to identify the witnesses with knowledge of the factual basis for his claims. State Defendants also sought to probe the factual basis for plaintiff's assertion that ODHS and Chapman certified the Duncan-Raygosa home despite knowing or suspecting that the home was unfit. Plaintiff never identified McCowan or Estrada as relevant witnesses for his claims. Plaintiff also never disclosed his theory that a personal reference disclosed a death in California during certification.

Plaintiff served his original interrogatory responses on March 15, 2024, and secretly obtained the declaration from McCowan on April 17, 2024—four months before the close of fact discovery. Plaintiff amended his complaint after receiving the declaration and made no mention of it. FRCP 26(e) required plaintiff to supplement or amend his interrogatory responses to explain the factual basis for his claims regarding the home certification process and to identify McCowan as a relevant witness for his claims. Plaintiff's failure to do so violated FRCP 26(e). Again, this information is critical to plaintiff's claim: if Chapman did not know about the death in California, she cannot be deliberately indifferent or even negligent for failing to investigate it.

---

[15] Consistent with these decisions, district courts in this circuit routinely hold that a party who failed to provide relevant information in response to an interrogatory is barred from relying on that information at summary judgment, trial, or in expert reports. *See*, *e.g.*, *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1137 (C.D. Cal. 2013) (striking portion of expert report relating to factual theory not included in response to interrogatories); *Harner v. USAA Gen. Indem. Co.*, 590 F. Supp. 3d 1217, 1224 (S.D. Cal. 2022) (granting motion in limine regarding evidence not provided in response to interrogatory); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323–24 (C.D. Cal. 2004) (disregarding undisclosed evidence).

**Page 30 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
            SUMMARY JUDGMENT**

But plaintiff secretly obtained relevant evidence and then intentionally concealed this information from State Defendants.  This conduct was improper.

     **5.**     **Plaintiff's catch-all paragraph directing State Defendants to review hundreds of thousands of pages of discovery "productions" was inadequate.**

Plaintiff's catch-all paragraph included in his July 2024 supplemental response to Interrogatory No. 13 is overbroad and improper because it did not specifically identify McCowan or Estrada as a fact witness.  As shown, in responding to discovery requests, a party must make a full and fair disclosure of the facts available to him.  The point is not to engage in a game of "hide and seek" designed to obscure the relevant facts.  *Dreith*, 648 F.3d at 790.  An interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given . . . ."  *Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016).

For instance, in *Cambridge Electronics Corp. v. MGA Elecs., Inc.*, a party responded to an interrogatory by stating that the answer "may be derived or ascertained from the business records" of the responding party.  The district court held that the response was inadequate because it failed to provide the defendant with any information about where a response could actually be found.  227 F.R.D. 313, 323 (C.D. Cal. 2004).  So too here.  The parties have exchanged hundreds of thousands of pages of discovery in this case and plaintiff's catch-all paragraph designating all "productions" as responsive was not adequate.  Plaintiff's response did not specify anything and left State Defendants to guess at the basis for plaintiff's claims.

     **6.**     **Plaintiff's catch-all paragraph was also misleading.**

Plaintiff's supplementation was also misleading because the newly-disclosed McCowan declaration *contradicts* the discovery record.  ███████████████████████████

**Page 31 –**   **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ (Naso Decl. Ex. 8 at 5-6.) Thus, referring to the discovery record could not

disclose plaintiff's theory that McCowan revealed the California death and related CPS

investigation to ODHS. Further, plaintiff did not supplement his responses to Interrogatories 1

and 6, which called for the factual basis for plaintiff's claims regarding the home certification

process. The only way for State Defendants to learn plaintiff's theory regarding McCowan and

Estrada would have been a timely, complete, and specific interrogatory response, which plaintiff

never provided. Plaintiff violated Rule 26(e) by failing to amend or supplement his response to

Interrogatories 1, 6, and 13 to identify McCowan as a relevant witness and to identify

McCowan's supposed statements as the factual basis for his claims.

### 7. Plaintiff's incomplete interrogatory responses are not substantially justified.

Rule 26 is not ambiguous and facts are not "work product." Plaintiff has no justification

for his failure to update his interrogatory responses. Plaintiff obtained the McCowan declaration

in April 2024 shortly after responding to State Defendants' first set of interrogatories. Plaintiff

then sat on the declaration and its contents for six months as discovery progressed—even when

he knew that the facts in that declaration contradicted the only other discovery materials bearing

on those same facts. Although the Estrada declaration is signed September 2024, it is unclear

when plaintiff first contacted Estrada and learned of her proposed testimony.

Plaintiff blames State Defendants for his obfuscation, asserting that "witness statements"

are work product and did not need to be logged on a privilege log. This is a non-sequitur. It is

black-letter law that a party cannot "refuse to answer interrogatories on the ground that the

**Page 32 –  REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

information sought is solely within the knowledge of his attorney." *Hickman v. Taylor*, 329 US 495, 504 (1947). "[C]ourts have consistently held that the work product doctrine furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the person from whom he has learned such facts[.]" *Pastrana v. Loc. 9509, Commc'ns Workers of Am., AFL-CIO*, No. 06cv1779 W(AJB), 2007 WL 2900477 at *5 (S.D. Cal. Sept. 28, 2007); *see also Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988). Here, plaintiff's understanding of McCowan's conversation with Chapman and Estrada's relationship with the Duncan-Raygosa family were discoverable facts. Plaintiff was required to furnish this information in response to State Defendants' interrogatories but simply failed to do so.

### 8. Plaintiff's failure to provide complete interrogatory responses was not harmless.

Plaintiff's lack of disclosure was not harmless, but rather has been highly prejudicial to State Defendants. Even if the facts in the McCowan declaration were material to the legal analysis—which they are not for reasons explained above in section I.B.1.—State Defendants firmly believe that the McCowan declaration is inaccurate. But because fact discovery is closed and expert reports have been exchanged, State Defendants have been deprived of the opportunity to debunk the declaration through the ordinary course of discovery. During the ordinary course of fact discovery, State Defendants could have interviewed McCowan and Estrada themselves and potentially deposed them. State Defendants could have similarly interviewed, deposed, or subpoenaed the other individuals named in the declarations (*e.g.*, the supervisor she spoke with about the death in the Duncan-Raygosa home). Plaintiff compounded the prejudice by providing the McCowan and Estrada declarations to his expert while simultaneously withholding it from State Defendants. If discovery had revealed credibility issues with the McCowan or Estrada

**Page 33 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

declarations, those issues would have called into question Dr. Butts's decision to rely on the declarations. This Court must bar plaintiff from using this testimony at summary judgment.

**B.     The Court should disregard the facts described in the expert reports.**

Plaintiff seeks to offer experts' descriptions of interviews and their contents as substantive evidence. This is improper hearsay. Although an expert may base her opinion on inadmissible evidence, the expert cannot be the source of substantive evidence. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984). Dr. Harris conducted extensive interviews of J.C. and plaintiff cites J.C.'s statements to Dr. Harris regarding the conditions in the ███████ home as substantive evidence. (*See*, *e.g.*, Levi Resp. at 44.) For instance, plaintiff cites J.C.'s hearsay statements to Dr. Harris as evidence that the ███████ home imposed physical punishments and that J.C. saw ██████ watch pornography. (*Id.*) This is improper and this Court should disregard J.C.'s unsworn hearsay.

**C.     Witness statements in case notes are hearsay and cannot be offered into evidence for their truth.**

This Court should not consider any statements that are summarized in the case notes or CPS assessments, because they are hearsay.[16] Plaintiff at times relies on unsubstantiated statements from foster children and families contained in case notes and CPS assessments. These out-of-court statements are hearsay. Although certain public records are excluded from the rule against hearsay under Fed. R. Evid. 803(8), it is well-established that this exception does not apply to statements *within* a public record that are attributed to persons other than the

---

[16] Plaintiff also cites ██████ declaration for the proposition that ██████ "observed" unspecified "violations of certification standards." (Levi Resp. at 44.) It is unclear what plaintiff is challenging. To the extent he intends to rely on the hearsay in ██████ declaration, the Court should disregard those paragraphs that are hearsay. (*See* Defs.' Reply in Supp. of Mot. for Partial Summ. J. in *Conley*.)

**Page 34 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

authoring official or some other mandatory reporter. *See Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973) ("Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly [inadmissible] hearsay[.]").  Although the case note or CPS assessment may fit within Fed. R. Evid. 803(8)'s public record exception, the witness accounts in the records are double hearsay not within an exception. █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ (Levi Resp. at 44 (citing Rizzo Decl. Ex. 85).)

███████████████████████████████████████████████████████

████████████████████ But these unsworn statements by a non-party are inadmissible hearsay.[17]

## CONCLUSION

This Court should grant State Defendants' motion for partial summary judgment and dismiss plaintiff's federal claims with prejudice.

DATED: February 19, 2025.          DAN RAYFIELD
                                   ATTORNEY GENERAL
                                   FOR THE STATE OF OREGON

                                   *s/ Anit K. Jindal*
                                   Lauren F. Blaesing, OSB #113305
                                   LaurenBlaesing@MarkowitzHerbold.com
                                   Harry B. Wilson, OSB #077214
                                   HarryWilson@MarkowitzHerbold.com
                                   Alexandra L. Rhee, OSB #230770
                                   AlexRhee@MarkowitzHerbold.com
                                   *Special Assistant Attorneys General for State*
                                   *Defendants and Third-Party Plaintiff*

---

[17] To be sure, hearsay statements made to State Defendants during the relevant time period may show effect on the listener, but not the truth of the matter asserted.  The October 2020 assessment postdates the children leaving care and thus is not admissible for any purpose.

**Page 35 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880407
JeffEdelson@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Of Attorneys for State Defendants and Third-Party Plaintiff*

Jill Schneider, OSB #001619
Jill.Schneider@doj.oregon.gov
Nicholas Mancuso, OSB #151262
Nicholas.Mancuso@doj.oregon.gov
*Of Attorneys for State Defendants and Third-Party Plaintiff*

CABLE HUSTON LLP

*s/ Nicole A.W. Abercrombie*
Jonathan W. Monson, OSB #102650
jmonson@cablehuston.com
Nicole A.W. Abercrombie, OSB #144581
nabercrombie@cablehuston.com
*Of Attorneys for Defendant Kassidy O'Brien*

2242376

**Page 36 –    REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2025, I have made service of the foregoing **REPLY**

**IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY**

**JUDGMENT** on the parties listed below in the manner indicated:

Steven V. Rizzo
Mary D. Skjelset
Rizzo Bosworth Eraut PC
1300 SW Sixth Avenue, Suite 330
Portland, OR  97201
*Attorneys for Plaintiff Levi*

☒ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☒ Email:  srizzo@rizzopc.com;
        mskjelset@rizzopc.com;
        ccarr@rizzopc.com;
        smaddox@rizzopc.com
☐ Electronically via USDC CM/ECF system

Caitlin Mitchell
Johnson Johnson Lucas Middleton, PC
975 Oak Street, Suite 1050
Eugene, OR  97401
*Attorneys for Plaintiff Levi*

☒ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☒ Email:  cmitchell@justicelawyers.com
☐ Electronically via USDC CM/ECF system

Nadia H. Dahab
Sugerman Dahab
101 SW Main Street, Suite 910
Portland, OR  97204
*Attorneys for Plaintiff Levi*

☒ U.S. Mail
☐ Facsimile
☐ Hand Delivery
☐ Overnight Courier
☒ Email:  nadia@sugermandahab.com
☐ Electronically via USDC CM/ECF system

DATED: February 19, 2025.

*s/ Anit K. Jindal*
Anit K. Jindal, OSB #171086
*Attorney for State Defendants and Third-Party Plaintiff*